ELECTRONIC FRONTIER FOUNDATION
CINDY COHN (SBN 145997)
cindy@eff.org
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
KEVIN S. BANKSTON (SBN 217026)
JAMES S. TYRE (SBN 083117)
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333; Facsimile: (415) 436-9993

KEKER & VAN NEST, LLP
RACHAEL E. MENY (SBN 178514)
rmeny@kvn.com
PAULA L. BLIZZARD (SBN 207920)
pblizzard@kvn.com
MICHAEL S. KWUN (SBN 198945)
mkwun@kvn.com
AUDREY WALTON-HADLOCK (SBN 250574)
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, California 94111-1704
Telephone: (415) 391-5400; Facsimile: (415) 397-7188

LAW OFFICE OF RICHARD R. WIEBE
RICHARD R. WIEBE (SBN 121156)
wiebe@pacbell.net
425 California Street, Suite 2025
San Francisco, California 94104
Telephone: (415) 433-3200; Facsimile: (415) 433-6382

THE MOORE LAW GROUP
THOMAS E. MOORE III (SBN 115107)
tmoore@moorelawteam.com
228 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Telephone: (650) 798-5352; Facsimile: (650) 798-5001

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN JEWEL, TASH HEPTING, GREGORY HICKS, ERIK KNUTZEN and JOICE WALTON, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, et al.,<br><br>Defendants. | Case No. C-08-4373-VRW<br>CLASS ACTION<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE STATE SECRETS PRIVILEGE**<br><br>Judge: The Hon. Vaughn R. Walker<br>Date Comp. Filed: September 18, 2008 |

446551.04

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

Dockets.Justia.com

## I. Introduction

At the July 15, 2009 hearing, for the first time, a question arose about the scope of the preemption of the state secrets privilege by the Foreign Intelligence Surveillance Act of 1978 (FISA Act), the set of statutory changes adopted by Congress in response to revelations of extensive domestic spying by the executive branch. The Court specifically inquired about the reach of a procedural mechanism created by the FISA Act—namely section 1806(f).[1]

The FISA Act defined the exclusive means by which electronic surveillance could be conducted. Congress determined that the combined procedures of the Wiretap Act (18 U.S.C. § 2510 et seq.) and the FISA Act "shall be the exclusive means by which electronic surveillance as defined [in title 50] and the interception of domestic wire, oral and electronic communications may be conducted." *In re NSA Telecomm. Records Litig.*, 564 F. Supp. 2d 1109, 1116 (N.D. Cal. 2008) (quoting 18 U.S.C. § 2511(2)(f)). Later, Congress added the Stored Communications Act ("SCA") portion of the Electronic Communications Privacy Act (18 U.S.C. § 2701 et seq.) as one of the FISA Act's "exclusive means." While the FISA Act was a single Congressional Act, it was codified in multiple places—including title 50, and two places in title 18 (the Wiretap Act and the Electronic Communications Privacy Act).[2]

The FISA Act's procedural mechanism for adjudication, section 1806(f), is at least as broad as the comprehensive solution Congress established as the "exclusive means" to address widespread problems with electronic surveillance. On its plain language, the relevant portion of section 1806(f) reaches any "materials relating to electronic surveillance," regardless of whether that electronic surveillance was done for foreign intelligence purposes or authorized by title 50, and regardless of whether the claims at issue are brought under the provisions of title 50, one of the other "exclusive means" defined by the FISA Act, or the Constitution itself. The

---

[1] The government has never argued that section 1806(f) applies to some of Plaintiffs' claims but not others, and thus Plaintiffs have never had occasion to address this question.

[2] Title 50 of the United States Code, at chapter 36, codifies only a portion of the FISA Act. Although title 50 is sometimes referred to as "FISA," other portions of the FISA Act were codified in title 18. To avoid confusion, Plaintiffs will refer to the Congressional Act as the "FISA Act" and the portion codified in Title 50 as "title 50."

1
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

FISA Act's structure and legislative history confirm the text's plain meaning, as does the case law construing section 1806(f)'s scope.

Although section 1806(f)'s procedure is not limited to surveillance authorized by title 50 or to claims for violation of title 50, its scope is strictly cabined by four limiting principles:

- the materials at issue must relate to "electronic surveillance;"
- those materials may be sought only by an "aggrieved person," i.e., someone who was subjected to the electronic surveillance;
- the government must assert that disclosure of the materials would harm national security; and
- the court may only review those materials "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted."

50 U.S.C. § 1806(f). Section 1806(f) thus represents the balance Congress struck between the needs of national security and the need for judicial oversight in a narrow category of cases meeting these four requirements. This is such a case.

## II. The relevant provision of Section 1806(f) applies to any "materials relating to electronic surveillance."

Applying section 1806(f) to all of Plaintiffs' claims is fully consistent with the FISA Act's fundamental purpose of preventing unrestrained surveillance abuse by the executive branch of government. The FISA Act was the result of "a period of intense public and Congressional interest in the problem of unchecked domestic surveillance by the executive branch." *In re NSA*, 564 F. Supp. 2d at 1115. The Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities (known as the Church Committee), found widespread abuse of the government's intelligence gathering capabilities:

> Through the use of a vast network of informants, and through the uncontrolled or illegal use of intrusive techniques – ranging from simple theft to sophisticated electronic surveillance – the Government has collected, and then used improperly, huge amounts of information about the private lives, political beliefs and associations of numerous Americans.

*Id.* (quoting Senate Select Comm. to Study Governmental Operations with Respect to Intelligence Activities, Book II: Intelligence Activities and the Rights of Americans, S. Rep. No. 94-755, at 290 (1976)). Congress enacted the FISA Act in response to these abuses.

Section 1806(f) of the FISA Act is a key element of Congress's plan to rein in executive abuse through judicial oversight. It sets forth a procedure for determining the legality of electronic surveillance where the government claims that disclosure of related materials would harm national security. The portion of section 1806(f) that applies here reaches any "materials relating to electronic surveillance," whenever at issue under "any other statute or rule of the United States"—without regard to whether the surveillance is authorized under title 50 or whether any legal claim pursued by the aggrieved person arises under title 50. 50 U.S.C. § 1806(f).

In relevant part, section 1806(f) reads:

> [W]henever **any** motion or request is made by an aggrieved person pursuant to **any other statute or rule** of the United States or any State before any court or other authority of the United States or any State
>
> > **[1]** to discover or obtain applications or orders or other materials relating to **electronic surveillance** or
> >
> > **[2]** to discover, obtain, or suppress evidence or information obtained or derived from **electronic surveillance under this chapter**,
>
> the United States district court or, where the motion is made before another authority, the United States district court in the same district as the authority,
>
> shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States,
>
> review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted.

50 U.S.C. § 1806(f) (line breaks, emphasis and numbering added).

The clauses numbered [1] and [2] above—hereafter Prong [1] and Prong [2]—address requests for two different types of electronic surveillance materials. Plaintiffs here seek to discover the applications and orders (or lack thereof) and other materials relating to Defendants' electronic surveillance of Plaintiffs, in order to stop that illegal surveillance, not to discover or suppress evidence obtained or derived from it. *See* Complaint ¶¶ 13-14. Therefore, Prong [1] of section 1806(f) applies, and that prong reaches any "materials relating to electronic surveillance." 50 U.S.C. § 1806(f). "Electronic surveillance" is defined in FISA to include, *inter alia*, any "acquisition by an electronic, mechanical, or other surveillance device of the

3

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

contents of any wire communication to or from a person in the United States." 50 U.S.C. § 1801(f)(2).

Unlike Prong [2], Prong [1]'s applicability is not limited to materials relating to electronic surveillance "under this chapter" (*i.e.* chapter 36 of title 50). Nor is Prong [1] limited to electronic surveillance that is "pursuant to this subchapter" or "pursuant to the authority of this subchapter," a limitation found elsewhere in § 1806, 50 U.S.C. § 1806(a-d), or even to electronic surveillance undertaken "under color of law," as in the criminal and civil causes of action in title 50, *id.* at §§ 1809-10.[3] "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (quotation and brackets omitted); *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995); *Estate of Bell v. Commissioner*, 928 F.2d 901, 904 (9th Cir. 1991). Thus, Prong [1] applies to any materials relating to "electronic surveillance" as defined in title 50, even if the surveillance was not authorized under title 50.

Other sections of title 50 directly analogous to section 1806(f) help confirm this reading. Section 1845(f), which concerns pen register and trap and trace devices, has a provision providing for court review that is almost identical to section 1806(f). Specifically, it includes two prongs that parallel Prongs [1] and [2] of section 1806(f) except for one important difference: both prongs in section 1845(f) are limited to surveillance "authorized by this subchapter." These parallel prongs of section 1845 read as follows:

> **[1]** to discover or obtain applications or orders or other materials relating to the use of a pen register or trap and trace device **authorized by this subchapter** or
> 
> **[2]** to discover, obtain, or suppress evidence or information obtained or derived from the use of a pen register or trap and trace device **authorized by this subchapter**….

50 U.S.C. §1845(f) (line breaks, emphasis and numbering added). Similarly, section 1825(g) concerning physical searches limits its two prongs to activities "authorized by this subchapter."

---

[3] Other provisions of title 50 beyond section 1806(f) further bolster this conclusion. For example, section 1802(a)(1) refers to "electronic surveillance . . . under this subchapter to acquire foreign intelligence information" and section 1804(a) refers to "electronic surveillance

4
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

For sections 1825(g) and 1845(f) of title 50, Congress chose to limit *both* prongs to activities *authorized by the respective subchapters.* Because Congress included no such limitation in Prong [1] of section 1806(f), it is not so limited. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Section 1806(f)'s legislative history also demonstrates Congress' intent to leave "electronic surveillance" unmodified in Prong [1], thereby making its scope broader than Prong [2]'s. The Senate and the House of Representatives in 1978 passed two different FISA bills, each with a different version of the provision that became section 1806(f). Wiebe Decl., Ex. A at 23-25; *id.*, Ex. B at 28430-31; *id.*, Ex. D at 4060. The Senate bill provided a single protocol for determining the legality of electronic surveillance in both criminal and civil cases, and that protocol applied to all "electronic surveillance" without limitation.[4] Wiebe Decl., Ex. A at 23-25. The House bill had two separate protocols in separate subsections, one for criminal and one for civil cases. Wiebe Decl., Ex. B at 28431; *id.*, Ex. D at 4060. The House bill's civil protocol included a version of the language that eventually became Prong [1] and Prong [2]. In the House bill's civil protocol, however, *both* Prong [1] and Prong [2] were limited to "surveillance pursuant to the authority of this title." Wiebe Decl. Ex. B at 28431 (at subpart (g)).

When the Conference Committee harmonized the two bills into the final version of the FISA Act, it decided to use a single protocol for both criminal and civil cases. Wiebe Decl., Ex. D at 4061, H. R. Conf. Rep. 95-1720, at 32 (1978), *reprinted in* 1978 U.S.C.C.A.N 4048, 4061 (single protocol of section 1806(f) applies "in both criminal and civil proceedings"). In putting Prong [1] and Prong [2] into their final form in section 1806(f), the Conference Committee retained the limitation that the House version imposed on Prong [2] (modifying its language slightly), but rejected the House's limitation for Prong [1]. The difference between

---

under this subchapter." Neither of these limitations is present in Prong [1].

[4] The Senate bill, like the original House bill, would have codified all of the FISA Act in title 18. Wiebe Decl., Ex. A. The Conference Report makes clear that the final decision to codify portions of the FISA Act in title 50 was not intended to have any substantive significance, and or to limit the scope of section 1806(f): "the purpose of the change is solely to allow the placement of Title I of the Foreign Intelligence Surveillance Act in that portion of the United States Code (Title 50) which most directly relates to its subject matter." Wiebe Decl., Ex. D at 4048.

5
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

the two prongs was thus intentional and the result of a compromise between the House and Senate. The Court must give effect to this deliberate difference in wording and cannot read "under this chapter" into Prong [1]. *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *see also Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) (courts should not "read an absent word into the statute"). Therefore, the portion of section 1806(f) relevant here is not limited to surveillance within the scope of title 50, but applies broadly to any "materials relating to electronic surveillance."

### III. Section 1806(f)'s procedure applies to materials related to electronic surveillance regardless of the type of legal claim at issue.

The plain language of section 1806(f) applies in any civil or criminal case, regardless of whether the claims in those cases are brought pursuant to title 50. Specifically, section 1806(f)'s procedure applies "whenever *any* motion or request is made by an aggrieved person pursuant to *any* … statute or rule of the United States … before *any* court or other authority of the United States" to discover materials related to electronic surveillance. 50 U.S.C. § 1806(f) (emphasis added). As one district court recently and correctly concluded, nothing in this language limits section 1806(f)'s applicability to claims brought under the civil cause of action at 50 U.S.C. § 1810. *See Al-Kidd v. Gonzales*, No. CV 05-093-EJL-MHW, 2008 WL 5123009, *4 n.1 (D. Idaho Dec. 4, 2008). Consistent with this result, other courts' *in camera* and *ex parte* review of surveillance's legality has encompassed not only whether the surveillance was properly authorized under title 50, but also whether the surveillance was constitutional. *Mayfield v. Gonzales*, No. Civ. 04-1427-AA, 2005 WL 1801679, *17 (D. Or. July 28, 2005) (using section 1806(f) to review constitutional claims for injunctive relief); *see United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991) (finding, upon § 1806(f) review, that FISA application did not evidence any government intent to gather criminal evidence in violation of Fourth Amendment).

Just as courts may use section 1806(f)'s procedures to consider whether electronic surveillance was constitutional, they may also consider whether that surveillance violated other elements of Congress's exclusive and comprehensive statutory system regulating domestic

6
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

electronic surveillance. Section 1806(f) reaches at a minimum all the "exclusive means" defined in the FISA Act—namely the Wiretap Act (18 U.S.C. § 2510 et seq.), the Stored Communications Act ("SCA") portion of the Electronic Communications Privacy Act (18 U.S.C. § 2701 *et seq.*), and title 50 (50 U.S.C. §1801 *et seq.*). 18 U.S.C. § 2511(2)(f).

This "exclusive means" provision confirms that, with the combined authorizations for and limitations upon electronic surveillance set forth in the FISA Act, the Wiretap Act, and the SCA, Congress "intended to displace entirely the various warrantless wiretapping and surveillance programs undertaken by the executive branch and to leave no room for the president to undertake warrantless surveillance in the domestic sphere." *In re NSA*, 564 F. Supp. 2d at 1116. In other words, the FISA Act—"along with the existing statute dealing with criminal wiretaps"—"blankets the field." *Id.* at 1117 (quoting Senator Gaylord Nelson); 18 U.S.C. § 2511(2)(f). Indeed, the House report on the FISA Act notes that the same surveillance can violate both the Wiretap Act and section 1809 of title 50. Wiebe Decl., Ex. C, H. R. Rep. 95-1283, at 97 (1978).

Accordingly, 18 U.S.C. § 2712, which provides a civil cause of action against the United States for violations of the Wiretap Act, the SCA, and particular provisions of FISA, mandates that courts *must* use title 50's procedures to review materials related to electronic surveillance in such cases: "Notwithstanding any other provision of law, the procedures set forth in section 106(f)…of the Foreign Intelligence Surveillance Act of 1978 [*i.e.*, 50 U.S.C. § 1806(f)] shall be the *exclusive means* by which materials governed by those sections may be reviewed." 18 U.S.C. § 2712(b)(4) (emphasis added). By providing for section 1806(f)'s use in 18 U.S.C. § 2712 as well as in title 50 itself, Congress made clear that section 1806(f)'s procedures are not limited to claims brought under title 50.

In sum, just as section 1806(f)'s procedure covers materials relating to electronic surveillance that was not conducted under title 50, it applies where an aggrieved party has brought claims under laws other than title 50.

7
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

**IV. Section 1806(f) has four limiting principles.**

While section 1806(f) is not restricted to surveillance authorized under title 50 nor to claims brought pursuant to 50 U.S.C. §1801, *et seq.*, it does include four limiting principles that tie the statute to the problem Congress sought to fix—unlawful domestic surveillance hidden behind a cloak of national security. Section 1806(f) only comes into play when the government asserts that national security interests are at stake. Section 1806(f) is further limited to activity concerning electronic surveillance, in a request brought by an aggrieved person, seeking information necessary to determine whether the surveillance was lawfully authorized and conducted. These requirements form the four cabining walls of section 1806(f).

**A. The government must assert that disclosure would harm national security.**

In order for section 1806(f) to apply, the "Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. § 1806(f). Without the government's sworn statement that harm to national security is at stake, section 1806(f) cannot be used. Wiebe Decl., Ex. E at 4032, S. Rep. No. 95-701, at 63 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 4032 ("The special procedures … cannot be invoked until they are triggered by a Government affidavit that disclosure or an adversary hearing would harm the national security…"); Wiebe Decl., Ex. D at 4061, H.R. Rep. No. 95-1720, at 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 4061 ("The in camera and ex parte proceeding is invoked if the Attorney General files an affidavit under oath."). This limitation to matters of national security is in keeping with Congress's perception of the problem—not all electronic surveillance, but surveillance hidden behind a veil of executive privilege tied to national security.[5]

---

[5] The government may not subvert the process by refusing to submit a formal section 1806(f) affidavit. If the government refuses to invoke section 1806(f), ordinary discovery procedures apply, and the Court remains free to require disclosure, including under a protective order that could incorporate 1806(f)-like procedures. The Court has described that approach as the Court invoking section 1806(f) on its own initiative. *See In re NSA Telecomm. Records Litig.*, 595 F. Supp. 2d 1077, 1088-89 (N.D. Cal. 2009) ("*In re NSA II*").

8
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

**B. The materials at issue must relate to "electronic surveillance" as defined in Title 50.**

Section 1806(f)'s procedure provides for review only of materials "relating to electronic surveillance." Here, Plaintiffs have specifically alleged "electronic surveillance" of Plaintiffs' communications. *See, e.g.*, Complaint ¶¶ 143-167. Plaintiffs have also described how all of the conduct alleged relates to that electronic surveillance. *See*, *e.g.*, Complaint ¶ 11 (describing the relationship between the government's acquisition of Plaintiffs' communications records and its electronic surveillance of Plaintiffs' communications).[6]

**C. The request must be made by an "aggrieved person" as defined in Title 50.**

Section 1806(f) also requires that the request for disclosure of materials be made by an "aggrieved person" under title 50. An "[a]ggrieved person" is someone "who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k). Mere speculation about surveillance cannot trigger section 1806(f)'s procedures, however; rather, the law requires specific, definite, and detailed allegations that raise a substantial claim. *See In re NSA Telecomm. Records Litig.*, 595 F. Supp. 2d 1077, 1087 (N.D. Cal. 2009) ("*In re NSA II*") (quoting *United States v. Alter*, 482 F.2d 1016, 1025 (9th Cir. 1973)). Plaintiffs have presented such allegations here.

**D. The Court's review is limited to information necessary to determine whether the surveillance was lawfully authorized and conducted.**

Finally, the fourth cabining wall of section 1806(f) is that the court is permitted to review materials relating to the surveillance *in camera* and *ex parte* only "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). The court must focus on the materials relevant to the objective: determining whether the surveillance was "lawfully authorized and conducted." *Id.*

---

[6] Indeed, even the government's acquisition of Plaintiffs' communications records, by itself, constitutes "electronic surveillance;" the communication "contents" protected by title 50 include "any information concerning the *identity of the parties* to such communication or the *existence* … of that communication," which encompasses the records at issue here. 50 U.S.C. § 1801(n) (emphasis added); Complaint ¶¶ 91-92 (describing Defendants' acquisition of Plaintiffs' records).

9
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

## V. CONCLUSION

Section 1806(f) was part of Congress's comprehensive effort to limit executive authority to conduct domestic electronic surveillance behind a veil of national security. Finding that section 1806(f) does not reach the very type of surveillance Congress wanted to bring under the check of the judicial branch would turn the law on its head. The plain language of section 1806(f) requires that its procedures extend to *any* materials related to "electronic surveillance," whether or not the surveillance or legal claims at issue arose under title 50 or other laws. Congress established a careful balance between executive accountability and legitimate national security concerns by confining section 1806(f) within four cabining walls: the government must certify that national security would be harmed by disclosure, the materials must relate to electronic surveillance as defined by title 50, the request must be made by an aggrieved person, and the court must review only to the extent necessary to determine whether the surveillance was legal.

While "FISA preempts or displaces the state secrets privilege . . . only in cases within the reach of its provisions," *In re NSA*, 564 F. Supp. 2d at 1124, the FISA Act occupied the field of electronic surveillance by establishing the surveillance-related provisions of title 18 and title 50 together as the "exclusive means" by which electronic surveillance may be conducted. It is thus no surprise that Congress extended the provisions of section 1806(f) to all the claims brought by plaintiffs in this case, under both section 1810 of title 50 and other laws.

Respectfully submitted,

Dated: August 3, 2009

By: _____/s/_____

ELECTRONIC FRONTIER FOUNDATION
CINDY COHN (SBN 145997)
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
KEVIN S. BANKSTON (SBN 217026)
JAMES S. TYRE (SBN 083117)
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

10
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04

KEKER & VAN NEST, LLP
RACHAEL E. MENY - #178514
PAULA L. BLIZZARD - #207920
MICHAEL S. KWUN - #198945
AUDREY WALTON-HADLOCK - #250574
710 Sansome Street
San Francisco, California 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

RICHARD R. WIEBE (SBN 121156)
LAW OFFICE OF RICHARD R. WIEBE
425 California Street, Suite 2025
San Francisco, California 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

THOMAS E. MOORE III (SBN 115107)
THE MOORE LAW GROUP
228 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Telephone: (650) 798-5352
Facsimile: (650) 798-5001

Attorneys for Plaintiffs

11
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SCOPE OF THE FISA ACT'S PREEMPTION OF THE
STATE SECRETS PRIVILEGE
CASE NO. C-08-4373-VRW

446551.04