# EXHIBIT 2

Dockets.Justia.com



# Firm Resume

## February 2009

**Mehri & Skalet, PLLC**
**1250 Connecticut Ave., NW, Suite 300**
**Washington, DC 20036**
**Tel: (202) 822-5100**
**Fax: (202) 822-4997**
**www.findjustice.com**

## OUR BACKGROUND AND COMMITMENT

*Mehri & Skalet PLLC* (M&S) believes that powerful institutions and corporations are not above the law. This belief inspires our work and informs our practice. Whether the target is deceptive sales practices or unfair employment practices, M&S uses the legal system to correct the imbalance of power that often favors big business over private citizens.

In cases ranging in focus from consumer protection to civil rights to corporate fraud, we are tenacious, creative and public-spirited in our approach to legal work. We do high impact cases with high integrity, and have a track record for getting far-reaching results. We prove every day that the law can be used to achieve fairness and justice.

M&S is a law firm with seasoned attorneys who fight complex cases on behalf of employees, consumers, investors, citizen groups and small businesses.   M&S attorneys bring together decades of front-line experience in litigation and issue advocacy and build upon strong ties with public interest, consumer, labor, whistleblower and civil rights organizations. M&S combines superior legal work and advocacy to serve our clients.

Our search for justice for our clients takes us to federal and state courts across the country, where we primarily litigate civil and consumer rights class actions; cases involving corporate abuse in real estate, financing and other areas; whistleblower suits alleging fraud on behalf of the government; as well as individual cases with a public interest impact.



PRACTICE AREAS

## Civil Rights

Mehri & Skalet, PLLC, has represented employees in discrimination cases filed across the United States. Currently the firm is actively investigating, litigating or participating in settlement talks in numerous matters involving employment discrimination. Mehri & Skalet also prosecutes cases including racial bias against consumers in the market place.

Using both federal and state anti-discrimination laws, Mehri & Skalet represents individuals fighting unlawful discrimination that adversely impacts their employment, business, or financial circumstances. While M&S maintains a broad-based practice, many of our cases fit into these  general categories of discrimination:

* "glass ceiling" and discrimination in promotions and advancement

*  discrimination in pay,  and distribution of business opportunities

* discrimination in employer testing and other selection procedures

* discrimination in contract formation and financial endeavors

## Glass Ceilings and Discrimination In Pay, Promotions and Equal Opportunity

M&S investigates and litigates "glass ceiling"  and pay discrimination class actions against private companies, in which a small group of salaried employees, on behalf of a larger "class" of similar employees, believe they are being systematically underpromoted and underpaid due to their race, ethnicity, national origin, or gender or because they are a part of any other protected category. The class action mechanism allows a relatively small group of employees to achieve systemic change at the company, thereby improving their working conditions and gaining broad-scale justice for the entire class.

## Testing Discrimination

M&S also investigates and litigates class actions involving the content and



administration of tests and other selection procedures that disproportionately block the workplace advancement of people of color and women. Such testing cases expose a common mode of discrimination that persists but is given little attention.

### Marketplace Bias

In addition, M&S investigates and litigates class actions alleging discrimination in contract formation, lending rates and other financial opportunities that affect small businesses, homeowners, car buyers and other economic actors because of their race or gender.

A sample of current and past cases include:

### * Ingram v. The Coca-Cola Company

Four named plaintiffs represented a class of 2200 current and former salaried, African-American employees of Coca-Cola in this class action filed April 1999 in the Northern District of Georgia. The case involved race discrimination in promotions, compensation and evaluations. Among other things, the plaintiffs alleged a substantial difference in pay between African-American and white employees; a "glass ceiling" that kept African-Americans from advancing past entry-level management positions; "glass walls" that channeled African-Americans to management in areas like human resources and away from power centers such as marketing and finance; and senior management knowledge of these problems since 1995 and a failure to remedy them.

In early 2000, the Court ordered both sides into mediation. The parties reached agreement on a Settlement-In-Principle on June 14, 2000. A final Settlement Agreement, valued at $192.5 million and designed to ensure dramatic reform of Coca-Cola's employment practices, was officially approved by the Court on June 7, 2001.

Since the Settlement Agreement went into effect, the court-appointed task force chaired by Alexis Herman, former Secretary of Labor, has issued five annual task force reports highlighting the progress Coca-Cola has made in complying with the Settlement Agreement.

### * Robinson v. Ford Motor Company

M&S and the Equal Employment Opportunity Commission ("EEOC") each filed a lawsuit on December 27, 2004 challenging Ford's procedures for selecting apprentices nationwide. These suits alleged that, since 1997, Ford has discriminated



against African-Americans on the basis of race in selecting apprentices. The two cases are consolidated in front of Senior Judge S. Arthur Spiegel in the Southern District of Ohio.

After extensive negotiations, the parties arrived at a settlement. The settlement resolves all claims in both lawsuits. The settlement serves both the public interest and confers substantial benefits on the Settlement Class. The settlement provides monetary and non-monetary benefits to the class, as well as providing substantial programmatic relief.

Some key aspects of the Settlement Agreement include:

Ford will immediately cease the use of the current apprenticeship test for selection of apprentices at Ford facilities in the U.S.

The parties a jointly selected  independent industrial psychologist to serve as an expert to devise new apprenticeship selection procedures.

Ford will select 276 members of the Settlement Class and place them, along with three Charging Parties, on a Ford apprenticeship program eligibility list in the next 2 years. This aspect of the Settlement Agreement is designed to remedy claims for lost job opportunities.

To remedy compensation damages claims for the class, the Settlement Agreement also provides $2400 to Settlement Class members who submit a properly executed Claim and Release Form and do not opt-out of the lawsuit.

A formal fairness hearing to determine whether the terms of the Settlement Agreement were fair, reasonable, and adequate took place on June 1, 2005, and the Settlement Agreement was approved by Judge Spiegel on June 15, 2005.  Judge Spiegel said "The settlement provides substantial monetary and non-monetary benefits to the class… as well as extensive systemic relief. The new testing procedures will benefit not only the class members, but potentially also all employees and future employees of Ford."  The Settlement became Final and Binding in August 2005.  The EEOC held a Commissioners' meeting that focused on this settlement removing bias in testing procedures on May 16, 2007.  A companion case, Love v. Automotive Components Holdings, LLC et al. received final approval on December 20, 2007.

### * <u>Augst-Johnson v. Morgan Stanley & Co., Inc.</u>

On June 22, 2006, M&S filed a lawsuit against Morgan Stanley on behalf of



female financial advisors. The complaint alleges that Morgan Stanley engaged in systematic gender discrimination against women financial advisors with respect to compensation, account assignments, partnership participation, promotions, training and mentoring and other terms and conditions of employment, all in violation of Title VII of the Civil Rights Act of 1964, as amended. On April 24, 2007, M&S and co-counsel announced a settlement with Morgan Stanley on behalf of approximately 2,700 women Financial Advisors and Registered Financial Advisor Trainees employed at Morgan Stanley at any time since August 5, 2003. The settlement received final approved by the Court on October 26, 2007.

The five-year settlement started with a lump sum payment by Morgan Stanley of $46 million, which will likely accrue interest of over a million dollars. Morgan Stanley will make an additional, yet to be determined payment to the Settlement Fund for the employer's share of payroll taxes. The Settlement Agreement will likely approach $50 million in total. A Special Master will determine the allocation of monies among the class members. The parties estimate that, in addition to the Settlement Fund, the changes called for in the programmatic relief will increase the earnings of women financial advisors by at least $16 million over five years and the diversity efforts by the Company over five years will cost an additional $7.5 million. The parties have jointly selected an independent diversity monitor to oversee the settlement and two outside experts to develop state of the art human resource policies and procedures.

   * **Maxey v. ALCOA**

On February 14, 2002, five named plaintiffs representing a class of hourly African-American and Hispanic Cleveland Works employees of ALCOA, Inc., filed a class action lawsuit in the Northern District of Ohio on behalf of all persons of African or Hispanic descent employed in hourly bargaining unit positions by ALCOA, Inc. in its Cleveland Works Facility at any time from February 14, 1996 to January 15, 2003.

The case involved allegations that ALCOA's system of selecting apprentices at ALCOA'S Cleveland Works Facility discriminated on account of race and national origin. In 2003 the parties reached an innovative settlement, which the Court approved.

The settlement called for the creation of a new testing procedure created by a jointly selected independent expert, the selection of new apprentices from the class,



and a $500,000 Educational Foundation to benefit the Black and Hispanic communities in Cleveland.

The Settlement also provides monetary relief of $10,000 in compensatory damages to each class member who took the apprenticeship selection test since February 14, 1996, and did not enter an apprenticeship program ("Test Takers").

### \* <u>Norflet v. John Hancock Financial Services, Inc.</u>

On July 7, 2004, Mehri & Skalet, along with co-counsel, initiated a ground-breaking class action lawsuit against John Hancock Life Insurance for its company-wide policy prohibiting the sale of life insurance to African-Americans in the early to mid-20th century. The lawsuit also confronts John Hancock's practice of offering African-Americans substandard and seriously inferior life insurance products when it did sell insurance to African-Americans. These products are known as industrial or monthly debit policies and had little value. The named Plaintiff is an African-American woman whose mother had purchased life insurance policies from John Hancock in 1940s and 1950s. The lawsuit also alleges that John Hancock fraudulently concealed its practices from policy holders and from the public and that the plaintiff and the class were only recently able to discover the discrimination even though it occurred in the past. The Court granted plaintiffs motion for class certification in September of 2007. The case is currently pending in the U.S. District Court for the District of Connecticut.

## <u>Workers' Rights</u>

Wage and hour laws exist to protect employees, who are often dependant upon their employers for financial security, from being exploited in the workplace. Similar to victims of discrimination, employees who have been denied wages or benefits are often unaware of how to enforce their rights. At Mehri & Skalet, we use our understanding of the law to ensure that workers receive the wages and benefits they have earned. The federal Fair Labor Standards Act (FLSA) requires that employers pay overtime to all non-exempt workers after forty hours a week. Many salaried or commissioned workers may be considered non-exempt under federal law. In addition, numerous states provide greater worker protections than federal law, such as reimbursement of most expenses, paid meal and rest periods, and higher minimum wage.

Misclassification of employees as non-exempt is one of the most common



violations of the FLSA.  Currently, Mehri & Skalet represents a putative class of assistant managers at CVS who are misclassified as non-exempt and are unfairly denied overtime wages.  The assistant managers perform the same tasks as clerks, such as operating the cash register, unpacking deliveries, and cleaning shelves.  The assistant managers do not have the requisite authority to be classified as exempt from overtime wages under the FLSA.

Drawing on our experience in the financial services industry, Mehri & Skalet closely monitors the impact of developments wage and hour law on this industry. For example, in 2008, Mehri & Skalet, along with co-counsel, filed suit on behalf of a putative class of Bank of American mortgage loan officers who were improperly denied reimbursement of mileage and cell phone expenses, in violation of California law.

**Consumer Protection**

The strength and integrity of our practice benefits from our attorneys' strong ties to premier consumer advocate organizations, such as the Center for Auto Safety, the Center for Science in the Public Interest and Public Citizen.

Mehri & Skalet remains true to its roots in the U.S. consumer movement. In each class action we investigate or file, we never lose sight of the ultimate beneficiaries of our work – the consuming public.

M&S takes seriously the trust of our clients, as well as our commitment to public advocacy, by pursuing class action judgments and settlements that address both the needs of class members and the public interest dimensions of each case. M&S attorneys investigate and litigate all types of consumer and small business protection issues, including:

* Automotive and other consumer product defects and recalls

* Antitrust, unfair pricing and deceptive billing practices

* Predatory lending, credit and insurance schemes

* Consumer and small business on-line and support services

* Fraud or unfair practices in real estate, banking and finance

* Medical, pharmaceutical and healthcare-related fraud



Mehri & Skalet defends consumers from a number of deceptive, fraudulent and unfair business practices. If you have been harmed by a deceptive or unfair business practice, please take a few minutes to tell us your story by completing our Consumer Complaint Form.

M&S is litigating or has settled a number of consumer class actions. These include:

### * <u>Schaffer v. Hewlett Packard Company</u>

This lawsuit alleged that certain models of HP Pavilion desktop computers contain a defective motherboard that causes the computers to suffer performance problems such as "hanging, freezing and locking." HP denied these allegations and admitted no wrongdoing; however, to resolve the case, M&S negotiated a settlement with HP that provided meaningful relief for consumers. Under the settlement, Class members received a direct monetary payment, reimbursement of out-of-pocket expenses, and/or a discount certificate. A federal judge in Michigan approved the settlement in 2006.

### * <u>Niewinski, et. al. v. Resurrection Health Care Corporation</u>

On September 16, 2004, Mehri & Skalet, PLLC filed a lawsuit in Illinois state court on behalf of uninsured patients against Resurrection Health Care Corporation (Resurrection), a not-for-profit health care system that includes nine hospitals in the Chicago metropolitan area. The suit alleges that Resurrection charges uninsured patients substantially more than patients covered by insurance and fails to provide poor patients with an adequate opportunity to apply for financial assistance with their bills. In addition to price gouging the uninsured and reducing its charitable expenditures, Resurrection employs unjust methods of collecting overdue bills, harassing even the poorest patients with collection lawsuits and garnishing their wages. M&S filed a motion to certify the class on April 11, 2005. The case is currently pending.

### * <u>Lazo v. Mercury Marine</u>

In the fall of 2004, M&S successfully settled this class action lawsuit against Mercury Marine for excessive problems with their 2000-2004 2.5L and 3.0L OptiMax Engines. The problem is generated from the powerhead and/or direct fuel injection system, which at times cause engines to cut off or freeze. All members of the class



received an extended warrantee and/or a rebate on Mercury or QuickSilver Products.

### * Car Dealership Overcharges

Some new car dealers overcharge their customers for legitimate fees or add bogus charges when they lease a car. M&S has been named class counsel in several class actions in New Jersey charging car dealers with consumer fraud for such overcharges. Many of these cases have recently settled, tens of thousands of Class Members each receiving certificates redeemable for both cash and credit.

### * Telephone Service Overcharges

M&S is currently litigating claims of overcharges and deceptive practices against local, long distance, and cell phone service providers. M&S settled a class action against Verizon New Jersey, Inc. for failing to implement a small business discount. Verizon overcharged Class Members by $1.01 per month for between one to four auxiliary phone lines. Under the terms of the settlement, Class Members will receive a payment or credit of $1.65 for each such overcharge. M&S is also brought a successful class action against Verizon-New Jersey for charging customers for inoperable services. The case also resulted in a substantial settlement.

### * Ford Focus Brakes Repair

In 2002, Mehri & Skalet filed a class action against Ford Motor Company alleging defects in the front braking system of the 2000 and 2001 Ford Focus. Mehri & Skalet represents plaintiffs who allege that the braking system contains a systemic defect that causes the front brake pads and rotors to wear out prematurely, forcing unsuspecting owners to spend hundreds of dollars in repairs and maintenance on a recurring basis. In December 2005, Mehri & Skalet, together with co-counsel, filed a motion to certify a class of all persons who purchased or leased one of these vehicles in the State of California. The motion contained multiple reports from experts, hundreds of pages of documents and depositions, and statements from clients. The Los Angeles County Superior Court certified a proposed class in 2006.   The parties reached a settlement in 2007 and final approval of the settlement is pending.

### * Mitsubishi Galant Brakes Repair

This case, which is very similar to the Ford Focus case, was successfully settled in 2004. M&S settled a class action against Mitsubishi for a defect in the brake system of the 1999 Mitsubishi Galant. The defect caused extremely premature wear on the



rotors and brake pads grossly in excess of normal use. Plaintiffs raised claims of breach of warranty and consumer fraud. Mitsubishi denied all claims. The parties reached a settlement where Class Members received either an inspection and repair of the brake problem; a reimbursement of all out-of-pocket expenses of brake and/or rotor repairs; or a service voucher.

### * **Apple Computer**

M&S filed and settled a class action against Apple Computer, Inc. that obtained relief for a nationwide class of buyers who unwittingly purchased an Apple wireless networking product that was incompatible with AOL. The settlement secures out-of-pocket damages of $45 for each class member and changes to Apple's notice and packaging practices related to this product. The settlement  was approved in 2002.

### * **Bridgestone-Firestone, Inc.**

In August 2000, M&S filed suit against Bridgestone-Firestone, Inc. in the first weeks of the company's massive tire recall effort. Farkas v. Bridgestone-Firestone sought to enjoin Firestone from discontinuing its policy of reimbursing customers for the cost of non-Firestone replacement tires. The restraining order obtained in Farkas was enforceable against Firestone on a nationwide basis and immediately produced a dramatic reversal in company policy. As a result, hundreds of thousands of Firestone customers retained the ability to replace their defective tires with tires from another manufacturer, and then seek reimbursement from Firestone -- thus speeding the efficient removal of millions of unsafe tires from our nation's roads.

## Antitrust

Vigorous enforcement of antitrust laws is essential to a free and fair marketplace. The Supreme Court has made clear that private antitrust lawsuits are an important part of antitrust enforcement, in *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972):

Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress.   Congress encourages private attorney general enforcement of antitrust laws.   It is in the spirit of a "private attorney general" that Mehri & Skalet prosecutes antitrust class action litigation: to combat and deter anticompetitive practices, and to give wronged consumers and businesses a remedy for illegal



behavior in the marketplace.

### * iPod Digital Music

Mehri & Skalet has filed a class action complaint on behalf of a purchaser of Apple's iPod portable music device, alleging that Apple has illegally "tied" its iPod portable music device and iTunes desktop software, in violation of federal and state antitrust and consumer laws.  Indeed, Apple's CEO Steve Jobs has bragged that iTunes is "the Microsoft of music stores," in a meeting with financial analysts.

Plaintiff alleges that Apple has deliberately altered the music and video files that are purchased on iTunes so that they only can be played on an iPod.  And music that is purchased from other music stores cannot be played on an iPod.  Because Apple has a monopoly in the market for music players and for online music, consumers are forced to use its products, and cannot purchase them from competitors.

M&S filed its complaint in December 2007, and the case is in its early stages.

### * Chocolate

Mehri & Skalet represents a consumer direct purchaser in an action against the major world manufacturers of chocolate, including Hershey, Mars, Nestle and Cadbury.  Plaintiff alleges that defendants engaged in a conspiracy to fix prices for chocolate in the worldwide market.   In the face of falling prices, defendants introduced a series of coordinated price increases, through secret meetings, and through their memberships in various industry groups.

Recent news reports reveal that one defendant, Cadbury, has applied for "amnesty" with the United States Department of Justice, meaning that it may be offering information about the conspiracy to federal authorities in exchange for favorable treatment.

M&S filed its complaint in January 2008, and the case is in its early stages.

### * Rail Freight

Mehri & Skalet represents a lumber company in a proposed class alleging that defendants, who provide rail freight transportation services, conspired to fix their prices.  Price-fixing is a "per se" violation of Section 1 of the Sherman Antitrust Act— a per se violation is a category of antitrust violation that is so pernicious that an inquiry into its reasonableness is unwarranted.



Defendants assess their customers rail fuel surcharges, a separately identified fee on customer bills, which purportedly compensates defendants for increases in the cost of fuel. Plaintiff alleges that in fact, defendants agreed to compute the surcharge as a percentage of revenue, rather than as a percentage of the actual cost of fuel for the transport that defendants provide. In addition, defendants frequently exchanged information as part of their agreement on the rates that would be charged, resulting in prices that moved in lockstep. As a result of this conspiracy, defendants were able to charge supracompetitve prices to the plaintiff and other customers.

Plaintiff filed a complaint in federal district court in Washington D.C. in February 2008.

### * Energy Transfer Partners

Mehri & Skalet is counsel for a plaintiff natural gas trader in a commodities manipulation class action against Energy Transfer Partners, L.P. ("ETP"). Plaintiff alleges that ETP exploited its position as the dominant trader at the Houston Ship Channel to manipulate the price of natural gas and natural gas futures contracts, in violation of the federal Commodity Exchange Act.

Plaintiff seeks to prosecute his commodity manipulation claim on behalf of a class of all futures traders on the New York Mercantile Exchange or "NYMEX," the dominant exchange for natural gas futures, and the national price benchmark for the industry.

### Real Estate/ Finance

Guided by the expertise of M&S principal Steve Skalet, who has 30 years of litigation and transactional experience in real estate and financial fraud, Mehri & Skalet now represents clients in cases involving real estate, lending and debt collection practices, and defective construction materials.

In the class action context, the firm handles cases under the Equal Credit Opportunity Act, Truth in Lending Act, Fair Debt Collection Practices Act, and other federal and state consumer protection statutes.

M&S also handles both individual and class action product liability cases, with an emphasis on defective construction materials, such as defective water pipes (polybutylene pipe), defective exterior siding products (artificial stucco, siding or roofing), and fire retardant plywood (FRT Plywood). Each of these products were



foisted on an unsuspecting public by manufacturers who refused to voluntarily take responsibility for their defective products, which caused enormous economic and health problems.

**Investor Protection**

Widespread corporate fraud at some of the nation's leading corporations, such as Enron, Worldcom, and AOL Time Warner, has harmed countless institutional and individual investors. Scores of hardworking Americans have suffered losses in their pension funds, retirement accounts, college and general savings accounts as a result of fraudulent conduct. We believe that investors deserve zealous representation in their fight for a return of those assets.

Mehri & Skalet often represents institutional investors concerned about securities fraud and corporate governance, as well as 401(k) beneficiaries enforcing ERISA violations.

Founding partner Cyrus Mehri has represented shareholders in securities class actions for many years.  His experience includes recovering assets for those involved in the elaborate scandals involving junk bonds committed by Ivan Boesky and Michael Milken in the 1980's, as well as savings and loan institutions. In addition, Mr. Mehri served as class counsel in *Florin v. NationsBank* in 1993, which restored $16 million to a pension plan that was bilked by company insiders at Simmons Mattress Company. And in 1991, *In re Bolar Pharmaceutical Co.* he helped to return over $25 million to defrauded shareholders. Mr. Mehri was also the principal attorney in *Roosevelt v. E. I. Dupont de Nemours and Co.*, which established the right for shareholders to go to federal court to require corporations to include proxy resolutions. M&S helped prosecute a securities fraud case against AOL Time Warner – one of the largest such cases in U.S. history, it settled for $2.4 billion.  M&S' recent ERISA cases involve Visteon, Avaya and National City.

Mr. Mehri has also co-authored a series of articles on securities enforcement and corporate governance including *Labor & Corporate Governance* articles entitled "Stock Option Equity: Building Democracy While Building Wealth" (November 2002) and "The Latest Retreat By The SEC" (February 2003). Mr. Mehri also co-authored an article in *The Journal of Investment Compliance* (Winter 2002/2003) entitled "Slipping Back to Business as Usual, Six Months After the Passage of Sarbanes-Oxley". In addition, Mr. Mehri co-authored a letter to the SEC regarding diversity in Board



appointments.



**ATTORNEY BIOGRAPHIES**

**<u>Cyrus Mehri</u>**

Cyrus Mehri is a founding partner of the law firm Mehri & Skalet, PLLC.

The business press has long followed Mr. Mehri's work.  The *New York Times* stated, "Mr. Mehri's vision for corporate America involves sweeping change, not the piece meal kind."  *Corporate Counsel* magazine described Mr. Mehri as "the one who pushed racial discrimination suits to the top of Corporate America's agenda."  *Fast Company* says "He is something of a one-man army in the battle against business as usual . . .  [H]is impact - both in terms of penalties and remedies - is undeniable." In 2001, he was named by *Regardie's Power* magazine as one of "Washington's Ten Most Feared Lawyers" and in 2003, by *Workforce* magazine as "Corporate America's Scariest Opponent."

Mr. Mehri served as Class Counsel in the two largest race discrimination class actions in history:  *Roberts v. Texaco Inc.* which settled in 1997 for $176 million and *Ingram v. The Coca-Cola Company*, which settled in 2001 for $192.5 million.  Both settlements include historic programmatic relief, featuring independent Task Forces with sweeping powers to reform key human resources practices such as pay, promotions and evaluations.

Trial Lawyers for Public Justice named Mr. Mehri a finalist for "Trial Lawyer of the Year" in 1997 and 2001 for his work on the Texaco and Coca-Cola matters respectively.

On April 6, 2004, Mr. Mehri, along with the National Council of Women's Organizations announced a project called "Women on Wall Street."  The project focuses on gender discrimination in financial institutions.  In 2007, Mehri & Skalet announced a $46 million settlement with Morgan Stanley on behalf of female financial consultants.

Mr. Mehri serves as lead counsel in *Robinson v. Ford Motor Company*.  The settlement created a record 279 highly-coveted apprenticeship positions for African American employees as well as payment of $10 million.  In a May 2007 EEOC Commissioner's meeting, Mr. Mehri and others testified about this settlement's significance on testing procedures in the workplace.



On September 30, 2002, Mr. Mehri and Johnnie L. Cochran, Jr. released the report, *Black Coaches in the National Football League: Superior Performance, Inferior Opportunities*.  The report became the catalyst for the NFL's creation of a Workplace Diversity Committee and the adoption of a comprehensive diversity program.  The NFL now has a record number of African American head coaches and front office executives.  Mr. Mehri serves as counsel for the Fritz Pollard Alliance, an affinity group for minority coaches, front office and scouting personnel in the NFL.

Mr. Mehri has a long history of representing defrauded investors, pensioners and consumers, as well as small businesses subjected to price-fixing, in other class actions.  For example, in 1993 *Florin v. NationsBank* restored $16 million to a pension plan that was bilked by company insiders at Simmons Mattress Company.  In 1991, *In re Bolar Pharmaceutical Co.* returned over $25 million to defrauded shareholders.  Currently, Mr. Mehri serves as co-lead counsel in numerous consumer class actions.  Recently, Mr. Mehri helped to prosecute one of the largest securities cases in history, a $2.4 billion settlement with AOL Time Warner.

Mr. Mehri co-authorities a series of articles on securities enforcement and corporate governance including Labor & Corporate Governance articles entitled "Stock Option Equity: Building Democracy While Building Wealth" (November 2002) and "The Latest Retreat By the SEC" (February 2003).  Mr. Mehri also co-authored an article in The Journal of Investment Compliance (Winter 2002/2003) entitled "Slipping Back to Business As Usual, Six Months After the Passage of Sarbanes-Oxley."

He is also the co-author of the article: "One Nation, Indivisible: The Use of Diversity Report Cards To Promote Transparency, Accountability, and Workplace Fairness"; Fordham Journal of Corporate and Financial Law, 9, 99-152 (with Andrea Giampetro-Meyer & Michael B. Runnels).

Mr. Mehri graduated from Cornell Law School in 1988, where he served as Articles Editor for the Cornell International law Journal.  After law school, he clerked for the Honorable John T. Nixon, U.S. District Judge for the Middle District of Tennessee.  Mr. Mehri has received the Outstanding Youth Alumnus Award from Hartwick College and the Alumni Award from Wooster School in Danbury, Connecticut . The Pigskin Club of Washington, DC granted Mr. Mehri, the prestigious "Award of Excellence."



In 2003, the Detroit City Council passed a testimonial resolution honoring Mr. Mehri and wishing him "continued success in changing the fabric of America." Last year, Mr. Mehri was given the "Distinguished Visitor" Award by the Miami-Dade County Office of the Mayor and Board of County Commissioners.

Mr. Mehri is a guest columnist for *Diversity, Inc*.

### Steven A. Skalet

Steven A. Skalet is a principal in the firm of Mehri & Skalet, PLLC. Mr. Skalet is involved in all aspects of the firm's litigation practice--especially in the areas of consumer and financial fraud--and continues his real estate and finance practice.  Mr. Skalet has 30 years of litigation and transactional experience in real estate, consumer fraud, bank fraud and class action litigation.  Currently, Mr. Skalet is co-lead counsel on a series of Auto Loan Bias cases on behalf of Hispanic consumers.

Mr. Skalet has had a varied litigation practice before state and federal courts throughout his career.  From 1995 until the formation of M&S, Mr. Skalet practiced with Kass & Skalet, PLLC, a well-known real estate, litigation, complex business and consumer protection firm.  Prior to that, he and another lawyer formed a practice that focused on real estate and litigation, including consumer class actions under the Truth-in-Lending and Equal Credit Opportunity acts.    That firm grew to approximately 23 lawyers in 3 jurisdictions and, when it split up in 1995, was known as Kass, Skalet, Segan, Spevack & Van Grack, PLLC.

Mr. Skalet began his career with the Washington, D.C. firm of Melrod, Redman & Gartlan, where he worked on a number of American Civil Liberties Union cases, including a case granting women the right to employment with the U.S. Park Service as park police.

Mr. Skalet has been an advisor to the Federal Reserve Board on credit and banking matters. He has served on the Montgomery County Advisory Committee reviewing the wholesale simplification of the Montgomery County Code.  He also served on the District of Columbia Bar Committee responsible for drafting form commercial leases and the Montgomery County Board of Realtors committee responsible for drafting residential real estate contracts.

Mr. Skalet actively participates in Community Associations Institute activities and is presently Vice Chair of the District of Columbia Legislative Action Committee, which he chaired for many years.  In 1999, he was awarded the Public Advocate

- 18 -

Award for his work on District of Columbia legislation. He is a frequent speaker and has authored numerous articles pertaining to real estate and community associations.

Supplementing his role at M&S, Mr. Skalet is also Of Counsel to the firm of Chadwick, Washington, Olters, Moriarty & Lynn, P.C., which has offices in Virginia, Maryland and the District of Columbia, and which specializes in community association law.

Mr. Skalet graduated from the University of Pennsylvania School of Law in 1971 and the University of Rochester in 1968. He lives in Bethesda, Maryland with his wife, Linda, and has two grown sons.

### Pamela Coukos

Pamela Coukos is Of Counsel in the Washington, D.C. office of Mehri & Skalet, where she concentrates on plaintiffs' employment discrimination class action cases.

Ms. Coukos was certified as a Class Counsel in *Ingram v. The Coca-Cola Company*, a class action case on behalf of 2200 African-American salaried employees at Coca-Cola, alleging race discrimination with respect to policies and practices regarding evaluation, compensation and promotion systems.

The Coca-Cola settlement, approved by the Court on June 7, 2001, represents the largest race discrimination settlement to date at $192.5 million. The settlement also includes historic programmatic changes.

Ms. Coukos played an instrumental role in the investigation, litigation and settlement of the case. She developed evidence, drafted the class action complaint, worked with experts, argued key motions and served as a principal writer of important briefs. Ms. Coukos was nominated as a finalist for "Trial Lawyer of the Year" by Trial Lawyers for Public Justice for her work on the Coca-Cola case.

Prior to joining the firm in 1998, Ms. Coukos was engaged in civil rights impact litigation and legislative policy work on women's rights. While working as a staff attorney for the NOW Legal Defense and Education Fund, she served as co-counsel in *Brzonkala v. Virginia Polytechnic/U.S. v. Morrison*, one of the first cases filed under the Violence Against Women Act (VAWA) civil rights provision. Ms. Coukos presented oral argument in support of the statute's constitutionality at the trial court level and served as one of the attorneys representing Ms. Brzonkala before the Fourth Circuit Court of Appeals. She later provided pro bono assistance to NOW LDEF in the



Supreme Court litigation of that case.

Ms. Coukos played a significant role in the drafting and legal analysis of the Hate Crimes Prevention Act/Local Law Enforcement Enhancement Act, which proposes an increase in federal protection for hate crimes and adds coverage for gender, sexual orientation and disability. She has also worked on domestic violence and welfare policies, and reproductive rights issues.

Ms. Coukos writes and speaks on a range of women's rights issues, including VAWA, sexual harassment, hate crimes and domestic violence, as well as civil rights and constitutional law. She is a contributing author to a treatise on employment discrimination, *Employment Discrimination Law and Litigation*, and has published two law review articles on civil rights issues.

Ms. Coukos served as a judicial law clerk to the Honorable Edward R. Korman, U.S. District Judge for the Eastern District of New York. She is a 1994 cum laude graduate of Harvard Law School, where she worked on The Civil Rights-Civil Liberties Law Review. In 1990, Ms. Coukos graduated magna cum laude from Brown University with an A.B. with honors in political science. She is admitted to practice in the District of Columbia, the State of New York, the Commonwealth of Massachusetts and before the U.S. Supreme Court.

## Woodley B. Osborne

Woodley B. Osborne joined Mehri & Skalet in September 2005 as Of Counsel. Mr. Osborne works on all practice areas in the firm with a particular focus on employment and civil rights.

Before joining the firm as Of Counsel, Mr. Osborne was a partner in the firm of Osborne & Deutsch, where he maintained a general civil practice concentrated in labor and employment law, including both traditional labor-management relations and counseling and litigation in connection with disputes between employers and individuals in the non-union setting. Mr. Osborne also worked as a mediator in the local courts and in his practice.

Mr. Osborne has served as Co-chair of the Labor Relations Section of the District of Columbia Bar, as well as Co-Chair of the Section's Subcommittees on Equal Employment Opportunity and Individual Rights and Responsibilities in the Workplace. Since 1988, Mr. Osborne has been a member of the Board of Directors of the Metropolitan Washington Employment Lawyers Association and Chair of its

MEHRI & SKALET PLLC

Amicus Brief Committee for many years. He has also served as President of that Association. Mr. Osborne has authored numerous briefs amicus curiae in cases raising important issues of employment law. Mr. Osborne is a long-time member of the National Employment Lawyers Association and is currently a member of its Amicus Advisory Council.

Mr. Osborne has also been an active contributor to continuing legal education programs in the areas of labor and employment law. His articles and publications include: *When Employers Misfire*, *Legal Times*, May 18, 1998; *The Effect of the Americans With Disabilities Act on Employer-Sponsored Health Plans*, District of Columbia Bar, Labor Relations Section (Commerce Clearing House, Sept. 1993)(co-author); *Whistle Blowers and D.C.'s Public Policy Tort*, *The Washington Lawyer*, July/August 1992(co-author); *Commentary: in Faculty & Teacher Bargaining*, *The Impact of Unions on Education*, George Angell, Ed., Lexington Books 1981; *The Need for Legislation After Yeshiva*, *Journal of Law & Education*, October 1980; and *A Primer on Collective Bargaining for College and University Faculty*, (American Association of University Professors, 1975)(co-author).

Mr. Osborne received his B.A. from Trinity College and his J.D. from New York University School of Law. He is a member of the Advisory Board of New York University's Center for Labor and Employment Law. He has served as Special Counsel for Higher Education for the American Federation of Teachers, counsel for the Air Line Pilots Association, International and the American Association of University Professors. Earlier on, he worked in the Office of the Solicitor of Labor, the Legal Services Program and as a consultant to the Office of Economic Opportunity.

Mr. Osborne and his wife, Jane, reside in the Capitol Hill neighborhood of Washington, D.C. and are active in a wide range of community activities. Mr. Osborne has three children, Woodley, Jr., Susan and Jenny, and one grandchild.

## Craig Briskin

Craig Briskin joined the Washington, D.C. office of Mehri & Skalet, PLLC as an associate in May 2007, and focuses his practice primarily on antitrust and consumer law.

Prior to joining the firm, Mr. Briskin prosecuted antitrust and commodities class actions at Labaton Sucharow & Rudoff LLP in New York. Among other matters, Mr. Briskin represented a class of natural gas futures traders who claimed damages



resulting from defendant natural gas traders' manipulation of prices through false reporting to industry publications.  Settlements with defendants, the last of which were approved in June 2007, were in excess of $100 million.  Mr. Briskin also represented consumers and third-party payors in several successful antitrust actions alleging that brand-name drugmakers blocked generic competition and charged supracompetitive prices for their products, through abuse of the patent system and sham litigation.

From 1999-2001, Mr. Briskin was an Equal Justice Works fellow at New York Legal Assistance Group.  He represented indigent and primarily immigrant clients in welfare, disability and immigration matters, in administrative fora, and in state and federal court.

A 1998 graduate of Harvard Law School, Mr. Briskin clerked for Justice Alexander O. Bryner of the Alaska Supreme Court.   In law school, he was a  student attorney and board member of the Harvard Legal Aid Bureau, and a senior editor of the Harvard Civil Rights-Civil Liberties Law Review.  He co-authored an article for that publication titled "The Waging of Welfare: All Work And No Pay?"  33 Harvard Civil Rights-Civil Liberties Law Review 559 (1998).  During law school, Mr. Briskin interned for Public Citizen and the American Civil Liberties Union.

Mr. Briskin graduated from Harvard College in 1994, with an A.B. cum laude in Psychology.

**Anna M. Pohl**

Anna M. Pohl joined the firm in the spring of 2004 and represents clients before federal agencies and state and federal courts in both the civil rights and consumer protection aspects of the firm's practice.  Among other matters, Ms. Pohl represented consumers in a recently-settled class action case against Hewlett-Packard for deceptive practices connected with the manufacturing, marketing and sale of HP Pavilion computers.  She was instrumental in investigating and filing a class action complaint on behalf of uninsured patients in Illinois who are being overcharged for health care services at Illinois charitable hospitals.  Ms. Pohl also represents female Financial Advisors in gender discrimination class actions against Smith Barney and Morgan Stanley.

In addition to her work at M&S, Ms. Pohl represents immigrants and asylum seekers pro bono before the Board of Immigration Appeals and recently won asylum



for an anti-war activist from the Sudan.

Prior to joining M&S, Ms. Pohl was an attorney at the Immigrant Women Program of NOW Legal Defense and Education Fund (now called Legal Momentum: Advancing Women's Rights), where she worked on immigration and domestic violence policy issues. While at NOW Legal Defense, Ms. Pohl provided technical assistance to attorneys and advocates on obtaining immigration relief, public benefits, housing, protective orders and child custody orders for immigrant victims of domestic violence, sexual assault and trafficking. She also drafted training materials for prosecutors and law enforcement on the immigration consequences of criminal activity and how to help immigrant victims caught up in the criminal justice system without causing them to be deported.

Ms. Pohl received her law degree in 2002 from New England School of Law in Boston, where she served on the editorial board of the *New England Journal of International and Comparative Law*. While in law school, under the supervision of 2005 Nobel Peace Prize nominee Michael P. Scharf, Ms. Pohl wrote a memorandum and prepared research materials for the Office of the Prosecutor at the International Criminal Tribunal for Rwanda for use in its work prosecuting war criminals. Ms. Pohl received her Bachelor of Arts degree from Towson State University. She is admitted to practice in Massachusetts and the District of Columbia.

### Ellen L. Eardley

Ellen L. Eardley joined the firm in the fall of 2007 and is active in the civil rights, employment, and consumer protection aspects of the firm's practice. Prior to joining the firm, Ms. Eardley litigated employment discrimination and wage and hour cases on behalf of public sector employees and unions at Woodley & McGillivary in Washington, D.C. Among other matters, Ms. Eardley represented four female firefighters in a sexual harassment lawsuit against their employer, resulting in a jury verdict of over $750,000. Ms. Eardley also regularly represented federal employees in claims brought under the Fair Labor Standards Act (FLSA) for the employer's failure to pay overtime and off-the-clock work. She successfully argued an appeal involving FLSA overtime before the U.S. Court of Appeal for the Eighth Circuit.

From 2003-2005, Ms Eardley was the Simpson Thatcher and Bartlett Equal Justice Works Fellow at the National Women's Law Center. She focused on impact litigation and advocacy regarding women's rights in education. She served on the



team of attorneys who represented female victims of sexual assault at the University of Colorado.  She also advocated for heightened enforcement of sex discrimination laws in career and technical (formerly vocational) education, and co-authored the report "Tools of the Trade: Using the Law to Address Sex Segregation in High School Career and Technical Education."

Graduating first in her law school class at the University of Cincinnati, Ms. Eardley earned a joint J.D./M.A. in Women's Studies.  She was a member of the University of Cincinnati Law Review and Book Review Editor for the Human Rights Quarterly.  During law school, she participated in the U.S. Department of Justice Summer Honors Program, interning for the Civil Rights Division, Employment Litigation Section.  She also clerked for Laufman & Gerhardstein, a civil rights firm representing victims of racial profiling and employment discrimination.

**Janelle M. Carter**

Janelle M. Carter joined the Washington D.C. office of Mehri & Skalet, PLLC as an associate in March 2008 and focuses her practice primarily on civil rights and consumer law.

Prior to joining the firm, Ms. Carter was an associate in the Chicago office of Winston & Strawn LLP.  At Winston & Strawn, she practiced complex commercial litigation in various areas of law.  Ms. Carter participated in a successful mediation involving a contract dispute and was a member of two trial teams in multi-million dollar patent and securities litigation.  She also was active in *pro bono* matters, including the successful representation of an Egyptian citizen in his application for asylum.

A 2004 graduate of Georgetown University Law Center, Ms. Carter clerked for the Honorable Julian A. Cook of the United States District Court for the Eastern District of Michigan.  While a law student, Ms. Carter spent her summers as an intern for the Honorable John S. Martin of the United States District Court for the Southern District of New York and the NAACP Legal Defense and Education Fund, Inc.  Ms. Carter is a *cum laude* graduate of Spelman College, where she received a Bachelor of Arts in Political Science in 2001.

