1  Michael D. Braun (167416)
   BRAUN LAW GROUP, P.C.
2  12400 Wilshire Boulevard
   Suite 920
3  Los Angeles, CA 90025
   Tel:   (310) 442-7755
4  Fax:   (310) 442-7756
   E-mail: service@braunlawgroup.com
5
   Roy A. Katriel *(Admitted Pro Hac Vice)*            Brian P. Murray
6  THE KATRIEL LAW FIRM, P.C.                          Jacqueline Sailer
   1101 30th Street, NW                                MURRAY, FRANK & SAILER LLP
7  Suite 500                                           275 Madison Avenue
   Washington, DC 20007                                Suite 801
8  Tel:   (202) 625-4342                               New York, NY 10016-1101
   Fax:   (202) 625-6774                               Tel:   (212) 682-1818
9  E-mail: rak@katriellaw.com                          Fax:   (212) 682-1892
                                                       Email: jsailer@murrayfrank.com
10
   **Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SOMTAI TROY CHAROENSAK and MARIANA ROSEN, Individually, And On Behalf Of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>APPLE COMPUTER, INC.<br><br>　　　　　Defendant. | CASE NO.: C05-00037 JW<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT**<br><br>DATE:　　November 20, 2006<br>TIME:　　9:00 a.m.<br>CRTM:　　8, 4th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................ 1

I.  APPLE'S ATTEMPT TO RELITIGATE ITS PREVIOUSLY FAILED MOTION TO DISMISS THE TYING CLAIMS IS FRIVOLOUS AND MISREPRESENTS THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT .................... 2

II. APPLE'S RENEWED ATTACKS ON THE ACTUAL AND ATTEMPTED MONOPOLIZATION CLAIMS ARE EQUALLY FRIVOLOUS .................... 4

    A.   Apple Cannot Rely on Extrinsic Allegations in Tucker As A Basis to Dismiss the Instant Complaint. ................................................. 5

    B.   Even if The Tucker Allegations Were Properly Before the Court On This Motion to Dismiss, They Do Not Provide Apple With Any Defense. ........ 7

    C.   Apple's Repeat Of Its Previously Failed *Trinko* Argument Is Again Unavailing. ..................................................................... 8

III. BECAUSE THE FEDERAL ANTITRUST CLAIMS SURVIVE THE CARTWRIGHT CLAIM SURVIVES AS WELL ........................................................ 12

IV. THE UCL CLAIM IS NOT SUBJECT TO THE MOTION TO DISMISS .............. 13

CONCLUSION ........................................................................... 13

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT
CASE NO.: C05-00037 JW
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\Opp MPA re MTD.wpd

# TABLE OF AUTHORITIES

## FEDERAL CASES

*C.R. Bard, Inc. v. M3 System, Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) .................................................. 12

*Eastman Kodak Co. v. Image Technical Srvcs.*,
504 U.S. 451 (1992) .................................................. 3

*Harper ex. rel Harper v. Poway Unified School District*,
345 F. Supp. 2d 1096 (S.D. Cal. 2004) .................................................. 6

*Haskell v. Time, Inc.*,
857 F. Supp. 1392 (E.D. Cal. 1994) .................................................. 6

*In re IBM Peripheral EDP Devics Antitrust Litigation*,
481 F. Supp. 965 (N.D. Cal. 1979) .................................................. 11, 12

*Lewis v. Washington*,
197 F.R.D. 611 (N.D. Ill. 2000) .................................................. 6

*Romeo v. General Chemical Corp.*,
922 F. Supp. 287 (N.D. Cal. 1994) .................................................. 6

*Sherman v. British Leyland Motors Corp.*,
601 F.2d 429, 452 n.46 (9th Cir. 1979) .................................................. 11

*Transamerica Computer Co., Inc. v. IBM*,
698 F.2d 1377 (9th Cir. 1988) .................................................. 11

*Verizon Communications v. Law Offices of Curtis V. Trinko*,
540 U.S. 398 (2004) .................................................. 9, 10

## STATE CASES

*Maxwell Stepanuk, Jr., v. State Farm*,
1993 WL. 166748 (E.D. Pa. May 14, 1993) .................................................. 8

*In re Silicon Graphics, Inc. Securities Litigation*,
1996 WL. 664639 (N.D. Cal. Sept. 25, 1996) .................................................. 6

*Whitsitt v. Krohomer*,
2005 WL. 2036923 (N.D. Cal. Aug. 1 22, 2005) .................................................. 6

# INTRODUCTION

Defendant Apple Computer, Inc.'s ("Apple") motion to dismiss plaintiffs' Second Amended Complaint ("SAC") is a frivolous one that should never have been filed. On September 9, 2005, this Court already denied Apple's motion to dismiss plaintiff's original complaint.[1] Then on August 17, 2006, this Court granted (again, over Apple's opposition), plaintiff's motion to file the instant SAC, which differs solely from the original complaint in that it name different plaintiffs, as the original plaintiff, Thomas Slattery, encountered a conflict of interest that prevented his continued involvement in the case as a class representative. Thus, other than changing the names of the plaintiffs, the rest of the SAC is essentially a carbon copy of the original complaint that the Court has already ruled states legally cognizable claims and is not defeated by Apple's motion to dismiss.[2] Despite this, rather than filing an Answer to the SAC as it was required to do in light of the Court's rulings, Apple has filed this baseless renewed motion to dismiss the SAC, and to further delay matters, noticed a hearing on this baseless motion for several months out. Apple's motion either merely repeats verbatim the same arguments that the Court already rejected in denying Apple's motion to dismiss the original complaint, or concocts wholly frivolous "new" arguments that do not withstand even cursory scrutiny. The real question raised by this motion, therefore, is not whether it should be summarily denied (of course, it should), but whether Apple should be sanctioned for using the filing of a patently baseless renewed motion to dismiss as a transparent delaying tactic.[3]

---

[1] The Court's September 9, 2005 Order either outrightly denied Apple's motion to dismiss the original complaint with respect to all counts, or allowed Slatery to amend those counts so as to explicitly plead their requisite elements. The only exception was Count IX of the original complaint (unjust enrichment), which the Court dismissed with prejudice.

[2] The only other change between the original complaint and the SAC is that the SAC formally makes an election of claims with respect to the tying conduct, whereas the original complaint pleaded in the alternative both that Apple tied the iPod to the iTMS, and vice versa. See Original Complaint at Counts I and II. This election of claims was prompted by the Court's own directive, and has no effect on the counts that are actually pleaded in the SAC. See Court's Order Denying Apple's Mtn. To Dismiss Orig. Complaint at 4:28-5:1 (indicating that at some point in then litigation plaintiff may have to make an election of his tying claims).

[3] Prior to filing the instant motion, Apple's counsel called plaintiff's counsel to seek an extension of the time to file a response to the SAC. At that point, Apple's counsel informed

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT**
CASE NO.: C05-00037 JW
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\Opp MPA re MTD.wpd

# I. APPLE'S ATTEMPT TO RELITIGATE ITS PREVIOUSLY FAILED MOTION TO DISMISS THE TYING CLAIMS IS FRIVOLOUS AND MISREPRESENTS THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Apple's latest motion to dismiss brings nothing new to the table. It merely raises the same arguments that the Court has previously rejected in already denying Apple's motion to dismiss the original complaint. To the extent that Apple's renewed motion seeks to introduce anything new, that attempt is patently baseless, and rises to the level of being a sanctionable frivolous argument. For example, with respect to the SAC's tying claim (Count I), which the Court has previously upheld, Apple now claims that "*[a]s to the tying claim, unlike the original complaint by Slattery, the new plaintiffs Charoensak and Rosen fail to allege that they actually purchased a tied product, an iPod,* let alone that Apple coerced them to do so." Defendant's Memorandum in Support of Motion to Dismiss Antitrust Claims of Second Amended Complaint or, Alternatively, Request for Leave to File Rule 56 Motion on Antitrust Claims ("Dft's Br. __") at 2:15-16 (emphasis added). Apple underscores this supposed "new fact" as the reason why the tying claim in this SAC should be dismissed despite the Court having already upheld the identical tying claim against Apple in the original complaint. In this regard, Apple again notes that, "*plaintiffs do not even allege that they bought an iPod-* coerced or otherwise." *Id.* at 12:22-23 (emphasis added). And, defendant concludes its baseless rant by underscoring that, "*because plaintiffs do not allege that they actually purchased an iPod* and cannot allege that Apple refuses to sell iTMS to consumers who do not purchase an iPod, plaintiffs' tying claim is insufficient as a matter of law, and Count I should be dismissed." *Id.* at 14:3-5 (emphasis added).

---

plaintiff's counsel that Apple would not be filing an Answer to the SAC, but would be filing a renewed motion to dismiss the SAC despite the Court's prior ruling. Plaintiff's counsel informed Apple's counsel that plaintiff reserved the right to move for sanctions if Apple persisted in filing a renewed motion to dismiss even after the Court denied Apple's prior motion to a carbon copy of the SAC. Plaintiff intends on seeking sanctions after this Court rules on the instant motion because, as set forth below, Apple's "renewed" arguments are wholly frivolous rehashes of arguments that the Court already denied in denying Apple's motion to dismiss the original complaint in this action, or are baseless misrepresentations of the SAC.

2

Apple's representation to the Court as to this "new fact" is simply an untruth—it either represents deliberate misrepresentation to the Court about what the SAC says, or at best, is inexcusable negligence—in either case using this supposed "new argument" to file a renewed motion to dismiss the already upheld tying claim is patently frivolous. This is necessarily so because even a five-minute review by Apple's counsel of the SAC would have revealed that in the SAC, plaintiffs explicitly pled that they bought both iTMS files and an iPod directly from Apple: "***During the Class Period, Plaintiff purchased an Apple iPod directly from Apple***, and purchased music files for use on his iPod directly from Apple's iTunes music store." SAC, at ¶ 61 (emphasis added). In light of this explicit pleading within the four corners of the SAC stating that plaintiffs purchased an iPod directly from Apple during the Class Period, how can Apple in good faith represent to the Court that it is justified in filing a renewed motion to dismiss the SAC's tying claim because "*unlike the original complaint by Slattery, the new plaintiffs Charoensak and Rosen fail to allege that they actually purchased a tied product, an iPod*" ? How can such a misrepresentation survive a motion for sanctions ?

The SAC, of course, does not stop there. It also explicitly alleges why plaintiffs purchased an iPod; namely, because if they wanted to listen to their iTMS music files portably, they had no choice, as Apple embeds its iTMS music files with a proprietary software code that will prevent a user from playing back the iTMS music file on any portable hard drive digital music player other than Apple's iPod—"As Apple has acted to prevent any portable hard drive digital music player, other than its own Apple iPod, from directly playing any digital music files purchased at its Apple's iTunes online music store, Plaintiffs were also forced to purchase an Apple iPod device if they wished to play and portably enjoy the music they purchased online from Apple's iTunes music store." SAC, at ¶ 10. In denying Apple's motion to dismiss the original complaint's tying claim (of which this one is a carbon copy), the Court already found that the foregoing allegations sufficed to allege the requisite element of coercion for the tying claim:

> Accepting plaintiff's allegations as true, all elements of a tying claim are met. . . The element of coercion is also adequately plead. . . . The Defendant argues that a tying claim cannot be made because consumers can purchase either iTunes or the iPod separately. However, the fact that Plaintiff can purchase the items separately does not dismiss a tying claim. *Eastman Kodak Co. v. Image Technical Srvcs.*, 504 U.S.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT
CASE NO.: C05-00037 JW
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\Opp MPA re MTD.wpd

> 451, 463 (1992). The Defendant contends that both products are capable of functioning independently without a consumer purchasing both. However, this argument ignores the Plaintiff's allegations of the relevant markets. The alleged relevant markets, as this Court must limit itself to, are the legal sale of online digital music files and portable hard drive digital music players. Plaintiff alleges that, within these relevant markets, the only legal digital music files capable of playing directly on an iPod are music files sold by Defendant's iTunes music store. Further, the only portable hard drive digital music player capable of directly playing music from Defendant's iTunes music store is the iPod.... Thus, as plead, Plaintiff alleges all the elements of a tying claim to survive a motion to dismiss under Rule 12(b)(6).

Order Dated Sept. 9, 2005 Denying Apple's Mtn. To Dismiss Original Complaint, at 5:2-24.

Apple's new motion merely rehashes the same arguments against plaintiffs' tying claim that the Court has already steadfastly rejected. After acknowledging that the Court has already considered and denied Apple's attack on the instant tying claim in the original complaint (*see* Dft's Br. at 15:4-16:16), Apple argues that "[t]his Court's decision on Slattery's tying claim does not prevent dismissal of the new plaintiffs' tying claim." Dft's Br. at 15: 5-6. Apple maintains that this is so only because it claims (erroneously) that "[t]hey [the new plaintiffs] stop short of alleging that they bought an iPod, much less that they were forced to do so." *Id.* at 15:15-16. As already shown, however, Apple's representation about what is and is not alleged in the SAC is blatantly false, as the SAC *does* allege that the new plaintiffs purchased an iPod from Apple, and that they were forced to make that purchase in order to portably enjoy their iTMS digital music purchases. *See* SAC at ¶¶ 10, 61. Thus, there is nothing new presented by Apple's renewed attack on the SAC's tying claim (Count I), and the Court's prior denial of this attack should stand.[4]

## II. APPLE'S RENEWED ATTACKS ON THE ACTUAL AND ATTEMPTED MONOPOLIZATION CLAIMS ARE EQUALLY FRIVOLOUS

Apple acknowledges, as it must, that "[t]his Court denied the earlier motion to dismiss the monopolization claim in the original complaint." Dft's Br. at 11:13-14. Despite this, Apple's renewed motion to dismiss the SAC's monopolization and attempted monopolization claims

---

[4] To the extent that the Court would revisit Apple's repeated attack on the tying claim, plaintiffs respectfully refer the Court to the Slattery's arguments in his original opposition to Apple's motion to dismiss the tying claim of the original complaint—arguments that the Court agreed with in denying Apple's motion to dismiss the tying claims of the original complaint. *See* Slattery's Opp. To Apple's Mtn. To Dismiss Original Complt. at 1-14.

4

(Counts II- IV) merely rehashes the exact same arguments that it presented to the Court in its previously failed motion. *Id.* at 6:1-10:21. Apple argues that re-submitting its already failed motion to dismiss the monopolization claims is now justified because Melanie Tucker, a separate plaintiff with no affiliation to the plaintiffs in this action, has since filed another complaint against Apple, and the untested allegations in that separately filed *Tucker* complaint somehow justify dismissal of Charoensak's and Rosen's SAC. *See* Dft's Br. at 2:1-3:7.

Specifically, Apple argues that "[u]nlike the operative complaint here, the *Tucker* complaint admits that the the major record companies require Apple and other legal online music stores to use some form of DRM technology to guard against privacy." *Id.* at 2:5-7. Thus, Apple argues that despite the Court's prior rejection of Apple's attacks on the original complaint's monopolization claims, "that motion was decided before the *Tucker* case was filed and related to this action. *Tucker* lays bare the true nature of the antitrust violation alleged in both actions as a straightforward, nonactionable refusal to deal. The *Charoensak* plaintiffs should not benefit from avoiding the reality that Tucker acknowledges in her pleading, and this case should be dismissed as well as *Tucker*." *Id.* at 2:20-3:1.

### A. Apple Cannot Rely on Extrinsic Allegations in Tucker As A Basis to Dismiss the Instant Complaint.

Apple's motion with respect to the actual and attempted monopolization claims lacks any legal merit, and is as frivolous as its baseless attack on the plaintiffs' tying claim. To summarize, Apple's legal "argument," which can best be equated as the jurisprudential equivalent of a psychologist's theory of transference is that, although the monopolization allegations of the instant complaint were already found by this Court to be legally cognizable and sufficient to defeat Apple's motion to dismiss, another plaintiff bearing no relationship to Charoensak and Rosen has filed a separate complaint pleading different allegations that Apple claims doom *that* complaint. Apple, therefore, asks the Court to effectively accept the truth of those untested allegations in the wholly separate and different *Tucker* complaint (which, to date, Apple has not even formally answered) and import or transfer them into Charoensak's and Rosen's SAC, so that the SAC, which as pled survives a motion to dismiss, can then be dismissed.

5

Of course, there is no legal authority that even remotely supports the legal contortions that Apple's motion would require, and Apple cites to none. The law, in fact, holds precisely the opposite. As any first year law student would recognize (but Apple's counsel purposefully ignore), on a motion to dismiss, the Court is constrained to looking solely at the allegations pled within the four corners of the complaint. *See Whitsitt v. Krohomer*, 2005 WL 2036923, at *2 (N.D. Cal. Aug. 1 22, 2005) ("Extrinsic evidence submitted in support of a motion to dismiss must be disregarded."); *In re Silicon Graphics, Inc. Securities Litig.*, 1996 WL 664639, at *13 (N.D. Cal. Sept. 25, 1996) ("Under Federal Rule of Civil Procedure 12(b)(6), such extrinsic evidence may not be considered on a motion to dismiss."); *Romeo v. General Chemical Corp.*, 922 F. Supp 287, 289 (N.D. Cal. 1994) ("Generally, a court may only consider allegations made in the complaint, and extrinsic factual material may not be taken into account [in ruling on a motion to dismiss]."); *Harper ex. rel Harper v. Poway Unified School Dist.*, 345 F. Supp.2d 1096, 1119 (S.D. Cal. 2004) ("This Court is further confined, on a motion to dismiss, to the four corners of the complaint and may not review extrinsic evidence in making its determination."); *Haskell v. Time, Inc.*, 857 F. Supp 1392, 1396 (E.D. Cal. 1994) ("Ordinarily, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is addressed to the four corners of the complaint without consideration of other documents or facts outside the complaint.").

As one federal district court judge has explained in addressing the same forbidden legal leap-of-faith step that Apple would have this Court do in this case, "I cannot rely on a motion to dismiss on the facts regarded as established by another judge of this court in a summary judgment motion concerning the same issue with different plaintiffs and some of the same defendants." *Lewis v. Washington*, 197 F.R.D. 611, 615 (N.D. Ill. 2000). Here, of course, the "new facts" that Apple concocts to justify a refiling of its already failed motion to dismissed the monopolization claims are allegations purportedly made by a different plaintiff in an altogether different document, the *Tucker* complaint. As the foregoing makes clear, however, extrinsic allegations made by third parties outside the four corners of the complaint at issue cannot form the basis of a motion to dismiss. Not surprisingly, Apple fails to cite even a single case that would support its reliance on untested allegations in the *Tucker* action to dismiss the instant action. Thus, as a threshold matter of law, Apple's renewed attempt to dismiss the monopolization claims must be denied.

### B. Even if The Tucker Allegations Were Properly Before the Court On This Motion to Dismiss, They Do Not Provide Apple With Any Defense.

Even assuming *arguendo*, however, that Apple's improper reliance on extrinsic and untested allegations from a different complaint could be ignored, that would still not advance Apple's cause here. To summarize, Apple argues that Charoensak and Rosen's monopolization claims must be dismissed because in her separately filed complaint, Melanie Tucker reportedly alleged that the music companies demanded that Apple employ some form of DRM with respect to the music files it sold on its iTMS. *See* Dft's Br. at 2:5-7 ("Unlike the operative complaint here, the *Tucker* complaint admits that the major record companies require Apple and other legal online music store to use some form of DRM technology to guard against privacy."). Notably, Apple does not quote or even cite to the actual allegation supposedly made in the *Tucker* complaint, but merely offers (without citation) the foregoing paraphrasing of what Ms. Tucker reportedly alleged in her separate complaint.[5]

Even were that what Tucker had actually alleged, and even were that true, and even were that the proper subject of consideration by this Court on this motion to dismiss, it has no legal import. Apple's reliance on the foregoing merely amounts to a "the record companies made me do it" defense. Of course, that is no defense to an alleged antitrust violation. The pertinent question is whether Apple's alteration of the open AAC standard by adding a proprietary software code so as to turn that encryption code into what Apple call an "AAC Protected" format that prevents iTMS music files from being directly played on any portable hard drive digital music player other than Apple's iPod violates the Sherman Act. See SAC, at ¶¶ 38-44. If it does, then the allegation that the companies requested that Apple take this step does not insulate Apple from antitrust liability. The Court has already found that plaintiffs' monopolization allegations (verbatim copies of the

---

[5] Of course, it is senseless to argue that record companies "require" Apple to do anything. Apple's decision to contract with record companies to offer music for sale on iTMS is a voluntary one, and subject to contractual negotiations and agreements reached by Apple and the record companies. More precise, is to state (if true) that Apple has apparently *agreed* with record companies that Apple will offer some form of DRM for the record companies' music files that Apple sells on iTMS.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT
CASE NO.: C05-00037 JW
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\Opp MPA re MTD.wpd

monopolization allegations made in the original complaint) state a legally cognizable claim, and are not defeated by Apple's motion to dismiss. *See* Order Denying Motion to Dismiss Orig. Complt., at 6:8-9 ("The Court finds that plaintiff has sufficiently pled the elements for a claim of monopolization to survive a Fed. R. Civ. P. 12(b)(6)."). That record companies demanded that Apple take this conduct, even if true and properly considered by this Court, does not alter that finding.

C.  **Apple's Repeat Of Its Previously Failed *Trinko* Argument Is Again Unavailing.**

Tellingly, though Apple claims that the allegations made in *Tucker* justify its filing of a renewed motion to dismiss the already upheld monopolization claims, Apple never explains how the supposedly new *Tucker* allegations now support Apple's dismissal argument. In fact, after mentioning the *Tucker* allegations (without ever citing to or quoting them) in the introduction section of its brief, Apple never again mentions them before launching on a rehash of its previously filed arguments against the monopolization claims. Instead, Apple essentially admits that it is merely repeating the arguments that it previously raised and that were denied by this Court because it claims that, "[t]he Court did not expressly address the *Trinko*-based argument." Dft's Br. at 11:18-19. It now claims again that, "the *Trinko* analysis disposes of the monopolization claim in the second amended complaint." *Id*. at 11:20-21. To the extent that Apple believed that the Court failed to address arguments properly presented to it, its recourse would have been to seek leave to file a motion for reconsideration on that basis. *See* Civil L.R. 7-9(b)(3) (proper basis to seek leave to file motion for reconsideration is that argument of "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."). Certainly recognizing that the Court did not actually "fail to consider the Trinko issue" Apple never sought leave to file for reconsideration and, instead, filed an Answer to the original complaint. It now improperly seeks to ignore this Court's prior ruling and rehashes the same arguments that the Court already denied in upholding the original monopolization claims. *Accord Maxwell Stepanuk, Jr., v. State Farm*, 1993 WL 166748, at *4 (E.D. Pa. May 14, 1993) ("a

motion for reconsideration may not be used by litigants to simply to 'rehash' arguments and facts previously presented to the court, or to give an unhappy party one more chance to try and sway the court.").

In any event, as was made clear in Slattery's opposition to Apple's motion to dismiss the monopolization claims of the original complaints, Apple's reliance on *Trinko* has no place here. In *Verizon Communications v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004), the Supreme Court was called upon to decide whether a telecommunications carrier that was subject to regulation by the Telecommunications Act of 1996 could be held liable for unlawful monopolization when the extent of its alleged wrongdoing was its failure to live up to the statutory requirements imposed upon it solely by the Telecommunications Act. *Id.* at 401. Specifically, under Section 251 of the Telecommunications Act, Verizon was required to assist its rivals by allowing competing local exchange carriers to interconnect to or otherwise purchase elements from Verizon's network. *Id.* at 402-03. The *Trinko* plaintiffs, relying on FCC findings that Verizon had failed to properly adhere to this statutory requirement, sued Verizon for unlawful monopolization, claiming that Verizon's failure to assist its rivals as was required under the Telecommunications Act thwarted competition and led to antitrust liability. *Id.* at 404. The Supreme Court rejected the claim because it noted that the allegations, while possibly stating a violation of the Telecommunications Act, did not state a violation of the Sherman Act, as the antitrust laws generally do not require a firm to affirmatively assist its rivals. *Id.* at 407-10.

Of significance, in *Trinko*, Verizon had not taken any affirmative act to shut out competition. Rather, its alleged antitrust liability was predicated solely on its failure to fully adhere to Section 251 of the Telecommunications Act, which called for it to assist its rivals. *Id.* Here, by contrast, the issue is not whether Apple failed to assist its rivals. Instead, the complaint alleges that Apple took affirmative steps of its own to ensure that no portable hard-drive digital music player other than Apple's iPod could ever directly play music sold by Apple's iTMS. The complaint documents at least two such acts undertaken by Apple to ensure that such competition would be stifled. First, the SAC alleges that Apple rigged and altered the open-source AAC format by embedding within it a proprietary software code that would prevent portable hard-drive digital music players other than the

9

iPod from directly playing iTMS files. *See* SAC, at ¶¶ 38-44. Had Apple not undertaken that conduct, the SAC alleges that numerous other players would have been able to directly play iTMS files. *Id.* at ¶ 44. Second, the SAC alleges that once competing vendors like RealNetworks sold files compatible with Apple's iTMS for play on the iPod, Apple once again altered its proprietary code so that iTMS files and RealNetworks' files would no longer be compatible, and RealNetworks' music files could again not be played on the iPod. *See* SAC, at ¶¶ 48-50. At the same time, Apple threatened consumers not to purchase RealNetworks music files, or Apple would disconnect their iPod connectivity in the future. *Id.* at MBOL182\f"TimesNewRoman"\s12¶ 50-51.

These affirmative anticompetitive acts allegedly undertaken by Apple suffice to take this case out of the realm of *Trinko*. Of course, the whole construct of applying *Trinko* to this case in the first place is wholly misguided. In *Trinko*, the Court underscored that Verizon was under a statutorily compelled obligation to assists its rivals under the Telecommunications Act, and hence its alleged breach of that duty could not be used to discern anticompetitive intent. Here, it is senseless to say that Apple was statutorily compelled to do anything. It is senseless to argue that record companies, much less any statute "requires" Apple to do anything, as Apple implies. Apple's decision to contract with record companies to offer music for sale on iTMS is a voluntary one, and subject to voluntary contractual negotiations and agreements reached by Apple and the record companies. At most, what one can state (if true) is that Apple has apparently voluntarily *agreed* with record companies that Apple will offer some form of DRM for the record companies' music files that Apple sells on iTMS. But the very nature of this voluntary agreement, and its contours (i.e. that Apple's DRM will lockout other portable players other than the iPod) is precisely the reason why *Trinko's* "compelled assistance" rationale can never apply to this case from the outset, and presumably why this Court did not subscribe to it when Apple raised it in its original motion to dismiss.

Here, unlike in *Trinko*, the allegation is that Apple altered the existing AAC encoding format into an Apple proprietary "AAC protected" format whose purpose is to prevent portable hard drive digital music players other than the iPod from directly playing iTMS music files. Apple acknowledges the effect of this change by Apple to the AAC format, noting on its website that, "[t]o

10
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT
CASE NO.: C05-00037 JW
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\Opp MPA re MTD.wpd

play AAC and AAC Protected songs, your iPod must have iPod Software 1.3 or later installed. Not all digital music players can play AAC songs and only iPod can play AAC Protected songs." SAC at ¶ 42 (emphasis added), *quoting* Ex. A to SAC (Apple's website). This Court and the Ninth Circuit have recognized that an alleged monopolist's design changes can trigger antitrust liability for unlawful monopolization when they are designed for the purpose of excluding competitors. Specifically, in *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp 965 (N.D. Cal. 1979), *aff'd sub. nom. Transamerica Computer Co., Inc. v. IBM*, 698 F.2d 1377 (9th Cir. 1988), this Court explained that:

> It is not difficult to imagine situations where a monopolist could utilize the design of its own product to maintain market control or to gain a competitive advantage. For instance, the PCMs were only able to offer IBM's customers an alternative because they had duplicated the interface, the electrical connection between the IBM System/360 CPU and the IBM peripheral (or peripheral subsystem). *Had IBM responded to the PCMs' inroads on its assumed monopoly by changing the System/360 interfaces with such frequency that PCMs would have been unable to attach and unable to economically adapt their peripherals to the ever-changing interface designs, and, if those interface changes had no purpose and effect other than the preclusion of PCM competition, this Court would not hesitate to find that such conduct was predatory. Or, if a monopolist frequently changed the teleprocessing interface by which its computers communicate with remote terminals in such a way that its terminals would continue to function while others would fail, and, if the only purpose and effect of the change was to gain a competitive advantage in the terminal market (where the monopolist lacked monopoly power), that use of monopoly power would be condemned.*

*Id.* at 1002-03 (emphasis added).

The Court went on to explicate the legal standard that by which an alleged monopolist's design changes would be scrutinized to determine whether they were subject to antitrust liability for unlawful monopolization:

> A more generalized standard, one applicable to all types of otherwise legal conduct by a monopolist, and one recently adopted by the Ninth Circuit, must be applied to the technological design activity at issue here. If the design choice is unreasonably restrictive of competition, the monopolist's conduct violates the Sherman Act.[FN105] This standard will allow the factfinder to consider the effects of the design on competitors; the effects of the design on consumers; the degree to which the design was the product of desirable technological creativity; and the monopolist's intent, since a contemporaneous evaluation by the actor should be helpful to the factfinder in determining the effects of a technological change.

*Id.* at 1003, *citing Sherman v. British Leyland Motors Corp.*, 601 F.2d 429, 452 n.46 (9th Cir. 1979).

*In re IBM Peripheral* is not a lone holding. In. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998), a patentee, C.R. Bard, faced an antitrust counterclaim. A competitor alleged that C.R. Bard monopolized the market for replacement needles for its patented biopsy guns by implementing changes to its biopsy gun that precluded uses of replacement needles on the gun unless they were manufactured by C.R. Bard. *Id.* at 1382. Citing to *In re IBM Peripherals*, the Federal Circuit held that "in order to prevail on its claim of an antitrust violation based on Bard's modification of its Biopty gun to prevent the use of competing replacement needles, M3 was required to prove that Bard made a change in its Biopty gun for predatory reasons for predatory reasons, i.e. for the purpose of injuring competitors in the replacement needle market, rather than improving operation of the gun." *Id.*, citing *In re IBM Peripherals*, 481 F. Supp. at 1002. The Federal Circuit upheld the jury verdict against C.R. Bard on the monopolization claim after finding that "the evidence was sufficient to support . . . the jury's conclusion that Bard maintained its position by exclusionary conduct, to wit, modifying its patented gun in order to exclude replacement needles." *Id.*

Here, plaintiffs plead the same elements to sustain a monopolization claim. They allege that Apple changed the ACC format to the AAC Protected format not for any technological benefit, but to exclude competing portable hard-drive digital music player from playing iTMS songs. They also allege that Apple again changed its format once RealNetworks began selling iTMS compatible files for play on the iPod so that RealNetworks would be locked out. Thus, the theory actually pled in the SAC, as opposed to the theory concocted by Apple's renewed motion to dismiss, is unaffected by *Trinko*. Apple's motion to dismiss the monopolization claim should be rejected once again.

### III. BECAUSE THE FEDERAL ANTITRUST CLAIMS SURVIVE THE CARTWRIGHT CLAIM SURVIVES AS WELL

Apple's renewed attempt to dismiss the Cartwright Act claim (Count V) must also be denied. The Court already rejected Apple's motion to dismiss the Cartwright Act count of the original complaint. *See* Order Denying Apple's Mtn. To Dismiss Original Complaint, at 6:28-7:8. It did so because it found that Slattery's original Cartwright Act claim had properly "incorporated the elements of the Sherman Act violation." *Id.* at 7:7. The same is true here, as the SAC's

12

Cartwright Act claim is a verbatim copy of the Cartwright Act claim alleged in the original complaint. Further, as already shown Apple's attacks on the tying claims fail, and tying liability suffices to establish liability under the Cartwright Act.

## IV. THE UCL CLAIM IS NOT SUBJECT TO THE MOTION TO DISMISS

Count VI of the SAC asserts a claim under California's Unfair Competition Law, Section 17200 of the California Business and Professions Code. Apple's motion does not seek to dismiss this count of the SAC. *See* Dft's Br. at 1:9 (seeking as "relief sought" only the dismissal of Counts I-V and Count VII of the SAC). Thus, the UCL claim must be upheld.

## CONCLUSION

For the foregoing reasons, Apple's motion to dismiss the Second Amended Complaint must be denied.

Dated: October 30, 2006

Michael D. Braun
BRAUN LAW GROUP, P.C.

By: S/ MICHAEL D. BRAUN
12400 Wilshire Boulevard
Suite 920
Los Angeles, CA 90025
Tel: (310) 442-7755
Fax: (310) 442-7756

Roy A. Katriel
THE KATRIEL LAW FIRM, P.C.
1101 30th Street, NW
Suite 500
Washington, DC 20007
Tel: (202) 625-4342
Fax: (202) 625-6774

Brian P. Murray
Jacqueline Sailer
MURRAY, FRANK & SAILER LLP
275 Madison Avenue
Suite 801
New York, NY 10016-1101
Tel: (212) 682-1818
Fax: (212) 682-1892

**Attorneys for Plaintiffs**

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | STATE OF CALIFORNIA ) |
|   | )ss.: |
| 3 | COUNTY OF LOS ANGELES ) |

I am employed in the county of Los Angeles, State of California, I am over the age of 18 and not a party to the within action; my business address is 12400 Wilshire Boulevard, Suite 920, Los Angeles, CA 90025.

On October 30, 2006, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Michael D. Braun, I filed and served the document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT**

The ECF System is designed to send an e-mail message to all parties in the case, which constitutes service. According to the ECF/PACER system, for this case, the parties served are as follows:

| | |
|---|---|
| Roy A. Katriel, Esq. | rak@katriellaw.com |
| Jacqueline Sailer, Esq. | jsailer@murrayfrank.com |

**Attorneys for Plaintiffs**

| | |
|---|---|
| Caroline N. Mitchell, Esq. | cnmitchell@jonesday.com |
| | mlandsborough@jonesday.com |
| | cyip@jonesday.com |
| Robert A. Mittelstaedt, Esq. | ramittelstaedt@jonesday.com |
| | ybennett@jonesday.com |
| | arsand@jonesday.com |
| Adam Richard Sand, Esq. | arsand@jonesday.com |

**Attorneys for Defendant**

On October 30, 2006, I served the document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-V AND VII OF THE SECOND AMENDED COMPLAINT**

by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:

///

///

///

Brian P. Murray, Esq.
MURRAY, FRANK & SAILER LLP
275 Madison Avenue
Suite 801
New York, NY 10016
Tel: (212) 682-1818
Fax: (212) 682-1892

**Attorneys for Plaintiffs**

I served the above document(s) as follows:

BY MAIL. I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in an affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I further declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 30, 2006, at Los Angeles, California 90025.

                                                                     s/ LEITZA MOLINAR
                                                                        Leitza Molinar