# EXHIBIT B

ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.: 5:09-CV-01911-JW<br><br>DECLARATION OF STEVEN A. SKALET IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS<br><br>Date: February 27, 2012<br>Time: 9:00 a.m.<br>Location: San Francisco Courthouse<br>Courtroom 9, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Judge: Honorable James Ware |

ZELDES & HAEGGQUIST, LLP

I, Steven A. Skalet, declare as follows:

1.      I am an attorney duly licensed to practice before all courts of the State of Maryland and the District of Columbia and am admitted to this Court *pro hac vice*. I am a principal partner with the law firm of Mehri & Skalet, PLLC, one of Plaintiffs' counsel in the above-captioned matter (the "Litigation") and Interim Lead Counsel for the Class.

2.      I have personal knowledge of the matters set forth in this declaration, and those specified to be on information or belief I believe to be true based upon my role in this case, and if called as a witness, I could and would testify competently thereto. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards.

3.      The tasks undertaken by my firm in this Litigation can be summarized as follows:

(a)      Investigation of potential claims;

(b)      Review and filing of complaint;

(c)      Consultation with and retention of experts;

(d)      Review of defendant's document production;

(e)      Mediation; and

(f)      Drafting and review of final approval papers.

4.      The schedule attached hereto as <u>Exhibit 1</u> is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

5.      I estimate that my firm will spend an additional 100 hours, which have not been included in Exhibit 1, drafting the final approval papers, preparing for and attending the final

ZELDES & HAEGGQUIST, LLP

approval hearing, addressing member opt-outs and objections, and consulting with the claims administrator and defense counsel to facilitate settlement administration.

6.      The total number of hours expended on this Litigation by my firm is 660.25 hours.  The total lodestar for my firm is $388,221.25, consisting of $378,762.50 for attorneys' time and $9,458.75 for professional support staff time.

7.      My firm's lodestar figures are based upon the firm's billing rates times the number of hours worked and  do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.      As detailed in Exhibit 2, my firm has incurred a total of $42,134.40 in unreimbursed expenses in connection with the prosecution of this Litigation.

9.      The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

10.      With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed this 19th day in December, 2011, in Washington, DC.

_____
STEVEN A. SKALET

EXHIBIT 1

# EXHIBIT 1

*In re MagSafe Apple Power Adapter Litigation*, Case No. 5:09-cv-01911-JW

## MEHRI & SKALET, PLLC

### TIME REPORT -- Inception through December 12, 2011

| Name | Total Hrs. | Hourly Rate | Total Lodestar |
|------|-----------|-------------|----------------|
| **Partners** | | | |
| Craig Briskin | 410.50 | $600.00 | $246,300.00 |
| Cyrus Mehri | 1.00 | $695.00 | $695.00 |
| Steve Skalet | 176.50 | $695.00 | $122,667.50 |
| | | | |
| **Attorneys** | | | |
| Danielle Davis | 26.75 | $300.00 | $8,025.00 |
| Ellen Eardley | 0.25 | $450.00 | $112.50 |
| Karla Gilbride | 2.75 | $350.00 | $962.50 |
| | | | |
| **Law Clerks** | | | |
| Fabian McNally | .25 | $200.00 | $50.00 |
| | | | |
| **Professional Support Staff** | | | |
| Devi Chandrasekaran | 3.00 | $195.00 | $585.00 |
| Ian Hawkins | 19.00 | $195.00 | $3,705.00 |
| Rachel Heidmann | 26.25 | $195.00 | $5,118.75 |
| | | | |
| **TOTAL LODESTAR** | **666.25** | | **$388,221.25** |

EXHIBIT 2

# EXHIBIT 2

*In re MagSafe Apple Power Adapter Litigation*, Case No. 5:09-cv-01911-JW

## MEHRI & SKALET, PLLC

**EXPENSE REPORT -- Inception through December 12, 2011**

| Categories | Amount |
|---|---|
| Computer Services | $97.63 |
| Conference Calls | $153.17 |
| Consultants | $1,600.00 |
| Copies | $540.90 |
| Facsimile | $1.50 |
| Filing Fees | $200.00 |
| Litigation Fund | $27,960.00 |
| Lodging | $3,328.48 |
| Meals | $624.67 |
| Mediation | $787.50 |
| Lexis/Westlaw Research | $199.78 |
| Postage | $19.39 |
| Printing | $475.65 |
| Reference Materials | $1,266.95 |
| Supplies | $298.38 |
| Travel | $4,371.44 |
| UPS | $208.96 |
| | |
| **TOTAL EXPENSES:** | **$42,134.40** |

EXHIBIT 3



# Firm Resume

**Mehri & Skalet, PLLC**
**1250 Connecticut Ave., NW, Suite 300**
**Washington, DC 20036**
**Tel: (202) 822-5100**
**Fax: (202) 822-4997**
**www.findjustice.com**

## OUR BACKGROUND AND COMMITMENT

*Mehri & Skalet PLLC* (M&S) believes that powerful institutions and corporations are not above the law. This belief inspires our work and informs our practice. Whether the target is deceptive sales practices or unfair employment practices, M&S uses the legal system to correct the imbalance of power that often favors big business over private citizens.

In cases ranging in focus from consumer protection to civil rights to corporate fraud, we are tenacious, creative and public-spirited in our approach to legal work. We do high impact cases with high integrity, and have a track record for getting far-reaching results. We prove every day that the law can be used to achieve fairness and justice.

M&S is a law firm with seasoned attorneys who fight complex cases on behalf of employees, consumers, investors, citizen groups and small businesses. M&S attorneys bring together decades of front-line experience in litigation and issue advocacy and build upon strong ties with public interest, consumer, labor, whistleblower and civil rights organizations. M&S combines superior legal work and advocacy to serve our clients.

Our search for justice for our clients takes us to federal and state courts across the country, where we primarily litigate civil and consumer rights class actions; cases involving corporate abuse in real estate, financing and other areas; whistleblower suits alleging fraud on behalf of the government; as well as individual cases with a public interest impact.



## Civil Rights

Mehri & Skalet, PLLC, has represented employees in discrimination cases filed across the United States. Currently the firm is actively investigating, litigating or participating in settlement talks in numerous matters involving employment discrimination. Mehri & Skalet also prosecutes cases regarding racial bias against consumers in the market place.

Using federal and state anti-discrimination laws, Mehri & Skalet represents individuals fighting unlawful discrimination that adversely impacts their employment, business, or financial circumstances. While M&S maintains a broad-based practice, many of our cases fit into these general categories of discrimination:

* "glass ceiling" and discrimination in promotions and advancement

* discrimination in pay, and distribution of business opportunities

* discrimination in employer testing and other selection procedures

* discrimination in contract formation and financial endeavors

## Partnerships with the Non-Profit Community

M&S has forged creative partnerships with key civil rights organizations to address inequities in the work place:

### *The Madison Avenue Project*

The Madison Avenue Project was formed by the NAACP and M&S to reverse the widespread, entrenched discrimination against African American professionals employed in the advertising industry. For more than forty years, the advertising industry has been investigated and charged by government agencies for discriminatory employment practices which resulted in a deficiency of African American new hires and promotions. The industry has fallen far short in adequately addressing these disparities. The Madison Avenue Project seeks to redress the historical discrimination against African American advertising professionals and to create systematic changes in the culture, policies, and practices of the advertising agencies to promote diversity and equality.



### *The Women on Wall Street Project*

On April 6, 2004, the National Council of Women's Organizations asked M&S to coordinate an investigation of eight financial services companies that would be called the Women on Wall Street Project. The NCWO asked our firm to investigate because it had heard from women in many of these companies. Their stories indicate that many of America's top financial services companies are rife with gender discrimination, ranging from pay inequity and glass ceiling issues to sexual harassment. Since 2004, we have been receiving intake calls from employees at several financial sector companies, and we, in collaboration with experienced co-counsel, are investigating allegations of gender discrimination.

### Key Civil Rights Cases

A sample of current and past civil rights cases prosecuted by M&S lawyers includes:

#### * Roberts v. Texaco

Six plaintiffs filed Roberts v. Texaco as a class action in 1994, alleging that the company discriminated against African-American employees by failing to promote and adequately compensate them in relation to Caucasian employees. Each of the six plaintiffs hit a glass ceiling when they tried to advance to management. In addition, in an industry that was known to be behind in diversity, Texaco's minority representation was significantly lower than others in the oil industry. Discovery revealed that African Americans were significantly under-represented in higher levels of management. The investigation also revealed that Texaco maintained a secret list of "high potential" employees and no African Americans were on that list. The case was settled in 1996 for what was the largest sum ever allowed in a race discrimination case, $176.1 million. In addition to damages, the settlement called for pay raises for about 1,400 black employees as well as systemic programmatic relief.

#### * Ingram v. The Coca-Cola Company

Four named plaintiffs represented a class of 2,200 current and former salaried, African-American employees of Coca-Cola in this class action filed April 1999 in the Northern District of Georgia. The case involved race discrimination in promotions, compensation and evaluations. The plaintiffs alleged a substantial difference in pay between African-American and white employees; a "glass ceiling" that kept African-



Americans from advancing past entry-level management positions; "glass walls" that channeled African-Americans to management in areas like human resources and away from power centers such as marketing and finance; and senior management knowledge of these problems since 1995 and a failure to remedy them.

On June 7, 2001, the Court approved a final Settlement Agreement, valued at $192.5 million and designed to ensure dramatic reform of Coca-Cola's employment practices. A court-appointed task force chaired by Alexis Herman, former Secretary of Labor, issued several annual task force reports highlighting the progress Coca-Cola made in complying with the Settlement Agreement.

### * <u>Robinson v. Ford Motor Company</u>

M&S and the Equal Employment Opportunity Commission ("EEOC") each filed a lawsuit on December 27, 2004, challenging Ford's procedures for selecting apprentices nationwide. These suits alleged that, since 1997, Ford had discriminated against African-Americans on the basis of race in selecting apprentices. The two cases were consolidated in the Southern District of Ohio.

A Settlement Agreement was approved by Judge S. Arthur Spiegel on June 15, 2005. Judge Spiegel said "The settlement provides substantial monetary and non-monetary benefits to the class… as well as extensive systemic relief. The new testing procedures benefitted not only the class members, but potentially also all employees and future employees of Ford." The EEOC held a Commissioners' meeting that focused on this settlement and removing bias in testing procedures on May 16, 2007. A companion case, <u>Love v. Automotive Components Holdings, LLC et al.</u> received final approval on December 20, 2007.

### * <u>Augst-Johnson v. Morgan Stanley & Co., Inc.</u>

On June 22, 2006, M&S filed a lawsuit against Morgan Stanley on behalf of female financial advisors. The complaint alleged that Morgan Stanley engaged in systematic gender discrimination against women financial advisors with respect to compensation, account assignments, partnership participation, promotions, training and mentoring and other terms and conditions of employment, all in violation of Title VII of the Civil Rights Act of 1964, as amended. On October 26, 2007, the U.S. District Court of the District of Columbia approved a class action settlement with Morgan Stanley and the class of approximately 2,700 women Financial Advisors and



Registered Financial Advisor Trainees employed at Morgan Stanley.

The five-year settlement included a lump sum payment by Morgan Stanley of $46 million and significant programmatic relief. The parties estimate that, in addition to the Settlement Fund, the changes called for in the programmatic relief will increase the earnings of women financial advisors by at least $16 million over five years and the diversity efforts by the Company over five years will cost an additional $7.5 million. The parties jointly selected an independent diversity monitor to oversee the settlement and two outside experts to develop non-discriminatory human resource policies and procedures.

### *__Amochaev v. Smith Barney__

On March 31, 2005, plaintiffs in Northern California filed a nationwide class-action lawsuit on behalf of female Financial Advisors who alleged that Smith Barney discriminated against them in account distribution, business leads, referral business, partnership opportunities, and sales support. On August 13, 2008, U.S. District Judge Phyllis Hamilton granted final approval to a settlement of this gender discrimination case against Smith Barney. The settlement provides significant programmatic relief, including an independent diversity monitor, as well as over $33 million to the class.

### * __Maxey v. ALCOA__

On February 14, 2002, five named plaintiffs representing a class of hourly African-American and Hispanic Cleveland Works employees of ALCOA, Inc., filed a class action lawsuit in the Northern District of Ohio. The case involved allegations that ALCOA's system of selecting apprentices at ALCOA'S Cleveland Works Facility discriminated on the basis of race and national origin. In 2003 the parties reached an innovative settlement, which the Court approved. The settlement called for the creation of a new testing procedure created by a jointly selected independent expert, the selection of new apprentices from the class, and a $500,000 Educational Foundation to benefit the Black and Hispanic communities in Cleveland. The Settlement also provides monetary relief of $10,000 in compensatory damages to each class member who took the apprenticeship selection test since February 14, 1996, and did not enter an apprenticeship program.

### * __Carter v. Wells Fargo Advisors__

In 2009, as part of our Women on Wall Street Project, M&S along with co-

counsel filed a class action lawsuit against Wachovia Securities, LLC, alleging that the company engaged in systemic gender discrimination against its female financial advisors. In December 2010, the parties reached a proposed class settlement that includes a $32 million fund from which awards, fees and costs will be paid. The settlement also requires the company to make significant changes to its internal policies that affect the distribution of business opportunities, including the appointment of an independent monitor and a jointly selected expert. In January 2011, the Court granted the parties' Joint Motion for Preliminary Approval of the Settlement. Formal notice to potential class members is underway.

### * Norflet v. John Hancock Life Insurance Company

On July 7, 2004, M&S, along with co-counsel, initiated a ground-breaking class action lawsuit against John Hancock Life Insurance for its company-wide policy prohibiting the sale of life insurance to African-Americans in the early to mid-20th century. The lawsuit also confronted John Hancock's practice of offering African-Americans substandard and seriously inferior life insurance products when it did sell insurance to African-Americans. The named Plaintiff is an African-American woman whose mother had purchased life insurance policies from John Hancock in 1940s and 1950s. The Court granted the Plaintiff's motion for class certification in September of 2007.

The parties reached a settlement in 2009, which created a $24 million fund to pay claims to the class plus fees and costs. There is also a large *cy pres* component of approximately $15 million, which is being distributed to organizations that benefit African-American communities by a court-appointed committee.

### Workers' Rights

Wage and hour laws exist to protect employees, who are often dependant upon their employers for financial security, from being exploited in the workplace. Similar to victims of discrimination, employees who have been denied wages or benefits are often unaware of how to enforce their rights. At M&S, we use our understanding of the law to ensure that workers receive the wages and benefits they have earned. The federal Fair Labor Standards Act (FLSA) requires that employers pay overtime to all non-exempt workers after forty hours a week. Many salaried or



commissioned workers may be considered non-exempt under federal law. In addition, numerous states provide greater worker protections than federal law, such as reimbursement of most expenses, paid meal and rest periods, and higher minimum wage.

Misclassification of employees as non-exempt is one of the most common violations of the FLSA. Drawing on our experience in the financial services industry, M&S closely monitors the impact of developments wage and hour law on this industry. For example, in 2008, M&S, along with co-counsel, filed suit on behalf of a putative class of Bank of American mortgage loan officers who were improperly denied reimbursement of expenses, in violation of California law. In September 2010, the Court approved the class action settlement, which provided for payment of more than $8 million to class members.

## Real Estate/ Housing/Lending

Guided by the expertise of M&S principal Steve Skalet, who has over 35 years of litigation and transactional experience in real estate and financial fraud, M&S represents clients in cases involving real estate, lending and debt collection practices, and defective construction materials.

In the class action context, the firm handles cases under the Equal Credit Opportunity Act, Truth in Lending Act, Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act and other federal and state consumer protection statutes.

### *Bennett v. HUD (Reverse Mortgages)

Representing three elderly homeowners, M&S and AARP Foundation Litigation filed suit against the U.S. Department of Housing and Urban Development (HUD) on March 8, 2011. Plaintiffs allege that hundreds, and possibly thousands, of seniors whose spouses obtained HUD-insured reverse mortgages on their homes are facing foreclosure due to improper changes in HUD's rules governing reverse mortgages. The Home Equity Conversion Mortgage (HECM) program, created by federal statute, provides insurance and establishes ground rules for borrowers and lenders creating reverse mortgages. Reverse mortgages allow property owners who have significant equity in their homes the option of receiving a loan or monthly payment for the remainder of their life. A reverse mortgage is secured by the

property and is payable only upon the homeowner's death or if they no longer occupy the property.

The HECM statute clearly states, and HUD had always assured the public, that HECM mortgages are "non-recourse loans," meaning that even if the property value diminished after the loan was issued, the borrower would never owe more than the current market value of the property. But, in 2008, just as home values across the country were plummeting, HUD changed course -- stating that spouses and heirs now had to pay the full mortgage balance if they wanted to retain the property, even if this amount was greater than the value of the property. HUD enforced this change retroactively, even for in-force mortgage agreements that reflected HUD's previous interpretation of HECM mortgages as non-recourse loans.

Shortly after the case was filed, M&S and the AARP Foundation Litigation achieved a widely acclaimed and significant victory for Plaintiffs on three of the four claims in the case when HUD withdrew the challenged policy adopted in 2008. The case continues on the issue of HUD's failure to comply with its obligation under the HECM statute to prevent displacement of spouses and families.

### * Homecomings Financial, LLC

M&S filed a putative class action against Homecomings Financial, LLC, alleging that it has engaged in unfair, unlawful, and deceptive business practices in the servicing of home-secured loan transactions. Plaintiffs allege that Homecomings assesses improper fees and charges, fails to provide meaningful explanation of those charges in its account statements, transaction records, and through its customer service department. The case was successfully settled.

### *Amerisave Mortgage Corporation

In 2011, M&S, along with co-counsel, filed a class action lawsuit in the California Superior Court for San Francisco County against Amerisave Mortgage Corporation for violating the Truth in Lending Act through their deceptive advertising practices in the selling of residential mortgages. The suit alleges that Amerisave promises customers they can quickly request a "lock-in" of low advertised online rates, requires the consumer to pay for a property appraisal prior to the rate

being locked-in, and then allows the lock in period to expire, locking the customer into the agreement at a higher rate.

Through this action M&S intends to provide financial redress to our clients who have already been victimized by this scheme. We are also seeking injunctive relief to prevent a recurrence of this conduct on other unsuspecting mortgage applicants.

### * Twin Towers Tenant Association v. Capitol Park Associates

M&S also advocates for tenants' rights. We have been lead counsel in a series of cases in the District of Columbia fighting to protect and preserve tenants' rights of first refusal whenever a residential apartment building is sold. We assist tenant associations in purchasing their buildings establishing condominium or cooperatives. Where appropriate, we seek innovative ways to preserve affordable housing. Determined to keep the project as long-term affordable housing, we worked with community representatives, real estate financers, and federal regulators to help the Tenants' Association implement a unique long-term solution. Not only did M&S help save the homes of more than 800 people, it secured their futures by empowering them with eventual ownership of the properties.

### * Metropolitan Money Store

*Mehri & Skalet* represented numerous homeowners who had been stripped of hundreds of thousands of dollars of home equity through a mortgage rescue scam that lured individuals facing potential foreclosure to "temporarily" sign away the deeds to their homes with a promise of redemption after their credit improved through credit counseling. This practice allowed scam artists to gain access to home equity which was then stolen from the homeowner. The *Washington Lawyers' Committee on Civil Rights and Urban Affairs* referred the clients to *Mehri & Skalet*, which provided *pro bono* representation to these victims of fraud. In 2009, we successfully resolved the cases to protect the homeowners.

M&S also handles both individual and class action product liability cases, with an emphasis on defective construction materials, such as defective water pipes (polybutylene pipe), defective exterior siding products (artificial stucco, siding or

roofing), and fire retardant plywood (FRT Plywood). Each of these products were foisted on an unsuspecting public by manufacturers who refused to voluntarily take responsibility for their defective products, which caused enormous economic and health problems.

## Consumer Protection

The strength and integrity of our practice benefits from our attorneys' strong ties to premier consumer advocate organizations, such as the Center for Auto Safety, the Center for Science in the Public Interest and Public Citizen.

Mehri & Skalet remains true to its roots in the U.S. consumer movement. In each class action we investigate or file, we never lose sight of the ultimate beneficiaries of our work – the consuming public.

M&S attorneys investigate and litigate all types of consumer and small business protection issues, including:

* Automotive and other consumer product defects and recalls

* Antitrust, unfair pricing and deceptive billing practices

* Predatory lending, credit and insurance schemes

* Consumer and small business on-line and support services

* Fraud or unfair practices in real estate, banking and finance

* Medical, pharmaceutical and healthcare-related fraud

M&S is litigating or has settled a number of consumer class actions. These include:

### * Schaffer v. Hewlett Packard Company

This lawsuit alleged that certain models of the HP Pavilion desktop computer contained a defective motherboard that caused the computers to suffer performance problems such as "hanging, freezing and locking." HP denied these allegations and admitted no wrongdoing. M&S negotiated a settlement with HP that provided class members with a direct monetary payment, reimbursement of out-of-pocket expenses, and/or a discount certificate. A federal judge in Michigan approved the settlement in



2006.

## * <u>Niewinski, et al. v. Resurrection Health Care Corporation</u>

On September 16, 2004, M&S filed a lawsuit in Illinois state court on behalf of uninsured patients against Resurrection Health Care Corporation (Resurrection), a not-for-profit health care system that includes nine hospitals in the Chicago metropolitan area. The suit alleged that Resurrection charged uninsured patients substantially more than patients covered by insurance, and failed to provide poor patients with an adequate opportunity to apply for financial assistance to pay their bills. Plaintiffs further alleged that in addition to price-gouging the uninsured and reducing its charitable expenditures, Resurrection employed unjust methods of collecting overdue bills, harassing even the poorest patients with collection lawsuits and garnishing their wages. In January 2009, the court approved a settlement in which Resurrection agreed to recalculate patients' bills and give refunds to class members totaling as much as $3 million, as well as giving a 25 percent discount to uninsured patients.

## * <u>Lazo v. Mercury Marine</u>

In the fall of 2004, M&S successfully settled this class action lawsuit against Mercury Marine for excessive problems with their 2000-2004 2.5L and 3.0L OptiMax Engines. The problem was generated from the powerhead and/or direct fuel injection system, which at times caused engines to cut off or freeze. Pursuant to the settlement, all members of the class were given an extended warranty and/or a rebate on Mercury or QuickSilver Products.

## * <u>Car Dealership Overcharges</u>

Some new car dealers overcharge their customers for legitimate fees or add bogus charges when they lease a car. M&S has been named class counsel in several class actions in New Jersey charging car dealers with consumer fraud for such overcharges. Many of these cases have recently settled, tens of thousands of Class Members each receiving certificates redeemable for both cash and credit.

## * <u>Telephone Service Overcharges</u>

M&S brought several cases concerning overcharges and deceptive practices against local, long distance, and cell phone service providers. M&S settled a class



action against Verizon New Jersey, Inc. for failing to implement a small business discount.  Verizon overcharged Class Members by $1.01 per month for between one to four auxiliary phone lines. Under the terms of the settlement, Class Members will receive a payment or credit of $1.65 for each such overcharge.  M&S also brought a successful class action against Verizon-New Jersey for charging customers for inoperable services. The case also resulted in a substantial settlement.

### * <u>Ford Focus Brake Defects</u>

In 2002, M&S filed a class action against Ford Motor Company alleging defects in the front braking system of the 2000 and 2001 Ford Focus. M&S represented plaintiffs who alleged that the braking system contains a systemic defect that caused the front brake pads and rotors to wear out prematurely, forcing unsuspecting owners to spend hundreds of dollars in repairs and maintenance on a recurring basis. In December 2005, M&S, together with co-counsel, filed a motion to certify a class of all persons who purchased or leased one of these vehicles in the State of California. The motion contained multiple reports from experts, hundreds of pages of documents and depositions, and statements from clients. The Los Angeles County Superior Court certified a proposed class in 2006.   In July 2008, the court granted final approval of a settlement that provided full cash reimbursement for qualifying parts and labor for all California owners and lessees who experienced premature front brake wear, including reimbursement for brake pads and rotors.

### * <u>Mitsubishi Galant Brake Defects</u>

M&S settled a class action in 2004 against Mitsubishi for a defect in the brake system of the 1999 Mitsubishi Galant. The defect caused extremely premature wear on the rotors and brake pads grossly in excess of normal use. Plaintiffs raised claims of breach of warranty and consumer fraud. Mitsubishi denied all claims. The parties reached a settlement where Class Members received either an inspection and repair of the brake problem, a reimbursement of all out-of-pocket expenses of brake and/or rotor repairs, or a service voucher.

### * <u>Apple Computer</u>

M&S filed and settled a class action against Apple Computer, Inc. that obtained relief for a nationwide class of buyers who unwittingly purchased an Apple wireless networking product that was incompatible with America Online ("AOL").



The settlement secures out-of-pocket damages of $45 for each class member and changes to Apple's notice and packaging practices related to this product. The settlement was approved in 2002.

### * Bridgestone-Firestone, Inc.

In August 2000, M&S filed suit against Bridgestone-Firestone, Inc. in the first weeks of the company's massive tire recall effort. Farkas v. Bridgestone-Firestone sought to enjoin Firestone from discontinuing its policy of reimbursing customers for the cost of non-Firestone replacement tires. The restraining order obtained in Farkas was enforceable against Firestone on a nationwide basis and immediately produced a dramatic reversal in company policy. As a result, hundreds of thousands of Firestone customers retained the ability to replace their defective tires with tires from another manufacturer, and then seek reimbursement from Firestone -- thus speeding the efficient removal of millions of unsafe tires from our nation's roads.

## Antitrust and Commodities Manipulation

Vigorous enforcement of antitrust laws is essential to a free and fair marketplace. The Supreme Court has made clear that private antitrust lawsuits are an important part of antitrust enforcement, in *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972).

Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. Congress encourages private attorney general enforcement of antitrust laws. It is in the spirit of a "private attorney general" that M&S prosecutes antitrust class action litigation: to combat and deter anticompetitive practices, and to give wronged consumers and businesses a remedy for illegal behavior in the marketplace.

M&S also has experience in class actions under the Commodity Exchange Act, 7 U.S.C. § 1. This statute provides a private right of action to futures traders who were harmed by manipulative activity.

### * iPod Digital Music

M&S filed a class action complaint on behalf of a purchaser of Apple's iPod portable music device, alleging that Apple illegally "tied" its iPod portable music device and iTunes desktop software, in violation of federal and state antitrust and



consumer laws.  Indeed, Apple's CEO Steve Jobs bragged that iTunes is "the Microsoft of music stores."

Plaintiff alleges that Apple has deliberately altered the music and video files that are purchased on iTunes so that they only can be played on an iPod.  And music that is purchased from other music stores cannot be played on an iPod.  Because Apple has a monopoly in the market for music players and for online music, consumers are forced to use its products, and cannot purchase them from competitors.

M&S filed its complaint in December 2007.

**\* <u>Chocolate</u>**

Mehri & Skalet represents a consumer direct purchaser in an action against the major world manufacturers of chocolate, including Hershey, Mars, Nestle and Cadbury.  Plaintiff alleges that defendants engaged in a conspiracy to fix prices for chocolate in the worldwide market.  In the face of falling prices, defendants introduced a series of coordinated price increases, through secret meetings, and through their memberships in various industry groups.

Recent news reports reveal that one defendant, Cadbury, has applied for "amnesty" with the United States Department of Justice, meaning that it may be offering information about the conspiracy to federal authorities in exchange for favorable treatment.

**\* <u>Rail Freight</u>**

M&S represents a lumber company in a proposed class alleging that defendants, who provide rail freight transportation services, conspired to fix their prices.  Price-fixing is a "per se" violation of Section 1 of the Sherman Antitrust Act—a per se violation is a category of antitrust violation that is so pernicious that an inquiry into its reasonableness is unwarranted.

Defendants assess their customers' rail fuel surcharges, a separately identified fee on customer bills, which purportedly compensates defendants for increases in the cost of fuel. Plaintiff alleges that in fact, defendants agreed to compute the surcharge as a percentage of revenue, rather than as a percentage of the actual cost of fuel for the transport that defendants provide. In addition, defendants frequently exchanged



information as part of their agreement on the rates that would be charged, resulting in prices that moved in lockstep. As a result of this conspiracy, defendants were able to charge supracompetitve prices to the plaintiff and other customers. Plaintiff filed a complaint in federal district court in Washington D.C. in February 2008.

## Investor Protection

Corporate fraud at some of the nation's leading corporations has harmed countless institutional and individual investors. Scores of hardworking Americans have suffered losses in their pension funds, retirement accounts, college and general savings accounts as a result of fraudulent conduct. We believe that investors deserve zealous representation in their fight for a return of those assets. M&S represents institutional investors concerned about securities fraud and corporate governance, as well as 401(k) beneficiaries enforcing ERISA.

Founding partner Cyrus Mehri has represented shareholders in securities class actions for many years. His experience includes recovering assets for those involved in the elaborate scandals involving junk bonds committed by Ivan Boesky and Michael Milken in the 1980's, as well as savings and loan institutions. In addition, Mr. Mehri served as class counsel in *Florin v. NationsBank* in 1993, which restored $16 million to a pension plan that was bilked by company insiders at Simmons Mattress Company. And in 1991, *In re Bolar Pharmaceutical Co.* he helped to return over $25 million to defrauded shareholders. Mr. Mehri was also the principal attorney in *Roosevelt v. E. I. Dupont de Nemours and Co.*, which established the right for shareholders to go to federal court to require corporations to include proxy resolutions. M&S helped prosecute a securities fraud case against AOL Time Warner – one of the largest such cases in U.S. history, it settled for $2.4 billion. M&S's ERISA cases involve Visteon, Avaya and National City.

Mr. Mehri also co-authored a series of articles on securities enforcement and corporate governance including *Labor & Corporate Governance* articles entitled "Stock Option Equity: Building Democracy While Building Wealth" (November 2002), and "The Latest Retreat by the SEC" (February 2003). Mr. Mehri also co-authored an article in *The Journal of Investment Compliance* (Winter 2002/2003) entitled "Slipping Back to Business as Usual, Six Months After the Passage of Sarbanes-Oxley". Mr. Mehri co-authored a letter to the SEC regarding diversity in Board appointments.





# ATTORNEY BIOGRAPHIES

## Cyrus Mehri

Cyrus Mehri is a founding partner of the law firm Mehri & Skalet, PLLC.

The business press has long followed Mr. Mehri's work. The New York Times stated, "Mr. Mehri's vision for corporate America involves sweeping change, not the piece meal kind." Fast Company says "He is something of a one-man army in the battle against business as usual . . . [H]is impact - both in terms of penalties and remedies - is undeniable." In 2001, he was named by Regardie's Power magazine as one of "Washington's Ten Most Feared Lawyers" and in 2003, by Workforce magazine as "Corporate America's Scariest Opponent."

Mr. Mehri served as Class Counsel in the two largest race discrimination class actions in history: *Roberts v. Texaco Inc.* which settled in 1997 for $176 million and *Ingram v. The Coca-Cola Company*, which settled in 2001 for $192.5 million. Both settlements include historic programmatic relief, featuring independent Task Forces with sweeping powers to reform key human resources practices such as pay, promotions and evaluations.

Trial Lawyers for Public Justice named Mr. Mehri a finalist for "Trial Lawyer of the Year" in 1997 and 2001 for his work on the Texaco and Coca-Cola matters respectively.

In September of 2008, Mr. Mehri testified before the Senate Judiciary Committee alongside Supreme Court litigant Lilly Ledbetter. Mr. Mehri's testimony called for diversifying the pool of potential judicial nominations not just in terms of race and gender but also in terms of life and work experience.

In October of 2008, Mr. Mehri co-authored a paper called "21st Century Tools for Advancing Equal Opportunity: Recommendations for the Next Administration." This paper was released by the American Constitution Society along with papers by several other authors including Senator Ted Kennedy and Former Attorney General Janet Reno.

On April 6, 2004, Mr. Mehri, along with Martha Burk and the National Council of Women's Organizations announced a project called "Women on Wall Street." The project focuses on gender discrimination in financial institutions.

In 2007, Mehri & Skalet announced a $46 million settlement with Morgan Stanley on behalf of female financial consultants. In 2008, the firm announced a



comparable $33 million settlement with Smith Barney. Both are settlements that have sweeping reforms that will fundamentally change the allocation of business opportunities at these brokerage houses.

Mr. Mehri serves as lead counsel in *Robinson v. Ford Motor Company*. The settlement created a record 279 highly-coveted apprenticeship positions for African American employees as well as payment of $10 million. In a May 2007 EEOC Commissioners meeting, Mr. Mehri and others testified about this settlement's significance on testing procedures in the workplace.

On September 30, 2002, Mr. Mehri and Johnnie L. Cochran, Jr. released the report, *Black Coaches in the National Football League: Superior Performance, Inferior Opportunities*. The report became the catalyst for the NFL's creation of a Workplace Diversity Committee and the adoption of a comprehensive diversity program. The NFL now has a record number of African American head coaches. Mr. Mehri serves as counsel for the Fritz Pollard Alliance, an affinity group for minority coaches, front office and scouting personnel in the NFL.

Mr. Mehri represents institutional investors concerned about securities fraud and corporate governance. Mr. Mehri has a long history of representing defrauded investors, pensioners and consumers, as well as small businesses subjected to price-fixing, in other class actions. For example, in 1993 *Florin v. Nations Bank* restored $16 million to a pension plan that was bilked by company insiders at Simmons Mattress Company. In 1991, *In re Bolar Pharmaceutical Co*. returned over $25 million to defrauded shareholders. Mr. Mehri serves as co-lead counsel in numerous consumer class actions. Mr. Mehri helped to prosecute one of the largest securities cases in history, a $2.5 billion settlement with AOL Time Warner.

Mr. Mehri co-authorities a series of articles on securities enforcement and corporate governance including Labor & Corporate Governance articles entitled "Stock Option Equity: Building Democracy While Building Wealth" (November 2002) and "The Latest Retreat by the SEC" (February 2003). Mr. Mehri also co-authored an article in The Journal of Investment Compliance (Winter 2002/2003) entitled "Slipping Back to Business As Usual, Six Months After the Passage of Sarbanes-Oxley."

He is also the co-author of the article: "One Nation, Indivisible: The Use of Diversity Report Cards to Promote Transparency, Accountability, and Workplace Fairness"; Fordham Journal of Corporate and Financial Law, 9, 99-152 (with Andrea



Giampetro-Meyer & Michael B. Runnels).

For the 2008 National Employment Law Association Convention, Mr. Mehri co-authored a paper, "A 'Toolbox' for Innovative Title VII Settlement Agreements."

Mr. Mehri graduated from Cornell Law School in 1988, where he served as Articles Editor for the Cornell International law Journal. After law school, he clerked for the Honorable John T. Nixon, U.S. District Judge for the Middle District of Tennessee. Mr. Mehri has received the Outstanding Youth Alumnus Award from Hartwick College and the Alumni Award from Wooster School in Danbury, Connecticut "for becoming a beacon of good, positively affecting the lives of many." Most recently, Mr. Mehri was asked to give the 2009 Commencement Speech at Hartwick College and the Founder's Day Speech at Wooster School.

The Pigskin Club of Washington, DC granted Mr. Mehri, the prestigious "Award of Excellence."

In March 2003, the Detroit City Council passed a testimonial resolution honoring Mr. Mehri and wishing him "continued success in changing the fabric of America."

In 2007, Mr. Mehri was given the "Distinguished Visitor" Award by the Miami-Dade County Office of the Mayor and Board of County Commissioners at the Fritz Pollard Alliance's Second Annual Salute to Excellence Program.

Mr. Mehri is a frequent guest on radio and TV and is guest columnist for Diversity, Inc.


**Steven A. Skalet**

Steven A. Skalet is a principal and managing partner in the firm of Mehri & Skalet, PLLC. Mr. Skalet is involved in all aspects of the firm's litigation practice--especially in the areas of consumer and financial fraud--and continues his real estate and finance practice. Mr. Skalet has over 35 years of litigation and transactional experience in real estate, consumer fraud, bank fraud and class action litigation.

Mr. Skalet began his career with the Washington, D.C. firm of Melrod, Redman & Gartlan, where he worked on a number of American Civil Liberties Union cases, including a case granting women the right to employment with the U.S. Park Service as park police.

Mr. Skalet has had a varied litigation practice before state and federal courts

throughout his career.  From 1995 until the formation of M&S, Mr. Skalet practiced with Kass & Skalet, PLLC, a well-known real estate, litigation, complex business and consumer protection firm.  Prior to that, he and another lawyer formed a practice that focused on real estate and litigation, including consumer class actions under the Truth-in-Lending and Equal Credit Opportunity acts.  That firm grew to approximately 23 lawyers in 3 jurisdictions and, when it split up in 1995, was known as Kass, Skalet, Segan, Spevack & Van Grack, PLLC.

In 2001, Mr. Skalet and Cyrus Mehri started the firm of Mehri & Skalet, PLLC, concentrating in complex litigation and class actions.  The firm has developed a varied and successful litigation practice in state and federal courts.  Since its inception Mr. Skalet has been lead counsel or co-lead counsel in successful class action cases against Dell, Inc., Mercury Marine, Hewlett Packard, Sony, Ford, Verizon, Mitsubishi, Morgan Stanley, and many other companies.

Mr. Skalet has been an advisor to the Federal Reserve Board on credit and banking matters. He has served on the Montgomery County Advisory Committee reviewing the wholesale simplification of the Montgomery County Code.  He also served on the District of Columbia Bar Committee responsible for drafting form commercial leases and the Montgomery County Board of Realtors committee responsible for drafting residential real estate contracts.

Mr. Skalet has actively participated in Community Associations Institute activities and was Chair of the District of Columbia Legislative Action Committee for many years.  In 1999, and again in 2001, he was awarded the Public Advocate Award for his work on District of Columbia legislation. He is a frequent speaker and has authored numerous articles pertaining to real estate and community associations.

Mr. Skalet graduated from the University of Pennsylvania School of Law in 1971 and the University of Rochester in 1968.  He lives in Bethesda, Maryland with his wife, Linda, and has two grown sons.

**Craig L. Briskin**



Craig Briskin joined the Washington, D.C. office of Mehri & Skalet, PLLC as an associate in May 2007, and became a partner in 2009. He focuses his practice primarily on antitrust and consumer law.

Mr. Briskin is co-counsel with AARP in an action against the U.S. Department of Housing and Urban Development, concerning their alleged failure to protect seniors in the reverse mortgage program. He also is co-counsel with AARP in a proposed class action against Wells Fargo and Fannie Mae regarding their alleged failure to offer spouses and heirs of reverse mortgage borrowers the opportunity to purchase their family homes pursuant to federal statute. He serves as co-counsel with Center for Science in the Public Interest in *Hensley-McClean v. Safeway*, concerning Safeway's alleged failure to notify customers of Class I food recalls. Mr. Briskin also represents consumers in *Sonoda v. Amerisave*, concerning alleged deceptive sales practices by a leading online mortgage broker. And he is counsel in an action against Enlightened Wealth Institute, alleging fraud in the marketing and sale of EWI's real estate investment seminars. Mr. Briskin was class counsel in a case alleging a brake defect in the Ford Focus, which was successfully settled in 2008.

Prior to joining the firm, Mr. Briskin prosecuted antitrust and commodities class actions at Labaton Sucharow LLP in New York. Among other matters, Mr. Briskin represented a class of natural gas futures traders who claimed damages resulting from defendant natural gas traders' manipulation of prices through false reporting to industry publications. Settlements with defendants, the last of which were approved in June 2007, were in excess of $100 million. Mr. Briskin also represented consumers and third-party payors in several successful antitrust actions alleging that brand-name drugmakers blocked generic competition and charged supracompetitive prices for their products, through abuse of the patent system and sham litigation.

From 1999-2001, Mr. Briskin was an Equal Justice Works fellow at New York Legal Assistance Group. He represented indigent and primarily immigrant clients in welfare, disability and immigration matters, in administrative hearings, and in state and federal court.

Mr. Briskin graduated from Harvard College in 1994, and from Harvard Law School in 1998. Mr. Briskin served as a law clerk for Justice Alexander O. Bryner of



the Alaska Supreme Court from 1998 to 1999. In law school, he was a student attorney and board member of the Harvard Legal Aid Bureau, and a senior editor of the Harvard Civil Rights-Civil Liberties Law Review. He co-authored an article for that publication titled "The Waging of Welfare: All Work and No Pay?" 33 Harvard Civil Rights-Civil Liberties Law Review 559 (1998). During law school, Mr. Briskin interned for Public Citizen Litigation Group and the American Civil Liberties Union Lesbian and Gay Rights Project.

Mr. Briskin is a member of the state bars of the District of Columbia, New York and Massachusetts, and is admitted to practice in the Southern and Eastern Districts of New York, the District of Columbia, and the Court of Appeals for the District of Columbia and Ninth Circuits.

