1

2  Michael D. Braun (167416)
   BRAUN LAW GROUP, P.C.
3  12400 Wilshire Boulevard
   Suite 920
4  Los Angeles, CA 90025
5  Telephone: (310) 442-7755
   Facsimile: (310) 442-7756
6
7  Roy A. Katriel (pro hac vice)
   THE KATRIEL LAW FIRM
   1101 30th Street, NW Suite 500
8  Washington, DC 20007
9  Telephone: (202) 625-4342
   Facsimile: (202) 625-6774
10
11 Brian P. Murray
   MURRAY, FRANK & SAILER LLP
12 275 Madison Avenue, Suite 801
13 New York, NY 10016
   Telephone: (212) 682-1818
14 Facsimile: (212) 682-1892
15 Counsel for Plaintiff
16 [additional counsel appear on signature page]

17            IN THE UNITED STATES DISTRICT COURT
18         FOR THE NORTHERN DISTRICT OF CALIFORNIA

19 SOMTAI TROY CHAROENSAK AND          (
20 MARIANNA ROSEN, Individually and on  (   Civil Action No. C-05-00037 JW
   Behalf of All Others Similarly Situated (
21                                        (
                                          (
           Plaintiff                      (
22                                        (
                       v.                 (   PLAINTIFFS' NOTICE OF MOTION,
23                                        (   MOTION AND MEMORANDUM IN
   APPLE COMPUTER, INC.                   (   SUPPORT OF PLAINTIFFS' MOTION
24                                        (   FOR CLASS CERTIFICATION
                                          (
25           Defendant.                   (
                                          (   Hon. James Ware
26                                        (   Courtroom 8, 4th Floor
                                          (   Date: April 16, 2007 9:00 am
27
28

Dockets.Justia.com

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM IN SUPPORT ..............................................................................1

INTRODUCTION AND FACTUAL BACKGROUND ..................................................1

ARGUMENT ..........................................................................................................5

I.  PLAINTIFFS CHAROENSAK AND ROSEN MET THEIR BURDEN FOR
    ESTABLISHING THE REQUISITE ELEMENTS OF CLASS CERTIFICATION .............5

    A.  Charoensak and Rosen's Complaint Satisfies the "Numerosity" Requirement ........6

    B.  Charoensak, Rosen, and Their Counsel Satisfy the "Adequacy of Representation"
        Requirement of Rule 23 ....................................................................................7

    C.  Charoensak's and Rosen's Claims Satisfy the "Typicality" Requirement of
        Rule 23 ...........................................................................................................8

    D.  Charoensak's and Rosen's Complaint Satisfies the "Commonality" Requirement
        of Rule 23 ......................................................................................................10

        1.  Defining the Relevant Market Poses Common Questions of Fact Or
            Law ........................................................................................................10

        2.  Assessing Apple's Market Power Poses Common Questions of Fact Or
            Law ........................................................................................................11

        3.  Whether There Exists A Technological Tie Between iTunes and the iPod
            Poses Common Questions of Fact Or Law ................................................12

II.  PLAINTIFFS HAVE DISCHARGED THEIR BURDEN FOR OBTAINING CLASS
     CERTIFICATION UNDER RULE 23(b)(3) .............................................................13

    A.  Charoensak and Rosen Satisfy the "Predominance" Requirement .....................14

        1.  Common Proof As To Market Definition Predominates Over Individual
            Issues .....................................................................................................15

        2.  Common Proof Of Apple's Market Power Predominates Over Individual
            Issues .....................................................................................................17

        3.  As Demonstrated By Plaintiff's Expert Economist, Proof of Classwide

Impact Predominates Over Individual Issues.....18

B. Charoensak and Rosen Satisfy the "Superiority" Prong For Certification Under Rule 23(b)(3).....23

**TABLE OF CONTENTS (CONT'D)**

III. PLAINTIFFS HAVE ALSO DISCHARGED THEIR BURDEN FOR OBTAINING CLASS CERTIFICATION UNDER RULE 23(b)(2).....24

CONCLUSION.....25

# TABLE OF AUTHORITIES

## Cases:

Angotti v. Rexam, Inc.,
2006 WL 2691398 (N.D. Cal. Sept. 20, 2006)..........7

Arden Architectural Specialties, Inc. v. Washington Mills Electro Minerals Corp.,
2002 WL 31421915 (W.D.N.Y. Sept. 17, 2002)..........21

Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.,
2006 WL 3371690 (D.N.J. Nov. 17, 2006)..........21

Chamberlan v. Ford Motor Co.,
223 F.R.D. 524 (N.D. Cal. 2004)..........24

Civic Association of Deaf v. Giuliani,
915 F. Supp. 622 (S.D.N.Y. 1996)..........25

Daniel v. American Board of Emergency Medicine,
269 F. Supp.2d 159 (W.D.N.Y. 2003)..........11

Eisen v. Carlisle & Jacquelin,
417 U.S. 156 (1974)..........9

Ellis v. Costco Wholesale Corp.,
2007 WL 1278008 (N.D. Cal. Jan. 11, 2007)..........9

Equal Employment Opportunity Comm'n v. General Telephone Co. of Northwest,
885 F.2d 575 (9th Cir. 1989)..........20

Federal Trade Comm'n v. Cardinal Health, Inc.,
12 F. Supp.2d 34 (D.D.C. 1998)..........17

General Tel. Co. of Southwest v. Falcon,
457 U.S. 147 (1982)..........9

Gertin v. Aegon U.S.A., Inc.,
2007 WL 108451 (N.D. Cal. Jan 10, 2007)..........8

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir.1998)..........9

1   Hemming's v. Tidyman's, Inc.,
    285 F.3d 1174 (9th Cir. 2002) ..........................................................20
2   Image Technical Svcs., Inc. v. Eastman Kodak Co.,
3   1994 WL 508735 (N.D. Cal. Sept. 2, 1994) ..........................................12
4   In re Carbon Black Antitrust Litig.,
5   2005 WL 102966 (D. Mass. Jan. 18, 2005) ..........................................21
6   In re Corrugated Container Antitrust Litig.,
7   1979 WL 1751 (S.D. Tex Dec. 21, 1979) ..............................................22
8   In re Currency Conversion Fee Antitrust Litig.,
    224 F.R.D. 555 (S.D.N.Y. 2004) ......................................................15
9
10  In re Diamonds Antitrust Litig.,
    167 F.R.D. 374 (S.D.N.Y. 1996) ......................................................23
11  In re Domestic Air Transportation Antitrust Litig.,
12  137 F.R.D. 677 (N.D. Ga. 1991) ......................................................21
13  In re Dynamic Random Access Memory Antitrust Litig.,
    2006 WL 1530166 (N.D. Cal. Jun 5, 2006) ..........................6, 8, 15, 23, 24
14  In re Emultex Corp. Sec. Litig.,
15  210 F.R.D. 717 (C.D.Cal. 2002) ........................................................8
16  In re Flat Glass Antitrust Litigation,
17  191 F.R.D. 472 (W.D. Pa. 1999) ........................................................9
18  In re Industrial Silicon Antitrust Litig.,
    1998 WL 1031507 (W.D. Pa. Oct. 13, 1998) ........................................22
19
20  In re Linerboard Antitrust Litigation,
    305 F.3d 145 (3d Cir. 2002) ..........................................................15
21
22  In re Lorazepam & Clorazepate Antitrust Litigation,
    202 F.R.D. 12 (D.D.C.2001) ............................................................9
23  In re Mercedes-Benz Antitrust Litig.,
24  213 F.R.D. 180 (D.N.J. 2003) ........................................................15
25  In re Napster Copyright Litig.,
26  2005 WL 1287611 (N.D. Cal. Jun. 1, 2005) ........................................24
27  In re Playmobil Antitrust Litigation,
28  Pltfs' Mtn. for Class Certification
    Charvenske et. al. v. Apple Computer, Inc., No. C-05-00037 JW

35 F.Supp.2d 231 (E.D.N.Y.1998). ...........................................................9

In re Rubber Chemical Antitrust Litig.,
    232 F.R.D. 346 (N.D. Cal. 2005) ...................................................6, 15

In re Terazosin Hydrochloride,
    220 F.R.D. 672 (S.D. Fla. 2004). ................................................12, 17

In re Visa Check/Mastermoney Antitrust Litig.,
    280 F.3d 124 (2d Cir.2001). ......................................................15, 18

International Molders' and Allied Workers' Local Union v. Nelson,
    102 F.R.D. 457 (N.D. Cal. 1983). ......................................................7

Martino v. McDonald's System, Inc.,
    81 F.R.D. 81 (N.D. Ill. 1979). .......................................................18

Meijer, Inc. v. 3M,
    2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) .............................................11

Midwestern Machinery v. Northwest Airlines, Inc.,
    211 F.R.D. 562 (D. Minn. 2001). ......................................................11

Morelock Enterprises v. Weyerhaeuser Co.,
    2004 WL 2997526 (D. Or. Dec. 16, 2004) ...............................................15

Negrete v. Allianz Life Ins. Co. of North America,
    238 F.R.D. 482 (C.D. Cal. 2006). .....................................................10

Paper Sys., Inc. v. Mitsubishi Corp.,
    193 F.R.D. 601 (E.D. Wis. 2000) ......................................................21

Pepsico, Inc. v. Coca-Cola Co.,
    1998 WL 547068 (S.D.N.Y. Aug. 27, 1998) ..............................................17

Situ v. Leavitt,
    2007 WL 127993 (N.D. Cal. Jan. 12, 2007). ............................................25

Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,
    209 F.R.D. 159 (C.D. Cal. 2002). ......................................................9

United States v. E.I. du Pont de Nemours & Co.,
    351 U.S. 377 (1956). .................................................................16

*United States v. Oracle Corp.*,
331 F. Supp.2d 1098 (N.D. Cal. 2004)....................20

*United States v. Visa U.S.A., Inc.*,
163 F. Supp.2d 322 (S.D.N.Y. 2001)....................17

*Walters v. Reno*,
145 F.3d 1032 (9th Cir.1998)....................25

*West v. Circle K Stores, Inc.*,
2006 WL 1652598 (E.D. Cal. Jun. 13, 2006)....................14

*Yeager's Fuel, Inc. v. Pennsylvania Power & Light, Inc.*,
162 F.R.D. 482 (E.D. Pa. 1995)....................17

**Statutes:**

Fed. R. Civ. P. 23....................passim

**Treatises:**

Alan Wright, Arthur R. Miller & Mary Kay Kane,
Federal Practice & Procedure § 1778 (2d ed.1986)....................14

## NOTICE OF MOTION AND MOTION

Please take notice that on April 16, 2007 at 9:00 am, or as soon thereafter as this matter may be heard, plaintiffs Somtai Troy Charoensak and Marianna Rosen will and do hereby move this Court for an Order certifying their Second Amended Complaint as a class action on behalf of all United States direct purchaser end-users during the Class Period (spanning April 28, 2003 until the present and going forward until this litigation is resolved) of digital music files from Apple's iTunes online music store and of Apple's iPod portable digital music players, and appointing plaintiffs' counsel as class counsel. The grounds for this motion are that plaintiffs and their Second Amended Complaint meet the requirements for class certification both under Federal Rule of Civil Procedure 23(b)(3) and 23(b)(2), as set forth more fully in the accompanying memorandum in support filed herewith, and their counsel meet the requirements of Rule 23(g) for appointment as class counsel. This motion is based upon the facts and argument detailed in the accompanying memorandum in support, the Declaration of Roy A. Katriel and exhibits thereto, as well as the expert Declaration of Dr. John Pisarkiewicz, and the Declaration of Lee Morse.

## MEMORANDUM IN SUPPORT

## INTRODUCTION AND FACTUAL BACKGROUND

Class certification is plainly in order here. Plaintiffs Troy Charoensak and Marianna Rosen filed the operative Second Amended Complaint ("SAC" or "complaint") in this action, charging Apple with a host of antitrust violations pertaining to Apple's iTunes Music Store and Apple's iPod portable digital music players.

At the heart of the complaint, however, is the allegation that Apple has rigged the music files it sells to the putative class members through its online iTunes Music Store with a proprietary encryption code, known as the "AAC Protected" format, that acts to lock out and prevent all portable digital music players other than the iPod from directly playing the music files that class members purchase from iTunes. *See* SAC, at ¶¶ 39-44. In this manner, plaintiffs allege that Apple has

unlawfully tied the purchase by class members of iTunes digital music files to the purchase by these same consumers of an iPod to the exclusion of all other competing portable digital music players, as the iPod is the only portable digital music player that is permitted by Apple's code to directly play iTunes' music files. *Id.* The allegation, therefore, is that, through this tying arrangement, Apple has thwarted competition, maintained its market power unlawfully, and thereby caused all class members to pay supra-competitive prices for their iPod and iTunes purchases. *Id.* at ¶ 56.

These allegations are tailor made for classwide treatment. For starters, no one can seriously dispute that the putative class is so large that joinder or individual resolution of each class member's action would be impractical. Apple's sales of iTunes files in the United States during the class period number well over one billion. Similarly, its sales of iPods in the United States during the class period exceed 13 million units. Without classwide treatment, it is hard to fathom how the allegations of the complaint could ever be addressed.

The substantive allegations of the complaint similarly point to class certification as the appropriate mechanism. The complaint alleges counts for unlawful tying in violation of Section 1 of the Sherman Act (Count I), as well as for unlawful monopolization (Count II) and attempted monopolization (Counts III and IV) in violation of Section 2 of the Sherman Act. For each of these counts, plaintiffs (and all class members) would have to prove the relevant market definitions and Apple's market power within the pertinent markets. These are quintessential common questions of fact and/or law that predominate over individual issues affecting lone class members. Clearly Apple's market power within the alleged relevant markets will not vary depending upon which individual class member presses his claim. Apple's market power will be dictated by, *inter alia*: its market share; existent barriers to entry; and, Apple's ability to raise prices and exclude competition. These are factors that are common to all class members—either Apple or plaintiffs will prevail on their proof, but that proof will not vary or yield different results from plaintiff to plaintiff.

Likewise, plaintiffs' need to prove a relevant market definition for all their antitrust claims also poses common questions of fact and law that predominate over individual questions. Whether

there is a sufficient cross-elasticity of demand between music CD albums sold at traditional brick
and mortar music stores and individual digital music files sold online through iTunes, such that the
pricing of the former constrains the latter, is a question whose resolution does not depend upon nor
vary based upon the plaintiff presenting the proof. The market definition and Apple's market power
therein are questions susceptible to – indeed, calling out for—classwide proof. Not surprisingly, as
shown below, the weight of authority has held that antitrust class action complaints are amenable to
class certification precisely because core questions like market definition and market power are
common to the class and predominate over individual inquiries.

Equally as compelling, the wrong alleged here is that, as a result of the alleged wrongdoing,
Apple has been able to charge *all* class members supra-competitive prices for their iPod and iTunes
purchases. Because all class members are alleged to have been overcharged, and allege that the
means by which Apple effectuated this overcharge was the same, impact can be addressed on a
classwide basis, and its proof predominates over individual issues. To substantiate their claim that
classwide proof predominates here, plaintiff have filed herewith the Declaration of Dr. John
Pisarkiewicz, an expert economist, former fellow at The Brookings Institute, and whose expert
opinion on class certification and the merits of antitrust cases have been repeatedly received by
courts across the country. Dr. Pisarkiewicz's expert declaration sets forth specific and detailed
methodologies by which impact to the class as a whole from Apple's alleged antitrust violations can
be proven by way of well recognized and accepted econometric methodologies.

The alleged tie here is also susceptible to common proof. The pertinent allegation is that
Apple rigged its iTunes files such that the only portable digital music player that will be able to play
them directly is the iPod. Thus, all other competing portable digital music players are locked out by
Apple's proprietary code from directly playing the iTunes' music files. A key inquiry regarding the
alleged tie, therefore, is whether iTunes and the iPod, in fact, work in this fashion so as to limit other
digital portable music players' ability to directly play iTunes' music files. It is self-evident that
proof as to iTunes' and iPod's performance characteristics is subject to common evidence, as well.

Either the iTunes files and iPod players behave in the manner alleged by plaintiffs or they do not, but
the answer will not vary or depend upon which individual class member is before the Court. In fact,
Apple effectively concedes the core of plaintiff's allegations because Apple's own website provides
that, "[s]ongs purchased from the iTunes Music Store are encoded using the AAC Protected format
and cannot be converted to the MP3 format." *See* Ex. A to SAC, at ¶ 3. And, in that same page of its
website, Apple concedes that "only iPod can play AAC Protected songs." *Id.* at ¶ 1.

Because iTunes is the largest online music store, a portable digital music player's ability to
directly play iTunes digital music files is of extreme competitive significance. Players who cannot
do so (i.e. all players other than the iPod) do not allow its users to enjoy directly playing songs that
are purchased from the largest and most popular online music store in the world, thereby negatively
impacting their ability to compete with the iPod. As the declaration of Lee Morse, the Director of
Emerging Technology for Creative Labs, a competing provider of portable digital music players,
explains:

> Every song or file purchased from iTunes Store is encoded with digital rights
> management (also referred to as "DRM") technology created by Apple. This
> technology is not recognized by other digital media players other than Apple's digital
> media players. As such, songs purchased from the iTunes Store cannot be directly
> recorded onto or played back on Creative's line of portable digital music players,
> which Creative believes has a negative impact on its sale of digital music players.

Declaration of Lee Morse, at ¶ 8.

The point here, however, is not whether plaintiffs will ultimately be able to prove that a tie
between iTunes and the iPod exist, but rather whether the means of such proof are common to the
class. Because the tie here turns on the encryption characteristics of iTunes files, which are uniform
with respect to all such music files, this tying allegation can be proved on a common basis, as well.
Put succinctly, an iTunes digital music file and an iPod player do not have different specifications or
characteristics based upon which class member is before the Court. Because the interoperability
between iTunes and the iPod is the same, regardless of the identity of the class member, plaintiffs'
allegation of a tie is subject to classwide proof.

*5*

Nor is there any basis to doubt that Mr. Charoensak, Ms. Rosen, or their counsel will

adequately represent the interests of the absent class members. As direct purchasers of iTunes files

and iPod players from Apple, Mr. Charoensak and Ms. Rosen are members of the putative class, and

have the same interest as the absent class members. Further, the named plaintiff class

representatives have demonstrated their ability and willingness to zealously litigate on behalf of the

class. In this regard, Mr. Charoensak was subjected to a day-long deposition by Apple's counsel,

during which he answered each of Apple's counsel's questions. Ms. Rosen is similarly scheduled to

attend her deposition later this week. Both plaintiffs have submitted their iPods for a forensic

inspection by Apple's counsel. Both have produced voluminous and intrusive documentation to

Apple as part of the discovery process, including: copies of all music files stored on their personal

computers; copies of their iTunes Purchase history, account names, and passwords; and, copies of

receipts or proofs of purchase documenting their iPod purchases from Apple. Both have taken time

to meet with their counsel to prepare for their respective depositions, and have reviewed the filings

in this action. They are assuredly adequate class representatives.

In sum, because as is more fully detailed below, questions common to this numerous class

predominate here, and plaintiffs Charoensak and Rosen are adequate class representatives that raise

claims typical of those raised by all absent class members, this matter should be certified under

Federal Rule of Civil Procedure 23(b)(3). Similarly, because Apple has acted in a manner generally

applicable to the class by embedding into all iTunes files the proprietary code that locks out all

competing portable digital music players other than the iPod from directly playing these iTunes files,

class certification is also warranted under Rule 23(b)(2) to enjoin Apple from continuing this

conduct.

## ARGUMENT

## I.   PLAINTIFFS CHAROENSAK AND ROSEN MET THEIR BURDEN FOR ESTABLISHING THE REQUISITE ELEMENTS OF CLASS CERTIFICATION.

Class certification is governed by Federal Rule of Civil Procedure 23. It provides that a court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

may certify an action as a class action upon a showing that the movant has satisfied all the

requirements of Rule 23(a) as well as having satisfied at least one of the requirements of Rule 23(b).

Here, Mr. Charoensak and Ms. Rosen seek to certify their action as a class action under Rules

23(b)(3) and 23(b)(2)." As we show below, the record demonstrates that the plaintiff class

representatives have discharged their burden of showing that they satisfy these class certification

requirements.

While the proponents of the class bear the burden of demonstrating that all the

prerequisites for class designation are met," in analyzing whether the putative class meets the

requirements of Rule 23, a court is to take the substantive allegations of the complaint as true." *In re
Rubber Chemical Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). The court, therefore, does

not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify

a class. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Further, as this Court has

recognized, "[c]lass actions play an important role in the private enforcement of antitrust actions." *In
re Citric Acid Antitrust Litig.*, 1996 WL 655791, at *8 (N.D.Cal, Oct. 2, 1996). "For this reason,

courts resolve doubts in these actions in favor of certifying the class." *Id.*, quoted in *In re Rubber
Chemicals Antitrust Litig.*, 232 F.R.D. at 350; see also *In re Dynamic Random Access Memory
Antitrust Litig.*, 2006 WL 1530166, at *3 (N.D. Cal. Jun 5, 2006) (because "it has long been

recognized that class actions play an important role in the private enforcement of antitrust laws, . . .

when courts are in doubt as to whether certification is warranted, courts tend to favor class

certification.").

Application of this class action assessment to the requirements of Rule 23 demonstrates that

plaintiffs Charoensak and Rosen have discharged their burden to have this matter certified as a class

action.

**A.  Charoensak and Rosen's Complaint Satisfies the "Numerosity" Requirement.**

Federal Rule of Civil Procedure 23(a)(1) requires that in order to obtain class certification, a

movant must show that "the class is so numerous that joinder of all members is impracticable." Fed.

R. Civ. P. 23(a)(1). This requirement, known as the "numerosity" prong of Rule 23, is

unquestionably easily met here. "The prerequisite of numerosity is discharged if the class is so large

that joinder of all members is impracticable." *Angoti v. Rexam, Inc.*, 2006 WL 2691398, at *3 (N.D.

Cal. Sept. 20, 2006). Even common sense and judicial notice would inform a lay observer that the

Apple iPod and the Apple iTunes music files are among the most popular consumer products in the

marketplace today, thereby leading to the obvious conclusion that the numerosity requirement of

Rule 23 is automatically met in a suit that seeks to represent all direct purchasers of these popular

items.

One need not rely on mere common sense alone, however, to resolve this inquiry. In its

interrogatory responses, Apple has now confirmed that during the period 2003-2006, it has sold over

13 million iPod portable digital music players directly to consumers in the United States, and it has

directly sold over 1.3 billion iTunes digital music files to consumers in the United States. *See* Ex. 1

to Declaration of Roy A. Katriel, at Responses 7 and 8. Without question, this number of direct

purchases and associated purchases meets the numerosity requirement. *See International Molders'*

*and Allied Workers' Local Union v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983) ("Though

satisfaction of the numerosity requirement is not dependent upon any specific number of proposed

class members, where the number of class members exceeds forty, and particularly where class

members number in excess of one hundred, the numerosity requirement will generally be found to be

met.").

**B.  Charoensak, Rosen, and Their Counsel Satisfy the "Adequacy of Representation"**
**Requirement of Rule 23.**

Rule 23 requires a showing that "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy" requirement of Rule 23(a)(4) is

satisfied "when the proposed lead plaintiff does not have interests antagonistic to the proposed class,

and when the proposed lead plaintiff has retained experienced and capable counsel." *Gerin v. Aegon*

*U.S.A., Inc.*, 2007 WL 1108451, at *4 (N.D. Cal. Jan 10, 2007); *In re Emulex Corp. Sec. Litig.*, 210

F.R.D. 717, 720 (C.D.Cal.2002).

Mr. Charoensak and Ms. Rosen, as well as their counsel, readily satisfy the adequacy prong
of Rule 23. Like all class representatives, Charoensak and Rosen, assert that, as a result of the
alleged antitrust violations, Apple was able to and did charge consumers like themselves and the
absent class members supra-competitive prices for their iPod and/or iTunes purchases. *See* SAC, at
¶¶ 56, 68, 74, 79, 84, 87, 9, 0, 94. Through this litigation, Charoensak and Rosen, like all absent
class members seek redress for and an end to these antitrust violations so that consumers like
themselves can be compensated for their overcharges. There is plainly no conflict here. In fact, this
Court has recently held that an antitrust named class representative that alleges that the defendant's
alleged antitrust violations caused similarly situated consumers to pay supra-competitive prices, *a
fortiorari*, satisfies Rule 23(a)(4)'s "adequacy of representation" requirement. *See In re Dynamic
Random Access Memory Antitrust Litig.*, 2006 WL 1530166, at *6 (N.D. Cal. Jun. 5, 2006)
(Adequacy of representation prong met in antitrust case because "the named plaintiffs allege that all
members of the proposed class paid artificially inflated prices as a result of defendants' [antitrust
violation] during the relevant class period, that all suffered similar injury as a consequence of the
conspiracy, and that all seek the same relief.").

Nor is there any doubt that Charoensak and Rosen's counsel will provide zealous and
competent legal representation on behalf of the absent class members. As their professional history
and experience makes clear, Charoensak and Rosen's counsel are experienced in class action and
consumer antitrust litigation, have been designated as class counsel previously by this and other
other federal courts, and have the requisite skills, experience, and resources to adequately represent
the interests of the absent class members. *See* Exs. 2 to Katriel Decl. (firm biographies of plaintiff's
lead counsel).

**C.  Charoensak's and Rosen's Claims Satisfy the "Typicality" Requirement of Rule 23.**

Charoensak and Rosen's claims are typical of the claims asserted by the absent class

members, thereby satisfying the typicality requirement of Rule 23(a)(3).

6

The typicality requirement of Rule 23(a) is met if, as here "the claims or defenses of the

representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This

is a permissive standard, and as the Ninth Circuit has instructed, "representative claims are 'typical'

if they are reasonably co-extensive with those of absent class members; they need not be

substantially identical." *Hanon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). To satisfy

the typicality requirement, "a class representative must be part of the class and 'possess the same

interest and suffer the same injury' as the class members." *General Tel. Co. of Southwest v. Falcon,*

457 U.S. 147, 156 (1982).

The typicality requirement is to be "liberally construed." *See Thomas & Thomas Rodmakers,*

*Inc. v. Newport Adhesives & Composites, Inc.,* 209 F.R.D. 159, 164 (C.D. Cal. 2002). It is satisfied

"if each class member's claim arises from the same course of events that led to the claims of the

representative parties and each class member makes similar legal arguments to prove the defendant's

liability." *In re Lorazepam & Clorazepate Antitrust Litigation,* 202 F.R.D. 12, 21 (D.D.C.2001). As

this Court has recently held in its most recent published class certification opinion, typicality is met

if the class members "will present the same type of legal and remedial theory as the unnamed class

members." *Ellis v. Costco Wholesale Corp.,* 2007 WL 1278800, at * 11 (N.D. Cal. Jan. 11, 2007).

In the antitrust context specifically, typicality "will be established by plaintiffs and all class

members alleging the same antitrust violations by defendants." *In re Playmobil Antitrust Litigation,*

35 F.Supp.2d 231, 241 (E.D.N.Y.1998). "The overarching scheme is the linchpin ... regardless of the

product purchased, the market involved, or the price ultimately paid. Furthermore, the various

products purchased and the different amount of damage sustained by individual plaintiffs do not

negate a finding of typicality, provided the cause of action arises from a common wrong." *In re Flat*

*Glass Antitrust Litigation,* 191 F.R.D. 472, 480 (W.D. Pa. 1999).

Applying the foregoing standards to Mr. Charoensak, Ms. Rosen, and the claims asserted in

their SAC], leaves no doubt that they have met the typicality requirement of Rule 23. Charoensak

and Rosen, like all absent class members, assert the same precise antitrust violations against Apple;

namely, unlawful tying, monopolization, and attempted monopolization. As the named class representatives, Charoensak and Rosen assert the exact same mechanism as the means by which Apple achieved its unlawful tie and monopoly market power—the rigging of iTunes music files so that they would only directly play on the Apple iPod portable digital music player to the exclusion of all competing portable digital music players. Thus, as *in re Flat Glass* makes clear, the linchpin of typicality is met because all class members and the named class representatives allege the same antitrust scheme by Apple. Here the case for typicality is especially strong. This is so, not only because all class members assert the same antitrust violations, but also because the class consists of only direct purchasers from Apple, and because at any point in time, Apple charges the same uniform base prices for its iTunes files and each of its iPod models without resort to individual bargaining and consumer negotiations, all class members are not only alleging identical causes of action, but an identical set of transactions (i.e. purchases of iTunes files and iPods at prices set by Apple).

It is also beyond dispute that both Mr. Charoensak and Ms. Rosen are members of the putative class. Both are direct purchasers of Apple iPods and of digital music files from Apple's iTunes music store. *See* Ex. 3 to Katriel Decl. (Mr. Charoensak's receipt for Apple iPod purchase); Ex. 4 to Katriel Decl. (Mr. Charoensak's purchase history from Apple's iTunes Music Store); Ex. 5 to Katriel Decl. (Ms. Rosen's credit card receipt for her iPod purchase at Apple's store); Ex. 6 to Katriel Decl. (Ms. Rosen's receipt for purchase of second iPod from Apple store); Ex. 7 to Katriel Decl. (Ms. Rosen's purchase history from Apple's iTunes Music Store). As such, both Charoensak and Rosen have standing to represent the interests of the absent class members, and their inclusion in the class makes their claims typical of the class members' claims.

## D. Charoensak's and Rosen's Complaint Satisfies the "Commonality" Requirement of Rule 23.

Rule 23(a)(2) requires, as a condition of obtaining class certification, that the movant show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The

//

"commonality" requirement is generally construed liberally; the existence of only a few common

legal and factual issues may satisfy the requirement." *Negrete v. Allianz Life Ins. Co. of North*

*America*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). Here, even a cursory review of the complaint

evidences the existence of such common questions of fact and law.

**1.   Defining the Relevant Market Poses Common Questions of Fact Or Law.**

By way of example, for all antitrust claims asserted in Mr. Charoensak's and Ms. Rosen's

complaint (i.e. the tying, monopolization, and attempted monopolization claims), all absent class

members would have to prove the existence of the pertinent relevant antitrust markets. That is, all

class members would have to prove that the market for legal purchases of online digital music files

and the market for portable digital music players comprise cognizable relevant antitrust markets for

purposes of the claims set forth in the complaint. As courts across the country have routinely held,

these relevant market determinations, in and of themselves, serve to satisfy the commonality

requirement. *See, e.g. Image Technical Srvcs., Inc. v. Eastman Kodak Co.*, 1994 WL 508735, at *1

(N.D. Cal. Sept. 2, 1994) ("There are several questions common to the class, including, *inter alia*,

the definition of the relevant markets."); *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *6 (E.D. Pa. Aug.

14, 2006) (class certification in antitrust case proper because all class members must establish the

common question of "the proper definition of the relevant product and geographic market"); *Daniel*

*v. American Board of Emergency Medicine*, 269 F. Supp.2d 159, 192 (W.D.N.Y. 2003)

("[N]umerous common questions of fact and law are presented by the Second Amended Complaint

including . . . the existence of the relevant market."); *Midwestern Machinery v. Northwest Airlines,*

*Inc.*, 211 F.R.D. 562, 569 (D. Minn. 2001) ("[T]he common issues to be resolved by this lawsuit are

as follows: (1) whether 'relevant markets' have been appropriately identified by the Plaintiffs.").

As Professor Pisarkiewicz, plaintiffs' economic expert and class certification expert

declarant, explains:

In each of these counts, there are economic issues, such as the definition of the relevant

market or markets, the existence of market power, and whether there are barriers or

impediments to entry by potential competitors. I expect that I will be asked to address these

issues at some later date. For the present I note that these are issues that would be common

to all class members. Each class member, if not joined together in a class, would have to

*prove the antitrust gravamen of the complaint before addressing antitrust impact and*

*damages.*

Decl. of John Pisarkiewicz, at ¶ 23 (emphasis added).

### 2.    Assessing Apple's Market Power Poses Common Questions of Fact Or Law.

Beyond the *definition* of the relevant market, each of the absent class members' claims share

the common question as to the level of Apple's market power within the pertinent relevant market.

*See id.* Each of the absent class members, like Mr. Charoensak and Ms. Rosen, would have to

answer the common question of whether Apple possesses sufficient market power to effectuate the

alleged tying, monopolization, and attempted monopolization antitrust violations. Not surprisingly,

therefore, courts have routinely held that the question of a defendant's market power is a sufficiently

common question in an antitrust putative class action complaint so as to warrant class certification.

*See, e.g., Image Technical Srvcs.,* 1994 WL 508735, at *1 (N.D. Cal. Sept. 2, 1994) ("There are

several questions common to the class, including, inter alia, the definition of the relevant markets,

Kodak's adoption, implementation and enforcement of the allegedly unlawful policies, *Kodak's*

*market power*, and Kodak's alleged anticompetitive intent.") (emphasis added): *In re Terazosin*

*Hydrochloride,* 220 F.R.D. 672, 696 (S.D. Fla. 2004) ("Each absent member of the proposed classes

will assert the same definition. Therefore, whether Abbott had market power is a question common

to all members of each of the state classes, and the resolution of this common issue will affect all

members of the classes without regard to individualized inquiries."). As one court has concisely

explained, "[w]hether the defendant possessed monopoly power in a relevant market, whether it uses

its monopoly power to coerce the member hospitals into accepting unfavorable contract terms, and

whether these terms unreasonably restrain trade, all constitute questions of law and fact common to

the class. 23(a)(2)." *Frankford Hospital v. Blue Cross of Greater Philadelphia,* 67 F.R.D. 643, 646

(E.D. Pa. 1975).

The elements of relevant market definition and market power within those relevant markets

form part of each of the counts of Mr. Charoensak's and Ms. Rosen's Second Amended Class

Action Complaint. As the foregoing shows, both the market definition and Apple's market power

therein pose common questions of fact and law that form part of each of the counts in the complaint.

Thus, these common questions, in and of themselves, suffice to meet the "liberally construed"

commonality requirement of Rule 23.

### 3. Whether There Exists A Technological Tie Between iTunes and the iPod Poses Common Questions of Fact Or Law.

Beyond the foregoing, however, there are additional common questions of fact and law that

also go to the heart of plaintiffs' tying claims, aside from the market definition and market power

questions already identified. The theory of the class action complaint is that digital music files

purchased from Apple's iTunes music store are only capable of being directly played portably on

Apple's iPod portable digital music player, and not on any other competing brand of portable digital

music player. *See* SAC, at ¶¶ 39-44. In this manner, plaintiffs allege Apple has tied the purchase of

its iTunes digital music files to the purchase of a portable digital music player. Proving whether, in

fact, it is true that the iTunes digital music files will only directly play portably on the Apple iPod to

the exclusion of all other competing portable digital music players is, in and of itself, a common

question of fact that warrants class certification. The answer as to which portable digital music

players are capable of directly playing digital music files purchased from iTunes is common and the

same, regardless of which class member poses the inquiry.

At the end of the day, the evidence will either show that portable digital music players other

than the iPod can directly play music files purchased from iTunes, or they cannot. But the answer to

that question will assuredly not depend on which class member asks the question. Because the

question, answer, and means of proving this material question of fact are common to all class

members, the existence of this question, which forms part of plaintiffs' tying claim, also

demonstrates why the commonality requirement is met and class certification is warranted.

Aside from demonstrating that questions going to relevant market definitions, Apple's

market power in these markets, and whether Apple's iTunes music files are tied to the iPod as

iTunes music files can only be directly played portably on an iPod are questions that are common to

the class, in the sections below, we also demonstrate that the manner of proof required to address

these questions predominates over individual inquiries that may be pertinent only to individual class

members. That is, below we demonstrate that the "predominance" requirement embodied in Federal

Rule of Civil Procedure 23(b)(3) is satisfied. Moreover, in the same section discussing the

"predominance" requirement, we show that the question of the impact of Apple's alleged violations

is a common question among the class members, and its resolution, as detailed in the expert

declaration of Dr. Pisarkiewicz, is subject to classwide proof.

## II.    PLAINTIFFS HAVE DISCHARGED THEIR BURDEN FOR OBTAINING CLASS
## CERTIFICATION UNDER RULE 23(b)(3).

In addition to demonstrating that the core requirements of commonality, adequacy,

numerosity, and typicality found in Rule 23(a) are met, to obtain class certification under Federal

Rule 23(b)(3), a plaintiff must demonstrate that "the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for the fair and efficient adjudication of the

controversy." Fed. R. Civ. P. 23(b).

### A.    Charoensak and Rosen Satisfy the "Predominance" Requirement.

The so-called "predominance" requirement mandated by Rule 23(b)(3) already assumes that

the "commonality" requirement has been established, and merely inquires whether the questions

found to be common to the class predominate over individual questions that may affect individual

class members. *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *7 (E.D. Cal. Jun. 13, 2006)

("Because the Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3)

predominance inquiry is on the balance between individual and common issues."). As Professors

Wright and Kane explain, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986). That justification is certainly present here.

To fulfill the predominance test, antitrust "[p]laintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis." *In re Dynamic Random Access Memory Antitrust Litig.*, 2006 WL 1530166, at *9 (Jun. 5, 2006); *In re Rubber Chemical Antitrust Litig.*, 232 F.R.D. 346, 354 (N.D. Cal. 2005) (with regard to antitrust plaintiffs' burden to show predominance requirement holding that they "have satisfactorily done so by presenting a realistic method, as described by their expert, for proving common impact."); *In re Linerboard Antitrust Litigation*, 305 F.3d 145, 152 (3d Cir. 2002) ("Plaintiffs need only make a threshold showing that the element of impact will predominantly involve generalized issues of proof, rather than questions which are particular to each member of the plaintiff class."); *In re Currency Conversion fee Antitrust Litig.*, 224 F.R.D. 555, 565 (S.D.N.Y. 2004) ("At this [class certification] stage, Plaintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis....While Defendants take issue with Plaintiffs' methodology, this Court need not evaluate whether Plaintiffs' theories are likely to prevail at trial.") (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir.2001)); *Morelock Enterprises v. Weyerhaeuser Co.*, 2004 WL 2997526, at *2 (D. Or. Dec. 16, 2004) (to establish predominance "it is sufficient that Plaintiffs can point to a plausible methodology for computing damages on a class-wide basis."); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 190 (D.N.J. 2003) (All that is needed to satisfy predominance requirement in antitrust case is "a plausible theory to convince the Court that class-wide impact may be proven by evidence common to all class members."). Here, Mr. Charoensak and Ms. Rosen have supplied the expert declaration of Dr. John Pisarkiewicz, a renowned economist, to establish the existence of a common methodology to establish classwide

*91*

1  impact from Apple's alleged antitrust violations. As the foregoing authorities hold, that suffices to

2  demonstrate the "predominance" requirement of Rule 23(b)(3).

4  Although all that is required to satisfy the "predominance" requirement of Rule 23(b)(3) is

5  some threshold showing of the existence of plausible methodologies by which the plaintiffs can

6  prove classwide impact, we go further in this case. We do indeed more fully discuss Dr.

7  Pisarkiewicz's expert declaration testimony concerning the existence of a plausible methodology in

8  this case to prove classwide impact below. Before doing so, however, we also address the subsidiary

9  common legal factual questions of market definition and market power to demonstrate that common

10  proof as to these inquiries also predominates over any individual evidence that may be applicable to

11  only lone class members.

12  **I.     Common Proof As To Market Definition Predominates Over Individual**

13  **Issues.**

14  The first pertinent question common to all class members and forming part of all antitrust

15  counts in the Second Amended Complaint concerns the relevant market definition. As previously

16  discussed, a long list of authorities holds that this question suffices to satisfy the commonality

17  requirement of Rule 23(a)(2). It is also readily apparent upon even cursory consideration that proof

18  required to answer this question common to the class predominates over any individual item of

19  evidence with respect to this inquiry.

20  This is necessarily so because in order to prove what the relevant market definition is, it is

21  necessary to consider what products are viewed as reasonable substitutes for their intended use by

22  reasonable consumers. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395

23  (1956). The relevant inquiry here is not whether a *particular* plaintiff or *individual* class member

24  deems two or more products to be reasonable substitutes. Rather, the proper inquiry is whether

25  *sufficient consumers as a whole* view two products as being reasonable substitutes with one another

26  for their intended use. This is necessarily the case because the focus of a "relevant market

27  definition" query is whether a particular defendant seller of a good can afford to raise prices and

28

17

thereby exclude competition, or whether by raising prices, sufficient consumers would switch their

purchases to other products viewed by these consumers as being reasonably substitutable to the

defendant's product in question, so as to constrain the defendant's seller's ability to raise prices. It is

therefore irrelevant that any *particular* consumer views or does not view a defendant's product as

being reasonably substitutable for its intended use with another product; but rather, what is pertinent

is whether *a sufficient number of consumers* hold that view, so as to constrain the defendant's price-

raising abilities. Put differently, it is not the loss of the individual plaintiff's purchase or that of any

individual class member that constrains the prices of the defendant, but rather the prospect of losing

the sales of a sufficiently large number of consumers as a whole to other substitutable products that

would act to constrain a defendant's pricing. *See Pepsico, Inc. v. Coca-Cola Co.*, 315 F.2d 101, 106

n.1 (2d Cir. 2002) (reasoning that relevant market definition may be proved "if enough customers

have sufficient preference for that product to raise prices, significantly above the competitive level,'

despite the fact that others might shift to substitutes at supracompetitive prices"); *Pepsico, Inc. v.*

*Coca-Cola Co.*, 1998 WL 547048, at *8 (S.D.N.Y. Aug. 27, 1998) ("Accordingly, it is appropriate

to limit a market to a discrete channel of distribution so long as it is shown, using established

market-definition criteria, that enough customers *do not view other methods of distribution as viable*

*substitutes* to the distribution method in question.") (emphasis added); *Federal Trade Comm'n v.*

*Cardinal Health, Inc.*, 12 F. Supp.2d 34, 46 (D.D.C. 1998) ("Thus, in this case, if *enough customers*

*view other forms of prescription drug delivery methods as acceptable substitutes* to the services

provided by the Defendants, then the relevant market should include these alternative methods.")

(emphasis added); *United States v. Visa U.S.A., Inc.*, 163 F. Supp.2d 322, 335 (S.D.N.Y. 2001)

("Accordingly, for goods or services to be in the same market as the defendants', substitutability in

the eyes of consumers must be sufficiently great that the defendants' charging of supracompetitive

prices for its product would drive away *not just some consumers but a large enough number* to make

such pricing unprofitable (and hence induce the defendant to restore the competitive price).")

(emphasis added).

From the foregoing, it follows that the proof that any class representative or absent class

member would have to present in order to prevail on the relevant market question is precisely the

same as the proof that would have to be proffered by the class as a whole. The inquiry is not

whether Mr. Charoensak, or Ms. Rosen, or class member X or Y views legal sales of digital

music files as not being sufficiently substitutable with the sale of traditional album CDs at brick-

and-mortar record stores, but whether a sufficient number of consumers hold that view, such that the

pricing of each of these goods would not be constrained by the presence of the other. Here, because

proof as to one would be proof as to all with respect to the relevant market definition, this issue

predominates over individual questions. *See In re Terazosin Hydrochloride*, 220 F.R.D. at 696

("Additionally, the definition of the relevant market for determining market power is a question

common to all members of the class, and is one that will predominate over any individualized

inquiries."); *Yeager's Fuel, Inc. v. Pennsylvania Power & Light, Inc.*, 162 F.R.D. 482, 488 (E.D. Pa.

1995) ("Because proof of each of these elements focuses on PP & L's activities and the relevant

market, but does not focus on individual issues concerning the class members', it presently appears

that questions of law or fact common to Limited Class predominate over any questions affecting

only individual members.").

**2.  Common Proof Of Apple's Market Power Predominates Over Individual Issues.**

By the same token, once the relevant markets are defined, resolving the question of whether

Apple possesses the relevant market power within the pertinent antitrust markets is also a common

question to the class whose resolution will predominate over individual issues that may affect only

specific class members. This necessarily follows because Apple's market share or the barriers to

entry into the defined markets does not and will not vary based on the identity of the individual

plaintiff making the assertion. *See* Pisarkiewicz Decl. at ¶ 24 (noting with respect to market power

that issue is one "that would be common to all class members."); *In re Visa Check/MasterMoney*

*Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (affirming district court's grant of class

*19*

1    certification in tying case where "the district court determined that plaintiffs could use common

2    proof to establish the existence of a tying arrangement and to show defendants' market power."); *In*

3    *re Terazosin Hydrochloride*, 220 F.R.D. at 696 ("Additionally, the definition of the relevant market

4    for determining market power is a question common to all members of the class, and is one that will

5    predominate over any individualized inquiries."); *Martino v. McDonald's System, Inc.*, 81 F.R.D.

6    81, 93 (N.D. Ill. 1979) ("Because the issues of coercion, market power, and fact of damage will be

7    classwide, we hold that common questions of law and fact predominate.").

8

9    **3.    As Demonstrated By Plaintiff's Expert Economist, Proof of Classwide**

10   **Impact Predominates Over Individual Issues.**

11   Thus, as the foregoing demonstrates the questions of market definition and market power,

12   which are elements of all of plaintiff's antitrust counts, are not only susceptible to common proof,

13   but their common resolution will predominate over issues affecting only individual class members.

14   Having shown that classwide resolution of fundamental questions like market definition and market

15   power will predominate over individual questions, below we show also that proof of classwide

16   impact will similarly predominate. As already discussed, proof that a plausible methodology for

17   proving classwide impact exists suffices to satisfy the predominance requirement of Rule 23(b)(3).

18   In support of their contention that impact or damages could be proven on a classwide basis,

19   which in turn would establish the requisite predominance requirement for a Rule 23(b)(3) class

20   certification order, plaintiffs have submitted herewith the expert declaration of Dr. John

21   Pisarkiewicz. In his declaration, Dr. Pisarkiewicz categorically opines that "[i]mpact or fact of

22   damage is common to class members." (Pisarkiewicz Decl. at ¶ 5.a), and that, "[m]ethodologies do

23   exist to estimate damages on an aggregate, class-wide basis." *Id.* at ¶ 5.b. As Dr. Pisarkiewicz

24   explains, "[i]f the allegations in the complaint prove to be true, then all members of this class would

25   have suffered some adverse impact, either in form of higher prices for music downloads or higher

26   prices for iPods or both. Hence, impact would be common to class members." *Id.* at ¶ 18. Or, put

27   differently, "[w]hether the evidence shows that Apple has been able to increase prices of iPods

above the competitive level or to increase the price of digital online music files or to increase both to

some extent, the adverse impact to consumers in the class will be common since common members of the

class bought both and directly from Apple." *Id.* ¶ 28.

Of course, Dr. Pisarkiewicz's expert testimony is not limited to these observations. Rather,

his expert declaration proffers specific econometric methodologies by which the common impact to

class members may be computed. *Id.* at ¶¶ 29-34. In particular, Dr. Pisarkiewicz refers to a

"regression analysis" as a means of measuring the amount of the alleged overcharge on an aggregate

or classwide basis caused by Apple's alleged antitrust violations. *Id.* at ¶¶ 31, 32. As Dr.

Pisarkiewicz explains, "[r]egression analysis is an econometric technique often used in the

estimation of damages especially for determining the degree of overcharge." *Id.* at n.21, citing ABA,

Section of Antitrust Law, *Proving Antitrust Damages*, 1996, Chapter 5, pp. 145ff. and Daniel L.

Rubinfeld, "Reference Guide on Multiple Regression," *Reference Manual on Scientific Evidence,*

2nd Ed., Federal Judicial Center, West Group, 2000, pp. 179 ff.

Far from merely asserting in conclusory fashion that a regression analysis may be possible

to compute classwide impact, Dr. Pisarkiewicz's expert declaration details with specificity the

manner of this analysis, the variables that would be analyzed, data to be input, and the discovery to

be culled. In this regard, Dr. Pisarkiewicz opines that:

Another type of benchmark analysis would focus on the product offerings of Apple
compared to those MP3 players offered by competitors in the U.S., both over time
and at the same point in time. In this particular case, in the regression model I
envision, price of an individual iPod or MP3 player would be the dependent variable.
Here again Apple charges uniform prices for direct sales. Sales by other
manufacturers could be at list prices or average prices. The price for each product
available in the U.S. starting in October 2001, or perhaps even earlier if data are
available, would be a function of the product's specifications and capabilities. These
would be the independent variables. These represent cost parameters as well as
consumer taste parameters. There may be 20 or more such factors that may be
relevant. Price would also be a function of U.S. population for selected age cohorts
such as consumers 10-29 years old. I suspect that Apple has data on who buys iPods
and who downloads content from iTMS, including demographic information and data
on tastes and preferences. But the key variable in this analysis would be whether or
not the MP3 player has a direct link to iTMS. The answer to this question for each

2/

*MP3 player is either yes or no; this type of variable, which can take on only one of two values, 0 or 1, for "no" and "yes," respectively, is termed an attribute variable or a dummy variable or a binary variable. The regression analysis will provide a coefficient for this variable, and if certain statistical tests are met, the value of this coefficient would indicate how much of the price of an iPod is derived from or depends on the direct link to iTMS.*

*Id.* at ¶ 32 (emphasis added, footnotes omitted).

The Ninth Circuit has repeatedly endorsed the use of a "regression analysis" as a reliable means of calculating the impact of one variable or group of variables on another. *See Hemming's v. Tidyman's, Inc.*, 285 F.3d 1174, 1184, n.9 (9th Cir. 2002) ("A regression analysis is a common statistical method ... designed to isolate the influence of one particular factor--e.g. sex--on a dependent variable--e.g. salary.") (quoting *Equal Employment Opportunity Comm'n v. General Telephone Co. of Northwest*, 885 F.2d 575, 577 n.3 (9th Cir. 1989). This Court has relied upon regression analysis expert opinions to render judgments in antitrust cases. *See United States v. Oracle Corp.*, 331 F. Supp.2d 1098, 1169 (N.D. Cal. 2004) ("Based upon these DAF studies and regression analyses, it is safe for the court to conclude that Oracle and PeopleSoft do compete frequently for ERP customers and when they do compete, that competition can be vigorous."). Moreover, regression analysis has been widely accepted by courts across the country as a means of measuring classwide impact in antitrust cases. *See, e.g., Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 2006 WL 3371690, at *7 (D.N.J. Nov. 17, 2006) ("Regression analysis is a commonly used tool of economic study and is an accepted method of determining damages in cases where impact must be found on a class-wide scale."); *In re Carbon Black Antitrust Litig.*, 2005 WL 102966, at *19, n.22 (D. Mass. Jan. 18, 2005) (noting that "[t]he expert in *Paper Systems* applied an econometric regression technique, 'a commonly accepted tool to make [assessments regarding whether prices were higher than they otherwise would have been] and to evaluate whether there is common impact from an alleged price-fixing conspiracy.'"); *Paper Sys., Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 615 (E.D. Wis. 2000) ("Regression analysis is a commonly accepted tool to make such assessments and to evaluate whether there is common impact from an alleged price-fixing

22

conspiracy.'"); *In re Domestic Air Transportation Antitrust Litig.*, 137 F.R.D. 677, 691-93 (N.D. Ga.

1991) (same).

In addition to proffering the foregoing regression analysis methodology of determining classwide impact, Dr. Pisarkiewicz's expert declaration also provides that there are alternative methodologies available. For example, Dr. Pisarkiewicz references a "before and after" or "yardstick" models as approaches to be used as one means of measuring classwide overcharges in this case. *Id.* at ¶¶ 30-32. With respect to his "before and after" model, Dr. Pisarkiewicz explains that:

> The usual methodologies employed for addressing these issues are the "before and after" method and the "yardstick" or "benchmark" method. There is no "after" period in this case, but there is a "before" period for iPods which is the period of initial introduction of iPods, October 2001, to the beginning of the class period, April 2003. Data from this period from Apple on the prices, costs, profits and market shares of iPods could prove useful in comparison to the same types of data after the introduction of iTMS for establishing the degree of overcharge. For example, with a regression analysis of Apple's prices for iPods, which are uniform for all sales to direct customers, together with a binary variable to indicate whether the sale was before or after the introduction of iTMS, and with other variables to specify the technical differences in the various iPods, it would be possible to determine the impact of iTMS on Apple's iPod price.

*Id.* at ¶ 30.

With respect to his "before and after" model for assessing classwide common impact, Dr. Pisarkiewicz explains that:

> With respect to a "benchmark" analysis, Apple sells iPods and iTunes in several foreign markets, and Apple's shares in these markets may be different from its shares in the U.S. market. These differences together with prices, profits, and assessments of competition in foreign markets is likely to yield good evidence on the amount of damages attributable to Apple's alleged antitrust violations in the U.S. For example, I understand that Apple sells iPods in China, but that iTMS is not available in China, there may be other countries where this is true. With sufficient data on the market characteristics of each market, and with a cross-sectional analysis, perhaps in the form of a regression, it might be possible to assess the impact of iTMS in iPod

23

prices in the U.S.

*Id.* at ¶ 31 (footnotes omitted).

Both the "yardstick" and "before and after" alternative models proposed by Dr. Pisarkiewicz to study classwide impact have been widely accepted by the courts in antitrust cases. *See, e.g., Arden Architectural Specialties, Inc. v. Washington Mills Electro Minerals Corp.*, 2002 WL 31421915, at *10 (W.D.N.Y. Sept. 17, 2002) ("Similarly, the 'yardstick' method for calculating damages, which 'compares profits earned or prices paid by the plaintiff with the corresponding data for a ... market unaffected by the violation' is an accepted means of measuring damages in an antitrust action.'") (quoting *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D 493, 521 (S.D.N.Y. 1996)); *In re Industrial Silicon Antitrust Litig.*, 1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998) (expert's before-and-after comparison deemed proper model for showing antitrust damages); *In re Corrugated Container Antitrust Litig.*, 1979 WL 1751, at *2, (S.D. Tex Dec. 21, 1979) (approving, over objection, damages amount in antitrust settlement because expert's "damages estimate was based on a before-and-after model, using the four years within the statute of limitations as 'before' and the years 1977 and 1978, after the grand jury investigation was underway, as 'after.'").

Undoubtedly, Apple is expected to attack Dr. Pisarkiewicz's proposed econometric models for calculating classwide impact, and the conclusions he draws therefrom. The point of this class certification stage of the proceedings, however, is not to ascertain whether Dr. Pisarkiewicz is right or wrong on the merits of his expert opinion, but rather to determine whether he has proffered a method by which he, as a recognized economics expert, can go about the task of assessing classwide impact. That is all that is required for class certification. As this Court has recently explained:

It must be remembered, however, that during the class certification stage, the court must simply determine whether plaintiffs have made a sufficient showing that the evidence they intend to present concerning antitrust impact will be made using generalized proof common to the class and that these common issues will predominate ... The court cannot weigh in on the merits of plaintiffs' substantive arguments, and must avoid engaging in a battle of expert testimony. Plaintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be

24

1    proven on a class-wide basis.

3    *In re Dynamic Random Access Memory Antitrust Litig.*, 2006 WL 1530166, at *9 (N.D. Cal. Jun 5,
4    2006) (internal citations and quotations omitted); *see also In re Diamonds Antitrust Litig.*, 167
5    F.R.D. 374, 384 (S.D.N.Y. 1996) ("[W]e need not consider [defendants' expert affidavit] in detail,
6    as it is for the jury to evaluate conflicting evidence and determine the weight to give the experts'
7    conclusions.").

8          Here, as is evidenced by Dr. Pisarkiewciz's expert declaration, plaintiffs have made the
9    requisite showing of proffering a plausible expert methodology by which classwide impact may be
10   proven. As such, plaintiffs have satisfied the "predominance" requirement, and are entitled to an
11   order certifying this action as a class action under Federal Rule of Civil Procedure 23(b)(3).

12

13   **B.   Charoensak and Rosen Satisfy the "Superiority" Prong For Certification Under
          Rule 23(b)(3).**

14         In addition to showing that class issues predominate over individual issues, Rule 23(b)(3)
15   also requires the movant to establish that a "class action is superior to other available methods for
16   the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The text of the rule,
17   itself, provides that in passing on this element, a court should weight the following factors:

18         (A) the interest of members of the class in individually controlling the prosecution or
           defense of separate actions; (B) the extent and nature of any litigation concerning the
19         controversy already commenced by or against members of the class; (C) the
20         desirability or undesirability of concentrating the litigation the claims in the
           particular forum; (D) the difficulties likely to be encountered in the management of a
21         class action.

22

23   Fed. R. Civ. P. 23(b)(3)(A)-(D).

24         Here, these pertinent factors point to classwide adjudication as a superior means of resolving
25   plaintiffs' claims. This is readily so, particularly given the relatively small amount of each
26   individual member's claim, as the full price of an iTunes music file is but 99 cents, and the price of
27   an iPod is less than $500. Given these relatively low stakes for each individual class member, and

28   Pltfs' Mim. for Class Certification
     *Charoensak et. al. v. Apple Computer, Inc.*, No. C-05-00371 JW

of the class member's cases should proceed individually. Class adjudication is the only mechanism.

*See In re Dynamic Random Access Memory Antitrust Litig.*, 2006 WL 1530166, at *11 (N.D. Cal.

Jun. 5, 2006) ("Indeed, the only difficulties likely to be encountered in this case would result from

not certifying the class, given the incredible expenditure of time and resources that would result--

from both the court's and the parties' perspectives--in requiring each bringing class member's action to

proceed independently."); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004)

(same); *In re Napster Copyright Litig.*, 2005 WL 1287611, at *8 (N.D. Cal. Jun. 1, 2005) (same).

### III.  PLAINTIFFS HAVE ALSO DISCHARGED THEIR BURDEN FOR OBTAINING
### CLASS CERTIFICATION UNDER RULE 23(b)(2).

In addition to certification under Rule 23(b)(3), plaintiffs assert that certification is also

proper under Rule 23(b)(2). Rule 23(b)(2) provides that class certification is warranted when "the

party opposing the class has acted or refused or acted on grounds generally applicable to the class,

thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

the class as a whole." It is sufficient if class members complain of a pattern or practice that is

generally applicable to the class as a whole, even if not all class members have been injured by the

challenged practice. *Situ v. Leavitt*, 2007 WL 1279963, at *10 (N.D. Cal. Jan. 12, 2007).

Here, the complaint and the remedy sought make certification under Rule 23(b)(2) proper.

The gravamen of the complaint is that Apple has embedded into the iTunes files a proprietary code

that locks out all portable digital music players other than the iPod from directly playing these music

files. *See* SAC, ¶¶ 39-44. A remedy would be to have Apple remove this code from the iTunes filed

sold to class members, so that the illegal lock-in or tie will cease. This is the paradigmatic fact

pattern for certification under Rule 23(b)(2). *See Civic Association of Deaf v. Giuliani*, 915 F. Supp.

622, 634 (S.D.N.Y. 1996) ("Because the proposed removal of the street alarm boxes will ... require

injunctive relief applicable to the class as a whole, Rule 23(b)(2) also applies to the class.").

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification should be GRANTED.

1

2     Dated: January 22, 2007        Respectfully submitted,

3                   [signature]

4                   Michael D. Braun (167416)

5                   BRAUN LAW GROUP, P.C.
                   12400 Wilshire Boulevard
                   Suite 920

6                   Los Angeles, CA 90025

7                   Telephone: (310) 442-7755

8                   Facsimile: (310) 442-7756

9                   Roy A. Katriel (pro hac vice)

10                  THE KATRIEL LAW FIRM
                   1101 30th Street, NW Suite 500

11                  Washington, DC 20007
                   Telephone: (202) 625-4342

12                  Facsimile: (202) 625-6774

13                  Brian P. Murray
                   Eric J. Belfi (pro hac vice)

14                  MURRAY, FRANK & SAILER LLP
                   275 Madison Avenue, Suite 801

15                  New York, NY 10016-1101

16                  Telephone: (212) 682-1818

17                  Facsimile: (212) 682-1892

18                  Counsel for Plaintiff

19

20

21

22

23

24

25

26

27

28                Plffs' Mtn. for Class Certification
               *Charoensak et. al. v. Apple Computer, Inc.*, No. C-05-00037 JW