ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.:  5:09-CV-01911-JW<br><br>PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES<br><br>Date: February 27, 2012<br>Time: 9:00 a.m.<br>Location: San Francisco Courthouse<br>Courtroom 9, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Judge: Honorable James Ware |

- Case No. 5:09-CV-01911-JW

1

## <u>TABLE OF CONTENTS</u>

2

3

I.     INTRODUCTION ......................................................................................................... 1

4

II.    LEGAL STANDARD.................................................................................................... 2

5

III.   SEVERAL PUTATIVE OBJECTORS DO NOT HAVE STANDING, OR
HAVE FAILED TO SUBMIT THE REQUIRED DOCUMENTARY PROOF
OF STANDING ........................................................................................................... 4

6

IV.   OBJECTIONS TO THE RELIEF OBTAINED ARE WITHOUT MERIT.................... 5

7

V.    OBJECTIONS TO THE NOTICE PLAN AND CLAIMS PROCESS ARE
WITHOUT MERIT....................................................................................................... 7

8

VI.   OBJECTIONS TO THE SCOPE OF THE RELEASE LACK MERIT ....................... 11

9

VII.  OBJECTORS DO NOT HAVE STANDING TO OBJECT TO A FEE
AWARD THAT IS NEGOTIATED SEPARATELY AND INDEPENDENT
OF CLASS RECOVERY, AND THEIR ARGUMENTS ARE WITHOUT
MERIT ....................................................................................................................... 11

10

11

12

VIII. SERIAL AND PROFESSIONAL OBJECTORS HAVE NOT FILED THEIR
ARGUMENTS IN GOOD FAITH ............................................................................. 17

13

A.    Professional Objector Thomas H. Frank (Marie Gryphon) ............................... 18

14

B.    Professional Objector Joseph Darrell Palmer (Kerry Ann Sweeney)............... 19

15

C.    Professional Objector Rob Gaudet...................................................................... 21

16

D.    Professional Objector Thomas L. Cox, Jr. (Morgan Barton)............................. 21

17

E.    Serial Objector Travis Cox.................................................................................. 22

18

F.    Serial Objector Clyde Padgett............................................................................ 22

19

IX.   CONCLUSION ......................................................................................................... 23

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979) ..........................................................2

*Browning v. Yahoo! Inc.*, No. C04-01463 HRL (N.D. Cal. Nov. 16, 2007)...............................7

*City of Riverside v. Rivera,* 477 U.S. 561, 572, 106 S.Ct. 2686 (1986).....................................16

*Dewey v. Volkswagen of Am.,* 728 F. Supp. 2d 546 (D.N.J. 2010)............................................24

*Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ......................................................................................................................................14

*Fox v. Vice,* -- U.S. --, --, 131 S. Ct. 2205 (2011).................................................................17, 19

*Gemelas v. The Dannon Co., Inc.*, 2010 WL 3703811 (N.D. Ohio Aug 31, 2010).............22, 26

*Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011) .........................................12

*Greer v. Kane,* 519 U.S. 1042 (1996) ........................................................................................25

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998).................................................3, 6, 14

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ...............................................................................15

*Hofstetter v. Chase Home Fin., LLC,* No. C 10-1313 WHA (N.D. Cal. Nov. 14, 2011) ..........15

*In re Apple Inc. Sec. Litig.*, 2011 WL 1877988 (N.D. Cal. May 17, 2011)...............................21

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011)..................13, 14, 17

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751 (S.D. Ohio 2008) ........................20

*In re Charles Schwab Corp. Secs. Litig.*, No. C 08-1510 WHA (N.D. Cal. April 19, 2011) ....15

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003) ........................................................................................................................................20

*In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556-57.....................................................15

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, MDL No. 08-1998 (W.D. Ky. Dec. 13, 2010)..................................................................................................................24

*In re Countrywide Fin. Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 126755 (C.D. Cal. Mar. 4, 2011) ...................................................................................................................................12

*In re First Capital Holdings Corp. Financial Prods. Sec. Litig.*, 33 F.3d 29 (9th Cir. 1994) ...13

*In re HP Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446 (N.D. Cal. Mar. 29, 2011)...17, 19

*In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289 (S.D.N.Y. 2010) ..........................20

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 733 F. Supp. 2d 997 (E.D. Wis. 2010) ...................................................................................................24

*In re Lifelock, Inc. Mktg. & Sales Practice Litig.,* MDL No. 08-1977 (D. Ariz. July 24, 2009) ..................................................................................................................24

*In re Mercury Interactive Corp. Sec. Litigation*, 618 F.3d 988 (9th Cir. 2010) .................11, 23

*In re Rite Aid Corp. Sec. Litig.,* 269 F. Supp. 2d 603 (E.D. Pa. 2003) .....................................20

*In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.*, MDL No. 08-1982 (D. Md. May 11, 2010) ...................................................................24

*Johnson v. Board of County Comm'rs for County of Fremont*, 868 F. Supp. 1226 (D. Colo. 1994) ...........................................................................................................25

*Kent v. Hewlett-Packard Co*., 2011 U.S. Dist. LEXIS 106831 (N.D. Cal. Sept. 20, 2011) ......12

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975)................................................15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..........................................3, 6

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ........................11, 21

*Mangold v. Cal. Pub. Utilities Comm.,* 67 F.3d 1470 (9th Cir. 1995)......................................15

*Martino v. Deceni,*182 Cal. App. 3d 553 (1986) .....................................................................19

*McCown v. City of Fontana,* 565 F.3d 1097 (9th Cir. 2008) ....................................................16

*Moore v. City of San Jose,* 615 F.2d 1265 (9th Cir. 1980) .........................................................4

*Morales v. City of San Rafael,* 96 F.3d 359 (9th Cir. 1996) ....................................................16

*O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266 (E.D. Pa. 2003)..................................20

*Officers For Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982) ................................3

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2009) .........................................10

*Steiner v. Thexton,* 163 Cal. App. 4th 359 (2008).....................................................................19

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3rd Cir. 1990) .....................................................2

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993)..............................................20

*Trombley v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 137898 (D.D.C. Dec. 1, 2011)...............8

*U.S. v. State of Oregon*, 913 F.2d 576 (9th Cir. 1990)...............................................................3

*Walker v. Pacific Maritime Assoc.,* No. C07-3100, 2008 WL 1734757 (N.D. Cal. April 14, 2008) ...........................................................................................................25

*Weber v. Langholz,* 39 Cal. App. 4th 1578 (1995) ..................................................................19

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ....................................12

**Other Authorities**

William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 15:37 (4th ed. 2009) ........................................................................................................18

**Rules**

Advisory Committee Notes to Fed. R. Civ. P. 23(h) ................................................................10

FED. R. CIV. P. 23(e)(5)............................................................................................................4

1    Plaintiffs submit this memorandum of law in response to the objections to their Motion

2    For Final Approval of the Settlement, and their Motion for An Award Of Attorneys' Fees And

3    Reimbursement of Expenses.

4    **I.     INTRODUCTION**

5    This is an exceptional nationwide settlement providing relief to a Class of nearly 10

6    million Apple consumers.   It provides both cash reimbursements for replacement adapters

7    purchased by the Class (up to $237.00 per consumer), and an Adapter Replacement Program,

8    for adapters both in and well out of warranty.  One of Plaintiffs' goals is to obtain relief for

9    consumers while they are still in possession of their computers.  The Settlement *already* has

10   provided immediate relief to almost 20,000 consumers who have obtained free replacement

11   adapters (a $79 value) since the Notice Program began just over two months ago.[1]  Apple is

12   paying for all of the Class Notice and administration costs separate and apart from Settlement

13   benefits – an expense which will likely total $1-2 million, based on the costs of direct mail

14   notice to millions of class members.  Briskin Decl. ¶¶ 4-5.  Notice has already gone out to over

15   7 million class members, as well as publication and website notice.  Over 321,000 consumers

16   have visited the Settlement website, and 58,000 claim forms have been downloaded.  Over

17   10,000 class members have submitted claims, with months still to go in the claims period.  *Id.*

18   ¶¶ 5-6.  Every class member will be able to obtain replacement adapters for at least three years

19   after purchase, and many who purchased their computers earlier will even more time to obtain

20   a free replacement.

21   Of the nearly 10 million Class Members, only 11 have objected to this Settlement (and

22   only 61 have opted out).  The overwhelming response to the Settlement is clear:  this is a

23   tremendous result for consumers.   The 11 objections filed represent only approximately

24   0.00011% of the potential class, or 0.00015% of those who received direct notice.  This is a

25   strong factor weighing in favor of Settlement approval.[2]  Not only is the total number of

---

[1] *See* Declaration of Craig L. Briskin ¶ 5 ("Briskin Decl."), submitted herewith.  All Exhibits referenced in this memorandum are appended to the Briskin Declaration.

[2] *See, e.g., Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, *37-38 (N.D. Cal. Nov. 16, 2007) (finding "the relatively low percentage of objectors weighs in

objections very small, but the objections that have been filed are meritless.  As explained

below, it appears that **objectors Kerry Ann Sweeney, Morgan Barton and Jeremy Lee do**

**not have standing to object**, because they are not class members, or have failed to document

qualifying purchases, as the Court has required.  Second, **none of the objectors have standing**

**to object to Class Counsel's fee request**.

Moreover, of these 11 objections, 6 have been filed by or at the behest of serial

objectors and professional objectors, solely to harass and delay justice and relief for the

millions of class members and in some cases, to attempt to profiteer from the settlement by

holding it hostage to their boilerplate objections, which courts have deemed meritless in case

after case in which they have appeared.  As set forth below, under applicable law, these

objections are meritless, and should be overruled.

This Court granted preliminary approval of the proposed settlement in an Order dated

September 27, 2011, finding that it met all of the requirements of Federal Rule of Civil

Procedure 23, that it was fair, reasonable and adequate, and ordering notice be issued to the

class.  Dkt. No. 82.  Plaintiffs respectfully request that the Court grant final approval of the

settlement, and grant their motion for reimbursement of fees and expenses.

## II.     LEGAL STANDARD

Most of the objections run afoul of the legal standard that applies to negotiated class

settlements.  A settlement must be fair, adequate, and reasonable when compare to "the risk,

expense, complexity, and likely duration of further litigation."  *Hanlon v. Chrysler Corp.,* 150

F.3d 1011, 1026 (9th Cir. 1998).  Federal law favors settlements in class action cases: "the

court's intrusion upon what is otherwise a private consensual agreement negotiated between

the parties to a lawsuit must be limited."[3]  As the Ninth Circuit emphasized in *Officers For*

---

favor of approval"); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding
"persuasive" the fact that 84% of the class has filed no opposition); *Stoetzner v. U.S. Steel
Corp.,* 897 F.2d 115, 119 (3rd Cir. 1990) (finding that 29 objections out of a 281-member class
"strongly favors settlement").
[3] *Officers For Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also
Pilkington v. Cardinal Health, Inc.,* 516 F.3d 1095, 1101 (9th Cir. 2008) ("strong judicial

*Justice*, the trial court must scrutinize the settlement simply "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."  688 F.2d at 625.

As good as the proposed settlement is here, with full or substantial cash relief to class members, it is not a proper objection to assert that it *could* have been better.  After all, it is a settlement, with both sides generally accepting a fair outcome between victory and defeat.[4]

Objectors bear the burden of proving any assertions they make challenging the reasonableness of the settlement.  "In this circuit, we have usually imposed the burden on the party objecting to a class action settlement."  *U.S. v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (citing *Moore v. City of San Jose,* 615 F.2d 1265, 1272 (9th Cir. 1980).  The Manual for Complex Litigation cautions:

> An objection, even of little merit, can be costly and significantly delay implementation of a class settlement.  Even a weak objection may have more influence than its merits justify in light of the inherent difficulties that surround review and approval of a class settlement.  Objections may be motivated by self-interest rather than a desire to win significant improvements in the class settlement.[5]

As set forth below, the objectors here have not met their burden of demonstrating that this relief is anything less than fair, adequate, and reasonable.

---

policy . . . favors settlements") (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

[4] *See Browning*, 2007 U.S. Dist. LEXIS 86266, at *17 ("[s]ome objectors complain that they should get a full cash refund.  This is tantamount to complaining that the settlement should be "better," which is not a valid objection."); *Linney*, 151 F.3d at 1242 ("Appellants offer nothing more than speculation about what damages might have been won had they prevailed at trial . . . [i]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *Hanlon*, 150 F.3d at 1027 (stating "the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion").

[5] FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643 (2004).

### III.   SEVERAL PUTATIVE OBJECTORS DO NOT HAVE STANDING, OR HAVE FAILED TO SUBMIT THE REQUIRED DOCUMENTARY PROOF OF STANDING

In its September 27, 2011 Order conditionally certifying the settlement class, approving dissemination of notice, and preliminarily approving the settlement, the Court stated set January 6, 2012 as a deadline to file and serve objections:  "Such objections shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Final Hearing only if, on or before January 6, 2012, such objector files with the Court a notice of his, her or its objections, **submits documentary proof that he, she or it is a member of the Settlement Class** . . ."  Dkt. No. 82, at 3-4 (emphasis added).

Serial objector Joseph Darrell Palmer's client, Kerry Ann Sweeney ("Sweeney"), appears not to be a member of the class.  See FED. R. CIV. P. 23(e)(5) (providing that only class members can object1 to a settlement).  The only documentation she has submitted is the serial number of her Apple computer, "w8045rx9agu."  Sweeney Br. at 1 (Dkt. No. 86).  This is a serial number for a MacBook model that was built in November 2010, which did *not* include the MagSafe Adapter "T" Adapter that is the subject of this case.  *See* Ex. 9.  Thus, the Court can summarily dismiss Palmer's objection, as so many courts have before.

Similarly, Jeremy Lee appears not to be a class member and does not have standing to object.  He provides a serial number, C02FL258DF92, which is also a MacBook Pro introduced in 2011, and did not include the MagSafe "T" Power Adapter.  *See* Ex. 10.

Serial objector Thomas L. Cox, Jr., proffers Morgan Barton, who simply states, "Objector declares that she is a class member."  She does not state that she owns a subject computer, does not set forth a serial number or other documentation to confirm that she has purchased one, and does not state any injury that she sustained.  She only states that she received a notice of the settlement, and attaches a copy.  Apple has informed Counsel for Plaintiffs that they have no record of her purchase.  Briskin Decl. ¶ 7.  She has violated the

4

1   Court's order to provide documentation, and has failed to demonstrate that she has standing to

2   object.[6]

### IV.    OBJECTIONS TO THE RELIEF OBTAINED ARE WITHOUT MERIT

4          Despite the generous cash relief (up to $237 per Class Member) and extended warranty

5   provided in this settlement (up to 12 times longer than the factory-issued warranty), many of

6   the objections simply want some additional relief apart from what the parties negotiated.  As

7   stated above, the question before the Court is whether the settlement is fair, reasonable and

8   adequate, not that it cover a wish list of every type of relief that might have been included.

9          For example, professional objector Rob Gaudet complains about the limitation of cash

10  relief to three years after purchase.  *See* Gaudet Obj. at 1 [Ex. 4].  The parties agreed, in

11  consultation with their experts, on this three-year, tiered structure of relief based on the

12  concept that adapters are a limited-life product, which normally come with a short warranty:

13  one year for the original adapter, 90 days for a replacement.  Here, a class member could get

14  up to a year of use out of the Adapter, and still get a full refund.   This also explains why there

15  is an outer time limit for class relief:  Apple stopped selling the adapters in May 2010.  Briskin

16  Decl. ¶ 8.  Even if a class member is not eligible for monetary relief, *all* class members can

17  obtain free replacement Adapters until at least three years after their replacement adapter was

18  purchased *or* 180 days from the notice date, whichever is later.  **Thus, *all* class members will**

19  **have *at least* three years of use out of their Adapters, and many will have more than six**

20  **years**, if they bought their MacBooks in early 2006.

21         Some objectors take issue that the settlement does not provide them with compensation

22  for consequential damages, which are not normally part of a class recovery.  For example,

23  Professional Objector Ted Frank complains that the settlement does not compensate some

24  unnamed persons "who experienced defects, but decided to buy another laptop instead of a $80

25  replacement adapter, receive no benefit from this settlement."[7]  With respect to his objection

---

[6] Below, Plaintiffs do respond to those putative objectors who have not demonstrated standing to object, in case the Court chooses to address their arguments.

[7] Gryphon Br. at 4 [Ex. 11].  Notably, his client has not claimed any injury at all, only that she bought a subject computer in 2006, and a replacement adapter in 2010.  *Id*. at 1.

here, it is true that Gryphon will not be reimbursed by the settlement for her consequential damages – but she does not even claim that she suffered any injury.  Objector Bowes asserts that she should be able to obtain reimbursement for the $150 she spent on her computer motherboard and airport card resulting from her overheating adapter.  These complaints expose a failure to apprehend the nature of a class settlement, and the difficulty and risk of litigating consequential damages claims as a class.[8]  Complaints that the class settlement does not compensate every possible item of consequential damages set an impossible and improper standard.  Of course, class members who feel they could obtain better relief are entitled to opt out of the class, and pursue their claims on an individual basis.[9]  These objectors also overlook the fact that the subject adapters come with only a one-year warranty for adapters that shipped with the laptop, or 90-days for replacement adapters.  Here, Plaintiffs have procured *at least* three years extended replacement warranties or reimbursement relief for the Class.[10]

Dale Funk contends (without documentation) that he purchased more than three replacement adapters, and should not be limited to three reimbursements.  As previously stated, the settlement is not about providing class members everything they could hope to recover in the manner in which they prefer to recover it; but whether the settlement is a fair, reasonable and adequate arm's length compromise of a dispute.  *See Browning, supra,* 2007 U.S. Dist. LEXIS 86266 at *17 (Complaining that the settlement should be "better" is not a valid objection.").

Ted Frank makes an extended argument about adequacy of representation under Rule 23(a)(4), based on his mistaken belief that later MagSafe adapter purchases are not part of the

---

[8] *See generally Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (assessing fairness of settlement by "a balancing of several factors which may include . . . the risk of maintaining class action status throughout the trial").

[9] *See Hanlon*, 150 F.3d at 1027 ("[I]t is possible, as many of the objectors' affidavits imply, that the settlement could have been better.  But this possibility does not mean the settlement presented was not fair, reasonable or adequate.  Settlement is the offspring of compromise.").

[10] Professional Objector Rob Gaudet also complains that because he purchased his MacBook in 2007, he does not have the opportunity to obtain a replacement adapter.  He has misread the terms of the settlement.  *All* class members can replace their adapters until at least 180 days from the notice date (May 2012), regardless of when purchased.

class.  Gryphon Br. at 21-23.  He fails to comprehend that Apple stopped selling the Adapter, and the class members he is concerned about do not exist.  The remedy he proposes, at least three years of warranty coverage for all class members, is exactly what the Settlement provides.  In short, the class includes all purchasers of the subject adapter.  That is not the case with the litany of inapposite cases Frank cites.  *See id.* at 18.

## V.   OBJECTIONS TO THE NOTICE PLAN AND CLAIMS PROCESS ARE WITHOUT MERIT

The parties have negotiated and the Court has reviewed and approved a comprehensive notice program and a streamlined claims process that minimizes the burden on class members.  The Class Notice was modeled on the Judicial Council approved class notice form, and it was approved by the Court.  The notice program includes:  (1) direct email notice to every class member in Apple's database), (2) direct mail notice to anyone for whom Apple did not have an email address or received a bounce-back email, (3) a dedicated website containing class notice, relevant information about the case and how to obtain relief, and printable claims forms; (4) an automated toll-free telephone line and support system, (5) mailing notice packets upon request,[11] and (6) publication notice in *USA Today*, *Wired* and *Macworld*.  Press coverage of the settlement also has been substantial:  *Apple Insider*, *Ars Technica*, *CNET*, *MacRumors*, *Notebooks*, *PC World*, and *Tech Report* all have covered the settlement, among others, and the articles include links to the settlement website.  *See* Ex. 12.

The claims process requires completion of a simple, two-page claim form that requests contact information, identifying information about the computer and adapter purchased, and a signature.  Mot. For Prel. Approval Ex. D.  An actual receipt is ***not*** necessary to prove a purchase:  class members may submit any proof of payment to Apple (a canceled check, bank or credit card statement) of $79 or greater, even if it does not identify the product purchased.  Moreover, if the class member cannot locate a receipt or serial number, Apple will provide one

---

[11] Over 321,000 consumers have visited the Settlement website and over 58,000 claims forms have been downloaded from it to date.  Briskin Decl. ¶ 6.

on request; the class member can provide name, address and phone number online.  *See* https://supportform.apple.com/receipt-request. [Ex. 13]

Some objectors protest the requirement that class members must fill out a claim form, and instead, Apple should just look up everyone in their database and mail them a check.  *See* Gryphon Br. at 5; Travis Cox Br. at 2 [Ex. 11, 2].  This is not a valid objection.  A streamlined claim form has been endorsed by courts nationwide in countless class settlements.  *See generally Newberg on Class Actions* § 11:34 (4th ed.) ("Timing and procedure for filing proof of claim").  A claims process is generally implemented "to ensure that money is fairly distributed for valid claims."[12]  The parties negotiated this provision based on Apple's position that without some form of inspection, it cannot tell whether an adapter purchase was a replacement for an adapter that frayed; the adapter could have been lost, or the customer may simply have wanted to have more than one, for home and office.  That is why the two-page claim form requires an attestation to that effect.

Rob Gaudet objects to having to provide proof of purchase, but fails to apprehend that Apple can provide such documentation on request.  Gaudet Obj. at 1.  Notably, these are administration issues, not ones that go the fairness or adequacy of the Settlement as a whole. The Court has already required that the Settlement be amended to give more flexibility about what documents constitute acceptable proof of purchase, and the parties have done so (Dkt. No. 80).  Apple created an online duplicate receipt request program so that class members may seek out a receipt from Apple if they cannot locate any of the other means of proving a purchase.  *See* https://www.adaptersettlement.com/default.aspx.

Dale Funk complains, "Objector is afraid to fill out the claim form because he is worried that he will miss something.  This settlement is unreasonably unfair and draconian because the claim form does not allow for substantial completion and provides no remedy for those Class Members who miss something or accidentally provide incorrect or illegible

---

[12] *Trombley v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 137898, *58 (D.D.C. Dec. 1, 2011); *Schulte v. Fifth Third Bank*, 2011 U.S. Dist. LEXIS 83423, *88 (N.D. Ill. July 29, 2011) (citing cases and observing that "there is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment").

1   information."  This is not the case:  the parties and claims administrator routinely follow up on

2   incomplete claims forms, as well as answering any questions that may arise.

3        Other objectors simply have not understood the plain terms of the settlement.  Objector

4   Pike protests, "If the adapter is defective, one should just be able to take the product to the

5   Apple Retailer and they should replace it accordingly."  That is exactly what the settlement

6   provides.  She also contends that because she received her computer as a gift, she does not

7   have the proof of purchase.  As stated above, she can go to Apple's website to obtain proof of

8   purchase.  In addition, the Settlement Class explicitly *includes* original owners who received

9   their MacBook as a gift.  *See* Dkt. No. 82 at 1.  Plaintiffs encourage Ms. Pike to consider these

10  responses to her objections, and to submit a claim under the settlement.

11       Serial objector Clyde Padgett objects to the "opt-out" procedure, and argues instead for

12  an "opt-in" procedure. Ex. 6 at 1.  His complaint lies with Rule 23, not with this settlement.

13       Serial objector Joseph Darrell Palmer purports to be "confused" as to aspects of the

14  settlement, including what a "sign of strain" is.  Sweeney Br. at 6 (Dkt. No. 86).  He has

15  simply chosen not to read the expansive definition of strain relief damage, which is explicitly

16  provided in the class notice and on Apple's website, among other places.[13]  Palmer also states

17  to be confused about the "length of the warranty period."  Again, the dates for making

18  reimbursement claims and for obtaining replacement adapters are set out in the notice.

19       Serial objector Thomas L. Cox, Jr. (Morgan Barton) objects to the settlement on the

20  grounds that class notice was insufficient, because "the notice fails to even attempt to estimate

21  the size of the class, how many members can expect to receive and compensation and the

22  economic value to the class."  Barton Br. at 3 [Ex. 14].  Barton cites no authority stating that a

23  class notice is somehow defective if it lacks this information.  Notice does not need to "detail

24  the content of objections, or analyze the expected value."  *Rodriguez v. West Publishing Corp.,*

25  563 F.3d 948, 962 (9th Cir. 2009).  Rather, settlement notices are simply "supposed to present

26

27  ───────────────
    [13] *See* Dkt. No. 70-2 (defining "Strain Relief Damage" as "fraying melting, straining, sparking,
28  weakening, discoloration, bubbling, overheating and/or separation of the Adapter's strain
    reliefs.").

9

1   information about a proposed settlement neutrally, simply, and understandably." *Id.*  The

2   website and notice provide all necessary and pertinent information, as the Court directed, and

3   as required by Rule 23.

4       Thomas Cox (Barton) further objects that "important documents are not posted on the

5   settlement website, such as the complaint, settlement agreement and preliminary approval

6   order."  Of course, Plaintiffs stand ready to supply any documents that class members would

7   like to see, and have provided them on the request of others.  Provision of these public

8   documents is not, however, a requirement of a notice plan.

9       Ted Frank contends that the settlement procedure is not adequate because it does not

10  include an online claims process.  Frank made this same objection in *Lonardo v. Travelers*

11  *Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010).  The Court responded:  "Clearly, a

12  mandate that claims be only submitted online would be subject to objection from those not

13  sufficiently computer savvy to participate easily in the process.  Choosing one claims

14  processing mechanism that involves simple use of the mails is not unreasonable.  The

15  settlement must be  reasonable and adequate, not perfect." *Id.* at 785.

16      Ted Frank also argues that the final fairness hearing should be scheduled after the

17  claims submission deadline, so the Court can learn the actual number of claims prior to

18  making its final approval decision.  Dkt. No. 85 at 9.  In the case he cites for this proposition,

19  *In re Mercury Interactive Corp. Sec. Litigation*, 618 F.3d 988 (9th Cir. 2010), the Court of

20  Appeals based its ruling and rationale specifically on the fact that class counsel was claiming

21  fees on a common fund, pitting its interests against the class.  That is plainly not the case here.

22  Moreover, *Mercury* endorses the schedule that the Court set here, and which Frank protests:

23  "the court should provide sufficient time after the full fee motion is on file to enable potential

24  objectors to examine the motion."  Advisory Committee Notes to Fed. R. Civ. P. 23(h).  This

25  is not a common fund case, or one in which unclaimed settlement funds would revert to

26  Defendant.  Further, notice of the fairness hearing has already been sent to millions of class

27  members, and delaying the final approval hearing and distribution of cash relief would be

28

1     contrary to the interests of the Settlement Class.     Of course, one could easily predict the

2     objections that would follow if the court required the claims process to close before objectors

3     had a chance to air their grievances.

4     **VI.      OBJECTIONS TO THE SCOPE OF THE RELEASE LACK MERIT**

5           With no legal citation or other rationale, serial objector Padgett complains that the

6     release is too broad.  He appears to take issue with the waiver of rights under Section 1542 of

7     the California Civil Code, which unless specifically mentioned, would preserve claims that

8     might arise subsequent to settlement.  Courts routinely hold such waivers to be legal and

9     expressly grant class certifications containing such waivers.[14].

10    **VII.     OBJECTORS DO NOT HAVE STANDING TO OBJECT TO A FEE AWARD**
**THAT IS NEGOTIATED SEPARATELY AND INDEPENDENT OF CLASS**
11        **RECOVERY, AND THEIR ARGUMENTS ARE WITHOUT MERIT**

12           Objectors do not have Article III standing to challenge the fee award in this case, which

13     was negotiated separately and independent of the claims-made class recovery.[15]  The wisdom

14     of this holding is on display here, where for all of the objectors' complaints that the requested

15     fee is excessive, they fail to explain how reducing it would benefit the class in any way.

16     Indeed, even Serial Objector Frank begrudgingly admits that "the settlement is potentially

17     fair," Gryphon Br. at 1.  "In the class action context, simply being a member of the class does

18     not automatically confer standing to challenge a fee award to class counsel—the objecting

19     class member must be 'aggrieved' by the fee award."[16]  For this reason, because the objectors

20

21

---

22 [14] *See In re HP Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446 (N.D. Cal. Mar. 29, 2011);
*Kent v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 106831 (N.D. Cal. Sept. 20, 2011); *In re*
23 *Countrywide Fin. Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 126755 (C.D. Cal. Mar. 4, 2011);
*In re HP Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446 (N.D. Cal. Mar. 29, 2011).

24 [15] *See Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011); *Zucker v.*
*Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999) ("Class actions commonly
25 produce a common fund from which attorneys' fees are drawn, with the residue to be paid to
the class.  The particularized, traceable, remediable injury necessary for an objector's standing
26 arises from his claim on his share of whatever is left in the pot after attorneys' fees are
withdrawn.").
27 [16] *Id.* (citing *In re First Capital Holdings Corp. Financial Prods. Sec. Litig.*, 33 F.3d 29, 30
(9th Cir. 1994)).
28

do not have standing to object to the fee, their arguments should be disregarded.  In an abundance of caution, Plaintiffs address them here.

Professional objector Frank makes unfounded aspersions of self-dealing, and misrepresents holdings regarding common fund cases that are clearly inapposite here.  Frank attempts to improperly extend the holding in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("*Bluetooth*") to the facts of this case, asserting that if so-called "warning signs" of collusion are present, then the class settlement is *per se* unfair, unreasonable and inadequate.[17]  Clearly, *Bluetooth* does not stand for such an expansive inviolate holding.[18]  Even where "warning signs" are present, courts still find no collusion.[19]

Rather, *Bluetooth* simply reiterates the long-standing principle that the district court must ensure "that the amount [of fees] awarded was not unreasonably excessive in light of the results achieved."  The method the district court used in *Bluetooth* (the lodestar method) was a clear abuse of discretion there, not because it chose to use the lodestar method, but because the district court "never announced a lodestar figure."[20]  It was only because of the complete "[absence of] explanation from the district court," that the Ninth Circuit had no choice but to

---

[17] Gryphon Br. at 3, 12-13 (Dkt. No. 85).  The *Bluetooth* warnings signs include: (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund (aka a "kicker").  *Id.* at 947.

[18] Frank's proposal would have the effect of requiring attorneys for the class and defendants to spend significant extra time and money contesting issues over which there is little or no dispute.  This is wasteful.  "A request for attorneys' fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  It would also have the impact of detracting from the amount of time and effort that would otherwise be focused on providing relief to class members - exactly the thing Frank contends he seeks to avoid.

[19] *See, e.g., In re HP Laser Printer Litig.,* Case No. 07-0667, 2011 WL 3861703, *5 (C.D. Cal. Aug. 31, 2011) (finding "that there was no collusion between the parties in reaching this settlement, ***despite the presence*** of warning signs identified by *In re Bluetooth*.") (emphasis added).

[20] 654 F.3d at 943.  Notably, the Ninth Circuit found that the district court "made (1) no explicit calculation of a reasonable lodestar amount; (2) no comparison between the settlement's attorneys' fees award and the benefit to the class or degree of success in the litigation; and (3) no comparison between the lodestar amount and a reasonable percentage award." *Id.*

1   remand to the district court to "permit it to make the necessary calculations and provide the

2   necessary explanations." *Id.* at 945. In remanding for further findings, the *Bluetooth* court

3   was careful to note in conclusion: "we express no opinion on the ultimate fairness of what the

4   parties have negotiated, ***for we have no business 'substituting our notions of fairness for***

5   ***those of the district judge***.'" *Id.* at 950 (emphasis added).

6       The *Bluetooth* litigation and settlement bear no resemblance to this action. Plaintiffs

7   have clearly set forth their lodestar figure and the degree of success in the litigation

8   (particularly considering Apple's formidable defense and the risk of Apple prevailing at trial),

9   amply justifying the fairness of the requested fee. Plaintiffs' Counsel are not seeking to

10  receive a "disproportionate distribution" of the settlement, and unlike the proposed class in

11  *Bluetooth*, where the only monetary recovery was a *cy pres* distribution, the Class here is

12  receiving cash refunds, as well as free replacement products.

13      Moreover, as Frank acknowledges, "there is no common fund here[.]" Gryphon Br. at

14  15:14. In the absence of a common fund and where, as here, defendant agreed to pay

15  attorneys' fees separate and apart from the Class' relief, the lodestar/multiplier method is

16  appropriate.[21] Plaintiffs are seeking a modest and justifiable 1.5 multiplier (based on billings

17  through mid-December 2011), which continues to grow smaller by the day, and could

18  disappear altogether, should objectors pursue the meritless objections on appeal that they are

19  known for.[22] In actions such as this, the Ninth Circuit turns to state law to calculate the proper

20  amount of fees, which provides that this multiplier is reasonable.[23]

21  _____

22  [21] *See Hanlon,* 150 F.3d at 1029; *Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008
    WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *In re Consumer Privacy Cases,* 175 Cal. App.

23  4th at 556-57.

    [22] Indeed, should objectors pursue frivolous objections on appeal, Plaintiffs intend to move the
24  Court to require that they post an appeal bond. This was the request that Plaintiffs recently
    demanded of **Clyde Padgett** in *Gemelas v. The Dannon Co., Inc.*, 2010 WL 3703811 (N.D.
25  Ohio Aug 31, 2010), Stating, "The Court finds that Padgett's appeal is meritless," the court
    stated that it was inclined to impose an appeal bond in the amount of $275,000, but allowed
26  class counsel to conduct discovery regarding Padgett's ability to pay. *Id.* at *3. Two weeks
    after this ruling, Padgett voluntarily withdrew his appeal. *See* Ex. 15.

27  [23] *See Mangold v. Cal. Pub. Utilities Comm.,* 67 F.3d 1470, 1478 (9th Cir. 1995); *Hofstetter v.*

28  *Chase Home Fin., LLC,* No. C 10-1313 WHA, 2011 U.S. Dist. LEXIS 131193, at *4 (N.D.

The reasonableness of the requested multiplier is substantiated by the *Kerr*[24] factors, and demonstrates that it is not a disproportionate distribution of the settlement. Foremost among the considerations of the reasonableness factors is the "level of success" achieved by the plaintiff. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S. Ct. 1933 (1983). Contrary to serial objector Frank's contention, the "level of success" achieved is not determined solely upon the monetary benefit actually obtained by the Class, which in this case is nevertheless substantial. Rather, this inquiry necessarily requires the Court to take into account the overall sense of the suit including, *inter alia*, the risk and uncertain outcome of proceeding to trial, the need for immediacy of recovery, and the significant nonmonetary results achieved for Plaintiffs and other members of society. *See Morales v. City of San Rafael,* 96 F.3d 359, 365 (9th Cir. 1996) ("in determining a reasonable fee award on remand, the district court should consider not only the monetary results but also the significant nonmonetary results [the plaintiff] achieved for himself and other members of society."). In fact, the "Supreme Court has likewise indicated" that when a settlement "'served the public interest by vindicating important constitutional rights' an award of attorney's fees that is **disproportionate** to the actual damages may be appropriate." *McCown v. City of Fontana,* 565 F.3d 1097, 1105 (9th Cir. 2008) (citing *City of Riverside v. Rivera,* 477 U.S. 561, 572, 106 S. Ct. 2686 (1986)) (emphasis added).

Here, the cash relief prong of the settlement, the Replacement Program and extensive notice program, confer a substantial benefit on the public. Apple contends that it has always provided replacement adapters, but as Plaintiffs explained in their final approval brief, customers reported problems obtaining this relief, and the only notice Apple provided was a single page buried on its website. *See* Final Approval Brief at 5-6 (Dkt. No. 88). It is clear that Plaintiffs have effected a change in Apple's policy, with tens of thousands of class

---

Cal. Nov. 14, 2011) (awarding multiplier of 2); *In re Charles Schwab Corp. Secs. Litig.*, No. C 08-1510 WHA, 2011 U.S. Dist. LEXIS 44547, at *28-29 (N.D. Cal. April 19, 2011) (awarding multiplier of 2.68).

[24] *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975) (identifying twelve factors relevant to a determination of reasonable attorneys' fees).

1   members already obtaining replacement adapters since notice was disseminated.   Whereas

2   through the Settlement, nearly all 10 million Class members are receiving direct notice, and

3   those who have not are getting the best notice possible through publication, website and media

4   coverage of the settlement.  Moreover, Apple's employees have received notice of the program

5   and instructions on implementation.

6        While the Court should consider the benefit conferred, and to what extent the public

7   benefitted from the Adapter Replacement Program, it is "unnecessary to attempt to quantify

8   the value of the injunctive relief where a lodestar calculation provides a reasonable way to

9   determine attorney fees."  *In re HP Laser Printer Litig.,* 2011 WL 3861703 at *5 (holding that

10  the Court "need not compare the lodestar to a 25% benchmark, and the Court finds that this is

11  not in inappropriate approach designed to avoid the 25% benchmark," citing *Bluetooth*).  "The

12  essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing

13  perfection." *Id.* (citing *Fox v. Vice,* -- U.S. --, --, 131 S.Ct. 2205, 2210 (2011)).   Taking into

14  account the overall sense of the suit, the level of success achieved appropriately substantiates

15  the modest multiplier.

16       Considering the other *Bluetooth* factors, the "clear sailing" arrangement and "kicker"

17  provision did not and do not have the potential of enabling Apple to pay Plaintiffs' Counsel

18  excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of

19  the class.   Unlike the parties in *Bluetooth,*[25] Plaintiffs' Counsel here submitted substantial

20  evidence, including their own sworn declarations and the sworn declaration of Judge Smith, to

21  corroborate Plaintiffs' assertion that the settlement was negotiated at arm's length and without

22  collusion.   Serial objector Frank has submitted ***no evidence*** to the contrary and admits that

23  there was "no express collusion between the settling parties."   Gryphon Br. at 3.  Indeed, to

24  assert otherwise, he would be taking on the sworn declaration of Judge Smith who attests that

25  the "negotiations which ultimately resulted in this agreement were intensive, undertaken by

26  sophisticated and experienced attorneys on both sides in good faith, and conducted completely

27  _____

28  [25] 654 F.3d at 948 (finding that "the district court should have pressed the parties to substantiate their bald [oral] assertions with corroborating evidence.").

1   at arm's length." Smith Decl., at ¶¶8, 12.  The amount in fees, costs, and incentive awards that

2   Plaintiffs have requested are ***exactly the same amounts*** Judge Smith put forward in her

3   mediators' proposal, and the parties accepted only after the parties were unable to come to a

4   mutual agreement after a lengthy battle.  Final Approval Br. Ex.  (Dkt. No. , ¶¶10, 11).

5   Even under a constructive common fund analysis, Plaintiffs' fee and costs

6   reimbursement request would be more than fair and reasonable and below a 25% benchmark.

7   First, valuation of the replacement program includes two parts:  (1) the valuation of the

8   extended replacement warranty; and (2) the valuation of the replacements that are provided.

9   To put a value on the Replacement Program, it is important to note that the original Adapter

10  that came with the Subject Computers was only covered by a one-year warranty.  See Ex. A,

11  ¶43.  Any standalone replacement Adapter, purchased after the original computer was bought,

12  was only covered by a 90-day warranty.  *Id*.  Notably, all  Class members (upwards of 10

13  million) will benefit from the Replacement Program, because they will now have a three year

14  replacement period for their adapter which is 3 to 12 times longer than the warranty Apple

15  originally gave them.  By comparison, Apple sells "AppleCare" two-year extended warranties

16  for products in this price range (up to $80) for $39.  Id.  For example, a two-year AppleCare

17  extended warranty for the iPod Shuffle 2GB (which sells for $49) costs $39.  Id.  Clearly, the

18  value of this component of the Settlement to some 10 million class members is substantial and

19  arguably dwarfs counsels' reimbursement request.

20  Apple has redesigned the MagSafe power adapter since the institution of this lawsuit,

21  and that new model is not at issue in this case.  *See* Ex. A, ¶ 44.  Thus, consumers who receive

22  a replacement under the Adapter Replacement Program will not receive the same product that

23  failed, but a newly designed product. Apple sells these replacement adapters for $79.00.  Some

24  20,000 Class members have already taken advantage of the Replacement program in these first

25  eight weeks since Notice went out (with a value of around $1.6 million).  This number will

26  only grow through the replacement period.  The benefits to the Class and the extent of

27  recovery available to each and every Class member are exceptional. None of which would

28

16

1   have been possible but for the successful negotiations by Plaintiffs locking Apple in to the

2   replacement program and providing comprehensive Notice to Apple's customers.

3          Serial Objector Palmer contends that he is entitled to review counsel's time records to

4   determine whether the requested fee is justified.  Palmer Br. at 4-5 (Dkt. No. 86).  Class

5   Counsel will readily provide such records to the Court on its request, but they maintain that

6   their declarations provide sufficient basis to decide Counsel's fee motion, particularly in light

7   of the long-standing principle that the "essential goal in shifting fees (to either party) is to do

8   rough justice, not to achieve auditing perfection."[26]

9          Serial Objector Thomas L. Cox, Jr. further objects that the incentive awards to the

10  named plaintiffs create a conflict of interest between them and the other members of the class.

11  Barton writes, "If in advancing their own interests, the named Plaintiffs had also advanced the

12  interests of the class, their burden would have been met.  Unfortunately, they did not – they

13  have advanced their own interests and class counsel's interest but little else."  Barton Br. at 4

14  [Ex. 14].  The Court need not credit this vague, unsubstantiated accusation.

15

16  **VIII.  SERIAL AND PROFESSIONAL OBJECTORS HAVE NOT FILED THEIR
        ARGUMENTS IN GOOD FAITH**

17         Six of the eleven objections have been filed by or at the behest of professional or serial

18  objectors.  Federal courts are increasingly weary of such objectors.  *O'Keefe v. Mercedes-Benz*

19  *USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).  As the court stated in *In re Cardinal*

20  *Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008):

21                [C]lass actions also attract those in the legal profession who subsist
              primarily off of the skill and labor of, to say nothing of the risk

22            borne by, more capable attorneys. These are the opportunistic
              objectors. Although they contribute nothing to the class, they

23

24  ---

[26] *In re HP Last Printer Litig.*, 2011 WL 3861703, at *5 (citing *Fox v. Vice*, 131 S. Ct. 2205,

25  2210 (2011)).  *See also Martino v. Deceni*,182 Cal. App. 3d 553, 559 (1986) (finding
    testimony of attorney as to total hours work sufficient without time records): *Weber v.*

26  *Langholz*, 39 Cal. App. 4th 1578, 1587 (1995) ("The trial court could make its own evaluation
    of the reasonable worth of the work done in light of the nature of the case, and of the

27  credibility of counsel's declarations unsubstantiated by time records and billing statements.");
    *Steiner v. Thexton*, 163 Cal. App. 4th 359, 380 (2008) (attorneys' declarations were

28  sufficient).

> object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation.[27]

An increased level of skepticism is warranted when reviewing an objection submitted by a professional objector. *See* 5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 15:37 (4th ed. 2009).

### A.     Professional Objector Thomas H. Frank (Marie Gryphon)

Mr. Frank, of the "Center for Class Action Fairness," is unconcerned with the benefits of class action settlements to consumers. Rather, his goal, and the goal of his organization, is to do away with class actions altogether. Mr. Frank recently called plaintiffs' class action lawyers "parasites."[28] One court accurately described his briefs as "long on ideology and short on law." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio, 2010). This Court is familiar with Mr. Frank from his objection and subsequent motion practice in the *NVIDIA GPU Litigation*, Case 5:08-cv-04312-JW (N.D. Cal.). Frank filed an "emergency" motion for an injunction, after the court granted final approval of the settlement. The Court held a hearing, reviewed his objections and found them without merit. Order Overruling Objections to Settlement, May 2, 2011 (Docket No. 378) [Ex. 17].

---

[27] *See also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.""); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (noting that where only twenty objections were made from group of 113,000 class members, the objectors who appealed but did not opt out could be viewed as spoilers"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("What is less frequently observed is that the [class action settlement] process provokes into action an interesting group of professional objectors, who seem to have a variety of agendas, some not always apparent."). *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 610 n.9 (E.D. Pa. 2003) vacated on other grounds, 396 F.3d 294 (3d Cir. 2005) (criticizing a "professional gadfly" who had "become a twelfth-hour squeaky wheel").

[28] *See* Brenda Kearney, *The Deal Breakers: A look at professional class objectors in MD*, The Daily Record, May 23, 2010 [Ex. 16]   (Frank calling plaintiffs' class action attorneys "parasites," and said of other professional objectors, "The parasites are being tortured by parasites.").

Mr. Frank insists that his objection is brought in good faith, and he is representing an objector *pro bono*, and he does not seek to profit from his work.  Yet, Mr. Frank has repeatedly sought fee awards as compensation for his objections.  *See, e.g., In re Apple Inc. Sec. Litig.*, 2011 WL 1877988, *4-6 (N.D. Cal. May 17, 2011); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. at 803-17.  Indeed, it is strange to find that an attorney who so reflexively challenges any attorney fees and fee enhancements to plaintiffs' counsel seems to have no trouble requesting them for himself:  Mr. Frank requested a lodestar multiplier of 2.2 in his fee petition in *Lonardo*, which the court denied.  *See id.* at 813-14.

Moreover, there is a difference between non-profit and non-partisan.  Frank's organization, the "Center for Class Action Fairness," receives its funding from "Donors Trust," a libertarian organization that funnels anonymous tax-deductible donations to right-wing causes, including the "Project on Fair Representation," which presses for an end to affirmative action and invalidation of the Voting Rights Act, the "Supply Side Project," which militates for privatizing government social welfare programs, the "Hollywood Project," which produced an anti-Islam video in connection with the 2008 presidential election, and the "Student Free Press Association," which trains right-wing journalists.  *See* Crooks and Liars, *Donors Trust: An Anonymous Tax-Deductible Policy Slush Fund*, Apr. 11, 2011 [Ex. 18].[29] Consistent with his donors' political leanings, Mr. Frank opposes all class actions as intrusion on the liberty of corporations.  He apparently wishes the court to substitute his policy judgments for the governing law.  Mr. Frank does not bring his objections in good faith, because his interests are antithetical to the interests of the class in obtaining relief.  His agenda and failure to disclose his Center's true nature are relevant to adjudging his credibility and the weight this Court should give his objection.

### B.       Professional Objector Joseph Darrell Palmer (Kerry Ann Sweeney)

Mr. Palmer, whose client appears to lack standing to object, has been referred to

---

[29]  Similarly, Frank's client, Marie Gryphon, is an attorney with the Cato Institute, a "libertarian" think thank that favors eliminating opt-out class actions and multistate class actions, among other things.  *See* Ex. 19 at 119-21 ("Cato Handbook for Policymakers").

repeatedly as a "serial objector."  *See Gemelas v. The Dannon Co., Inc.*, No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010).  This description really does not do him justice; he is extremely prolific in filing canned objections that are summarily overruled, following up with a frivolous appeal.[30]  This Court is familiar with Mr. Palmer from appearance in The NVIDIA GPU Litigation, Case No. Case No. 08-04312-JW, where the Court summarily overruled his objections.

In *Wilson v. Airborne, Inc.*, Case No. 07-770 (C.D. Cal.) (Philips, J.), the court ruled that Palmer's objections were "without merit."  *See Airborne* Order Granting Motion for Final Approval of Settlement at 7 n.3 & n5, 22-23 [Ex. 20].  Nevertheless, Palmer appealed the final order approving the settlement, which he finally withdrew, needlessly delaying relief to the class for six months.  This is Palmer's modus operandi.  In *Friedman v. 24 Hour Fitness USA, Inc.*, Case No. CV 06-6282, 2010 U.S. Dist. LEXIS 143816 (S.D. Cal.), one finds the same pattern:  meritless objections, notice of appeal, voluntary dismissal of appeal.  [Ex. 21, 22, 23].  Yet again, in *In re Int'l Rectifier Corp. Securities Litigation*, Case No. 07-CV-2544 (C.D. Cal.).  [Ex. 24].  Still more, in *In re Mercury Interactive Corp Sec. Litig.*, 5:05-CV-3395, 2011 WL 826797, at *1-*2 (N.D. Cal. Mar. 3, 2011).  Based on Palmer's record, the Court should consider the objections of Palmer (and Ms. Sweeny by extension) with extreme skepticism.

---

[30] Palmer's cases include *Rodriguez v. West Publishing Corp.,* No. 05-3222,' Notice of Appeal by Objectors (C.D. Cal. Oct. 9, 2007); *In re Enron Sec. Litig.,* No. H-01-3264, Objections and Notice of Intent to Appear (S.D. Tex. Feb. 1, 2008); *In re Currency Conversion Fee Antitrust Litig.,* No. 01-md-1409, Objection and Notice of Intent to Appear (S.D.N.Y. Feb. 14, 2008); *Wilson v. Airborne Health, Inc,* No. 07-cv-770, Objections to Proposed Settlement and Notice of Intent to Appear (C.D. Cal. June 4, 2008); *In re General Motors Dex-Cool Gasket Cases,* No. HG03293843, Notice of Intent to Appear, Statement of Class Membership, Statement of Objections to Proposed Class Action Settlement (Alameda Super. Ct. Aug. 13, 2008); *Salcido v. Iomedix Cold Int'l SRL,* No. BC 387942, Objection (L.A. Super. Ct. Aug. 28, 2009); *Troyk v. Farmers Group Inc.,* GIC 836844, Objections (S.D. Super. Ct. 2009). *Authors Guild, Inc. v. Google, Inc.,* No. 05 CV 8136, Objections (S.D.N.Y. Sep. 4, 2009); *In re: Int'l Rectifier Corp. Sec. Lit.,* No. 07-cv-02544-JFW(VBKx), Objections to Class Counsels' Fee Request (C.D. Cal. Jan. 25, 2010); *Gemalas v. The Dannon Co., Inc.,* No. 1:08-cv-00236, Objections (N.D. Ohio May 24, 2010); *In Re Vitamins Litig.,* MDL No. 1285, Objections (D.D.C. 2010); *Friedman v. 24 Hour Fitness, USA,* No. CV 06-06282 AHM (CTx), Objection to Proposed Settlement and Notice of Intent to Appear (C.D. Cal. June 11, 2010); *Hartless v. Clorox Co.,* No. 3:06-cv-02705, Objection of Sonia Newman to Proposed Settlement and Notice of Intent to Appear (S.D. Cal. Dec. 6, 2010).

None the objections he has asserted have any merit, and cannot justify denying approval of the exceptional Settlement that the Parties have reached in this case.

### C.    Professional Objector Rob Gaudet

Rob Gaudet presents himself as a pro se objector, failing to inform the court that he is an attorney.  Indeed, he advertises on his firm's website that he has gained a reputation for being successful "objectors' counsel."  *See* http://www.rjgaudet.com/?page_id=98 [Ex. 25]. Here, Mr. Gaudet objects to the settlement on the grounds that he has been unfairly excluded from the class, because he replaced his adapter four years after purchasing it.  He makes only boilerplate objections, discussed above, which the Court can summarily dismiss.

### D.    Professional Objector Thomas L. Cox, Jr. (Morgan Barton)

Thomas L. Cox has failed to establish that his client is not a class member, as required by the Court.  Even if that were not the case, his objections are meritless.

Mr. Cox is a frequent and professional objector, as he has objected or represented objectors in at least six other class actions since 2010.[31]  Mr. Cox's objections were not sustained in any of these cases.  Here, he bemoans the fact that the settlement "places unlawful restrictions on objectors," by asking how many times they have objected to previous lawsuits. Of course, it is because of behavior like his that such disclosure requirements are necessary and appropriate.  Cox's objections are meritless and their background and conduct render their motivations unreliable.

Based on information and belief, Thomas Cox is the "ghost-writer" for his son and objector Travis Cox (discussed below) Cox has represented his son Travis as an objector in a number of other actions.  *See* Briskin Decl., Ex.26 (Public records identifying Travis Cox as

---

[31] *See In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.*, MDL No. 08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md.  May 11, 2010); *Dewey v. Volkswagen of Am.,* 728 F. Supp. 2d 546 (D.N.J. 2010); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 733 F. Supp. 2d 997 (E.D. Wis. 2010); *In re Lifelock, Inc. Mktg. & Sales Practice Litig.,* MDL No. 08-1977, U.S. Dist. LEXIS 130075 (D. Ariz. July 24, 2009); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, MDL No. 08-1998, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010).

Thomas Cox's son), Ex.27 (Disclosure Statement disclosing that Thomas Cox represented Travis Cox), Ex. 28 (Court dockets showing Thomas Cox representing Travis Cox).

Not only is the act of not bringing their relationship to the Court's attention improper, but ghost-writing is a deliberate evasion of the responsibilities imposed on counsel by Federal Rule of Civil Procedure 11.[32]  This behavior also violates ABA's Model Code of Responsibility DR 1-102(A)(4), providing that an attorney should not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, and could result in disciplinary action.[33]

### E.   Serial Objector Travis Cox

Travis Cox appears to be the son of professional objector Thomas Cox.  *See* Ex. 26. Mr. Cox also has failed to demonstrate that he is a class member.  He makes the same boilerplate, unsubstantiated kinds of objections that the Cox family has made in other cases; they can be summarily dismissed.

### F.   Serial Objector Clyde Padgett

Mr. Padgett has repeatedly filed unmeritorious objections in class actions.  In *Gemelas v. Dannon Co., Inc.*. 2010 WL 3703811, 1 (N.D. Ohio), Plaintiffs moved the Court to order Mr. Padgett to post a bond on appeal of his frivolous, boilerplate objections.  The court noted, *"Mr. Padgett appears to be making a business of objecting to, and appealing, class action settlements in order to obtain some financial reward. As this appears to be a "form appeal" for Mr. Padgett, the Court finds that it is devoid of merit." Id.*  Indeed, the court noted that he had filed the same "form objections" (with slight wording changes) in another class action against

---

[32] *See Walker v. Pacific Maritime Assoc.,* No. C07-3100, 2008 WL 1734757, *2 (N.D. Cal. April 14, 2008) (finding that "Ghost-writing frustrates the application of Federal Rules of Civil Procedure 11 which requires all attorneys to verify through their signatures that there are sufficient grounds for the arguments in their pleadings.").

[33] *See  Johnson v. Board of County Comm'rs for County of Fremont,* 868 F. Supp. 1226 (D. Colo. 1994) (finding that "[h]aving a litigant appear to be pro se when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand is ingenuous to say the least; it is far below the level of candor which must be met by members of the bar."), *aff'd in part and disapproved in part on other grounds*, 85 F.3d 489 (10th Cir. 1996), *cert. denied sub nom, Greer v. Kane,* 519 U.S. 1042 (1996).

1  Mattel.  *Id.* The Court found that a bond amount of $275,000 was appropriate, but ordered

2  expedited discovery (including a deposition) of Mr. Padgett. in order to determine his ability to

3  pay it.  *Id.* at *3.  Two weeks later, Mr. Padgett voluntarily withdrew his appeal.  *See* Ex. 15

4  (case docket).  If Mr. Padgett pursues the same frivolous appeal of his meritless objections in

5  this case, Plaintiffs reserve their right to move for an appeal bond as well.

6  **IX.    CONCLUSION**

7          For the reasons stated above, the Objectors' arguments are without merit.  Plaintiffs

8  request that they be overruled in their entirety, and that the Court approve the Settlement, and

9  the Award of Attorneys' Fees and Expenses.

10                                    Respectfully submitted,

11

12  Dated: January 27, 2012              MEHRI & SKALET, PLLC
                                        STEVEN A.  SKALET (admitted *pro hac vice*)
                                        CRAIG L.  BRISKIN (admitted *pro hac vice*)
13

14                                      By:     /s/ *Craig L. Briskin*
                                               CRAIG L. BRISKIN
15
                                        1250 Connecticut Avenue., NW, Suite 300
16                                      Washington, DC 20036
                                        Telephone: (202) 822-5100
17                                      Facsimile: (202) 822-4997
                                        sskalet@findjustice.com
18                                      cbriskin@findjustice.com

19                                      ZELDES & HAEGGQUIST, LLP
                                        HELEN I.  ZELDES (220051)
20                                      ALREEN HAEGGQUIST (221858)
                                        AMBER ECK (177882)
21                                      AARON M.  OLSEN (259923)
                                        625 Broadway, Suite 906
22                                      San Diego, CA  92101
                                        Telephone: (619) 342-8000
23                                      Facsimile: (619) 342-7878
                                        helenz@zhlaw.com
24                                      alreenh@zhlaw.com

25                                      LINER GRODE STEIN YANKELEVITZ
                                        SUNSHINE REGENSTREIF & TAYLOR LLP
26                                      ANGELA C.  AGRUSA (131337)
                                        CAMILLA Y.  CHAN (241674)
27                                      1100 Glendon Avenue, 14th Floor
                                        Los Angeles, CA 90024-3503
28                                      Telephone:  (310) 500-3500

Facsimile:  (310) 500-3501
aagrusa@linerlaw.com
cchan@linerlaw.com

MCNICHOLAS & MCNICHOLAS LLP
PATRICK MCNICHOLAS (125868)
CATHRINE B. SCHMIDT (212827)
10866 Wilshire Boulevard Suite 1400
Los Angeles, CA 90024-4338
Telephone: (310) 474-1582
Facsimile:  (310) 475-7871
pmc@mcnicholaslaw.com
cbs@mcnicholaslaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I also caused to be served by first class mail a copy of the foregoing on the following persons.

Daniel Greenberg
Greenberg Legal Services
55 Fontenay Circle
Little Rock, AR 72223

Rob Gaudet
800 Fifth Ave, Suite 4100
Seattle, WA 98104

Clyde Padgett
257 Canyon Creek Rd
Lufkin, TX 75904

Marie Gryphon
33 Hall Street, Apt 1
Jamaica Plain, MA 02130

Dale Funk
7303 Delmar Blvd
University City, MO 63130

Darlene Bowes
941 Fallen Oak Trl.
Aurora, IL 60506

Angelo Sioson
30-74 32nd Street, Apt 19
Astoria, NY 11102

Angela Pike
5412 N. 78th St
Omaha, NE 68134-2208

Travis Cox
66 Daughtery St, Apt 1016
Waco, TX 76706

Thomas Cox
4934 Tremont
Dallas, TX 75214

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 27, 2012

.

s/Craig L. Briskin
CRAIG L. BRISKIN