1   PENELOPE A. PREOVOLOS (CA SBN 87607)
    (PPreovolos@mofo.com)
2   ANDREW D. MUHLBACH (CA SBN 175694)
    (AMuhlbach@mofo.com)
3   ALEXEI KLESTOFF (CA SBN 224016)
    (AKlestoff@mofo.com)
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:  415.268.7000
6   Facsimile:  415.268.7522

7   *Attorneys for Defendant*
    APPLE INC.

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13                                          Case No. C 09-01911 JW

14   IN RE MAGSAFE APPLE POWER ADAPTER      **DEFENDANT'S RESPONSE IN**
     LITIGATION                             **OPPOSITION TO OBJECTIONS**
15                                          **TO THE PROPOSED**
                                            **SETTLEMENT**
16
                                            Date:   February 27, 2012
17                                          Time:   9:00 a.m.
                                            Place:  Courtroom 9
18                                          The Honorable James Ware

19

20

21

22

23

24

25

26

27

28
     sf-3099126

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     OVERVIEW OF OBJECTIONS ........................................................................ 2

        A.      The Profile of the Objectors. ................................................................ 2

        B.      The Prior History of Five of the Objectors and Their Counsel. ........................ 3

III.    ARGUMENT ...................................................................................................... 6

        A.      The Response of the Settlement Class. ................................................. 6

        B.      The Settlement is Fair, Reasonable, and Adequate. ................................................. 7

        C.      Every Settlement Class Member is Eligible to Receive a Benefit from the
                Proposed Settlement. ........................................................................ 9

        D.      The Claims Process is Simple, Efficient, and Fair. ................................................. 13

        E.      Objectors' Arguments Respecting Attorneys' Fees Do Not Provide A Basis
                for Challenging the Settlement. ......................................................... 18

        F.      *Bluetooth* Does Not Require a Different Result. ................................................. 18

        G.      The Class Notice Met the Requirements of Due Process and Rule 23. ............... 19

        H.      Disclosure of More Than Three Prior Settlement Objections is Vital to
                Identifying "Professional Objectors" Who Bring Claims in Bad Faith. ............... 20

        I.      There Is No Intraclass Conflict and the Settlement Class Is Properly
                Defined. ........................................................................................ 21

        J.      The Ninth Circuit's Fairness Standards Are Adequate in this Litigation............. 23

IV.     CONCLUSION .................................................................................................. 23

DEFENDANT'S RESPONSE IN OPPOSITION TO OBJECTIONS TO PROPOSED SETTLEMENT
No. C 09-01911 JW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alix v. Wal-Mart Stores, Inc.,*
    2010 N.Y. Misc. LEXIS 1402 (N.Y. Sup. Ct. May 26, 2010) ................................................ 16

*Berger v. Property ID Corp.,*
    Case No. 2:05-cv-05373 (C.D. Cal. February 27, 2009) ............................................................ 4

*Bryan v. Pittsburgh Plate Glass Co.,*
    494 F.2d 799 (3d Cir. 1974) ........................................................................................................ 6

*Buchet v. ITT Consumer Fin. Corp.,*
    845 F. Supp. 684 (D. Minn. 1994) ............................................................................................ 17

*Churchill Village v. General Elec.,*
    361 F.3d 566 (9th Cir 2004) ...................................................................................................... 23

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 7, 8, 9

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) ..................................................................................................... 3

*Collins v. Am. Honda Motor Co. Inc.,*
    2006 WL 4103767 (Cal. Super. December 28, 2006) ................................................................. 4

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ..................................................................................................... 6

*County of Santa Fe v. Public Serv. Co.,*
    311 F.3d 1031 (10th Cir. 2002) ................................................................................................... 8

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) .............................................................................................. 1, 3, 11

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002) .................................................................................................................. 21, 22

*Fulford v. Logitech, Inc.,*
    Case No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) . 7, 8, 9

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (1998) ................................................................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Apple Inc. Secs. Litig.*,
   No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17,
   2011)........................................................................................................................ 18

*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011)..................................................................... 5

*In re Bluetooth Headset Products Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011).............................................................................. 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
   370 F. Supp. 2d 320 (D. Me. 2005)..................................................................... 17

*In re Dell*,
   No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex., June 11, 2010).................... 5

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   33 F.3d 29 (9th Cir.1994).................................................................................... 2

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)........................................................................... 6, 7

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)............................................................ 2, 3

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003).................................................................. 6

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
   Case No. 2:06-CV-00225-PMP-PAL, MDL 1735, 2010 U.S. Dist. LEXIS 21466 (D.
   Nev. Mar. 8, 2010) ........................................................................................... 21

*Jaffe v. Morgan Stanley & Co.*,
   No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008) ...... 16

*McDonough v. Toys "R" Us, Inc.*,
   No. 2:06-cv-0242 AB, 2011 WL 6425116 (E.D. Pa., Dec. 11, 2011) .................... 4

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982).............................................................................. 7

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999)......................................................................... 6, 7

*Rodriguez v. West Pub. Corp.*,
   No. CV05-3222, 2007 WL 282739 (C.D. Cal., Sept. 10, 2007) ....................... 4, 5

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Strong v. BellSouth Telecomm., Inc.*,
  173 F.R.D. 167 (W.D. La.1997) .......................................................................... 16

*Sylvester v. Cigna Corp.*,
  369 F. Supp. 2d 34 (D. Me. 2005) ...................................................................... 16

*TBK Partners, Ltd v. Western Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ................................................................................. 6

*The Authors Guild, Inc., v. Google, Inc.*,
  2009 WL 2980745 (S.D.N.Y. September 8, 2009) ............................................... 4

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................................ 19

*Union Fidelity Ins. Co. v. McCurdy*,
  781 So. 2d 186 .................................................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 6

*Walter v. Hughes Communs., Inc.*,
  No. 09-2136 SC, 2011 U.S. Dist. LEXIS 72290 (N.D. Cal. July 6, 2011) ........... 16

*White v. Experian Information Solutions, Inc.*,
  No. SACV-05-1070 DOC, 2011 WL 2971836 (C.D. Cal., July 15, 2011)............. 4

*Yeagley v. Wells Fargo & Co.*,
  Case No. C 05-03403 CRB, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. Jan. 18, 2008)........... 16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ......................................................................................... 19, 21

*Making Class Actions Work: The Untapped Potential Of The Internet*, 69 U. Pitt. L. Rev.
  727 (2008) ........................................................................................................ 16

*Principles of the Law of Aggregate Litigation,* American Law Institute .................................... 23

## I.      INTRODUCTION

This settlement was met with overwhelming approval.  The Settlement Class consists of approximately 9.6 million purchasers of Apple MacBook and MacBook Pro computers and MPM-1 MagSafe adapters (the "Adapter").  Seventy-eight percent of them—7.4 million people— received direct notice of the settlement.  Only eleven people filed objections, just 0.0001% of the potential class and 0.00014% of those who received direct notice.  And only 61 people opted out, just 0.00064% of the potential class or 0.00082% of those who received direct notice.  Neither the U.S. Attorney General nor a single state attorney general objected.  These are powerful indicia that the settlement is fair, reasonable, and adequate and deserves final approval.

Moreover, the settlement is extremely generous – it is close to a trial win.  Settlement Class Members get a <u>full refund,</u> with the refund amount discounted only after they have used the Adapter for a full year or two years.  Under the ongoing Adapter Replacement Program, Settlement Class Members also get the promise of a free adapter for three years if their Adapter fails.  The settlement's terms are clearly "fair, reasonable and adequate."

Apple has contended throughout this litigation that the Adapter is a reliable product with very low failure rates.  The objectors' own experiences with the Adapter confirm Apple's position and the appropriateness of the settlement.  Seven of the eleven objectors did not experience an Adapter failure.  Two of the four remaining objectors admit that their adapters did not require replacement until *four years* after the initial purchase of their Subject Computer—three years after the expiration of their express warranty.  If the case had been litigated, these nine objectors' claims would have been barred because their Adapters performed without issue well beyond the warranty period.  *See, e.g., Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006).

The objectors also misunderstand the substance of the settlement.  Adapters get abused: they get bent, twisted, stepped on, tied in knots, yanked from walls, thrown into suitcases, and run over by wheeled office chairs.  But the claim in this case, if it were proven at trial, would not award people a cent for Adapters that failed due to user abuse.  Rather, the claim herein is that Adapters allegedly failed because of a condition called "strain relief" not caused by user abuse.

This settlement provides tangible, substantial benefits tailored to *those* claims: A full refund of the $79 purchase price for Adapters replaced during the first year, $50 if replaced during the second year; and $35 if replaced during the third year.  In addition, under the settlement, Settlement Class Members received direct notice of Apple's Adapter Replacement Program, which provides Replacement Adapters free of charge.  That program will continue until at least three years after Apple stopped selling the Adapter and three times longer than the express one-year warranty.  These are real benefits.

The objectors also raise a succession of arguments about the notice.  These are specious.  Direct notice was provided to 78% of potential class members, with published notice as backup.  The content of the summary and full notices was based on Federal Judicial Center forms.

For all the foregoing reasons, Apple respectfully requests that the Court reject the objections and approve the settlement.

## II.   OVERVIEW OF OBJECTIONS

The Settlement Class consists of approximately 9.6 million purchasers of Apple MacBook and MacBook Pro computers and the Adapter, 7.4 million (78%) of whom received direct notice of the settlement.  Sixty-one Settlement Class Members opted out and only eleven filed objections:  Marie Gryphon, Dale Funk, Morgan Barton, Travis Cox, Robert Gaudet, Clyde Padgett, Jeremy Lee, Kerry Ann Sweeney, Angela Pike, Darlene Bowes, and Angelo Sioson.[1]

### A.   The Profile of the Objectors.

As noted, the profile of the objectors is telling.  Seven did not experience an Adapter failure.[2]  They lack standing.  *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir.1994) ("[s]imply being a member of a class is not enough to establish standing. One must be an aggrieved class member"); *In re Omnivision Technologies, Inc.*, 559 F.

---

[1] The objections are attached as Exhibits A through K to the accompanying Declaration of Penelope A. Preovolos in Opposition To Objections to Proposed Settlement ("Preovolos Decl.").

[2] The only objectors who claim to have experienced Adapter failure are Darlene Bowes, Robert Gaudet, Dale Funk, and Marie Gryphon.  *See* Preovolos Decl. Ex. C at 1 (Bowes); Ex. F at 1 (Gaudet); Ex. D at 1 (Funk); Ex. E at 1:23-24 (Gryphon) (ECF No. 85).

Supp. 2d 1036, 1044 (N.D. Cal. 2007) (no standing because objector/class member suffered no injury).

Of the four remaining objectors who complain of Adapter failures, two did not require replacement until four years after they bought their computer—three years after the one-year limited warranty expired.[3]  Had the litigation continued, these objectors' claims would be barred given that their Adapters performed during, and well beyond, the warranty period.  *See, e.g., Daugherty,* 144 Cal. App. 4th at 838 (2006); *see also*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (summarizing and applying California law).[4]

With respect to the last two objectors, Mr. Funk does not say when his Adapter failed.[5] Ms. Bowes admits the cash payment for Replacement Adapters is fair, but was hoping to recover consequential damages.[6]  Ms. Bowes' claim for consequential damages is an individual claim which could not have been pursued on a class basis; if she wished to pursue that claim, she was free to opt out and do so.

The experience of the objectors—a self-selecting group *opposed* to the settlement who assert that the Adapter is defective—is telling.  For the vast majority of this group, the Adapters performed without incident.  Where failures have occurred, the settlement provides a remedy.

## B.    The Prior History of Five of the Objectors and Their Counsel.

Five of the objectors (and/or their counsel) are serial objectors to class action settlements.

**Padgett.**  Objector Clyde F. Padgett was found by a district court to be in the "business of objecting to, and appealing, class action settlements in order to obtain some financial reward," who ordered him to give an expedited deposition and post a bond of $275,000 for a bad faith appeal of a class action settlement to which Mr. Padgett objected in a case involving The Dannon

---

[3] *See* Preovolos Decl. Ex. F at 1 (Gaudet); Ex. E at 1:23-24 (Gryphon).

[4] One of these two objectors indicates that his replacement adapter, purchased in 2011, failed within one year.  *See* Preovolos Decl. Ex. F at 1 (Gaudet).  But Apple stopped selling the Adapters that are the subject of the litigation and settlement in 2010, so that his replacement adapter is not at issue here.

[5] *See* Preovolos Decl. Ex. D at 1 (Funk).

[6] *See* Preovolos Decl. Ex. C at 1 (Bowes) ("The cash/replacement settlement of the MagSafe unit itself is fair."),

1    Company.  Said the court:  "Plaintiffs have shown that this is the fourth class action of which

2    [Padgett] claims to be a class member, has filed rote objections, does not appear at the fairness

3    hearing and then appeals the district courts' rulings granting final approval for class action

4    settlements."[7]  The *Dannon* court found Mr. Padgett's "form objections" to be almost identical to

5    those he filed in objecting to a settlement involving Mattel.[8]  Here, his objection is cloned from

6    *Dannon* and *Mattel* and those, in turn, parrot what Mr. Padgett filed in objecting to class action

7    settlements involving Toys "R" Us[9] and General Motors.[10]

8         **Sweeney.**  Objector Kerry Ann Sweeney appears through counsel, Joseph Darrell Palmer.

9    (ECF No. 86).  Mr. Palmer also has a long history of objecting to class action settlements and

10   filing an appeal when his objection is overruled.[11]  Like Mr. Padgett, Mr. Palmer appeared and

11   filed an objection in *Dannon*,[12] but was found by the district court to be a "serial objector."

12   *Dannon* Order at *3 (*see* n.7, *infra*.)  The objection Mr. Palmer filed in this case, on behalf of Ms.

13   Sweeney, is a "cut-and-paste" of the one he filed in *Dannon*.

14        **Gaudet.**  Objector Robert Gaudet is a Washington class action plaintiff's lawyer whose

15   practice includes "formulat[ing] objections to unfair and inadequate class action settlements that

16

17        [7] Memorandum of Opinion and Order, *Gemelas v. The Dannon Co.*, No. 1:08-CV-236,
     ECF No. 96, *3 (N.D. Ohio, Aug. 31, 2010) ("*Dannon* Order.")

18        [8] *Id.* at *4.  For comparison, *see* Notice of Intent to Object to Proposed Class Action
19   Settlement and Objections to Class Action Settlement, *In re Mattel*, No. 2:07-ml-01897 DSF,
     ECF No. 240 (C.D. Cal., filed March 8, 2010).

20        [9] *See McDonough v. Toys "R" Us, Inc.*, No. 2:06-cv-0242 AB, 2011 WL 6425116, *7
21   (E.D. Pa., Dec. 11, 2011) (granting final approval to class action settlement).

          [10] Order on Clyde Padgett's Motion to Intervene, *Zwicker v. General Motors Corp.*, No.
22   2:07-cv-00291-JCC, ECF No. 175 (W.D. Wash., Nov. 11, 2008) (denying motion to intervene).

23        [11] Mr. Palmer has objected in at least five cases in the past five years.  *See, e.g., White v.
     Experian Information Solutions, Inc.,* No. SACV-05-1070 DOC, 2011 WL 2971836 (C.D. Cal.,
24   July 15, 2011); *The Authors Guild, Inc. v. Google, Inc*., 2009 WL 2980745 (S.D.N.Y. September
     8, 2009); *Berger v. Property ID Corp*., Case No. 2:05-cv-05373 (C.D. Cal. February 27, 2009)
25   (ECF No. 897); *Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 3165661 (C.D. Cal.,
     Sept. 10, 2007), *aff'd, Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009); *Collins v. Am.*
26   *Honda Motor Co. Inc*., 2006 WL 4103767 (Cal. Super. December 28, 2006).  In each of these
     cases, Mr. Palmer objected that the attorneys' fees were too high.

27        [12] Objection of Steven P. Cope to Proposed Settlement and Notice of Intent to Appear,
     *Gemelas v. The Dannon Co.*, No. 1:08-CV-236, ECF No. 59 (N.D. Ohio, May 24, 2010).

28

1   do not meet the needs of absent class members."[13]  He mentions none of that in his objection;

2   instead, he styles himself a "member of the class."  Mr. Gaudet objected to the same *West*

3   *Publishing* settlement as Mr. Palmer (*see* n.11).  In his objection here, Mr. Gaudet cites the Ninth

4   Circuit's affirmance in *Rodriguez v. West Pub. Corp.* (*see* Preovolos Decl. Ex. F, at 3) but never

5   mentions his personal involvement in that case.  One of Mr. Gaudet's objections to this settlement

6   is the requirement that he disclose other cases in which he has filed objections.[14]

7          **Cox.**  Objector Travis Cox objected recently to at least two settlements, one of which

8   involved the identical argument he makes here, which the court rejected as "misplaced."  *In re*

9   *AT&T Mobility Wireless Data Services Sales Tax Litigation*, 789 F. Supp. 2d 935, 945, 970 (N.D.

10  Ill. 2011) (granting final and overruling all objections).[15]  The other case involved Dell

11  Computers, in which Mr. Cox objected but the Texas court granted final approval.[16]

12         **Gryphon and Ted Frank.**  Finally, there is objector Marie Gryphon, who filed a 30-page

13  brief.  *See* ECF No. 85.  Marie Gryphon is a lawyer and adjunct scholar with the Cato Institute.[17]

14         Ms. Gryphon is represented by Ted Frank.  Mr. Frank founded the "Center for Class

15  Action Fairness LLC," a conservative group that opposes class actions for ideological reasons.[18]

16  Its sole purpose is to file objections to disrupt and deter class action settlements.  *Id.*  As Mr.

17  Frank puts it, he is in the business of representing objectors in class action settlements and he

18

19  _____

20         [13] *See* Class Actions, RJ Gaudet & Associates, http://www.rjgaudet.com/?page_id=98
     (last visited Jan. 26, 2012).

21         [14] *See* Preovolos Decl. Ex. F at 3 (Gaudet).

22         [15] The other case is *In re Dell*, No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex., June
     11, 2010) (granting final approval to class action settlement).

23         [16] *In re Dell*, No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex., June 11, 2010).

24         [17] *See* http://www.cato.org/people/marie-gryphon. "The mission of the Cato Institute is to
     increase the understanding of public policies based on the principles of limited government, free
25   markets, individual liberty, and peace. The Institute will use the most effective means to
     originate, advocate, promote, and disseminate applicable policy proposals that create free, open,
26   and civil societies in the United States and throughout the world."  *See*
     http://www.cato.org/about-mission.html (last visited Jan. 26, 2012).

27         [18] *See* Ted Frank, Center for Class Action Fairness,
     http://centerforclassactionfairness.blogspot.com (last visited Jan. 26, 2012).

28

1    characterizes his attacks as "guerilla operation[s]."[19]  Mr. Frank resists the title "professional

2    objector," by which he means a "for profit" lawyer who seeks to "disrupt a settlement" (*id.*,

3    28:24-27)—hoping to distinguish himself from "for profit" objectors like those just mentioned.

4    But the fact that his foundation is compensated differently does not change his professional status.

5    Like the others, Mr. Frank has an agenda unrelated to the merits of this settlement.

6    **III.    ARGUMENT**

7       **A.    The Response of the Settlement Class.**

8          The response of the Settlement Class to the proposed settlement was overwhelmingly

9    positive.  Despite over 7 million notices sent directly to Settlement Class Members, only 11 filed

10   objections and only 61 opted out.  The objections represent just 0.0001% of the class, an

11   infinitesimally small number that supports a finding that the settlement is "adequate":

12          [A] certain number of objections are to be expected in a class action
            with an extensive notice campaign and a potentially large number
13          of class members.  *If only a small number of objections are
            received, that fact can be viewed as indicative of the adequacy of*
14          *the settlement.*

15   *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (italics

16   added) (citation omitted); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

17   2000) (low number of objections supporting finding that settlement was fair); *see also Wal-Mart*

18   *Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (18 objections out of 5 million

19   class members is evidence of "overwhelming[] . . . approval"); *TBK Partners, Ltd v. Western*

20   *Union Corp.,* 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of

21   approximately 56% of class); *Cotton v. Hinton,* 559 F.2d 1326, 1333 (5th Cir. 1977) (approving

22   settlement over objections of counsel purporting to represent almost 50% of class); *Bryan v.*

23   *Pittsburgh Plate Glass Co.,* 494 F.2d 799, 803-04 (3d Cir. 1974) (approving class settlement even

24   though more than 20% of class objected); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1152 (8th

25

26          [19] *See* Legal Pad, *Class Action Avenger Discusses Coupon Crusades*, A Recorder Blog
     (Sep. 23, 2009),  http://legalpad.typepad.com/my_weblog/2009/09/class-action-avenger-
27   discusses-coupon-crusades.html; Ted Frank, Center for Class Action Fairness,
     http://centerforclassactionfairness.blogspot.com (last visited Jan. 26, 2012).

28

1  Cir. 1999) (approving settlement where objectors represented fewer than 4% of class); *Class*

2  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (upholding the trial court's grant

3  of final approval over class member objections).

4       The fact that there are so few objectors and opt-outs also supports a finding that the

5  settlement is "fair and reasonable."  *See In re Mego*, 213 F.3d at 459 ("The reaction of the class

6  members to the proposed settlement further supports the conclusion that the district court did not

7  abuse its discretion in finding that the settlement was fair, adequate and reasonable."); *Fulford v.*

8  *Logitech, Inc.*, Case No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, *12  (N.D. Cal. Mar.

9  5, 2010) ("In addition, of the approximately 82,091 Class Members to receive Notice, only 12

10  (0.015 %) objected and 10 (0.012 %) opted out. Such an overwhelmingly positive reaction of the

11  Class Members affected by the settlement supports its approval.")

12       **B.     The Settlement is Fair, Reasonable, and Adequate.**

13       The settlement is extremely generous – it is close to a trial win.  Settlement Class

14  Members whose Adapters fail in the first year get a full refund; in the second and third years, they

15  get substantial cash amounts reduced only for years of use.  Settlement Class Members also get

16  the promise of a completely free replacement adapter for three years under the Adapter

17  Replacement Program.  The settlement is clearly "fair, reasonable and adequate."

18       Four objectors—Sioson, Pike, Bowes, and Padgett— make vague assertions that the

19  proposed settlement is generally unfair, inadequate, and unreasonable.  But these objectors do not

20  provide any specific objections to the terms of the settlement.  Rather, they offer boilerplate

21  complaints about the settlement process, improperly argue the merits of the litigation, or express

22  dissatisfaction with the proposed fee award.  None raises genuine issues as to the fairness of the

23  settlement terms.

24       First, objectors ignore the very generous components of the settlement discussed above.

25  Notably, these objectors never explain why the specific terms of the proposed settlement are

26  unfair, inadequate or unreasonable.

27       Second, objections based on the merits of the claim should be disregarded.  *See Officers*

28  *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or

1  fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.").  Moreover, no

2  objector even attempts to seriously argue that the settlement is not appropriate in light of the

3  merits of the case.  Objector Sioson, for example, objects solely on the basis that the Adapter is

4  "defective" and Apple "engaged in misrepresentations regarding the Adapter."  (Preovolos Decl.

5  Ex. B, at 1.)  But that objection simply recites verbatim the description of the lawsuit contained in

6  the Full Notice.  It ignores both the substantial benefits provided and the fact that the assessment

7  of the fairness, reasonableness, and adequacy of a settlement take into consideration the strength

8  of the Plaintiffs' claims.  As Apple explained in its Memorandum of Points and Authorities in

9  Support of Final Settlement Approval ("Final Settlement Approval Brief"), had the litigation

10  continued, Apple would have shown that:  (1) the Adapter was highly reliable and performed

11  without issues for almost all users; and (2) there were no actionable representations about the

12  Adapter.  (ECF No 92 at 8-9.)

13       Third, the objectors ignore the nature of a settlement and compromise.  There is a strong

14  judicial policy in favor of settlement in the class action context.  *Fulford*, 2010 U.S. Dist. LEXIS

15  29042, at *5-6 (citing *Manual for Compl. Litig.*, Fourth § 30.42 (2004) ("'[T]he interests of the

16  class as a whole are better served if the litigation is resolved by the settlement rather than

17  pursued.'").  The very nature of a settlement is compromise in the interest of expeditious and

18  cost-effective conclusion of the litigation. *See City of Seattle*, 955 F.2d at 1291 ("[I]t is the very

19  uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that

20  induce consensual settlements."); *see also County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031,

21  1053 (10th Cir. 2002) ("The premise of a settlement and compromise is that each party has an

22  arguable position that it agrees to give up in exchange for expeditious, inexpensive, and amicable

23  resolution of the matter.").  As such, complaints that the settlement is a negotiated compromise

24  that includes the payment of fees arrived at based on a mediator's proposal ignore the nature and

25  policy in favor of settlements.

26       Fourth, consistent with the premise of settlement and compromise, each party to a

27  settlement necessarily receives less than what he or she *may* have obtained *if* he or she ultimately

28  prevailed on the merits. *See City of Seattle*, 955 F.2d at 1291 (uncertainty of litigation induces

1  consensual settlements); *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8 (inherent risks in litigation

2  considered in assessing fairness of settlement); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

3  (1998) ("Of course it is possible . . . that [a] settlement could have been better.  But this

4  possibility does not mean [a] settlement presented [is] not fair, reasonable or adequate.").

5      Both Objectors Pike and Bowes base their objections on what they *hoped* to recover if

6  they prevailed on the merits.  Objector Pike asserts that Apple should have a policy where

7  customers can bring defective adapters and/or damaged computers directly into the retailer for

8  repair or replacement.  (Preovolos Decl. Ex. A, at 1.)  In fact, that is precisely what Apple's

9  Adapter Replacement Program provides.  Under the settlement terms, Settlement Class Members

10  were given direct notice of the Adapter Replacement Program, and that program is continued for

11  three years after the last sale of the subject products.  Objector Bowes complains that she has

12  additional consequential damages that will go uncompensated under the settlement.  (*Id.* Ex. C at

13  1.)  But the nature of a settlement is compromise, and failure to grant individual Settlement Class

14  Members the specific relief they desire is not grounds for disapproving the settlement.

15  Furthermore, these individuals, and any who share those views, are free to opt out and pursue

16  their individual claims.

17      **C.    Every Settlement Class Member is Eligible to Receive a Benefit from the Proposed Settlement.**

18

19      Five objectors contend that the settlement improperly excludes benefits to portions of the

20  Settlement Class.[20]  They are wrong.

21          **1.    Objectors Misconstrue the Composition of the Class and Timing of Relief**

22

23      Several objections are premised on apparent misunderstandings regarding the composition

24  of the Settlement Class and the timing of the relief available.  These objectors argue that the class

25  period has no end date.  They also argue that Settlement Class Members who made more recent

26  purchases or make future purchases of the Subject Computers or Adapters will obtain less relief

27  _____
   [20] They are Marie Gryphon, Clyde Padgett, Jeremy Lee, Rob Gaudet, and Dale Funk.

28

1   than earlier purchasers.[21]  But that is because these objectors ignore the fact that Apple stopped

2   selling the products at issue prior to the settlement.  Thus, the Settlement Class has a clear end

3   date – the date Apple stopped selling the subject products.  For the same reason, the supposedly

4   disfavored "recent" and "future" purchasers do not exist.

5           The Settlement Class consists of all purchasers of MacBook and MacBook Pro computers

6   that were sold with the 60W or 85W "MPM-1" MagSafe adapters ("Subject Computers") or

7   standalone MPM-1 adapters ("Adapter").  The MPM-1 Adapter was replaced by a newer design

8   MagSafe adapter starting in mid-2009.  The vast majority of Subject Computers and Adapters

9   were shipped before 2010.  Apple recently became aware that some Subject Computers were sold

10  as late as June 2010 and some Adapters were sold as late as May 2010.  The Settlement Class

11  ends in June 2010.

12          The settlement agreement was not executed until July 2011; class notice commenced on

13  November 8, 2011, and concluded on November 22, 2011.  Thus, all purchases of Subject

14  Computers or Adapters were made well before the settlement was executed or class notice was

15  given.  Everyone in the Settlement Class is given three years from purchase of the Subject

16  Computer or Adapter to obtain a cash refund or free Replacement Adapter.  For failures where the

17  Settlement Class Member paid cash for a Replacement Adapter prior to the Class Notice Date

18  (November 22, 2011), the Settlement Class Member can claim a cash refund by filing a claim on

19  or before March 21, 2012.  Under the Adapter Replacement Program, Settlement Class Members

20  have until *the later of* 3 years from date of purchase or May 21, 2012, to claim a free adapter

21  under the Adapter Replacement Program.[22]  In light of the recent information that there were

22  some sales until June 2010, Apple will extend its Adapter Replacement Program until three years

23  following the last sale of a Subject Computer or Adapter, or until at least July 2013.[23]  (*See*

24  ───────────────
            [21] *See* Preovolos Decl. Ex. E, at 4:17-19.

25          [22] This timeframe was structured to provide a 6-month grace period until May 21, 2012, to
    earlier purchasers whose three year period would have otherwise expired before the notice
26  provided under the settlement.

27          [23] The Adapter Replacement Program was scheduled to end in December 2012 but has
    now been extended.

28

1    Declaration of Allan Coulson ("Coulson Decl.") ¶ 5.)  The Class Notice provided Settlement

2    Class Members with notice of the Adapter Replacement Program as well as the availability of

3    cash refunds.

4              **2.       The Cash Benefit and Replacement Program Are Specifically Tailored
                         to the Claims in this Litigation.**
5

6        Objector Gryphon contends that the proposed settlement is unfair because "only a fraction

7    of class members are eligible to receive a cash payment through the claims process."  (Preovolos

8    Decl. Ex. E, at 4:4-12.)  She is wrong for multiple reasons.

9        First, as discussed in section III.C.1 above, every Settlement Class Member who

10   experiences an Adapter failure is eligible for a cash refund and/or a free adapter under the

11   Adapter Replacement Program.  Further, this objection assumes that every Adapter is defective,

12   so that even Settlement Class Members who never experience a failure are entitled to relief.  That

13   is wrong.  Most basically, as Apple has maintained throughout the litigation and as the objectors'

14   own experience demonstrates, the vast majority of the Adapters have performed without issue;

15   failure rates are very low.  Accordingly, there is no basis for arguing that the Adapters are

16   defective or that Settlement Class Members should recover for Adapters that do not fail.

17       Indeed, since Settlement Class Members are entitled to either a cash refund or a free

18   replacement adapter for three years after purchase, Gryphon is arguing that the settlement should

19   provide something for Settlement Class Members whose Adapters perform properly for three full

20   years.  But Settlement Class members are already covered for two years longer than they would

21   be entitled to under applicable law; *Daugherty* would bar their claims after expiration of the one

22   year limited warranty.  Gryphon thus is arguing for far more *than she could have achieved at*

23   *trial*.  That is not what settlements provide.

24       Moreover, Gryphon's argument ignores the allegations of the Complaint.  This lawsuit is

25   about a specific condition—"strain relief"—and nothing else.  The lawsuit itself thus limits

26   recovery to adapters that fail due to strain relief.  Gryphon's argument that everyone should

27   recover ignores the claims in the lawsuit itself.  The settlement provides compensation to those

28   Settlement Class Members who experience that issue, i.e., whose Adapters showed signs of strain

sf-3099126                                    11

relief.  (Settlement Agreement ("SA"), § II.A.)  Gryphon's argument would require compensation to Settlement Class Members whose claims were not included in the litigation, let alone the settlement.

Notably, Ms. Gryphon does not say why she purchased a Replacement Adapter or whether her original Adapter failed, but if it did, it lasted for four years, long after the warranty period expired.  (*Cf.*, ECF No. 85-1.)  If litigated, her claim would have been barred under California law.  Gryphon's counsel proclaims that Apple "exposed [Class Members'] home or office to the risk of fire." (ECF No. 85 at 4:4-12.)  This is imaginary, as Gryphon's incident-free use of the Adapter for four years—like the experience of the other objectors—makes clear.   In any event, the Settlement Agreement specifically carves out—does not release—claims for personal injury or property damage.  (SA, § VI.B.1.)

Finally, the settlement is specifically tailored to the claims.  It provides a full refund of the $79 purchase price for Adapters replaced during the first year; $50 for replacements during the second year; and $35 for replacements during the third year.  It thus reflects the value Settlement Class Members obtained from their Adapters prior to replacement.

### 3.      The Cash Refund Structure is Fair.

Some objectors contend that the structure of the cash refund benefit is unfair because it limits claims to those who experienced a failure and purchased a Replacement Adapters within three years of the initial purchase of the Subject Computer or Adapter.  This argument is based on a fundamental misunderstanding of the law and the facts.

First, as set forth above, all Settlement Class Members are covered for Adapter failures for three years, either through cash refunds or free adapters under the Adapter Replacement Program.  Two objectors whose Adapters failed during the fourth year, Gaudet and Gryphon, complain that these failures should be covered.  However, Apple is not legally required to refund or replace Adapters past the one-year limited warranty period.  By providing refunds or replacements for

1   three years after purchase, the settlement and Adapter Replacement Program provide Settlement

2   Class Members with substantial benefits beyond what is required under California law.[24]

3       Second, the sliding scale for cash refunds based on when the Settlement Class Member

4   purchased the Replacement Adapter is entirely reasonable.  (Preovolos Decl. Ex. G, at 1 (Lee).)

5   As Apple showed in its Final Settlement Approval Brief, Apple is covering Adapter failures both

6   during and after the express warranty period.  (ECF No. 92 at 9.)  In fact, Apple's warranty

7   coverage for the alleged Adapter strain relief issue would have barred plaintiffs' UCL, CLRA,

8   and other non-warranty claims as well as their warranty claims had the litigation proceeded to the

9   merits.  Accordingly, the sliding scale is in line with California law, and is fair, reasonable, and

10  adequate.

11      Third, Objector Gryphon's assertion that the settlement is unfair because it offers nothing

12  to someone who bought a new computer, rather than simply replacing an Adapter, makes no

13  sense.  She is asking the Court to topple this settlement on the basis of an imaginary person with a

14  defective adapter who might have abandoned her perfectly functioning personal computer and

15  bought a new one simply because the $79 adapter—which can be easily unplugged and

16  replaced—failed.  This is nonsense.  Gryphon never claims this happened to her.  Nor do any of

17  the other objectors.

18      **D.    The Claims Process is Simple, Efficient, and Fair.**

19          **1.    The Claims Process Ensures that Class Members Will Receive Their**
20          **Rightful Award and Protects Against Fraudulent Claims.**

21      Several objectors complain that the claims process should occur through a direct-check-

22  mailing opt-out process, rather than the opt-in claims process.[25]  Gryphon goes so far as to argue

23  that Apple either must have or should create a "registry" of Subject Computer owners who

24  subsequently purchased Adapters, and provide them with automatic compensation.  This position

25      [24] The second adapter which Gaudet claims he purchased in 2011 and then replaced is
    almost certainly not an MPM-1 Adapter (he does not claim that it is) and is not covered by either
26  the lawsuit or the settlement.

27      [25] They are Marie Gryphon, Kerry Ann Sweeney, Angela Pike, Morgan Barton, Robert
    Gaudet, Travis Cox, and Dale Funk.

28

1    is meritless for multiple reasons.  Most importantly, the direct payment process would

2    compensate people who are not entitled to a refund, but who simply chose to buy a spare adapter,

3    replaced a lost adapter, caused their adapter to fail by user abuse, or experienced a failure for

4    reasons other than strain relief.

5           Consumers purchase Adapters for many reasons.  They may desire an additional adapter

6    for home or office; they may have lost their Adapter; or their Adapter may have failed due to user

7    abuse.  And Adapters get abused: they get bent, twisted, stepped on, tied in knots, yanked from

8    walls, thrown into suitcases, and run over by wheeled office chairs.  Such consumers are not

9    entitled to recover under the settlement, nor could they have recovered at trial.  Further, the

10   subject of this litigation and settlement is Adapters that fail due to strain relief, not other reasons;

11   the "direct payment" thus would compensate consumers for claims that are not included in the

12   lawsuit.  In sum, the "direct check" process would compensate consumers who had no loss, were

13   not entitled to payment, were not even part of the lawsuit and would not have been able to recover

14   at trial.

15          Second, consumers do not register adapters, they register computers.  Thus, contrary to

16   Ms. Gryphon's argument, Apple does not have a "registry" that matches computer purchases with

17   Adapter purchases, nor could it create one.  Moreover, consumers purchase Adapters from a

18   variety of sources, including third party retailers like Best Buy or Amazon.  Apple has no

19   information about these purchasers.

20          Several objectors also challenge the proof of purchase requirement.  For the reasons

21   already approved by this Court, proof of purchase is essential under the circumstances of this case

22   to avoid an unacceptably high fraud risk (Apple's Request for Reconsideration at 3 (ECF No. 78))

23   and to pay appropriate claim amounts.

24          Providing an adapter serial number is *not* evidence that a Settlement Class Member

25   purchased a Replacement Adapter.  Every Subject Computer shipped with an Adapter; a

26   Settlement Class Member could simply provide the serial number of that adapter, even if he or

27   she never purchased a Replacement Adapter.  A Settlement Class Member could also provide the

28   serial number of an adapter he or she received free of charge under Apple's one-year express

sf-3099126                                        14

1   warranty or under Apple's Adapter Replacement Program.  Settlement Class Members thus may

2   have multiple adapters and serial numbers that they can provide on the claim form even if they

3   never paid for a single adapter, and thus a serial number does not establish a purchase of a

4   Replacement Adapter.  Only an actual proof of purchase avoids that fraud risk.

5         Moreover, proof of purchase is also required to determine the amount of the payment each

6   Settlement Class Member is entitled to.  The date of purchase of the Replacement Adapter,

7   typically reflected on the proof of purchase, determines whether a Settlement Class Member is

8   entitled to $79, $50, or $35.  Even if a class member harbored no intent to defraud, there would be

9   a significant risk of overpayment.  It is unlikely that a Settlement Class Member will recall the

10  precise date the Replacement Adapter was purchased, and a difference of even a few days may

11  mean the difference between a first year ($79), second year ($50), or third year payout ($35).

12  (*Id.*)

13        To the extent that objectors complain about obtaining duplicate receipts, Apple has

14  created an online lookup tool for Settlement Class Members to obtain duplicate receipts as proof

15  of purchase.  (*Id.* at 4.)  The proof-of-purchase requirements are also lenient.  Settlement Class

16  Members can submit a receipt, bank or credit card statement; if it does not show the purchase of

17  an Adapter, the price paid, or other required information, the Settlement Class Member can

18  simply supply that information in the claim form.  (*Id.*)

19        Finally, the claims process itself is hardly burdensome.  Objector Funk complains that

20  claims form is "draconian" because it does not allow for substantial completion and provides no

21  remedy for those Class Members who "miss something or accidently provide incorrect or illegible

22  information."  (Preovolos Decl. Ex. D, at 9)  But that is not true:  the settlement agreement

23  provides for notice and a 45-day cure period for incomplete or defective claims.  Nor is it

24  unreasonable to require the Settlement Class Members to swear under penalty of perjury that the

25  information provided in their claim forms is accurate.  That requirement is standard and

26  appropriate in class action settlements.

27

28

## 2.     An Online Claims Process Is Not Required.

In another overstatement, Objector Gryphon insists that a valid claims process necessarily *requires* an online submission.  (Preovolos Decl. Ex. E, at 6:16-20)  She is wrong.  No rule or authority requires an online claims process.  Indeed, mail-in claims forms are commonly approved and remain the norm.  *See, e.g., Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208, *101 (N.D. Cal. Feb. 7, 2008) (granting preliminary approval of settlement requiring mail-in claims forms); *Alix v. Wal-Mart Stores, Inc.*, 2010 N.Y. Misc. LEXIS 1402 (N.Y. Sup. Ct. May 26, 2010) (granting preliminary approval of settlement requiring mail-in claim forms).  Just because some courts have *allowed* online submission does not make it mandatory here.[26]  Nor does Objector Gryphon provide any authority in support of her claim that an online claims process is required.[27]

Objector Gryphon cites a case for the proposition that "using 'electronic claim forms is likely to contribute to a far larger number of claims.'"  (Preovolos Decl. Ex. E, at 8 (citing *In re Nasdaq Market-Makers Antitrust Litig.*, 2000 U.S. Dist. LEXIS 304, at *14 (S.D.N.Y. Jan. 18, 2000).)  But the case she cites merely notes that the "innovative" use of electronic claim forms may result in more claims; it does not hold that this "innovation" is required.[28]  Nor is there any

---

[26] Her reliance on *Walter v. Hughes Communs., Inc.*, No. 09-2136 SC, 2011 U.S. Dist. LEXIS 72290, at *39-41 (N.D. Cal. July 6, 2011) is misplaced.  There, Judge Conti noted that an online form *could* improve the submission procedure, *id.* at *40-41, but there were many reasons why the court in *Walters* declined to give final approval.  *Id.* at *39-40.  Indeed, Judge Conti listed four *major* deficiencies, and not one of them related to submission of claims by mail.  *See id.*

[27] Objector Gryphon cites a law review article for the proposition that online claims processes "are becoming pervasive."  (Preovolos Decl. Ex. E, at 8:16-18)  Yet, the passage she cites merely says that "direct claim submissions are *just beginning to take hold*."  *Making Class Actions Work: The Untapped Potential Of The Internet*, 69 U. Pitt. L. Rev. 727, 751 (2008) (italics added).

[28] The cases Objector Gryphon cites do not suggest that an online claims process is necessary when claim rates are low.  *See Yeagley v. Wells Fargo & Co.*, Case No. C 05-03403 CRB, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. Jan. 18, 2008), *reversed and remanded*, 365 Fed. Appx. 886 (2010) (awarding reasonable attorney fees for a settlement with a response rate below 1%); *Strong v. BellSouth Telecomm., Inc.*, 173 F.R.D. 167, 169 (W.D. La. 1997), *aff'd*, 137 F.3d 844 (5th Cir. 1998) (finding a 4.3% claim response rate); *Union Fidelity Ins. Co. v. McCurdy*, 781 So. 2d 186, 191 (finding a low claim response rate when notice was mailed to only 4% of the class); *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 44 (D. Me. 2005) (noting that a 19.7% response rate was higher than usual).

1    evidence that the claims rate here is a problem.  The claims rate to date (and the claim period is

2    still open) reflects the quality of the Adapters, which rarely failed, and/or the availability of the

3    earlier Adapter replacement program.[29]

4          Objector Gryphon also suggests that an online process is required because the class

5    consists of computer owners.  (Preovolos Decl. Ex. E, at 6:16-17)  This is a *non sequitur*.

6          Finally, for the reasons set forth in section III.D.1 above, proof of purchase is essential to

7    prevent an unacceptably high risk of fraud.  The requirement to submit proof of purchase makes

8    the pure online claims process advocated by these objectors infeasible.

9                    **3.      A Low Estimated Claims Rate Does Not Render the Settlement Unfair.**

10         Objector Gryphon concedes that the rate of response to any claims-made settlement

11   cannot be predicted, but she speculates that "a very low rate is reasonably certain."  (Preovolos

12   Decl. Ex. E, at 7:25-26)  She cites a number of cases where the response rates were below 10%.

13         The Claims Period in this case closes March 21, 2012, so there is no way to know at this

14   time the exact claims rate.  To date, the Claims Administrator has received approximately 10,391

15   claims.  But a low claims rate is not evidence of a too-onerous claims process or an inadequate

16   settlement.  Rather, it is consistent with Apple's position in the litigation that the Adapter is

17   reliable and has very low failure rates, a position borne out by the objectors' own failure

18   experience.  Moreover, under Apple's Adapter Replacement Program, Apple has provided and

19   continues to provide replacement adapters outside warranty and apart from the cash claims

20   process.  Apple has provided approximately 20,000 adapters under the Replacement Adapter

21   Program since class notice commenced.  (Coulson Decl. ¶ 3)

22

23

---

24         [29] In fact, some of the cases Objector Gryphon cites to support her argument involve
     redemption rates of *vouchers* mailed directly to class members instead of *claim forms*.  Not only
25   are these cases irrelevant as to claim processes, but they also highlight the fact that response rates,
     even to a free voucher, generally are driven by the value of the settlement rather than the means
26   of responding.  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F. Supp. 2d
     320, 321 (D. Me. 2005) (finding a 2% redemption rate for vouchers mailed to class members);
27   *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 695 (D. Minn. 1994) (describing a low
     redemption rate for scrip mailed to class members due to the minimal value of the certificate).

28

E.    **Objectors' Arguments Respecting Attorneys' Fees Do Not Provide a Basis for Challenging the Settlement.**

Apple will leave it to plaintiffs to address the objections to the award of attorneys' fees. However, Apple does wish to emphasize that objectors' efforts to mount a challenge to the settlement itself based on fee issues is meritless. The mediator in this case, the Honorable Fern Smith, has confirmed that fees were not discussed until the settlement terms were resolved. (*See* Final Settlement Approval Brief at 3 (ECF No. 92).) Objectors' efforts to use the so-called "clear sailing" provision to attack the settlement and their argument that the settlement is somehow collusive are thus baseless. *See, e.g., In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685, *10 (N.D. Cal. May 17, 2011) ("Because the settlement is the product of a formal mediation session and several months of negotiations conducted at arm's length, the Court is satisfied that the settlement is not the product of collusion."). Objectors argue that mediator involvement does not necessarily negate the possibility of collusion. But objectors ignore the distinct circumstances that here, the parties reached an agreement on material terms with the mediator before fees were discussed, and the fee agreement was reached *based upon the mediator's proposal*. In these circumstances, the mediator's role eliminates any basis for arguing for collusion.

F.    ***Bluetooth* Does Not Require a Different Result.**

Two objectors argue that the settlement is collusive based upon the "the indicia of self-dealing" that the Ninth Circuit warned about in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). The objectors are wrong. As noted above, the mediator's declaration confirms that material terms of the settlement were agreed upon before fees were discussed, and fees were subsequently arrived at based upon the mediator's proposal. These facts negate any suggestion of collusion.

Moreover, *Bluetooth* is distinguishable on additional, multiple grounds. The settlement in that case was injunction-only. It awarded class members nothing aside from injunctive relief, plus a small *cy pres* award, while simultaneously providing for uncontested and generous attorneys' fees. *Id.* at 939-40, 945 n.8. That is not this case, which provides for cash awards and

1   free replacement adapters.  Moreover, the Ninth Circuit made no ultimate determination about

2   fairness.  Rather, it faulted the district court for failure to make *findings* as to the issues it

3   identified as cause for concern, and it remanded with instructions that the district court make

4   those findings.  *Id.* at 945.

5                 G.      **The Class Notice Met the Requirements of Due Process and Rule 23.**

6         Some objectors contend that Class Notice was insufficient because it failed to provide

7   adequate information.[30]  They also complain that the settlement website does not contain all the

8   court documents related to the claims or the settlement.  These objections are without merit, as

9   Apple has provided multiple forms of comprehensive notice.

10        As Apple explained in its Final Settlement Approval Brief, the Class Notice met the

11  requirements of due process and of Federal Rule of Civil Procedure 23(b)(3).  Courts must direct

12  to class members "the best notice that is practicable under the circumstances."  Fed. R. Civ. P.

13  23(c)(2)(B).  Such notice must contain basic information about the class action and class

14  members' rights.[31]  The Ninth Circuit has further required that notice to absent class members

15  "'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse

16  viewpoints to investigate and to come forward and be heard.'"  *See, e.g., Torrisi v. Tucson Elec.*

17  *Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (citation omitted).

18        Direct notice was provided to approximately 7,441,930 Settlement Class Members, which

19  represents 78% of all MacBook or MacBook Pro computers sold, and a greater percentage of

20  actual class members. The Summary Notice was disseminated by e-mail to 5,523,878 Settlement

21  Class Members for whom Apple had an e-mail address.  (Declaration of Jonathan D. Carameros

22  regarding Notice Procedures ¶11 (ECF No. 96))  The Postcard Notice was disseminated by U.S.

23

24        [30] They are Marie Gryphon, Morgan Barton, Travis Cox, and Dale Funk.

25        [31] Specifically, Rule 23 prescribes that class action notices contain: "(i) the nature of the
    action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a
    class member may enter an appearance through an attorney if the member so desires; (v) that the
26  court will exclude from the class any member who requests exclusion; (vi) the time and manner
    for requesting exclusion; and (vii) the binding effect of a class judgment on members under
27  Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

28

1    mail to 2,568,727 Settlement Class Members for whom Apple had a mailing address but no email

2    address or for whom the e-mailed notice was returned electronically as undeliverable.  (*Id.* ¶¶ 10,

3    13)  The Summary Notice was also published in the November 14, 2011, edition of *USA Today*,

4    in the December 2011 issue of *Macworld* (which went on sale on November 8, 2011), and in the

5    December 2011 issue of *Wired* magazine (which went on sale on November 2, 2011).

6    (Declaration of Sissie Twiggs in Support of Final Settlement Approval ¶¶ 2-4 (ECF No. 94).)  In

7    addition, the Claims Administrator established a Settlement Website

8    (www.adaptersettlement.com) where the Class Notice and the Claims Package were posted.

9    (ECF No. 96 ¶ 8)  The Class Notice and Claims Package were mailed at Apple's expense to any

10   Settlement Class Member who called a toll-free telephone number that was established at Apple's

11   expense.  (*Id.* ¶ 7)

12          Moreover, contrary to the objectors' assertions, the content of both the summary and full

13   notices was directly based on the Federal Judicial Center forms.  The Class Notice provided

14   ample detail regarding the terms of the settlement (as evidenced by the objectors' arguments).

15   The Class Notice and the online FAQ also described the claims in the litigation.  There is no

16   requirement that the settlement website include legal documents such as the complaint or the

17   motions for preliminary or final approval, nor would those documents be meaningful to the

18   average non-attorney class member.  And, of course, the lawyers representing objectors here

19   could readily have obtained any and all of the documents in the case online.

20          **H.      Disclosure of More Than Three Prior Settlement Objections is Vital to**
              **Identifying "Professional Objectors" Who Bring Claims in Bad Faith.**
21

22          Three objectors criticize the requirement that they disclose whether they have objected to

23   more than three settlements in the past.[32]  Their complaint is unfounded.  This disclosure is not

24   contrary to any law and in no way limits their ability to object.  It is merely a procedural tool to

25   identify "professional objectors" whose interests are not aligned with other class members.  *See,*

26   *e.g., In re Wal-Mart Wage & Hour Empl. Practices Litig.*, Case No. 2:06-CV-00225-PMP-PAL,

27   _____
        [32] They are Marie Gryphon, Morgan Barton and Rob Gaudet.

28

sf-3099126                                                20

1   MDL 1735, 2010 U.S. Dist. LEXIS 21466, *17-18 (D. Nev. Mar. 8, 2010) (finding professional

2   objectors' claims meritless and requiring them to post appeal bonds).

3          Contrary to the objectors' contentions, there is nothing unduly burdensome or

4   impermissible about the requirement.  The disclosure is not a "pre-condition" prohibited by the

5   Federal Rules of Civil Procedure.  (Preovolos Decl. Ex. F, at 3 (Gaudet))  The objection

6   procedure does not infringe on the right to object.  Rather, the procedure simply creates the

7   process by which objections can be made and ensures that necessary information is collected

8   from objectors.  Rule 23 is silent as to the details of the objection process, so it is absurd to

9   suggest that deadlines, filing requirements, and other simple directions are unlawful limits on

10  Rule 23.

11         Objector Barton argues that the requirement is "contrary to Supreme Court authority" that

12  allows objectors "who appear at the fairness hearing to have the right to appeal approval of a

13  proposed settlement."  (Preovolos Decl. Ex. J, at 2:1-10)  His reliance on *Devlin v. Scardelletti*,

14  536 U.S. 1 (2002), however, to support this proposition is misplaced.  As Objector Barton

15  describes, that case dealt with appellate rights of objectors.  It did not address the steps taken to

16  lodge an objection.  (*See* Preovolos Decl. Ex. J, at 2:3-7; *see also Devlin*, 536 U.S. at 3-6.)

17         **I.      There is No Intraclass Conflict and the Settlement Class is Properly Defined.**

18         Two objectors complain that the conditional certification of the class is invalid because

19  the class is improperly defined and that there is intraclass conflict.[33]  Their arguments, however,

20  are predicated on a fundamental misunderstanding of the facts.

21         First, Objector Gryphon contends that the conditional certification of the Settlement Class

22  is flawed because the definition of the class is not sufficiently definite.  (Preovolos Decl. Ex. E, at

23  18)  She contends that the class definition must state an end date and that it impermissibly

24  includes purchasers of Adapters after the class notice date.  She is wrong on both counts.  As

25  discussed in section III.C.1 above, Apple stopped selling Subject Computers and Adapters before

26  the date of settlement or class notice.  There thus are no purchasers of the Adapter after the class

27         _____

           [33] They are Marie Gryphon and Dale Funk.

28

1   notice date because Apple no longer sells the Adapter at issue in this case and has not done so

2   since June 2010.  For the same reason, the Settlement Class is limited to the time period during

3   which the Subject Computer and the Adapter were sold.

4        The cases cited by Objector Gryphon are easily distinguishable because they involved

5   situations where there was no end date for the class.  (*See* Preovolos Decl. Ex. E, at 18:18-28

6   (citing *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-02069, 2008 U.S. Dist. LEXIS

7   109446, at *15-16 (N.D. Cal. May 2, 2008) (court refused to certify a class where the scope of the

8   class ran "up to the present"); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050, 2009 U.S. Dist.

9   LEXIS 62817, at *3-5 (N.D. Cal. July 2, 2009) (court re-defined the class to include an end

10  date—the date on which the court certified the class); *Saur v. Snappy Apple Farms, Inc.*, 203

11  F.R.D. 281, 285-86 (W.D. Mich. 2001) (court reformed class definition to provide end-date

12  where class initially included members who would be determined in the future); *Wike v. Vetrue,*

13  *Inc.*, No. 3:06-00204, 2010 U.S. Dist. LEXIS 96700 (M.D. Tenn. Sept. 15, 2010) (parties agreed

14  to redefine class definition where class continued into the present).)

15       Second, there is no disparate treatment of different Settlement Class Members.  As

16  discussed in section III.C.1 above, all Settlement Class Members are covered for Replacement

17  Adapters for a period of three years following purchase, either by the availability of a cash refund

18  or of a free adapter under the Adapter Replacement Program.[34]  (Preovolos Decl. Ex. E, at 21

19  (Gryphon))

20

21  _____

    [34] The cases Objector Gryphon relies upon are inapposite because the settlements in those
22  cases treated identically-situated class members differently or involved discrete subclasses.  (*See
    id.*, Ex. E, at 21 (citing *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 982 F.2d 721, 741-
23  43 (2d Cir. 1992) (settlement created two subclasses because only those class members with
    sufficiently early filing dates would receive payment before the trust run out of money; the
24  second subgroup with later filing dates would receive no money at all); *Mirfahisi v. Fleet
    Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (settlement included two "classes," and under
25  the terms of the settlement, one of the classes received nothing in exchange for releasing their
    claims); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (asbestos settlement
26  included currently injured and exposure-only categories of plaintiffs, and settlement had "no
    structural assurance of fair and adequate representation for the diverse groups and individuals
27  affected").)

28

1      **J.      The Ninth Circuit's Fairness Standards Are Adequate in this Litigation.**

2              Finally, Objector Gryphon asks this Court to abandon the Ninth Circuit's *Churchill*

3      *Village* factors[35] altogether and, instead, adopt the principles set forth in Section 3.05 of the

4      American Law Institute's *Principles of the Law of Aggregate Litigation.*  (Preovolos Decl. Ex. E,

5      at 23:5-24:20.)  But she fails to explain why the *Churchill Village* factors are inadequate, much

6      less offer a reason why this Court should fail to follow controlling Ninth Circuit precedent.

7      **IV.    CONCLUSION**

8              For the foregoing reasons, Apple respectfully requests that the Court reject the objections

9      and grant final approval of the proposed settlement.

10

11     Dated: January 27, 2012                    PENELOPE A. PREOVOLOS
                                                   ANDREW D. MUHLBACH
12                                                 ALEXEI KLESTOFF
                                                   MORRISON & FOERSTER LLP
13

14
                                            By:    */s/ Penelope A. Preovolos*
15                                                 Penelope A. Preovolos

16                                                 *Attorneys for Defendant*
                                                   APPLE INC.
17

18

19

20

21

22

23

24

25

26     _____
              [35] *Churchill Village v. General Elec.*, 361 F.3d 566, 575-76 (9th Cir 2004) (setting forth
27     eight-factor test that district courts must follow in assessing the fairness of class action
       settlements).
28

sf-3099126                                   23