ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

Co-Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.: 5:09-CV-01911-JW <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL BOND BY OBJECTOR MARIE GRYPHON <br><br> Date: May 21, 2012 <br> Time: 9:00 a.m. <br><br> Judge: Honorable James Ware <br> Courtroom: 9, 19th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................ 1

II. BACKGROUND ............................................................................................. 3

    A.    Filing of the Complaint, Investigation and Pre-Settlement Discovery ............... 3

    B.    Settlement, Preliminary Approval & Motion for Attorneys' Fees ...................... 4

    C.    Final Approval ...................................................................................... 6

III. ARGUMENT .................................................................................................. 7

    A.    Standard For Imposition of Rule 7 Appeal Bond ................................. 7

    B.    All Factors Weigh In Favor of Imposing An Appeal Bond ............................... 8

        1.    Gryphon and CCAF's Financial Ability to Post a Bond ......................... 8

        2.    Risk that Gryphon and CCAF Will Not Pay Appellees' Costs ............... 9

        3.    Merits of the Appeal ........................................................... 10

    C.    Standard for the Amount of a Rule 7 Appeal Bond ......................... 13

        1.    Taxable Costs ...................................................................... 14

        2.    Attorneys' Fees ................................................................... 15

    D.    The Court Also Has Inherent Power To Set A Bond ......................... 17

    E.    In The Alternative, Expedited Discovery Is Necessary To Test A Claim Regarding Gryphon's Inability To Pay ........................................... 18

IV. CONCLUSION ............................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998)..........................................................................15

*Aggarwal v. Ponce School of Med.*, 745 F.2d 723 (1st Cir. 1984). ...........................................18

*Ansari v. Bella Automotive Group, Inc.*, 145 F.3d 1270 (11th Cir. 1998)................................16

*Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007)............................ passim

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990) ...........................................10

*Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ..14

*Calatayud v. State of California*, 18 Cal. 4th 1057, 77 Cal. Rptr. 202 (1998).........................16

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .......................................................................17

*Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006) .....................14

*David v. District of Columbia*, 674 F. Supp. 2d 34 (D.D.C. 2009) ..........................................13

*Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516 (5th Cir. 1986)................................................17

*Fleury v. Richmond No. Am., Inc.*, No. C- 05-4525 EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ..................................................................................................................... passim

*Gemelas v. Dannon Co., Inc.*, No. 1:08 CV 236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) ...............................................................................................................................14

*Gerling Global Reinsurance Corp. of America v. Garamendi*, 400 F.3d 803 (9th Cir. 2005) ..13

*Glasser v. Volkswagen of America, Inc.*, 645 F.3d 1084 (9th Cir. 2011) ...........................11, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................................10

*Harman v. City and County of San Francisco*, 39 Cal. Rptr. 3d 589 (Cal. App. 1st Dist. 2006) ........................................................................................................................................13

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....................7, 11, 12

*In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005).....14

*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004) ......................................8, 15

*In re Community Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277 (3d Cir. 2005) ...................................................................................7

*In re Compact Disc*, 2003 WL 22417252 (2003) ....................................................................15

*In re Currency Conversion Fee*, No. 01-01409, 2010 WL1253741 (S.D. N.Y. Mar. 5, 2010).15

*In re Initial Public Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2884794 (S.D.N.Y. July 20, 2010)..........................................................................................................9, 15

*In re Ins. Brokerage Antitrust Litig.*, MDL Docket No. 1663, Civ. No. 04-5184 (GEB), 2007 WL 1963063 (D.N.J. July 02, 2007)......................................................................14, 15

*In re Mroz,* 65 F.3d 1567 (11th Cir. 1995).............................................................................17

*In re Pharmaceutical Ind. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. 2007) ..............................................................................................................................9

*In re Wal-Mart Wage & Hour Employment Practices Litig.*, MDL No. 1735, 2010 WL 78651 (D. Nev. Mar. 8, 2010)...............................................................................................8, 14

*Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................2

*Pedraza v. United Guaranty Corp.*, 313 F.3d 1323 (11th Cir. 2002) .......................................15

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)......................................................................7

*Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785 (2006) .....16

*Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987)....................................................................12

*Skelton v. General Motors Corp.*, 661 F. Supp. 1368 (N.D. Ill. 1987).....................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)........................7

*Thronton v. Wolpoff & Abramson, L.L.P.* 312 Fed. Appx. 161 (11th Cir. 2008) .....................13

*Yingling v. eBay, Inc.*, No. C 09-01733, 2011 WL 2790181 (N.D. Cal. July 5, 2011)............7, 8

*Zebrowski v. Hanna,* 973 F.2d 1001 (1st Cir. 1992)................................................................17

**Statutes**

15 U.S.C. § 2310 ........................................................................................................13, 16, 17

28 U.S.C. § 1712 ....................................................................................................................13

9th Cir. R. 27-11 ....................................................................................................................15

Civil Code § 1794 .............................................................................................................15, 17

Fed. R. App. P. 39(e) .............................................................................................................13

1

## **STATEMENT OF ISSUES TO BE DECIDED (Civ. L.R. 7-4)**

2

     1.     Whether the Court should order objector and appellant Marie Gryphon and her

3

attorneys ("Gryphon") to post a Federal Rule of Appellate Procedure 7 appeal bond in the

4

amount of $200,000.

5

     2.     Whether the limited expedited discovery that Plaintiffs are requesting in

6

connection with this motion for an appeal bond should be granted.

7

## **MEMORANDUM OF POINTS AND AUTHORITIES**

8

     Plaintiffs Naotaka Kitigawa, Jr., Timothy J. Broad, Jessie Reisman, Tracey Hackwith

9

and Michael Martin (collectively "Plaintiffs"), representatives of the Class certified by this

10

Court, respectfully submit this memorandum of points and authority in support of Plaintiffs'

11

motion seeking an order requiring objector Marie Gryphon ("Gryphon") and her counsel of

12

record, Theodore Frank ("Frank"), to post a Federal Rule of Appellate Procedure 7 ("Rule 7")

13

appeal bond in the amount of $200,000. A bond is particularly appropriate as to Mr. Frank

14

because all of the arguments he intends to raise on appeal involve attorney fees, and his client

15

does not have standing to object to the fee award. Mr. Frank's objections may advance his

16

ideological interests limiting compensation to class counsel, but they have no connection to

17

any injury suffered by his client. Because his appeal lacks merit, and Plaintiffs' counsel stand

18

to sustain substantial additional costs and expenses in defeating it, the Court should require his

19

client to post a bond in the amount of $200,000.

20

## I.    INTRODUCTION

21

     On March 8, 2012, after three years of investigation and hard-fought litigation by

22

Plaintiffs' counsel, the Court granted final approval of an outstanding settlement that benefits

23

more than 9.6 million purchasers of Apple, Inc. ("Apple") MacBook and MacBook Pro

24

computers and MPM-1 MagSafe adapters (the "Adapter"). This settlement is now under

25

attack by a group of professional and serial objectors, Mr. Frank (on behalf of

26

objector/appellant Gryphon), Dale Funk, Robert J. Gaudet Jr., and Jeremy Lee, who have filed

27

notices of appeal from this Court's order granting final approval of the settlement and

28

1   Plaintiffs' attorneys' fee request ("Final Order") (Dkt. No. 107) and/or the final Judgment

2   (Dkt. No. 119).[1]

3       Plaintiffs bring this motion for an order requiring Ms. Gryphon to post a Rule 7 appeal

4   bond to ensure appellees actually receive costs awarded in connection with her ill-conceived

5   appeal. Plaintiffs have filed similar motions for the posting of an appeal bond by objectors

6   Gaudet (Dkt. No. 127), and Lee (Dkt. No. 131).  In short, Ms. Gryphon only advances

7   meritless arguments regarding the uncontested award of attorneys' fees that she does not have

8   standing to make, and she has abandoned her arguments concerning the fairness of the

9   settlement to class members.  Indeed, in her papers, she characterized the settlement on page 1

10  of her brief to this Court as "potentially fair."

11       As other courts have accurately described Mr. Frank's objections to class action

12  settlements, his objections here are "long on ideology and short on law." *Lonardo v. Travelers*

13  *Indem. Co.,* 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010).  Frank has made clear that he does

14  not intend to pursue his meritless and inaccurate criticisms of the settlement on appeal.

15  Instead, Frank argues that the attorneys' fee is excessive in comparison to his inaccurate

16  assessment of the value of the settlement.  His client does not have standing to object to the fee

17  request, because this is not a case in which a common fund was created, and Frank fails to

18  argue, let alone explain, how the reduction in the attorney fee he demands would affect the

19  recovery to his client or to the class.  The only effect his argument has is to delay the recovery

20  to which his client and the Class are entitled.

21       All class members, including Ms. Gryphon, are entitled to a free, re-designed adapter

22  for a ***minimum*** of three years after purchase, if their Adapter frays or fails to work.  The class

23  notice program has ***directly*** informed over 7.4 million people of this extended warranty

24  program, and Apple's employees have been fully instructed on implementation of the

25  program.   Briskin Decl. ¶ 15.  Tens of thousands of class members have obtained free

26

27  [1] Exhibit references herein are attached to the Declaration of Craig L. Briskin in Support of
    Plaintiffs' Motion for Posting of an Appeal Bond by Objector Marie Gryphon to Secure
28  Payment of Costs on Appeal (FED. R. APP. P. 7).

1   replacement adapters since notice was disseminated. *Id.* As this Court concluded, "[t]he terms

2   of the Settlement Agreement and Settlement are approved as fair, reasonable and adequate ...."

3   *See* Final Order ¶ 8 (Dkt. No. . Indeed, the settlement has received overwhelming approval

4   from the members of the class. Of the more than 7.4 million people who received ***direct*** notice

5   of the settlement, only eleven of them filed objections (just .0001% of the potential class), and

6   only 61 people opted out (just 0.00064% of the potential class). Moreover, of these 11

7   objections, six were filed by or at the behest of serial and professional objectors, solely to

8   harass and delay justice and relief for the millions of class members and their counsel and in

9   some cases, to attempt to profiteer from the settlement by holding it hostage to their meritless

10  boilerplate objections.

11      A Rule 7 bond is appropriate here because the three factors courts typically take into

12  account weigh heavily in favor of a bond, namely: (1) Gryphon's financial ability to post a

13  bond; (2) the risk that Gryphon would not pay the appellee's costs if he loses the appeal; and

14  (3) the merits of the appeal. Rule 7 appeal bonds are an integral and important component of

15  the civil justice system and are often necessary, as here, to insure that appellees actually

16  receive costs awarded in connection with an ill-conceived appeal.

17  **II.    BACKGROUND**

18      **A.    Filing of the Complaint, Investigation and Pre-Settlement Discovery**

19      On or about May 1, 2009, Plaintiffs Kitigawa, Broad, and Reisman filed a nationwide

20  class action on behalf of themselves and over 9.6 million similarly situated consumers who

21  purchased Subject Computers that shipped with the alleged defective Adapter and/or a

22  standalone Adapter, titled *Kitigawa, et al. v. Apple, Inc.*, No. 5:09-CV-01911-JW (the

23  "*Kitigawa* Action") (Dkt. No. 1). On or about May 15, 2009, Plaintiffs Hackwith and Martin

24  filed a similar complaint in the United States District Court for the Central District of

25  California, titled *Hackwith, et al. v. Apple, Inc.*, No. 5:09-CV-034862-JW (the "*Hackwith*

26  Action"). The *Hackwith* Action was transferred to this Court and was consolidated with the

27  *Kitagawa* Action on November 16, 2009 (collectively "the Actions") (Dkt. No. 43). A

28

1    consolidated complaint was filed in the Actions on December 4, 2009 (the "Complaint") (Dkt.

2    No. 44).

3         Plaintiffs alleged that the Adapters spark, fray, overheat, catch on fire or otherwise

4    prematurely fail. (Complaint ¶ 3)  Plaintiffs further alleged that Apple is, and was, aware of

5    this Defect, but failed to disclose it or warn Plaintiffs and the class of the Defect.   The

6    complaint sought damages, restitution, disgorgement and declaratory and injunctive relief as

7    well as attorneys' fees, costs, and expenses.   From the outset, Apple denied liability and

8    disputed Plaintiffs' legal arguments and factual and expert allegations.   Apple hired a well-

9    respected international law firm, Morrison & Foerster LLP, to represent it in this lawsuit.

10   Apple answered the complaint on February 5, 2010, largely denying Plaintiffs' allegations and

11   contesting their legal theories.  (Dkt. No. 51)

12        Plaintiffs served Apple with document requests, interrogatories, requests for admission,

13   and deposition notices in November 2008. Briskin Decl. ¶ 9.   Apple served discovery

14   responses (and supplemental responses) in February and March 2010, and produced over

15   80,000 pages of information about, among other things, the design of the Adapter, its testing,

16   sales data, failures rates, and consumer complaints – all of which Plaintiffs' counsel

17   thoroughly reviewed. *Id.*   Plaintiffs retained two independent engineering experts, who

18   inspected the Adapters and provided their opinions on the design of the Adapters. *Id.*  Both

19   experts independently developed similar theories regarding the failings of "strain relief" of the

20   Adapters. *Id.*

21        **B.       Settlement, Preliminary Approval & Motion for Attorneys' Fees**

22        After the exchange of extensive discovery, expert reports, and many meet-and-confers

23   about discovery and experts, the parties agreed to attempt to settle this matter through

24   mediation.   The parties first met on August 31, 2010 with Honorable Fern Smith (Ret.).

25   Plaintiffs and Defendant both submitted substantial briefing summarizing their arguments, as

26   well as the opinions of their experts.   Briskin Decl. ¶ 11.   While the parties came to a

27   settlement in principle at the mediation, the parties continued to work out the settlement details

28

MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL BOND BY          4
OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1    post-mediation and agreed to a second mediation before Judge Smith on November 11, 2010,

2    primarily to negotiate an amount of attorney fees, which amount Defendant would agree not to

3    oppose.  *Id.*  The parties then worked out the details of the notice program and settlement

4    agreement for an additional month, with a term sheet signed on December 13, 2010.  *Id.*  The

5    parties did not address the matter of attorneys' fees until they had agreed on all material terms

6    of the settlement.  *Id.*  On March 30, 2011, the parties notified the Court of the parties'

7    settlement negotiations and requested a hearing date for Plaintiffs' motion for preliminary

8    approval.  (Dkt. No. 65). The parties finalized and signed the settlement agreement details in

9    July 2011.

10    The Court held a preliminary approval hearing on September 12, 2011, and issued an

11    order granting preliminary approval of the class settlement on September 27, 2011.  (Dkt. No.

12    82.)  Direct notice was provided to approximately 7,441,930 settlement class members.

13    Camareros Decl. ¶ 10-13.[2]  Summary notice was also published in the November 14, 2011,

14    edition of *USA Today*, in the December 2011 issue of *Macworld*, and the December 2011 issue

15    of *Wired* magazine. *See* Twiggs Decl. ¶¶ 2-4.[3]   In addition, the claims administrator

16    established a website (www.adaptersettlement.com) where the class notice and the claims

17    package were posted.  Camareros Decl. ¶ 8.  The class notice and claims package were mailed

18    at Apple's expense to any settlement class member who called a toll-free telephone number

19    that was established at Apple's expense. *Id.* ¶ 7.

20    On December 19, 2011, Plaintiffs filed a motion for attorneys' fees, reimbursement of

21    expenses and incentive awards. (Dkt. No. 83)   Eleven objectors filed objections to the

22    proposed settlement and/or Plaintiffs' request for attorneys' fees on or before the deadline of

23    January 6, 2012.  Briskin Decl. ¶ 16.

24    On February 24, 2012, the parties caused supplemental notice to be sent to 230,298

25    settlement class members who purchased a subject Adapter in 2010 informing them that the

---

[2] "Camereros Decl." refers to the Declaration of Jonathon D. Camareros regarding Notice
Procedures (Dkt. No. 96).
[3] "Twiggs Decl." refers to the Declaration of Sissie Twigs in Support of Final Settlement
Approval.  (Dkt. No. 94).

1   end date of the extended warranty program has been extended to July 31, 2013.   *See*

2   Camareros Decl. II, ¶¶ 2-3.[4]  The purpose of extending the warranty program to July 31, 2013

3   (versus the previous end date of December 31, 2012), was to ensure that all class members,

4   including those who purchased subject Adapters in 2010, received a minimum of three years in

5   which to replace their Adapter if it were to fray or fail to work. Briskin Decl. ¶ 18.

6          **C.      Final Approval**

7          On February 27, 2012, the Court held a hearing to consider Plaintiffs' motion for final

8   approval of the class settlement and Plaintiffs' motion for attorneys' fees, reimbursement of

9   expenses and incentive awards. (Dkt. No. 104)  Gryphon, through Mr. Frank's co-counsel,

10  Daniel Greenberg, was the only objector to appear at the final approval hearing.  While most

11  of the arguments Gryphon raised in her objection went to the fairness of the settlement,

12  counsel only argued regarding the award of attorneys' fees at the hearing.  Briskin Decl. ¶ 17.

13  This Court considered Gryphon's arguments, including the statement of her counsel at the final

14  approval hearing, and summarily overruled her objections. *See* Final Order ¶ 7 ("All objections

15  to the Settlement, to the extent not previously withdrawn, are overruled.").

16         On March 8, 2012, the Court issued an Order approving the class settlement and

17  awarding Plaintiffs attorneys' fees, reimbursement of expenses and incentive awards -- the

18  Final Order.  (Dkt. No. 107)  On April 2, 2012, the Court entered a separate Judgment

19  pursuant to Federal Rule of Civil Procedure 58 ("Judgment").  (Dkt. No. 110)

20         On April 6, 2012, Ms. Gryphon filed a notice of appeal from the Court's Final Order.

21  (Dkt. No. 119)  In addition, Messrs. Funk, Gaudet and Lee filed notices of appeal on March

22  23, April 3 and April 6, 2012, respectively (*see* Dkt. Nos. 109, 112, 125).  Plaintiffs now bring

23  the instant motion for an order requiring Gryphon to post a Rule 7 appeal bond.

24         On April 9, 2012, Gryphon filed a Notice Regarding Transcript and Statement of the

25  Issues with the Court of Appeals, pursuant to Circuit Rule 10-3.1(a) (Dkt. No. 124), in which

26  she identified three issues that she intends to present on appeal:

27  ───────────────────────────

28  [4] "Camareros Decl. II" refers to the Declaration of Jonathan D. Camareros Re: Notice
    Procedures. (Dkt. No. 102).

1   1. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) holds that a settlement may be impermissibly self-serving under Rule 23 if the attorneys receive a disproportionate share of the proceeds, there is a clear-sailing agreement, and a "kicker" that any reversion of the fee request goes to the defendant. Did the district court err as a matter of law approving a settlement where the class will receive about $0.6 million, the attorneys received $3.1 million (over 1.5 times their lodestar), the settlement had a clear-sailing agreement and "kicker," the settlement artificially restricted the ability of class members to make claims, and the district court's opinion failed to address the *Bluetooth* standard or any of the *Bluetooth* factors?

2. The Third and Seventh Circuits hold that a district court approval of a class action settlement that fails to provide reasoning for its decision or "evidence in the record demonstrating that the district court exercised 'independent judgment' in adopting a party's proposed findings" is a reversible abuse of discretion; the Ninth Circuit has held the same in the context of a decision on attorneys' fees. *In re Community Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *Powers v. Eichen*, 229 F.3d 1249, 1256-58 (9th Cir. 2000). Was it an abuse of discretion for the district court to approve a settlement that provided $600,000 to the class and $3.1 million to the class attorneys by simply signing a proposed order verbatim, without making any specific findings of fact, citing any precedent, or addressing any of the objections made to the settlement?

3. Does Fed. R. Civ. Proc. 23(h) and the Class Action Fairness Act permit a court to award more in fees and expenses to class attorneys than the value of what the class actually received in settlement?

## III.   ARGUMENT

### A.   Standard For Imposition of Rule 7 Appeal Bond

Rule 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 954-55 (9th Cir. 2007) (citing Fed. R. App. Proc. 7); *Yingling v. eBay, Inc.*, No. C 09-01733, 2011 WL 2790181, at * 1 (N.D. Cal. July 5, 2011) (same).  The purpose of the rule is to "protect[ ] ... an appellee against the risk of nonpayment by an unsuccessful appellant." *Fleury v. Richmont No. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) (citations omitted).  "[T]he question of the need for a bond, as well as its amount, are left to the discretion of the trial court." *Id.* (citing Fed. R. App. Proc. 7, 1979 advisory committee notes). When considering whether to require an appeal bond, district courts take the following three factors into account:

"(1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if the appeal loses; [and] (3) the merits of the appeal." *Id.*[5]

The three factors provide more than a sufficient basis for a substantial appellate bond. Notwithstanding, Plaintiffs below respectfully request the Court allow for limited expedited discovery in connection with this motion for appeal bond.  Should Gryphon contest this point, and should the Court deem it necessary, Plaintiffs request leave to conduct limited expedited discovery, and to supplement this motion with the pertinent information obtained through discovery.

**B.      All Factors Weigh In Favor of Imposing An Appeal Bond**

**1.      Gryphon and CCAF's Financial Ability to Post a Bond**

Where there is "no indication that [a] plaintiff is financially unable to post bond ... this factor weighs in favor of a bond." *Fleury*, 2008 WL 4680033, at *6 (citation omitted); *Yingling*, 2011 WL 2790181, at *2 n.8. (same). Bare assertions of inability to pay are not sufficient to avoid payment of a bond by an objector to a settlement who desires to appeal the settlement and delay relief to the class. *Fleury*, 2008 WL 4680022 at *7; *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (failure to propose an alternative or provide evidence that the bond was improper resulted in dismissal of appeal).

3.      Plaintiffs are unaware of any inability by Gryphon and her counsel to post the requested bond.  To the contrary, pursuant to Plaintiffs' counsel's preliminary investigation,

---

[5] While many courts typically consider a fourth factor, namely, whether the appellant has shown any bad faith or vexatious conduct, in *Azizian*, the Ninth Circuit concluded that the district court should not base an appeal bond on this factor because pursuant to Federal Rule of Appellate Procedure ("FED. R. APP. PROC.") 38, an appellee can be awarded damages and single or double costs if the appellate court were to determine that the appeal was frivolous. 499 F.3d at 960 (indicating that FED. R. APP. PROC. 7 is not intended to provide a penalty to address the frivolity of an appeal, which is a decision best left for the courts of appeal). Nevertheless, bad faith, frivolity and/or vexatious conduct warrants an increased level of skepticism **when reviewing the merits** of an objection submitted by a professional objector. *See* 5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg On Class Actions*, §15:37 (4th ed. 2009). Whether an appellant has shown bad faith or vexatious conduct is also considered with the second factor regarding the risk that the appellant would not pay the appellee's costs if the appeal loses. *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).  Thus, for these reasons, Plaintiffs briefly address the objector's bad faith and/or frivolous conduct.

1   Mr. Frank's organization, the Center for Class Action Fairness ("CCAF"), is funded by

2   "Donors Trust," an organization that funnels anonymous tax-deductible donations to right-

3   wing and libertarian causes. *See* Pl. Mem. in Response to Objectors at 19 (Dkt. No. 97). The

4   tax return for Donors Trust states that CCAF represents consumers "pro bono." Ex. 2. Donors

5   Trust declared just under $14 million in assets and just under $3 million in revenue for the

6   2009 tax year. Briskin Decl. ¶ 6. Thus, to the extent the matter is in doubt, Plaintiffs request

7   leave to take discovery of Gryphon and CCAF (as set forth below).

8       In the absence of evidence of undue hardship, this factor weighs in favor of an appeal

9   bond because "there is no indication that [Gryphon] is financially unable to post bond." *Id.*

10  (citations omitted); *In re Pharmaceutical Ind. Average Wholesale Price Litig.*, 520 F. Supp. 2d

11  274, 279 (D. Mass. 2007) (imposing a bond where "[t]here is no evidence that a bond would

12  pose an undue hardship on the objector."). Thus, the first *Fleury* factor weighs in favor of an

13  appeal bond.

14          **2.      Risk that Gryphon and CCAF Will Not Pay Appellees' Costs**

15      When the appellants are located in another part of the country, as here,[6] class counsel

16  would be required to institute multiple collection proceedings to recover their costs from a

17  recalcitrant obligor. These circumstances weigh in favor of a Rule 7 appeal bond. *See In re*

18  *Initial Public Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2884794, at *1-5 (S.D.N.Y.

19  July 20, 2010); *Fleury*, 2008 WL 4680033, at *7. Class counsel would have to travel

20  throughout the country to enforce an order imposing costs on objectors.

21      Ms. Gryphon is a lawyer and adjunct scholar with the Cato Institute. (Dkt. No. 97 at 19

22  n.29). Her attorney, Ted Frank, is the founder of the "Center for Class Action Fairness LLC"

23  ("CCAF"), a conservative group that opposes class actions as an intrusion on the liberty of

24  corporations. (Dkt. No. 97 at 19). Frank resists the title "professional objector," by which he

25  means a "for profit" lawyer who seeks to disrupt a settlement. Perhaps a more accurate title is

26  _____

27  [6] According to her declaration, Gryphon resides in Jamaica Plain, MA 02130. (Dkt. No. 85-1) Gaudet is a "permanent resident of El Paso, Texas." (Dkt. No. 98-7) Objector/appellant Dale Funk is located in University City, Missouri. (Dkt. No. 98-5) None of the Plaintiffs, nor their counsel, are located or reside in Texas, Missouri or Massachusetts.

28

1   "ideological objector," given the political orientation of CCAF and its funders.  See Pl. Mem.

2   in Response to Objectors at 19 (Dkt. No. 97).   As Frank puts it, he is in the business of

3   representing objectors in class action settlements and he characterizes his attacks as "guerilla

4   operation[s]."[7]  Like the others, Frank has an agenda unrelated to the merits of this settlement;

5   he wishes the court to substitute his anti-class action policy judgments for the governing law.

6         These types of lawyers are "remoras," who continue their efforts despite universal

7   condemnation by the federal judiciary.   Given CCAF's ideological mission to decrease

8   compensation to class action counsel, there is a substantial risk that this professional objector

9   will resist paying any costs imposed by the Ninth Circuit.   Thus, the second *Fleury* factor also

10   weighs heavily in favor of an appeal bond.

11               **3.      Merits of the Appeal**

12         Finally, the Court should consider the merits of Gryphon's appeal. *Fleury*, 2008 WL

13   4680033, at *8.  Under Fed. R. Civ. P. 23(e), a district court has broad discretion to determine

14   whether a class action settlement is fair, adequate, and reasonable, based on the law, facts and

15   circumstances of the case.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

16   "An approved settlement will not be upset unless the district court has abused its discretion."

17   *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990); *see also Azizian*, 499

18   F.3d at 955 ("we ordinarily review a district court's attorney's fees decision for an abuse of

19   discretion").

20         Gryphon's intended arguments on appeal lack merit because they all concern the fee

21   award, for which she lacks standing.  In addition, she raises arguments for the first time on

22   appeal.  *See* Ex. 1 (Cir. R. 10-3.1(a) Notice Regarding Transcript and Statement of the Issues).

23   First, it is notable that Gryphon has abandoned most of the inaccurate arguments she made

24   before the district court, including any argument that bears on the fairness and adequacy of the

25   relief to class members.  *See* Gryphon Obj. Br. at ii-iii (Table of Contents) (Dkt. No. 85).

26

27   [7] *See* Legal Pad, *Class Action Avenger Discusses Coupon Crusades,* A Recorder Blog (Sep. 23, 2009), http://legalpad.typepad.com/my_weblog/2009/09/class-action-avenger-discusses-

28   coupon-crusades.html.

1   Indeed, these criticisms appeared half-hearted in Gryphon's brief, given that she called the

2   settlement "potentially fair," and requiring only "minor amendments." *Id.* at 1.

3          Gryphon's first and primary argument concerns the fairness of the fee award, and

4   specifically the applicability of the Ninth Circuit's recent holding in *In re Bluetooth Headset*

5   *Product Liability Litigation*, 654 F.3d 935 (9th Cir. 2011).  Gryphon does not have standing to

6   object to the award of fees, because she has neither claimed or sustained any injury from the

7   fee award.  This case does not feature a common fund, where objectors can argue that they will

8   be injured by class counsel's recovery of an excessive portion of that fund, which would

9   otherwise go to the class.  Second, the record is clear and uncontradicted that the parties

10   negotiated the fee award only after the terms of the settlement had been secured.  *See*

11   Declaration of Fern M. Smith ¶ 9 (Dkt. No. 90) ("To the best of my knowledge, there were no

12   discussions regarding attorneys' fees or expenses until after the parties had reached an

13   agreement in principle on the settlement terms.").  Gryphon makes only curiously half-hearted

14   and unsubstantiated allegations of collusion by the parties, as they negotiated before Judge

15   Fern Smith.  And of course, Gryphon does not argue, let alone establish, that a reduction of the

16   fee that she seeks on appeal would increase her recovery.

17          The Ninth Circuit recently explained the long-standing precepts of objector standing in

18   *Glasser v. Volkswagen of America, Inc.*, 645 F.3d 1084 (9th Cir. 2011).  In that case, the

19   parties negotiated a purely *injunctive* settlement of consumer fraud claims:  "[t]he class

20   received no monetary relief whatsoever." *Id.* at 1086.  Subsequently, plaintiffs petitioned the

21   court for an award of attorney fees.  The objector argued, among other things, that any money

22   recovered should go at least in part to the class, rather than to counsel in the form of fees. *Id.*

23   at 1087.  The Court of Appeals observed, "Notably, Murray did not claim in his objection to

24   the fee application that any reduction in fees could or should benefit the class in any way." *Id.*

25   at 1088.  The Court of Appeals explained that where the case involves a common fund, class

26   members generally will have standing to challenge the fee award.  But where there is no

27   common-fund settlement, and fees are negotiated separately, "a class member must be

28

1    'aggrieved' by the fee award to have standing to challenge it." *Id.* at 1088.  *Bluetooth*, issued

2    soon after *Glasser*, does not change that.  *See Bluetooth*, 654 F,3d at 939 n.9 (stating that the

3    Court of Appeals was not addressing the standing issue raised in *Glasser*).

4         Even if Gryphon had standing to raise this *Bluetooth* argument, the Court of Appeals

5    would easily dispose of it, for the concerns that arose in *Bluetooth* are not to be found here.[8]

6    The settlement here, which provides the class with cash refunds and free, redesigned

7    replacement products, as well as a fee award based on the court's explicit consideration of

8    plaintiff counsel's lodestar, bears no resemblance to the *Bluetooth* settlement. Gryphon's

9    attempt to graft principles applied to common fund recoveries onto claims-made settlements

10   with a recovery based on lodestar simply falls flat, and has no support in case law.

11        Second, Gryphon assails the district court's award of attorney fees for "approval of a

12   class action settlement that fails to provide reasoning for its decision or 'evidence in the record

13   demonstrating that the district court exercised 'independent judgment' in adopting a party's

14   proposed findings.'"  Ex. 1 at 1 (Appellate Dkt. No. 5).  Gryphon simply ignores the content of

15   the Court's order.  She also ignores the substantial input that the Court provided at the

16   preliminary and final approval hearings, and in its supplemental orders, all of which are

17   reflected in the final Order.

18        Last, Gryphon intends to argue that Federal Rule of Civil Procedure 23(h) and the

19   Class Action Fairness Act bar a court from assessing a fee award that is greater than the value

20   of the class actually received in settlement.  First, this argument will instantly fail by virtue of

21   the fact that Gryphon failed to raise it below.  *See Sckolnick v. Harlow*, 820 F.2d 13, 14 (1st

22   Cir. 1987) (summarily rejecting two of the appellant's three issues on appeal because the

23   issues were not brought "to the attention of the district court").  Even if it were proper for the

24   Court of Appeals to address this new argument, it would easily dispose of it.  Rule 23(h) says

25

26   [8] Among other things, the district court noted that the district court never announced a lodestar
     figure; and the only monetary relief was a *cy pres* distribution.  This case is a claims-made
27   settlement and fulsome court-approved notice program, whose terms are unchallenged here.
     Throughout her brief, Gryphon completely ignores the value of the extended replacement
28   program, which the district court did consider in approving the award of fees.

nothing about valuation of the fee award, other than it be "reasonable"; CAFA only speaks to fee awards in settlements involving coupons; this settlement provides cash refunds and free replacement products, not coupons. *See* 28 U.S.C. § 1712. There is no support in these authorities for the proposition Frank intends to introduce, for the first time, on appeal. Courts have long recognized that a "prevailing party" may recover nominal damages and also be entitled to attorney fees.[9] Gryphon cited no authority suggesting that a court lacks the discretion to award attorneys' fees to the "prevailing" plaintiff under the Magnuson-Moss Warranty Act, or under California law. *See* 15 U.S.C. § 2310. *See Skelton v. General Motors Corp.,* 661 F. Supp. 1368 (N.D. Ill. 1987) (affirming award of fee based on lodestar plus multiplier). And again, Gryphon misrepresents the settlement, by completely ignoring the value of the replacement program, which has provided free, re-designed replacement adapters at no cost to tens of thousands of class members.

As discussed at length in Plaintiffs' Response to Objections (Dkt. No. 97), Gryphon's objections are factually and legally baseless. This Court has fully considered the objections, including full and separate briefing by all parties (including Gryphon) and oral argument, and summarily overruled them. *See* Final Order ¶ 7 (Dkt. No. 107). The third *Fleury* factor weighs the heaviest in favor or a substantial appeal bond.

**C.      Standard for the Amount of a Rule 7 Appeal Bond**

Rule 7 provides that the court may require a bond in "any form and amount necessary to ensure payment of *costs* on appeal." Rule 7 (emphasis added). The Ninth Circuit has held that the "costs" referred to in Rule 7 include the following costs identified in Federal Rule of Appellate Procedure ("FED. R. APP. PROC.") 39(e):

(1)      the preparation and transmission of the record;

---

[9] *See Gerling Global Reinsurance Corp. of America v. Garamendi,* 400 F.3d 803 (9th Cir. 2005) (plaintiff is "prevailing party" under § 1988 where actual relief modifies defendant's behavior in a way that directly benefits the plaintiff); *Thronton v. Wolpoff & Abramson, L.L.P.* 312 Fed. Appx. 161 (11th Cir. 2008); *David v. District of Columbia,* 674 F. Supp. 2d 34 (D.D.C. 2009) (plaintiff who receives only nominal damages is nonetheless "prevailing party" entitled to attorney fees under § 1988); *Harman v. City and County of San Francisco,* 39 Cal. Rptr. 3d 589 (Cal. App. 1st Dist. 2006).

(2)   the reporter's transcript, if needed to determine the appeal;

(3)   premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4)   the fee for filing the notice of appeal.

Fed. R. App. Proc. 39(e). In addition, the Ninth Circuit has held that "costs other than those identified in Rule 39 can qualify as 'costs' for purposes of Rule 7 if they are so defined by some positive law, such as a fee-shifting statute." *Fleury,* 2008 WL 4680033, at * 8 (citing *Azizian*, 499 F.3d at 958) ("[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7].").  For example, "the term costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, ***including attorney's fees***," (*id.* (emphasis added)), and additional administrative costs the class will incur as a result of the appeal.  *See In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 45656, *11-*12 (C.D. Cal. Dec. 5, 2005) (including additional costs of administration as part of a Rule 7 bond).

### 1.    Taxable Costs

Rule 7 does not expressly require Plaintiffs to make any showing of costs for a bond motion.  *See* Rule 7; *see also In re Ins. Brokerage Antitrust Litig.,* MDL Dkt. No. 1663, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3 (D.N.J. July 02, 2007) (finding that Rule does not require any "showing of costs for a bond motion.").  However, courts considering objectors to class settlements routinely require $25,000 at a minimum, and often substantially more.[10]

---

[10] *See In re Wal-Mart Wage & Hour Employment Practices Litig.* MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (ordering that ***each*** or the four objectors post a separate $500,000 Rule 7 bond); *Gemelas v. Dannon Co., Inc.*, No. 1:08 CV 236, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010) ($275,000 appeal bond imposed); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DR (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9-11 (Ordering objector to post appeal bond in excess of $1.2 million in response to appeal from final order approving class action settlement); *Conroy v. 3M Corp.,* 2006 U.S. Dist. LEXIS 96169, at *11-12 (N.D. Cal. Aug. 10, 2006) (ordering objector to post a Rule 7 bond in the amount of $431,167, jointly and severally on the objector and her law firm); *Barnes v. FleetBoston Fin. Corp.,* 2006 U.S. Dist. LEXIS 71072, *4, *8-9 (D. Mass. Aug. 22, 2006) (ordering objector to post Rule 7 bond in the amount of $645,111.60). *See also In re Initial Pub. Offering,* 2010 WL

1    Here, in addition to the printing and administrative costs associated with the expected

2    appeals, it is likely that Plaintiffs will face different issues from different appellants, which

3    may increase the expenses. For example, with respect to Gryphon, Plaintiffs anticipate the

4    need for filing various motions with the appellate court, including moving to dismiss the

5    appeals (*see* 9th Cir. R. 27-11). Such motions involve a substantial amount of time and

6    expense. Plaintiffs also anticipate that they will incur additional costs related to conducting

7    discovery in relation to the appeal, not to mention incremental administration costs the parties

8    may incur as a result of Gryphon's appeal. Plaintiffs estimate this cost to be $25,000, plus

9    interest.[11]

10    **2.    Attorneys' Fees**

11    A Rule 7 bond may include appellate attorneys' fees if, as here, the applicable statute

12    underlying the litigation contains a fee-shifting provision that accounts for such fees in its

13    definition of recoverable costs and appellee is eligible to recover such fees. *Azizian,* 499 F.3d

14    at 958 (finding Rule 7 includes "all costs properly awardable at the conclusion of the appeal,

15    including attorney's fees authorized by relevant statutory authority."); *In re Cardizem CD*

16    *Antitrust Litig.*, 391 F.3d 812, 817-18 (6th Cir. 2004); *Pedraza v. United Guaranty Corp.*, 313

17    F.3d 1323, 1329-30 (11th Cir. 2002); *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998).

18    Here, the underlying complaint was prosecuted under several fee-shifting statutes,

19    namely, California's Song-Beverly Consumer Warranty Act, Civil Code § 1794(d), which

20    provides in relevant part:

21    >    If the buyer prevails in an action under this section, the buyer shall be
22    >    allowed by the court to recover as part of the judgment a sum equal to the
    >    ***aggregate*** amount of costs and expenses, including attorney's fees based on

23

24    2884794, at *5 (assessing $25,000 on settlement objectors for cost aspects of Rule 7 bond); *In
    re Ins. Brokerage Antitrust Litig.,* MDL No. 1663, Civ. No. 04-5184 (GEB), 2007 WL
25    1963063, at *3-5 (D. N.J. July 2, 2007) (imposing a "reasonable" $25,000 appeal bond for
    objectors to class settlement based on line of precedent); *In re Compact Disc,* 2003 WL
26    22417252, at *2 ($35,000 appeal bond); *In re Currency Conversion Fee*, No. 01-01409, 2010
    WL1253741, at *3 (S.D. N.Y. Mar. 5, 2010) ($50,000 appeal bond).

27    [11] Briskin Decl. ¶ 20. Because the Court has discretion to increase the bond amount at any
    time (*see*, *e.g.*, *In re Diet Drugs*, MDL No. 1203, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 6,
28    2001)). Plaintiffs respectfully reserve the right to seek an increase in this amount, as needed.

MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL BOND BY          15
OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1    actual time expended, determined by the court to have been reasonably
     incurred by the buyer in connection with the commencement **_and_**
2    **_prosecution_** of such action.

3    (Emphasis added.)

4        The underlying complaint was also prosecuted under the Magnuson-Moss Warranty

5    Act, 15 U.S.C. § 2310(d)(2), which provides:

6        If a consumer **_finally_** prevails in any action brought under paragraph (1) of
         this subsection, he may be allowed by the court to recover as part of the
7        judgment a sum equal to the **_aggregate_** amount of costs and expenses
         (including attorneys' fees based on actual time expended) determined by the
8        court to have been reasonably incurred by the plaintiff for or in connection
         with the commencement **_and prosecution of such action_**, unless the court in
9        its discretion shall determine that such an award of attorneys' fees would be
         inappropriate.
10
     (Emphasis added.)
11
         "[A]ttorneys' fees are "costs" within the meaning of the [Magnuson-Moss] Act."
12
     *Ansari v. Bella Automotive Group, Inc.*, 145 F.3d 1270, 1271-72 (11th Cir. 1998).  Like the
13
     Magnuson-Moss Warranty Act, the "Song-Beverly Act" "is a **_remedial_** measure intended for
14
     the protection of consumers and should be given a construction consistent with that purpose."
15
     *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 801 (2006)
16
     (emphasis added).  In construing a statute, "the court's fundamental task is to ascertain the
17
     intent of the Legislature so as to effectuate the purpose of the law."  *Id.* at 806 (citing
18
     *Calatayud v. State of California*, 18 Cal. 4th 1057, 1064, 77 Cal. Rptr. 202 (1998)).  Pursuant
19
     to the express language of the fee shifting provision of the Song-Beverly Act, "our Legislature
20
     has provided injured consumers strong encouragement to seek legal redress in **_a situation in_**
21
     **_which a lawsuit might not otherwise have been economically feasible_**."  *Id.* at 817.
22
         Awarding attorneys' fees as a component of costs on appeal is consistent with the
23
     purpose of the aforementioned warranty acts.  Unlike § 4 of the Clayton Act, 15 U.S.C. §15(a),
24
     the primary purpose of which is "to penalize and deter those who have violated the antitrust
25
     laws" (*Azizian*, 499 F.3d at 960), the primary purpose of the Song-Beverly Act is to encourage
26
     those to seek legal redress in situations in which otherwise might not be economically feasible.
27
     Thus, unlike the case in *Azizian*, where ordering one class member who challenges the
28

---

MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL BOND BY                16
OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

settlement on appeal to pay other class members' appellate attorneys' fees would be inconsistent with the purpose of Section 4 to penalize and deter those who have violated the antitrust laws, here, ordering such fees **is consistent** with the purpose of the Song-Beverly Act to provide full recourse to encourage consumers to seek legal redress.  Indeed, both of the warranty acts provide that the plaintiff can recover "aggregate" costs and expenses for the "prosecution" of the action, indicating that fees are recoverable in post-liability proceedings. Civil Code § 1794(d); 15 U.S.C. § 2310(d)(2).

Because Rule 39 "does not contain any 'expression[] to the contrary'" and because there is a "strong" indication of legislative intent that the rule's drafters "did not intend for Rule 39 to create a uniform definition of 'costs,' exclusive of attorney's fees," (*Azizian*, 499 F.3d at 958), attorneys' fees are a recoverable component of costs where, as here, the underlying fee statute so provides.  Accordingly, this Court can include the anticipated attorney's fees that Plaintiffs' counsel has conservatively estimated they will incur during the ensuing appeals in the amount of $175,000.  Briskin Decl. ¶ 21.

### D.    The Court Also Has Inherent Power To Set A Bond

Separate and apart from its explicit power to set a bond under Federal Rule of Appellate Procedure 7, this Court may order the posting of a bond pursuant to the control necessarily vested in courts to manage their own affairs to achieve the orderly and expeditious disposition of cases.  *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 49 (1991) (finding that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995).  This includes the power to require security for costs, including the posting of a bond.  *Ehm v. Amtrak Bd. of Directors,* 780 F.2d 516, 517 (5th Cir. 1986) (finding that a "district court has inherent power to require security for costs when warranted by the circumstances of the case."); *Zebrowski v. Hanna,* 973 F.2d 1001, 1004 (1st Cir. 1992) (district court has inherent power to regulate litigation before it, upholding requirement for posting security).  The question of security for costs is

procedural in nature and the trial court has discretion in administrating procedural matters. *Aggarwal v. Ponce School of Med.*, 745 F.2d 723, 726 (1st Cir. 1984).

The appeals lack merit and will only hold up an outstanding settlement offering relief to millions of consumers. For this reason, the Court should exercise its power under the Federal Rules of Appellate Procedure, and its inherent power, to require the Objectors to post a bond in an amount that the Court deems to be just.

### E. In The Alternative, Expedited Discovery Is Necessary To Test A Claim Regarding Gryphon's Inability To Pay

Should Gryphon contest the point, and should the Court decide that discovery is necessary in order to determine Ms. Gryphon's ability to post a bond, Plaintiffs are immediately prepared to conduct formal expedited discovery, including depositions and written discovery to permit Plaintiffs' counsel to establish that Ms. Gryphon and/or her counsel are capable of paying the cost of the requested bond.

The requested expedited discovery will include targeted interrogatories, requests for production of documents, and Ms. Gryphon's deposition. Briskin Decl. ¶ 22. Plaintiffs' counsel are amenable to taking the depositions near their places of home or work. *Id.* This expedited discovery would be limited to permit Plaintiffs to properly and thoroughly examine the Objectors' ability to post the requested bond and pay the appellees' costs to Plaintiffs as prevailing parties.

## IV. CONCLUSION

The Court has the well-established authority to require Gryphon and her counsel to post a Rule 7 bond. The class settlement and attorneys' fee award that this Court has approved as being fair, adequate and reasonable, is being unnecessarily delayed by a group of professional objectors and their meritless appeals. Thus, Plaintiffs respectfully request that the Court enter an order requiring the immediate posting of an appeal bond in the amount of $200,000.00, and/or issue an order conditioning the amount of the bond on Gryphon's ability to pay, which topic will be subject to expedited discovery.

1  Dated: April 16, 2012

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)

2  MEHRI & SKALET, PLLC

3  By: /s/ *Craig L. Briskin*

4  1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036

5  Telephone: (202) 822-5100
Facsimile: (202) 822-4997

6  sskalet@findjustice.com
cbriskin@findjustice.com

7

8  ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
AARON M. OLSEN (259923)

9  ALREEN HAEGGQUIST (221858)
625 Broadway, Suite 906

10  San Diego, CA  92101
Telephone: (619) 342-8000

11  Facsimile: (619) 342-7878
helenz@zhlaw.com

12  alreenh@zhlaw.com
aarono@zhlaw.com

13

Co-Lead Counsel for the Class

14

LINER GRODE STEIN YANKELEVITZ

15  SUNSHINE REGENSTREIF & TAYLOR LLP
ANGELA C. AGRUSA (131337)

16  1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

17  Telephone:  (310) 500-3500
Facsimile:  (310) 500-3501

18  aagrusa@linerlaw.com
cchan@linerlaw.com

19

MCNICHOLAS & MCNICHOLAS LLP

20  PATRICK MCNICHOLAS (125868)
10866 Wilshire Boulevard Suite 1400

21  Los Angeles, CA 90024-4338
Telephone: (310) 474-1582

22  Facsimile:  (310) 475-7871
pmc@mcnicholaslaw.com

23  cbs@mcnicholaslaw.com

24  Attorneys for Plaintiffs

25

26

27

28

1    CERTIFICATE OF SERVICE

2         I hereby certify that on April 16, 2012, I authorized the electronic filing of the

3    foregoing with the Clerk of the Court using the CM/ECF system which will send notification

4    of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  I also certify

5    that I caused to be mailed the foregoing document on paper via the United States Postal

6    Service to the non-CM/ECF participants indicated on the Manual Notice List.

7         I certify under penalty of perjury under the laws of the United States of America that

8    the foregoing is true and correct.  Executed on April 16, 2012.

9                               *s/Craig L. Briskin*
                               CRAIG L. BRISKIN

10

11                             MEHRI & SKALET, PLLC
                               1250 Connecticut Avenue., NW, Suite 300
                               Washington, DC 20036
12                             Telephone: (202) 822-5100
                               Facsimile: (202) 822-4997
13                             cbriskin@findjustice.com

14   Manual Notice List:

15        Dale Funk (via E-mail)
          7303 Delmar Blvd.
16        University City, MI 63130
          funkdbc@gmail.com
17
          Daniel Greenberg (via E-mail)
18        Greenberg Legal Services
          55 Fontenay Circle
19        Little Rock, AR 72223
          Dngrnbrg@gmail.com
20
          Robert Gaudet, Jr. (via E-mail)
21        800 Fifth Avenue
          Suite 4100
22        Seattle, WA 98104
          Robert@rjGaudet.com
23
          Jeremy Lee (via U.S. Mail)
24        8232 Mura Drive
          Plano, TX 75025
25

26

27

28