COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
BONNY E. SWEENEY (176174)
GREGORY S. WESTON (239944)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bonnys@csgrr.com
gweston@csgrr.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION ) ) ) | Lead Case No. C-05-00037-JW |
| | <u>CLASS ACTION</u> |
| This Document Relates To: ) ) ALL ACTIONS. ) ) | NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT APPLE, INC.'S PRODUCTION OF DOCUMENTS RELATING TO CLASS CERTIFICATION |
| | DATE: January 8, 2008<br>TIME: 10:00 a.m.<br>COURTROOM: 5, 4th Floor<br>JUDGE: Hon. Patricia V. Trumbull |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on January 8, 2008, or as soon thereafter as the matter may be heard, in Courtroom 5, 4th Floor, of the above-captioned Court, located at 280 South First St., San Jose, California, before the Honorable Patricia V. Trumbull, Plaintiffs Melanie Tucker ("Tucker"), Mariana Rosen ("Rosen") and Somtai Troy Charoensak ("Charoensak") (collectively, "Plaintiffs") will and hereby do through undersigned counsel, move this Court pursuant to Federal Rules of Civil Procedure, Rule 37(a), for an order compelling Apple Inc.'s ("Apple") production of a limited set of documents relevant to the issue of class certification. The relevance of the documents sought is described below.

    In accordance with Local Rule 37-1(b), and as set out in the contemporaneously filed Declaration of Bonny E. Sweeney in Support of Motion to Compel Production of Documents ("Sweeney Decl."), Plaintiffs have made good faith efforts to confer with Apple in an attempt to resolve this dispute without the need for Court intervention. However, the parties have reached an impasse on the issues subject to this matter.

    In addition to the foregoing declarations, this Motion is supported by the Memorandum of Points and Authorities, the pleadings on file in this action, and on such other and further matters, evidence and arguments as may be presented to the Court before or at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

    Plaintiffs contend that Apple sells online digital music files and digital video files (collectively, "digital entertainment files") in a format that has been deliberately altered via Apple's so-called "FairPlay" restrictions to render them portably playable *only* on the portable digital music players sold by Apple, known as the iPod, the iPod shuffle and the iPod nano (collectively, "iPod"). Plaintiffs filed their Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act, and California Common Law of Monopolization ("Complaint") on April 19, 2007. Plaintiffs allege that, given Apple's 85% share of the online digital music file market and 90% share of the digital video file market, Apple's actions amount to an unlawful tying arrangement in violation of §1 of the Sherman

Act and monopolization or attempted monopolization of the portable player market and the online digital entertainment market prohibited by §2 of the Sherman Act. Complaint, ¶¶5, 7 & Counts I, II & III.[1] The Court has already ruled that Plaintiffs have alleged viable federal and state antitrust claims. *Slattery v. Apple Computer, Inc.*, No. 05-00037 JW, 2005 WL 2204981, at *3 (N.D. Cal. Sept. 9, 2005); *Tucker v. Apple Computer, Inc*., 43 F. Supp. 2d 1090 (N.D. Cal. 2006); *see generally*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 462, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992).

On January 18, 2007, prior to the consolidation of the *Tucker* and *Charoensak* actions, Tucker served Apple with Plaintiff Melanie Tucker's First Set of Requests for Production of Documents to Defendant Apple Inc. Sweeney Decl., Ex. A. On February 23, 2007, Apple responded to each of Plaintiff's discovery requests with boilerplate objections, made no initial effort to produce any documents, refused to present witnesses, and asserted that Plaintiff Tucker was entitled to discovery relating only to class certification. *See* Sweeney Decl., Ex. B (Defendant's Objections to Plaintiff Melanie Tucker's First Set of Requests for Production to Apple Inc.). Although a number of the discovery disputes have been successfully resolved through the meet and confer process, the parties have reached an impasse with respect to: (1) unredacted copies of spreadsheets (including all documents used to generate these spreadsheets) already produced by Apple in redacted form in the *Charoensak* matter before consolidation; and (2) documents showing the cost of manufacture, production, and number of Apple iPod products sold and the revenue generated from the sales of those products.

**II.    REQUESTED DISCOVERY**

    **A.    Plaintiff's First Set of Requests for Production of Documents**

Two outstanding document requests are at issue here:

Request No. 10: Full copies of the spreadsheets for which excerpts were produced to Somtai Troy Charoensak and marked APPLE CHAR 00059 through APPLE CHAR

---

[1] Plaintiffs seek injunctive and monetary relief for these violations under the Clayton Act, 15 U.S.C. §§15 & 26. Complaint, ¶¶31-38.

1    00066 and all Documents used in the production of these Documents, including but not limited to all Profit and Loss Statements for all iPod models.

The spreadsheets responsive to Request No. 10, labeled APPLE CHAR 00059-64 are described by Apple as "redacted Profit and Loss statements for the iTunes Store" and "[c]ost, revenue, profit or loss data." Sweeney Decl., Ex. C at 1. Apple has agreed to produce "redacted information" from the statements about the number of movies, TV shows and music videos, but illogically objects to producing any financial data from the statements. *Id.* Further, Apple refuses to produce full and unredacted copies of the documents labeled APPLE CHAR 00065-66 because the information was similarly derived from the Profit and Loss statements. *Id.*

Request No. 19: All Documents necessary to allow the calculation for each quarter since the introduction of the iPod for each model that iPod has [sic] sold, the number of iPods that have been purchased, Apple's total revenue from the sale of each iPod model and Apple's Cost of Manufacturing and cost of sale for each iPod model.

In response to Request No. 19, Apple has agreed to produce documents sufficient to show the number of iPods purchased each quarter on a per model basis, but has steadfastly refused to provide the cost and revenue data similar to that required by Plaintiffs' Request No. 10. Sweeney Decl., Ex. C at 1.

**B.      Plaintiffs' Efforts to Meet and Confer**

On February 23, 2007, Apple first responded to each of Plaintiff's discovery requests with boilerplate objections. *See* Sweeney Decl., Ex. B. In response to Apple's suggestion that discovery initially be limited to class certification issues, Plaintiffs, while reserving their right to challenge any discovery bifurcation, identified those requests most relevant to class certification, including Plaintiffs' Requests Nos. 10 and 19. *See* Sweeney Decl., Ex. D at 1-2. Apple thereafter requested Plaintiff Tucker to further "set forth the bases for [her] position that the discovery specified . . . relates to class issues." *See* Sweeney Decl., Ex. E.

On May 24, 2007, Plaintiffs tentatively agreed to Apple's "stepped discovery" proposal. The agreement required Apple to respond immediately to "class certification discovery" and Plaintiffs agreed to permit Apple to defer its responses to certain discovery requests pending the filing of

Apple's opposition to Plaintiffs' forthcoming motion for class certification. *See* Sweeney Decl., Ex. F.[2] Plaintiffs at that time specifically identified Request No. 19 as relevant to class certification. *Id.* at 3. Plaintiffs also expressly confirmed Apple's agreement to produce all documents responsive to Request No. 10. *Id.* at 2.

On May 31, 2007, Apple confirmed its willingness to produce the unredacted spreadsheets responsive to Request No. 10, but refused to comply with the full extent of the request. *See* Sweeney Decl., Ex. G at 2. Absent from Apple's confirmation was an affirmation that it would provide "all documents used in the production" of the unredacted spreadsheets as required by Plaintiffs' Request No. 10. *Id.* Further, Apple reiterated its objection to producing cost and revenue data responsive to Request No. 19, without elaborating on its contention that such data was not relevant to class certification. *Id.*

On June 8, 2007, Plaintiffs offered yet another concession to Apple by agreeing to accept production of the underlying documents responsive to Request No. 10 according to either version of the electronic discovery format agreement (the operative agreement in the *Charoensak* action or the current agreement applicable to the consolidated action) or in native computer file format. *See* Sweeney Decl., Ex. H at 2. On June 15, Apple inexplicably reversed course and informed Plaintiffs that it would not produce the spreadsheets responsive to Request No. 10 without redactions. *See* Sweeney Decl., Ex. C at 1. Apple further cemented its position that it would not provide any of the financial data from the profit and loss statements responsive to either Request Nos. 10 or 19. *Id.*

On July 20, 2007, Plaintiffs sought clarification from the Court as to whether the discovery bifurcation provision of the Case Management Order that governed the *Charoensak* action was applicable to this consolidated action. In response to Plaintiffs' Motion for Administrative Relief, this Court ordered the parties to respond to discovery either: (a) related to class certification; or (b) "impos[ing] only a *de minimis* burden on either party." *See* Sweeney Decl., Ex. I at 1, 2. Following the Court's Order specifically determining that Plaintiffs were entitled to seek discovery

---

[2] At Apple's request, Plaintiffs also provided Apple with narrowed supplemental requests. *Id*. at 2-3.

related to class certification, Plaintiffs reiterated their demand that Apple produce the responsive revenue, profit and loss statements, and related documents and explain the basis of their "confidentiality" objection. *See* Sweeney Decl., Ex. J at 2.

However, Apple has steadfastly refused. *See* Sweeney Decl., Ex. K; *id.*, Ex. L at 1-2. Despite Plaintiffs' continuing efforts at resolution, Apple adamantly refuses to provide the outstanding documents responsive to Plaintiffs' Requests Nos. 10 and 19. Notably, Apple does not contend that the data and documents Plaintiffs seek responsive to Requests Nos. 10 and 19 are irrelevant. Apple contends only that such data is "merit" related discovery and is not "class" related. *See* Sweeney Decl., Ex. L at 1 ("On Request No. 10 . . . the production of profit and loss statements is not related to class certification issues . . . . We disagree that any ***merits-based*** discovery is allowed simply because plaintiffs contend it is '*de minimis*.'").

## III. LEGAL ARGUMENT

### A. Applicable Standard

The discovery right is a broad one, "based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Rivera v. NIBCO, Inc.* 384 F.3d 822, 824 (9th Cir. 2004) (citation and quotation marks omitted). In general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *United States ex rel. Englund v. Los Angeles*, 235 F.R.D. 675, 686 (E.D. Cal 2006) (quoting Fed. R. Civ. P. 26(b)(1)). The Federal Rules thus set forth a standard of relevance that is "generous," and "extremely broad." *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y. 2004). Indeed, it is so broad that, "[o]nce any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." *Id.* at 106 (citation and quotation marks omitted).

Pursuant to Federal Rules of Civil Procedure, Rule 37, a party may move to compel discovery where another party fails to respond to a discovery request or where the party's request is evasive or incomplete. *See* Fed. R. Civ. P. 37(a)(2) - (3). A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court. *See Comty. Sav. & Loan Ass'n v.*

*Fed. Home Loan Bank Bd.*, 68 F.R.D. 378, 381 (E.D. Wis. 1975). When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery: (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1); or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. *Soto v. Concord,* 162 F.R.D. 603, 609 (N.D. Cal. 1995)(citing *Blakenship v. Hearst Corp.*, 519 F.2d 418, 419 (9th Cir. 1975).

### B. The Revenue, Cost and Profit Documents Are Relevant to Class Certification

Few cases are better candidates for class-wide resolution than antitrust actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *In re Tableware Antitrust Litig.,* 241 F.R.D. 644, 648 (N.D. Cal. 2007) ("Class actions play a particularly vital role in the private enforcement of antitrust actions."). Courts routinely certify antitrust cases, and in particular tying cases such as the one at bar, where plaintiffs are able to proffer expert testimony which demonstrates a plausible theory whereby antitrust injury and damages may be proven on a class-wide basis. *See, e.g.*, *VISA Check/MasterMoney*, 280 F.3d 124 (2d Cir. 2001) (affirming class certification in a tying case where plaintiffs' expert provided credible means of showing injury and damages class-wide); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 658 (D. Idaho 2006) (same; class certified in tying case).

### C. The Limited Discovery Plaintiffs Seek Is Relevant to Class-wide Proof of Antitrust Injury

Antitrust injury is typically established for class certification purposes through expert opinion that generally accepted economic methodologies are available to demonstrate such injury on a class wide basis. *VISA Check/MasterMoney*, 280 F.3d at 133-35 (rejecting as "meritless" defendants' argument that plaintiffs' expert had not submitted sound methodology for demonstrating that VISA and MasterCard's tying policies injured all class members); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation)*, No. M 02-1486 PJH, 2006 WL 1530166, at *8 (N.D. Cal. June 5, 2006); *Estate of Garrison v. Warner Bros. Inc.*, No. CV 95-8328 RMT, 1996 WL 407849, at *4

(C.D. Cal. June 25, 1996); *see, e.g., Bafus*, 236 F.R.D. 658 (expert declaration described what appeared to be a viable method for determining economic effect on a class basis).

The highly targeted, limited discovery requested by plaintiffs – revenue, cost and sales information – is pertinent to class certification. *See, e.g.*, *VISA Check/MasterMoney*, 280 F.3d at 134 (methodologies of plaintiffs' expert supported by reliance upon defendants' internal financial data, as produced in discovery, as to specific usage of defendants' on-line and off-line debit cards); *Bafus*, 236 F.R.D. at 658 (class certified where plaintiffs' economic expert based conclusions upon analysis of documentation of the conditions of sale for members of the class group). Indeed, the discovery at issue here is of a variety similar to the types of evidence relied upon in other class antitrust litigation, such as *DRAM*, where Plaintiffs' economic expert's testimony was accepted by the court as a plausible methodology for proving class wide antitrust injury. The *DRAM* expert reached his conclusions through analysis of actual market share estimates, actual sales data, and actual price data which had been produced in discovery. *See DRAM*, 2006 WL 1530166, at *9 ("Dr. Noll's report, ***supported by actual publication, market, and sales data produced thus far***, provides an adequate basis from which to conclude that the proof plaintiffs will adduce to establish defendants' conspiracy to fix prices, and the resulting effect of the conspiracy on all prices paid for DRAM, would be common to all class members.") (emphasis added).

In short, the type of discovery at issue on this motion was conducted in these other cases and is clearly relevant to class here.[3]

**D. The Limited Discovery Plaintiffs Seek Is Relevant to Class-wide Proof of Antitrust Damages**

Once antitrust injury is established, the overall burden of proving damages is eased under both §1 and §2 of the Sherman Act. *See Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 836; *see*, *e.g.*, *DRAM*, 2006 WL 1530166, at *10. Plaintiffs will likely use one or more of the three most-used methods for calculating damage on a class-wide basis: (1) the "before/after" method; (2) the

---

[3] Moreover, academics have recognized that profit and loss information may be used to demonstrate market power in the relevant markets, an important issue here. *See, e.g.*, *Areeda & Hovenkamp*, Antitrust Law, ¶¶500-26 (2006 ed.) (reviewing methods of determining the existence of market power).

"yardstick" approach; and/or (3) the "benchmark" analysis. Each is a well-accepted method for determining class-wide impact and damages in the antitrust context. Regression analysis is an economic technique often used in the estimation of damages especially for determining the degree of overcharge. *See* A.B.A. Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues, 1996, Chapter 5 at 145ff; Daniel L. Millimet. Both the "Yardstick" model and the "before and after" approach have been upheld by numerous courts. *See, e.g.*, *In re Citric Acid Antitrust Litig.*, No. 95-1092, C-95-2963 FMS, 1996 WL 655791, at *7 (N.D. Cal. Oct. 2, 1996) (upholding before/after approach); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 220 (E.D. Pa. 2001) (upholding the "yardstick" approach).

### E. Production of the Outstanding Discovery Is Not Unduly Burdensome

Plaintiffs' showing of relevance to class certification shifts the burden to Apple to demonstrate why the requested discovery should not be had. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540 (10th Cir. 1984); *Melendez v. Greiner*, No. 01 Civ.07888 SAF DF, 2003 WL 22434101, at *4 (S.D.N.Y. Oct. 23, 2003) ("[I]f the [objecting parties] wish to resist discovery on the ground of burden, then they must adequately demonstrate the nature and extent of the claimed burden."). But Apple has not shown that the production of documents responsive to Requests Nos. 10 and 19 are in any way overly burdensome. *See W. Res., Inc, v. Union Pac. R.R. Co.,* No. 00-2043-CM, 2002 WL 1822432, at * 4 (D. Kan. July 23, 2002) (holding party resisting discovery has the obligation to detail and explain the nature of the burden in terms of time, money and procedure required to produce the requested documents). Rather, Apple has maintained only that production of the documents sought in Requests Nos. 10 and 19 is not warranted because such information has no bearing on "class certification." *See* Sweeney Decl. Ex. K at 1, 2. As demonstrated above, that contention is wrong.

Indeed, it is commonplace for courts to grant motions to compel discovery of revenue, sales and cost information when relevant to the issues presented. *See, e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 929 F. Supp. 723, 726 (S.D.N.Y. 1996) (motions to compel granted in antitrust action; discovery allowed to pursue documents including those setting forth revenues costs, profits, or losses derived from trading NASDAQ securities, reasoning that the "financial information, in

particular, is relevant, in that it may show that common questions predominate for purposes of class certification"); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 427 (N.D. Ill. 1977) (Motion to Compel financial information by plaintiffs in price-fixing antitrust action granted where such information "may help plaintiffs determine whether or not defendants enjoyed unreasonably high or excessive profits.") *Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 47 (S.D.N.Y. 1980) (discovery of sales and profit data against third parties Amexco and Barclay's allowed in antitrust action; relevancy for discovery purposes is interpreted broadly and "it would therefore be nearly impossible for the parties in this case to analyze and define the relevant market without information that only Amexco can provide"); *Storch v. Ipco Safety Prods. Co. of Pa.*, No. Civ. A. 96-7592, 1997 WL 401589, at *2 (E.D. Pa. Jul. 16, 1997) (motion to compel sales information granted where "such data is relevant for purposes of determining the damages of the plaintiff"); *Watson Indus., Inc. v. Murata Mfg. Co., Ltd.*, No. 02-C-524-C, 2003 WL 23162874 (W.D. Wis. Dec. 4, 2003) (motion to compel worldwide sales information granted); *Sinco, Inc. v. B&O Mfg., Inc.*, No. 03-5277 (JRT/FLN), 2005 WL 1432202 (D. Minn. May 23, 2005) (motion to compel granted; discovery allowed included number and amount of units of each product manufactured and sold, cost of manufacturing such products, and documents reflecting profits generated). Confidentiality orders, such as the one stipulated to and in place in this litigation, are adequate to protect against disclosure of any particularly sensitive sales or revenue information. *See, e.g.*, *Citicorp*, 87 F.R.D. at 46-47.

Moreover, motions to compel discovery of the types at issue here are routinely granted even when a producing party is heard to claim that production of summary information is sufficient. *See, e.g.*, *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, No. C-04-4801 JW PVT, 2007 WL 2429448, at *1-*2 (N.D. Cal. Aug. 23, 2007) (motion to compel granted in relevant part; sales information and profit and loss statements relevant and production of spreadsheet that summarized sales and profit and loss information was insufficient; underlying documentation must be produced including "all documents showing sales and gross profits" as well as "profit and cost data in a format that is clear and comprehensible").

In any event, the burden on Apple to produce the requested documents is surely minimal at best. Apple has already produced the spreadsheets responsive to Request No. 10 with redacted data.

Apple can hardly contend that producing the documents in un-redacted form is more burdensome than its redacted production. Nor can the production of sales and costs reports, no doubt routinely generated and maintained by Apple, amount to undue hardship. Apple has failed to articulate the time or expense involved in responding to the requested discovery is unduly burdensome. For this reason, even assuming *arguendo* that the documents were not relevant to class certification, they should be produced under this Court's Order of July 20, 2007.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request this Court to issue an Order compelling Apple to produce all documents responsive to Requests Nos. 10 and 19 of Plaintiff's First Set of Requests for Production of Documents to Defendant Apple Inc.

DATED: December 3, 2007

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
BONNY E. SWEENEY
GREGORY S. WESTON


    s/BONNY E. SWEENEY
    BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)

Co-Lead Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA  90025
Telephone:  310/442-7755
310/442-7756 (fax)

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY  10016
Telephone:  212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

S:\CasesSD\Apple Tying\MOT00047335.doc

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 3, 2007.

s/ BONNY E. SWEENEY
BONNY E. SWEENEY

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:BonnyS@csgrr.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael David Braun**
  service@braunlawgroup.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@rabinlaw.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**
  invalidaddress@invalidaddress.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  tstrong@jonesday.com,dharmon@jonesday.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,tturner@csgrr.com,E_file_sd@csgrr.com

- **Gregory Steven Weston**
  gweston@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Todd David Carpenter**
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

**Elaine A. Ryan**
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012