THEODORE H. FRANK (SBN 196332)
Email: tfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW
No. 236
Washington, DC 20036
Voice: (703) 203-3848

(additional counsel listed at end of brief )

*Attorneys for Class Member Marie Gryphon*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No. C 09-01911 JW<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND**<br><br>Date:  May 21, 2012<br>Time: 9:00 a.m.<br><br>Judge: Honorable James Ware<br>Courtroom: 9, 19th Floor |
| Marie Gryphon,<br>    *Objector.* | |

# Table of Contents

Table of Contents ................................................................................................................. ii

Table of Authorities ........................................................................................................... iii

Statement of Issues to be Decided ..................................................................................... 1

Memorandum of Points and Authorities ............................................................................ 1

I.      Introduction ........................................................................................................... 1

II.     A Rule 7 Appeal Bond May Not Include Attorneys' Fees Against Objecting Class
        Members When the Case Is Brought Under Asymmetrical Fee-Shifting Statutes. ........... 2

III.    *Azizian* Squarely Rejects the Notion that an Appeal Bond May Include Fees Due
        to Frivolousness; Nevertheless, Gryphon's Appeal Is Not Frivolous. ............................... 6

IV.     This Appeal Is Brought in Good Faith: Neither Gryphon Nor Her Counsel Are
        "Professional Objectors." ......................................................................................... 8

V.      An Appeal Bond for Taxable Costs Should Be Denied Because Plaintiffs Provided
        Neither Evidence of Need for a Bond nor a Realistic Detailed Estimate of Costs. .......... 12

VI.     Class Counsel's Request for Discovery Is Baseless. ................................................. 15

VII.    Class Counsel's Frivolous and Oppressive Motion Merits Sanctions Under FRCP
        11 and 28 U.S.C. § 1927 .......................................................................................... 16

Conclusion ........................................................................................................................ 19

# Table of Authorities

*Adsani v. Miller,*
139 F.3d 67 (2nd Cir. 1998) .................................................................................... 3, 6, 11

*Azizian v. Federated Dep't Stores, Inc.,*
499 F.3d 950 (9th Cir. 2007) ...................................................................... *.passim*

*Barnes v. FleetBoston Fin. Corp.,* No. 01-10395-NG,
2006 U.S. Dist. LEXIS 71702 (D. Mass. Aug. 22, 2006) ............................. 13

*Budget Rent A Car System Inc. v. Consolidated Equity,*
428 F.3d 717 (7th Cir. 2005) ......................................................................... 8

*Chalfy v. Turoff,*
804 F.2d 20 (2d Cir. 1986) ..................................................................... 18-19

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) ...................................................................................... 15

*Chapman & Cole v. Itel Container Int'l B.V.,*
865 F.2d 676 (5th Cir. 1989) ....................................................................... 17

*Cobell v. Salazar,*
816 F. Supp. 2d 10 (D.D.C. 2011) ....................................................... 14-15, 19

*Conroy v. 3M Corp.,* No. C 00-2810 CW,
2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006) ........................... 13

*Crawford v. Equifax Payment Services, Inc.,*
201 F.3d 877 (7th Cir. 2000) ......................................................................... 5

*Dawson v. Delaware,*
503 U.S. 159 (1992) ..................................................................................... 11

*Dennis v. Kellogg Co.,* No. 09-cv-1786,
2011 U.S. Dist. LEXIS 89322 (S.D. Cal. Aug. 10, 2011) ........................... 14

*Democratic Party of Wash. State v. Reed,*
388 F.3d 1281 (9th Cir. 2004) ....................................................................... 5

*Fieger v. Cox,*
524 F.3d 770 (6th Cir. 2008) ....................................................................... 17

*Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC,
    2008 U.S. Dist. LEXIS 88166 (N.D. Cal. Oct. 21, 2008)...........................................6, 14

*G.C. & K.B. Invs., Inc. v. Wilson*,
    326 F.3d 1096 (9th Cir. 2003) ...........................................................................16

*Gemelas v. Dannon Co., Inc.*, No. 1:08 cv 236,
    2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ...........................................13

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) ...............................................................................7

*Harrison v. Nissan Motor Corp.*,
    111 F.3d 343 (3d Cir. 1997) ...............................................................................4

*Hirschensohn v. Lawyers Title Ins. Corp.*,
    No. 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997) ................................................3

*Hudson v. Moore Business Forms, Inc.*,
    836 F.2d 1156 (9th Cir. 1987) ...........................................................................17

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir. 2004) ...............................................................................10

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .........................................................................................4

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
    695 F. Supp. 2d 157 (E.D. Pa. 2010)..................................................................4-5

*In re American President Lines, Inc.*,
    779 F.2d 714 (D.C. Cir. 1985).........................................................................3, 15

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .......................................................................2, 7, 9

*In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DR (MLGx),
    2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005)..............................................13

*In re Checking Account Overdraft Litig.*, MDL No. 2036,
    2012 U.S. Dist. LEXIS 18384 (S.D. Fla. Feb. 14, 2012) ..............................................14

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361,
    2003 U.S. Dist. LEXIS 25788 (D. Me. Oct. 7, 2003) .................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
   2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010)..............................................13-14

*In re Enfamil Lipil Mktg. and Sales Prac. Litig.*, No. 11-MD-02222,
   2012 U.S. Dist. LEXIS 49254 (S.D. Fla. Apr. 9, 2012)............................................ 12, 14

*In re Initial Public Offering Secs. Litig.*,
   721 F. Supp. 2d 210 (S.D.N.Y. 2010) ..................................................................... 12, 13

*In re UnitedHealth Group Inc. PSLRA Lit.*,
   643 F. Supp. 2d 1107 (D. Minn. 2009) ............................................................................9

*In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, MDL No. 1735,
   2010 WL 786513 (D. Nev. Mar. 8, 2010),
   *stayed and dismissed as moot*, No. 10-15516 (9th Cir. 2010)...........................6-7, 12, 18

*Indep. Fed'n of Flight Attendants v. Zipes*,
   491 U.S. 754 (1989) .........................................................................................5, 18

*Kahre v. United States*, CV-S-02-0375-LRH-LRL,
   2003 U.S. Dist. LEXIS 6948 (D. Nev. Mar. 10, 2003) ...................................................17

*Lahiri v. Universal Music & Video Distrib. Corp.*,
   606 F.3d 1216 (9th Cir. 2010) ................................................................................18

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ........................................................................................10-11

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010).......................................................................8-9, 18

*Lundy v. Union Carbide Corp.*,
   598 F. Supp. 451 (D. Ore. 1984) .............................................................................12

*Moser v. Bret Harte Union High Sch. Dist.*,
   366 F. Supp. 2d 944 (E.D. Cal. 2005) .......................................................................16

*Murillo v. Fleetwood Enters., Inc.*,
   953 P.2d 858 (Cal. 1998)......................................................................................4

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ...............................................................................2, 9

*Nalder v. United Auto. Ins.*, No. 2:09-cv-1348-ECR-GWF,
   2011 U.S. Dist. LEXIS 119112 (D. Nev. Oct. 14, 2011) ...............................................11

*Pan Am Grain Mfg. Co. v. Puerto Rico Ports Auth.*,
    193 F.R.D. 26 (D. P.R. 2000) ...................................................................12

*Premier Commercial Corp. v. FMC Corp.*,
    139 F.R.D. 670 (N.D. Cal. 1991) ..............................................................19

*R.A.V. v. St. Paul*,
    505 U.S. 377 (1992) ..................................................................................10

*Reynolds v. S & D Foods*, No. 91-1442-PFK,
    1993 U.S. Dist. LEXIS 3040 (D. Kan. Feb. 8, 1993) ....................................4

*Thomas v. Girardi*,
    611 F.3d 1027 (9th Cir. 2010) ..............................................................17-18

*Townsend v. Holman Consulting*,
    929 F.2d 1358 (9th Cir. 1990) .................................................................16

*Vaughn v. Am. Honda Motor Co.*,
    507 F.3d 295 (5th Cir. 2007) ........................................................3, 6, 14

*West Virginia State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ..................................................................................10

*Yingling v. eBay, Inc.*, No. 09-01733,
    2011 U.S. Dist. LEXIS 79738 (N.D. Cal. July 5, 2011)..............................14

## STATUTES AND FEDERAL RULES

15 U.S.C. § 15 .................................................................................... 3-4

15 U.S.C. § 2302(a) ...............................................................................4

15 U.S.C. § 2310(d)(2) ....................................................................... 3-5

17 U.S.C. § 505 .....................................................................................3

28 U.S.C. § 1927 ..............................................................................16-19

42 U.S.C. § 1988 ...................................................................................5

Cal. Civ. Code § 1794(d) .......................................................................3

Fed. R. App. P. 7 ...................................................................................... *passim*

Fed. R. App. P. 38 ........................................................................................... 6, 13

Fed. R. App. P. 39 ............................................................................................... 13

Fed. R. App. P. 39(e) ....................................................................................2-3, 12

Fed. R. Civ. Proc. 11 .....................................................................................16-19

Fed. R. Civ. Proc. 11(b)(1) ................................................................................. 16

Fed. R. Civ. Proc. 11(b)(2) ................................................................................. 16

Fed. R. Civ. Proc. 11(b)(3) ................................................................................. 16

Fed. R. Civ. Proc. 11(c)(3) ................................................................................. 16

Fed. R. Civ. Proc. 23(e) ........................................................................................ 7

Ninth Cir. R. 10-3.1 ......................................................................................... 7, 14

Ninth Cir. R. 30 ................................................................................................... 12

## OTHER AUTHORITIES

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05 *comment* a (2010)...................8-9

Beck, Susan,
    "Man on a Class Action Mission," THE AM. LAWYER (May 2011).......................9-10

Brunet, Edward,
    *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
    2003 U. CHI. LEGAL F. 403 ......................................................................... 9

Fitzpatrick, Brian T.,
    *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009)................................. 8-9

Frankel, Allison, "Legal Activist Ted Frank Cries Conflict of Interest,
    Forces O'Melveny and Grant & Eisenhofer to
    Modify Apple Securities Class Action Deal,"
    AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010) .......................................................9-10

Freddoso, David,
  "Days numbered for trial lawyers getting outrageous paydays,"
  WASH. EXAMINER (Aug. 24, 2011) .............................................................9-10

Jones, Ashby, "A Litigator Fights Class-Action Suits,"
  WALL ST. J. (Oct. 31, 2011) .................................................................9-10

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors:*
  *Minor Nuisance or Serious Threat to Approval,*
  BNA: Class Action Litigation Report (Aug. 12, 2011)................................9

Zahorsky, Rachel M.,
  "Unsettling Advocate," ABA J. (Apr. 2010)........................................9-10

**Statement of Issues to be Decided**

1. Whether the Court should order objector/appellant Marie Gryphon to post a Fed. R. App. P. 7 appeal bond in the amount of $200,000.

   **Proposed Answer: No.**

2. Whether the discovery that Plaintiffs are requesting in connection with this motion for an appeal bond should be granted.

   **Proposed Answer: No.**

3. Whether the Court should issue sanctions against plaintiffs for multiple bad-faith misrepresentations of law and fact in their motion for an appeal bond.

   **Proposed Answer: Yes.**

**Memorandum of Points and Authorities**

I. **Introduction**

Plaintiffs' motion to require Ms. Gryphon to post an appeal bond ("Pl. Mem.") asks this court to ignore the operative standard of law for Rule 7 appeal bonds in the Ninth Circuit. Ironically, even plaintiffs incorrectly argue that Gryphon's appeal is frivolous (a contention immaterial to imposition of a Rule 7 appeal bond), they knowingly make multiple misstatements of fact and law, and fail to cite to binding Supreme Court precedent that precludes their relief. The motion for an appeal bond should be denied in whole and the Court should consider the propriety of sanctions.

Plaintiffs' two theories of the availability of attorneys' fees in an appeal bond such as this have been decisively rejected by the Ninth Circuit's seminal case on the subject, *Azizian v. Federated Dept. Stores Inc.*, 499 F.3d 950 (9th Cir. 2007). *Azizian* issued two certain edicts regarding the propriety of imposing Rule 7 appeal bonds against objectors. *First*, attorneys' fees may not be included within Rule 7 "costs" where the statute underlying the case is "asymmetrical" in nature, such that only victorious plaintiffs are entitled to fees. *Id.* at 959-60. At best, the plaintiffs ignore this holding, at worst they subvert it. Pl. Mem. 15-17 (Dkt. No. 132-1). *Second*, *Azizian* repeatedly rejects the notion that a district court may include attorney fees'

CASE NO. C 09-01911 JW
MEMORANDUM IN OPPOSITION TO MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND

as costs on the basis of the supposed frivolousness or lack of merit of the appeal. *Azizian*, 499 F.3d at 954, 960, 961. The plaintiffs relegate this holding to a footnote (Pl. Mem. 8 n.5), and proceed to argue the lack of merit to Gryphon's appeal for several pages (in the process deliberately misrepresenting Gryphon's appellate argument). Pl. Mem. 10-13.

Plaintiffs falsely characterize Gryphon's counsel as a professional objector "remora." This is wrong: as the "remora" language indicates, a professional objector is a for-profit objector that objects for the purpose of settling the objection for cash. Gryphon's counsel is non-profit, and has never withdrawn an objection in exchange for payment. (Indeed, Gryphon's counsel not only does not bring frivolous appeals, but has won every appeal he has briefed where the Ninth Circuit has issued a decision. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011). But if this Court has any concern that Gryphon is bringing her objection in bad faith, Gryphon and her counsel remain willing to stipulate to an injunction prohibiting them from withdrawing Gryphon's appeal in exchange for a cash payment. Gryphon Obj., Dkt. No. 85 at 29. *That* is the appropriate remedy for an abusive appeal meant to extort plaintiffs, not an illegal appeal bond that punishes good-faith appellants like Gryphon.

The fact that plaintiffs did not seek the proposed stipulation, and instead sought a motion for an appeal bond while falsely accusing Gryphon of being a "remora," demonstrates that the real purpose of this motion is a bad-faith effort to increase Ms. Gryphon's *pro bono* counsel's costs and to create procedural obstacles to a meritorious appeal by inducing this Court to commit reversible error. The motion must be denied, and the Court should consider sanctions against plaintiffs.

## II.    A Rule 7 Appeal Bond May Not Include Attorneys' Fees Against Objecting Class Members When the Case Is Brought Under Asymmetrical Fee-Shifting Statutes.

In *Azizian v. Federated Dept. Stores Inc.*, the Ninth Circuit set the standard to determine the question of what "costs" may be included in a Fed. R. App. P. 7 appeal bond. Significantly, the Court concluded that the "the costs identified in Rule 39(e) are among, but not necessarily

the only, costs available on appeal." *Id*. at 958.[1] Thus, when there is an "*applicable* fee-shifting statute" which defines fees as costs, the district court is authorized to include attorneys' fees in the bond. *Id*. (emphasis added).  However, the Ninth Circuit laid down an indispensible caveat; the fee-shifting statute must be applicable against that appellant against whom the bond is sought. *Id*. at 959.

Determining that because Section 4 of the Clayton Act (15 U.S.C. § 15) allowed only for asymmetrical fee shifting (i.e. victorious plaintiffs could obtain fees, but not victorious defendants), *Azizian* reversed a district court that had imposed an attorneys' fees-inclusive appeal bond against objecting class members, absent plaintiffs. *Id*. at 959-60. Both statutes that the plaintiffs contend authorize fee-shifting against objectors are plainly asymmetrical in the very same way as Section 4 of the Clayton Act is.  The Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d) provides that "If the ***buyer*** prevails in an action under this section, the ***buyer*** shall be allowed by the court to recover…fees…" (emphasis added). The federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2) provides that "If a ***consumer*** finally prevails in any action brought under paragraph (1) of this subsection, ***he*** may be allowed by the court to recover…fees…." (emphasis added). These three asymmetrical statutes can be juxtaposed against a symmetrical fee-shifting statute, like that found in the Copyright Act. *See Azizian*, 499 F.3d at 959 (citing 17 U.S.C. § 505). The Copyright Act fee-shifting statute reads like this: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Any party may collect and any party may be liable. *Cf. Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998).

---

[1] This holding conflicts with that of many other circuits to consider the issue. *See Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007); *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985); *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777, at *3 (3d Cir. Jun. 10, 1997). Gryphon reserves the right to ask the Ninth Circuit to conform to the majority rule. But even under the Ninth Circuit's idiosyncratic standard, an appeal bond for fees is illegal in this case.

"Ordering one class member to pay other class members' appellate attorney's fees because of a disagreement about the propriety of settlement would not serve the purpose of Section 4 to penalize and deter those who have violated the antitrust laws." *Azizian*, 499 F.3d at 960. Plaintiffs' attempts to distinguish one asymmetrical fee-shifting consumer protection statute from another are contrived, and more importantly, without foundation in law.

California courts declare the Beverly-Song Act to serve the purposes of deterring defendant malfeasance. *Murillo v. Fleetwood Enters., Inc.*, 953 P.2d 858, 864 (Cal. 1998) (Beverly-Song Act's "one-way attorney-fee-shifting mechanism arguably is sufficient to support the Legislature's pro-consumer purpose."); *Gomez v. Volkswagen of Am.*, 169 Cal. App. 3d 921, 928 (Cal. App. 1985) ("There is nothing before the court to indicate that the remedy afforded by Civil Code section 1794 is inadequate either in the amount of damages that a meritorious plaintiff may recover or *as a deterrent to the proscribed conduct*.") (emphasis added).

The same purposes undergird the Magnuson-Moss Warranty Act. *See Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 351 (3d Cir. 1997) ("Consumer statutes, such as the Magnuson-Moss Warranty Act and the Lemon laws, were enacted under the assumption that manufacturers are often reluctant to provide the relief to consumers that their warranties promise."); *Reynolds v. S & D Foods*, No. 91-1442-PFK, 1993 U.S. Dist. LEXIS 3040, at *8 (D. Kan. Feb. 8, 1993) ("The purpose of the Act is to protect consumers from unscrupulous practices of suppliers"). *See also* 15 U.S.C. § 2302(a) (delineating the purposes of the Act as follows: "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products").

And conversely, to the extent that the plaintiffs imply that the Clayton Act legislative scheme is not an attempt to compensate injured parties, they are equally incorrect. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) ("§ 4 has another purpose in addition to deterring violators and depriving them of fruits of their illegality; it is also designed to compensate victims of antitrust violations for their injuries") (internal citations omitted).

The Ninth Circuit's proscription on applying fee-shifting statutes to objecting class members is not limited to Clayton Act antitrust suits; it expressly covers all cases arising under

fee-shifting statutes that are "asymmetrical" and cannot properly be applied against the parties from whom security is sought. *See, e.g., In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 165 (E.D. Pa. 2010) (applying *Azizian* to RICO's asymmetrical fee-shifting statute). Consumer protection statutes, and in particular their fee-shifting sub-statutes, serve the dual and complementary remedial purposes of vindicating the plaintiff and deterring the defendant. What is true of antitrust consumer protection statutes is true of implied-warranty consumer-protection statutes. The statutes are frustrated, not furthered when one plaintiff is ordered to pay another plaintiffs' attorneys' fees—when one victim is ordered to remedy another. *Azizian*, 499 F.3d at 960; *cf. also Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 881 (7th Cir. 2000) ("The possibility that we would see merit to [objectors'] appeal cannot be called 'prejudice'; appellate correction of a district court's errors is a benefit to the class."). Moreover, it is self-evident that such an attorneys' fee award would also be "inappropriate" under the statutory exemption of 15 U.S.C. § 2310(d)(2). Plaintiffs' tortured interpretation of *Azizian* must be rejected, and this alone is grounds for rejecting the motion's request for $175,000 in fees.

Furthermore, even beyond *Azizian*, the Supreme Court has held that, even under symmetrical fee-shifting laws, fee-shifting is not available against third parties appealing a settlement approval unless the third party's position is "frivolous, unreasonable, or without foundation." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 766 (1989) (Title VII). Despite the fact that the objector may "advance the same argument as a defendant," that "does not mean that the two must be treated alike for purposes of fee assessments." *Id. See also Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1288 (9th Cir. 2004) (extending *Zipes* to intervenor liability for fees under 42 U.S.C. § 1988). Supreme Court precedent thus precludes any recovery of fees at all from Gryphon in the absence of a Ninth Circuit finding that her appeal is "frivolous, unreasonable, or without foundation." And if the plaintiffs cannot recover fees from Gryphon even after an appellate victory, they certainly cannot demand those fees in advance as appeal-bond costs. Plaintiffs fail to mention *Zipes* at all, even though it is controlling authority that precludes the relief they seek; yet plaintiffs refused to withdraw their brief even after the

oversight was brought to their attention. This evidence of a bad-faith attempt to mislead this Court is independent grounds for sanctions.

### III.    *Azizian* Squarely Rejects the Notion that an Appeal Bond May Include Fees Due to Frivolousness; Nevertheless, Gryphon's Appeal Is Not Frivolous.

Perhaps the single most important animating principle underpinning *Azizian* is the idea that a district court may not be the arbiter of which appeals are meritorious and which are frivolous. *Azizian*, 499 F.3d at 954, 960, 961. "[A] district court may not include in a Rule 7 bond appellate attorney's fees that might be awarded by the court of appeals if that court holds that the appeal is frivolous under Federal Rule of Appellate Procedure 38." *Id.* at 954. "[T]he question of whether, or how, to deter frivolous appeals is best left to the courts of appeals…" *Id.* at 961. "Even if we were to conclude that her appeal was frivolous, however, we would reverse the district court's inclusion of appellate attorney's fees on that basis." *Id.* at 960. The plaintiffs reduce this holding to a footnote (Pl. Mem. 8 n.5) and then argue extensively that this Court should consider the merits of Gryphon's appeal. Pl. Mem. 10-13.

In support of this procedure, the plaintiffs rely on *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 88166 (N.D. Cal. Oct. 21, 2008), which in turn had improperly relied upon two cases from the Southern District of New York. *Id.* at *19. Those cases were following the Second Circuit's holding in *Adsani* that "[a] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani*, 139 F.3d at 79. But because *Azizian* had clearly rejected this reasoning, *Fleury* was wrong to follow it and its reasoning cannot be considered good law. It should be noted, nonetheless, that *Fleury* reached the correct conclusion anyway and ultimately rejected inclusion of attorneys' fees in the bond. *Fleury*, 2008 U.S. Dist. LEXIS 88166, at *31.

The plaintiffs also purport to rely upon *In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010). Pl. Mem. 8 n.5, 14 n.10. However, in that case, the Ninth Circuit, citing *Vaughn*, stayed the bond order and contempt proceedings

MEMORANDUM IN OPPOSITION TO MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND

relating to the bond order, and eventually dismissed the appeal over the bond order as moot. *In re Wal-Mart Wage & Hour Empl. Prac. Litig.*, No. 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) (attached as Ex. 1). The *Wal-Mart Wage & Hour* appeal bond order is not good law. Plaintiffs failed to mention that in their brief citing *Wal-Mart Wage & Hour,* nor did they correct their brief when the error was pointed out to them. Frank Decl. ¶ 16-18. This is independent grounds for sanctions.

Even if this Court were to consider the merits of Gryphon's appeal, it should base its consideration on what Gryphon is actually arguing, rather than disingenuously-erected straw-man appeal that the plaintiffs portray in their briefing. Plaintiffs' decision to construct a fake argument for appeal in spite of their recognition that Ms. Gryphon filed her Cir. R. 10-3 statement of issues for appeal (attached as exhibit to plaintiffs motion for appeal bond, Dkt. No. 132-3) with the Ninth Circuit on April 12, is an independent grounds for sanctions.

Plaintiffs incorrectly suggest that Gryphon lacks standing to challenge the fee award under *Glasser v. Volkswagen of Am., Inc.,* 645 F.3d 1084 (9th Cir. 2011). But this is a red herring. Gryphon is challenging the *settlement* and the fee award as part of the *settlement* under a constructive common-fund theory. Thus, as *Glasser* itself noted, *Glasser* does not apply: the appellant in *Glasser* had "expressly disclaimed recovery under a constructive common fund theory." 645 F.3d at 1089. Here, on the contrary, Gryphon is, and has been, propounding exactly this theory of harm to the class from structural self-dealing. *See* Gryphon Obj., at 11, 16. *In re Bluetooth Headset Prods. Liab. Litig.* makes clear that there is an intimate relationship because the 23(e) fairness question and structural provisions designed to immunize and insulate attorneys' fees, especially when, as here, the attorneys collect fees disproportionate to the class relief. 654 F.3d at 946-48. A claims-made process does not alleviate the concerns of *Bluetooth*; it exacerbates them by increasing the appearance of relief without actually providing it. Gryphon is challenging not just the fee order, but the overall fairness of the settlement. *See id.* at 949 n.9 (no question of standing to challenge both final approval and fee order together); *id.* at 950 (vacating final approval and fee order). Plaintiffs make no attempt to rebut what Gryphon is actually arguing on appeal.

1   To make matters even more unseemly, the plaintiffs now argue that Ms. Gryphon's
2   criticisms of the settlement are "meritless and inaccurate" (Pl. Mem. 2), even though her
3   objection has already led to a substantial improvement in the settlement. In her objection, she
4   detailed how it was unfair, irrational and arbitrary to deny late-purchasing class members the
5   three year warranty afforded to early-purchasing class members. Gryphon Obj. at 20-22 & n.11.
6   Apple, thereafter, agreed to extend the warranty program until the end of July 2013, instead of
7   the previously agreed upon December 2012 date recognized in the settlement agreement.
8   Declaration of Allan Coulson in Support of Final Approval, Dkt. No. 98-13, at ¶5; Declaration
9   of Craig Briskin in Support of Motion for Appeal Bond ("Briskin Decl."), Dkt. No. 132-2, at ¶18.
10  Gryphon did not object indiscriminately, nor does she now appeal indiscriminately. Frank
11  Decl. ¶¶ 3-10.

12      It is worth noting that plaintiffs make wildly inconsistent claims: they assert that the
13  appeal is frivolous, but they also assert that they will incur $175,000 in fees opposing the
14  appeal. If the appeal is frivolous, it can be disposed of cheaply; if the appeal cannot be disposed
15  of cheaply because it requires extensive briefing on the merits, it is not frivolous. Either way,
16  plaintiffs are not entitled to an appeal bond of $175,000 for fees. *Cf. Budget Rent A Car System*
17  *Inc. v. Consolidated Equity*, 428 F.3d 717 (7th Cir. 2005) (rejecting Rule 38 fee request of $8,970.50
18  as "inconceivabl[y]" oversized).

19      *Azizian* forecloses an examination of the merits of Gryphon's appeal in order to impose a
20  Rule 7 bond that includes fees. This Court should heed *Azizian* and go no further, but if this
21  court does look further it should determine that Gryphon presents legitimate questions of law
22  on appeal.

23

24  **IV.   This Appeal Is Brought in Good Faith: Neither Gryphon Nor Her Counsel Are**
25      **"Professional Objectors."**

26      Plaintiffs distort the facts by calling Ms. Gryphon's non-profit counsel, Theodore H.
27  Frank of the Center for Class Action Fairness LLC, a "remora" (Pl. Mem. 10) as if this is more
28  apt than the "professional objector" moniker. A "professional objector" is a *for-profit* attorney

who files objections to blackmail plaintiffs' attorneys for payment in exchange for withdrawing his or her objections. Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05 *comment* a (2010). The "remora" language refers to the parasitical nature of such abusive tactics. *In re UnitedHealth Group Inc. PSLRA Lit.*, 643 F. Supp. 2d 1107 (D. Minn. 2009) ("remora" professional objectors are those whose "goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement"). But the Center is a non-profit that has ***never*** settled an objection for *quid pro quo* payment. Frank Decl. ¶ 6; *cf. Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 807 (N.D. Ohio 2010) ("the Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving") (cited by Pl. Mem. 2).[2] The Center is simply not a professional objector. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litigation Report (Aug. 12, 2011) (distinguishing the Center from professional objectors); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n. 150 (public interest groups are not "professional objectors"). Frank has won the only two federal appeals of class action settlements he argued that have come to completion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011).

---

[2] It is ironic that plaintiffs cite *Lonardo* as evidence *against* Frank, given that *Lonardo* found that Frank was acting in good faith, nearly doubled class members' pecuniary recovery with an additional $2 million from a settlement modification induced by Frank's objection, and awarded him attorneys' fees. 706 F. Supp. 2d at 805, 807. Plaintiffs quote *Lonardo*'s criticism of a *single* argument Frank made in that case—but the Ninth Circuit squarely adopted Frank's argument against reversion clauses in a case he argued, rejecting *Lonardo*'s refusal to acknowledge that those clauses are potentially abusive. *Bluetooth*, 654 F.3d at 947, 949. Even if *Lonardo*'s claim that Frank was making an argument "long on ideology and short on law" were true in 2010, it no longer is after Frank's argument has been made the law of this Circuit. Plaintiffs' misleading citation to *Lonardo*, without acknowledging that it was rejected by the Ninth Circuit, is yet another ground for sanctions.

Mr. Frank, who founded the Center, is an elected member of the American Law Institute; his *pro bono* work on behalf of class members has won national acclaim. *See, e.g.*, Ashby Jones, "A Litigator Fights Class-Action Suits," WALL ST. J. (Oct. 31, 2011); Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); David Freddoso, "Days numbered for trial lawyers getting outrageous paydays," WASH. EXAMINER (Aug. 24, 2011); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010). The Center does not bring bad-faith frivolous objections—as it is, with limited resources, it cannot bring many of the meritorious objections it wishes to bring. Susan Beck, "Man on a Class Action Mission," THE AM. LAWYER (May 2011); Frank Decl. ¶¶ 3-4.

Moreover, Ms. Gryphon has no interest in settling for money: she firmly believes this settlement is illegal, and wishes to have an appellate ruling on the legal and constitutional issues raised by this settlement. As Ms. Gryphon offered in her initial objection (Gryphon Obj. 29), she remains willing to stipulate to an injunction forbidding her from settling this objection for cash if there is any question in this Court's mind whether the Center is a "professional objector." The entire factual premise underlying plaintiffs' motion is simply inapplicable here. If plaintiffs really believed that Ms. Gryphon was a "remora," they would have accepted the invitation to stipulate to an injunction, rather than asking the Court for an appeal bond to prevent the risk of her doing what she has explicitly disclaimed. The false accusation of being a professional objector attempting to extract money from the plaintiffs' attorneys is therefore made in bad faith, and merits sanctions.

Continuing on a path blazed during the final approval briefing, the plaintiffs impugn both Gryphon and her counsel for harboring political opinions that class counsel finds distasteful. Pl. Mem. 9-10. The Court must decline the plaintiffs' invitation to impose a political-viewpoint-based discriminatory appeal bond. The First Amendment would prohibit as much. *R.A.V. v. St. Paul*, 505 U.S. 377, 392 (1992). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *West Virginia State Bd. of Educ. v. Barnette*,

319 U.S. 624, 642 (1943) (opinion of Jackson, J.). Judges, as well, are subject to the First Amendment's prohibition on viewpoint discrimination. *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004). Impositions of appeal bonds, too, are not immune from the strictures of the Constitution. *See Lindsey v. Normet,* 405 U.S. 56, 77 (1972) ("When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause."); *accord Adsani*, 139 F.3d at 76-77. Nothing in Fed. R. App. P. 7 permits plaintiffs to seek larger appeal bonds from objectors whose politics they do not like; the First Amendment forbids it regardless.  Class Counsel's attempt to bring evidence of "nothing more than the abstract beliefs" of litigants into court is soliciting a violation of Gryphon and her counsel's First Amendment rights, given the irrelevance of those political views and associations. *Dawson v. Delaware*, 503 U.S. 159, 166-67 (1992).

Plaintiffs' tactics would be bad enough if the accusations against Frank were true, but plaintiffs simply lie to this Court. They call CCAF a group that "opposes class actions as an intrusion on the liberty of corporations" (Pl. Mem. 9); they provide no cite for this fictional characterization, nor can they. This Court has first-hand experience of Frank litigating on behalf of class action plaintiffs against corporations; Frank has repeatedly publicly stated his support for meritorious class actions. Frank Decl. ¶ 11. As plaintiffs' own exhibit shows, "CCAF seeks to increase net awards to members of class action lawsuits," (Dkt. No. 132-4 at 6) yet they intentionally mislead the Court.  This is an independent ground for sanctions.

Neither the Center nor Frank has ever been sanctioned on appeal or at the trial-court leval for frivolousness, vexatiousness, bad faith or any other reason; in fact, Frank himself has yet to lose a federal appeal that he has argued, including a two-for-two record in the Ninth Circuit reversing federal class-action settlement approvals. Frank Decl. ¶ 3-4. That Frank and the Center have a track record of success in its objections is the opposite of evidence that Frank objects frivolously or vexatiously. If anything, the Center's mission demonstrates that this appeal is brought in good faith, not for purposes of extortion, and that Ms. Gryphon's attorney does not deserve the "professional objector" label plaintiffs falsely tar him with.

**V.     An Appeal Bond for Taxable Costs Should Be Denied Because Plaintiffs Provided Neither Evidence of Need for a Bond nor a Realistic Detailed Estimate of Costs.**

Bonds for cost should be denied where there is "no particular showing of a 'need' for the bond beyond the fact that the appellee anticipates expending funds in relation to the defense of the appeal and would like a bond to be posted to assure those costs will be paid." *Nalder v. United Auto. Ins.*, No. 2:09-cv-1348-ECR-GWF, 2011 U.S. Dist. LEXIS 119112, at *4 (D. Nev. Oct. 14, 2011). Plaintiffs' showing of necessity boils down to a dislike of Gryphon's counsel's ideological orientation (Pl. Mem. 9-10). They do not and cannot make a showing that either Gryphon qualifies as a "recalcitrant obligor."[3]

Plaintiffs offer an outlandish estimate of $25,000 anticipated costs. Briskin Decl. at ¶ 20. They have provided no documentation of proposed costs, which, contrary to plaintiffs' assertion, courts do usually require. *E.g., In re Enfamil Lipil Mktg. and Sales Prac. Litig.*, No. 11-MD-02222, 2012 U.S. Dist. LEXIS 49254, at *16-18 (S.D. Fla. Apr. 9, 2012) (even a $5,000 appeal bond could not be sustained without documentation). Gryphon's counsel has prosecuted numerous federal appeals relating to objections, of similar or larger breadth than the appeal at bar, and has never incurred more than $6,000 in taxable costs on appeal; given that this appeal presents purely legal issues without asking the Ninth Circuit to reweigh the evidence, the costs will be lower still. Frank Decl. at ¶12-15. Moreover, plaintiffs are the *appellees* in this case: as such, their appellate costs are limited to a single brief, and it is Gryphon who will bear the cost of producing Excerpts of Record under 9th Cir. R. 30. When the sum sought "simply does not correlate with the taxable costs under Rule 39(e) that are likely to accrue on appeal," the bond should be denied. *Pan Am Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26, 43 (D.P.R. 2000) (citing *Lundy v. Union Carbide Corp.*, 598 F. Supp. 451, 452 (D. Ore. 1984)).

---

[3] The case cited by plaintiffs, *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 215 (S.D. N.Y. 2010) is not apropos. The court there held an appeal bond was warranted because "professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." As shown *supra* § IV this label does not befit Gryphon's counsel, who, even before the appeal bond motion was filed, volunteered to stipulate to an injunction precluding him from seeking fees.

Supposedly in support of the proposition that courts routinely require $25,000 "at a minimum" as an appeal bonds for taxable costs against objectors, Plaintiffs cite a litany of irrelevant, out-of-circuit, involving for-profit professional objectors, at least one of which cannot be considered valid law (*In re Wal-Mart Wage & Hour*, *see supra* § III.). Pl. Mem. 14 n.10. Moreover, in the cases that are still valid, the plaintiffs deceptively entangle those portions of the appeal bond attributable to attorneys' fees and those attributable to taxable costs.

*Gemelas v. Dannon Co., Inc.*, No. 1:08 cv 236, 2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) awarded $25,000 in costs against a for-profit objector in the Sixth Circuit where frivolousness and bad faith can be taken into account. *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DR (MLGx), 2005 U.S. Dist. LEXIS 45656, at *8 (C.D. Cal. Dec. 5, 2005) is a pre-*Azizian* decision that awarded **$800** in taxable costs. *Conroy v. 3M Corp.*, No. C 00-2810 CW, 2006 U.S. Dist. LEXIS 96169, at *6 (N.D. Cal. Aug. 10, 2006) is another pre-*Azizian* case that awarded $7,500 in taxable costs. *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71702, at *8 (D. Mass. Aug. 22, 2006) is an out-of-circuit case involving a for-profit professional objector; it awarded double taxable costs for frivolousness[4] of **$1,361**. As noted *supra* n.3, *In re Initial Pub. Offering* is an out-of-circuit case revolving around concerns that the professional objector appellant would extort a settlement out the settling parties. *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 U.S. Dist. LEXIS 47659 (D.N.J. Jun. 29, 2007) is an out-of-circuit case which awarded $25,000 in costs.  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2003 U.S. Dist. LEXIS 25788, at *3 (D. Me. Oct. 7, 2003) was out-of-circuit, involved a for-profit objector, where the plaintiffs only sought **$400** in Rule 39 taxable costs and that was doubled based on Rule 38. The plaintiffs' final authority, *In re Currency Conversion Fee Antitrust Litig.*, No. 01-01409, 2010 U.S. Dist. LEXIS 27605 (S.D. N.Y. Mar. 5, 2010) is out-of-circuit, and awarded $50,000 for taxable costs only because of "the voluminous record and the

---

[4] Again, *Azizian* unequivocally rejects this approach of assessing Rule 7 costs on the basis of Rule 38.

MEMORANDUM IN OPPOSITION TO MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND

number of appellants, [nine]." *Id*. at *9.[5] Here, the case has not been ongoing for nine years, and there are barely 100 docket entries, the vast majority will be irrelevant to Gryphon's appeal, which is based on a few discrete legal issues. Indeed, plaintiffs have designated only a single transcript that Gryphon did not designate under 9th Cir. R. 10-3.1. Frank Decl. ¶ 13.

Recent in-circuit cases, however, even some cited by the plaintiffs, don't come anywhere near to authorizing a $25,000 bond for taxable costs. *See e.g. Fleury*, 2008 U.S. Dist. LEXIS 88166, at *31 ($5,000 bond for costs) (cited by Pl. Mem., *passim*); *Yingling v. eBay, Inc.*, No. 09-01733, 2011 U.S. Dist. LEXIS 79738, at *6 (N.D. Cal. July 5, 2011) (same) (cited by Pl. Mem. 7, 8); *Dennis v. Kellogg Co.*, No. 09-cv-1786, 2011 U.S. Dist. LEXIS 89322 (S.D. Cal. Aug. 10, 2011) ($3,000 bond for costs).  Recent out-of-circuit cases confirm. *Vaughn*, 507 F.3d at 300 (reducing appeal bond to $1,000 for costs); *Enfamil Lipil*, 2012 U.S. Dist. LEXIS 49254 ($1,000 bond for costs); *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2012 U.S. Dist. LEXIS 18384, at *47 n.6 (S.D. Fla. Feb. 14, 2012) ($5,000 cost bond in an appeal involving $280 million settlement and 60 member cases).

The plaintiffs' motion for a bond of taxable costs should be denied entirely. While proffering a deluge of misleading and inapposite cases, the plaintiffs neglected to provide any documentation of the probable costs on appeal beyond a preposterous assertion from a single attorney without supporting calculations or documentation. Briskin Decl. at ¶20. The Court

---

[5] Also significantly, the *Currency Conversion* court did not require each appellant to post the bond, but only that they post it jointly and severally. *Id. See also Dennis v. Kellogg Co.*, No. 09-cv-1786, 2011 U.S. Dist. LEXIS 89322 (S.D. Cal. Aug. 10, 2011) (appeal bond of $3,000, appellants jointly and severally responsible). The fact that class counsel has sought to make each objector post a bond individually, rather than jointly and severally, is another indication of its bad-faith impermissible purpose to deter appeal, rather than to ensure payment of legitimate costs.

should seriously consider sanctioning class counsel for this behavior.[6] *Cobell v. Salazar*, 816 F. Supp. 2d 10, 16-20 (D.D.C. 2011) (denying overreaching appeal bond request entirely and ordering class counsel to show cause why they should not be sanctioned for deceptive appeal bond briefing).

## VI.    Class Counsel's Request for Discovery Is Baseless.

Plaintiffs assert the costs of "discovery" as recoverable costs. They cite no authority for this proposition. In any event, they have no grounds for discovery. Plaintiffs' only basis for discovery is a non-existent dispute on "ability to pay." Gryphon and Frank will not seek to challenge the Rule 7 bond on the basis of "ability to pay," because there is no legal ground to order a Rule 7 bond in this case whether or not Gryphon has the ability to pay, so plaintiffs have no basis for discovery on that or any other question. The discovery is plainly meant as harassment.

Note, however, that plaintiffs mislead the court when they cite to Donors Trust's millions of dollars of assets. Donors Trust is not a party in this case; nor are they attorneys in this case. CCAF does not have millions of dollars, any more than a charity that receives a contribution from George Soros or Bill Gates has billions of dollars. Plaintiffs' own evidence shows that CCAF had $150,000 in revenues and $54,898 in expenses in 2009, the year it was founded. Dkt. No. 132-4 at 6.

---

[6] The only relevance of *Chambers v. NASCO, Inc.* 501 U.S. 32 (1991) (cited by Pl. Mem. 17) to this motion and briefing is that it allows the court inherent power to sanction plaintiffs for this motion (*see infra* § VI) upon a finding that they have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46. Perhaps the plaintiffs have overlooked that limitation on *Chambers* because *Azizian* expressly prohibits the district court from such considerations when imposing a Rule 7 bond. *See also Am. President Lines*, 779 F.2d at 717 ("The inherent or rule-based power of which the District Court spoke really adds nothing to the authority already conferred by Rule 7.") (cited approvingly by *Azizian*, 499 F.3d at 961).

**VII.    Class Counsel's Frivolous and Oppressive Motion Merits Sanctions Under FRCP 11 and 28 U.S.C. § 1927.**

Fed. R. Civ. P. 11 demands that the attorney submitting any motion or other paper certify, *inter alia*, that "it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that "the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions have evidentiary support or…will likely have evidentiary support after a reasonable opportunity for investigation." Fed. R. Civ. P. 11(b)(1), (b)(2), (b)(3). A district court maintains jurisdiction to issue Rule 11 sanctions even after the filing of a notice of appeal. *See Val-Land Farms, Inc. v. Third Nat'l Bank in Knoxville*, 937 F.2d 110, 1117 (6th Cir. 1991). On its own initiative, a district court "may order an attorney… to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

"Rule 11 addresses the problems of frivolous filings and abuse of judicial procedures as a tool for harassment." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 949-50 (E.D. Cal. 2005). "The standard governing both the 'improper purpose' and 'frivolous' inquiries is objective. The subjective intent of the movant to file a meritorious document is of no moment. The standard is reasonableness. The 'reasonable man' against which conduct is tested is a competent attorney admitted to practice before the district court." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (internal quotation omitted). "Sanctions under Rule 11 are not limited to instances in which a pleading as a whole is frivolous, or of a harassing nature. Rather, sanctions may be imposed for improper or unwarranted allegations even though at least one non-frivolous claim has been pled if an attorney has not conducted a 'reasonable inquiry' under the circumstances of the case. *Moser*, 366 F. Supp. 2d at 950 (citing *Townsend v. Holman Consulting*, 929 F.2d 1358, 1362-65 (9th Cir. 1990) (en banc)).

As demonstrated extensively above, no competent attorney, having conducted a reasonable inquiry, would have concluded that *Azizian*, binding case law of the Ninth Circuit authorized the inclusion of the requested $175,000 in attorneys' fees as part of Rule 7 appeal

bond. As such, that aspect of the plaintiffs' motion was legally frivolous. In combination with this, the plaintiffs attempt to mislead this Court into thinking that courts routinely require taxable cost bonds of $25,000 "at a minimum." Pl. Mem. 14. They supported this objectively baseless claim by citing nine inapposite cases (Pl. Mem. 14 n.10), one of which was stayed by the Ninth Circuit, and four others of which awarded far less than the $25,000 "minimum" in taxable costs. *See supra* § V. *Cf. Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156 (9th Cir. 1987) (Rule 11 sanctions may be imposed where the amount of damages claimed is excessive and unexplained and appears to have been made frivolously and for purpose of harassment); *Cobell,* 816 F.Supp.2d at 16-20.

The warrant of sanctions is underscored by the facially improper purpose of the motion. This objectively improper purpose is best evidenced by the baseless vitriolic diatribe that the plaintiffs' counsel levies against Gryphon and her lawyer, calling him a "remora" type of lawyer who persists "despite universal condemnation by the federal judiciary". Pl. Mem. 10 (no citation to even one instance of this "universal condemnation."). A "decision to include unsubstantiated, vituperative statements with regard to the character and professional ethics [of counsel] plainly constitutes a violation of Rule 11." *Kahre v. United States*, CV-S-02-0375-LRH-LRL, 2003 U.S. Dist. LEXIS 6948, at *17 (D. Nev. Mar. 10, 2003). If the class counsel's motion was not spurred by their "political and professional animus" toward Gryphon and her counsel (an improper purpose under Rule 11, *see Fieger v. Cox*, 524 F.3d 770, 774 (6th Cir. 2008)), it was "to make the cost of litigation so high that [Gryphon] would be forced to abandon the fight." (also improper, *see Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 683-84 (5th Cir. 1989)).

Plaintiffs' motion for and briefing in support of any appeal bond should also subject them to sanctions under 28 U.S.C. § 1927, which provides that "Any attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "A finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly

raised a frivolously argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (internal citations omitted). "[F]rivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Id.* at 1062.

Although class counsel will presumably disavow any knowing misrepresentations of law or fact, their frivolous contentions were offered at least recklessly. They cite *Azizian* plentifully throughout their briefing, at one point even seeming to acknowledge that *Azizian* disallows an appeal bond premised on frivolousness (Pl. Mem. 8 n.5). This is textbook recklessness. They fail to acknowledge *Azizian*'s second holding that Rule 7 appeal bonds may not encompass fees against objectors where the underlying statute is "asymmetrical" and does not apply to them. They fail to acknowledge that *Zipes* precludes the relief they seek against third-party objectors. They falsely claim that the asymmetrical consumer laws at issue here are distinguishable from the asymmetrical law in *Azazian*, neglecting California Supreme Court law to the contrary. They repeatedly cite *Wal-Mart Wage & Hour* without notifying the Court that the Ninth Circuit refused to enforce either the order or the contempt ruling. They blatantly misrepresent the nature of Ms. Gryphon's appeal in an attempt to argue that she does not have standing to appeal. Pl. Mem. 10-11. They invent imaginary radical political positions that no one holds and attribute them to Gryphon's counsel. They cite a *successful* objection Frank brought, *Lonardo*, as evidence of bad faith, and fail to mention that the Ninth Circuit adopted the part of Frank's objection that *Lonardo* rejected. All these acts of bad faith and/or recklessness suffice to merit § 1927 sanctions. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1221 (9th Cir. 2010) (misrepresentation of "straightforward" principle of law justifies imposition of § 1927 sanctions); *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984) (finding § 1927 violation when "Counsel's briefs…contain[ed] many misrepresentations of the record and an intentional misstatement of California law"); *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir. 1986) (granting request for sanctions under §1927 where litigant "fails to discuss controlling precedent, cites decisions that were overturned on appeal, and

mischaracterizes even their own affidavits"); *Premier Commercial Corp. v. FMC Corp.*, 139 F.R.D. 670, 672 (N.D. Cal. 1991) (relying on an out-of-circuit legal test that has been rejected by the Ninth Circuit is grounds for § 1927 sanctions).

Moreover, even if class counsel had been acting with the proverbial "empty head," Frank notified class counsel of their multiple misstatements of law and fact, including their omission of binding Supreme Court precedent and citation to cases that weren't good law, but class counsel failed to withdraw the motion to correct these misstatements; indeed, Briskin told Frank that class counsel was entitled to make such misleading arguments as an "advocate." Frank Decl. ¶¶ 16-18.

The inescapable conclusion is that class counsel has violated both Rule 11 and § 1927. This Court has the discretion to hold them accountable and to order them to show cause why they should not be sanctioned. *See, e.g., Cobell*, 816 F. Supp. 2d at 16-20. Because Gryphon's counsel is non-profit, he does not seek fees in this case.[7] But class counsel should not be permitted to violate Rule 11 and § 1927 with impunity just because their abuse is against a non-profit counsel who has foresworn fees in this case. Moreover, sanctions should be sizable enough so that such bad-faith behavior is not merely a "cost of doing business" and so-called "advocacy." Frank Decl. ¶ 16-18. Gryphon suggests that the Court award sanctions in the amount of $310,000—ten percent of the attorney award in this case—against class counsel to be paid to either the Federal Judicial Center or an ethics program at the law school of the Court's choice. This is of an amount sufficient to deter bad-faith behavior like plaintiffs', but would still leave them with a fee award substantially above class counsel's $2 million lodestar if the Ninth Circuit affirms the settlement approval—even if, as class counsel implausibly claims, they were to incur another $175,000 of fees opposing Ms. Gryphon's appeal.

## Conclusion

The motion should be denied, and the Court should give appropriate consideration to sanctioning class counsel for a bad faith, vexatious motion which flies in the face of binding

---

[7] Note that this is further evidence against class counsel's reckless "remora" accusation.

MEMORANDUM IN OPPOSITION TO MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND

law, wildly exaggerates expected costs, distorts the cases that are cited, and baselessly slurs opposing counsel. In no event should an appeal bond be issued in excess of $2,000, payable jointly and severally by appellants.

If the court, notwithstanding Supreme Court and Ninth Circuit precedent to the contrary, decides to order an appeal bond greater than $2,000, Gryphon requests either an immediate stay of the order or an immediate denial of a stay of the order, so that she may seek Ninth Circuit review with alacrity.

Dated: April 30, 2012                Respectfully submitted,


                                     /s/ Theodore H. Frank
                                     Theodore H. Frank (SBN 196332)
                                     **CENTER FOR CLASS ACTION FAIRNESS LLC**
                                     1718 M Street NW, No. 236
                                     Washington, DC 20036
                                     Tedfrank@gmail.com
                                     (703) 203-3848


                                     Daniel Greenberg (AR BAR 2007-193) (*pro hac vice*)
                                     **GREENBERG LEGAL SERVICES**
                                     55 Fontenay Circle
                                     Little Rock, AR 72223
                                     Dngrnbrg@gmail.com
                                     (501) 588-4245


                                     Kyle F. Graham (SBN 218560)
                                     1009 Portola Road
                                     Portola Valley, CA 94028
                                     Kylefgraham@hotmail.com
                                     (650) 530-2330


                                     Attorneys for
                                     Objector Marie Gryphon

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via first class mail to the following participants, who are not ECF registered, at the addresses listed below:

Dale Funk
7303 Delmar Blvd.
University City, MI 63130

Robert Gaudet, Jr.
800 Fifth Avenue
Suite 4100
Seattle, WA 98104

Jeremy Lee
8232 Mura Drive
Plano, TX 75025

DATED this 30th day of April, 2012.

(s) Theodore H. Frank
Theodore H. Frank

MEMORANDUM IN OPPOSITION TO MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND