ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

Co-Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.:   5:09-CV-01911-JW |
| | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR POSTING OF AN APPEAL BOND BY OBJECTOR MARIE GRYPHON |
| | Date:        May 21, 2012 |
| | Time:        9:00 a.m. |
| | Judge:        Honorable James Ware |
| | Courtroom: 9, 19th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

I.    ARGUMENT ................................................................................................... 2

    A.    The Requirements For The Posting of a Bond Are Satisfied.............................. 2

        1. Gryphon and CCAF's Financial Ability to Post a Bond................................ 3

        2. Risk that Gryphon and CCAF Will Not Pay Appellees' Costs...................... 3

        3. Merits of the Appeal...................................................................................... 3

            a.    Appeal Issue 1: *Bluetooth* ............................................................. 3

            b.    Appeal Issue 2:  Gryphon Criticizes The Court For Failing To Exercise "Independent Judgment." ............................ 8

            c.    Appeal Issue 3:  Gryphon Raises New Arguments Concerning Fed. R. Civ. P. 23(h) and the Class Action Fairness Act............................................................................ 9

    B.    Standard for the Amount of a Rule 7 Appeal Bond ............................................ 9

    C.    Gryphon's Motion For Sanctions Is Frivolous And Procedurally Flawed ........ 10

II. CONCLUSION ................................................................................................. 14

1

2                            **TABLE OF AUTHORITIES**

3
      **Cases**
4
5     *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998) ............................................................9

6     *Bluetooth*, 654 F.3d 935 ........................................................................................5, 6

7     *First Weber Group, Inc. v. Horsfall*, 2011 Bankr. LEXIS 4570, (Bankr. W.D. Wis. Nov. 7,
         2011) .................................................................................................................11

8     *Fleury v. Richemont North America, Inc.*, No. C-05-4525-EMC, 2008 WL 4680033 (N.D. Cal.
9        Oct. 21, 2008).....................................................................................................3

10    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)...............5

11    *Glasser v. Volkswagen of America, Inc.*, 645 F.3d 1084 (9th Cir. 2011) .................................4, 5

12    *Hanlon*, 150 F.3d 1011 (1998) ..................................................................................6

13    *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29 (9th Cir. 1994) .............5

14    *In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, MDL No. 1735, 2010 WL 786513 (D. Nev.
         Mar. 8, 2010)....................................................................................................14

15    *Independent Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754 (1989) ...................................13

16    *Knisley v. Network Assocs.,* 312 F.3d 1123 (9th Cir. 2002) .............................................5

17    *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d at 1149 (2000) ...........................................8

18    *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323 (11th Cir. 2002) .........................................9

19    *Pedtraza v. United Guaranty Corp.*, 313 F.3d 1323 (11th Cir. 2002) ......................................10

20    *Powers v. Eichen*, 229. F.3d 1249 (9th Cir. 2000)........................................................8

21    *Robertson v. Fleetwood Travel Trailers of California, Inc.,* 144 Cal. App. 4th 785.................10

22    *Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987)........................................................9

23    *Setzer v. Branch Banking & Trust*, 2011 U.S. Dist. LEXIS 64376 (W.D. Tex. June 16, 2011)12

24    *Sure Fill & Seal, Inc. v. GFF, Inc.*, 2010 U.S. Dist LEXIS 78569 (2010) ...............................10

25    *Tate v. Lau*, 865 F. Supp. 681 (D. Nev. 1994) ........................................................11

26    *Yingling*, 2011 WL 2790181(2011) .........................................................................3

27    **Other Authorities**

28

2-11 *Moore's Federal Practice – Civil* § 11.22 ........................................................................11

Notes of Advisory Committee to Rule 11(b) and (c), 1993 Amendment ...................................14

**Rules**

Fed. R. Civ. P. 11 ........................................................................................................................11

Local Civ. R. 11-4 .........................................................................................................................2

1                       **STATEMENT OF ISSUES TO BE DECIDED (Civ. L.R. 7-4)**

2         Whether the Court should order objector and appellant Marie Gryphon and her

3 attorneys ("Gryphon") to post a Federal Rule of Appellate Procedure 7 ("Rule 7") appeal bond

4 in the amount of $200,000.

5                                  **INTRODUCTION**

6         Once one cuts through the considerable bluster, misstatements of fact and hyperbole in

7 objector Marie Gryphon's opposition to Plaintiffs' motion, one finds that she does not actually

8 oppose the posting of a bond pursuant to Rule 7, and has offered to post one.  *See* Gryphon

9 Obj. Mem. Ex. 1 (Dkt. No. 137-3) ("We will be happy to stipulate to an appeal bond of

10 $1,500.").  She only argues concerning the amount of the bond.  Indeed, she does not even

11 contest all of the factors that the court should consider under Rule 7.  To concede that

12 Plaintiffs' motion should be granted, and yet to seek sanctions for the filing of that motion, is

13 unusual, to say the least.  The Court can disregard Gryphon's counsel's many spurious

14 accusations and unfounded arguments, and simply determine the appropriate amount of a bond

15 she should post on appeal.

16         The inquiry for whether to require the posting of a Rule 7 bond is generally limited to

17 three factors: (1) the appellant's financial ability to post a bond; (2) the risk that appellant will

18 not pay appellee's costs if s/he loses the appeal; and (3) the merits of the appeal.[1]  It appears

19 based on the record and Gryphon's arguments the she does not deny her ability to post a bond,

20 but there is a risk as to whether the Center for Class Action Fairness ("CCAF") which is

21 representing Ms. Gryphon *pro bono*, can pay Plaintiffs' costs on appeal, which make the

22 posting of a bond necessary and appropriate.

23         Gryphon does argue concerning the third of these factors, the merits of his appeal.  All

24 three of the arguments Gryphon intends to raise concern the award of attorney fees.  She does

25 not have Article III standing to lodge these arguments, because she has not set forth any way

---

[1] *Fleury v. Richemont North America, Inc.*, No. C-05-4525-EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008).

1    in which she was "aggrieved" by the fee award.  Indeed, in her objection to this Court, she

2    conceded that "the settlement is potentially fair," requiring only "[m]inor amendments to the

3    class definition and scope as well as to the relief offered to recent purchasers," which she also

4    concedes has been done; she does not challenge the settlement in any way on appeal.  *See*

5    Gryphon Obj. at 1 (Dkt. No. 85).   Gryphon has not even attempted to argue that had the

6    parties agreed to or the Court awarded a smaller amount of fees and expenses, it would have

7    benefitted her or the Class.  Thus, her appeal is wholly lacking in merit, and weighs in favor of

8    the award of an appeal bond.  Regarding the amount of the bond, Plaintiffs have set forth a

9    valid argument for why an appeal bond should include an amount for anticipated attorney fees

10   that Plaintiffs will sustain in litigating this appeal.

11          Plaintiffs address Ms. Gryphon's procedurally flawed "motion" for sanctions, which

12   contains many spurious accusations and does not comply with Rule 11, or comport with the

13   decorum expected of practitioners before this Court.  *See* Local Civ. R. 11-4 ("Standards of

14   Professional Conduct," which incorporate standards of professional conduct of the State Bar of

15   California) (requiring that attorneys "practice with the honesty, care, and decorum required for

16   the fair and efficient administration of justice").  Her counsel, Theodore Frank, has demanded

17   that Plaintiffs withdraw a motion that he concedes is meritorious, based on plain

18   misrepresentations of law and fact.  He has requested sanctions on multiple grounds, including

19   the omission of "vacated on other grounds" in a string cite footnote.  The Court can summarily

20   dispose of this non-motion, as the Ninth Circuit should dispose of Gryphon's arguments on

21   appeal.

22   **I.      ARGUMENT**

23          **A.      The Requirements for the Posting of a Bond Are Satisfied**.

24          The three factors discussed below go to the question of whether the appellant should

25   post a bond or not.  It appears the parties are in agreement that Gryphon should post a bond,

26   but disagree on the amount.  Nevertheless, Plaintiffs respond to Gryphon's arguments on these

27   factors as follows.

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL          2
BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1          **1.     Gryphon and CCAF's Financial Ability to Post a Bond**

2          Where there is "no indication that [a] plaintiff is financially unable to post bond ... this

3   factor weighs in favor of a bond." *Fleury*, 2008 WL 4680033, at *6 (citation omitted);

4   *Yingling*, 2011 WL 2790181, at *2 n.8. (same). Gryphon concedes that this is a "non-existent

5   dispute," and no discovery is necessary. "Gryphon and Frank will not seek to challenge the

6   Rule 7 bond on the basis of 'ability to pay[.] Opp Mem. at 15. It appears that this factor, the

7   most important one in the inquiry, is satisfied.

8          **2.     Risk that Gryphon and CCAF Will Not Pay Appellees' Costs**

9          While Gryphon and Frank insist that they are able to post a bond, Plaintiffs pointed out

10  in their opening brief that it appears that CCAF and Ms. Gryphon have agreed that CCAF will

11  pay all of its client's costs, and Mr. Frank has argued that his organization has limited

12  resources. Pl. Mem. at 8-9 (Dkt. No. 132-1). Thus, there is a risk that CCAF will not pay

13  Plaintiffs' costs, even if Gryphon can. Plaintiffs should not have to await the outcome of this

14  litigation to find out that CCAF is unable to pay Plaintiffs' costs, or to pursue payment of such

15  costs from Gryphon. This factor weighs heavily in favor of the posting of a bond.

16         **3.     Merits of the Appeal**

17         Gryphon's arguments are limited to the issues she has set forth in her notice to the

18  Ninth Circuit. *See* Pl. Mem. at 6-7. Plaintiffs will address her arguments in turn.

19              **a.     Appeal Issue 1: *Bluetooth***

20         Gryphon intends to argue that this Court erred as a matter of law approving a

21  settlement where, "the class will receive about $0.6 million, the attorneys received $3.1

22  million (over 1.5 times their lodestar), the settlement had a clear-sailing agreement and

23  'kicker,' the settlement artificially restricted the ability of class members to make claims, and

24  the district court's opinion failed to address the *Bluetooth* standard or any of the *Bluetooth*

25  factors?" (Dkt. No. 124) Thus, it is clear that Gryphon intends to continue making

26  misrepresentations on appeal. As explained in Plaintiffs' final approval papers, Plaintiffs

27  obtained a settlement that included notice to millions of class members of an extended

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL          3
BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

warranty, free, redesigned replacement products, and cash refunds up to the full purchase price of the product. The class already has received more than $600,000 in value from the settlement, and will obtain much more once appeals have been disposed of and monetary relief may issue to the Class. The parties agreed and Plaintiffs were awarded $3 million in fees for the four law firms who represented them, and $100,000 for accrued expenses, which reflected the cost of hiring two experts, among other things. Gryphon argues the settlement approved by the Court (with its own modifications) "artificially restricted the ability of class members to make claims," yet she does not challenge the fairness of the settlement on appeal, which one would expect she would if it were she, and not her counsel, who was "aggrieved" here.[2]

Indeed, Gryphon fails to refute Plaintiffs' Article III standing argument. She offers no argument as to how the fee award has resulted in a reduction in the relief to which she is fairly entitled, or conversely, that a reduction in the award would benefit her. This case is on all fours with *Glasser v. Volkswagen of America, Inc.*, 645 F.3d 1084 (9th Cir. 2011). There, class relief was limited to defendant's assurance that it had not engaged in the behavior complained of regarding replacement car keys, and agreement to let customers know about the availability of those keys. *Id.* at 1086. The Court of Appeals stated, "Notably, [the objector] did not claim in his objection to the fee application that any reduction in fees could or should benefit the class in any way." *Id.* at 1088.

The Ninth Circuit observed that the "constructive common fund" theory might confer standing on an objector who claims that counsel accepted a reduced recovery in order to obtain

---

[2] Gryphon claims credit for improving the settlement, but there is no support for this claim. The parties had always contemplated that every class member would have at least three years from the purchase date of their adapter to claim a replacement, and the end date of the replacement program was based on the last date of known sale. When Apple subsequently discovered that subject adapters had been sold through May 2010, later than previously known, it extended the end date to 2013, consistent with the three-year principle. *See* Coulson Decl. (Dkt. No. 98-13); Carameros Decl. (Dkt. No. 102). Gryphon may not be aware of the fact that Apple stopped selling the subject adapters in May 2010. Thus, the replacement Ms. Gryphon purchased is most likely not a subject adapter, because she purchased it in August 2010. Gryphon Obj. Mem. at 20 (Dkt. No. 85). Regardless, this has no bearing on whether the issues Gryphon *does* raise on appeal have merit, or whether she has standing to bring them.

1   a greater fee.  But it made clear that a class member must *still* claim Article III injury – she

2   must be "aggrieved" -- to have standing.  *Id.* at 1088 (quoting *In re First Capital Holdings*

3   *Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 n.1 (9th Cir. 1994)).  "Whether a fee award is

4   independent of the settlement agreement is an issue distinct from whether an objecting class

5   member was injured by the fee award." *Id.* at 1088.  The *Bluetooth* court did not rule to the

6   contrary.  *See* 654 F.3d at 949 n.9 (citing *Glasser*) ("we need not address whether Objectors

7   would have independent standing to challenge the Fee Order alone were the Approval Order to

8   remain intact.").  The *Glasser* court dismissed the objector's appeal for lack of standing.  *Id.* at

9   1086.

10      Here, Gryphon does not maintain any challenge to the relief Plaintiffs have obtained

11   for the Class.  She does not establish causation – that she received less relief due to the fee

12   award – or redressability – that reduction in the fee award would benefit her in any way.  This

13   reflects the reality that it is CCAF whose interests are at stake, and who is objecting to the

14   settlement, not its client.  That is not sufficient for Article III purposes.  In Ninth Circuit cases

15   where objectors have standing to challenge attorney fees, they also allege that counsel agreed

16   to a lesser settlement in exchange for the fee, or that a reduction in the fee would increase the

17   distribution to the class.  *See Knisley v. Network Assocs.,* 312 F.3d 1123, 1127 (9th Cir. 2002)

18   (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185

19   (2000)) ("[A] plaintiff must demonstrate standing separately for each form of relief sought." . .

20   . [objector] must show that his injuries will be redressed by a successful appeal, and not

21   merely by some hypothetical civil suit.").  Gryphon has not alleged that the settlement is not

22   fair, reasonable and adequate, or that any part of it should or would have been greater, but was

23   not, because Plaintiffs expected that Defendant would subsequently reward them by agreeing

24   to a higher fee award.

25      Gryphon also has failed to allege or substantiate how her appeal could possibly redress

26   any injury she has suffered.  Gryphon claims she purchased an Apple computer in 2006, and a

27   replacement adapter four years later, in August 2010.  She has not specified which adapter she

28

purchased, but it appears by the purchase date to be not subject to replacement under the settlement, because Apple stopped selling the subject adapter by June 2010. *See* Coulson Decl. ¶ 4 (Dkt. No. 93-13). That will not change even if she were to prevail on any part of her appeal.

In addition, Gryphon misrepresents the factors that suggest a "subtle" form of collusion, as suggested by the Court of Appeals in *Bluetooth*. To be clear, this is not actual collusion, and Gryphon does not assert that there was, but a situation where class counsel has subconsciously allowed their pursuit of fees to affect the relief they obtained on behalf of the class. The *Bluetooth* court was addressing a particular settlement that obtained *no monetary relief at all*, and the only payment was in the form of a limited *cy pres* fund. In addition, the Court here has affirmative reasons to be assured that there was no actual or subtle collusion, because Class Counsel obtained exceptional relief, as good or better as they could have obtained at trial. *See* Def. Response in Opp. to Objections at 1 ("the settlement is extremely generous – it is close to a trial win.") (Dkt. No. 98). This Court reviewed the settlement and found it fair, reasonable and adequate, and Gryphon does not challenge that. Indeed, Gryphon seeks to enforce the proposition that even where a settlement renders excellent relief to the Class, the district court approves it as fair, reasonable and adequate, and independently reviews and awards an attorney fee based on lodestar, one may still accuse Plaintiffs' Counsel of "collusion," and assert that the fee award should be reduced by some unspecified amount.

The first *Bluetooth* factor is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d 935, 947 (citing *Hanlon*, 150 F.3d at 1021). This was clearly a primary concern underlying the Ninth Circuit's opinion in *Bluetooth*, where plaintiffs originally sought to recover the full purchase price of millions of Bluetooth headsets, based on defendants' misrepresentations, but recovered *no money damages* for the class, only cy pres and injunctive relief. That is far from the case here: this settlement includes cash refunds up to the full purchase price, free redesigned replacement products, and a generous extended

1    warranty.  In addition, this Court expressly calculated a lodestar figure, which the *Bluetooth*

2    court faulted the District Court for failing to do.  Nowhere does Gryphon suggest that

3    *Bluetooth* provides any guidance on what amount of fees in this case would be

4    "proportionate," likely because the relief obtained here bears no resemblance to that in

5    *Bluetooth*.

6        Gryphon has already (mis)represented in a signed pleading to the Ninth Circuit that the

7    relief to the Class is $600,000.  This is inaccurate, and it appears to be based on Gryphon's

8    incorrect estimate of cash refunds to consumers, which is only one form of the relief obtained.

9    Gryphon completely disregards the fact that Plaintiffs obtained a fully noticed extension of the

10   90-day/one–year warranty on the Adapter to as much as six years for some purchasers, and at

11   least three years for everyone, in a class of 9.6 million purchasers.  Even if the value of this

12   warranty extension is just a few dollars per customer, that value is substantial multiplied by a

13   class of this size.  Plaintiffs also secured Apple's consent to provide replacements under

14   warranty, and not deny them as resulting from user abuse.  Apple has reported that over 20,000

15   people have obtained replacement adapters between the time notice was disseminated and final

16   approval; that number will continue to grow through 2013.  The value of 20,000 adapters,

17   measured by its retail value, $79, is $1.58 million.  The *Bluetooth* court also considered the

18   costs of notice program paid by defendants as part of the relief provided to the class, which

19   totaled $1.2 million, and incentive awards to the class representatives, which here total

20   $30,000.  The total of these amounts (and the figures provided here are estimates) – extended

21   warranty, replacement products, cash refunds, notice, and incentive awards -- should easily

22   exceed the fee awarded by the Court.  Nothing in *Bluetooth* demands that the parties must

23   engage in expert analysis concerning the value of a settlement that provides extended warranty

24   relief.

25       The second factor concerns what the *Bluetooth* Court calls a "clear sailing

26   arrangement," which carries the connotation that an agreement between the parties on fees is

27   inherently suspect, and it is preferable for the parties to contest the matter.  Plaintiffs contend

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL          7
BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

that this factor, standing alone, would not justify any finding of any sort of collusion, especially independent of the fairness of the fee request itself, which in this case was based on lodestar plus a modest enhancement. Bluetooth cites *Lobatz* for this factor, where the court noted, "Although the potential for collusion existed, nothing before the court suggested any collusion occurred, and Havird made no such showing." 222 F.3d at 1149.

The third factor, "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund," simply does not map well onto this case, because there is no fund or *cy pres* fund for the fees to revert to. Plaintiffs negotiated cash refunds, an extended warranty and a replacement program. If the Court had awarded a lesser attorney fee than Apple agreed not to oppose, Gryphon does not suggest what should have been done with the difference. The Class numbers about 9.6 million; even if the Court awarded a significantly lower fee award for some reason, the difference in amount would be insignificant to a class of millions. Neither Gryphon nor anyone else has suggested a fee award that would be "proportionate" to the settlement achieved, or any way of measuring it.

### b. Appeal Issue 2: Gryphon Criticizes The Court For Failing To Exercise "Independent Judgment."

Second, Gryphon assails the district court's award of attorney fees for "approval of a class action settlement that fails to provide reasoning for its decision or 'evidence in the record demonstrating that the district court exercised 'independent judgment' in adopting a party's proposed findings.'" Ex. 1 at 1 (Appellate Dkt. No. 5). Again, Gryphon does not have standing to raise this argument. And she simply ignores the content of the Court's order. She also ignores the substantial input that the Court provided at the preliminary and final approval hearings, and in its Order Requesting Revised Proposed Orders (Dkt. No. 77), Order Granting Defendant's Request for Reconsideration; Requesting Revised Proposed Order and Claim Form (Dkt. No. 80), Order Granting Conditional Certification of a Settlement Class (Dkt. No. 82), all of which are reflected in the Final Approval Order (Dkt. No. 107). Gryphon cites a Ninth Circuit opinion, *Powers v. Eichen*, 229. F.3d 1249 (9th Cir. 2000), where the Court of

Appeals faulted the district court for failing to specify reasons for approving fees in excess of the benchmark 25% in a common fund case, where the record showed that the court had expressed conflicting sentiments about the fairness of the fee request. *Id.* at 1257-58. That is not the case here.

       **c.**       **Appeal Issue 3: Gryphon Raises New Arguments Concerning Fed. R. Civ. P. 23(h) and the Class Action Fairness Act.**

Last, Gryphon fails to refute that she intends to raise an argument on appeal that she did not raise below (and for which she lacks standing), regarding whether Federal Rule of Civil Procedure 23(h) and the Class Action Fairness Act bar a court from assessing a fee award that is greater than the value the class actually received in settlement. *See Sckolnick v. Harlow*, 820 F.2d 13, 14 (1st Cir. 1987) (summarily rejecting two of the appellant's three issues on appeal because the issues were not brought "to the attention of the district court"). Even if it were proper for the Court of Appeals to address this new argument, it would easily dispose of it, for the reasons set forth in Plaintiffs' opening brief. *See* Pl. Mem. at 12-13 (Dkt. No. 132-1).

**B.**       **Standard for the Amount of a Rule 7 Appeal Bond**

As Plaintiffs explained in their opening brief, a Rule 7 bond may include an amount for anticipated attorneys' fees in litigating the appeal if, as here, the applicable statute underlying the litigation contains a fee-shifting provision that accounts for such fees in its definition of recoverable costs, and appellee is eligible to recover such fees. *Azizian,* 499 F.3d at 958 (finding Rule 7 includes "all costs properly awardable at the conclusion of the appeal, including attorney's fees authorized by relevant statutory authority."); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 817-18 (6th Cir. 2004); *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1329-30 (11th Cir. 2002); *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998).

Gryphon does not address Plaintiffs' core argument, which is that the federal and state warranty statute language authorizing fees makes such fees includable as costs under Rule 7. Gryphon asserts that *Azizian* stands for the proposition that *any* asymmetrical fee-shifting

1   statute cannot provide support for including fees as costs.  That is a clear misstatement of the

2   Ninth Circuit's holding and rationale in *Azizian*, which the Ninth Circuit set out clearly:  "We

3   conclude that a district court may require an appellant to secure appellate attorney's fees in a

4   Rule 7 bond, but only if an applicable fee-shifting statute includes them in its definition of

5   recoverable costs, and only if the appellee is eligible to recover such fees."  499 F.3d 950, 953.

6   Based on this rule, the Court of Appeals held that the bond could not include attorney fees

7   taxable under the Clayton Act, because the language of the Clayton Act fee provision made

8   such fees recoverable only from the defendant.  In other words, the question is not whether the

9   statute is "asymmetrical," but whether it limits the prevailing plaintiff to recovering fees from

10  the losing defendant.

11          Plaintiffs explained in their opening brief that the language of the Song-Beverly Act

12  means that it fares differently under *Azizian*:  it provides that prevailing plaintiffs are able to

13  recover their "**aggregate** amount of costs and expenses, including attorneys' fees . . . in

14  connection with the . . . prosecution of such action."[3]  Thus, as Plaintiffs argued in their

15  opening brief, the entire requested bond amount is proper under *Azizian* and other applicable

16  law.

17          **C.      Gryphon's Motion For Sanctions Is Frivolous And Procedurally Flawed.**

18          Gryphon moves for sanctions based on multiple misrepresentations of fact and legal

19  arguments that are wholly unsupportable.  In essence, her counsel deems any argument with

20  which he disagrees as grounds for sanctions.  His cavalier attitude towards such a serious

21  remedy should not be encouraged or rewarded by this Court.[4]

22

23  [3] Cal. Civ. Code § 1794(d) (emphasis added).  *See also Robertson v. Fleetwood Travel Trailers
    of California, Inc.,* 144 Cal. App. 4th 785, 817 (finding that through the fee-shifting provision,
24  "our Legislature has provided injured consumers strong encouragement to seek legal redress in
    a situation in which a lawsuit might not otherwise have been economically feasible."); *cf.*
25  *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("It seems clear to us
    that the guaranteed availability of appellate attorneys' fees prior to the taking of an appeal will
26  further the goal of providing incentives to attorneys to file (or defend against) such appeals.").

27  [4] *See Sure Fill & Seal, Inc. v. GFF, Inc.*, 2010 U.S. Dist LEXIS 78569, *35 (recommending
    that defendant be awarded fees and costs incurred in connection with enforcement of
28  settlement agreement if opposing party continues pursuit of a frivolous motion for sanctions);

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL          10
BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1    Gryphon has failed to comply with the requirements of Rule 11, and her motion can be

2   denied on this basis.  Rule 11 explicitly requires, "A motion for sanctions must be made

3   separately from any other motion and must describe the specific conduct that allegedly violates

4   Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  "A request for sanctions that is included as part of some

5   other motion or pleading may be denied by the court on that ground."  2-11 *Moore's Federal*

6   *Practice – Civil* § 11.22 (citing *Tate v. Lau*, 865 F. Supp. 681 (D. Nev. 1994)).  The motion

7   cannot be filed until at least 21 days after being served.  Fed. R. Civ. P. 11 (c)(1)(A).  And it

8   should go without saying, "Rule 11 motions should not be made or threatened for minor,

9   inconsequential violations of the standards prescribed by subdivision (b) . . . Nor should Rule

10  11 motions be prepared . . . to intimidate an adversary into withdrawing contentions that are

11  fairly debatable . . ."[5]  The Court can dispose of Gryphon's "motion" on these procedural

12  grounds, and need go no further.

13    Regarding Gryphon's invocation of 28 U.S.C. § 1927, the power to impose such

14  sanctions is "highly unusual and requires a clear showing of bad faith."  *West Virginia v. Chas.*

15  *Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir. 1971).  It requires that an attorney pursue a claim

16  that is "wholly without merit."  *Ingle v. Circuit City*, 408 F.3d 592, 595 (9th Cir. 2005).  Even

17  where the claim is wholly without merit, courts in this circuit decline to impose sanctions

18  where the movant fails to produce specific evidence that the claim was motivated by bad faith.

19  *Id.* at 596.  *See also MGIC Indem. Corp. v. Moore,* 952 F.2d 1120, 1122 (9th Cir. 1991)

20  (stating that knowing or reckless conduct meets the standard); *T.W. Electrical Service, Inc. v.*

21  *Pac. Electrical Contractors Assn.*, 809 F.2d 626, 638 (9th Cir. 1987) (finding appeal

22

23  _____

24  *First Weber Group, Inc. v. Horsfall*, 2011 Bankr. LEXIS 4570, *14 (Bankr. W.D. Wis. Nov. 7,
    2011 ("A bankruptcy court can impose sanctions when a party files a frivolous motion for
    sanctions.").

25
26  [5] Notes of Advisory Committee to Rule 11(b) and (c), 1993 Amendment.  Undersigned counsel
    believe that the unfounded legal arguments Mr. Frank made in demanding that Plaintiffs
27  withdraw this Motion, set forth in Mr. Frank's sworn declaration, at ¶¶ 16-18 (Dkt. No. 137-2),
    are sufficiently self-refuting, and do not require further discussion in this brief, or in a
    responsive declaration of counsel.

28
    REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL          11
    BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1  nonmeritorious, but not deserving of § 1927 sanctions, lacking evidence of bad faith).
2  Gryphon has presented no such evidence here.

3  Regarding the grounds on which Gryphon bases her request for sanctions, Plaintiffs
4  respond as follows. First, Gryphon deems Plaintiffs' argument regarding inclusion of fees as
5  costs sanctionable. Opp. Mem. at 16-17. Plaintiffs have offered, at the very least, a good faith
6  argument for the inclusion of fees as costs under the Magnuson-Moss and Song-Beverly Acts,
7  and the Court can address it on its merits, as it can generally. *Azizian* addressed a matter of
8  first impression in the Ninth Circuit, and Plaintiffs are entitled to relief under an argument that
9  fairly distinguishes its holding, as applied to a different statute. And it is Gryphon who
10  misreads *Azizian*, which does not hold that any and all "asymmetrical" fee statutes cannot
11  provide the basis for fees as a component of costs. Should the Court conclude that attorney
12  fees are not includable as costs under the operable warranty statutes and Rule 7, it should still
13  grant Plaintiffs' motion, and set the amount of the bond for a lesser amount.

14  Second, Gryphon asserts that sanctions are merited because this motion for posting of a
15  bond (which Gryphon has agreed to do) is motivated by an improper purpose, to discourage an
16  appeal. That is incorrect. The purpose of the motion is to ensure that Gryphon pays the costs
17  it would owe Plaintiffs if they are successful, under Rule 7. Indeed, Plaintiffs have pointed out
18  that it is CCAF who is motivated by an improper purpose, to pursue a policy agenda unrelated
19  to the concerns or recovery of its client or the class. As to Mr. Frank's offense at the citation
20  to a federal court opinion that calls professional objectors "remoras,"[6] he should be reminded
21  that he, not a federal court, has called plaintiffs' lawyers "parasites."[7] In Gryphon's opposition
22  brief, Frank accuses Plaintiffs of lying ("plaintiffs simply lie to this Court") (at 11) and "acting

23

24  [6] *In re UnitedHealth Group PSLRA Litig.,* 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) ("The
    remoras are loose again.").

25
26  [7] Pl. Mem. in Support of Attorney Fees at 18 (Dkt. No. 97) (quoting Brenda Kearney, *The Deal
    Breakers: A look at professional class objectors in MD*, The Daily Record, May 23, 2010 [Ex.
27  16]). *Cf. Setzer v. Branch Banking & Trust*, 2011 U.S. Dist. LEXIS 64376, *8 (W.D. Tex.
    June 16, 2011) (denying motion for sanctions for the filing of a motion that was granted; "this
    is a classic case of the 'pot calling the kettle black.'").

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL        12
BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1   with the proverbial "empty head" (at 19). Plaintiffs agree that Mr. Frank is not the usual

2   professional objector, and is better considered an "ideological objector," who characterizes his

3   attacks on class action settlements as "guerilla operation[s]." Pl. Mem. at 9-10.

4           Third, Gryphon asserts that Plaintiffs' Counsel are to be sanctioned for asserting that

5   an appeal bond can be premised on "frivolousness." Opp. Mem. at 18 (citing Pl. Mem. at 8

6   n.5). Gryphon simply misreads the footnote in the Plaintiffs' brief that she attacks. Plaintiffs

7   there cite authority for the proposition that an appellee can *ultimately* be awarded damages

8   under Rule 38 -- not Rule 7 -- and costs if the appellate court determines that the appeal is

9   frivolous. Plaintiffs do not seek the inclusion in the bond of damages under Rule 38 (frivolous

10  appeal), but under Rule 39 (costs). Plaintiffs *can* seek attorney fees for a frivolous appeal

11  under Rule 38, just not now. And again, Plaintiffs have pointed out that a court properly

12  considers the merits of an appeal in deciding whether to set an appeal bond.

13          Fourth, Gryphon asserts that failure to cite *Independent Fed'n of Flight Attendants v.*

14  *Zipes,* 491 U.S. 754, 766 (1989) for the proposition that fee-shifting is *not* available against

15  third parties under Rule 7. *Zipes* says nothing about appellate appeal bonds or Rule 7: it

16  concerns the award of attorney fees for plaintiffs against losing intervenors under the Civil

17  Rights Act of 1964. And Gryphon completely misreads *Zipes*, which if anything supports

18  Plaintiffs' motion here: it sets out the circumstances under which prevailing plaintiffs *can*

19  seek fees from unsuccessful third parties. The fact that the Court applied a similar but

20  differently worded standard for civil rights intervenors – "frivolous, unreasonable, or without

21  foundation" -- than courts use in construing Rule 7, does not mean that the former should

22  supplant the latter, or that it suggests a different result here. If failing to cite *Zipes* is such an

23  egregious omission, the Ninth Circuit is guilty of it as well, for the opinion appears nowhere in

24  the *Azizian* case, which Gryphon cites as authoritative on this question. It is outrageous for

25  Mr. Frank to threaten counsel as he has, and to argue that failure to cite this inapposite case,

26  which he misreads, is grounds for sanctions against Plaintiffs.

27

28

Fifth, Gryphon states that Plaintiffs' citation to *In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010), is grounds for sanctions, because Plaintiffs did not include in the case citation that it was vacated on other grounds. Gryphon is making a mountain out of a mole hill. The Ninth Circuit's decision has nothing to do with limited purpose for which Plaintiffs cited the district court opinion, in string cites, in two footnotes. *See* Advisory Note to Rule 11 ("Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b)."). Gryphon implicitly acknowledges that the Ninth Circuit said nothing about the district court's order requiring four objectors to post $500,000 Rule 7 bonds, because it rejected the appeal over the bond over as *moot*, in an unpublished opinion that appears only on the electronic case docket, not on Lexis or Westlaw. *See* Gryphon Opp. Mem. Ex 1 (Dkt. No. 137-1). Again, this is a frivolous argument for sanctions.

Sixth, Gryphon asserts that Plaintiffs' argument regarding his client's standing to appeal is grounds for sanctions. Plaintiffs address the standing issue separately above as to why Gryphon's appeal lacks merit, and she not have standing. Again, it is improper for Gryphon to base a motion for sanctions on the question of Article III standing, which the Court of Appeals would have to consider even if Plaintiffs did not raise it.

These six arguments for sanctions are not even all of the arguments Gryphon raises, but the responses provided herein should suffice to demonstrate that her motion for sanctions is baseless and should be denied, should the Court even deem it necessary to address her arguments at all.

## II.    CONCLUSION

The Court has the well-established authority to require Gryphon and her counsel to post a Rule 7 bond, and Gryphon does not contest that the posting of a bond is appropriate in this case. Thus, Plaintiffs respectfully request that the Court enter an order requiring the immediate posting of an appeal bond in the amount of $200,000.

1  Dated: May 7, 2012

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
2                                  MEHRI & SKALET, PLLC

3                                  By: /s/ *Craig L. Briskin*

4                                  1250 Connecticut Avenue., NW, Suite 300
                                   Washington, DC 20036
5                                  Telephone: (202) 822-5100
                                   Facsimile: (202) 822-4997
6                                  sskalet@findjustice.com
                                   cbriskin@findjustice.com
7
                                   ZELDES & HAEGGQUIST, LLP
8                                  HELEN I. ZELDES (220051)
                                   AARON M. OLSEN (259923)
9                                  ALREEN HAEGGQUIST (221858)
                                   625 Broadway, Suite 906
10                                 San Diego, CA  92101
                                   Telephone: (619) 342-8000
11                                 Facsimile: (619) 342-7878
                                   helenz@zhlaw.com
12                                 alreenh@zhlaw.com
                                   aarono@zhlaw.com
13
                                   Co-Lead Counsel for the Class
14
                                   LINER GRODE STEIN YANKELEVITZ
15                                 SUNSHINE REGENSTREIF & TAYLOR LLP
                                   ANGELA C. AGRUSA (131337)
16                                 1100 Glendon Avenue, 14th Floor
                                   Los Angeles, CA 90024-3503
17                                 Telephone:  (310) 500-3500
                                   Facsimile:  (310) 500-3501
18                                 aagrusa@linerlaw.com
                                   cchan@linerlaw.com
19
                                   MCNICHOLAS & MCNICHOLAS LLP
20                                 PATRICK MCNICHOLAS (125868)
                                   10866 Wilshire Boulevard Suite 1400
21                                 Los Angeles, CA 90024-4338
                                   Telephone: (310) 474-1582
22                                 Facsimile:  (310) 475-7871
                                   pmc@mcnicholaslaw.com
23                                 cbs@mcnicholaslaw.com

24                                 Attorneys for Plaintiffs

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL          15
BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  I also certify that I caused to be mailed the foregoing document on paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 7, 2012.

                                                      s/*Craig L. Briskin*
                                                      CRAIG L. BRISKIN

                                                      MEHRI & SKALET, PLLC
                                                      1250 Connecticut Avenue., NW, Suite 300
                                                      Washington, DC 20036
                                                      Telephone: (202) 822-5100
                                                      Facsimile: (202) 822-4997
                                                      cbriskin@findjustice.com

Manual Notice List:

        Dale Funk (via E-mail)
        7303 Delmar Blvd.
        University City, MI 63130
        funkdbc@gmail.com

        Daniel Greenberg (via E-mail)
        Greenberg Legal Services
        55 Fontenay Circle
        Little Rock, AR 72223
        Dngrnbrg@gmail.com

        Robert Gaudet, Jr. (via E-mail)
        800 Fifth Avenue
        Suite 4100
        Seattle, WA 98104
        Robert@rjgaudet.com

        Jeremy Lee (via U.S. Mail)
        8232 Mura Drive
        Plano, TX 75025

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR POSTING OF AN APPEAL
BOND BY OBJECTOR MARIE GRYPHON - Case No. 5:09-CV-01911-JW

16