ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

STEVEN A. SKALET (admitted pro hac vice)
CRAIG L. BRISKIN (admitted pro hac vice)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION. | Case No. 5:09-CV-01911-JW <br><br> Honorable James Ware <br><br> **NOTICE OF MOTION AND MOTION FOR POSTING OF AN APPEAL BOND BY KERRY ANN SWEENEY TO SECURE PAYMENT OF COSTS ON APPEAL (FED. R. APP. P. 7); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    July 23, 2012 <br> Time:   9:00 a.m. <br> Department:   9, 19th Floor |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 23, 2012[1], at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable James Ware in Courtroom 9 on the 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Naotaka Kitigawa, Jr., Timothy J. Broad, Jessie Reisman, Tracey Hackwith and Michael Martin (collectively "Plaintiffs") will and hereby do move this Court for an Order requiring objector/appellant Kerry Ann Sweeney ("Sweeney") and her attorney, serial objector Joseph Darrell Palmer ("Palmer") to post a Federal Rules of Appellate Procedure Rule 7 ("Rule 7") appeal bond in the amount of $25,000 for anticipated taxable costs Plaintiffs will incur in defending against Sweeney's appeal (filed May 2, 2012) from this Court's March 8, 2012 Order Granting Final Approval of Settlement and Release and Granting Plaintiffs' Motion for An Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards.

Plaintiffs concurrently move this Court for an Order granting Plaintiffs limited expedited discovery to establish that Sweeney's appeal lacks merit, whether Sweeney is capable of paying the cost of the requested bond, and whether Sweeney will pay the appellees' costs if she loses her appeal.

This motion is based on the notice of motion and motion, Plaintiffs' memorandum of points and authorities in support thereof, the declaration of Nick S. Movaghar and the exhibits thereto, all other pleadings and matters of record, and upon such oral and documentary evidence as may be presented at the hearing of this matter.

**STATEMENT OF ISSUES TO BE DECIDED (Civ. L.R. 7-4)**

1.      Whether the Court should order objector and appellant Kerry Ann Sweeney to post a Rule 7 appeal bond in the amount of $25,000.

2.      Whether the limited expedited discovery that Plaintiffs are requesting in connection with this motion for an appeal bond should be granted.

---

[1]      Plaintiffs are concurrently filing an *ex parte* application with this Motion and requesting that the Court hear this motion on shortened time.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

    A.   Filing Of The Complaint, Investigation And Pre-Settlement Discovery ............................................................................................ 2

    B.   Settlement, Preliminary Approval, And Motion For Attorneys' Fees .................... 3

    C.   Final Approval ......................................................................................... 4

    D.   The Court's Order Requiring That Each Objector Post An Appeal Bond ......................................................................................... 5

III.  ARGUMENT .......................................................................................................... 6

    A.   Standard For Imposition Of Rule 7 Appeal Bond .................................... 6

    B.   All Factors Weigh In Favor Of Imposing An Appeal Bond ...................... 7

        1.   Sweeney's Financial Ability To Post A Bond .............................. 7

        2.   Risk That Sweeney And Her Attorney Would Not Pay Appellees' Costs .................................................................... 8

        3.   Merits Of The Appeal ................................................................ 9

            a.   This Appeal Should Be Reviewed With Great Skepticism Because It Was Filed By A Serial Objector .................. 9

            b.   Sweeney Does Not Appear To Be A Member Of The Class And Thus Lacks Standing To Object To The Settlement .................................................................. 10

            c.   Sweeney Does *Not* Have Standing To Contest The Attorneys' Fee Award ..................................................... 10

            d.   Plaintiffs' Counsel Provided More Than Adequate Information And Evidence To Justify The Attorneys' Fee Award ...................................................................... 11

            e.   The Court Should Reject Sweeney's Baseless Claim That The Settlement Is Confusing ................................... 15

    C.   Standard for the Amount of a Rule 7 Appeal Bond ................................ 15

    D.   The Court Also Has Inherent Power To Set A Bond .............................. 17

    E.   In Addition, Expedited Discovery Is Necessary To Determine Whether Sweeney Is A Class Member And Her Ability To Pay Costs When She Loses Her Appeal ................................................................. 18

1

**TABLE OF CONTENTS (cont.)**

2

**Page**

3

IV.     CONCLUSION....................................................................................................................18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' MOTION FOR POSTING OF AN APPEAL BOND BY OBJECTOR KERRY ANN SWEENEY

0038799/001/ 525275v01

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aggarwal v. Ponce School of Med.*,
  745 F.2d 723 (1st Cir. 1984)...................................................................................17

*Azizian v. Federated Dept. Stores, Inc.*,
  499 F.3d 950 (9th Cir. 2007) .....................................................................................6

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006).......16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...................................................................................................13

*Browning v. YahooA Inc.*,
  No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...................13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)....................................................................................................17

*Ehm v. Amtrak Bd. of Directors*,
  780 F.2d 516 (5th Cir. 1986) ...................................................................................17

*Fleury v. Richemont North America, Inc.*,
  No.C-05-4525-EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) .....................6, 7, 8, 9, 16

*Gemelas v. Dannon Co., Inc.*,
  No. 1:08 CV 236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) .........................16

*Gemelas v. Dannon Co.*,
  No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ....................8, 9

*Glass v. UBS Fin. Serv., Inc.*,
  No. C-06-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................13

*Glasser v. Volkswagen of Am., Inc.*,
  645 F.3d 1084 (9th Cir. 2011) ...............................................................................10, 11

*Hackwith, et al. v. Apple, Inc.*,
  No. 5:09-CV-034862-JW .........................................................................................2

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................................9

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................13

*Hofstetter v. Chase Home Fin., LLC*,
  No. C-10-01313-WHA, 2011 U.S. Dist. LEXIS 131193 (N.D. Cal. Nov. 14, 2011) ............14

*Hopson v. Hanesbrands, Inc.*,
  No. CV-08-0844-EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009).......................................13

*In re Broadcom Corp. Sec. Litig.*,
  No. SACV-01-275-DT(MLGx), 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005).....16

*In re Charles Schwab Corp. Secs. Litig.*,
  No. C-08-1510-WHA, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011)................14

*In re Compact Disc Minimum Advertised Price Anti. Litig.*,
  No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)..................................................16

*In re Currency Conversion Fee Anti. Litig.*,
  No. 01-01409, 2010 WL1253741 (S.D.N.Y. Mar. 5, 2010)...................................................16

*In re Diet Drugs*,
  MDL No. 1203, 2001 WL 34133966 (E.D. Pa. Apr. 6, 2001) ...............................................17

*In re Initial Public Offering Sec. Litig.*,
  728 F. Supp. 2d 289 (S.D.N.Y. July 20, 2010)..................................................................8, 16

*In re Ins. Brokerage Antitrust Litig.*,
  No. 04-5184 (GEB), 2007 WL 1963063 (D.N.J. July 02, 2007)...........................................16

*In re Mroz*,
  65 F.3d 1567 (11th Cir. 1995) ..............................................................................................17

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
  520 F. Supp. 2d 274 (D. Mass. 2007)......................................................................................7

*In re UnitedHealth Group, Inc. PSLRA Litig.*,
  643 F. Supp. 2d 1107 (D. Minn. 2009).....................................................................................8

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
  No. 06-02069, 2011 WL 31266 (N.D. Cal. Jan. 5, 2011)......................................................13

*In re Wal-Mart Wage & Hour Emp. Prac. Litig.*,
  MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ...........................................7, 8, 16

*In re: Cardizem CD Anti. Litig.*,
  391 F.3d 812 (6th Cir. 2004) ...................................................................................................7

*Int'l Precious Metals Corp. v. Waters*,
  530 U.S. 1223 (U.S. 2000) .....................................................................................................13

*Intel Corp. v. Terabyte Int'l*,
  6 F.3d 614 (9th Cir. 1993) ...................................................................................................11

0038799/001/ 525275v01

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ................................................................12

*Kitigawa, et al. v. Apple, Inc.*,
  No. 5:09-CV-01911-JW ....................................................................2

*Libby, McNeill & Libby v. City Nat'l Bank*,
  592 F.2d 504 (9th Cir. 1978) ............................................................16

*Mangold v. California Public Utilities Com'n*,
  67 F.3d 1470 (9th Cir. 1995) ............................................................14

*Martino v. Deceni,*
  182 Cal. App. 3d 553 (1986) ............................................................11

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ..............................................................12

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..........................................................13

*Steiner v. Thexton,*
  163 Cal. App. 4th 359 (2008) ...........................................................11

*Weber v. Langholz,*
  39 Cal. App. 4th 1578 (1995) ...........................................................11

*Williams v. MGM-Pathe Comm. Co.*,
  129 F.3d 1026 (9th Cir. 1997) ..........................................................13

*Yingling v. eBay, Inc.*,
  No. C09-01733, 2011 WL 2790181 (N.D. Cal. July 5, 2011)................6

*Young v. Polo Retail, LLC*,
  No. C-02-4546-VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)....................13

*Zebrowski v. Hanna*,
  973 F.2d 1001 (1st Cir. 1992)............................................................17

*Zucker v. Occidental Petroleum Corp.*,
  192 F.3d 1323 (9th Cir. 1999) ..........................................................10

**STATUTES AND OTHER AUTHORITIES**

28 U.S.C. 1912.................................................................................17

Federal Rule of Appellate Procedure 4......................................................5

Federal Rule of Appellate Procedure 7.................................................passim

1

Federal Rule of Appellate Procedure 38...................................................................................6, 17

2

Federal Rule of Appellate Procedure 39.......................................................................................15

3

Federal Rule of Civil Procedure 23 ........................................................................................9, 10

4

Federal Rule of Civil Procedure 58 ..............................................................................................5

5

Ninth Circuit Court of Appeals Rule 3-6......................................................................................17

6

Ninth Circuit Court of Appeals Rule 27-11..................................................................................17

7

8

5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg On Class Actions*
    (4th ed. 2009), §15:37.............................................................................................................7

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' MOTION FOR POSTING OF AN APPEAL BOND BY OBJECTOR KERRY ANN SWEENEY

0038799/001/ 525275v01

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION**

3          On March 8, 2012, after years of investigating and engaging in hard-fought litigation by

4  Plaintiffs' counsel, the Court granted final approval of an outstanding settlement that provides real

5  and exceptional benefits to more than 9.6 million purchasers of Apple, Inc. ("Apple") MacBook

6  and MacBook Pro computers and MPM-1 MagSafe adapters (the "Adapter").[2]  This outstanding

7  settlement is now under attack by Sweeney and a group of professional and serial objectors,  who

8  filed notices of appeal from this Court's order granting final approval of the settlement and

9  Plaintiffs' attorneys' fee request ("Final Order") (Dkt. No. 109) and the final Judgment (Dkt. No.

10  119).  *See* Ex. 1 (Sweeney's Notice of Appeal).[3]

11          Plaintiffs  bring  this  motion  for  an  order  requiring  Sweeney  and  her  attorney,

12  serial/professional objector Palmer, to post a Rule 7 appeal bond to ensure appellees actually

13  receive costs awarded in connection with their ill-conceived appeal.  Plaintiffs have filed similar

14  motions for the posting of an appeal bond by objectors Gaudet (Dkt. No. 127), Lee (Dkt. No. 131),

15  Gryphon (Dkt. No. 132), and Funk (Dkt. No. 133).  As discussed further below, the Court held a

16  hearing on May 21, 2012 and issued a subsequent order on May 29, 2012 (Dkt. No. 161) granting

17  Plaintiffs' motions, in part, and ruling that an appeal bond in the amount of $25,000 per objector is

18  sufficient to cover Plaintiffs' costs.  Thus, requiring Sweeney and her counsel to post a bond in the

19  amount of $25,000 would be consistent with the Court's May 29, 2012 order.

20          Indeed, a Rule 7 bond is appropriate here because the three factors courts typically take into

21  account weigh heavily in favor of a bond, namely: (1) Sweeney and her attorney's financial ability

22  to post a bond; (2) the risk that Sweeney and her attorney would not pay the appellee's costs if she

23  loses the appeal; and (3) the merits of the appeal.  Sweeney's appeal should be looked at with great

24  _____

25  [2]      All  capitalized  terms  not  defined  herein  have  the  same  meaning  as  set  forth  in  the
Settlement Agreement and Release filed with this Court on August 8, 2011 (Dkt. No. 70-1).

26  [3]      All "Ex." references are attached to the Declaration of Nick S. Movaghar in Support of
27  Plaintiffs' Motion for Posting of an Appeal Bond by Kerry Ann Sweeney to Secure Payment of
Costs on Appeal (FED. R. APP. P. 7) ("Movaghar Decl.").

28

1  skepticism from this Court because it was filed by her attorney, Palmer, who is a professional

2  objector that has filed numerous meritless appeals in the past such that even *courts* have referred to

3  him as a "serial objector."  Indeed, after fully considering Sweeney's objections, including full and

4  separate briefing by all Parties and oral argument, this Court summarily overruled Sweeney's

5  objections.  *See* Final Order, ¶7 ("All objections to the settlement, to the extent not previously

6  withdrawn, are overruled").  Rule 7 appeal bonds are an integral and important component of the

7  civil justice system and are often necessary, as here, to insure that appellees actually receive costs

8  awarded in connection with an ill-conceived appeal.

9  **II.    BACKGROUND**

10      **A.    Filing Of The Complaint, Investigation And Pre-Settlement Discovery**

11        After receiving numerous complaints from consumers across the country and thoroughly

12  investigating their claims, on or about May 1, 2009, Plaintiffs Kitigawa, Broad, and Reisman filed

13  a nationwide class action on behalf of themselves and over 9.6 million similarly situated consumers

14  who purchased Subject Computers that shipped with the alleged defective Adapter and/or a

15  standalone Adapter, titled *Kitigawa, et al. v. Apple, Inc.*, No. 5:09-CV-01911-JW (the "*Kitigawa*

16  Action") (Dkt. No. 1).  On or about May 15, 2009, Plaintiffs Hackwith and Martin filed a similar

17  complaint in the United States District Court for the Central District of California, titled *Hackwith,*

18  *et al. v. Apple, Inc.*, No. 5:09-CV-034862-JW (the "*Hackwith* Action").  The *Hackwith* Action was

19  transferred to this Court and was consolidated with the *Kitagawa* Action on November 16, 2009

20  (collectively "the Actions") (Dkt. No. 43).  A consolidated complaint was filed in the Actions on

21  December 4, 2009 (the "Complaint") (Dkt. No. 44).

22        Plaintiffs allege that the Adapters spark, fray, overheat, catch on fire or otherwise

23  prematurely fail.  Complaint, ¶3.  Plaintiffs further allege that Apple is, and was, aware of this

24  Defect, but failed to disclose it or warn Plaintiffs and the class of the Defect.  The Complaint seeks

25  damages, restitution, disgorgement and declaratory and injunctive relief as well as attorneys' fees,

26  costs, and expenses.  From the outset, Apple denied liability and disputed Plaintiffs' legal

27  arguments and factual and expert allegations.  Apple hired a well-respected international law firm,

28  Morrison & Foerster LLP, to represent it in this lawsuit.  Apple answered the Complaint on

1    February 5, 2010, largely denying Plaintiffs' allegations and contesting their legal theories.  (Dkt.

2    No. 51).

3           Plaintiffs served Apple with document requests, interrogatories, requests for admission, and

4    deposition notices in November 2008. Movaghar Decl., ¶9.   Apple served responses (and

5    supplemental responses) in February and March 2010, and produced over 80,000 pages of

6    information about, among other things, the design of the Adapter, its testing, sales data, failures

7    rates, and consumer complaints – all of which Plaintiffs' counsel thoroughly reviewed.  *Id.*

8    Plaintiffs retained two independent computer engineering experts, who inspected the Adapters and

9    provided their opinions on the design of the Adapters.  *Id.*, ¶10.   Both experts independently

10   developed similar theories regarding the failings of "strain relief" of the Adapters.  *Id.*

11           **B.    Settlement, Preliminary Approval, And Motion For Attorneys' Fees**

12           After the exchange of extensive discovery, expert reports, and many meet and confers about

13   discovery and experts, the Parties began mediation on August 31, 2010 with Honorable Fern Smith

14   (Ret.).  *Id.*, ¶11.  The Parties reached a settlement in principle at the mediation and continued to

15   work out the settlement details post-mediation.  The Parties agreed to a second mediation before

16   Judge Smith on November 11, 2010. *Id.*, ¶12.  The Parties then worked out the details of the notice

17   program and settlement agreement for an additional month, with a final term sheet signed on

18   December 13, 2010.  Movaghar Decl., ¶13.  The Parties did not discuss attorneys' fees until all

19   material terms of the settlement were agreed upon.  *Id.*  On March 30, 2011, the Parties notified the

20   Court of the Parties' settlement negotiations and requested a hearing date for Plaintiffs' motion for

21   preliminary approval (Dkt. No. 65).   The Parties finalized and signed the settlement agreement in

22   July 2011.

23           The Court held a preliminary approval hearing on September 12, 2011, and issued an order

24   granting preliminary approval of the class settlement on September 27, 2011 (Dkt. No. 82).  Direct

25   notice was provided to approximately 7,441,930 Settlement Class Members.  Carameros Decl.,

26

27

28

PLTFS' MOTION FOR POSTING OF AN APPEAL BOND BY OBJECTOR KERRY ANN SWEENEY

0038799/001/ 525275v01

¶¶10-13.[4]  Summary notice was also published in the November 14, 2011 edition of *USA Today*, in the December 2011 issue of *Macworld*, and the December 2011 issue of *Wired* magazine.  *See* Twiggs Decl., ¶¶2-4.[5]  In addition, the claims administrator established a website (www.adaptersettlement.com) where the class notice and the claims package were posted. Carameros Decl., ¶8.  The class notice and claims package were mailed at Apple's expense to any settlement class member who called a toll-free telephone number that was established at Apple's expense.  *Id.*, ¶7.

On December 19, 2011, Plaintiffs' filed their motion for attorneys' fees, reimbursement of expenses and incentive awards (Dkt. No. 83).  Eleven objectors filed and served objections to the proposed settlement and/or Plaintiffs' request for attorneys' fees on or before the deadline of January 6, 2012.  Movaghar Decl., ¶16.

On February 24, 2012, the Parties caused supplemental notice to be sent to 230,298 Settlement Class Members who purchased a subject Adapter in 2010 informing them that the end date of the extended warranty program has been extended to July 31, 2013.  *See* Carameros Decl. II, ¶¶3-4.[6]  The purpose of extending the warranty program to July 31, 2013 (versus the previous end date of December 31, 2012), was to ensure that all Class Members received a minimum of three years in which to replace their Adapter if it fails.  Movaghar Decl., ¶17.

### C.    Final Approval

On February 27, 2012, the Court held a final fairness hearing to consider Plaintiffs' motion for final approval of the class settlement and Plaintiffs' motion for attorneys' fees, reimbursement of expenses and incentive awards (Dkt. No. 104).  Sweeney did not make an appearance at the fairness hearing.  Movaghar Decl., ¶5.

---

[4]    "Carameros Decl." refers to the Declaration of Jonathon D. Carameros Re: Notice Procedures (Dkt. No. 96).

[5]    "Twiggs Decl." refers to the Declaration of Sissie Twiggs in Support of Final Settlement Approval (Dkt. No. 94).

[6]    "Carameros Decl. II" refers to the Declaration of Jonathan D. Carameros Re: Notice Procedures (Dkt. No. 102).

On March 8, 2012, the Court issued an Order approving the class settlement and awarding Plaintiffs attorneys' fees, reimbursement of expenses and incentive awards – the Final Order.  On April 2, 2012, the Court entered a Judgment pursuant to Fed. R. Civ. P. 58 ("Judgment") (Dkt. No. 110).

**D.    The Court's Order Requiring That Each Objector Post An Appeal Bond**

On March 23, 2012, objector Dale Funk filed a notice of appeal from the Court's Final Order (*see* Dkt. No. 109); on April 3, 2012, objector Robert Gaudet, Jr. filed a notice of appeal from the Court's Final Order (*see* Dkt. No. 112); on April 6, 2012, objector Marie Gryphon filed a notice of appeal from the Court's Final Order (*see* Dkt. No. 119); and on April 6, 2012, objector Jeremy Lee filed a notice of appeal from the Court's Final Order (*see* Dkt. No. 125).  Plaintiffs filed motions requesting that each of the objectors be ordered to post Rule 7 bonds and further requested expedited discovery as to, among other things, the objectors' financial ability to post bonds.  Dkt. No. 127 (Motion for posting of an appeal bond by Gaudet, Jr.); Dkt. No. 131 (motion for posting of an appeal bond by Jeremy Lee); Dkt. No. 132 (motion for posting of an appeal bond by Gryphon); Dkt. No. 133 (motion for posting of an appeal bond by Funk).  The foregoing motions were all heard on May 21, 2012 and the Court issued its order on the motions on May 29, 2012.  Dkt. No. 161.  The Court ruled that appeal bonds were warranted as to each objector because each of the three pertinent factors weighed in favor of the imposition of appeal bonds.  Dkt. No. 161, at pp. 3-5.  The Court further determined that "a bond of $25,000 per Objector is sufficient to cover Plaintiffs' costs" but because some objectors raised arguments regarding financial hardship, the Court would order "a bond of only $15,000 per Objector," subject to subsequent Court-ordered discovery to determine each objector's ability to post a bond in the amount of $25,000.  Dkt. No. 161, at p. 5.

On May 2, 2012, Sweeney filed a notice of appeal from the Court's Final Order.[7]  *See* Ex. 1.  On May 30, 2012, Plaintiffs transmitted a letter to Sweeney's counsel, professional objector

---

[7]     Pursuant to FRAP 4, a notice of appeal must be filed within 30 days from entry of the order appealed from.  FRAP 4(a)(1)(A).  Plaintiffs served Sweeney Notice of the Final Order by U.S.
(Continued...)

1   Palmer, apprising him of the Court's order requiring each objector to post a bond, and advising that

2   if Sweeney's appeal was not voluntarily dismissed by June 4, 2012, Plaintiffs would file an

3   expedited motion requesting that Sweeney post a similar bond in the amount of $25,000 and sit for

4   an in-person deposition.  *See* Ex. 2.

5        To date, Sweeney has not dismissed her appeal nor has she provided any type of response to

6   the May 30, 2012 letter.   Consequently, Plaintiffs now bring the instant motion for an order

7   requiring Sweeney to post a Rule 7 appeal bond.

8   **III.   ARGUMENT**

9        **A.   Standard For Imposition Of Rule 7 Appeal Bond**

10       Rule 7 provides that "'the district court may require an appellant to file a bond or provide

11  other security in any form and amount necessary to ensure payment of costs on appeal.'" *Azizian v.*

12  *Federated Dept. Stores, Inc.*, 499 F.3d 950, 954-55 (9th Cir. 2007) (citing Rule 7); *Yingling v.*

13  *eBay, Inc.*, No. C09-01733, 2011 WL 2790181, at * 1 (N.D. Cal. July 5, 2011) (same).   The

14  purpose of the rule is to "'protect[ ] ... an appellee against the risk of nonpayment by an

15  unsuccessful appellant.'"   *Fleury v. Richemont North America, Inc.*, No.C-05-4525-EMC, 2008

16  WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008).  "[T]he question of the need for a bond, as well as its

17  amount, are left to the discretion of the trial court." *Id.*  (citing Rule 7, 1979 advisory committee

18  notes).   When considering whether to require an appeal bond, district courts take the following

19  three factors into account: "(1) the appellant's financial ability to post a bond; (2) the risk that the

20  appellant would not pay the appellee's costs if the appeal loses; [and] (3) the merits of the appeal."

21  *Id.*[8]

22

23  _____

    (...Continued)

24  Mail on March 15, 2012.  Because the notice was served by U.S. Mail, three days are added to the
    time period, making April 17, 2012 the expiration date in which to file a notice of appeal from the

25  Final Order.  Thus, because Sweeney did not file a notice of appeal from the Final Order until May
    2, 2012, it is untimely and Plaintiffs intend on filing a motion to dismiss the same, and further

26  reserve all rights relating thereto.

27  [8]    While many courts typically consider a fourth factor, namely, whether the appellant has
    shown any bad faith or vexatious conduct, in *Azizian*, the Ninth Circuit concluded that the district

28  court should not base an appeal bond on this factor because pursuant to Federal Rule of Appellate
    (Continued...)

PLTFS' MOTION FOR POSTING OF AN APPEAL BOND BY OBJECTOR KERRY ANN SWEENEY

0038799/001/ 525275v01

The three factors provide more than a sufficient basis for an appeal bond.  Notwithstanding, Plaintiffs below respectfully request the Court allow for limited expedited discovery in connection with this motion for appeal bond.  Should this Court grant Plaintiffs' request for limited expedited discovery, Plaintiffs respectfully request leave to supplement this motion with the pertinent information obtained through discovery.

**B.     All Factors Weigh In Favor Of Imposing An Appeal Bond**

**1.     Sweeney's Financial Ability To Post A Bond**

Where there is "no indication that [a] plaintiff is financially unable to post bond ... this factor weighs in favor of a bond."  *Fleury*, 2008 WL 4680033, at *7.  Bare assertions of inability to pay are not sufficient to avoid payment of a bond by an objector to a settlement who desires to appeal the settlement and delay relief to the class.  *Fleury*, 2008 WL 4680022 at *7; *In re: Cardizem CD Anti. Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (failure to propose an alternative or provide evidence that the bond was improper resulted in dismissal of appeal).

Plaintiffs are unaware of any inability by Sweeney to post the requested bond.  Lacking evidence of undue hardship, this factor weighs in favor of an appeal bond because "there is no indication that [Sweeney] is financially unable to post bond."  *Fleury*, 2008 WL 4680033, at *7; *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (imposing a bond where "[t]here is no evidence that a bond would pose an undue hardship on the objector.").  Thus, the first *Fleury* factor weighs in favor of an appeal bond.

---

(...Continued)

Procedure 38, an appellee can be awarded damages and single or double costs if the appellate court were to determine that the appeal was frivolous.  499 F.3d at 960 (indicating that Rule 7 is not intended to provide a penalty to address the frivolity of an appeal, which is a decision best left for the courts of appeal).  Nevertheless, bad faith, frivolity and/or vexatious conduct warrants an increased level of skepticism **when reviewing the merits** of an objection submitted by a professional objector.  *See* 5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg On Class Actions* (4th ed. 2009), §15:37. Whether an appellant has shown bad faith or vexatious conduct is also considered with the second factor regarding the risk that the appellant would not pay the appellee's costs if the appeal loses. *See In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).  Thus, for these reasons, Plaintiffs briefly address the objector's bad faith and/or frivolous conduct.

**2.     Risk That Sweeney And Her Attorney Would Not Pay Appellees' Costs**

When the appellants are located in another part of the country, as here[9], class counsel would be required to institute multiple collection proceedings to recover their costs from a recalcitrant obligor.  These circumstances weigh in favor of a Rule 7 appeal bond.  *See In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. July 20, 2010); *Fleury*, 2008 WL 4680033, at *7.  Class counsel would have to travel throughout the country to enforce the Ninth Circuit's order imposing costs.  Indeed, in its order, this Court recognized the objectors residing in different jurisdictions weighed "heavily in favor of requiring a bond … ."  Dkt. No. 161, at p. 4.

The risk that Sweeney would not pay appellees' costs is increased given the objections were filed on her behalf through her attorney, Palmer, who is a professional objector with a history of filing numerous, meritless objections and appeals in response to class action settlements.  As Plaintiffs discussed in their response to the objections to final approval of the settlement (Dkt. No. 97), Palmer is a professional objector, having objected to *numerous* settlements such that he has been repeatedly referred to as a "serial objector."  *Gemelas v. Dannon Co.*, No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010).  He is undeniably an opportunistic professional objector.  These types of lawyers are "remoras," of whom the federal courts have been warned to be wary. *In re UnitedHealth Group, Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107 (D. Minn. 2009) (referring to professional objectors as "remoras"). Given the transparent motive behind this appeal, which has already been considered and rejected by this Court, there is a substantial risk that this professional objector will resist paying any costs imposed by the Ninth Circuit.  *In re Wal-Mart Wage and Hour Employment Practices Litigation*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *1 (D. Nevada March 8, 2010) (where "Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter

---

[9]     According to her written objection, Sweeney currently resides in Madison, Wisconsin.  *See* Dkt. No. 86, at p. 1.  Funk resides in University City, Missouri (Dkt. No. 109); Lee resides in Plano, Texas (Dkt. No. 125); Gryphon resides in Jamaica Plain, Massachusetts (Dkt. No. 85-1); and Gaudet is a "permanent resident of El Paso, Texas." (Dkt. No. 127-3).  None of the Plaintiffs or their counsel are located or reside in Wisconsin, Texas, Missouri or Massachusetts.

1   dismissing said appeals when they and their clients were compensated by the settling class or

2   counsel for the settling the class ... persuades the Court that collecting costs from the four Objectors

3   would be extremely difficult if not unlikely").  Thus, the second *Fleury* factor also weighs heavily

4   in favor of an appeal bond.

5                          **3.      Merits Of The Appeal**

6          Finally, the Court must consider the merits of Sweeney's appeal.  *Fleury*, 2008 WL

7   4680033, at * 8.  Under Fed. R. Civ. P. 23(e), a district court has broad discretion to determine

8   whether a class action settlement is fair, adequate, and reasonable, based on the law, facts and

9   circumstances of the case.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

10  Sweeney raises the following two issues: (1) the billing summaries that were provided in

11  connection with the attorneys' fee application were insufficient to support the application of a

12  lodestar multiplier; and (2) there are procedures included in the claims and redemption process

13  which are confusing and unnecessary.  *See* Dkt. No. 86.

14                    **a.      This Appeal Should Be Reviewed With Great Skepticism Because**

15                          **It Was Filed By A Serial Objector**

16         As noted, Palmer is a "serial objector" with a long history of filing meritless appeals in

17  response to class action settlements.  *Gemelas v. Dannon Co.*, No. 1:08 CV 236, 2010 U.S. Dist.

18  LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010).  Indeed, Plaintiffs previously identified *numerous*

19  settlements to which Palmer objected, which includes prior objections that have been considered

20  and summarily overruled by this Court.  *See* Dkt. No. 97, at pp. 19-21.  Palmer has a distinct

21  pattern of making meritless objections, followed by a notice of appeal, only to subsequently

22  withdraw the notice of appeal, which needlessly delays relief to a settlement class for a period of

23  months.  Dkt. No. 97, at p. 20.  Palmer is engaging in this pattern yet again with respect to this

24  settlement, and it should not be well taken by the Court, particularly given he is delaying the

25  benefits of an exceptional settlement to the settlement class by filing a meritless appeal based on

26  grounds already considered and overruled by this Court.  *See* Final Order, ¶7.  Consequently, this

27  appeal should be summarily rejected or, at a minimum, viewed with great skepticism given

28  Palmer's long history of being a serial objector.

**b.  Sweeney Does Not Appear To Be A Member Of The Class And Thus Lacks Standing To Object To The Settlement**

Sweeney appears not to be a member of the class.  See FED. R. CIV. P. 23(e)(5) (providing that only class members can object to a settlement).  The only documentation she has submitted is the serial number of her Apple computer, "w8045rx9agu." Dkt. No. 86, at p. 1. This is a serial number for a MacBook model that was built in November 2010, which did *not* include the MagSafe Adapter "T" Adapter that is the subject of this case.  Thus, the Court can summarily dismiss Palmer's objection, as so many courts have before.

**c.  Sweeney Does *Not* Have Standing To Contest The Attorneys' Fee Award**

As noted, Sweeney argues Plaintiffs did not provide adequate evidence to substantiate the attorneys' fee award.  Specifically, Sweeney claims that "[o]nce a settlement is reached … Class Counsel's interests are inherently conflicted with the Class as they become another claimant to the very fund that they have created for their clients." Dkt. No. 86, at p. 3.  Assuming, *arguendo*, Sweeney is a member of the class, she does not have standing to contest the attorneys' fee award. Foremost, this is *not* a common fund case from which attorneys' fees and the benefits to the class are drawn from the same pool of funds.  There is no identifiable fund from which each class member gets a pro rata share.  Rather, this settlement provides for a claims-made class recovery from which the fee award was negotiated *separately* and *independent*.  Sweeney has neither claimed nor sustained any injury from the fee award.  Thus, as a threshold matter, Sweeney does not have Article III standing to challenge the fee award.[10]  Sweeney offered *no* proof of collusion between the Parties regarding the terms of the settlement or Plaintiffs' request for attorneys' fees. On the other hand, Plaintiffs' counsel submitted substantial evidence, including their own sworn

---

[10]     *See Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999) ("Class actions commonly produce a common fund from which attorneys' fees are drawn, with the residue to be paid to the class.  The particularized, traceable, remediable injury necessary for an objector's standing arises from his claim on his share of whatever is left in the pot after attorneys' fees are withdrawn").

1   declarations and that of the mediator, Judge Smith (Ret.), to corroborate Plaintiffs' assertion that

2   the settlement was negotiated at arm's-length and without collusion.  "In the class action context,

3   simply being a member of the class does not automatically confer standing to challenge a fee award

4   to class counsel – the objecting class member must be 'aggrieved' by the fee award."  *Glasser v.*

5   *Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011).  Because Sweeney lacks standing to

6   object to the fee award, her appeal regarding the same lacks merit.

**d.     Plaintiffs' Counsel Provided More Than Adequate Information**

**And Evidence To Justify The Attorneys' Fee Award**

9         Moreover, even if Sweeney has standing to object to the fee award, which she does not, her

10  objections that the fee request was excessive nevertheless lack merit.  Sweeney claims that there is

11  inadequate information as to how much time or money counsel spent on litigation so far and overall

12  value of the benefits to the class.  Dkt. No. 86, at p. 4.  However, as set forth in Plaintiffs' motion

13  for attorneys' fees (Dkt. No. 83), and again in their response to objections (Dkt. No. 97), Plaintiffs'

14  counsel provided detailed information regarding the time they spent on this action (*see* Dkt. No. 83,

15  Exs A-E -- sworn declarations by Plaintiffs' counsel, attesting to their hourly rates and total hours

16  devoted to the case, their experience, and describing their efforts to prosecute this case) as well as a

17  discussion of the value of the benefits that were conferred to the class.  Dkt. No. 83, at p. 7.  The law

18  is clear that this is more than enough information to justify an attorneys' fee award.  *See Martino v.*

19  *Deceni,*182 Cal. App. 3d 553, 559 (1986) (finding testimony of attorney as to total hours worked

20  sufficient without time records): *Weber v. Langholz,* 39 Cal. App. 4th 1578, 1587 (1995) ("The trial

21  court could make its own evaluation of the reasonable worth of the work done in light of the nature

22  of the case, and of the credibility of counsel's declarations unsubstantiated by time records and

23  billing statements."); *Steiner v. Thexton,* 163 Cal. App. 4th 359, 380 (2008) (attorneys' declarations

24  were sufficient).

25        The cases to which Sweeney cites for her contention that more information is needed are

26  factually distinguishable and have no application to this case.  For example, in *Intel Corp. v.*

27  *Terabyte Int'l,* 6 F.3d 614 (9th Cir. 1993), the district court had evidence regarding attorneys' fees

28  but "made no findings" and "merely awarded the fees without elaboration."  *Id.* at 623.  To the

1   contrary, in this case, as the Court noted, attorneys' fees "were carefully evaluated by the Court

2   before granting final settlement approval."  Dkt. No. 161, at p. 4; *see also* Dkt No. 107.   Indeed

3   Sweeney makes no allegations, nor can she, that the Court failed to make proper findings regarding

4   attorneys' fees.   As such, her contentions regarding the attorneys' fees filed by serial objector

5   Palmer should be rejected.

6        Sweeney next challenges the multiplier the Court used in approving the attorneys' fees, but

7   acknowledges multipliers are appropriate in certain circumstances.   Dkt. No. 86, at pp. 5-6.

8   Plaintiffs sought fees pursuant to the lodestar method (as opposed to the benchmark approach used

9   in common fund cases), and clearly identified their lodestar figure and discussed degree of success

10   in the litigation (particularly considering Apple's formidable defense and the risk of Apple

11   prevailing at trial).   The circumstances of this case more than justify the modest 1.5 multiplier

12   (based on billings through mid-December 2011), which continues to grow smaller, and will

13   undoubtedly disappear now that Sweeney and serial objector Palmer have filed a frivolous appeal

14   on grounds already considered and rejected by this Court.   The reasonableness of the multiplier is

15   substantiated by the *Kerr*[11] factors, and demonstrates that it is not a disproportionate distribution of

16   the settlement.   The cash relief prong of the settlement, the extended warranty program and

17   extensive notice program, confer a substantial benefit on the public.  *See Morales v. City of San*

18   *Rafael*, 96 F.3d 359, 365 (9th Cir. 1996) ("in determining a reasonable fee award on remand, the

19   district court should consider not only the monetary results but also the significant nonmonetary

20   results [the plaintiff] achieved for himself and other members of society").   It is clear that Plaintiffs

21   not only recouped a substantial cash amount to Class Members who purchased replacement

22   Adapters, but they have effected a change in Apple's policy, with tens of thousands of Class

23   Members obtaining replacement adapters.   Taking into account the overall success of the suit, the

24   level of benefit achieved appropriately substantiates the modest fee request approved by this Court.

25

26

27   [11]    *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying twelve factors

28   relevant to a determination of reasonable attorneys' fees).

0038799/001/ 525275v01

Assuming this were a common fund case, which it is not, "[t]he Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against *every class members' share, not just the claiming members*." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980)).  The law of the Ninth Circuit requires that a fee award be based on the entire benefits available to the Class and not on the benefits actually claimed by class members.  *Williams v. MGM-Pathe Comm. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *see also Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1225 (U.S. 2000) (noting that *Williams* is the law in the Ninth Circuit).[12]

Sweeney ignores the facts of this case and the settlement relief provided, among them:

- that the risk counsel undertook here was very significant, particularly considering the fact that the case was against a corporation the size and tenacity of Apple and that Plaintiffs' counsel were required to commit a significant amount of time, personnel and expenses to this litigation on a contingency basis with absolutely no guarantee of being compensated in the end;

- that this case was not a garden-variety consumer class action as it involved highly technical factual issues relating to the alleged Defect which required significant preparation and a battle of the experts;

- it took a great deal of skill and experience by well-respected leaders in the field of consumer class action litigation to achieve the settlement for the benefit of the class;

- that the immediacy and certainty of recovery in this case is a benefit in itself to Settlement Class Members, without which the Class Members would unnecessarily continue to incur economic loss to replace and repair the

---

[12]     *See also Young v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *5 (N.D. Cal. Mar. 28, 2007) (concluding that *Williams* is the law in the Ninth Circuit); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011) (rejecting objector's argument that the Court should base the fee award on the amount actually claimed by class members (citing *Williams*)); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 2011 WL 31266, at *5 n.5 (N.D. Cal. Jan. 5, 2011) (finding that "attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants."); *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844-EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009) ("The appropriate measure of the fee amount is against the potential amount available to the class, not a lesser amount reflecting the amount actually claimed by the members."); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068-MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (same); *Browning v. YahooA Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *19  (N.D. Cal. Nov. 16, 2007) (same).

Adapters, continue to have loss of use of their product because the Adapters are the only power source, the need for a replacement adapter diminishes over time because the product has been replaced with another, and the Adapters spark, fray, overheat and prematurely fail and need to be replaced immediately; and most importantly,

- that the settlement provides extraordinary benefits to Class Members in the way of cash refunds and an extended warranty program (which is now 3 to 12 times longer than the warranty Apple originally gave them) – practically "a trial win."

The Ninth Circuit holds that where, as here, Plaintiffs succeeded on both federal and state statutory grounds (which both provide for fee awards to prevailing parties), the trial court awards fees based on the state law. *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Here, the modest enhancement awarded by this Court is clearly permitted and more than warranted. *Id.*; *Hofstetter v. Chase Home Fin., LLC*, No. C-10-01313-WHA, 2011 U.S. Dist. LEXIS 131193, at *4 (N.D. Cal. Nov. 14, 2011) (awarding multiplier of 2); *In re Charles Schwab Corp. Secs. Litig.*,No. C-08-1510-WHA, 2011 U.S. Dist. LEXIS 44547, at *28-*29 (N.D. Cal. April 19, 2011) (awarding multiplier of 2.68).[13]  As set forth in Plaintiffs motion for attorneys' fees (Dkt. No. 83), and again in their response to objections (Dkt. No. 97), even using a common-fund analysis to cross-check the fee award only further confirms the reasonableness of the award.  As set forth therein, the value of the extended warranty program alone to some 9.6 million Class Members is substantial and dwarfs counsels' fee award.  *Id.*  By comparison, an extended warranty from Apple (a two-year "AppleCare" warranty) for a product in this price range ($79) would cost consumers $39, making this prong of the settlement alone for 9.6 million consumers (all of whom receive this benefit) valued at $374,400,000.

Put simply, there is no credible appealable issue concerning the award of attorneys' fees in this case, as the award comports with well established federal and state law.

---

[13]     Sweeney offers no factual or legal basis for arguing that Plaintiffs' counsel's rates are excessive.  To the contrary, as set forth in full in Plaintiffs' request for attorneys' fees (Dkt. No. 83), their rates are well within range of comparable attorneys in California.

e.   **The Court Should Reject Sweeney's Baseless Claim That The Settlement Is Confusing**

Serial objector Palmer and Sweeney feign ignorance and claim the settlement is confusing as to the meaning of "sign of strain" and the warranty period.  Dkt. No. 86, at pp. 6-7.  As to the strain relief, Sweeney and Palmer choose to ignore the expansive and unambiguous definition of strain relief damage, which is explicitly provided in the class notice and on Apple's website, among other places.  *See* Dkt. No. 70-2 (defining "Strain Relief Damage" as "fraying, melting, straining, sparking, weakening, discoloration, bubbling, overheating and/or separation of the Adapter's strain reliefs").  As to the warranty period, again, the dates for making reimbursement claims and for obtaining replacement adapters are set out in the notice.  Consequently, serial objector Palmer's unwarranted claims of confusion should be rejected by the Court.

Serial objector Palmer and Sweeney next argue the claim form contains unnecessary and unreasonable hurdles for completing a claim.  Dkt. No. 86, at pp. 6-7.  To the contrary, the claims process requires completion of a simple, two-page claim form that requests contact information, identifying information about the computer and adapter purchased, and a signature.  Mot. For Prel. Approval, Ex. D. An actual receipt is ***not*** necessary to prove a purchase: class members may submit any proof of payment to Apple (a canceled check, bank or credit card statement) of $79 or greater, even if it does not identify the product purchased.  Moreover, if the class member cannot locate a receipt or serial number, Apple will provide one on request; the class member can provide their name, address and phone number online.

C.   **Standard for the Amount of a Rule 7 Appeal Bond**

Rule 7 provides that the court may require a bond in "any form and amount necessary to ensure payment of ***costs*** on appeal."  The Ninth Circuit has held that the "costs" referred to in Rule 7 include the following costs identified in FRAP 39(e):

(1)   the preparation and transmission of the record;

(2)   the reporter's transcript, if needed to determine the appeal;

(3)   premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

1     (4)  the fee for filing the notice of appeal.

2 FRAP 39(e).  In addition, the Ninth Circuit has held that "costs other than those identified in FRAP

3 39 can qualify as 'costs' for purposes of Rule 7 if they are so defined by some positive law, such as

4 a fee-shifting statute."  *Fleury*, 2008 WL 4680033, at * 8 (citing *Azizian*, 499 F.3d at 958) ("[T]he

5 costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for

6 purposes of Rule 7].").  For example, "the term 'costs on appeal' in Rule 7 includes all expenses

7 defined as 'costs' by an applicable fee-shifting statute, ***including attorneys' fees***," (*id*.), and

8 additional administrative costs the class will incur as a result of the appeal.  *See In re Broadcom*

9 *Corp. Sec. Litig.*, No. SACV-01-275-DT(MLGx), 2005 U.S. Dist. LEXIS 45656, *11-*12 (C.D.

10 Cal. Dec. 5, 2005) (including additional costs of administration as part of a Rule 7 bond).

11   Rule 7 does not expressly require Plaintiffs to make any showing of costs for a bond

12 motion.  *See* Rule 7; *see also In re Ins. Brokerage Antitrust Litig.*, No. 04-5184 (GEB), 2007 WL

13 1963063, at *3 (D.N.J. July 02, 2007) (finding that Rule 7 does not require any "showing of costs

14 for a bond motion.").  However, courts routinely apply $25,000 as a ***minimum***, and often

15 substantially more.[14]

16   Here, in addition to the printing and administrative costs associated with the expected

17 appeals, it is likely that Plaintiffs will face different issues from different appellants, which may

18 increase the expenses. For example, with respect to Sweeney, Plaintiffs anticipate the need for

---

19

20 [14]  *See In re Wal-Mart*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. March 8, 2010) (ordering that ***each*** or the four objectors post a separate ***$500,000*** Rule 7 bond);

21 *Gemelas v. Dannon Co., Inc.*, No. 1:08 CV 236, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010) (***$275,000*** appeal bond imposed); *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DR

22 (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9-*11 (C.D. Cal. Dec. 5, 2005) (ordering objector to post appeal bond in excess of ***$1.2 million*** in response to appeal from final order approving class

23 action settlement); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *4, *8-*9 (D. Mass. Aug. 22, 2006) (ordering objector to post Rule 7 bond in the amount

24 of ***$645,111.60***); *In re Initial Pub. Offering*, No. 21 MC 92(SAS), 2010 WL 2884794, at *5 (S.D.N.Y. July 20, 2010) (assessing ***$25,000*** on settlement objectors for cost aspects of Rule 7

25 bond); *In re Insurance Brokerage*, No. 04-5184 (GEB), 2007 WL 1963063, at *3-*5 (D.N.J. July 2, 2007) (imposing a "reasonable" ***$25,000*** appeal bond for objectors to class settlement based on line

26 of precedent); *In re Compact Disc Minimum Advertised Price Anti. Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (***$35,000*** appeal bond); *In re Currency Conversion Fee*

27 *Anti. Litig.*,No. 01-01409, 2010 WL1253741, at *3 (S.D.N.Y. Mar. 5, 2010) (***$50,000*** appeal bond).

28

1   filing various motions with the appellate court, including moving to dismiss the appeal (*see* 9th Cir.

2   R. 27-11) and/or moving for summary affirmance (9th Cir. R. 3-6), and moving to impose

3   monetary sanctions against Sweeney, if and when her appeal is ultimately found to be frivolous.

4   *See* FRAP 38; 28 U.S.C. 1912; *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 514 (9th

5   Cir. 1978).  Such motions involve a substantial amount of time and expense, including filing fees

6   and the printing and copying of briefs and other submissions.  Plaintiffs also anticipate that they

7   will incur additional costs related to conducting discovery in relation to the appeal, not to mention

8   incremental administration costs the parties may incur as a result of Sweeney's appeal.

9   Accordingly, for this component of costs, Plaintiffs anticipate expending about $25,000 (or more),

10  plus interest.  Movaghar Decl., ¶19.[15]

11      **D.      The Court Also Has Inherent Power To Set A Bond**

12          This Court may also order Sweeney to post a bond pursuant to the control necessarily

13  vested in courts to manage their own affairs to achieve the orderly and expeditious disposition of

14  cases.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) (finding that "the inherent power of a

15  court can be invoked even if procedural rules exist which sanction the same conduct."); *In re Mroz*,

16  65 F.3d 1567, 1575 (11th Cir. 1995).  This includes the power to require security for costs,

17  including the posting of a bond.  *Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516, 517 (5th Cir. 1986)

18  (finding that a "district court has inherent power to require security for costs when warranted by the

19  circumstances of the case."); *Zebrowski v. Hanna*, 973 F.2d 1001, 1004 (1st Cir. 1992) (district

20  court has inherent power to regulate litigation before it, upholding requirement for posting

21  security).  The question of security for costs is procedural in nature and the trial court has discretion

22  in administrating procedural matters.  *Aggarwal v. Ponce School of Med.*, 745 F.2d 723, 726 (1st

23  Cir. 1984).

24          Sweeney's appeal lacks merit and will only hold up an outstanding settlement offering

25  relief to millions of consumers.  Thus, irrespective of Rule 7, this Court has the power to require

26  _____

27  [15]     Because the Court has discretion to increase the bond amount at any time (*see, e.g.*, *In re Diet Drugs*, MDL No. 1203, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 6, 2001)), Plaintiffs respectfully reserve the right to seek an increase in this amount, as needed.

28

1  Sweeney to post a bond in an amount that the Court deems to be just.  Plaintiffs respectfully

2  request that the Court do just that.

3  **E.    In Addition, Expedited Discovery Is Necessary To Determine Whether Sweeney**

4  **Is A Class Member And Her Ability To Pay Costs When She Loses Her Appeal**

5  Plaintiffs are immediately prepared to conduct formal expedited discovery, including

6  depositions and written discovery to permit Plaintiffs' counsel to determine whether Sweeney has

7  standing as a class member to object to the settlement and, if so, to determine her ability to pay

8  Plaintiffs' costs when she loses her appeal.

9  The requested expedited discovery will include a handful of requests for production of

10 documents and things and Sweeney's deposition.  Movaghar Decl., ¶20.  Plaintiffs' counsel are

11 agreeable to making the deposition convenient for Sweeney, including taking the deposition in her

12 hometown.  *Id.*  This expedited discovery would be limited to permit Plaintiffs to properly and

13 thoroughly examine Sweeney's ability to post the requested bond, pay the appellees' costs when

14 she loses her appeal and further demonstrate that her appeal lacks merit, including whether

15 Sweeney has standing.

16 **IV.    CONCLUSION**

17 The Court has ample legal and inherent authority to require Sweeney and serial objector

18 Palmer to post a Rule 7 bond.  The class settlement and attorneys' fee award that this Court has

19 approved as being fair, adequate and reasonable, is at the doorstep of being maliciously attacked

20 and delayed by a group of objectors, including Sweeney, and their meritless appeals, at substantial

21 expense to the class.  Thus, Plaintiffs respectfully request that the Court enter an order requiring the

22 immediate posting of an appeal bond in the amount of $25,000 and an order granting Plaintiffs

23 leave to conduct the limited discovery requested herein.

24 Respectfully submitted,

25 Dated: June 13, 2012                    LINER GRODE STEIN YANKELEVITZ
                                          SUNSHINE REGENSTREIF & TAYLOR, LLP
26                                        ANGELA C. AGRUSA, ESQ. (SBN: 131337)
                                          NICK S. MOVAGHAR, ESQ. (SBN: 232777)
27
                                          By:            s/Nick S. Movaghar
28                                                    NICK S. MOVAGHAR

1100 Glendon Avenue, 14th Floor
Los Angeles, CA  90024
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
aagrusa@linerlaw.com
nmovaghar@linerlaw.com

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

MCNICHOLAS & MCNICHOLAS LLP
PATRICK MCNICHOLAS (125868)
10866 Wilshire Boulevard Suite 1400
Los Angeles, CA 90024-4338
Telephone: (310) 474-1582
Facsimile:  (310) 475-7871
pmc@mcnicholaslaw.com
cbs@mcnicholaslaw.com

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which, will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  I also certify that the foregoing document was sent to the non-CM/ECF participants indicated on the Manual Notice List (as listed below).

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 13, 2012.

s/Nick S. Movaghar
NICK S. MOVAGHAR

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR, LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA  90024
Telephone:  (310) 500-3500
Facsimile: (310) 500-3501

E-mail:   nmovaghar@linerlaw.com

Manual Notice List:

Dale Funk (via E-mail)
7303 Delmar Blvd.
University City, MO 63130
funkdbc@gmail.com

Daniel Greenberg (via E-mail)
Greenberg Legal Services
55 Fontenay Circle
Little Rock, AR 72223
Dngrnbrg@gmail.com

Robert Gaudet, Jr. (via E-mail)
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Robert@rjgaudet.com