# Exhibit A

1   PENELOPE A. PREOVOLOS (CA SBN 87607)
    (PPreovolos@mofo.com)
2   ANDREW D. MUHLBACH (CA SBN 175694)
    (AMuhlbach@mofo.com)
3   ALEXEI KLESTOFF (CA SBN 224016)
    (AKlestoff@mofo.com)
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   *Attorneys for Defendant APPLE INC.*

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12                                          Case No. C 09-01911 JW

13  IN RE MAGSAFE APPLE POWER ADAPTER        **DEFENDANT APPLE INC.'S**
    LITIGATION                               **NOTICE OF CLASS SETTLEMENT**
14                                           **PURSUANT TO 28 U.S.C. § 1715**

15                                           Judge:  Hon. James Ware

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendant Apple Inc. ("Apple"), by its undersigned attorneys, hereby gives notice

2  pursuant to 28 U.S.C. § 1715 of the proposed settlement of the above-captioned action, *In re*

3  *Magsafe Apple Power Adapter Litigation*.  As required by 28 U.S.C. § 1715, Apple states as

4  follows:

5    1.    On or about May 1, 2009, Plaintiffs Kitigawa, Broad, and Reisman filed a class

6  action complaint against Apple in the Northern District of California, titled *Kitigawa et al. v.*

7  *Apple Computer, Inc.*, Case No. 09-01911 ("*Kitigawa* Action").  A First Amended Complaint in

8  the *Kitigawa* Action was filed on May 21, 2009.  On or about May 15, 2009, Plaintiffs Hackwith

9  and Martin filed a class action complaint against Apple in the Central District of California, titled

10 *Hackwith et al. v. Apple Computer, Inc.*, Case No. 09-3482 ("Hackwith Action").  The *Hackwith*

11 Action was transferred to this Court and was consolidated with the *Kitagawa* Action on

12 November 16, 2009 (collectively "the Actions").  A Consolidated Class Action Complaint was

13 filed in the Actions on December 4, 2009.  A First Amended Consolidated Class Action

14 Complaint was filed in the Actions on January 19, 2010 (the "Complaint").  True and accurate

15 copies of the *Kitagawa* Complaint, the *Kitigawa* First Amended Complaint, the *Hackwith*

16 Complaint, the Consolidated Class Action Complaint, and the First Amended Consolidated Class

17 Action Complaint, and all materials filed therewith are attached hereto as Exhibit 1.

18   2.    The parties agreed to settle this matter by executing the Stipulation of Settlement

19 that is attached hereto as Exhibit 2.  Plaintiffs filed the Stipulation of Settlement along with a

20 Notion of Motion and Motion for Preliminary Approval of Class Action Settlement with the

21 Honorable James Ware.  At 9:00 a.m. on September 12, in Courtroom 8 of the United States

22 District Court for the Northern District of California, San Francisco Division, 450 Golden Gate

23 Avenue, San Francisco, California 94102, the Court will hold a hearing on Plaintiff's Motion for

24 Preliminary Approval of Class Action Settlement.  The preliminary approval hearing is the only

25 judicial hearing presently scheduled in this action.

26   3.    After preliminary approval of the settlement, Apple shall disseminate notice to the

27 settlement class as detailed in Section IV and Exhibits A through C of the Stipulation of

28 Settlement (Exhibit 2 hereto).  Apple shall e-mail a copy of the Summary Notice of Settlement

("Summary Notice") substantially in the form attached as Exhibit B to the Stipulation of Settlement (Exhibit 2 hereto) to all settlement class members for whom Apple has an e-mail address.  Apple shall mail a Settlement Postcard substantially in the form attached as Exhibit C to the Stipulation of Settlement (Exhibit 2 hereto) by U.S. Mail to settlement class members for whom e-mailed notice is returned undeliverable.  The Summary Notice will also be published in nationwide publications — *USA Today, Wired,* and *Macworld*.  In addition, the Class Notice and Claim Form substantially in the form attached as Exhibits A and D to the Stipulation of Settlement (Exhibit 2 hereto) will be made available via the Internet on a Settlement Website.  Both the Summary Notice and the Settlement Postcard will provide recipients with the website address discussing the settlement, a toll-free number to request copies of the Class Notice and Claim Form, and the address of class counsel to whom class members may write for further information.  Each form of Notice described in this paragraph informs class members of their rights to request exclusion from the class action.

4.      No settlement or agreement other than that reflected in Exhibit 2 hereto was contemporaneously made between class counsel and counsel for Apple.

5.      At this time, no final judgment has been reached nor has there been any notice of dismissal.  The parties have submitted to the Court a proposed Final Judgment and Order Approving Settlement and Dismissing Claims as Exhibit F to the Stipulation of Settlement (Exhibit 2 hereto).

6.      Due to the number of class members, it is not feasible to provide the names of class members who reside in each state.  The parties estimate that over 10 million computers and adapters subject to the Stipulation of Settlement were sold.  A reasonable estimate of the number of class members residing in each state and the proportionate share of the claims of such class members is provided as follows:

| State | Estimated Number of Class Members | Estimated Proportionate Share of Claims |
|-------|-----------------------------------|-----------------------------------------|
| AK | 63000 | 0.63% |
| AL | 78000 | 0.78% |
| AR | 40000 | 0.40% |
| AZ | 177000 | 1.77% |

| State | Estimated Number of Class Members | Estimated Proportionate Share of Claims |
|---|---|---|
| CA | 1958000 | 19.58% |
| CO | 220000 | 2.20% |
| CT | 166000 | 1.66% |
| DC | 63000 | 0.63% |
| DE | 25000 | 0.25% |
| FL | 568000 | 5.68% |
| GA | 236000 | 2.36% |
| HI | 85000 | 0.85% |
| IA | 62000 | 0.62% |
| ID | 36000 | 0.36% |
| IL | 391000 | 3.91% |
| IN | 119000 | 1.19% |
| KS | 67000 | 0.67% |
| KY | 63000 | 0.63% |
| LA | 81000 | 0.81% |
| MA | 371000 | 3.71% |
| MD | 204000 | 2.04% |
| ME | 45000 | 0.45% |
| MI | 231000 | 2.31% |
| MN | 179000 | 1.79% |
| MO | 114000 | 1.14% |
| MS | 28000 | 0.28% |
| MT | 23000 | 0.23% |
| NC | 230000 | 2.30% |
| ND | 11000 | 0.11% |
| NE | 41000 | 0.41% |
| NH | 52000 | 0.52% |
| NJ | 369000 | 3.69% |
| NM | 52000 | 0.52% |
| NV | 74000 | 0.74% |
| NY | 976000 | 9.76% |
| OH | 236000 | 2.36% |
| OK | 70000 | 0.70% |
| OR | 164000 | 1.64% |
| PA | 334000 | 3.34% |
| RI | 42000 | 0.42% |
| SC | 76000 | 0.76% |
| SD | 13000 | 0.13% |
| TN | 160000 | 1.60% |
| TX | 576000 | 5.76% |
| UT | 105000 | 1.05% |
| VA | 274000 | 2.74% |
| VT | 33000 | 0.33% |
| WA | 264000 | 2.64% |
| WI | 128000 | 1.28% |
| WV | 18000 | 0.18% |
| WY | 13000 | 0.13% |

7.     At this time, there has been no judicial opinion relating to the materials described in subparagraphs (3) through (6) of 28 U.S.C. § 1715(b).

8.     The foregoing information is provided based on the data currently available to Apple and on the status of the proceedings at the time of the submission of this notice.  Apple reserves its right to provide updated information concerning the proposed settlement or upon request.


Dated:  September 9, 2011                    PENELOPE A. PREOVOLOS
                                             ANDREW D. MUHLBACH
                                             ALEXEI KLESTOFF
                                             MORRISON & FOERSTER LLP


                                      By:    /s/ Penelope A. Preovolos
                                             Penelope A. Preovolos

                                             *Attorneys for Defendant*
                                             APPLE INC.

PENELOPE A. PREOVOLOS (CA SBN 87607)
(PPreovolos@mofo.com)
ANDREW D. MUHLBACH (CA SBN 175694)
(AMuhlbach@mofo.com)
ALEXEI KLESTOFF (CA SBN 224016)
(AKlestoff@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendant APPLE INC*.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No. C 09-01911 JW |
| | **DEFENDANT APPLE INC.'S CERTIFICATE OF SERVICE BY MAIL** |
| | Judge:  Hon. James Ware |

**CERTIFICATE OF SERVICE BY MAIL**
(Fed. R. Civ. Proc. rule 5(b))

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California  94105-2482; I am not a party to the within cause; I am over the age of eighteen years and I am readily familiar with Morrison & Foerster's practice for collection and processing of correspondence for mailing with the United States Postal Service and know that in the ordinary course of Morrison & Foerster's business practice the document described below will be deposited with the United States Postal Service on the same date that it is placed at Morrison & Foerster with postage thereon fully prepaid for collection and mailing.

I further declare that on the date hereof I served a copy of:

**DEFENDANT APPLE INC.'S NOTICE OF CLASS**
**SETTLEMENT PURSUANT TO 28 U.S.C. § 1715**

on the following by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco, California  94105-2482, in accordance with Morrison & Foerster's ordinary business practices:

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury that the above is true and correct.

Executed at San Francisco, California, this 9th day of September, 2011.

| Mia R. Gimenez | */s/* Mia R. Gimenez |
|---|---|
| (typed) | (signature) |

1

## SERVICE LIST

2

Luther Strange
Alabama Attorney General
501 Washington Ave.
P.O. Box 300152
Montgomery, AL 36130-0152

John Burns
Alaska Attorney General
Diamond Courthouse
P.O. Box 110300
Juneau, AK 99811-0300

3

4

5

Tom Horne
Arizona Attorney General
1275 W. Washington St.
Phoenix, AZ 85007

Dustin McDaniel
Arkansas Attorney General
200 Tower Bldg.
323 Center St.
Little Rock, AR 72201-2610

6

7

8

Kamala Harris
California Attorney General
1300 I St., Suite 1740
Sacramento, CA 95814

John Suthers
Colorado Attorney General
1525 Sherman St.
Denver, Colorado 80203

9

10

11

George Jepsen
Connecticut Attorney General
55 Elm St.
Hartford, CT 06141-0120

Joseph R. "Beau" Biden, III
Delaware Attorney General
Carvel State Office Bldg.
820 N. French St.
Wilmington, DE 19801

12

13

14

Irvin Nathan
District of Columbia Attorney General
John A. Wilson Building
1350 PA Ave, NW Suite 409
Washington, DC 20009

Pam Bondi
Florida Attorney General
The Capitol, PL 01
Tallahassee, FL 32399-1050

15

16

17

Sam Olens
Georgia Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-1300

David Louie
Hawaii Attorney General
425 Queen St.
Honolulu, HI 96813

18

19

Lawrence Wasden
Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720-0010

Lisa Madigan
Illinois Attorney General
James R. Thompson Ctr.
100 W. Randolph St.
Chicago, IL 60601

20

21

22

Greg Zoeller
Indiana Attorney General
Indiana Government Center South - 5th Floor,
302 West Washington Street
Indianapolis, IN 46204

Tom Miller
Iowa Attorney General
Hoover State Office Bldg.
1305 E. Walnut
Des Moines, IA 50319

23

24

25

Derek Schmidt
Kansas Attorney General
120 S.W. 10th Ave., 2nd Fl.
Topeka, KS 66612-1597

Jack Conway
Kentucky Attorney General
700 Capitol Avenue
Capitol Building, Suite 118
Frankfort, KY 40601

26

27

28

James D. "Buddy" Caldwell
Louisiana Attorney General
P.O. Box 94095
Baton Rouge, LA 70804-4095

William J. Schneider
Maine Attorney General
State House Station 6
Augusta, ME 04333

Douglas F. Gansler
Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202-2202

Martha Coakley
Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108-1698

Bill Schuette
Michigan Attorney General
P.O. Box 30212
Lansing, MI 48909-0212

Lori Swanson
Minnesota Attorney General
State Capitol, Suite 102
St. Paul, MN 55155

Jim Hood
Mississippi Attorney General
Department of Justice
P.O. Box 220
Jackson, MS 39205

Chris KoSuiter
Missouri Attorney General
Supreme Ct. Bldg.
207 W. High St.
Jefferson City, MO 65101

Steve Bullock
Montana Attorney General
Justice Bldg.
215 N. Sanders
Helena, MT 59620-1401

Jon Bruning
Nebraska Attorney General
State Capitol
P.O. Box 98920
Lincoln, NE 68509-8920

Catherine Cortez Masto
Nevada Attorney General
Old Supreme Ct. Bldg.
100 N. Carson St.
Carson City, NV 89701

Michael Delaney
New Hampshire Attorney General
State House Annex
33 Capitol St.
Concord, NH 03301-6397

Paula T. Dow
New Jersey Attorney General
Richard J. Hughes Justice Complex
P.O. Box 080
Trenton, NJ 08625

Gary King
New Mexico Attorney General
P.O. Drawer 1508
Sante Fe, NM 87504-1508

Eric Schneiderman
New York Attorney General
Dept. of Law - The Capitol, 2nd fl.
Albany, NY 12224

Roy Cooper
North Carolina Attorney General
Dept. of Justice
P.O. Box 629
Raleigh, NC 27602-0629

Wayne Stenehjem
North Dakota Attorney General
State Capitol
600 E. Boulevard Ave.
Bismarck, ND 58505-0040

Mike DeWine
Ohio Attorney General
State Office Tower
30 E. Broad St.
Columbus, OH 43266-0410

1

2　Scott Pruitt　　　　　　　　　　　　　John Kroger
　Oklahoma Attorney General　　　　　Oregon Attorney General
3　313 NE 21st Street　　　　　　　　　Justice Bldg.
　Oklahoma City, OK 73105　　　　　　1162 Court St.
4　　　　　　　　　　　　　　　　　　　NE, Salem, OR 97301

5　Linda L. Kelly　　　　　　　　　　　Peter Kilmartin
　Pennsylvania Attorney General　　　Rhode Island Attorney General
6　1600 Strawberry Square　　　　　　　150 S. Main St.
　Harrisburg, PA 17120　　　　　　　　Providence, RI 02903

7　Alan Wilson　　　　　　　　　　　　Marty J. Jackley
　South Carolina Attorney General　　South Dakota Attorney General
8　P.O. Box 11549　　　　　　　　　　　1302 East Highway 14, Suite 1
　Columbia, SC 29211-1549　　　　　　Pierre, SD 57501-8501
9
　Robert E. Cooper, Jr.　　　　　　　Greg Abbott
10　Tennessee Attorney General　　　　　Texas Attorney General
　425 5th Avenue North　　　　　　　　P.O. Box 12548
11　Nashville, TN 37243　　　　　　　　Austin, TX 78711-2548

12　Mark Shurtleff　　　　　　　　　　　William H. Sorrell
　Utah Attorney General　　　　　　　Vermont Attorney General
13　State Capitol, Rm. 236　　　　　　　109 State St.
　Salt Lake City, UT 84114-0810　　　Montpelier, VT 05609-1001
14
　Ken Cuccinelli　　　　　　　　　　　Rob McKenna
15　Virginia Attorney General　　　　　Washington Attorney General
　900 East Main Street　　　　　　　　P.O. Box 40100
16　Richmond, VA 23219　　　　　　　　　Olympia, WA 98504-0100

17　Darrell V. McGraw, Jr.　　　　　　　J.B. Van Hollen
　West Virginia Attorney General　　　Wisconsin Attorney Genera
18　State Capitol　　　　　　　　　　　P.O. Box 7857
　1900 Kanawha Blvd., E.　　　　　　　Madison, WI 53707-7857
19　Charleston, WV 25305

20　Greg Phillips
　Wyoming Attorney General
21　State Capitol Bldg.
　Cheyenne, WY 82002
22

23

24

25

26

27

28

# EXHIBIT 1

1  Angela C. Agrusa, Esq., Esq. (SBN: 131337)
      aagrusa@linerlaw.com
2  LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF &
   TAYLOR LLP
3  1100 Glendon Avenue, 14th Floor
   Los Angeles, California 90024-3503
4  Telephone:  (310) 500-3500

5  Michael J. Saltz, Esq., Esq. (SBN: 189751)
      msaltz@jrsfllp.com
6  Keri R. Montrose, Esq., Esq. (SBN: 228892)
      kmontrose@jrsfllp.com
7  JACOBSON, RUSSELL, SALTZ & FINGERMAN LLP
   10866 Wilshire Boulevard, Suite 1550
8  Los Angeles, California 90024
   Telephone:  (310) 446-9900

9
   Patrick McNicholas, Esq., Esq. (SBN: 125868)
10     pmc@mcnicholaslaw.com
   MCNICHOLAS & MCNICHOLAS, LLP
11 10866 Wilshire Boulevard, Suite 1400
   Los Angeles, California  90024-4338
12
   Patrick Sutton, Esq.
13     psutton@suttonkleinman.com
   SUTTON KLEINMAN PLLC
14 710 W. 14th Street, Suite A
   Austin, Texas  78701
15
   Byron T. Ball, Esq., Esq. (SBN: 150195)
16     btb@balllawllp.com
   THE BALL LAW FIRM LLP
17 10866 Wilshire Boulevard, Suite 1400
   Los Angeles, California  90024
18
   Attorneys for Plaintiffs
19
                 UNITED STATES DISTRICT COURT
20
               CENTRAL DISTRICT OF CALIFORNIA
21
22 Tracey Hackwith, Maxx Scholten and     )  Case No.
   Michael Martin, Individually and On    )
23 Behalf of All Others Similarly Situated,  )
                                          )  CLASS ACTION
24         Plaintiffs,                     )
                                          )  COMPLAINT
25      vs.                               )
                                          )  JURY TRIAL DEMANDED
26 APPLE INC., a California Corporation,   )
   and DOES 1-10 , inclusive.,            )
27                                        )
           Defendants.                    )
28 _____)

                                              Case No.
                            COMPLAINT

0020274/001/ 428173v01

## INTRODUCTION

1.      How safe is the "MagSafe" power adapter?  Apple Inc.'s ("Apple") MacBooks are advertised as top of the line machines which are very user friendly and of exceptional quality.  They are sold with the MagSafe power adapter ("MagSafe Adapter").  The MagSafe Adapter, with normal use, will eventually fray at the connection to the adapter and spark, and, in some instances, catch fire (collectively, "Design Defects").  Apple replaces the MagSafe Adapter, only upon request, and will charge the customer for the cost of the replacement.  Apple simply replaces defective MagSafe Adapters with the same product and has made no effort to correct the Design Defects so evident from the normal operation of the device or to initiate a recall despite having advanced knowledge of the Design Defects.

2.      Plaintiffs bring this class action individually and on behalf of the Class defined below ("Class"), against Apple, to obtain relief, including, among other things, damages and injunctive relief.

3.      Plaintiffs assert claims for breach of express and implied warranty, negligence, violation of California Business and Professions Code § 17200, violation of California Civil Code § 1750, violation of the Magnuson-Moss Warranty Act, injunctive relief and declaratory relief.

## PARTIES

4.      Plaintiff Tracey Hackwith is and at all relevant times has been a resident and citizen of California.

5.      Plaintiff Maxx Scholten is and at all relevant times has been a resident and citizen of Texas.

6.      Plaintiff Michael Martin is and at all relevant times has been a resident and citizen of Wisconsin.

7.      Defendant Apple Inc. is a California corporation and maintains its principal place of business in Cupertino, California.

Case No.

---

0020274/001/ 428173v01

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which any member of the Class of Plaintiffs is a citizen of a different state than the Defendant.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because Apple does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  At all pertinent times, Apple was and is in the business of marketing, advertising, distributing and selling products, including MagSafe Adapters, throughout California and this judicial district, and nationwide, both by itself and by and through various authorized dealers. The MagSafe Adapters that form the basis of this Complaint were purchased from Apple and/or from Apple's authorized dealers and placed in the stream of commerce by Apple.

## FACTUAL BACKGROUND

10. ·   Apple holds itself out to the public as a manufacturer of safe, cutting-edge and easy-to-use computer products, including MacBooks, which come equipped with a MagSafe Adapter.  Apple is in the business of manufacturing, distributing and/or selling computer products throughout the United States.

11.     Apple manufactured, produced and/or distributed MagSafe Adapters for sale by its network of stores and authorized dealers, including several leading computer retailers in the United States, such as Fry's, Best Buy and Comp USA.

12.     Apple provided Plaintiffs and each purchaser of a MacBook equipped with a MagSafe Adapter with an express one-year warranty as follows:

> Apple...warrants this apple-branded hardware product against defects in materials and workmanship under normal use for a period of ONE (1) YEAR from the date of retail purchase by the original end-user purchaser.  If a hardware defect arises and a valid claim is received within the Warranty Period, at its option, Apple will either (1) repair the hardware defect at no charge, using new or refurbished replacement parts, or (2) exchange the

0020274/001/ 428173v01

1      product with a product that is new or which has been manufactured from new

        or serviceable used parts and is at least functionally equivalent to the original

2      product, or (3) refund the purchase price of the product.

3   Apple has these same obligations with respect to Plaintiffs and all Class members,

4   but has failed to satisfy these obligations. Attached hereto as "Exhibit A" is a true

5   and correct copy of the One (1) Year Limited Warranty.

6          13.    By express writing on its website, Apple has extended indefinitely the

7   One (1) Year Limited Warranty agreeing to replace any malfunctioning MagSafe

8   Adapters that do not show signs of misuse. Specifically, Apple informs consumers

9   who have "see[n] a spark" that "you may be eligible for a replacement adapter free of

10   charge provided there are no signs of accidental damage." This warranty extension is

11   not readily apparent when viewing the website, does not guarantee replacement in all

12   instances of "sparking" and appears to replace the defective MagSafe Adapter with

13   an identical product containing the same Design Defects. *See* Apple Portables:

14   Troubleshooting MagSafe Adapters,

15   http://support.apple.com/kb/TS1713?viewlocale=en_US. Attahced hereto as

16   "Exhibit B" is a true and correct copy of Apple Portables: Troubleshooting MagSafe

17   Adapters.

18          14.    In conjunction with each sale, Apple marketed, advertised and

19   warranted that the defective MagSafe Adapters were of merchantable quality fit for

20   the ordinary purpose for which such goods were used and were free from defects, or

21   at a minimum would not catch fire.

22          15.    Apple also made express representations about the quality of its

23   MagSafe Adapter. For example, Apple represents on its website that the magnetic

24   cord is designed specifically to cause "less wear on the connectors."

25   http://www.apple.com/macbook/design.html. In reality, the MagSafe Adapter causes

26   a great strain on the connectors, causing the wires leading to them to fray, exposing

27   wires which then proceed to spark and overheat. After numerous complaints from

28   Class members regarding the faulty MagSafe Adapter, Apple's response in some

0020274/001/ 428173v01

1  cases has been to attempt to further profit by selling Class members yet another

2  MagSafe Adapter with the same inherent problems. Some Class members are

3  currently utilizing their third MagSafe Adapter. *See* Apple Online Store Customer

4  Reviews,

5  http://store.apple.com/us/reviews/MA938LL/A?fnode=MTY1NDEwMQ&rp=2&rf=

6  3&r. Attached hereto as "Exhibit C" is a true and correct copy of the Customer

7  Reviews for the MagSafe.

8       16.    Apple intended for customers to believe its statements and

9  representations about its MagSafe Adapters and to trust that its products were of the

10  highest quality. The name "MagSafe" itself suggests that Apple paid the utmost

11  attention to consumer safety and protection in designing its product. Apple

12  concealed materials facts relating to the Design Defects, which caused the MagSafe

13  Adapters to cease functioning, overheat and catch fire.

14       17.    Plaintiffs and Class members experienced, and continue to experience

15  problems with their MagSafe Adapters even though they followed the instructions

16  for use and have maintained their MagSafe Adapters with ordinary care.

17       18.    The MagSafe Adapters are defective in many respects. Due to those

18  defects, the use of the MagSafe can result in the destruction of the only means of

19  providing power to the MacBook laptops, rendering these expensive laptop

20  computers useless. The Class members are left with a choice between utilizing their

21  laptop computers and knowingly inviting the risk of a fire hazard into their home.

22       19.    Apple knew and was aware, or should have been aware, before

23  marketing and selling the MagSafe Adapters, that they were inherently defective

24  because even when operated as instructed, the MagSafe Adapters were substantially

25  likely to fray and spark. Apple nonetheless failed to warn its customers of the

26  Design Defects inherent in the MagSafe Adapters. If Plaintiffs and other Class

27  members had known about the Design Defects, they would not have paid significant

28  sums for MacBooks equipped with MagSafe Adapters.

0020274/001/ 428173v01

1      20.   Apple has profited, either directly or indirectly, by concealing the nature

2   and extent of the Design Defects, which have enabled it to (a) sell MacBooks

3   equipped with MagSafe Adapters at premium prices, (b) to profit on the replacement

4   MagSafe Adapters sold when the original products fail, (c) and to profit on repair

5   services charged by the "Genius Bar" and other Apple repair services when

6   customers bring in their malfunctioning MagSafe Adapters.  In fact, Apple has no

7   effective remedy for the Design Defects and has taken no action to correct the

8   defects.

9      21.   Despite having repeated notice of the above-described Design Defects

10   in its MagSafe Adapters and despite the reasonable expectations of consumers

11   created by Apple's marketing of its MagSafe Adapters, Apple has engaged in the

12   following routine, albeit wrongful course of conduct, where Apple:

13             a.  Designed, manufactured and sold MagSafe Adapters with Design
               Defects that rendered them unsafe and useless;

14

15             b.  Failed to disclose that the MagSafe Adapters had Design Defects
               that rendered them unsafe and useless;

16             c.  Continued to represent expressly or by implication that the MagSafe
               Adapters that Plaintiffs and Class members purchased were
17             dependable, safe and would provide superior performance when it
               knew that these statements were false;

18

19             d.  Continued to manufacture, market, advertise, distribute and sell the
               MagSafe Adapters to consumers when it knew or should have known
               the MagSafe Adapters were not dependable and would not withstand
20             normal operation;

21             e.  Failed to disclose to consumers the substantial risk of MagSafe
               Adapters' failure and the material Design Defects in the MagSafe
22             Adapters;

23             f.  Failed to disclose the nature of the Design Defects to consumers;

24             g.  Failed to disclose the many complaints it received from consumers
               (or the high incidence of failed replacement of the MagSafe Adapters);

25

26             h.  Failed to implement a recall to adequately announce, remedy, and
               correct the defects for consumers;

27             i.  Failed to disclose to consumers that Apple was not committed to
               making effective repairs under its warranties to address the Design
28             Defects;

5
COMPLAINT                                                    Case No.

0020274/001/ 428173v01

j.  Failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, safety qualities, and benefits of its MagSafe Adapters; and

k.  Failed to disclose that despite engaging in ordinary use and care, consumers would still experience a risk of overheating, sparking and melting of their MagSafe Adapters.

22.  By engaging in the foregoing conduct, Apple has caused consumers, including Plaintiffs and Class members, to be aggrieved and suffer ascertainable losses, in that, among other things, Apple's conduct systematically:

a.  Caused Plaintiffs and the Class members to pay premium prices for a defective product;

b.  Reduced the value of the MacBooks purchased by Plaintiffs and Class members; and

c.  Caused reasonable consumers like Plaintiffs and Class members to spend money for attempted repairs and replacements of their MagSafe Adapters that they would not have spent but for Apple's conduct.

23.  All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint.  Moreover, in light of the volume of complaints consumers have made directly to Apple, and complaints posted on Apple's own website, and Apple's refusal to effectively resolve the Design Defects, any additional pre-suit complaints or other notice to Apple would have been futile.

**Plaintiff Tracey Hackwith's Experiences with Her MagSafe Adapter**

24.  Tracey Hackwith, a resident of Orange County California, purchased a MacBook from Apple on-line for her thirteen year old son on June 27, 2006.  The MacBook came with a 65W MagSafe Adapter, which stopped working after the cord at the end near the magnet bent through normal use and frayed.  Hackwith then purchased a replacement MagSafe Adapter at the Apple store in Mission Viejo, California.  The replacement MagSafe Adapter bent in the same place as the original MagSafe Adapter, frayed, separated, and charred with visible signs of smoke.  Hackwith then returned to the Apple store in Mission Viejo, California to replace her second, defective MagSafe Adapter.  She was told by Apple employees that the

1 | MagSafe Adapter was out of warranty and Apple refused to replace the MagSafe

2 | Adapter.  The Apple employees informed her that she could purchase a replacement

3 | MagSafe Adapter for $79.99.  Hackwith decided not to purchase another version of

4 | the same defective product -- a product that she feared might burn down her house.

5 | **Plaintiff Maxx Scholten's Experiences with His MagSafe Adapter**

6 |     25.    Maxx Scholten, a resident of Austin Texas and student at the University

7 | of Texas, purchased his MacBook with a 65W MagSafe Adapter in or about July

8 | 2006 from the Apple Store in Southlake Texas.  In or about March of 2008, Scholten

9 | was using his computer when he smelled a burning plastic smell.  He noticed that the

10 | wire sheath near the magnet portion of the adapter was on fire with a small blue

11 | flame coming from the wires.  The flame melted the wire casing and the plastic

12 | sheath around the wire casing at its connection point.  Scholten then took the 65W

13 | MagSafe Adapter to an Apple store in Austin, Texas.  At the Apple store, Scholten

14 | spoke with an Apple employee at the "Genius Bar" about the 65W Magsafe adapter

15 | catching fire, and demanded a replacement free of charge.  The Apple employee

16 | admitted that he was well aware of the problem of the MagSafe Adapters catching

17 | fire, but he refused to replace the power cord because the computer was out of

18 | warranty.  As such, the Apple employee stated Scholten would have to purchase a

19 | new MagSafe Adapter at the price of $79.99.  Scholten then spoke to a manager, and

20 | after much discussion, the manager ultimately gave Maxx a replacement 65W

21 | MagSafe Adapter without charge.  Scholten fears that his use of the replacement will

22 | cause it to burn again in the same manner as the first MagSafe Adapter.

23 | **Plaintiff Michael Martin's Experiences with His MagSafe Adapter**

24 |     26.    Michael Martin purchased a MacBook Pro with a 85W MagSafe

25 | Adapter from the Apple on-line store in August 2006.  In or about March 2008, the

26 | MagSafe Adapter failed when its wires pulled away from the magnet portion during

27 | normal operation and started to burn through the wire sheath.  The sheath ultimately

28 | burned all the way through causing the plastic material to smoke and release a

<div align="center">7<br>COMPLAINT</div>

1   noxious burnt plastic odor.  Martin then took the MagSafe Adapter to the Apple

2   Store at the Mayfair Mall in Wisconsin for an appointment at Apple's repair service

3   provider, the "Genius Bar."  He explained what happened and showed the Apple

4   employee the MagSafe Adapter.  The Apple employee only offered to sell him a new

5   MagSafe Adapter for $79.99.  Martin protested saying that the MagSafe Adapter

6   should not be burning and catching fire.  The Apple employee left to speak to the

7   Apple store manager, and then came back and said that the item was out of warranty

8   and that Martin had obviously abused the MagSafe Adapter.  Martin, who took

9   special care of his computer, found the allegation insulting and stated that the

10  MagSafe Adapter was never abused and that he was not going to buy a new MagSafe

11  Adapter because it almost burnt his house down.  It was only until he raised his

12  safety concern, that the Apple employee replaced the MagSafe Adapter.  Martin has

13  used the replacement MagSafe Adapter beginning in March 2008, and the identical

14  problem of the wires separating occurred.  As Such, Martin is informed and believes

15  that Apple merely replaced his MagSafe Adapter with yet another MagSafe Adapter

16  containing the same defects that led to the burning of the original.  Martin fears that

17  he will have to replace this latest MagSafe Adapter with yet another defectively

18  designed product.  A photograph of Martin's defective MagSafe Adapter appears

19  below:

20

21

22

23   

24

25

26                          **CLASS ACTION ALLEGATIONS**

27         27.    Plaintiffs bring this action on behalf of themselves and all other persons

28  similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

0020274/001/ 428173v01

28.    The Class that Plaintiffs seek to represent is defined as follows:  All persons who purchased a MagSafe Adapter for primarily personal purposes, and not for resale, in the United States.  Excluded from the Class are Apple, its affiliated, employees, officers and directors, persons or entities that distribute or sell the MagSafe Adapters, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

29.    **Numerosity/Impracticability of Joinder**:  The Class members are so numerous that joinder of all members would be impracticable.  The proposed Class includes thousands of members.  The precise numbers of members can be ascertained through discovery, which will include Apple's sales, service and other records.

30.    **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the MagSafe Adapters are materially defective and what the defects are;

(b)    Whether Apple knew that the MagSafe Adapters were and are materially defective;

(c)    Whether Apple omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Class members regarding the Design Defects inherent in the MagSafe Adapters;

(d)    Whether Apple has engaged in unfair or unconscionable acts or practices and unfair or deceptive acts or practices in connection with the sale of the MagSafe Adapters;

(e)    Whether Apple violated the consumer protection statutes applicable to the Class;

9

COMPLAINT

Case No.

1        (f)     Whether Apple breached its express warranties;

2        (g)    Whether Apple breached its implied warranties;

3        (h)    Whether, as a result of Apple's conduct, Plaintiffs and Class

4                 members have suffered damages; and if so, the appropriate

5                 amount thereof; and

6        (i)     Whether, as a result of Apple's misconduct, Plaintiffs and Class

7                 members are entitled to equitable relief, and, if so, the nature of

8                 such relief.

9      31.    **Typicality**:  The representative Plaintiffs' claims are typical of the

10 claims of the Class members.  Plaintiffs and all Class members have been injured by

11 the same wrongful practices of Apple.  Plaintiffs' claims arise from the same

12 practices and conduct that give rise to the claims of all Class members and are based

13 on the same legal theories.

14      32.    **Adequacy**:  Plaintiffs are representatives who will fully and adequately

15 assert and protect the interests of the Class and have retained class counsel who are

16 experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their

17 attorneys have any interests contrary to or conflicting with the Class.

18      33.    **Superiority**:  A class action is superior to all other available methods

19 for the fair and efficient adjudication of this lawsuit, because individual litigation of

20 the claims of all Class members is economically unfeasible and procedurally

21 impracticable.  While the aggregate damages sustained by the Class are likely in the

22 millions of dollars, the individual damages incurred by each Class member are too

23 small to warrant the expense of individual suits.  The likelihood of individual Class

24 members prosecuting their own claims is remote, and even if every Class member

25 could afford individual litigation, the court system would be unduly burdened by

26 individual litigation of such cases.  Further, individual Class members do not have a

27 significant interest in individually controlling the prosecution of separate actions, and

28 individualized litigation would also result in varying, inconsistent, or contradictory

0020274/001/ 428173v01

1  judgments and would magnify the delay and expense to all parties and the court

2  system because of multiple trials of the same factual and legal issues.  Plaintiffs

3  know of no difficulty to be encountered in the management of this action that would

4  preclude its maintenance as a class action.  In addition, Apple has acted or refused to

5  act on grounds generally applicable to all Class members and, as such, final

6  injunctive relief or declaratory relief with regard to the Class members as a whole is

7  appropriate.

8      34.    Plaintiffs do not anticipate any difficulty in the management of this

9  litigation.

10      35.    Apple has, or has access to, address information for the Class members,

11  which may be used for the purpose of providing notice of the pendency of this

12  action.

13

14  <div align="center">**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty)**</div>

15

16      36.    Plaintiffs hereby incorporate by reference the allegations contained in

17  paragraphs 1 through 35 of this Complaint as though set forth fully herein.

18      37.    Apple made affirmations of fact and promises to Plaintiffs and Class

19  members which related to the MagSafe Adapters as more fully described herein.

20      38.    Apple's affirmations of fact and promises became part of the basis of the

21  bargain between the parties.

22      39.    These affirmations of fact and promises created an express warranty that

23  the MagSafe Adapters would conform to Apple's affirmations and promises.

24      40.    Apple uniformly warranted all its MagSafe Adapters against defects in

25  material or workmanship at a time when it knew that the MagSafe Adapters suffered

26  from serious defects and, nevertheless, continued to market and sell the MagSafe

27  Adapters with this express warranty.

28

<div align="center">11
COMPLAINT</div>

Case No.

1      41.    Apple is obligated under the terms of its written warranty to repair,

2  replace and/or refund the purchase price of defective MacBooks and their MagSafe

3  Adapters sold to Plaintiffs and Class members.

4      42.    Apple extended the terms of its warranty indefinitely through statements

5  on its website that it would replace faulty MagSafe Adapters at any time.

6      43.    Apple has breached its written warranty, as set forth above, by

7  supplying MagSafe Adapters in a condition that does not meet the warranty

8  obligations undertaken by Apple, and by failing to repair or replace the defective

9  products.

10     44.    Apple has additionally enforced its warranty in bad faith by replacing

11  MagSafe Adapters with products that contained the same Design Defects.

12     45.    As set forth above, Apple's warranty fails in its essential purpose and,

13  accordingly, Plaintiffs and Class members cannot and should not be limited to the

14  remedies set forth in Apple's written warranty and, instead, should be permitted to

15  recover all measure of appropriate relief.

16     46.    Apple has received sufficient and timely notice of the breaches of

17  warranty alleged herein.  Despite this notice and Apple's knowledge of the defects in

18  the MagSafe Adapters, Apple has failed to honor its warranty, even though it knows

19  of the defects inherent in the MagSafe Adapters.

20     47.    Plaintiffs and Class members have given Apple a reasonable

21  opportunity to cure its failure with respect to its warranty, and Apple has failed to do

22  so.

23     48.    Apple has failed to provide Plaintiffs and Class members, as a warranty

24  repair and/or replacement, a product that conforms to the qualities and characteristics

25  that Apple expressly warranted when it sold the MagSafe Adapters to Plaintiffs and

26  Class members.

27     49.    As a result of Apple's breach of warranty, Plaintiffs and Class members

28  have suffered damages in an amount to be determined at trial.

1

2

### SECOND CAUSE OF ACTION
#### (Breach of Implied Warranty of Merchantability)

3   50.   Plaintiffs hereby incorporate by reference the allegations contained in

4   paragraphs 1 through 49 of this Complaint as though set forth fully herein.

5   51.   Apple is a merchant in the sale of MagSafe Adapters to Plaintiffs and

6   the Class members and the MagSafe Adapters are goods under the applicable law.

7   52.   Plaintiffs and Class members are in privity with Apple in that they

8   purchased their MagSafe Adapter directly from Apple, or from an actual or apparent

9   agent of Apple such as Apple's authorized dealers.

10   53.   Plaintiffs and Class members are also in privity with Apple by virtue of

11   the contractual relationship arising from Apple's manufacturer's warranty provided in

12   conjunction with the MacBooks which include the MagSafe Adapter.  Plaintiffs also

13   purchased their computers directly from Apple stores.

14   54.   At all times relevant hereto, there was a duty imposed by law which

15   requires that Apple's MagSafe Adapters be reasonably fit for the purposes for which

16   power adapters are used, that they are of fair average quality within their description,

17   and that they be acceptable for trade within their description.

18   55.   Apple has not validly disclaimed, excluded, or modified the implied

19   warranties and/or duties described herein, and/or any attempted disclaimer or

20   exclusion of the same was and is ineffectual.

21   56.   Notwithstanding the aforementioned duty, at the time of delivery, the

22   MagSafe Adapters sold to Plaintiffs and Class members were not merchantable, and

23   not fit for the ordinary purposes for which they were sold.  The MagSafe Adapters

24   are not fit for the ordinary purpose of providing power to laptop computers, because,

25   *inter alia*, the MagSafe Adapters are defective in that they contain Design Defects.

26   57.   As documented on its own website and elsewhere, Apple was notified

27   that the MagSafe Adapters were not merchantable within a reasonable amount of

28

<center>13
COMPLAINT</center>

Case No.

0020274/001/ 428173v01

1    time after the Design Defects manifested themselves to Plaintiffs and Class

2    members.

3        58.    As a direct result of the non-merchantability of the MagSafe Adapters

4    described herein, Plaintiffs and other Class members have sustained damages in an

5    amount to be determined at trial.

6

7    <div align="center">**THIRD CAUSE OF ACTION**<br>**(Negligent Design and Failure to Warn)**</div>

8        59.    Plaintiffs hereby incorporate by reference the allegations contained in

9    paragraphs 1 through 58 of this Complaint as though set forth fully herein.

10       60.    Apple knew, or by the exercise of reasonable care should have known,

11   that its MagSafe Adapters would have and had the alleged Design Defects.

12       61.    Apple knew that the Plaintiffs and Class members, who used the

13   MagSafe Adapters for their intended use, were members of a foreseeable class of

14   persons who were at risk of suffering serious inconvenience, expense and potential

15   injury solely because of the Design Defects.

16       62.    At the time Apple manufactured, distributed and/or sold the MagSafe

17   Adapter, it owed a duty to persons like the Plaintiffs and Class members to exercise

18   ordinary and reasonable care to properly design the MagSafe Adapters, and it owes a

19   continuing duty to warn about the problem and to repair and/or recall its defective

20   MagSafe Adapters.

21       63.    Apple had a pre-sale duty to warn potential purchasers that the MagSafe

22   Adapters carried with them greater risks of injury and property damage that an

23   ordinary consumer would expect when using the MagSafe Adapters in their intended

24   or reasonably foreseeable manner.

25       64.    Any benefits by way of easier release of a power cord are outweighed

26   by the risks inherent in the MagSafe Adapter's design.

27

28

<div align="center">14<br>COMPLAINT</div>

0020274/001/ 428173v01

65.     Apple failed to use appropriate design, engineering and parts in manufacture, and Apple in other respects breached its duties by being reckless, careless, and negligent.

66.     As a direct and proximate result of Apple's recklessness, carelessness, and negligence, the Plaintiffs and Class members were caused to suffer damages and losses in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Unfair Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq.*))

67.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 66 of this Complaint as though set forth fully herein.

68.     Apple has engaged in unfair, unlawful, and fraudulent business practices by: (1) marketing and selling MagSafe Adapters with Design Defects that cause overheating, sparking and melting with normal use and/or created a substantial risk that overheating, sparking and melting would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects.

69.     By engaging in the above-described acts and practices, Apple has committed one or more acts of unfair business practice within the meaning of California Business and Professions Code § 17200, *et seq.*

70.     Apple's acts and practices have deceived and/or are likely to deceive members of the consuming public, Plaintiffs and Class members.

71.     Apple knowingly sold Plaintiffs and other Class members and other consumers MagSafe Adapters with defects that have rendered the MacBooks essentially unusable for the purposes for which they were sold.

72.     Rather than notify the public in a productive and meaningful way of the Design Defects and risks of harm caused by use of the MagSafe Adapters, Apple hid from the public the fact of, and its knowledge of, the Design Defects by essentially slipping its warranty extension for the MagSafe Adapters in the section of its vast Apple website devoted to troubleshooting.  In addition, Apple failed to notify its own

15

Case No.

1  employees of the warranty extension and replacement policy causing Apple

2  employees to deny consumers and the Plaintiffs immediate replacements for their

3  malfunctioning MagSafe Adapters.  Apple has engaged in unfair business practices

4  by failing to recall and/or redesign its defective product, honor its own waranty,

5  hiding the existence of its warranty from the public and its employees and allowing

6  the defective MagSafe Adapters to remain on the market.

7        73.    The injury to consumers by this conduct is greatly outweighed by any

8  alleged countervailing benefit to consumers under all the circumstances.  Moreover,

9  in light of Apple's exclusive knowledge of the defects, the injury is not one that

10  Plaintiffs or Class members could have reasonably avoided.

11        74.    Plaintiffs and Class members seek an order from this Court awarding

12  restitution, disgorgement, injunctive relief, and all other relief allowed under

13  § 17200, *et seq.*, plus interest attorneys' fees and costs.

14

15

## FIFTH CAUSE OF ACTION
16  **(Violation of the Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)**

17        75.    Plaintiffs hereby incorporate by reference the allegations contained in

18  paragraphs 1 through 74 of this Complaint as though set forth fully herein.

19        76.    This claim arises under the California Consumer Legal Remedies Act,

20  California Civil Code § 1750 *et seq.*

21        77.    At all times relevant hereto, Plaintiffs were "consumers" as that term is

22  defined in Cal. Civ. Code § 1761 (d).

23        78.    At all times relevant hereto, the MagSafe Adapters constituted "goods"

24  as that term is defined in Cal. Civ. Code § 1761(a).

25        79.    At all times relevant hereto, Apple constituted a "person" as that term is

26  defined in Cal. Civ. Code § 1761 (c).

27

28

Case No.

1    80.    At all times relevant hereto, Plaintiffs' purchase of the MagSafe

2  Adapters constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761

3  (e).

4    81.    At all times relevant hereto, Apple provided "services" to Plaintiffs

5  within the meaning of Cal. Civ. Code § 1761(b).

6    82.    The CLRA provides in relevant part that "[t]he following unfair

7  methods of competition and unfair or deceptive acts or practices undertaken by any

8  person in a transaction intended to result or which results in the sale or lease of goods

9  or services to any consumer are unlawful: (5) Representing that

10  goods...have...approval, characteristics, uses, benefits...which they do not

11  have;...(7) Representing that goods...are of a particular standard, quality or

12  grade...if they are of another;...(9) Advertising goods...with the intent not to sell

13  them as advertised; and (19) Inserting an unconscionable provision in the contract."

14  California Civil Code § § 1770(a)(5),(7),(9) and (19).

15    83.    Apple made uniform written representations that the MagSafe Adapters

16  are a high quality product that will perform as represented and, as set forth above,

17  made specific representations regarding the safety and characteristics of the MagSafe

18  Adapters that, as set forth above, were false, deceptive and/or misleading and were

19  made in violation of the CLRA.

20    84.    Plaintiffs were consumers under California Civil Code § 1761(d).

21  California Civil Code § 1780(a)(2) permits any court of competent jurisdiction to

22  enjoin practices that violate California Civil Code § 1770.

23    **SIXTH CAUSE OF ACTION**

24    **(Violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301-2312)**

25    85.    Plaintiffs hereby incorporate by reference the allegations contained in

26  paragraphs 1 through 84 of this Complaint as though set forth fully herein.

27    86.    Apple impliedly warranted that the MagSafe Adapter was reasonably

28  safe for its intended use by placing it into the stream of commerce.

1    87.    Apple's MagSafe Adapter is not merchantable, for reasons set forth

2  above, and is in breach of the implied warranty of merchantability and fitness for a

3  particular purpose.

4    88.    The MagSafe Adapter was not reasonably safe for its intended use when

5  it left Apple's control and entered the market.

6    89.    The MagSafe Adapter Design Defects were not apparent and obvious to

7  Plaintiffs and Class members.  Apple has not validly disclaimed, excluded, or

8  modified the implied warranties and/or duties described herein, and/or any attempted

9  disclaimer or exclusion of the same was and is ineffectual.

10    90.    The Design Defects were known or should have been known to Apple at

11  the time Plaintiffs and Class members purchased their MacBooks and MagSafe

12  Adapters.

13    91.    The presence of these Design Defects and Apple's failure to warn

14  consumers of them, constitutes a breach of both implied and express warranties.

15    92.    Apple has had opportunities, as set forth above, to remedy the Design

16  Defects and has failed to do so.

17    93.    As a result, Plaintiffs and Class members have been damaged in an

18  amount to be proven at trial, including, attorneys fees and expenses.

19                  **SEVENTH CAUSE OF ACTION**
20    **(Untrue and Misleading Advertising in Violation of Cal. Bus.& Prof. Code**
                              **§ 17500, *et seq.*)**
21    94.    Plaintiffs hereby incorporate by reference the allegations contained in

22  paragraphs 1 through 93 of this Complaint as though set forth fully herein.

23    95.    California Business & Professions Code § 17500 prohibits various

24  deceptive practices in connection with the dissemination in any manner of

25  representations which are likely to deceive members of the public to purchase

26  products such as the MagSafe Adapter.

27    96.    Apple caused advertisements for MagSafe Adapters to be placed on its

28  website and within the name of the product itself, among other sources, before the

1 general public and knew or should have known that MagSafe Adapters did not

2 conform to the advertisements' representations regarding the safety of the product.

3    97.   As a result of the foregoing, Plaintiffs, and other Class members, and

4 consumers are entitled to injunctive and equitable relief and damages in an amount to

5 be proven at trial.

## EIGHTH CAUSE OF ACTION
### (Permanent Injunctive Relief)

8    98.   Plaintiffs hereby incorporate by reference the allegations contained in

9 paragraphs 1 through 97 of this Complaint as though set forth fully herein.

10    99.   As a direct result of Apple's manufacture, distribution and sale of its

11 MagSafe Adapters, Class members are being irreparably harmed.  Among other

12 things, Class members are suffering irreparable damage in the form of the risks of

13 melting and burning resulting from the Design Defects of the MagSafe Adapters.

14    100.   The actions of Apple have affected a substantial public safety interest,

15 thereby underscoring the need for injunctive relief.  Apple has distributed defective

16 and dangerous products.  Apple has made no effort to recall and redesign the

17 dangerous MagSafe Adapters.  Such actions were taken in complete disregard for the

18 interests and the well-being of consumers of Apple's products.  Thus, the interest and

19 rights of consumers can only be protected through permanent injunctive relief.

20    101.   Unless and until enjoined and restrained by order of this Court, Apple

21 will continue to manufacture, distribute and sell MagSafe Adapters.  The continued

22 distribution of the MagSafe Adapters will cause consumers great and irreparable

23 harm.  There is no adequate remedy at law for the injuries suffered as a result of

24 Apple's manufacture, distribution and sale of the MagSafe Adapters.

25    102.   Therefore, Plaintiffs request an injunction ordering the immediate recall

26 and redesign of all MagSafe Adapters.

27

28

0020274/001/ 428173v01

# NINTH CAUSE OF ACTION
## (Declaratory Relief)

103.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 102 of this Complaint as though set forth fully herein.

104.   A true and present controversy exists between Plaintiffs and Apple concerning the terms and limitations under the express and implied warranties as set forth above.  Specifically, Plaintiffs contend that Apple has breached its express and implied warranties in connection with the manufacture, sale and distribution of the MagSafe Adapters and has failed to enforce its warranty as extended by Apple's policy as stated on its website.  Plaintiffs also contend that Apple's original express warranty is unconscionable in its limitations.  Plaintiffs additionally contend that Apple's refusal to replace the MagSafe Adapters is a breach of the express warranty as modified.  Plaintiffs further contend that Apple intentionally deceived the public as to the existence and enforcement of its warranty extension by hiding the extension in the troubleshooting page of its website and failing to inform its own employees of the existence of the warranty extension.

105.   Plaintiffs are informed and believed and based thereon allege that Apple contends otherwise.

106.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs and Apple may ascertain their respective rights and duties under the express and implied warranties.

Case No.

0020274/001/ 428173v01

1    WHEREFORE, Plaintiffs pray judgment as follows:

2        1.      For an order certifying the Class under Federal Rule of Civil Procedure

3    23(b)(2) and 23(b)(3), and appointing Plaintiffs as representatives of the Class, and

4    appointing the attorneys and law firms representing the Plaintiffs as counsel for the

5    Class;

6        2.      For all recoverable compensatory, statutory and other damages

7    sustanied by Plaintiffs and the Class;

8        3.      For costs;

9        4.      For both pre-judgment and post judgment interest on amounts awarded;

10       5.      For appropriate injunctive relief;

11       6.      For appropriate declaratory relief;

12       7.      For payment of attorneys fees and expert fees as allowable under law;

13   and

14       8.      For such other relief as this Court deems proper.

15   Dated:  May 15, 2009                    LINER GRODE STEIN YANKELEVITZ
                                             SUNSHINE REGENSTREIF & TAYLOR LLP
16

17                                   By: _____

18                                       Angela C. Agrusa
                                         Attorneys for Plaintiffs
19

20

21

22

23

24

25

26

27

28

                                            21
                                         COMPLAINT                            Case No.

0020274/001/ 428173v01

# Exhibit A

# One (1) Year Limited Warranty - Worldwide

**WARRANTY COVERAGE**

Apple's warranty obligation are limited to the terms set forth below:

**EXCLUSIONS AND LIMITATIONS**

# EXHIBIT B

Search Support    Enter keywords or serial number
Search tips and advanced search



# Apple Portables: Troubleshooting MagSafe adapters

Last Modified: March 09, 2009                    Old Article: TS1414
Article: TS1713

## Symptoms

Is your portable computer's MagSafe power adapter not working correctly? This article will tell you what you can do if you experience one or more of the following issues:

- Your power adapter won't charge the computer.
- The LED on the adapter connector doesn't light up when attached to the computer.
- The adapter only charges the computer intermittently.
- The adapter's white insulation seperates from the magnetic end of the MagSafe connector (also known as strain relief).

Note: If you are attempting to troubleshoot a non-MagSafe power adapter with a barrel-type connector, please refer to Apple Portables: Troubleshooting power adapters with a barrel-type connector.



Barrel-type connector | MagSafe connectors

## Products Affected
Portable Computers, MagSafe adapters only

## Resolution

Follow these steps to identify the cause of the issue and find out which solutions may be available to you.

### If you see a spark

Sometimes when you plug the power adapter into the wall, you may see a spark. This is usually normal and can occur when you plug any electrical appliance into a live outlet. If the spark comes from somewhere other than the blades of the plug, if you experience any damage or discoloration of the adapter, or if you have other concerns about sparking, contact Apple.

### Troubleshooting power adapter issues

1. **Make sure a known good outlet is being used.**
   Verify that the power outlet you're using is working correctly. Plug in a known good appliance, such as a lamp, TV, or clock, and confirm it powers on properly.

## Additional Information

Whether your product is in or out-of-warranty, you can take your adapter to an Apple-Authorized Service Provider or Apple Retail Store for evaluation and replacement if necessary. You may be eligible for a replacement adapter free of charge provided there are no signs of accidental damage.

Although you are not required to bring in the computer used with the adapter please be sure to bring the serial number from the computer; it is required to process potential replacements. To locate the serial number for your computer please follow the steps in the article appropriate for your computer: MacBook, MacBook Pro, or MacBook Air.

If you plan to visit an Apple Retail store please make a reservation at the Genius Bar using http://www.apple.com/retail/geniusbar/.



**Still need help? Speak to an Apple Expert**

Arrange a phone call with one of our Apple Experts who specializes in your exact question. Talk to us now or later at your convenience. We'll even call you.

Get started

*NOTE: Callbacks are currently only available for U.S. and Canada phone numbers.*

# EXHIBIT C

//0v0

★ ★ ★ ☆ ☆
**MagSafe Power Adapter is great, the cable sleeve is not.**
Written by MH from Herrlberg
Jan 12, 2009

The design of the first (larger) Power Adapter had a bigger flaw, but I guess the newer one still has it. After longer use the cable near the MagSafe connector will break, first the outer conductors (shield), then the inner ones. The reason is the sharp bend of the cable near the MagSafe connector. A better tapered plastic sleeve would help. What a pity that a breaking cable can ruin the nice adapter.
The symptoms are not charging (depending on the position of the cable) first, then the conductors getting hot up to melting the isolation.
I just had to repair myself one of them, as the Apple store declined to replace it,after two years of use. Fortunately only the outer conductors were broken yet.
Procedure:
1 remove the additional sleeve at the connector to get to the shield wires there
2 remove some of the outer isolation of the cable to get to the shield there
3 solder a stranded wire to connect the shields again
4 finish it off with shrink tube with melting adhesive inside. Not nice looking (the tube is black) but it works.
You do need some experience with soldering. (I am an MSEE.)

(42 of 45 people found this review useful)

★ ★ ★ ☆ ☆
**A good product bogged by a simple design flaw**
Written by SC from White Pigeon
Mar 13, 2009

In the first weeks of having my computer I had 2 opinions of this adapter; the magnetic connection is a genius design. And within 2 weeks I knew the thinner length of cord would be a problem.

For the reviewer who stated these issues are from 'mistreatment', obviously you have never moved your MacBook. This is a "laptop" cord- the manufacturer must expect this cord to be wrapped up for transit and design it accordingly.

It's the common sense side of engineering/product design- and as an engineer and designer, the flaw is quite obvious. I only travel with mine occasionally, and have always, always felt quite a large loop where the smaller section of cord comes out because it is such an obvious weak spot. For some it may be an abuse issue, but I suspect many of these reviews are not. I was lucky to have had my MacBook Pro for over 2 years before I had to replace this adapter- had it traveled with me I'm sure it would have happened much sooner. It is simply unrealistic to expect users to have their cords stretched perfectly straight in all conditions- and all it takes is a small curve over time to cause it to wear, the coating to crack and the cord to fray.

Worse, the fix is relatively simple- the ends of that portion of cord need to be supported. I am not upset that I needed to replace a computer component, but the design could be MUCH better- and that level of design is, I think, what their loyal users have come to expect.

(30 of 31 people found this review useful)

★ ★ ★ ★ ★
**Getting Your money Back**
Written by RR from Kingston
Nov 20, 2008

Hey everyone,
the cord on my power adapter also melted and I just bought a new one from the apple store. If you take in the melted cable, they will refund the money back, because according to the workers, It is "impossible" for them to melt. So lo and behold, if you show it to them, they'll reimburse you. So yea, it's a pain to get a new one every time it melts, but hey, they'll give it to you for free!

(26 of 26 people found this review useful)

★ ★ ★ ☆ ☆
**Longevity an issue... Apple service, Genuis!**
Written by WW from Saint Paul
Oct 8, 2008

Like many of the other posters, my original macbook pro adapter started having issues in the wire, close to where it connects to the laptop. It wouldn't continue to deliver power.

Since my laptop is long out of warranty I figured I would be shelling out $80 for a new one, but decided to take into the Genuis bar for the heck of it. They gave me a new adapter at no cost, once again affirming that Apple creates a great customer experience.

(25 of 27 people found this review useful)

★ ★ ★ ☆ ☆

I have had my Mac Pro for over a year and I have replaced the

Was this useful?

Report this as inappropriate

Exh. C - Page 25

Apple 85W MagSafe Power Adapter (for M     Pro) - Apple Store...     http://store.ap     /us/reviews/MA938LL/A?fnode=MTYINDE...

**FAULTY!!!**
Written by KA from Bronx
Aug 13, 2008

charger 4 times.

I honestly do not want to buy my 5th charger because I know it will only last about 3 months. But that makes more sense than letting my S2500 laptop sit useless.

Apple needs to redesign this faulty product.

(24 of 25 people found this review useful)

Report this as inappropriate

★ ★ ★ ☆ ☆
**Mine too...**
Written by JG from MAKAWAO
Oct 12, 2008

My 85W MagSafe Power Adapter has split where the wire connects to the power source. I admit I haven't been an angel with it, but I have also been aware and careful in its transportation. Based on all the other reviews, I'd say it's time to add a bit of good old Mac quality to this particular part of the otherwise excellent MacBook Pro experience! (And give me a free replacement while yer at it!)

(19 of 19 found this review useful)

Was this useful?

Report this as inappropriate

★ ★ ★ ☆ ☆
**cabel ~fire hazard**
Written by YM from Long Beach
Apr 12, 2008

I think the new magnetic power adapter is a much better idea. I do have the extended warranty because my cord started fraying and it was a FIRE HAZARD waiting to happen, I called apple and they did send me a new one right away. I did not get everything new though :( ~the part where you have to plug in was not sent to me, feel if I need to use my warranty and get a new item then send me EVERYTHING NEW, don't be cheap Apple you products are not cheap so don't be cheap in this like this.

Also I think the power adapter is stupid in the sense that you HAVE to have large end with you cause where can you find a plug that doesn't need an extension or one that is 1 foot away from you computer, So my complaint is that I travel with my computer everywhere so a better way to make the adapter more travel friendly would be great.

(25 of 35 people found this review useful)

Was this useful?

Report this as inappropriate

★ ★ ★ ★ ★
**starting to fray**
Written by MB from Fairbanks
Oct 26, 2007

i love the idea of magsafe...just needs redesigning...i've had my mbpro for about 1.5y and I noticed my adapter is starting to fray....thought it was just mine...I wont be leaving it plugged in and unattended anymore after reading about how they starting melting and smoking, etc....bummed it's gonna cost me $80 to replace it..

(17 of 19 people found this review useful)

Was this useful?

Report this as inappropriate

★ ★ ★ ★ ☆
**I'm Torn...**
Written by AR from SAINT GEORGE
Sep 28, 2008

On giving this thing a full shining 5 star rating or a finding a way to give it less than 1. Let me explain: When it's working this is the greatest thing since sliced bread, you wonder how you ever used a regular adapter before, and I'm really not over exaggerating. The safety the magnetic connection provides to your system is invaluable. In fact I think every power adapter on every laptop or other portable device should be modeled exactly like this one. (And I fix computers for a living)

So why the desire to pan it?
Well no review would be complete without mentioning it's nasty little habit of coming loose internally and the wires melting through the plastic jacket near the end. I had my own suspicions of why this was happening, that the offending adaptors had simply been mishandled and were showing signs of their abuse. That was until 3 days ago when my impeccably handled adaptor showed it's first signs of impending doom, it stopped charging unless you applied pressure near the end and getting very warm. Of course Apple was more than willing to ship me a replacement, but what if I had been out of the country, or on a job and unable to access any important files, booking info, or anything else in there? What if it melted and caught fire while I was away from home? Would I still have a home?
FIX THIS APPLE! You've made us all come to expect much more from our computer products. This problem is dangerous, time consuming, and simply unacceptable.

(14 of 14 people found this review useful)

Was this useful?

Report this as inappropriate

4 of 5

5/5/2009 11:02 AM

★ ★ ★ ★ ★

**To good to last**
Written by JG from Kenton
Jan 21, 2008

I have had my MacBook Pro for almost two years now and I love that computer. I notice the power cord starting to act up about 2 weeks ago. It would start to kid on and off when I had it plugged in, doing my homework. Then last night I fell asleep and smell this burning smell. I fired my computer up and that wasn't it. Then I noticed the power cord was not glowing. When I unplugged it, I was burnt about halfway through it from the white head that glows. It had gotten to hot somehow. The burnt areas are now frayed and the only way I can get it to work is to hook it up and then bent it upwards. I notice though everytime I plug it in, it seems to want to get so hot and melt more. I had to buy a new power cord, so I am hoping that the next one will not do the same.

(127 of 240 people found this review useful)

‹ prev   1   2   3   4   next ›

Was this useful?

Report this as inappropriate

Copyright © 2009 Apple Inc. All rights reserved.    Terms of Use    Privacy Policy

Help    Account    Site Map    Returns and Returns    Contact Us

You can also order from The Apple Store by calling 1-800-MY-APPLE.

5/5/2009 11:02 AM

Exh. C - Page 27

★ ★ ★ ☆ ☆

**mag adapter...hot**
Written by FC from COLLEGE
STATION
Dec 12, 2008

my adapter worked fine. I just started to notice that it was hot when I pulled the adapter away from my MacBook Pro. Now the wire as it inserts into the magnet part is frayed. The company, however was great and is replacing it. As far as customer service they've been great. I had a battery melt in the back about 4 months ago and replaced it free in 48 hours.

(12 of 12 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ★ ☆

**You need to buy more than one...**
Written by JR from New Brighton
Mar 22, 2008

Okay, when you get a MacBook or MacBook Pro, buy another power adapter! These power adapters work well, but the cord leading to the magnetic plug is thin, and fragile. I watch in horror as some people grab the magnetic plug and wrap the cable tightly around the brick's clips. This will fray your cable and cause a short. In my opinion, the design of this adapter could be improved. The MacBook Air's power adapter magnetic plug design would work better, being at a 90° angle, and less prone to hidden cable fray.

(20 of 28 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**Cord fraying**
Written by AS from North
Vancouver
Oct 9, 2007

My adapter cord came apart at the end of the grommet in the same place everyone else seems to. I have now purchased a new one.
From my perspective the cause seems to be the sudden ending of the grommet, this creates a hard point around which the wire is bent every time it is coiled up. A right angle bend happens whether you coil the wire around the cable flaps or around the actual transformer itself.
A simple solution for Apple would be to use a grommet that tapers in both thickness and stiffness over a slightly longer length. This would eliminate the hardpoint around whic th the cable bends and breaks.

(11 of 11 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**some good, some bad**
Written by CK from VIRGINIA
BEACH
Nov 30, 2008

I have a 60W for my MacBook that I've had for over a year, other than becoming way too hot most of the time, no problems so far (knock knock). My wife's brand new (2 mos at the time) MacBook Pro has the 85W and it failed, and became a fire hazard to her office at the same time. Before that even, at times it would fail to charge or operate her machine at all. Of course, this was immediately after opening her own business and her first Mac experience after I convinced her switch.

(11 of 14 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ★ ★

**No Problems-- At least not yet**
Written by RS from Eldon
Feb 25, 2008

amid all the negative reviews about this particular product- I've yet to experience issues.

Granted, I've not had my macbookpro too long (oct 07) - but I use the 85W adapter daily. It travels with me- office/home-- it gets coiled up at the end of a day.- I'd say I've been a little rough on it- but so far no signs of damage or any of the things reported.

(12 of 16 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**Much of the same...but**
Written by JC from Bristow
Dec 24, 2008

I have now had to replace my third MagSafe charger in 15 months. I love my MAC, but if you are going to buy one you HAVE TO BY THE PROTECTION PLAN. When the charger goes out I make a ten minute call and they send a new one out to me in a few days. I am not sure what other people are doing though to get the wire to expose. I currently own three chargers and have never had that problem.

(7 of 8 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**Solid, have had for a year with no problems**

I've had my MBP for a year and I have never had any problems with the MagSafe Power Adapter, despite it being tossed around in my bag and scratched to high heaven. I've had many

Was this useful?

---

Apple 85W MagSafe Power Adapter (for M  Pro) - Apple Store...   http://store.ap[   ]s/us/reviews/MA938LL/A?fnode=MTYINDE...

---

Written by TL from Morristown
Aug 27, 2008

Instances where I was in a public area and someone just accidentally snags my cord and it pulls out harmlessly (good for nieces learning to walk, too!).

While the body itself gets hot, I've never had a problem with it, especially that melting bit everyone is talking about, and my connection point, while pushing a lot more gray than when I first got it, still looks pristine. It should be noted though that I keep my MagSafe away from anything flammable, as it does get fairly hot, and my laptop and laptop area is cooled at all times.

But I have left my computer on and MagSafe plugged in over night and over days with no problems. Nearly all my friends own MBPs with MagSafes too and have never had a problem.

(12 of 18 people found this review useful)

Report this as inappropriate

---

★★★★☆

**No problems after 9 months**
Written by RA from Pasadena
Jul 13, 2008

I have had mine since Oct '07 and so far no issues with the cable connection at the magnetic head. I travel a lot and often just throw this in the bag so I would have expected wear by now.

I agree that the strain relief could be much better; the grey sleeve which comes out of the white rectangular head should be bonded to the actual cable and the sleeve should be crimped to the head internally. Apple engineers should look at what is used by people who make field instruments to make a robust product.

The adapter also gets too hot. Some of the sleekness should be sacrificed to allow more surface area and a a coating could be applied which would improve the radiative cooling.

(8 of 10 people found this review useful)

Was this useful?

Report this as inappropriate

---

★★★★★

**Design flaw? or what**
Written by HM from falls church
Feb 25, 2008

For almost 2 years I have been using this power adapter without any problems until 2 days ago it stopped charging my MBPro. Apparently the problem is that the cord had separated from the mag safe. If the cord had been reinforced properly it would not have broken so soon. If that cord were detachable like the extension cord, then this would be cheap and easy to fix. For this reason so many are writing complaints and I could have easily given it 5 STARS

(10 of 14 people found this review useful)

Was this useful?

Report this as inappropriate

---

★★★★☆

**Good Idea, but poorly executed**
Written by KR from MOUNT PLEASANT
Jan 17, 2008

I've yet to experience any problems with my MagSafe power adapter, but I've also been very, very cautious in use. This is one of those few Apple products that is probably a good idea in theory, but not well thought out.

Before ordering my MacBook Pro, I read through many of the reviews for this product (and other accessories), so when I first received my MacBook Pro, I immediately implemented a few of the recommendations listed in the reviews:
- First, I connected the power cord with the 3-prong plug to the adapter to ensure that I had the best possible electrical connection.
- Second, I used the small clip (intended to secure the cord when the adapter is wrapped up like in the photos on this site), as an additional strain relief. I clipped it to my external mouse USB cord, which I plug in next to the MagSafe connector.
- Finally, whenever I have to disconnect the MagSafe connector, I always grab the (very small) hard plastic piece to pull it away from the computer.

Had Apple simply made the connector (with that cute little tail) a bit larger and easier to get hold of, they might have prevented a few of the problems they're having. I know that Apple is known for creating stylish products, but when it comes to power cords and adapters, maybe function should edge out form in the design process.

(31 of 56 people found this review useful)

Was this useful?

Report this as inappropriate

---

‹ prev   1   2   3   4   next ›

Help   Account   Site Map   Sales and Patents   Contact Us

You can also order from The Apple Store by calling 1-800-MY-APPLE.

Copyright © 2009 Apple Inc. All rights reserved.   Terms of Use   Privacy Policy

4 of 4

5/5/2009 11:02 AM

Exh. C - Page 29

Apple 85W MagSafe Power Adapter (for M         k Pro) - Apple Store...        http://store.ap     n/us/reviews/MA938LL/A?fnode=MTY1NDE...

★ ★ ★ ★ ☆

**Apple took care of me...**
Written by MC from Pennington
Nov 6, 2007

My adapter also frayed after about 17 months, however, with Applecare, Apple is sending me a new one (free of charge) in 3-5 days. While it probably shouldn't fray so early, they have taken care of me.

(8 of 11 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ★ ★

**Power Chord Fire Hazard**
Written by RM from Apple Valley
Jan 14, 2008

My power chord sparked, melted and finally burned out at the connector to the magnetic plug.

The chord housing pulled away from the connector after about a year of use. Once it puts away, it allows the chord to twist internally. More strength and a safety recall needs to be performed on this part. I can't believe a fire hasn't been started by it yet. I have dozens of other machines and never had this hazard appear, except on my MacPro 17inch

(5 of 7 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**My (older version) 85W MagSafe adapter also melted...**
Written by RT from Baltimore
Nov 1, 2007

So I called Apple's customer service after reading similar posts. The only gripe I had was that I had to wait 30-45 min on hold, but they quickly admitted fault and told me they'd ship me a new adapter in 5-7 days. That was yesterday afternoon. Today I'm sitting here with my new adapter and a box to return my defective one for free.

So while I'm disappointed in the old adapter and the long wait time on the phone, I'm gladly surprised the new adapter shipped next day.

(9 of 15 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**Warning...warning...take action**
Written by SG from Kaneohe
Apr 16, 2009

My power cord (MacBook Pro) started to fail after 18 months of use. It started melting around the power connection in the computer. I thought I was extremely careful while using it, but it is time to get a new one. Luckily, It has given me warning signs and I can buy one before the current one finally fails to function. Some people have claimed in their reviews that if you take care of it, it will not melt. I will have to disagree. If it gets too hot, it will melt. This hasn't sent me running away from my MAC, but maybe the APPLE techs can focus some of their attention on correcting this problem instead of just inventing new things for us to buy and play with. I'm glad I came across everyones comments, because I learned:
1. Several people have had this problem.
2. The Apple store doesn't always keep this item in stock.
3. Just go ahead and order by mail for $79
4. Expect it to happen again until the cord is improved.

(3 of 4 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**Scared to continue using it.**
Written by TL from Lafayette
Nov 3, 2008

The charger that came with the computer worked for about 7 months. I noticed that it was using the battery while plugged in, and the indicator light was off. I went to adjust the plug in the wall and the white block burned my fingers very badly, almost like touching a hot pan.

I let it cool off for an hour and tried it again and it still works, but reading reviews and seeing other reports makes me nervous about continuing to use it. I don't know if it just got really hot or if it shorted out. I can't find information from Apple about this, only personal reviews.

(8 of 14 people found this review useful)

Was this useful?

Report this as inappropriate

---

★ ★ ★ ☆ ☆

**Great Idea Bad Product**
Written by JJ
Dec 5, 2007

Wonderful idea- five stars on the idea zero on the final product. The wire was bound to fray so put the connection in the back of the computer for starters- why wouldn't the better design be to make sure just the wire could be replaced instead of the entire power converter. That's the sort of thing I'd do to make extra money- attach a 20 dollar power converter to a 2 dollar wire that will for sure fray and slap an extra 50 on it. Whoops I'm a big business and I needed to find a way to make my investors money. And a shout out to the Genius guys: thanks for saying I needed a new casing when it was a worthless battery pressing

Was this useful?

Report this as inappropriate

---

3 of 4

Apple 85W MagSafe Power Adapter (for M    Pro) - Apple Store...    http://store.ap    n/us/reviews/MA938LL/A?fnode=MTYINDE..

against my mouse that could be replaced for free. Genius? More like idiots who went to a paid seminar for a couple of hours to figure out how to not use my warranty. What a joke of a company if they wont listen to their customers. Glad I didnt pay for this piece. Good thing I bought a used beat up toshiba to keep myself going. Pretty sure my satellite pro from the 90s has a power adapter that still works after 10 years of use.

(2 of 2 people found this review useful)

★★★☆☆

**Smart idea, bad build, Great Customer Service**
Written by SD from Mississauga
Nov 4, 2007

That says it all really. The magnetic power tip is really a smart idea. Several times, either I or my toddler has tripped over the cable and it just snaps away instead of pulling the laptop with it. So that's smart. Agree with everyone here that the wires fraying is a bad build quality. Apple must do something about it soon. However, based on reviews here, I went to the Apple Store in Toronto and they replaced it without too much hassle. Thanks to review Written by ES on October 30, 2007

Was this useful?

Report this as Inappropriate

(7 of 12 people found this review useful)

★★★☆☆

**Needs Improvement...**
Written by DH from Akron
Aug 19, 2008

I'm not sure what all this melting talk is about, but the smaller cord on mine has yanked out of the adapter box leaving exposed wires. It still works, but the day that it doesn't will be a sad one indeed. But what else are you gunna do? Throw the computer away? Nope, just give Apple another $80...

Was this useful?

Report this as Inappropriate

(3 of 5 people found this review useful)

★★★☆☆

**Pretty good**
Written by SH
Feb 13, 2008

It works, but it breaks easily if you don't take super good care of it.

Was this useful?

Report this as Inappropriate

(6 of 11 people found this review useful)

★★★★☆

**Decent Product**
Written by RM from Orlando
Jan 31, 2008

I've had my MacBook Pro for about two years now, and it was only recently that the power cord gave up on me. The magnetic part and the cord separated, but I used it for another two months before I decided to get another one, though I'm sure my old one could have kept going. I never had any problems with melting or fraying, so I don't understand how others have.

Was this useful?

Report this as Inappropriate

(1 of 1 people found this review useful)

‹ prev   1   2   3   4   next ›

Copyright © 2009 Apple Inc. All rights reserved.   Terms of Use    Privacy Policy

Help    Account    Site Map    Sales and Refunds    Contact Us

You can also order from The Apple Store by calling 1-800-MY-APPLE.

5/5/2009 11:01 AM

Exh. C - Page 31

Apple 85W MagSafe Power Adapter (for M...   : Pro) - Apple Store...      http://store.app...      y/us/reviews/MA938LL/A?fnode=MTY1NDE...

Search

Shop Mac    Mac Accessories    Power                               Help    Account    Cart

Search Store                    Apple 85W MagSafe Power Adapter (for MacBook Pro)

Shop Mac
Shop iPod              Customer Ratings  ★ ★ ☆ ☆ ☆   (Based on 864 reviews)                    Write a review
Shop iPhone

Sort by                ★ ★ ★ ★ ☆                   The end of my cord melted after 17 months and the inside    Was this useful?
                       Satisfied                    began to fray, but apple agreed to replace it immediately under
  Newest               Written by LH                the applecare warranty if I sent them my damaged cord. The
  Oldest               Nov 12, 2007                 magnetic power cord has worked great other than that one time.
                                                                                                            Report this as inappropriate
  Most Useful
  Highest Rated                                     (2 of 3 people found this review useful)
  Lowest Rated
                       ★ ★ ★ ★ ☆                   I won't give this adapter glowing reviews, but I do think that the   Was this useful?
Filter by Rating       Not as bad as many have      low rating is due largely to the minority of people who have had
                       indicated                    bad or defective units. I mean, how many people who are
  All Ratings          Written by MS from Aptos     satisfied with their power adapter actually think to write about it?
                       Oct 29, 2007                 ...um, other than me...                                  Report this as inappropriate
  ★ ★ ★ ★ ★                                         Here's what I LIKE: mag-safe connector actually works. It
  ★ ★ ★ ★                                           disconnects when someone trips on the cord, but stays put
  ★ ★ ★                                             most other times. It charges the battery to my 17" MBP fairly
  ★ ★                                               fast (~1 hour when I'm not doing anything processor-intensive).
  ★                                                 It comes with a 5ft extension plug great for leaving behind at
                                                    work, as well as the two-pronged direct plug for travel. The
                                                    built-in cord wrap keeps the cord from becoming a tangled
                                                    mess.

                                                    Here's what I HATE: It costs $79 to replace. Ouch. The avdc
                                                    converter (the "box") is quite large, much larger than the 65w
                                                    powerbook version so it doesn't fit into most computer bags as
                                                    easily. It can get uncomfortably warm when charging.

                                                    (12 of 23 people found this review useful)

                       ★ ★ ★ ★ ☆                   I like the feel of the charger. I've had it for a year. It's been    Was this useful?
                       It was nice while it worked   pretty convenient to carry, although it's heavy, because the wire
                       Written by PM from Garden Grove   winds up securely. Unfortunately the wire has melted at the
                       Oct 20, 2007                 magnet now and I am afraid it will not last me the week.           Report this as inappropriate

                                                    It is still charging thank goodness, but I am trapped in the
                                                    middle of Turkey and not likely to get a replacement soon from
                                                    what I hear. This is a nice computer but with a dead battery it's
                                                    just a nice white paper weight.

                                                    I'm unhappy.

                                                    (1 of 1 people found this review useful)

                       ★ ★ ★ ☆ ☆                   melting powercord and smell of plastic and I can see the frayed   Was this useful?
                       meltdown for me too          wires... this really should not be happening!!! Ordered a new
                       Written by KH from ASPEN     one so I guess I will see
                       May 4, 2009                                                                                   Report this as inappropriate

                       ★ ★ ★ ☆ ☆                   I have Apple Care Protection. They overnighted a brand new      Was this useful?
                       Chord frayed from 1 yr use.   cable at no cost. Maybe it's true- these cables are not as good
                       Apple replaced it            as the old ones - my iBook G4 power cable has been all around
                       Written by CF from Wantagh   the world and has had no problems for 3 years.                   Report this as inappropriate
                       Oct 26, 2007
                                                    (2 of 6 people found this review useful)

                                                    ‹ prev   1   2   3   4   next ›

1 of 2                                                                                          5/5/2009 11:03 AM

Exh. C - Page 32

FILED *Paid*

2009 MAY -1  P 2: 0

RICHARD W. ___
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J.

1   ZELDES & HAEGGQUIST, LLP
    HELEN I. ZELDES (220051)
2   ALREEN HAEGGQUIST (221858)
    625 Broadway, Suite 906
3   San Diego, CA  92101
    Telephone: 619/342-8000
4   Fax:  619/342-7272
    Email: helenz@zhlaw.com
5   alreenh@zhlaw.com                    E-filing

6        -and-

7   MEHRI & SKALET, PLLC
    STEVEN A. SKALET (*admitted pro hac vice*)
8   CRAIG L. BRISKIN (*admitted pro hac vice*)
    1250 Connecticut Ave. NW, Suite 300
9   Washington, DC 20036
    Telephone: 202/822-5100
10  Fax: 202/822-4997
    sskalet@findjustice.com
11  cbriskin@findjustice.com

12  Attorneys for Plaintiffs

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                       SAN JOSE DIVISION

16  NAOTAKA KITAGAWA, JR., TIMOTHY J.              C09    01911
17  BROAD and JESSE REISMAN, on behalf of     Case No.
    themselves and all others similarly situated,
18                                                 CLASS ACTION COMPLAINT
19           Plaintiffs,
20                    v.
21  APPLE, INC., and, DOES 1 THROUGH 50,          JURY TRIAL DEMANDED
    inclusive,
22
             Defendants.
23

24

25

26

27

28

    CLASS ACTION COMPLAINT

1       Plaintiffs Naotaka Kitagawa, Jr., Timothy J. Broad, and Jesse Reisman ("Plaintiffs"), by and

2  through their attorneys, bring this action on behalf of themselves and all others similarly situated

3  against Apple, Incorporated ("Apple" or "Defendant") and Does 1 through 50.  Plaintiffs hereby

4  allege, on information and belief, except as to those allegations which pertain to the named

5  Plaintiffs, which allegations are based on personal knowledge, as follows:

6                        **NATURE OF THE ACTION**

7       1.       Plaintiffs bring this class action on behalf of purchasers of Apple's "Apple 85W

8  MagSafe Power Adapter (for MacBook Pro)" and the "Apple 60W MagSafe Power Adapter (for the

9  MacBook)" (referred to collectively as the "MagSafe Adapter") in California and throughout the

10 United States.

11      2.       The MagSafe Adapter was represented as being designed with a "magnetic DC

12 connector that ensures your power cable will disconnect if it experiences undue strain and helps

13 prevent fraying or weakening of the cables over time.  Designed to be the perfect traveling

14 companion, the adapter has a clever design which allows the DC cable to be wound neatly around

15 itself for easy cable storage."  *See* http://www.apple.com/store.

16      3.       The MagSafe Adapter is the only plug-in power source Apple provides for the

17 MacBook and MacBook Pro computers.  However, the MagSafe Adapter is not fit for the ordinary

18 purposes (powering up and charging the MacBook and MacBook Pro portable laptop computers) for

19 which it was intended.  Instead, the MagSafe Adapter – because it was negligently designed and

20 manufactured – dangerously frays, sparks, and prematurely fails to work.  The MagSafe Adapter

21 poses a present and latent danger to its users when used as directed.  Apple is and was aware of this

22 dangerous defect, but it has failed to disclose it or warn Plaintiffs and the Class of the defect.  As of

23 the date of this filing, it continues to market and sell the defective MagSafe Adapter, resulting in

24 continuing damage to the Class.  As a result, Plaintiffs and the Class (which likely number in the

25 millions) have purchased flawed and dangerous Adapters which prematurely fail and present fire

26 hazards.

27      4.       Plaintiffs bring this class action on behalf of themselves and all others similarly

28 situated, asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §

<div align="center">1</div>

CLASS ACTION COMPLAINT

1   17200 *et seq.* ("UCL" or "§17200"), the Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et*

2   *seq.* ("CLRA"), the Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(1), Breach of the Implied

3   Warranty of Fitness for a Particular Purpose, Breach of the Implied Warranty of Merchantability,

4   violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1790 *et seq.* ("Song-

5   Beverly"), Negligence and  Unjust Enrichment.  Plaintiffs seek damages and equitable relief on

6   behalf of the class, which relief includes but is not limited to the following:  providing class

7   members with a safe, defect-free Adapter, or if no such product exists, to refund Plaintiffs and class

8   members the full amount paid for their Apple computer which relies on the MagSafe Adapter for its

9   power and usage; a refund of the replacement cost of the defective MagSafe Adapters;  costs and

10  expenses, including attorneys' fees; and any additional relief that this Court determines to be

11  necessary to provide complete relief to Plaintiffs and the Class.

12                                **JURISDICTION AND VENUE**

13          5.          This Court has subject matter jurisdiction pursuant to 15 U.S.C. §2310(d)(1)(B) and

14  28 U.S.C. §§1331, 1332 and 1367, because Plaintiffs' claims arise under federal statute.  The Court

15  has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

16          6.          With respect to the Magnuson-Moss Warranty Act claims, the amount in

17  controversy in each individual claim is at least twenty five dollars ($25), the proposed class consists

18  of over 100 members, and the aggregate damages exceed $50,000.

19          7.          This Court has original jurisdiction over this action under the Class Action Fairness

20  Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of the

21  Class, because the proposed Class contains more than 100 members, the aggregate amount in

22  controversy exceeds $5 million, and members of the Class reside across the United States and are

23  therefore diverse from Defendant.

24          8.          This Court has personal jurisdiction over Apple because its corporate headquarters

25  are located in Cupertino, California, it is authorized to conduct business in California, and it has

26  intentionally availed itself of the laws and markets of California through the promotion, marketing,

27  distribution and sale of its MagSafe Adapter in California.

28

                                            2

CLASS ACTION COMPLAINT

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District. In addition, Defendant is headquartered in Santa Clara County, which is assigned to this Division of the Court. Plaintiffs are filing concurrently herewith an affidavit stating facts showing that this action has been commenced in a proper county pursuant to Cal. Civ. Code §1780(c).

## INTRADISTRICT ASSIGNMENT

10.     Assignment to the San Jose Division is proper because a substantial portion of the acts, events, and omissions giving rise to this action occurred in Santa Clara, which is within the purview of the San Jose Division of this District.

## PARTIES

11.     Plaintiff Naotaka Kitagawa, Jr. ("Mr. Kitigawa") resides in Cupertino, California. Plaintiff purchased an Apple MacBook computer, which came with an Apple MagSafe 60W Adapter, in May of 2006. Approximately a year-and-a-half after purchase, Plaintiff noticed the adapter would cut power intermittently, that the cable near the connector became frayed and the jacket over the wiring showed signs of melting and discoloration from heat. Plaintiff purchased an 85W MagSafe replacement adapter from an Apple Store in San Jose, California on December 19, 2008 for $79.00 plus tax, totaling $85.52.

12.     Plaintiff Timothy J. Broad ("Mr. Broad") resides in Cincinnati, Ohio. In September 2006, Mr. Broad purchased an Apple MacBook computer which came with an Apple MagSafe 60W Adapter. Approximately fourteen months after purchase, Mr. Broad was using his laptop computer when he noticed that the MagSafe Adapter cable was severely overheating. "It almost burned my hand when I brushed it accidentally." Concerned something was wrong, Mr. Broad kept an eye on the Adapter and noticed that it had started to melt, forming a large hole in the cable. The Adapter then shorted and stopped working. Mr. Broad feared his home "might have caught fire" if he had not been present at the time. Mr. Broad bought an 85W MagSafe replacement adapter on E-

3

CLASS ACTION COMPLAINT

1   bay in mid-September, 2006 for approximately $58.00.  That adapter recently failed in similar
2   fashion and Mr. Broad purchased his second replacement adapter.

3          13.       Plaintiff Jesse Reisman ("Mr. Reisman") resides in Fort Washington, Maryland.  In
4   or about June 2006, Plaintiff purchased an Apple MacBook Pro computer, which came with an
5   Apple MagSafe 85W Adapter.  Approximately a year and a half after purchase, Mr. Reisman noticed
6   that the MagSafe Adapter became "noticeably hot" when the computer was in use and that the cable
7   wires had become exposed at the point where cable entered the main adapter body, as well as at the
8   point of insertion into the MagSafe connector, creating a hazardous condition.  Mr. Reisman
9   purchased an 85W MagSafe replacement adapter on January 18, 2008 from Amazon.com for $70.38.
10  Mr. Reisman's replacement adapter is now showing signs of premature failure.

11         14.       Defendant Apple, Inc. ("Apple") is incorporated in California.  Its executive offices
12  and company headquarters are located in Cupertino, Santa Clara County, California.  Apple is
13  registered to do business in the State of California, and conducts substantial business here.  Apple is
14  a publicly traded company, with net sales of over $32.4 billion in 2008, $14.5 billion in the United
15  States alone (up 26% from 2007)[1].  Apple sells its MacBook and MacBook Pro Computers ("Subject
16  Computers") and MagSafe Adapters to consumers throughout the United States, including to at least
17  tens of thousands of consumers in California, which constitutes a significant percentage of Apple's
18  sales in the United States and California.

19         15.       The true names and capacities of Defendants sued herein under C.C.P. § 474 as
20  Does 1 through 50, inclusive, are presently unknown to Plaintiffs, who therefore sue these
21  Defendants by fictitious names.  Plaintiffs will amend this Complaint to show their true names and
22  capacities when they have been ascertained.  Each of the Doe Defendants is responsible in some
23  manner for the conduct alleged herein.

24
25
26  _____
27  [1] Apple, Inc.'s 2008 10-K.
28

CLASS ACTION COMPLAINT                                4

## DEFENDANT'S UNLAWFUL CONDUCT

16.   Since the early 1970s, Apple has been engaged in the business of designing, manufacturing, marketing, distributing and selling personal computers and related products and services through its own retail (and more recently, online) stores, direct sales, third party wholesalers and resellers.

17.   On or about February 2006, Apple began designing, manufacturing, warranting, advertising, marketing, selling and providing the MagSafe Adapters at issue to consumers throughout the United States for use with its new MacBook series laptop computers. The MacBook was the first generation of this new series and the MacBook Pro the second generation (collectively, the "Subject Computers"). Apple sold the MagSafe Adapters to Plaintiffs and the Class as original equipment with its Subject Computers, as separate accessories for them, and also as replacements. The MagSafe Adapter is the only power source Apple provides with or for its MacBook and MacBook Pro computers.

18.   Apple markets the benefits of the MagSafe adapter for both its MacBook and MacBook Pro computers.

19.   Regarding the 85W MagSafe Adapters that come with the MacBook Pro series laptop computers, Apple makes the following representations:

> The MagSafe Power Adapter is just that: a magnetic connection instead of a physical one. So tripping over a power cord won't send your shiny new MacBook flying off a table or desk; **the cord simply breaks cleanly away, without damage to either the cord or the system. As an added nicety, this means less wear on the connectors.**[2]

<p style="text-align:center">* * * * *</p>

> Innovative right down to the power cord. The MacBook Pro power adapter with MagSafe connector is just that: a magnetic connection instead of a physical one. So, if you happen to trip over a power cord, you won't send MacBook Pro flying off a table or desk; the cord simply disconnects, without damage to either the cord or the system. As an added nicety, this means less wear on the connectors.[3]

---

[2] http://www.apple.com/macbook/design.html

[3] http://www.apple.com/macbookpro/design.html

CLASS ACTION COMPLAINT

* * * * *

Designed to be the **perfect traveling companion**, the adapter has a clever design which allows the DC cable to be wound neatly around itself for easy cable storage.[4]

20.     Regarding the 60W MagSafe Adapter that comes with the MacBook series laptop computers, Apple makes the following representations:

Good design leaves nothing to chance. Great design anticipates it. No surprise, then, that MacBook features little touches — like a **klutz-proof power adapter** and a **nifty magnetic latch** — that make your computing experience as streamlined as the MacBook itself.[5]

* * * * *

Compact, durable, everything-you-need MacBook.[6]

* * * * *

MacBook makes it easy to hit the road thanks to its tough polycarbonate case, built-in wireless technologies, and innovative MagSafe Power Adapter that releases automatically if someone accidentally trips on the cord.[7]

* * * * *

**Designed to withstand the rigors of life on the go**, every MacBook comes with Apple's MagSafe Power Adapter, **created especially for mobile users** that makes charging the notebook's battery easier than ever by magnetically coupling the power cord to the MacBook. The MagSafe Power Adapter **safely disconnects from the notebook when there is strain on the power cord**, helping to prevent the notebook from falling off its work surface.[8]

---

[4] http://store.apple.com/1-800-MY-APPLE/WebObjects/AppleStore.woa/wa/RSLID?mco=816A0BD3&fnode=home/shop_mac/mac_accessories/power&nplm=MA938LL/A#overview

[5] http://www.apple.com/macbook/design.html

[6] http://www.apple.com/getamac/whichmac.html

[7] http://www.apple.com/macbook/design.html

[8] Apple Press Release – May 16, 2006

CLASS ACTION COMPLAINT

6

21.     Apple also boasts that its MacBook Pro is its "state of the art"[9] flagship portable designed "for mobile professionals" and "life on the road."[10]

22.     Apple markets the MagSafe Adapter for both the MacBook and MacBook Pro as "designed to be the perfect travel companion."[11]

23.     However, contrary to its advertisements, Apple's MagSafe Adapter is not "durable" or "designed to withstand the rigors of life on the go" but rather, fragile and fails when used as intended.

24.     The MagSafe Adapter consistently frays at the end of the cable going in to the magnetic connector. These exposed wires turn the MagSafe Adapter into a fire and electrical shock hazard for Apple's customers. A common point of failure is at the end of the MagSafe cable closest to where it connects to the computer. Affixed to that end is a magnetic connector.

25.     Any adapter designed for a laptop computer must be durable enough to withstand the uses for which it is intended. Such normal use includes coiling the plug when not in use. The Apple MagSafe Adapter is designed so that the power cable will be wound around itself for storage or when in transport and also requires the user to clamp the cable onto itself to keep it in place.[12] This normal folding and clamping causes undue stress, wear and degradation to the MagSafe Adapter cable.

26.     As the MagSafe Adapter designer and manufacturer, Apple possesses specialized knowledge regarding the composition of its MagSafe Adapter, and is in a superior position to know and learn about defects in its MagSafe Adapter. In fact, as evidenced by the many purchasers of the MagSafe Adapter who have gone through the trouble of logging on to Apple's website to complain of the problems alleged herein, Apple has been aware of these defects for nearly three years, but has

---

[9] http://www.apple.com/macbookpro/

[10] Apple Press Release – June 5, 2007 http://www.apple.com/ca/press/2007_06/macbookpro.html

[11] Apple Store "Overview" for both the 85W and 60W Adapters

[12] Apple Store / Shop Mac / Power / 85W Adapter

CLASS ACTION COMPLAINT

7

1   done nothing about them.  From June 2006 through March 2009, more than 1,000 "customer

2   reviews" of the MagSafe Adapter have been posted to the Apple Online Store.  The vast majority of

3   the reviews are extremely negative, warning Apple over and over again about the hazards of its

4   MagSafe Adapter.  For example, a recent posting about the 85W Adapter on February 28, 2009,

5   titled, "**It melted – literally**" states:

6       •   I turn off (and unplug) my laptop almost every night and while I am gone during the
7   day. The wire literally has melted near the battery and no longer works. Aside from being
    very frustrating and annoying, I can see this as posing a possible safety hazard. I'm a very
8   unhappy customer right now and just spent around $100 (including shipping) to get another
    power cord shipped to me.

9

10       •   This one, titled "**Melted cord**" was posted February 16, 2009 (85W):  Like many
    other people, I too have a Magsafe power adapter whose cord spontaneously melted after
11   about 9 months.

12       •   On January 10, 2009, in a posting titled "**Just Burned Me**" a user states (85W): "I
    understand that AC adapters get hot by design, but it is completely unacceptable to get
13   burned by the mag "safe" end. Absolutely ridiculous Apple. This is a flawed design and I
14   can't wait for the class action suit. Count me in."

15       •   On December 28, 2008, KG writes (85W), "**FIRE HAZARD**" and states that, "This
    product is dangerous. Clearly there is some sort of design flaw here. I noticed a slight
16   separation of the magnet base from the actual cord with a few frayed wires and I took the
    power adapter to the Apple Store, where I was turned away because I didn't have the actual
17   lap top with me. Figuring, if it were a major issue, I would have been warned not to use the
18   product, I plugged it later the next day while it was on my lap and noticed a burning smell as
    well as excess heat. When I looked down I saw the plastic and rubber melting and I angled
19   the machine out of my lap and rushed to unplug it. The power port on my computer is
    scorched. Luckily I only had a very minor burn on my left thigh as a result...nothing to go to
20   emergency room about but think about it. If this had happened when the computer was on
21   my desk, while I was at work, or perhaps if I had been at home asleep, the results could have
    been disastrous. This could have burnt my apartment, killed my dogs or even me.

22   I have been an Apple customer and die hard fan since the IIGS, and I am extremely
23   disappointed in the recent quality of Apple products. First the battery issues, then defective
    hard drives, and now this. I really hope that it doesn't take a death or major property loss for
24   Apple to take responsibility and inform customers of this major safety issue."

25       •   A recent March 4, 2009 posting states (60W), "I have a MacBook and I am on my
26   THIRD charger! It melts all of the time right where the cord connects to the magnet thing!,"

27       •   Another recent posting in December 2008, stated (60W), "After 12 1/2 months my
28   first cord started sparking near the laptop. I was afraid of fire so I took it into the apple store,

CLASS ACTION COMPLAINT

waited in line for nearly an hour and was told to come back in 5 hours. When I did, I was told that nothing could be done because I didn't purchase the extra warranty. I purchased another cord for 79.00 hoping it wouldn't do the same thing. After 5 months, it started shorting out so I purchased 3rd (THIRD!) cord. Now my 3rd cord has begun to weaken at the connection and gets VERY hot. I have NEVER felt safe leaving it plugged in while I am away from it. Instead of purchasing a 4th 79.00 (320.00 in hazardous power cords) I am going to purchase a new laptop for myself as well as my 2 teenagers - probably time for another brand!

• A posting on February 5, 2008, is titled "FIRE HAZARD!", and states, "This morning I went to turn on my computer that had been left to charge over night, only to find it would not turn on. In my quest to determine the cause, I noticed the cord failure that most of the other reviews describe – the power cord just after the MagSafe Power Adapter was melted (charred black and brown actually) and frayed wires were exposed. As disappointed as I was that this could happen, I realized how fortunate I was that this had not started a fire! There were NO warning signs!! This needs to be recalled immediately!"

• Another 60W Adapter posting on December 30, 2007 states: "Thank goodness I was home when I found my power adapter melting."

• On December 11, 2007, still another customer wrote (60W): "I have had my MacBook for 11 months. One day I plugged in the charger and this weird hissing came from my computer, then I smelled smoke, and looked down to see my charger was smoking. I immediately pulled it out but the rubber on the cable was melted."

• On January 11, 2008, another customer posted the comment (60W): "I have had my MacBook for exactly one year and the wire at the end has melted away exposing the wires."

• On December 15, 2007, another customer wrote (60W): "I actually sat there watching the dumb thing melt. Luckily it didn't catch anything on fire. I hate to see if it was plugged in while I was away from the house."

• On February 9, 2008, (85W): "I recently went to use my MacBook Pro when I noticed that my battery was dead. This was strange considering the power cord had been plugged in overnight. I looked at the cord and realized that the LED light was not glowing. After seeing this, I immediately saw that part of my cord (close to the magnetic part) was brown colored with a few holes burnt in it. Also the part of the cord that connects to the little magnet was coming apart."

• On February 1, 2008, (85W): "I've had my MacBook Pro just over 1 year and the MagSafe lead started to fray at the laptop end. Last night it popped and fizzed and a cloud of smoke appeared. ... These products must be dangerous – very disappointed."

9

CLASS ACTION COMPLAINT

1

2     • Also on February 1, 2008 (85W): "I fell asleep this evening, and woke up to
      the smell of burning plastic and discharged MacBook Pro. The magsafe adapter, I've
3     been using since Sept 06, when I purchased the unit, frayed at the base, and melted,
      leaving a plastic mess on the floor, and in the air. I don't want to purchase another
      one, but I haven't a choice. There are no alternatives. I don't feel safe with this
4     product in my home anymore. I recommend that users do NOT charge their apple
      laptops at night."

5

6     • On January 30, 2008 (85W): "It's really very simple: right where the adapter
      cable is connected to the MagSafe plug, sparks were flying around... I heard a
7     'fizzzzz' sound... short circuit... smoke was billowing. The cable was super hot and
      literally disintegrated in my hands. Thank goodness I was there when it happened –
8     wouldn't want to see my mortgaged house on fire, for crying out loud!"

9

10    • On January 14, 2008 (85W): "Well, even with the spare power adapter, and
      always being careful to plug and unplug it by the head (not pulling on the cord), I
11    had my adapter fail. The other day I was typing away and all of a sudden I started to
      get shocks from the computer. At the same time the green light on the magnetic head
12    went out and a nasty smell came form the charger. When I went to unplug the charge
      I discovered a greasy brown fluid leaking from it."

13

14    • On January 14, 2008 (85W): "I generally don't think SPARKING AND
      SMOKING AND MELTING are good traits for a piece of electronics to have. I'm
15    obviously not the first person to have this problem, and the most disturbing thing
      about these comments is that it KEEPS happening."

16

17    • On January 13, 2008 (85W): "Had my adapter (magnetic connection great
      idea) for just over a year and I plugged it into the laptop this morning to find the
18    green light flicker and then produce a spark/flame. As described it left the beautiful
      smell of melting plastic and nice burn marks on my laptop and the head of the power
      cable. MagSAFE... no."

19

20    • On January 11, 2008 (85W): "Much like everyone else here, my cord melted
      where it meets with the computer. Luckily it was in use and I noticed the sparking
21    that may have caused a fire otherwise."

22    • On January 9, 2008 (85W): "Dear Mac, This is the 3rd try on a battery cord
      for our daughter's MacBook Pro laptop. It actually started smoking. We have the
23    battery inside the computer burn up also and it bubbled up the outside body of the
      laptop. We replaced this battery and cord approximately one year or less ago.
24    What's up?"

25

26    • January 8, 2008 (85W): "Mine melted, burned and exposed wires at the end
      next to the brick, which usually sits on my desk. I bought the extended warranty, but
27    seriously, I'm not sure I will be risking my life and home on a new adapter unless it
      is much better protected. I have contacted the UL people, and would advise others to

28

CLASS ACTION COMPLAINT

1    do the same. Hopefully Apple won't wait until someone loses their life or home
     because of this very real hazard."

2

3        27.    Apple's own website provides admissions that Apple is not only aware of these

4    defects, but provides irresponsible advice for consumers regarding how to address the problems

5    complained of. On a page titled, "Portable Computers: Troubleshooting power adapters," Apple

6    provides "troubleshooting" under the subject heading:  "**If you see a spark**" which claims that

7    "Sometimes when you plug the power adapter into the wall, you may see a spark. *This is usually*

8    *normal* and can occur when you plug any electrical appliance into a live outlet. If you are concerned

9    about the spark you see when you plug your adapter into the wall, or if the spark comes from

10   somewhere other than the blades of the plug, you can take your adapter (you don't need to take the

11   computer) in to an Apple Authorized Service Provider or Apple Retail Store for evaluation."

12   (emphasis added).

13       28.    It is not just safety at issue here, but the cost to consumers to use their computers for

14   the purposes for which they were intended. "I love my other apple products, but having to replace

15   this at $79.99 when it should not have to be replaced at all is not acceptable. I could tell this was not

16   at all robust when I first started using it. I was quite careful and it just stopped working. Apple

17   should either make this product hold up to real world use or sell it for a more affordable price."

18   (Apple Online Store Customer Review - February 3, 2008.) Similarly, another customer complains,

19   "I am very unhappy that the adapter of my MacBook is no longer functioning. I travel with my

20   laptop a lot – after all, that is why I prefer laptops – and it seems that the adapter is not designed to

21   hold up to a reasonable amount of use. After a year and a half it no longer functions and now I have

22   to buy a new one for $80! What is especially upsetting is that I feel that Apple should replace this at

23   no cost as it is a defective design, not be making money off of their mistake, or else people may not

24   choose to purchase a Mac next time." (Apple Online Store Customer Review - January 20, 2008.)

25       29.    Of course, it is not just through Apple's online store that consumers are logging

26   complaints about the MagSafe Adapter, the internet is rife with similar complaints. One consumer

27   recently complained on www.Amazon.com:

28

                                      11

CLASS ACTION COMPLAINT

Just do a Google and you'll see the life of this adapter is about a year. Way too many incidents out there. Mine lasted exactly one year. One day I was charging my MacBook and I started to smell wires burning. It turned out to be the wire from this adapter, specifically where it attaches to the MacBook. The key is not to put \*any\* stress on the wire at all by letting it bend. Apparently the plastic is so cheaply made that eventually it will wear out and expose the wires to each other which is dangerous. Luckily my MacBook was not damaged, and I was there to unplug the adapter when it started to smolder. While I like the smart magnetic design, it's made quite shoddy. Of course the price is very high also at $79!?! Ridiculous! When I went to the Apple store to replace my adapter, there was a 3 week wait as well! I was lucky to find one on Ebay for just under $36. My best advice is not to put any tension on this wire because it obviously can't handle it, and I'd avoid leaving it charging alone simply because I don't trust it and I've Googled quite a few horror stories. Check out the apple store and you'll see all the reviews about sparks, smoke, melting , and fire.

(Amazon.com 85W Adapter Customer Review - November 14, 2007).[13]

30.    To date, Apple has not taken action to remedy the defects [do we know this for sure?] in its MagSafe Adapters, or to offer any replacement product.

31.    Apple faced the same complaints about overheating, fraying, smoking, sparking and premature failure with its predecessor adapter, the 65W Adapter for its PowerBook computer. Apple misleads its customers into thinking that it resolved those design problems in its representations that the MagSafe Adapter is better designed. "Mobile users will love the new MagSafe Power adapter featuring a magnetic DC plug that both ensures a tight connection and enables a clean break from the power port when there is undue tension. It prevents the MacBook Pro from being pulled off of a desk when the cord is accidentally tripped over, *and it protects the power cord from wear and tear*."[14]

32.    To ensure that its MagSafe Adapter would be fit for the ordinary or particular purposes for which the Adapter was intended, Apple should have adequately tested its MagSafe Adapter prior to releasing it for commercial sale. Had Apple exercised reasonable care in testing its

---

[13] http://www.amazon.com/review/product/B000F0ELN2/ref=dp_top_cm_cr_acr_txt?%5Fencoding=UTF8&showViewpoints=1

[14] http://www.amazon.com/Apple-MacBook-Laptop-MA091LL-SuperDrive/dp/B000BNHMIY

CLASS ACTION COMPLAINT

1    MagSafe Adapter, it would have discovered that its MagSafe Adapters dangerously fray, spark,

2    overheat, melt and prematurely fail.

3        33.    Instead, Apple sold defective MagSafe Adapters to Plaintiffs and proposed class

4    members that were not fit for their intended use.

5        34.    Apple also could and should have tested alternative designs of its MagSafe Adapter

6    to avoid these destructive side-effects. As noted, Apple has been aware of the weakness and defects

7    in its "wrap around" cable design for years [perhaps we should be more general here and not limit to

8    the wrap around design.

9        35.    Furthermore, Apple continues to manufacture and sell its defective MagSafe

10   Adapter even after it was informed by its own customers of the specific design defects alleged

11   herein.

12       36.    Apple profits enormously from the sales of its MagSafe Adapter, while Plaintiffs

13   and proposed class members incur damages, including the price they paid to purchase the defective

14   MagSafe Adapters and the costs to replace them.

15                          **PLAINTIFFS' ALLEGATIONS**

16       37.    Plaintiffs are purchasers of Apple MacBook or MacBook Pro computers that were

17   sold with related devices and peripherals, including a MagSafe Adapter.

18       38.    Plaintiffs purchased and used the MagSafe Adapters, believing them to be

19   reasonably safe to use for the purpose for which they were intended: powering and charging their

20   portable computers.

21       39.    Since purchasing these computers, Plaintiffs have had to replace their MagSafe

22   Adapters because, when used as instructed and intended, their MagSafe Adapters sparked, frayed,

23   melted, wires became exposed and/or they prematurely failed.

24       40.    Plaintiffs learned that far from being the only one experiencing such problems with

25   the MagSafe Adapters, there were hundreds of other similar customer complaints on Apple's

26   website.

27       41.    In fact, Plaintiffs' experiences with the MagSafe Adapter are typical of at least

28   thousands of other Apple purchasers who have registered their complaints with Apple, and have

                                    13
CLASS ACTION COMPLAINT

1   documented their problems with the MagSafe Adapters on various website forums dedicated to

2   Apple products, including Apple's own website.  The similarity of the user complaints about the

3   MagSafe Adapter further evidences the uniformity of the product defects alleged herein.

4       42.     Plaintiffs have suffered injury in fact and loss of money or property, and they have

5   been damaged in the amount they paid for the defective replacement MagSafe Adapters they had to

6   purchase to power and charge their MacBook or MacBook Pro laptop computers.  Moreover, if no

7   safe replacement Adapter exists, Plaintiffs have suffered damages in the amount of the full price they

8   paid for their MacBook or MacBook Pro computers.

9   <div align="center">**CLASS ALLEGATIONS**</div>

10       43.     Plaintiffs bring this class action on behalf of themselves individually and all others

11   similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

12       44.     The proposed class consists of all consumers who purchased an Apple MagSafe

13   60W Adapter or Apple MagSafe 85W Adapter from the time of their introduction in the marketplace

14   through and including the date of class notice (the "Class").

15       45.     This action is properly brought as a class action for the following reasons:

16          (a)    the proposed class is so numerous and geographically dispersed throughout

17   the United States that the joinder of all class members is impracticable.  While Plaintiffs do not

18   know the exact number and identity of all class members, Plaintiff believes there are tens if not

19   hundreds of thousands of class members;

20          (b)    the disposition of Plaintiffs' and proposed class members' claims in a class

21   action will provide substantial benefits to both the parties and the Court;

22          (c)    the proposed class is ascertainable and there is a well-defined community of

23   interest in the questions of law or fact alleged herein since the rights of each proposed class member

24   were infringed or violated in the same fashion;

25          (d)    there are questions of law and fact common to the proposed class which

26   predominate over any questions that may affect particular class members.  Such common questions

27   include:

28

                    14

**CLASS ACTION COMPLAINT**

1         (i)         Whether Defendant exercised reasonable care in testing its MagSafe

2  Adapter prior to its release for commercial sale;

3         (ii)         Whether Defendant's MagSafe Adapter is defective when used as

4  directed, intended or in a reasonably foreseeable manner;

5         (iii)         Whether feasible alternative safer formulations of the MagSafe

6  Adapter were available;

7         (iv)         Whether Defendant's MagSafe Adapter was fit for its intended

8  purpose;

9         (v)         Whether Apple has breached the implied warranty of fitness for a

10  particular purpose;

11         (vi)         Whether Apple has breached the implied warranty of

12  merchantability;

13         (vii)         Whether Apple has violated the Magnuson-Moss Warranty Act;

14         (viii)         Whether Apple has acted negligently;

15         (ix)         Whether Apple is strictly liable to Plaintiffs and the class and

16  whether Apple failed to warn Plaintiffs and the class; [should this be 2 items?]

17         (x)         Whether Apple has violated the Song-Beverly Act;

18         (xi)         Whether Apple has violated the UCL;

19         (xii)         Whether Apple has violated the CLRA;

20         (xiii)         Whether Apple has received funds from Plaintiffs and class members

21  that it unjustly received;

22         (xiv)         Whether Plaintiffs and proposed class members have been harmed

23  and the proper measure of relief; and

24         (xv)         Whether Plaintiffs and proposed class members are entitled to an

25  award of punitive damages, attorneys' fees and expenses against Defendant.

26         (e)         Plaintiffs' claims are typical of the claims of the members of the proposed

27  class.

28

CLASS ACTION COMPLAINT

1    (f)    Plaintiffs will fairly and adequately protect the interests of the proposed class

2  in that they have no interests antagonistic to those of the other proposed class members, and

3  Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as

4  counsel.

5    (g)    A class action is superior to other available methods for the fair and efficient

6  adjudication of this controversy for at least the following reasons:

7    (i)    Given the size of individual proposed class member's claims and the

8  expense of litigating those claims, few, if any, proposed class members could afford to or would

9  seek legal redress individually for the wrongs Defendant committed against them and absent

10  proposed class members have no substantial interest in individually controlling the prosecution of

11  individual actions;

12    (ii)    This action will promote an orderly and expeditious administration

13  and adjudication of the proposed class claims, economies of time, effort and resources will be

14  fostered and uniformity of decisions will be insured; and

15    (iii)    Without a class action, proposed class members will continue to

16  suffer damages, and Defendant's violations of law will proceed without remedy while Defendant

17  continues to reap and retain the substantial proceeds of its wrongful conduct.

18    (iv)    Plaintiffs know of no difficulty that will be encountered in the

19  management of this litigation which would preclude its maintenance as a class action.

20    46.    Plaintiffs seek damages and equitable relief on behalf of the proposed class on

21  grounds generally applicable to the entire proposed class.

22    **FIRST CAUSE OF ACTION**

23    **(Violations of California Business and Professions Code § 17200)**

24    47.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

25  paragraphs above as if fully set forth herein.

26    48.    California Business & Professions Code § 17200 prohibits acts of unfair

27  competition, which means and includes any "unlawful, unfair or fraudulent business act or practice"

28  and any act prohibited by Cal. Bus. & Prof. Code § 17500.

16

CLASS ACTION COMPLAINT

49.     Apple violated Cal. Bus. & Prof. Code § 17200's prohibition against engaging in an "**unlawful**" business act or practice by, *inter alia*, selling defective and non-merchantable MagSafe Adapter to Plaintiffs, proposed class members, and the general public, failing to use reasonable care to test its MagSafe Adapter prior to sale, and by continuing to sell its defective Adapter after learning that it caused sparking, fraying and premature failure when used as intended, in violation of Cal. Civ. Code §§ 1770(a), 1791, *et seq.*, Cal. Comm. Code §§ 2313 & 2314, U.C.C. § 2-313 & § 2-314, 15 U.S.C. § 2310(d)(1), and the common law, including the common law of negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of the duty to disclose.

50.     Plaintiffs reserve the right to allege other violations of law which constitute other unlawful business acts and practices. Such conduct is ongoing and continues to this date.

51.     The foregoing conduct also constitutes "**unfair**" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200. Apple's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated. Further, such conduct is in violation of Cal. Civ. Code §§ 1770(a), 1791 *et seq.*, and the common law, including the common law of negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of the duty to disclose.

52.     Apple's conduct caused and continues to cause substantial injury to consumers and their property, including Plaintiffs and proposed class members. The gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct. There were also reasonably available alternatives to Apple to further its business interests, other than voluntarily placing its defective MagSafe Adapter into the stream of commerce.

53.     Plaintiffs and Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's unfair and unlawful business practices and are therefore entitled to the relief available under Cal. Bus. & Prof. Code §17200, *et seq.*, as detailed below.

**CLASS ACTION COMPLAINT**

17

1

## SECOND CAUSE OF ACTION

2

### (Violations of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*)

3

4

54.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

5

paragraphs above as if fully set forth herein.

6

55.     This cause of action arises under the Consumers Legal Remedies Act, Cal. Civ.

7

Code § 1750 *et seq.*  Plaintiffs are consumers as defined by Cal. Civ. Code § 1761(d).  Apple's

8

MagSafe Adapters constitute "goods" as defined by Cal. Civ. Code § 1761(a). At all times relevant

9

hereto, Apple constituted a "person" as that term is defined in Cal. Civ. Code § 1761(a), and

10

Plaintiffs and class members' purchases of the MagSafe Adapters constituted "transactions" as that

11

term is defined in Cal. Civ. Code § 1761(b).

12

56.     Apple violated and continues to violate the CLRA by engaging in the following

13

deceptive practices specifically proscribed by Cal. Civ. Code § 1770(a), in transactions with

14

Plaintiffs and class members that were intended to result or which resulted in the sale or lease of

15

goods or services to consumers:

16

(a)     In violation of Cal. Civ. Code § 1770(a)(5), Defendant's acts and practices

17

constitute misrepresentations that the MagSafe Adapters in question have characteristics, benefits or

18

uses which they do not have;

19

(b)     In violation of Cal. Civ. Code § 1770(a)(7), Defendant has misrepresented

20

that the MagSafe Adapters in question are of particular standard, quality and/or grade, when they are

21

of another; and

22

(c)     In violation of Cal. Civ. Code § 1770(a)(9), Defendant advertised the

23

Adapters in question with the intent not to sell them as advertised or represented.

24

57.     Apple has made uniform representations that its MagSafe Adapter is a high-quality

25

product that will perform as represented.  These representations, as set forth above, were false,

26

deceptive, and/or misleading and in violation of the CLRA.

27

58.     Pursuant to Cal. Civ. Code § 1782, Plaintiffs have notified Apple in writing by

28

certified mail of the particular violations of Cal. Civ. Code § 1770 alleged herein, and have

18

CLASS ACTION COMPLAINT

1  demanded that Apple rectify the problems associated with the actions detailed above and give notice

2  to all affected consumers of its intent to so act. Plaintiffs sent this notice by certified mail, return

3  receipt requested, to Apple's principal place of business.

4      59.    If Apple fails to rectify or agree to rectify the problems associated with the actions

5  detailed above and give notice to all affected consumers within 30 days of the date of written notice,

6  pursuant to §1782 of the CLRA, Plaintiffs will amend their Complaint to seek actual, punitive and

7  statutory damages and all other relief available to Plaintiffs and the Class under Cal. Civ. Code §1780.

8      60.    In addition, pursuant to Civil Code § 1780(a)(2), Plaintiffs are entitled to, and

9  therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate

10  Cal. Civ. Code § 1770.

11      61.    Plaintiffs and the class are also entitled to recover attorneys' fees, costs, expenses

12  and disbursements pursuant to Cal. Civ. Code §§ 1780 and 1781.

13                    **THIRD CAUSE OF ACTION**

14      **(Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1))**

15      62.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

16  paragraphs above as if fully set forth herein.

17      63.    By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

18  warranted that it was reasonably safe for its intended use, *i.e.*, to withstand usual wear as a portable

19  device and to charge the computers without causing fraying, sparking or premature failure.

20      64.    Apple's MagSafe Adapter is not merchantable. In breach of the implied warranty of

21  merchantability and fitness for a particular purpose, Apple's MagSafe Adapter fails to charge

22  properly, falls apart and causes sparking which is a safety hazard as well as causes damage to the

23  computers.

24      65.    Apple's MagSafe Adapter was not reasonably safe for its intended use when it left

25  Defendant's control and entered the market.

26      66.    The MagSafe Adapter defects were not open and/or obvious to consumers.  Any

27  purported limitation of the duration and scope of these warranties given by Apple is unreasonable,

28  unconscionable and void, because Apple knew or recklessly disregarded the fact that the defect in

                                    19

CLASS ACTION COMPLAINT

1  the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had

2  been used for a period of time longer than the period of any written warranty, and Apple willfully

3  withheld information about the defect from purchasers of Apple computers.  Moreover, due to the

4  unequal bargaining power between the parties, Plaintiffs and the class members had no meaningful

5  alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

6        67.      The dangerous design and manufacture of the MagSafe Adapter was, and is, an

7  inherent safety-related defect which either was known or which should have been known to Apple to

8  be a defect at the time plaintiffs and the class members purchased their Apple computers and

9  Adapters.

10        68.      The presence of this defect, and Apple's failure to warn of its presence or cure the

11  defect, constitutes a breach of both the express and implied warranties.

12        69.      Apple's knowledge of this inherent defect, through both Plaintiffs' 30-day demand

13  letter, and through the complaints lodged on its own website about the Adapter, has given Apple

14  more than a reasonable opportunity to cure the defect – an opportunity that Apple has failed and

15  refused to take.

16        70.      As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*,

17  the amount they paid to purchase and replace Apple's un-merchantable MagSafe Adapters, and if no

18  safe replacement exists, in the amount they paid for their related Apple Computer, which relies on

19  the MagSafe Adapter for its power and usage.

20        71.      Pursuant to 15 U.S.C. § 2310(D) (2), Plaintiffs are also entitled to attorneys' fees

21  and reimbursement of expenses.

22                    **FOURTH CAUSE OF ACTION**

23        **(Breach of Implied Warranty of Fitness for a Particular Purpose)**

24        72.      Plaintiffs re-allege and incorporate by reference the allegations contained in the

25  paragraphs above as if fully set forth herein.

26        73.      By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

27  warranted that its Adapter was reasonably safe for its particular purpose, *i.e.*, to withstand usual wear

28

**CLASS ACTION COMPLAINT**

20

1  as a portable device and to charge the computers without causing fraying, sparking or premature

2  failure.

3      74.    Apple's MagSafe Adapter is not fit for its particular purpose.  In breach of the

4  implied warranty of fitness for a particular purpose, Apple's MagSafe Adapter fails to charge

5  properly, falls apart and causes sparking, which is a safety hazard as well as a cause of damage to the

6  computers.

7      75.    Apple's MagSafe Adapter was not reasonably safe for its intended particular use

8  when it left Defendant's control and entered the market.

9      76.    The MagSafe Adapter defects were not open and/or obvious to consumers.

10     77.    Any purported limitation of the duration and scope of the implied warranty of fitness

11  for a particular purpose given by Apple is unreasonable, unconscionable and void, because Apple

12  knew or recklessly disregarded that the defect in the MagSafe Adapter existed and might not be

13  discovered, if at all, until the MagSafe Adapters had been used for a period of time longer than the

14  period of any written warranty, and Apple willfully withheld information about the defect from

15  purchasers of Apple computers.  Moreover, due to the unequal bargaining power between the

16  parties, Plaintiffs and class members had no meaningful alternative to accepting Apple's attempted

17  pro forma limitation of the duration of any warranties.

18     78.    As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*,

19  the amount they paid to purchase and replace Apple's unfit MagSafe Adapters, and if no safe

20  replacement exists, in the amount they paid for their related Apple Computer, which relies on the

21  MagSafe Adapter for its power and usage.

22                           **FIFTH CAUSE OF ACTION**

23              **(Breach of Implied Warranty of Merchantability)**

24     79.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

25  paragraphs above as if fully set forth herein.

26     80.    By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

27  warranted that its Adapter was reasonably safe for its intended use, *i.e.*, to withstand usual wear as a

28  portable device and to charge the computers without causing fraying, sparking or premature failure.

21

CLASS ACTION COMPLAINT

81.     Apple's MagSafe Adapter is not merchantable. In breach of the implied warranty of merchantability, Apple's MagSafe Adapter fails to charge properly, falls apart and causes sparking, which is a safety hazard as well as a cause of damage to the computers.

82.     Apple's MagSafe Adapter was not reasonably safe for its intended use when it left Defendant's control and entered the market.

83.     The MagSafe Adapter defects were not open and/or obvious to consumers.

84.     Any purported limitation of the duration and scope of the implied warranty of merchantability given by Apple is unreasonable, unconscionable and void, because Apple knew or recklessly disregarded that the defect in the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had been used for a period of time longer than the period of any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple computers. Moreover, due to the unequal bargaining power between the parties, plaintiffs and the class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

85.     As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*, the amount they paid to purchase and replace Apple's un-merchantable MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple Computer, which relies on the MagSafe Adapter for its power and usage.

## SIXTH CAUSE OF ACTION

### (Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*)

86.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

87.     This cause of action is brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791 *et seq.*   Plaintiffs are "buyers," Defendant's MagSafe Adapter is a "consumer good," and Defendant is a "retailer" and "manufacturer" within the meaning of Song-Beverly.

CLASS ACTION COMPLAINT

22

1    88.    By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

2   warrants that its MagSafe Adapter is reasonably safe for its intended use, *i.e.*, to withstand usual

3   wear as a portable device and to charge the computers without causing fraying, sparks or premature

4   failure.

5    89.    Apple's Adapter is not merchantable.  In breach of its implied warranty, Apple's

6   MagSafe Adapter fails to charge properly, falls apart and causes sparking, which is a safety hazard

7   as well as a cause of damage to the computers.

8    90.    Apple's MagSafe Adapter was not reasonably safe for its intended use when it left

9   Defendant's control and entered the market.

10    91.    Apple's MagSafe Adapter's defects were not open and/or obvious to consumers.

11    92.    As a result, Plaintiffs and proposed class members have been damaged and will

12   continue to be damaged in, *inter alia*, the amount they paid to purchase and replace un-merchantable

13   MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple

14   Computer which relies on the MagSafe Adapter for its power and usage.

15    93.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and proposed class members are

16   entitled to damages under the Song-Beverly Consumer Warranty Act, including, *inter alia*,

17   reimbursement in the amount they paid for Defendant's MagSafe Adapters, and if no safe

18   replacement exists, in the amount they paid for their related Apple Computer, which relies on the

19   MagSafe Adapter for its power and usage and for their costs, expenses and attorneys' fees.

20                             **SEVENTH CAUSE OF ACTION**

21                                     **(Negligence)**

22    94.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

23   paragraphs above as if fully set forth herein.

24    95.    The conduct of Apple in manufacturing, distributing and selling the MagSafe

25   Adapter constituted negligence in failing to reasonably act in accordance with all applicable

26   standards of care. Apple owed Plaintiffs and class members a duty not to disseminate a materially

27   defective product.

28

                                         23

CLASS ACTION COMPLAINT

96.      Apple also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the class of the defective and unreasonably dangerous condition of the MagSafe Adapters, even after Apple was, or should have been, fully aware of the material defects in said MagSafe Adapters.

97.      As a direct and proximate result of Apple's negligence, Plaintiffs and members of the class suffered economic injury, entitling them to just compensation, as detailed below.

## EIGHTH CAUSE OF ACTION

### (Money Had and Received)

98.      Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

99.      As more fully set forth above, Apple has in its possession money which in equity and good conscience belongs to plaintiff and Class members, which should be refunded to plaintiff and Class members.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

100.      Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

101.      Apple improperly received and continues to improperly receive from Plaintiffs and class members millions of dollars as a result of the conduct alleged above.

102.      As a result, Plaintiffs and the class have conferred a benefit on Apple to which Apple is not entitled. Apple has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred on it. Apple will be unjustly enriched if it is allowed to retain such funds and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by the Apple and the money should be disgorged from Defendant, and returned to Plaintiffs and the class.

24

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court enter a judgment against Defendant that:

A.      This action be certified and maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify the proposed class as defined;

B.      Awards compensatory and/or punitive damages as to all Causes of Action where such relief is permitted;

C.      Awards Plaintiffs and proposed class members the costs of this action, including reasonable attorneys' fees and expenses;

D.      Orders Apple to immediately cease its wrongful conduct as set forth above; enjoins Apple from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Apple to engage in a corrective notice campaign, and requires Apple to refund to Plaintiffs and all of the class members the funds paid to Apple for these defective products, including, if no reasonably safe replacement product exists, the full price paid for the subject computers;

E.      Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant's ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective remedy;

F.      Awards pre-judgment and post-judgment interest at the legal rate; and

G.      Such further legal and equitable relief as this Court may deem just and proper.

25

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: May 1, 2009

ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES
ALREEN HAEGGQUIST

_____
HELEN I. ZELDES

625 Broadway, Suite 906
San Diego, CA  92101
Telephone: 619/342-8000
Fax: 619/342-7878

### CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the
named parties, there is no such interest to report.

_____
HELEN I. ZELDES, ATTORNEY OF RECORD
FOR PLAINTIFFS

TIMOTHY J. BROAD,
JESSE REISMAN,
NEOTAKA KITAGAWA, JR.,

CLASS ACTION COMPLAINT

26

1  ZELDES & HAEGGQUIST, LLP
   HELEN I. ZELDES (220051)
2  ALREEN HAEGGQUIST (221858)
   625 Broadway, Suite 906
3  San Diego, CA  92101
   Telephone:  619/342-8000
4  Fax:  619/342-7272
   Email: helenz@zhlaw.com
5  alreenh@zhlaw.com

6      -and-

7  MEHRI & SKALET, PLLC
   STEVEN A. SKALET (*admitted pro hac vice*)
8  CRAIG L. BRISKIN (*admitted pro hac vice*)
   1250 Connecticut Ave. NW, Suite 300
9  Washington, DC 20036
   Telephone:  202/822-5100
10 Fax:  202/822-4997
   sskalet@findjustice.com
11 cbriskin@findjustice.com

12 Attorneys for Plaintiffs

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16 NAOTAKA KITAGAWA, JR., TIMOTHY J.          )  Case No. C 09-01911 RS
   BROAD and JESSE REISMAN, on behalf of      )
17 themselves and all others similarly situated, )
                                              )
18                                            )  **FIRST AMENDED CLASS
          Plaintiffs,                         )  ACTION COMPLAINT**
19                                            )
                                              )
20              v.                            )
                                              )
21 APPLE, INC., and, DOES 1 THROUGH 50,       )
   inclusive,                                 )  JURY TRIAL DEMANDED
22                                            )
          Defendants.                         )
23                                            )
                                              )
24                                            )

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

1    Plaintiffs Naotaka Kitagawa, Jr., Timothy J. Broad, and Jesse Reisman ("Plaintiffs"), by and

2    through their attorneys, bring this action on behalf of themselves and all others similarly situated

3    against Apple, Incorporated ("Apple" or "Defendant") and Does 1 through 50.  Plaintiffs hereby

4    allege, on information and belief, except as to those allegations which pertain to the named

5    Plaintiffs, which allegations are based on personal knowledge, as follows:

6                                    **NATURE OF THE ACTION**

7        1.        Plaintiffs bring this class action on behalf of purchasers of Apple's "Apple 85W

8    MagSafe Power Adapter (for MacBook Pro)" and the "Apple 60W MagSafe Power Adapter (for the

9    MacBook)" (referred to collectively as the "MagSafe Adapter") in California and throughout the

10   United States.

11       2.        The MagSafe Adapter was represented as being designed with a "magnetic DC

12   connector that ensures your power cable will disconnect if it experiences undue strain and helps

13   prevent fraying or weakening of the cables over time.  Designed to be the perfect traveling

14   companion, the adapter has a clever design which allows the DC cable to be wound neatly around

15   itself for easy cable storage."  *See* http://www.apple.com/store.

16       3.        The MagSafe Adapter is the only plug-in power source Apple provides for the

17   MacBook and MacBook Pro computers.  However, the MagSafe Adapter is not fit for the ordinary

18   purposes (powering up and charging the MacBook and MacBook Pro portable laptop computers) for

19   which it was intended.  Instead, the MagSafe Adapter – because it was negligently designed and

20   manufactured – dangerously frays, sparks, and prematurely fails to work.  The MagSafe Adapter

21   poses a present and latent danger to its users when used as directed.  Apple is and was aware of this

22   dangerous defect, but it has failed to disclose it or warn Plaintiffs and the Class of the defect.  As of

23   the date of this filing, it continues to market and sell the defective MagSafe Adapter, resulting in

24   continuing damage to the Class.  As a result, Plaintiffs and the Class (which likely number in the

25   millions) have purchased flawed and dangerous Adapters which prematurely fail and present fire

26   hazards.

27       4.        Plaintiffs bring this class action on behalf of themselves and all others similarly

28   situated, asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §

                                                1

FIRST AMENDED CLASS ACTION COMPLAINT

1  17200 *et seq.* ("UCL" or "§17200"), the Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et*

2  *seq.* ("CLRA"), the Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(1), Breach of the Implied

3  Warranty of Fitness for a Particular Purpose, Breach of the Implied Warranty of Merchantability,

4  violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1790 *et seq.* ("Song-

5  Beverly"), Negligence and Unjust Enrichment. Plaintiffs seek damages and equitable relief on

6  behalf of the class, which relief includes but is not limited to the following:  providing class

7  members with a safe, defect-free Adapter, or if no such product exists, to refund Plaintiffs and class

8  members the full amount paid for their Apple computer which relies on the MagSafe Adapter for its

9  power and usage; a refund of the replacement cost of the defective MagSafe Adapters;  costs and

10  expenses, including attorneys' fees; and any additional relief that this Court determines to be

11  necessary to provide complete relief to Plaintiffs and the Class.

12  <center>**JURISDICTION AND VENUE**</center>

13      5.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §2310(d)(1)(B) and

14  28 U.S.C. §§1331, 1332 and 1367, because Plaintiffs' claims arise under federal statute. The Court

15  has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

16      6.    With respect to the Magnuson-Moss Warranty Act claims, the amount in

17  controversy in each individual claim is at least twenty five dollars ($25), the proposed class consists

18  of over 100 members, and the aggregate damages exceed $50,000.

19      7.    This Court has original jurisdiction over this action under the Class Action Fairness

20  Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of the

21  Class, because the proposed Class contains more than 100 members, the aggregate amount in

22  controversy exceeds $5 million, and members of the Class reside across the United States and are

23  therefore diverse from Defendant.

24      8.    This Court has personal jurisdiction over Apple because its corporate headquarters

25  are located in Cupertino, California, it is authorized to conduct business in California, and it has

26  intentionally availed itself of the laws and markets of California through the promotion, marketing,

27  distribution and sale of its MagSafe Adapter in California.

28

<center>2</center>

FIRST AMENDED CLASS ACTION COMPLAINT

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District.  In addition, Defendant is headquartered in Santa Clara County, which is assigned to this Division of the Court.  Plaintiffs are filing concurrently herewith an affidavit stating facts showing that this action has been commenced in a proper county pursuant to Cal. Civ. Code §1780(c).

**INTRADISTRICT ASSIGNMENT**

10.     Assignment to the San Jose Division is proper because a substantial portion of the acts, events, and omissions giving rise to this action occurred in Santa Clara, which is within the purview of the San Jose Division of this District.

**PARTIES**

11.     Plaintiff Naotaka Kitagawa, Jr. ("Mr. Kitigawa") resides in Cupertino, California. Plaintiff purchased an Apple MacBook computer, which came with an Apple MagSafe 60W Adapter, in May of 2006.  Approximately a year-and-a-half after purchase, Plaintiff noticed the adapter would cut power intermittently, that the cable near the connector became frayed and the jacket over the wiring showed signs of melting and discoloration from heat.  Plaintiff purchased an 85W MagSafe replacement adapter from an Apple Store in San Jose, California on December 19, 2008 for $79.00 plus tax, totaling $85.52.

12.     Plaintiff Timothy J. Broad ("Mr. Broad") resides in Cincinnati, Ohio.  In September 2006, Mr. Broad purchased an Apple MacBook computer which came with an Apple MagSafe 60W Adapter.  Approximately fourteen months after purchase, Mr. Broad was using his laptop computer when he noticed that the MagSafe Adapter cable was severely overheating.  "It almost burned my hand when I brushed it accidentally."  Concerned something was wrong, Mr. Broad kept an eye on the Adapter and noticed that it had started to melt, forming a large hole in the cable.  The Adapter then shorted and stopped working.  Mr. Broad feared his home "might have caught fire" if he had not been present at the time. Mr. Broad bought an 85W MagSafe replacement adapter on E-

3

FIRST AMENDED CLASS ACTION COMPLAINT

1  bay in mid-September, 2006 for approximately $58.00.  That adapter recently failed in similar

2  fashion and Mr. Broad purchased his second replacement adapter.

3       13.    Plaintiff Jesse Reisman ("Mr. Reisman") resides in Fort Washington, Maryland. In

4  or about June 2006, Plaintiff purchased an Apple MacBook Pro computer, which came with an

5  Apple MagSafe 85W Adapter.  Approximately a year and a half after purchase, Mr. Reisman noticed

6  that the MagSafe Adapter became "noticeably hot" when the computer was in use and that the cable

7  wires had become exposed at the point where cable entered the main adapter body, as well as at the

8  point of insertion into the MagSafe connector, creating a hazardous condition.  Mr. Reisman

9  purchased an 85W MagSafe replacement adapter on January 18, 2008 from Amazon.com for $70.38.

10  Mr. Reisman's replacement adapter is now showing signs of premature failure.

11       14.    Defendant Apple, Inc. ("Apple") is incorporated in California.  Its executive offices

12  and company headquarters are located in Cupertino, Santa Clara County, California.  Apple is

13  registered to do business in the State of California, and conducts substantial business here.  Apple is

14  a publicly traded company, with net sales of over $32.4 billion in 2008, $14.5 billion in the United

15  States alone (up 26% from 2007)[1].  Apple sells its MacBook and MacBook Pro Computers ("Subject

16  Computers") and MagSafe Adapters to consumers throughout the United States, including to at least

17  tens of thousands of consumers in California, which constitutes a significant percentage of Apple's

18  sales in the United States and California.

19       15.    The true names and capacities of Defendants sued herein under C.C.P. § 474 as

20  Does 1 through 50, inclusive, are presently unknown to Plaintiffs, who therefore sue these

21  Defendants by fictitious names.  Plaintiffs will amend this Complaint to show their true names and

22  capacities when they have been ascertained.  Each of the Doe Defendants is responsible in some

23  manner for the conduct alleged herein.

24

25

26  _____

27  [1] Apple, Inc.'s 2008 10-K.

28

<div align="center">4</div>

FIRST AMENDED CLASS ACTION COMPLAINT

## DEFENDANT'S UNLAWFUL CONDUCT

16.     Since the early 1970s, Apple has been engaged in the business of designing, manufacturing, marketing, distributing and selling personal computers and related products and services through its own retail (and more recently, online) stores, direct sales, third party wholesalers and resellers.

17.     On or about February 2006, Apple began designing, manufacturing, warranting, advertising, marketing, selling and providing the MagSafe Adapters at issue to consumers throughout the United States for use with its new MacBook series laptop computers. The MacBook was the first generation of this new series and the MacBook Pro the second generation (collectively, the "Subject Computers"). Apple sold the MagSafe Adapters to Plaintiffs and the Class as original equipment with its Subject Computers, as separate accessories for them, and also as replacements. The MagSafe Adapter is the only power source Apple provides with or for its MacBook and MacBook Pro computers.

18.     Apple markets the benefits of the MagSafe adapter for both its MacBook and MacBook Pro computers.

19.     Regarding the 85W MagSafe Adapters that come with the MacBook Pro series laptop computers, Apple makes the following representations:

> The MagSafe Power Adapter is just that: a magnetic connection instead of a physical one. So tripping over a power cord won't send your shiny new MacBook flying off a table or desk; **the cord simply breaks cleanly away, without damage to either the cord or the system. As an added nicety, this means less wear on the connectors.**[2]

<center>* * * * *</center>

> Innovative right down to the power cord. The MacBook Pro power adapter with MagSafe connector is just that: a magnetic connection instead of a physical one. So, if you happen to trip over a power cord, you won't send MacBook Pro flying off a table or desk; the cord simply disconnects, without damage to either the cord or the system. As an added nicety, this means less wear on the connectors.[3]

---

[2] http://www.apple.com/macbook/design.html

[3] http://www.apple.com/macbookpro/design.html

<center>5</center>

FIRST AMENDED CLASS ACTION COMPLAINT

* * * * *

Designed to be the **perfect traveling companion**, the adapter has a clever design which allows the DC cable to be wound neatly around itself for easy cable storage.[4]

20.     Regarding the 60W MagSafe Adapter that comes with the MacBook series laptop computers, Apple makes the following representations:

Good design leaves nothing to chance. Great design anticipates it. No surprise, then, that MacBook features little touches — like a **klutz-proof power adapter** and a **nifty magnetic latch** — that make your computing experience as streamlined as the MacBook itself.[5]

* * * * *

Compact, durable, everything-you-need MacBook.[6]

* * * * *

MacBook makes it easy to hit the road thanks to its tough polycarbonate case, built-in wireless technologies, and innovative MagSafe Power Adapter that releases automatically if someone accidentally trips on the cord.[7]

* * * * *

**Designed to withstand the rigors of life on the go**, every MacBook comes with Apple's MagSafe Power Adapter, **created especially for mobile users** that makes charging the notebook's battery easier than ever by magnetically coupling the power cord to the MacBook. The MagSafe Power Adapter **safely disconnects from the notebook when there is strain on the power cord**, helping to prevent the notebook from falling off its work surface.[8]

---

[4] http://store.apple.com/1-800-MY-APPLE/WebObjects/AppleStore.woa/wa/RSLID?mco=816A0BD3&fnode=home/shop_mac/mac_accessories/power&npl m=MA938LL/A#overview

[5] http://www.apple.com/macbook/design.html

[6] http://www.apple.com/getamac/whichmac.html

[7] http://www.apple.com/macbook/design.html

[8] Apple Press Release – May 16, 2006

6

FIRST AMENDED CLASS ACTION COMPLAINT

1    21.    Apple also boasts that its MacBook Pro is its "state of the art"[9] flagship portable

2  designed "for mobile professionals" and "life on the road."[10]

3    22.    Apple markets the MagSafe Adapter for both the MacBook and MacBook Pro as

4  "designed to be the perfect travel companion."[11]

5    23.    However, contrary to its advertisements, Apple's MagSafe Adapter is not "durable"

6  or "designed to withstand the rigors of life on the go" but rather, fragile and fails when used as

7  intended.

8    24.    The MagSafe Adapter consistently frays at the end of the cable going in to the

9  magnetic connector.  These exposed wires turn the MagSafe Adapter into a fire and electrical shock

10  hazard for Apple's customers.  A common point of failure is at the end of the MagSafe cable closest

11  to where it connects to the computer.  Affixed to that end is a magnetic connector.

12    25.    Any adapter designed for a laptop computer must be durable enough to withstand

13  the uses for which it is intended.  Such normal use includes coiling the plug when not in use.  The

14  Apple MagSafe Adapter is designed so that the power cable will be wound around itself for storage

15  or when in transport and also requires the user to clamp the cable onto itself to keep it in place. [12]

16  This normal folding and clamping causes undue stress, wear and degradation to the MagSafe

17  Adapter cable.

18    26.    As the MagSafe Adapter designer and manufacturer, Apple possesses specialized

19  knowledge regarding the composition of its MagSafe Adapter, and is in a superior position to know

20  and learn about defects in its MagSafe Adapter.  In fact, as evidenced by the many purchasers of the

21  MagSafe Adapter who have gone through the trouble of logging on to Apple's website to complain

22  of the problems alleged herein, Apple has been aware of these defects for nearly three years, but has

23  _____

24  [9] http://www.apple.com/macbookpro/

25  [10] Apple Press Release – June 5, 2007 http://www.apple.com/ca/press/2007_06/macbookpro.html

26  [11] Apple Store "Overview" for both the 85W and 60W Adapters

27  [12] Apple Store / Shop Mac / Power / 85W Adapter

28  

7

FIRST AMENDED CLASS ACTION COMPLAINT

1  done nothing about them.  From June 2006 through March 2009, more than 1,000 "customer

2  reviews" of the MagSafe Adapter have been posted to the Apple Online Store.  The vast majority of

3  the reviews are extremely negative, warning Apple over and over again about the hazards of its

4  MagSafe Adapter.  For example, a recent posting about the 85W Adapter on February 28, 2009,

5  titled, **"It melted – literally"** states:

6      •    I turn off (and unplug) my laptop almost every night and while I am gone during the
   day. The wire literally has melted near the battery and no longer works. Aside from being

7  very frustrating and annoying, I can see this as posing a possible safety hazard. I'm a very
   unhappy customer right now and just spent around $100 (including shipping) to get another

8  power cord shipped to me.

9

10      •    This one, titled **"Melted cord"** was posted February 16, 2009 (85W):  Like many
   other people, I too have a Magsafe power adapter whose cord spontaneously melted after

11  about 9 months.

12      •    On January 10, 2009, in a posting titled **"Just Burned Me"** a user states (85W):  "I
   understand that AC adapters get hot by design, but it is completely unacceptable to get

13  burned by the mag "safe" end. Absolutely ridiculous Apple. This is a flawed design and I
   can't wait for the class action suit. Count me in."

14

15      •    On December 28, 2008, KG writes (85W), **"FIRE HAZARD"** and states that, "This
   product is dangerous. Clearly there is some sort of design flaw here. I noticed a slight

16  separation of the magnet base from the actual cord with a few frayed wires and I took the
   power adapter to the Apple Store, where I was turned away because I didn't have the actual

17  lap top with me. Figuring, if it were a major issue, I would have been warned not to use the
   product, I plugged it later the next day while it was on my lap and noticed a burning smell as

18  well as excess heat. When I looked down I saw the plastic and rubber melting and I angled
   the machine out of my lap and rushed to unplug it. The power port on my computer is

19  scorched. Luckily I only had a very minor burn on my left thigh as a result...nothing to go the
   emergency room about but think about it. If this had happened when the computer was on

20  my desk, while I was at work, or perhaps if I had been at home asleep, the results could have
   been disastrous. This could have burnt my apartment, killed my dogs or even me.

21

22  I have been an Apple customer and die hard fan since the IIGS, and I am extremely
   disappointed in the recent quality of Apple products. First the battery issues, then defective

23  hard drives, and now this. I really hope that it doesn't take a death or major property loss for
   Apple to take responsibility and inform customers of this major safety issue."

24

25      •    A recent March 4, 2009 posting states (60W), "I have a MacBook and I am on my
   THIRD charger! It melts all of the time right where the cord connects to the magnet thing!,"

26

27      •    Another recent posting in December 2008, stated (60W), "After 12 1/2 months my
   first cord started sparking near the laptop. I was afraid of fire so I took it into the apple store,

28

8

FIRST AMENDED CLASS ACTION COMPLAINT

waited in line for nearly an hour and was told to come back in 5 hours. When I did, I was told that nothing could be done because I didn't purchase the extra warranty. I purchased another cord for 79.00 hoping it wouldn't do the same thing. After 5 months, it started shorting out so I purchased 3rd (THIRD!) cord. Now my 3rd cord has begun to weaken at the connection and gets VERY hot. I have NEVER felt safe leaving it plugged in while I am away from it. Instead of purchasing a 4th 79.00 (320.00 in hazardous power cords) I am going to purchase a new laptop for myself as well as my 2 teenagers - probably time for another brand!

• A posting on February 5, 2008, is titled "FIRE HAZARD!", and states, "This morning I went to turn on my computer that had been left to charge over night, only to find it would not turn on. In my quest to determine the cause, I noticed the cord failure that most of the other reviews describe –the power cord just after the MagSafe Power Adapter was melted (charred black and brown actually) and frayed wires were exposed. As disappointed as I was that this could happen, I realized how fortunate I was that this had not started a fire! There were NO warning signs!! This needs to be recalled immediately!"

• Another 60W Adapter posting on December 30, 2007 states:  "Thank goodness I was home when I found my power adapter melting."

• On December 11, 2007, still another customer wrote (60W): "I have had my MacBook for 11 months. One day I plugged in the charger and this weird hissing came from my computer, then I smelled smoke, and looked down to see my charger was smoking. I immediately pulled it out but the rubber on the cable was melted."

• On January 11, 2008, another customer posted the comment (60W): "I have had my MacBook for exactly one year and the wire at the end has melted away exposing the wires."

• On December 15, 2007, another customer wrote (60W): "I actually sat there watching the dumb thing melt. Luckily it didn't catch anything on fire. I hate to see if it was plugged in while I was away from the house."

• On February 9, 2008, (85W): "I recently went to use my MacBook Pro when I noticed that my battery was dead. This was strange considering the power cord had been plugged in overnight. I looked at the cord and realized that the LED light was not glowing. After seeing this, I immediately saw that part of my cord (close to the magnetic part) was brown colored with a few holes burnt in it. Also the part of the cord that connects to the little magnet was coming apart."

• On February 1, 2008, (85W): "I've had my MacBook Pro just over 1 year and the MagSafe lead started to fray at the laptop end. Last night it popped and fizzed and a cloud of smoke appeared. ... These products must be dangerous – very disappointed."

9

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

• Also on February 1, 2008 (85W): "I fell asleep this evening, and woke up to the smell of burning plastic and discharged MacBook Pro. The magsafe adapter, I've been using since Sept 06, when I purchased the unit, frayed at the base, and melted, leaving a plastic mess on the floor, and in the air. I don't want to purchase another one, but I haven't a choice. There are no alternatives. I don't feel safe with this product in my home anymore. I recommend that users do NOT charge their apple laptops at night."

• On January 30, 2008 (85W): "It's really very simple: right where the adapter cable is connected to the MagSafe plug, sparks were flying around... I heard a 'fizzzzz' sound... short circuit... smoke was billowing. The cable was super hot and literally disintegrated in my hands. Thank goodness I was there when it happened – wouldn't want to see my mortgaged house on fire, for crying out loud!"

• On January 14, 2008 (85W): "Well, even with the spare power adapter, and always being careful to plug and unplug it by the head (not pulling on the cord), I had my adapter fail. The other day I was typing away and all of a sudden I started to get shocks from the computer. At the same time the green light on the magnetic head went out and a nasty smell came form the charger. When I went to unplug the charge I discovered a greasy brown fluid leaking from it."

• On January 14, 2008 (85W): "I generally don't think SPARKING AND SMOKING AND MELTING are good traits for a piece of electronics to have. I'm obviously not the first person to have this problem, and the most disturbing thing about these comments is that it KEEPS happening."

• On January 13, 2008 (85W): "Had my adapter (magnetic connection great idea) for just over a year and I plugged it into the laptop this morning to find the green light flicker and then produce a spark/flame. As described it left the beautiful smell of melting plastic and nice burn marks on my laptop and the head of the power cable. MagSAFE... no."

• On January 11, 2008 (85W): "Much like everyone else here, my cord melted where it meets with the computer. Luckily it was in use and I noticed the sparking that may have caused a fire otherwise."

• On January 9, 2008 (85W): "Dear Mac, This is the 3rd try on a battery cord for our daughter's MacBook Pro laptop. It actually started smoking. We have the battery inside the computer burn up also and it bubbled up the outside body of the laptop. We replaced this battery and cord approximately one year or less ago. What's up?"

• January 8, 2008 (85W): "Mine melted, burned and exposed wires at the end next to the brick, which usually sits on my desk. I bought the extended warranty, but seriously, I'm not sure I will be risking my life and home on a new adapter unless it is much better protected. I have contacted the UL people, and would advise others to

10

FIRST AMENDED CLASS ACTION COMPLAINT

1    do the same.  Hopefully Apple won't wait until someone loses their life or home
2    because of this very real hazard."

3        27.    Apple's own website provides admissions that Apple is not only aware of these
4    defects, but provides irresponsible advice for consumers regarding how to address the problems
5    complained of.  On a page titled, "Portable Computers: Troubleshooting power adapters," Apple
6    provides "troubleshooting" under the subject heading:  **"If you see a spark"** which claims that
7    "Sometimes when you plug the power adapter into the wall, you may see a spark. *This is usually*
8    *normal* and can occur when you plug any electrical appliance into a live outlet.  If you are concerned
9    about the spark you see when you plug your adapter into the wall, or if the spark comes from
10   somewhere other than the blades of the plug, you can take your adapter (you don't need to take the
11   computer) in to an Apple Authorized Service Provider or Apple Retail Store for evaluation."
12   (emphasis added).

13       28.    It is not just safety at issue here, but the cost to consumers to use their computers for
14   the purposes for which they were intended.  "I love my other apple products, but having to replace
15   this at $79.99 when it should not have to be replaced at all is not acceptable.  I could tell this was not
16   at all robust when I first started using it.  I was quite careful and it just stopped working.  Apple
17   should either make this product hold up to real world use or sell it for a more affordable price."
18   (Apple Online Store Customer Review - February 3, 2008.)  Similarly, another customer complains,
19   "I am very unhappy that the adapter of my MacBook is no longer functioning.  I travel with my
20   laptop a lot – after all, that is why I prefer laptops – and it seems that the adapter is not designed to
21   hold up to a reasonable amount of use.  After a year and a half it no longer functions and now I have
22   to buy a new one for $80!  What is especially upsetting is that I feel that Apple should replace this at
23   no cost as it is a defective design, not be making money off of their mistake, or else people may not
24   choose to purchase a Mac next time."  (Apple Online Store Customer Review - January 20, 2008.)

25       29.    Of course, it is not just through Apple's online store that consumers are logging
26   complaints about the MagSafe Adapter, the internet is rife with similar complaints.  One consumer
27   recently complained on www.Amazon.com:

28
                                            11
                  FIRST AMENDED CLASS ACTION COMPLAINT

Just do a Google and you'll see the life of this adapter is about a year. Way too many incidents out there. Mine lasted exactly one year. One day I was charging my MacBook and I started to smell wires burning. It turned out to be the wire from this adapter, specifically where it attaches to the MacBook. The key is not to put *any* stress on the wire at all by letting it bend. Apparently the plastic is so cheaply made that eventually it will wear out and expose the wires to each other which is dangerous. Luckily my MacBook was not damaged, and I was there to unplug the adapter when it started to smolder. While I like the smart magnetic design, it's made quite shoddy. Of course the price is very high also at $79!?! Ridiculous! When I went to the Apple store to replace my adapter, there was a 3 week wait as well! I was lucky to find one on Ebay for just under $36. My best advice is not to put any tension on this wire because it obviously can't handle it, and I'd avoid leaving it charging alone simply because I don't trust it and I've Googled quite a few horror stories. Check out the apple store and you'll see all the reviews about sparks, smoke, melting , and fire.

(Amazon.com 85W Adapter Customer Review - November 14, 2007).[13]

30.     To date, Apple has not taken action to remedy the defects [do we know this for sure?] in its MagSafe Adapters, or to offer any replacement product.

31.     Apple faced the same complaints about overheating, fraying, smoking, sparking and premature failure with its predecessor adapter, the 65W Adapter for its PowerBook computer. Apple misleads its customers into thinking that it resolved those design problems in its representations that the MagSafe Adapter is better designed. "Mobile users will love the new MagSafe Power adapter featuring a magnetic DC plug that both ensures a tight connection and enables a clean break from the power port when there is undue tension. It prevents the MacBook Pro from being pulled off of a desk when the cord is accidentally tripped over, *and it protects the power cord from wear and tear.*"[14]

32.     To ensure that its MagSafe Adapter would be fit for the ordinary or particular purposes for which the Adapter was intended, Apple should have adequately tested its MagSafe Adapter prior to releasing it for commercial sale. Had Apple exercised reasonable care in testing its

---

[13]
http://www.amazon.com/review/product/B000F0ELN2/ref=dp_top_cm_cr_acr_txt?%5Fencoding=UTF8&showViewpoints=1

[14] http://www.amazon.com/Apple-MacBook-Laptop-MA091LL-SuperDrive/dp/B000BNHMIY

12
FIRST AMENDED CLASS ACTION COMPLAINT

1    MagSafe Adapter, it would have discovered that its MagSafe Adapters dangerously fray, spark,

2    overheat, melt and prematurely fail.

3        33.      Instead, Apple sold defective MagSafe Adapters to Plaintiffs and proposed class

4    members that were not fit for their intended use.

5        34.      Apple also could and should have tested alternative designs of its MagSafe Adapter

6    to avoid these destructive side-effects. As noted, Apple has been aware of the weakness and defects

7    in its "wrap around" cable design for years [perhaps we should be more general here and not limit to

8    the wrap around design.

9        35.      Furthermore, Apple continues to manufacture and sell its defective MagSafe

10    Adapter even after it was informed by its own customers of the specific design defects alleged

11    herein.

12        36.      Apple profits enormously from the sales of its MagSafe Adapter, while Plaintiffs

13    and proposed class members incur damages, including the price they paid to purchase the defective

14    MagSafe Adapters and the costs to replace them.

15                   **PLAINTIFFS' ALLEGATIONS**

16        37.      Plaintiffs are purchasers of Apple MacBook or MacBook Pro computers that were

17    sold with related devices and peripherals, including a MagSafe Adapter.

18        38.      Plaintiffs purchased and used the MagSafe Adapters, believing them to be

19    reasonably safe to use for the purpose for which they were intended: powering and charging their

20    portable computers.

21        39.      Since purchasing these computers, Plaintiffs have had to replace their MagSafe

22    Adapters because, when used as instructed and intended, their MagSafe Adapters sparked, frayed,

23    melted, wires became exposed and/or they prematurely failed.

24        40.      Plaintiffs learned that far from being the only one experiencing such problems with

25    the MagSafe Adapters, there were hundreds of other similar customer complaints on Apple's

26    website.

27        41.      In fact, Plaintiffs' experiences with the MagSafe Adapter are typical of at least

28    thousands of other Apple purchasers who have registered their complaints with Apple, and have

<div align="center">13</div>

FIRST AMENDED CLASS ACTION COMPLAINT

1  documented their problems with the MagSafe Adapters on various website forums dedicated to

2  Apple products, including Apple's own website.  The similarity of the user complaints about the

3  MagSafe Adapter further evidences the uniformity of the product defects alleged herein.

4       42.     Plaintiffs have suffered injury in fact and loss of money or property, and they have

5  been damaged in the amount they paid for the defective replacement MagSafe Adapters they had to

6  purchase to power and charge their MacBook or MacBook Pro laptop computers.  Moreover, if no

7  safe replacement Adapter exists, Plaintiffs have suffered damages in the amount of the full price they

8  paid for their MacBook or MacBook Pro computers.

9                          **CLASS ALLEGATIONS**

10      43.     Plaintiffs bring this class action on behalf of themselves individually and all others

11  similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

12      44.     The proposed class consists of all consumers who purchased an Apple MagSafe

13  60W Adapter or Apple MagSafe 85W Adapter from the time of their introduction in the marketplace

14  through and including the date of class notice (the "Class").

15      45.     This action is properly brought as a class action for the following reasons:

16           (a)     the proposed class is so numerous and geographically dispersed throughout

17  the United States that the joinder of all class members is impracticable.  While Plaintiffs do not

18  know the exact number and identity of all class members, Plaintiff believes there are tens if not

19  hundreds of thousands of class members;

20           (b)     the disposition of Plaintiffs' and proposed class members' claims in a class

21  action will provide substantial benefits to both the parties and the Court;

22           (c)     the proposed class is ascertainable and there is a well-defined community of

23  interest in the questions of law or fact alleged herein since the rights of each proposed class member

24  were infringed or violated in the same fashion;

25           (d)     there are questions of law and fact common to the proposed class which

26  predominate over any questions that may affect particular class members. Such common questions

27  include:

28

FIRST AMENDED CLASS ACTION COMPLAINT

1            (i)           Whether Defendant exercised reasonable care in testing its MagSafe

2 Adapter prior to its release for commercial sale;

3            (ii)          Whether Defendant's MagSafe Adapter is defective when used as

4 directed, intended or in a reasonably foreseeable manner;

5            (iii)        Whether feasible alternative safer formulations of the MagSafe

6 Adapter were available;

7            (iv)         Whether Defendant's MagSafe Adapter was fit for its intended

8 purpose;

9            (v)           Whether Apple has breached the implied warranty of fitness for a

10 particular purpose;

11            (vi)         Whether Apple has breached the implied warranty of

12 merchantability;

13            (vii)        Whether Apple has violated the Magnuson-Moss Warranty Act;

14            (viii)       Whether Apple has acted negligently;

15            (ix)         Whether Apple is strictly liable to Plaintiffs and the class and

16 whether Apple failed to warn Plaintiffs and the class; [should this be 2 items?]

17            (x)           Whether Apple has violated the Song-Beverly Act;

18            (xi)         Whether Apple has violated the UCL;

19            (xii)        Whether Apple has violated the CLRA;

20            (xiii)       Whether Apple has received funds from Plaintiffs and class members

21 that it unjustly received;

22            (xiv)       Whether Plaintiffs and proposed class members have been harmed

23 and the proper measure of relief; and

24            (xv)        Whether Plaintiffs and proposed class members are entitled to an

25 award of punitive damages, attorneys' fees and expenses against Defendant.

26         (e)       Plaintiffs' claims are typical of the claims of the members of the proposed

27 class.

28

<div align="center">15
FIRST AMENDED CLASS ACTION COMPLAINT</div>

1        (f)     Plaintiffs will fairly and adequately protect the interests of the proposed class

2    in that they have no interests antagonistic to those of the other proposed class members, and

3    Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as

4    counsel.

5        (g)     A class action is superior to other available methods for the fair and efficient

6    adjudication of this controversy for at least the following reasons:

7            (i)     Given the size of individual proposed class member's claims and the

8    expense of litigating those claims, few, if any, proposed class members could afford to or would

9    seek legal redress individually for the wrongs Defendant committed against them and absent

10   proposed class members have no substantial interest in individually controlling the prosecution of

11   individual actions;

12           (ii)     This action will promote an orderly and expeditious administration

13   and adjudication of the proposed class claims, economies of time, effort and resources will be

14   fostered and uniformity of decisions will be insured; and

15           (iii)     Without a class action, proposed class members will continue to

16   suffer damages, and Defendant's violations of law will proceed without remedy while Defendant

17   continues to reap and retain the substantial proceeds of its wrongful conduct.

18           (iv)     Plaintiffs know of no difficulty that will be encountered in the

19   management of this litigation which would preclude its maintenance as a class action.

20       46.    Plaintiffs seek damages and equitable relief on behalf of the proposed class on

21   grounds generally applicable to the entire proposed class.

22   **FIRST CAUSE OF ACTION**

23   **(Violations of California Business and Professions Code § 17200)**

24       47.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

25   paragraphs above as if fully set forth herein.

26       48.    California Business & Professions Code § 17200 prohibits acts of unfair

27   competition, which means and includes any "unlawful, unfair or fraudulent business act or practice"

28   and any act prohibited by Cal. Bus. & Prof. Code § 17500.

FIRST AMENDED CLASS ACTION COMPLAINT

49.     Apple violated Cal. Bus. & Prof. Code § 17200's prohibition against engaging in an "**unlawful**" business act or practice by, *inter alia*, selling defective and non-merchantable MagSafe Adapter to Plaintiffs, proposed class members, and the general public, failing to use reasonable care to test its MagSafe Adapter prior to sale, and by continuing to sell its defective Adapter after learning that it caused sparking, fraying and premature failure when used as intended, in violation of Cal. Civ. Code §§ 1770(a), 1791, *et seq.*, Cal. Comm. Code §§ 2313 & 2314, U.C.C. § 2-313 & § 2-314,   15 U.S.C. § 2310(d)(1), and the common law, including the common law of negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of the duty to disclose.

50.     Plaintiffs reserve the right to allege other violations of law which constitute other unlawful business acts and practices.  Such conduct is ongoing and continues to this date.

51.     The foregoing conduct also constitutes "**unfair**" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200.  Apple's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated.  Further, such conduct is in violation of Cal. Civ. Code §§ 1770(a), 1791 *et seq.*, and the common law, including the common law of negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of the duty to disclose.

52.     Apple's conduct caused and continues to cause substantial injury to consumers and their property, including Plaintiffs and proposed class members.  The gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct.  There were also reasonably available alternatives to Apple to further its business interests, other than voluntarily placing its defective MagSafe Adapter into the stream of commerce.

53.     Plaintiffs and Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's unfair and unlawful business practices and are therefore entitled to the relief available under Cal. Bus. & Prof. Code §17200, *et seq.*, as detailed below.

17
FIRST AMENDED CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

### (Violations of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*)

54.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

55.     This cause of action arises under the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* Plaintiffs are consumers as defined by Cal. Civ. Code § 1761(d). Apple's MagSafe Adapters constitute "goods" as defined by Cal. Civ. Code § 1761(a). At all times relevant hereto, Apple constituted a "person" as that term is defined in Cal. Civ. Code § 1761(a), and Plaintiffs and class members' purchases of the MagSafe Adapters constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(b).

56.     Apple violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code § 1770(a), in transactions with Plaintiffs and class members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

(a)     In violation of Cal. Civ. Code § 1770(a)(5), Defendant's acts and practices constitute misrepresentations that the MagSafe Adapters in question have characteristics, benefits or uses which they do not have;

(b)     In violation of Cal. Civ. Code § 1770(a)(7), Defendant has misrepresented that the MagSafe Adapters in question are of particular standard, quality and/or grade, when they are of another; and

(c)     In violation of Cal. Civ. Code § 1770(a)(9), Defendant advertised the Adapters in question with the intent not to sell them as advertised or represented.

57.     Apple has made uniform representations that its MagSafe Adapter is a high-quality product that will perform as represented. These representations, as set forth above, were false, deceptive, and/or misleading and in violation of the CLRA.

58.     Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Apple in writing by certified mail of the particular violations of Cal. Civ. Code § 1770 alleged herein, and have demanded that

18

FIRST AMENDED CLASS ACTION COMPLAINT

1  Apple rectify the problems associated with the actions detailed above and give notice to all affected

2  consumers of its intent to so act. Plaintiffs sent this notice by certified mail, return receipt requested,

3  to Apple's principal place of business.

4      59.     Apple has failed to rectify or agree to rectify the problems associated with the

5  actions detailed above and give notice to all affected consumers within 30 days after receipt of the

6  Civil Code § 1782 notice, thus Plaintiffs seek actual damages and punitive damages for violation of

7  the Act.

8      60.     In addition, pursuant to Civil Code § 1780(a)(2), Plaintiffs are entitled to, and

9  therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate

10  Cal. Civ. Code § 1770.

11     61.     Plaintiffs and the class are also entitled to recover attorneys' fees, costs, expenses

12  and disbursements pursuant to Cal. Civ. Code §§ 1780 and 1781.

13                          **THIRD CAUSE OF ACTION**

14   **(Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1))**

15     62.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

16  paragraphs above as if fully set forth herein.

17     63.     By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

18  warranted that it was reasonably safe for its intended use, *i.e.*, to withstand usual wear as a portable

19  device and to charge the computers without causing fraying, sparking or premature failure.

20     64.     Apple's MagSafe Adapter is not merchantable. In breach of the implied warranty of

21  merchantability and fitness for a particular purpose, Apple's MagSafe Adapter fails to charge

22  properly, falls apart and causes sparking which is a safety hazard as well as causes damage to the

23  computers.

24     65.     Apple's MagSafe Adapter was not reasonably safe for its intended use when it left

25  Defendant's control and entered the market.

26     66.     The MagSafe Adapter defects were not open and/or obvious to consumers. Any

27  purported limitation of the duration and scope of these warranties given by Apple is unreasonable,

28  unconscionable and void, because Apple knew or recklessly disregarded the fact that the defect in

19

FIRST AMENDED CLASS ACTION COMPLAINT

1  the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had

2  been used for a period of time longer than the period of any written warranty, and Apple willfully

3  withheld information about the defect from purchasers of Apple computers.  Moreover, due to the

4  unequal bargaining power between the parties, Plaintiffs and the class members had no meaningful

5  alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

6       67.     The dangerous design and manufacture of the MagSafe Adapter was, and is, an

7  inherent safety-related defect which either was known or which should have been known to Apple to

8  be a defect at the time plaintiffs and the class members purchased their Apple computers and

9  Adapters.

10      68.     The presence of this defect, and Apple's failure to warn of its presence or cure the

11 defect, constitutes a breach of both the express and implied warranties.

12      69.     Apple's knowledge of this inherent defect, through both Plaintiffs' 30-day demand

13 letter, and through the complaints lodged on its own website about the Adapter, has given Apple

14 more than a reasonable opportunity to cure the defect – an opportunity that Apple has failed and

15 refused to take.

16      70.     As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*,

17 the amount they paid to purchase and replace Apple's un-merchantable MagSafe Adapters, and if no

18 safe replacement exists, in the amount they paid for their related Apple Computer, which relies on

19 the MagSafe Adapter for its power and usage.

20      71.     Pursuant to 15 U.S.C. § 2310(D) (2), Plaintiffs are also entitled to attorneys' fees

21 and reimbursement of expenses.

22                          **FOURTH CAUSE OF ACTION**

23              **(Breach of Implied Warranty of Fitness for a Particular Purpose)**

24      72.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

25 paragraphs above as if fully set forth herein.

26      73.     By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

27 warranted that its Adapter was reasonably safe for its particular purpose, *i.e.*, to withstand usual wear

28

FIRST AMENDED CLASS ACTION COMPLAINT

1    as a portable device and to charge the computers without causing fraying, sparking or premature

2    failure.

3         74.      Apple's MagSafe Adapter is not fit for its particular purpose.  In breach of the

4    implied warranty of fitness for a particular purpose, Apple's MagSafe Adapter fails to charge

5    properly, falls apart and causes sparking, which is a safety hazard as well as a cause of damage to the

6    computers.

7         75.      Apple's MagSafe Adapter was not reasonably safe for its intended particular use

8    when it left Defendant's control and entered the market.

9         76.      The MagSafe Adapter defects were not open and/or obvious to consumers.

10        77.      Any purported limitation of the duration and scope of the implied warranty of fitness

11    for a particular purpose given by Apple is unreasonable, unconscionable and void, because Apple

12    knew or recklessly disregarded that the defect in the MagSafe Adapter existed and might not be

13    discovered, if at all, until the MagSafe Adapters had been used for a period of time longer than the

14    period of any written warranty, and Apple willfully withheld information about the defect from

15    purchasers of Apple computers.  Moreover, due to the unequal bargaining power between the

16    parties, Plaintiffs and class members had no meaningful alternative to accepting Apple's attempted

17    pro forma limitation of the duration of any warranties.

18        78.      As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*,

19    the amount they paid to purchase and replace Apple's unfit MagSafe Adapters, and if no safe

20    replacement exists, in the amount they paid for their related Apple Computer, which relies on the

21    MagSafe Adapter for its power and usage.

22                             **FIFTH CAUSE OF ACTION**

23              **(Breach of Implied Warranty of Merchantability)**

24        79.      Plaintiffs re-allege and incorporate by reference the allegations contained in the

25    paragraphs above as if fully set forth herein.

26        80.      By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

27    warranted that its Adapter was reasonably safe for its intended use, *i.e.*, to withstand usual wear as a

28    portable device and to charge the computers without causing fraying, sparking or premature failure.

FIRST AMENDED CLASS ACTION COMPLAINT

81.     Apple's MagSafe Adapter is not merchantable.  In breach of the implied warranty of merchantability, Apple's MagSafe Adapter fails to charge properly, falls apart and causes sparking, which is a safety hazard as well as a cause of damage to the computers.

82.     Apple's MagSafe Adapter was not reasonably safe for its intended use when it left Defendant's control and entered the market.

83.     The MagSafe Adapter defects were not open and/or obvious to consumers.

84.     Any purported limitation of the duration and scope of the implied warranty of merchantability given by Apple is unreasonable, unconscionable and void, because Apple knew or recklessly disregarded that the defect in the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had been used for a period of time longer than the period of any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple computers.  Moreover, due to the unequal bargaining power between the parties, plaintiffs and the class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

85.     As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*, the amount they paid to purchase and replace Apple's un-merchantable MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple Computer, which relies on the MagSafe Adapter for its power and usage.

**SIXTH CAUSE OF ACTION**

**(Violations of the Song-Beverly Consumer Warranty Act,
Cal. Civ. Code § 1791 *et seq.*)**

86.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

87.     This cause of action is brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791 *et seq.*  Plaintiffs are "buyers," Defendant's MagSafe Adapter is a "consumer good," and Defendant is a "retailer" and "manufacturer" within the meaning of Song-Beverly.

22
FIRST AMENDED CLASS ACTION COMPLAINT

1    88.    By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

2 warrants that its MagSafe Adapter is reasonably safe for its intended use, *i.e.*, to withstand usual

3 wear as a portable device and to charge the computers without causing fraying, sparks or premature

4 failure.

5    89.    Apple's Adapter is not merchantable.  In breach of its implied warranty, Apple's

6 MagSafe Adapter fails to charge properly, falls apart and causes sparking, which is a safety hazard

7 as well as a cause of damage to the computers.

8    90.    Apple's MagSafe Adapter was not reasonably safe for its intended use when it left

9 Defendant's control and entered the market.

10    91.    Apple's MagSafe Adapter's defects were not open and/or obvious to consumers.

11    92.    As a result, Plaintiffs and proposed class members have been damaged and will

12 continue to be damaged in, *inter alia*, the amount they paid to purchase and replace un-merchantable

13 MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple

14 Computer which relies on the MagSafe Adapter for its power and usage.

15    93.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and proposed class members are

16 entitled to damages under the Song-Beverly Consumer Warranty Act, including, *inter alia*,

17 reimbursement in the amount they paid for Defendant's MagSafe Adapters, and if no safe

18 replacement exists, in the amount they paid for their related Apple Computer, which relies on the

19 MagSafe Adapter for its power and usage and for their costs, expenses and attorneys' fees.

20                    **SEVENTH CAUSE OF ACTION**

21                        **(Negligence)**

22    94.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

23 paragraphs above as if fully set forth herein.

24    95.    The conduct of Apple in manufacturing, distributing and selling the MagSafe

25 Adapter constituted negligence in failing to reasonably act in accordance with all applicable

26 standards of care. Apple owed Plaintiffs and class members a duty not to disseminate a materially

27 defective product.

28

FIRST AMENDED CLASS ACTION COMPLAINT

96.    Apple also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the class of the defective and unreasonably dangerous condition of the MagSafe Adapters, even after Apple was, or should have been, fully aware of the material defects in said MagSafe Adapters.

97.    As a direct and proximate result of Apple's negligence, Plaintiffs and members of the class suffered economic injury, entitling them to just compensation, as detailed below.

<div align="center">

**EIGHTH CAUSE OF ACTION**

**(Money Had and Received)**

</div>

98.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

99.    As more fully set forth above, Apple has in its possession money which in equity and good conscience belongs to plaintiff and Class members, which should be refunded to plaintiff and Class members.

<div align="center">

**NINTH CAUSE OF ACTION**

**(Unjust Enrichment)**

</div>

100.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

101.    Apple improperly received and continues to improperly receive from Plaintiffs and class members millions of dollars as a result of the conduct alleged above.

102.    As a result, Plaintiffs and the class have conferred a benefit on Apple to which Apple is not entitled. Apple has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred on it. Apple will be unjustly enriched if it is allowed to retain such funds and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by the Apple and the money should be disgorged from Defendant, and returned to Plaintiffs and the class.

<div align="center">

24

</div>

FIRST AMENDED CLASS ACTION COMPLAINT

1

## PRAYER FOR RELIEF

2    WHEREFORE, Plaintiffs pray this Court enter a judgment against Defendant that:

3    A.    This action be certified and maintained as a class action under Rule 23 of the

4    Federal Rules of Civil Procedure and certify the proposed class as defined;

5    B.    Awards compensatory, statutory and/or punitive damages as to all Causes of Action

6    where such relief is permitted;

7    C.    Awards Plaintiffs and proposed class members the costs of this action, including

8    reasonable attorneys' fees and expenses;

9    D.    Orders Apple to immediately cease its wrongful conduct as set forth above; enjoins

10   Apple from continuing to falsely market and advertise, conceal material information, and conduct

11   business via the unlawful and unfair business acts and practices complained of herein; orders Apple

12   to engage in a corrective notice campaign, and requires Apple to refund to Plaintiffs and all of the

13   class members the funds paid to Apple for these defective products, including, if no reasonably safe

14   replacement product exists, the full price paid for the subject computers;

15   E.    Awards equitable monetary relief, including restitution and disgorgement of all ill-

16   gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of

17   Defendant's ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective

18   remedy;

19   F.    Awards pre-judgment and post-judgment interest at the legal rate; and

20   G.    Such further legal and equitable relief as this Court may deem just and proper.

21

22

23

24

25

26

27

28

<div align="center">25</div>

FIRST AMENDED CLASS ACTION COMPLAINT

1

**JURY DEMAND**

2

Plaintiffs demand a trial by jury on all issues so triable.

3

4    DATED: May 21, 2009                    ZELDES & HAEGGQUIST, LLP
                                            HELEN I. ZELDES
5                                           ALREEN HAEGGQUIST

6

7                                           s/ Helen I. Zeldes
                                                      HELEN I. ZELDES
8
                                            625 Broadway, Suite 906
9                                           San Diego, CA  92101
                                            Telephone:  619/342-8000
10                                          619/342-7878 (fax)

11

12

13
              **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**
14
        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the
15
    named parties, there is no such interest to report.
16

17

18

19

20                                          s/ Helen I. Zeldes
                                            HELEN I. ZELDES, ATTORNEY OF
21                                          RECORD F OR PLAINTIFFS
                                            TIMOTHY J. BROAD, JESSE REISMAN,
22                                          NEOTAKA KITAGAWA, JR.,

23

24

25

26

27

28
                                      26
    FIRST AMENDED CLASS ACTION COMPLAINT

ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
Fax:  619/342-7272
Email: helenz@zhlaw.com
alreenh@zhlaw.com

MEHRI & SKALET, PLLC
STEVEN A. SKALET (*admitted pro hac vice*)
CRAIG L. BRISKIN (*admitted pro hac vice*)
1250 Connecticut Ave. NW, Suite 300
Washington, DC 20036
Telephone:  202/822-5100
Fax: 202/822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

Attorneys for the *Kitagawa* Plaintiffs
[Additional counsel appear on the next page and the signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAOTAKA KITAGAWA, JR., TIMOTHY BROAD and JESSE REISMAN, on behalf of themselves and all other similarly situated | Case No. C 09-01911 JW |
| | (Case No. C 09-03862 JW) |
| TRACEY HACKWITH, and MICHAEL MARTIN, Individually and On Behalf of All Others Similarly Situated, | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | JURY TRIAL DEMANDED |
| APPLE, INC., and DOES 1 THROUGH 50, inclusive, | |
| Defendants. | |

CONSOLIDATED CLASS ACTION COMPLAINT

1    ANGELA C. AGRUSA (CA SBN 131337)
       aagrusa@linerlaw.com
2    CAMILLA Y. CHAN (CA SBN 241674)
       cchan@linerlaw.com
3    LINER GRODE STEIN YANKELEVITZ
       SUNSHINE REGENSTREIF & TAYLOR LLP
4    1100 Glendon Avenue, 14th Floor
       Los Angeles, California 90024-3503
5    Telephone:  (310) 500-3500
       Facsimile:  (310) 500-3501
6
       PATRICK MCNICHOLAS (CA SBN 125868)
7    Catherine B. Schmidt (CA SBN 212827)
       MCNICHOLAS & MCNICHOLAS LLP
8    10866 Wilshire Boulevard Suite 1400
       Los Angeles, CA 90024-4338
9    Telephone: (310) 474-1582
       Facsimile:  (310) 475-7871
10
       Attorneys for the *Hackwith* Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT

1   Plaintiffs Naotaka Kitagawa, Jr., Timothy J. Broad, Jesse Reisman, Leticia Arrellano, Tracey
2   Hackwith, and Michael Martin (collectively "Plaintiffs"), by and through their attorneys, bring this
3   action on behalf of themselves and all others similarly situated against Apple, Incorporated ("Apple"
4   or "Defendant") and Does 1 through 50.  Plaintiffs hereby allege, on information and belief, except
5   as to those allegations which pertain to the named Plaintiffs, which allegations are based on personal
6   knowledge, as follows:

### NATURE OF THE ACTION

7

8   1.   Plaintiffs bring this class action on behalf of purchasers of Apple's "Apple 85W
9   MagSafe Power Adapter (for MacBook Pro)" and the "Apple 60W MagSafe Power Adapter (for the
10   MacBook)" (referred to collectively as the "MagSafe Adapter") in California and throughout the
11   United States.

12   2.   In its marketing of the product, Apple has represented that the MagSafe Adapter was
13   designed with a "magnetic DC connector that ensures your power cable will disconnect if it
14   experiences undue strain and helps prevent fraying or weakening of the cables over time.  Designed
15   to be the perfect traveling companion, the adapter has a clever design which allows the DC cable to
16   be wound neatly around itself for easy cable storage." *See* http://www.apple.com/store.

17   3.   The MagSafe Adapter is the only plug-in power source Apple provides for the
18   MacBook and MacBook Pro computers.  However, the MagSafe Adapter is not fit for the ordinary
19   purposes for which it was intended:  powering up and charging MacBook computers.  Instead, the
20   MagSafe Adapter – because it was negligently designed and manufactured – *inter alia*, dangerously
21   frays, sparks, prematurely fails to work, and catches fire, overheats and melts (the "Design
22   Defects").  The MagSafe Adapter poses a present and latent danger to its users when used as
23   directed.  Apple is and was aware of this dangerous defect, but Apple has failed to disclose it or
24   warn Plaintiffs and the Class of the defect.  As of the date of this filing, Apple continues to market
25   and sell the defective MagSafe Adapter, resulting in continuing damage to the Class.  As a result,
26   Plaintiffs and the Class (which likely number in the millions) have purchased flawed and dangerous
27   MagSafe Adapters, which prematurely fail and present fire hazards.

28

1

CONSOLIDATED CLASS ACTION COMPLAINT

4.      Plaintiffs bring this class action on behalf of themselves and all others similarly situated, asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL" or "§17200"); the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); the Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(1); Breach of Express Warranty; Breach of the Implied Warranty of Fitness for a Particular Purpose; Breach of the Implied Warranty of Merchantability; violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1790 *et seq.* ("Song-Beverly"); Negligence; Unjust Enrichment, Untrue and Misleading Advertising in Violation of Cal. Bus & Prof. Code § 17500 *et seq.*; Injunctive Relief and Declaratory Relief. Plaintiffs seek damages and equitable relief on behalf of the Class, which relief includes but is not limited to the following: providing class members with a safe, defect-free Adapter, or if no such product exists, to refund Plaintiffs and class members the full amount paid for their Apple computer, which relies on the MagSafe Adapter for its power and usage; a refund of the replacement cost of the defective MagSafe Adapters; costs and expenses, including attorneys' fees and expert fees; declaratory relief; and any additional relief that this Court determines to be necessary to provide complete relief to Plaintiffs and the Class.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1367, because Plaintiffs' claims arise under federal statute. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

6.      This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of the Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and members of the Class reside across the United States and are therefore diverse from Defendant.

7.      This Court has personal jurisdiction over Apple because its corporate headquarters are located in Cupertino, California, it is authorized to conduct business in California, and it has intentionally availed itself of the laws and markets of California through the promotion, marketing, distribution and sale of its MagSafe Adapter in California.

1        8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a

2    substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

3    Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of

4    its business in this District. In addition, Defendant is headquartered in Santa Clara County, which is

5    assigned to this Division of the Court. Plaintiffs are filing concurrently herewith an affidavit stating

6    facts showing that this action has been commenced in a proper county pursuant to Cal. Civ. Code

7    § 1780(c).

8                                  **INTRADISTRICT ASSIGNMENT**

9        9.      Assignment to the San Jose Division is proper because a substantial portion of the

10   acts, events, and omissions giving rise to this action occurred in Santa Clara, which is within the

11   purview of the San Jose Division of this District.

12                                     **PARTIES**

13       10.     Plaintiff Naotaka Kitagawa, Jr. ("Mr. Kitigawa") resides in Cupertino, California.

14   Plaintiff purchased an Apple MacBook computer, which came with an Apple MagSafe 60W

15   Adapter, in May 2006. Approximately a year and a half after purchase, Plaintiff noticed that the

16   MagSafe Adapter cut power intermittently, the cable near the connector became frayed, and the

17   jacket over the wiring showed signs of melting and discoloration from heat. Plaintiff purchased an

18   85W MagSafe replacement adapter from an Apple Store in San Jose, California on December 19,

19   2008 for $79.00 plus tax, totaling $85.52.

20       11.     Plaintiff Timothy J. Broad ("Mr. Broad") resides in Cincinnati, Ohio. In September

21   2006, Mr. Broad purchased an Apple MacBook computer, which came with an Apple MagSafe 60W

22   Adapter. Approximately fourteen months after purchase, Mr. Broad was using his MacBook when

23   he noticed that the MagSafe Adapter cable was severely overheating. "It almost burned my hand

24   when I brushed it accidentally." Concerned something was wrong, Mr. Broad kept an eye on the

25   MagSafe Adapter and noticed that it had started to melt, forming a large hole in the cable. The

26   MagSafe Adapter then shorted and stopped working. Mr. Broad feared his home "might have

27   caught fire" if he had not been present at the time. Mr. Broad bought an 85W MagSafe replacement

28

CONSOLIDATED CLASS ACTION COMPLAINT

1   adapter on E-bay in mid-September, 2006 for approximately $58.00.  That MagSafe Adapter

2   recently failed in a similar fashion, and Mr. Broad purchased a second replacement adapter.

3          12.      Plaintiff Jesse Reisman ("Mr. Reisman") resides in Fort Washington, Maryland.  In

4   or about June 2006, Plaintiff purchased an Apple MacBook Pro computer, which came with an

5   Apple MagSafe 85W Adapter.  Approximately a year and a half after purchase, Mr. Reisman noticed

6   that the MagSafe Adapter became "noticeably hot" when the computer was in use and that the cable

7   wires had become exposed at the point where cable entered the main adapter body, as well as at the

8   point of insertion into the MagSafe connector, creating a hazardous condition.  Mr. Reisman

9   purchased an 85W MagSafe replacement adapter on January 18, 2008 from Amazon.com for $70.38.

10  Mr. Reisman's replacement adapter is now showing signs of premature failure.

11         13.      Plaintiff Leticia Arrellano ("Ms. Arrellano") resides in Anaheim, California.  On or

12  about August, 2007, Ms. Arrellano purchased an Apple MacBook computer, which came with an

13  Apple MagSafe 60W Adapter.  Approximately two years after purchase, while watching a movie on

14  her computer, Ms. Arrellano noticed that the MagSafe Adapter had severely burned her left leg.  Ms.

15  Arrellano is a paraplegic and, thus, was unable to feel the heat of the charger.  Ms. Arrellano

16  suffered second degree burns from the Adapter, which she fears could have been worse had she not

17  removed the MagSafe Adapter from resting against her leg when she did.  Ms. Arrellano purchased a

18  60W replacement Adapter from E-bay on November 25, 2009, for $30.90.

19         14.      Plaintiff Tracey Hackwith ("Ms. Hackwith") is, and at all relevant times has been, a

20  resident and citizen of California.  Ms. Hackwith purchased a MacBook from Apple online for her

21  thirteen year-old son on June 27, 2006.  The MacBook came with a 60W MagSafe Adapter, which,

22  after the warranty expired, stopped working after the cord frayed at the end, near the magnet .  Ms.

23  Hackwith then purchased a replacement MagSafe Adapter at the Apple store in Mission Viejo,

24  California.  The replacement MagSafe Adapter frayed, separated, and charred at the same place as

25  the original MagSafe Adatper, with visible signs of smoke.  Ms. Hackwith returned to the Apple

26  store in Mission Viejo, California to replace her second, defective MagSafe Adapter.  Apple

27  employees told her that the MagSafe Adapter was out of warranty, and for this reason, they refused

28  to replace the MagSafe Adapter.  The Apple employees informed her that she could purchase a

4

1   replacement MagSafe Adapter for $79.99. Ms. Hackwith decided not to purchase another version of

2   the same defective product – a product that she feared might burn down her house.

3        15.    Plaintiff Michael Martin ("Mr. Martin") is, and at all relevant times has been, a

4   resident of Wisconsin. Mr. Martin purchased a MacBook Pro with an 85W MagSafe Adapter from

5   the Apple online store in August 2006. In or about March 2008, the MagSafe Adapter failed when

6   its wires pulled away from the magnet portion during normal operation, and started to burn through

7   the wire sheath. The sheath ultimately burned all the way through, causing the plastic material to

8   smoke and release a noxious burnt plastic odor. Mr. Martin then took the MagSafe Adapter to the

9   Apple Store at the Mayfair Mall in Wisconsin for an appointment with Apple's repair service

10   provider, the "Genius Bar." He explained what happened and showed the Apple employee the

11   MagSafe Adapter. The Apple employee only offered to sell him a new MagSafe Adapter for $79.99.

12   Mr. Martin protested saying that the MagSafe Adapter should not be burning and catching fire. The

13   Apple employee left to speak to the Apple store manager, and then came back and said that the item

14   was out of warranty and that Mr. Martin had obviously abused the MagSafe Adapter. Mr. Martin,

15   who took special care of his computer, found the allegation insulting and stated that the MagSafe

16   Adapter was never abused and that he was not going to buy a new MagSafe Adapter because it

17   almost burnt his house down. It was not until he raised his safety concern that the Apple employee

18   replaced the MagSafe Adapter. Mr. Martin used the replacement MagSafe Adapter beginning in

19   March 2008. Mr. Martin is informed and believes that Apple merely replaced his MagSafe Adapter

20   with yet another MagSafe Adapter containing the same defects that led to the burning of the original

21   one. Mr. Martin fears that he will have to replace this latest MagSafe Adapter with yet another

22   defectively designed product. A photograph of Mr. Martin's defective MagSafe Adapter appears

23   below:



24

25

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT

16.     Defendant Apple, Inc. ("Apple") is incorporated in California. Its executive offices and company headquarters are located in Cupertino, Santa Clara County, California. Apple is registered to do business in the State of California, and conducts substantial business here. Apple is a publicly traded company, with net sales of over $32.4 billion in 2008, $14.5 billion of which was in the United States alone (up 26% from 2007).[1]  Apple markets and sells its MacBook and MacBook Pro Computers ("Subject Computers") and MagSafe Adapters to consumers throughout the United States, including to at least tens of thousands of consumers in California, which constitutes a significant percentage of Apple's sales in the United States and California.

17.     The true names and capacities of Defendants sued herein under California Code of Civil Procedure § 474 as Does 1 through 50, inclusive, are presently unknown to Plaintiffs, who therefore sue these Defendants by fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Each of the Doe Defendants is responsible in some manner for the conduct alleged herein.

## DEFENDANT'S UNLAWFUL CONDUCT

18.     Since the 1970s, Apple has been engaged in the business of designing, manufacturing, marketing, distributing and selling personal computers and related products and services through its own retail (and more recently, online) stores, direct sales, third party wholesalers and resellers.

19.     On or about February 2006, Apple began designing, manufacturing, warranting, advertising, marketing, selling and providing the MagSafe Adapters at issue to consumers throughout the United States for use with its new MacBook series laptop computers. The MacBook was the first generation of this new series, and the MacBook Pro was the second generation (collectively, the "Subject Computers"). Apple sold the MagSafe Adapters to Plaintiffs and the Class as original equipment with its Subject Computers, as separate accessories for them, and also as

---

[1] Apple, Inc.'s 2008 10-K.

CONSOLIDATED CLASS ACTION COMPLAINT

1 replacements.   The MagSafe Adapter is the only power source Apple provides with or for its

2 MacBook and MacBook Pro computers.

3        20.      Apple markets the benefits of the MagSafe Adapter for both its MacBook and

4 MacBook Pro computers.

5        21.      Regarding the 85W MagSafe Adapters that come with the MacBook Pro series

6 laptop computers, Apple makes the following representations:

7        The MagSafe Power Adapter is just that: a magnetic connection instead of a
         physical one.  So tripping over a power cord won't send your shiny new
8        MacBook flying off a table or desk; **the cord simply breaks cleanly away,**
         **without damage to either the cord or the system. As an added nicety, this**
9        **means less wear on the connectors.**[2]

10                                    * * * * *

11       Innovative right down to the power cord.  The MacBook Pro power adapter with
         MagSafe connector is just that: a magnetic connection instead of a physical one.
12       So, if you happen to trip over a power cord, you won't send MacBook Pro flying
         off a table or desk; the cord simply disconnects, without damage to either the cord
13       or the system.  As an added nicety, this means less wear on the connectors.[3]

14                                    * * * * *

15       Designed to be the **perfect traveling companion**, the adapter has a clever design
         which allows the DC cable to be wound neatly around itself for easy cable
16       storage.[4]

17       22.      Regarding the 60W MagSafe Adapter that comes with the MacBook series laptop

18 computers, Apple makes the following representations:

19       Good design leaves nothing to chance.  Great design anticipates it.  No surprise, then,
         that MacBook features little touches — like a **klutz-proof power adapter** and a
20       **nifty magnetic latch** — that make your computing experience as streamlined as the
         MacBook itself.[5]
21

22

23 [2] http://www.apple.com/macbook/design.html.

24 [3] http://www.apple.com/macbookpro/design.html.

25 [4]http://store.apple.com/1-800-MY-
   APPLE/WebObjects/AppleStore.woa/wa/RSLID?mco=816A0BD3&fnode=home/shop_mac/mac_accessories/power&nprl
26 m=MA938LL/A#overview.

27 [5] http://www.apple.com/macbook/design.html.

28

CONSOLIDATED CLASS ACTION COMPLAINT

\* \* \* \* \*

Compact, durable, everything-you-need MacBook.[6]

\* \* \* \* \*

MacBook makes it easy to hit the road thanks to its tough polycarbonate case, built-in wireless technologies, and innovative MagSafe Power Adapter that releases automatically if someone accidentally trips on the cord.[7]

\* \* \* \* \*

**Designed to withstand the rigors of life on the go,** every MacBook comes with Apple's MagSafe Power Adapter, **created especially for mobile users** that makes charging the notebook's battery easier than ever by magnetically coupling the power cord to the MacBook. The MagSafe Power Adapter **safely disconnects from the notebook when there is strain on the power cord,** helping to prevent the notebook from falling off its work surface.[8]

23.     Apple also boasts that its MacBook Pro is its "state of the art"[9] flagship portable computer, designed "for mobile professionals" and "life on the road."[10]

24.     Apple further represents that its MagSafe Adapter for both the MacBook and MacBook Pro as is "designed to be the perfect travel companion."[11]

25.     Apple provided Plaintiffs and each purchaser of a MacBook or MacBook Pro with an express one-year warranty, a true and correct copy of which is attached hereto as "Exhibit A." It states as follows:

Apple...warrants this Apple-branded hardware product against defects in materials and workmanship under normal use for a period of ONE (1) YEAR from the date of retail purchase by the original end-user purchaser. If a hardware defect arises and a valid claim is received within the Warranty Period, at its option, Apple will either (1) repair the hardware defect at no charge, using new or refurbished replacement parts, or

---

[6] http://www.apple.com/getamac/whichmac.html.

[7] http://www.apple.com/macbook/design.html.

[8] Apple Press Release – May 16, 2006.

[9] http://www.apple.com/macbookpro/.

[10] Apple Press Release – June 5, 2007, available at http://www.apple.com/ca/press/2007_06/macbookpro.html.

[11] Apple Store "Overview" for both the 85W and 60W Adapters.

8

(2) exchange the product with a product that is new or which has been manufactured from new or serviceable used parts and is at least functionally equivalent to the original product, or (3) refund the purchase price of the product.

Apple has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations.

26.     Upon information and belief, Apple has never sent out any sort of notice, warning, or recall, or otherwise alerted owners of the MacBook and MacBook Pro computers of the dangers of and problems with the MagSafe Adapters. Instead, Apple has acknowledged the problems of fraying, sparking, melting and overheating associated with the MagSafe Adapters through its half-hearted "extended warranty program" wherein Apple states in a hyperlink buried on its website that consumers who have "see[n] a spark" "may be eligible for a replacement adapter free of charge provided there are no signs of accidental damage." This information is not readily apparent when viewing the website, does not guarantee replacement in all instances of "sparking," and replaces the defective MagSafe Adapter with an identical product containing the same Design Defects. See Apple Portables: Troubleshooting MagSafe Adapters, http://support.apple.com/kb/TS1713?viewlocale=en_US.  Attached hereto as "Exhibit B" is a true and correct copy of Apple Portables: Troubleshooting MagSafe Adapters.

27.     In conjunction with each sale, Apple marketed, advertised and warranted that the defective MagSafe Adapters were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not catch fire.

28.     Apple also made express representations about the quality of its MagSafe Adapter. For example, Apple represents on its website that the magnetic cord is designed specifically to cause "less wear on the connectors." http://www.apple.com/macbook/design.html.

29.     Apple intends for customers to believe its statements and representations about its MagSafe Adapters and to trust that its products are of the highest quality. The name "MagSafe" itself suggests that Apple paid the utmost attention to consumer safety and protection in designing its product. Apple has concealed materials facts relating to the Design Defects, which cause the MagSafe Adapters to cease functioning, overheat and catch fire.

CONSOLIDATED CLASS ACTION COMPLAINT

1      30.     Contrary to Apple's advertisements, the MagSafe Adapter is not "durable" or

2  "designed to withstand the rigors of life on the go," but rather is fragile and fails when used as

3  intended. Plaintiffs and Class members experienced, and continue to experience problems with their

4  MagSafe Adapters even though they have followed the instructions for use and have maintained

5  their MagSafe Adapters with ordinary care.

6      31.     The MagSafe Adapter consistently frays at the end of the cable going in to the

7  magnetic connector, which connects to the computer.  These exposed wires turn the MagSafe

8  Adapter into a fire and electrical shock hazard for Apple's customers.

9      32.     Any adapter designed for a laptop computer must be durable enough to withstand

10  the normal uses for which it is intended.  Such normal use includes coiling the plug when not in use.

11  The Apple MagSafe Adapter is designed so that the power cable will be wound around itself for

12  storage or when in transport and also requires the user to clamp the cable onto itself to keep it in

13  place.[12]  This normal folding and clamping causes undue stress, wear and degradation to the

14  MagSafe Adapter cable.

15      33.     As the MagSafe Adapter designer and manufacturer, Apple possesses specialized

16  knowledge regarding the composition of its MagSafe Adapter, and it is in a superior position to

17  know and learn about defects in its MagSafe Adapter.  In fact, as evidenced by the many purchasers

18  of the MagSafe Adapter who have gone through the trouble of logging on to Apple's website to

19  complain of the problems alleged herein, Apple has been aware of these defects for nearly three

20  years, but has done nothing about them.  From June 2006 through March 2009, more than 1,000

21  "customer reviews" of the MagSafe Adapter have been posted to the Apple Online Store.  The vast

22  majority of the reviews are extremely negative, warning Apple over and over again about the

23  hazards of its MagSafe Adapter.  For example, a recent posting about the 85W Adapter on February

24  28, 2009, titled, **"It melted – literally"** states:

25      •    I turn off (and unplug) my laptop almost every night and while I am gone during the
          day. The wire literally has melted near the battery and no longer works. Aside from being

26

27  [12]  Apple Store / Shop Mac / Power / 85W Adapter

28

very frustrating and annoying, I can see this as posing a possible safety hazard. I'm a very unhappy customer right now and just spent around $100 (including shipping) to get another power cord shipped to me.

- This one, titled **"Melted cord"** was posted February 16, 2009 (85W): Like many other people, I too have a Magsafe power adapter whose cord spontaneously melted after about 9 months.

- On January 10, 2009, in a posting titled **"Just Burned Me"** a user states (85W): "I understand that AC adapters get hot by design, but it is completely unacceptable to get burned by the mag "safe" end. Absolutely ridiculous Apple. This is a flawed design and I can't wait for the class action suit. Count me in."

- On December 28, 2008, KG writes (85W), **"FIRE HAZARD"** and states that, "This product is dangerous. Clearly there is some sort of design flaw here. I noticed a slight separation of the magnet base from the actual cord with a few frayed wires and I took the power adapter to the Apple Store, where I was turned away because I didn't have the actual lap top with me. Figuring, if it were a major issue, I would have been warned not to use the product, I plugged it later the next day while it was on my lap and noticed a burning smell as well as excess heat. When I looked down I saw the plastic and rubber melting and I angled the machine out of my lap and rushed to unplug it. The power port on my computer is scorched. Luckily I only had a very minor burn on my left thigh as a result...nothing to go the emergency room about but think about it. If this had happened when the computer was on my desk, while I was at work, or perhaps if I had been at home asleep, the results could have been disastrous. This could have burnt my apartment, killed my dogs or even me.

I have been an Apple customer and die hard fan since the IIGS, and I am extremely disappointed in the recent quality of Apple products. First the battery issues, then defective hard drives, and now this. I really hope that it doesn't take a death or major property loss for Apple to take responsibility and inform customers of this major safety issue."

- A recent March 4, 2009 posting states (60W), "I have a MacBook and I am on my THIRD charger! It melts all of the time right where the cord connects to the magnet thing!,"

- Another recent posting in December 2008, stated (60W), "After 12 1/2 months my first cord started sparking near the laptop. I was afraid of fire so I took it into the apple store, waited in line for nearly an hour and was told to come back in 5 hours. When I did, I was told that nothing could be done because I didn't purchase the extra warranty. I purchased another cord for 79.00 hoping it wouldn't do the same thing. After 5 months, it started shorting out so I purchased 3rd (THIRD!) cord. Now my 3rd cord has begun to weaken at the connection and gets VERY hot. I have NEVER felt safe leaving it plugged in while I am away from it. Instead of purchasing a 4th 79.00 (320.00 in hazardous power cords) I am going to purchase a new laptop for myself as well as my 2 teenagers - probably time for another brand!

- A posting on February 5, 2008, is titled "FIRE HAZARD!", and states, "This morning I went to turn on my computer that had been left to charge over night, only

to find it would not turn on.  In my quest to determine the cause, I noticed the cord failure that most of the other reviews describe – the power cord just after the MagSafe Power Adapter was melted (charred black and brown actually) and frayed wires were exposed.  As disappointed as I was that this could happen, I realized how fortunate I was that this had not started a fire!  There were NO warning signs!!  This needs to be recalled immediately!"

• Another 60W Adapter posting on December 30, 2007 states:  "Thank goodness I was home when I found my power adapter melting."

• On December 11, 2007, still another customer wrote (60W): "I have had my MacBook for 11 months.  One day I plugged in the charger and this weird hissing came from my computer, then I smelled smoke, and looked down to see my charger was smoking.  I immediately pulled it out but the rubber on the cable was melted."

• On January 11, 2008, another customer posted the comment (60W): "I have had my MacBook for exactly one year and the wire at the end has melted away exposing the wires."

• On December 15, 2007, another customer wrote (60W): "I actually sat there watching the dumb thing melt.  Luckily it didn't catch anything on fire.  I hate to see if it was plugged in while I was away from the house."

• On February 9, 2008, (85W): "I recently went to use my MacBook Pro when I noticed that my battery was dead.  This was strange considering the power cord had been plugged in overnight.  I looked at the cord and realized that the LED light was not glowing.  After seeing this, I immediately saw that part of my cord (close to the magnetic part) was brown colored with a few holes burnt in it.  Also the part of the cord that connects to the little magnet was coming apart."

• On February 1, 2008, (85W): "I've had my MacBook Pro just over 1 year and the MagSafe lead started to fray at the laptop end.  Last night it popped and fizzed and a cloud of smoke appeared. ... These products must be dangerous – very disappointed."

• Also on February 1, 2008 (85W): "I fell asleep this evening, and woke up to the smell of burning plastic and discharged MacBook Pro.  The magsafe adapter, I've been using since Sept 06, when I purchased the unit, frayed at the base, and melted, leaving a plastic mess on the floor, and in the air.  I don't want to purchase another one, but I haven't a choice.  There are no alternatives.  I don't feel safe with this product in my home anymore.  I recommend that users do NOT charge their apple laptops at night."

• On January 30, 2008 (85W): "It's really very simple: right where the adapter cable is connected to the MagSafe plug, sparks were flying around... I heard a 'fizzzzz' sound... short circuit... smoke was billowing.  The cable was super hot and

literally disintegrated in my hands. Thank goodness I was there when it happened – wouldn't want to see my mortgaged house on fire, for crying out loud!"

• On January 14, 2008 (85W): "Well, even with the spare power adapter, and always being careful to plug and unplug it by the head (not pulling on the cord), I had my adapter fail. The other day I was typing away and all of a sudden I started to get shocks from the computer. At the same time the green light on the magnetic head went out and a nasty smell came form the charger. When I went to unplug the charge I discovered a greasy brown fluid leaking from it."

• On January 14, 2008 (85W): "I generally don't think SPARKING AND SMOKING AND MELTING are good traits for a piece of electronics to have. I'm obviously not the first person to have this problem, and the most disturbing thing about these comments is that it KEEPS happening."

• On January 13, 2008 (85W): "Had my adapter (magnetic connection great idea) for just over a year and I plugged it into the laptop this morning to find the green light flicker and then produce a spark/flame. As described it left the beautiful smell of melting plastic and nice burn marks on my laptop and the head of the power cable. MagSAFE… no."

• On January 11, 2008 (85W): "Much like everyone else here, my cord melted where it meets with the computer. Luckily it was in use and I noticed the sparking that may have caused a fire otherwise."

• On January 9, 2008 (85W): "Dear Mac, This is the 3rd try on a battery cord for our daughter's MacBook Pro laptop. It actually started smoking. We have the battery inside the computer burn up also and it bubbled up the outside body of the laptop. We replaced this battery and cord approximately one year or less ago. What's up?"

• January 8, 2008 (85W): "Mine melted, burned and exposed wires at the end next to the brick, which usually sits on my desk. I bought the extended warranty, but seriously, I'm not sure I will be risking my life and home on a new adapter unless it is much better protected. I have contacted the UL people, and would advise others to do the same. Hopefully Apple won't wait until someone loses their life or home because of this very real hazard."

34.     Apple knew and was aware, or should have been aware, before marketing and selling the MagSafe Adapters, that they were inherently defective because even when operated as instructed, the MagSafe Adapters were substantially likely to fray, spark, melt, overheat and/or prematurely fail. Apple nonetheless failed to warn its customers of the Design Defects inherent in

13

1  the MagSafe Adapters. If Plaintiffs and other Class members had known about the Design Defects,

2  they would not have paid significant sums for MacBooks equipped with MagSafe Adapters.

3      35.    Apple's own website provides admissions that Apple is not only aware of these

4  defects, but provides irresponsible advice for consumers regarding how to address the problems. On

5  a page titled, "Portable Computers: Troubleshooting power adapters," Apple provides

6  "troubleshooting" under the subject heading: **If you see a spark**" which claims that "Sometimes

7  when you plug the power adapter into the wall, you may see a spark. *This is usually normal* and can

8  occur when you plug any electrical appliance into a live outlet. If you are concerned about the spark

9  you see when you plug your adapter into the wall, or if the spark comes from somewhere other than

10 the blades of the plug, you can take your adapter (you don't need to take the computer) in to an

11 Apple Authorized Service Provider or Apple Retail Store for evaluation." (emphasis added).

12     36.    In addition to the serious safety issue it presents, the MagSafe also has resulted in

13 substantial economic damage to consumers. "I love my other apple products, but having to replace

14 this at $79.99 when it should not have to be replaced at all is not acceptable. I could tell this was not

15 at all robust when I first started using it. I was quite careful and it just stopped working. Apple

16 should either make this product hold up to real world use or sell it for a more affordable price."

17 (Apple Online Store Customer Review - February 3, 2008.) Similarly, another customer complains,

18 "I am very unhappy that the adapter of my MacBook is no longer functioning. I travel with my

19 laptop a lot – after all, that is why I prefer laptops – and it seems that the adapter is not designed to

20 hold up to a reasonable amount of use. After a year and a half it no longer functions and now I have

21 to buy a new one for $80! What is especially upsetting is that I feel that Apple should replace this at

22 no cost as it is a defective design, not be making money off of their mistake, or else people may not

23 choose to purchase a Mac next time." (Apple Online Store Customer Review - January 20, 2008.)

24     37.    Of course, it is not just through Apple's online store that consumers are logging

25 complaints about the MagSafe Adapter; the internet is rife with similar complaints. One consumer

26 recently complained on www.Amazon.com:

27     Just do a Google and you'll see the life of this adapter is about a year. Way too many
       incidents out there. Mine lasted exactly one year. One day I was charging my
28     MacBook and I started to smell wires burning. It turned out to be the wire from this

adapter, specifically where it attaches to the MacBook. The key is not to put *any* stress on the wire at all by letting it bend. Apparently the plastic is so cheaply made that eventually it will wear out and expose the wires to each other which is dangerous. Luckily my MacBook was not damaged, and I was there to unplug the adapter when it started to smolder. While I like the smart magnetic design, it's made quite shoddy. Of course the price is very high also at $79!?! Ridiculous! When I went to the Apple store to replace my adapter, there was a 3 week wait as well! I was lucky to find one on Ebay for just under $36. My best advice is not to put any tension on this wire because it obviously can't handle it, and I'd avoid leaving it charging alone simply because I don't trust it and I've Googled quite a few horror stories. Check out the apple store and you'll see all the reviews about sparks, smoke, melting, and fire.

(Amazon.com 85W Adapter Customer Review - November 14, 2007).[13]

38.     Upon information and belief, to date, Apple has not taken action to remedy the defects in its MagSafe Adapters or offer any replacement product.

39.     Apple faced the same complaints about overheating, fraying, smoking, sparking and premature failure with its predecessor adapter, the 60W Adapter for its PowerBook computer. Apple misleads its customers into thinking that it resolved those design problems in its representations that the MagSafe Adapter is better designed. "Mobile users will love the new MagSafe Power adapter featuring a magnetic DC plug that both ensures a tight connection and enables a clean break from the power port when there is undue tension. It prevents the MacBook Pro from being pulled off of a desk when the cord is accidentally tripped over, *and it protects the power cord from wear and tear.*"[14]

40.     To ensure that its MagSafe Adapter would be fit for the ordinary or particular purposes for which the Adapter was intended, Apple should have adequately tested its MagSafe Adapter prior to releasing it for commercial sale. Had Apple exercised reasonable care in testing its MagSafe Adapter, it would have discovered that its MagSafe Adapters dangerously fray, spark, overheat, melt and prematurely fail.

---

13

http://www.amazon.com/review/product/B000F0ELN2/ref=dp_top_cm_cr_acr_txt?%5Fencoding=UTF8&showViewpoints=1

14 http://www.amazon.com/Apple-MacBook-Laptop-MA091LL-SuperDrive/dp/B000BNHMIY

CONSOLIDATED CLASS ACTION COMPLAINT

41.     Instead, Apple sold defective MagSafe Adapters to Plaintiffs and Class members that were not fit for their intended use.  Apple has profited, either directly or indirectly, by concealing the nature and extent of the Design Defects, which have enabled it to (a) sell MacBooks equipped with MagSafe Adapters at premium prices, (b) to profit on the replacement MagSafe Adapters sold when the original products fail, (c) and to profit on repair services charged by the "Genius Bar" and other Apple repair services when customers bring in their malfunctioning MagSafe Adapters.  In fact, Apple has no effective remedy for the Design Defects and has taken no action to correct the defects.

42.     Apple also could and should have tested alternative designs of its MagSafe Adapter to avoid these destructive side-effects.  As noted, Apple has been aware of the weakness and defects in its MagSafe Adapter.

43.     Furthermore, Apple continues to manufacture and sell its defective MagSafe Adapter even after it was informed by its own customers of the specific design defects alleged herein.

44.     Apple profits enormously from the sales of its MagSafe Adapter, while Plaintiffs and Class members incur damages, including the price they paid to purchase the defective MagSafe Adapters and the costs to replace them.

**PLAINTIFFS' ALLEGATIONS**

45.     Plaintiffs are purchasers of Apple MacBook or MacBook Pro computers that were sold with related devices and peripherals, including a MagSafe Adapter.

46.     Plaintiffs purchased and used the MagSafe Adapters, believing them to be reasonably safe to use for the purpose for which they were intended: powering and charging their portable computers.

47.     Since purchasing these computers, Plaintiffs have had to replace their MagSafe Adapters because, when used as instructed and intended, their MagSafe Adapters sparked, frayed, melted, and smoked; wires became exposed and/or they prematurely failed.

CONSOLIDATED CLASS ACTION COMPLAINT

48.     Plaintiffs learned that far from being the unfortunate few experiencing such problems with the MagSafe Adapters, there were hundreds of other similar customer complaints on Apple's website.

49.     In fact, Plaintiffs' experiences with the MagSafe Adapter are typical of at least thousands of other Apple purchasers who have registered their complaints with Apple, and have documented their problems with the MagSafe Adapters on various website forums dedicated to Apple products, including Apple's own website.  The similarity of the user complaints about the MagSafe Adapter further evidences the uniformity of the product defects alleged herein.

50.     Plaintiffs have suffered injury in fact and loss of money or property.  They have been damaged in the amount they paid for the defective replacement MagSafe Adapters they had to purchase to power and charge their MacBook or MacBook Pro laptop computers, as well as costs for attempted repairs and replacement of their MagSafe Adapters, even though the repairs and/or replacements did not address the inherent defects in the product.  Moreover, if no safe replacement Adapter exists, Plaintiffs have suffered damages in the amount of the full price they paid for their MacBook or MacBook Pro computers.

## CLASS ALLEGATIONS

51.     Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

52.     The proposed class consists of all consumers who purchased an Apple MagSafe 60W Adapter or Apple MagSafe 85W Adapter from the time of their introduction in the marketplace through and including the date of class notice (the "Class").  Excluded from the Class are Apple, its affiliates, employees, officers and directors, persons or entities that distribute or sell the MagSafe Adapters, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

53.     This action is properly brought as a class action for the following reasons:

(a)     the proposed class is so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable.  While Plaintiffs do not

17

1  know the exact number and identity of all class members, Plaintiffs are informed and believe that

2  there are tens, if not hundreds, of thousands of class members. The precise number of members can

3  be ascertained through discovery, which will include Apple's sales, service and other business

4  records;

5      (b)     the disposition of Plaintiffs' and proposed class members' claims in a class

6  action will provide substantial benefits to both the parties and the Court;

7      (c)     the proposed class is ascertainable and there is a well-defined community of

8  interest in the questions of law or fact alleged herein since the rights of each proposed class member

9  were infringed or violated in the same fashion;

10     (d)     there are questions of law and fact common to the proposed class which

11 predominate over any questions that may affect particular class members. Such common questions

12 of law and fact include, but are not limited to:

13         (i)     Whether Defendant exercised reasonable care in testing its MagSafe

14 Adapter prior to its release for commercial sale;

15         (ii)    Whether Defendant's MagSafe Adapter is defective when used as

16 directed, intended or in a reasonably foreseeable manner;

17         (iii)   Whether feasible alternative safer formulations of the MagSafe

18 Adapter were available;

19         (iv)    Whether Defendant's MagSafe Adapter was fit for its intended

20 purpose;

21         (v)     Whether Apple has breached the implied warranty of fitness for a

22 particular purpose;

23         (vi)    Whether Apple has breached the implied warranty of

24 merchantability;

25         (vii)   Whether Apple has violated the Magnuson-Moss Warranty Act;

26         (viii)  Whether Apple has acted negligently;

27         (ix)    Whether Apple knew that the MagSafe Adapters were, and are,

28 materially defective;

CONSOLIDATED CLASS ACTION COMPLAINT

1              (x)       Whether Apple omitted and concealed material facts from its

2  communications and disclosures to Plaintiffs regarding the Design Defects inherent in the MagSafe

3  Adapters;

4            (xi)       Whether Apple breached its express warranties;

5            (xii)       Whether Apple is strictly liable to Plaintiffs and the class;

6           (xiii)       whether Apple failed to warn Plaintiffs and the class;

7           (xiv)       Whether Apple has violated the Song-Beverly Act;

8           (xv)       Whether Apple has violated the UCL;

9           (xvi)       Whether Apple has violated the CLRA;

10          (xvii)       Whether Apple has received funds from Plaintiffs and class members

11  that it unjustly received;

12         (xviii)       Whether Plaintiffs and proposed class members have been harmed

13  and the proper measure of relief;

14          (xix)       Whether Plaintiffs and proposed class members are entitled to an

15  award of punitive damages, attorneys' fees and expenses against Defendant; and

16          (xx)       Whether, as a result of Apple's misconduct, Plaintiffs are entitled to

17  equitable relief, and if so, the nature of such relief;

18         (e)     Plaintiffs' claims are typical of the claims of the members of the proposed

19  class.  Plaintiffs and all class members have been injured by the same wrongful practices of Apple.

20  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class

21  members and are based on the same legal theories;

22         (f)     Plaintiffs will fairly and adequately protect the interests of the proposed class

23  in that they have no interests antagonistic to those of the other proposed class members, and

24  Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as

25  counsel;

26         (g)     A class action is superior to other available methods for the fair and efficient

27  adjudication of this controversy for at least the following reasons:

28

<div align="center">19</div>

CONSOLIDATED CLASS ACTION COMPLAINT

1        (i)    Given the size of individual proposed class member's claims and the

2    expense of litigating those claims, few, if any, proposed class members could afford to or would

3    seek legal redress individually for the wrongs Defendant committed against them and absent

4    proposed class members have no substantial interest in individually controlling the prosecution of

5    individual actions;

6        (ii)    This action will promote an orderly and expeditious administration

7    and adjudication of the proposed class claims, economies of time, effort and resources will be

8    fostered and uniformity of decisions will be insured; and

9        (iii)    Without a class action, proposed class members will continue to

10    suffer damages, and Defendant's violations of law will proceed without remedy while Defendant

11    continues to reap and retain the substantial proceeds of its wrongful conduct.

12        (iv)    Plaintiffs know of no difficulty that will be encountered in the

13    management of this litigation which would preclude its maintenance as a class action.

14    54.    Apple has, or has access to, address information for the Class members, which may

15    be used for the purpose of providing notice of the pendency of this class action.

16    55.    Plaintiffs seek damages and equitable relief on behalf of the proposed class on

17    grounds generally applicable to the entire proposed class.

18    **FIRST CAUSE OF ACTION**

19    **(Violations of California Business and Professions Code § 17200)**

20    56.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

21    paragraphs above as if fully set forth herein.

22    57.    California Business & Professions Code § 17200 prohibits acts of unfair

23    competition, which means and includes any "unlawful, unfair or fraudulent business act or practice"

24    and any act prohibited by Cal. Bus. & Prof. Code § 17500.

25    58.    Apple violated Cal. Bus. & Prof. Code § 17200's prohibition against engaging in an

26    **"unlawful"** business act or practice by, *inter alia*, selling the defective and non-merchantable

27    MagSafe Adapter to Plaintiffs, proposed class members, and the general public, failing to use

28    reasonable care to test its MagSafe Adapter prior to sale, and by continuing to sell its defective

1  Adapter after learning that it caused sparking, fraying and premature failure when used as intended,

2  in violation of Cal. Civ. Code §§ 1770(a), 1791 *et seq.*, Cal. Comm. Code §§ 2313 & 2314, U.C.C. §

3  2-313 & § 2-314, 15 U.S.C. § 2310(d)(1), and the common law, including the common law of

4  negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of

5  the duty to disclose.

6       59.     Plaintiffs reserve the right to allege other violations of law which constitute other

7  unlawful business acts and practices. Such conduct is ongoing and continues to this date.

8       60.     The foregoing conduct also constitutes "**unfair**" business acts and practices within

9  the meaning of Cal. Bus. & Prof. Code § 17200. Apple's practices offend public policy and are

10  unethical, oppressive, unscrupulous and violate the laws stated. Further, such conduct is in violation

11  of Cal. Civ. Code §§ 1770(a), 1791 *et seq.*, and the common law, including the common law of

12  negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of

13  the duty to disclose.

14       61.     Apple's conduct caused and continues to cause substantial injury to consumers and

15  their property, including Plaintiffs and proposed class members. The gravity of Defendant's alleged

16  wrongful conduct outweighs any purported benefits attributable to such conduct. There were also

17  reasonably available alternatives to Apple to further its business interests, other than voluntarily

18  placing its defective MagSafe Adapter into the stream of commerce.

19       62.     Plaintiffs and Class members have suffered injury in fact and have lost money

20  and/or property as a result of Defendant's unfair and unlawful business practices and are therefore

21  entitled to the relief available under Cal. Bus. & Prof. Code §17200 *et seq.*, as detailed below.

22  <div align="center">**SECOND CAUSE OF ACTION**</div>

23  <div align="center">**(Violations of the Consumer Legal Remedies Act,<br>California Civil Code § 1750 *et seq.*)**</div>

24

25       63.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

26  paragraphs above as if fully set forth herein.

27       64.     This cause of action arises under the Consumers Legal Remedies Act ("CLRA"),

28  Cal. Civ. Code § 1750 *et seq.* Plaintiffs are consumers as defined by Cal. Civ. Code § 1761(d).

<div align="center">21</div>

1  Apple's MagSafe Adapters constitute "goods" as defined by Cal. Civ. Code § 1761(a). At all times

2  relevant hereto, Apple constituted a "person" as that term is defined in Cal. Civ. Code § 1761(a), and

3  Plaintiffs' and class members' purchases of the MagSafe Adapters constituted "transactions," as that

4  term is defined in Cal. Civ. Code § 1761(b).

5     65.     Apple violated and continues to violate the CLRA by engaging in the following

6  deceptive practices specifically proscribed by Cal. Civ. Code § 1770(a), in transactions with

7  Plaintiffs and class members that were intended to result or which resulted in the sale or lease of

8  goods or services to consumers:

9          (a)     In violation of Cal. Civ. Code § 1770(a)(5), Defendant's acts and practices

10  constitute misrepresentations that the MagSafe Adapters in question have characteristics, benefits or

11  uses which they do not have;

12          (b)     In violation of Cal. Civ. Code § 1770(a)(7), Defendant has misrepresented

13  that the MagSafe Adapters in question are of particular standard, quality and/or grade, when they are

14  of another; and

15          (c)     In violation of Cal. Civ. Code § 1770(a)(9), Defendant advertised the

16  Adapters in question with the intent not to sell them as advertised or represented.

17     66.     Apple has made uniform representations that its MagSafe Adapter is a high-quality

18  product that will perform as represented.  These representations, as set forth above, were false,

19  deceptive, and/or misleading and in violation of the CLRA.

20     67.     Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Apple in writing by certified

21  mail of the particular violations of Cal. Civ. Code § 1770 alleged herein, and have demanded that

22  Apple rectify the problems associated with the actions detailed above and give notice to all affected

23  consumers of its intent to so act.  Plaintiffs sent this notice by certified mail, return receipt requested,

24  to Apple's principal place of business.

25     68.     Apple has failed to rectify or agree to rectify the problems associated with the

26  actions detailed above and give notice to all affected consumers within 30 days after receipt of the

27  Civil Code § 1782 notice, thus Plaintiffs seek actual damages and punitive damages for violation of

28  the Act.

<div align="center">22</div>

1    69.    In addition, pursuant to Civil Code § 1780(a)(2), Plaintiffs are entitled to, and

2  therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate

3  Cal. Civ. Code § 1770.

4    70.    Plaintiffs and the class are also entitled to recover attorneys' fees, costs, expenses

5  and disbursements pursuant to Cal. Civ. Code §§ 1780 and 1781.

6                                **THIRD CAUSE OF ACTION**

7            **(Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1))**

8    71.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

9  paragraphs above as if fully set forth herein.

10    72.    By placing its MagSafe Adapter in the stream of commerce, Apple impliedly

11  warranted that it was reasonably safe for its intended use, *i.e.*, to withstand usual wear as a portable

12  device and to charge the computers without causing fraying, sparking, melting, overheating or

13  premature failure.

14    73.    Apple's MagSafe Adapter is not merchantable. In breach of the implied warranty of

15  merchantability and fitness for a particular purpose, the cord on the MagSafe Adapter frays and

16  shorts out in normal use, causing sparking and melting, which creates a safety hazard, renders the

17  Adapter inoperable, and may cause damage to the computer or other property.

18    74.    Apple's MagSafe Adapter was not reasonably safe for its intended use when it left

19  Defendant's control and entered the market.

20    75.    The MagSafe Adapter defects were not open and/or obvious to consumers. Any

21  purported limitation of the duration and scope of these warranties given by Apple is unreasonable,

22  unconscionable and void, because Apple knew or recklessly disregarded the fact that the defect in

23  the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had

24  been used for a period of time longer than the period of any written warranty, and Apple willfully

25  withheld information about the defect from purchasers of Apple computers. Moreover, due to the

26  unequal bargaining power between the parties, Plaintiffs and the class members had no meaningful

27  alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

28

CONSOLIDATED CLASS ACTION COMPLAINT

76.    The dangerous design and manufacture of the MagSafe Adapter was, and is, an inherent safety-related defect which either was known or which should have been known to Apple to be a defect at the time plaintiffs and the class members purchased their Apple computers and Adapters.

77.    The presence of this defect, and Apple's failure to warn of its presence or cure the defect, constitutes a breach of both the express and implied warranties.

78.    Apple's knowledge of this inherent defect, through both Plaintiffs' 30-day demand letter, and through the complaints lodged on its own website about the Adapter, has given Apple more than a reasonable opportunity to cure the defect – an opportunity that Apple has failed and refused to take.

79.    As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*, the amount they paid to purchase and replace Apple's un-merchantable MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple Computer, which relies on the MagSafe Adapter for its power and usage.

80.    Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are also entitled to attorneys' fees and reimbursement of expenses.

### FOURTH CAUSE OF ACTION

### (Breach of Express Warranty)

81.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

82.    Apple made affirmations of fact and promises to Plaintiffs and Class members which related to the MagSafe Adapters as more fully described herein.

83.    Apple's affirmations of fact and promises became part of the basis of the bargain between the parties.

84.    These affirmations of fact and promises created an express warranty that the MagSafe Adapters would conform to Apple's affirmations and promises.

24

85.     Apple uniformly warranted all its MagSafe Adapters against defects in material or workmanship at a time when it knew that the MagSafe Adapters suffered from serious defects and, nevertheless, continued to market and sell the MagSafe Adapters with this express warranty.

86.     Apple is obligated under the terms of its written warranty to repair, replace and/or refund the purchase price of defective MacBooks and their MagSafe Adapters sold to Plaintiffs and Class members.

87.     Apple extended the terms of its warranty indefinitely through statements on its website that it would replace faulty MagSafe Adapters at any time.

88.     Apple has breached its written warranty, as set forth above, by supplying MagSafe Adapters in a condition that does not meet the warranty obligations undertaken by Apple, and by failing to repair or replace the defective products.

89.     Apple has additionally enforced its warranty in bad faith by replacing MagSafe Adapters with products that contained the same Design Defects.

90.     As set forth above, Apple's warranty fails in its essential purpose and, accordingly, Plaintiffs and Class members cannot and should not be limited to the remedies set forth in Apple's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

91.     Apple has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Apple's knowledge of the defects in the MagSafe Adapters, Apple has failed to honor its warranty, even though it knows of the defects inherent in the MagSafe Adapters.

92.     Plaintiffs and Class members have given Apple a reasonable opportunity to cure its misrepresentations and failures with respect to its warranty, but Apple has failed to do so.

93.     Apple has failed to provide Plaintiffs and Class members, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that Apple expressly warranted when it sold the MagSafe Adapters to Plaintiffs and Class members.

94.     As a result of Apple's breach of warranty, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

CONSOLIDATED CLASS ACTION COMPLAINT

**(FIFTH CAUSE OF ACTION)**

**(Breach of Implied Warranty of Fitness for a Particular Purpose)**

95.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

96.     By placing its MagSafe Adapter in the stream of commerce, Apple impliedly warranted that its Adapter was reasonably safe for its particular purpose, *i.e.*, to withstand usual wear as a portable device and to charge the computers without causing fraying, sparking, melting, overheating or premature failure.

97.     Apple's MagSafe Adapter is not fit for its particular purpose.  In breach of the implied warranty of fitness for a particular purpose, the cord on the MagSafe Adapter frays and shorts out in normal use, causing sparking and melting, which creates a safety hazard, renders the Adapter inoperable, and may cause damage to the computer or other property.

98.     Apple's MagSafe Adapter was not reasonably safe for its intended particular use when it left Defendant's control and entered the market.

99.     The MagSafe Adapter defects were not open and/or obvious to consumers.

100.     Any purported limitation of the duration and scope of the implied warranty of fitness for a particular purpose given by Apple is unreasonable, unconscionable and void, because Apple knew or recklessly disregarded that the defect in the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had been used for a period of time longer than the period of any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple computers.  Moreover, due to the unequal bargaining power between the parties, Plaintiffs and class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

101.     As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*, the amount they paid to purchase and replace Apple's unfit MagSafe Adapters, and if no safe replacement exists, in the amount paid for their related Apple Computer, which relies on the MagSafe Adapter for its power and usage.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SIXTH CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

102.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

103.    By placing its MagSafe Adapter in the stream of commerce, Apple impliedly warranted that its Adapter was reasonably safe for its intended use, *i.e.*, to withstand usual wear as a portable device and to charge the computers without causing fraying, sparking, melting, overheating or premature failure.

104.    Apple's MagSafe Adapter is not merchantable.  In breach of the implied warranty of merchantability, Apple's MagSafe Adapter fails to charge properly, falls apart and causes sparking, which is a safety hazard as well as a cause of damage to the computers.

105.    Apple's MagSafe Adapter was not reasonably safe for its intended use when it left Defendant's control and entered the market.

106.    The MagSafe Adapter defects were not open and/or obvious to consumers.

107.    Any purported limitation of the duration and scope of the implied warranty of merchantability given by Apple is unreasonable, unconscionable and void, because Apple knew or recklessly disregarded that the defect in the MagSafe Adapter existed and might not be discovered, if at all, until the MagSafe Adapters had been used for a period of time longer than the period of any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple computers.  Moreover, due to the unequal bargaining power between the parties, plaintiffs and the class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

108.    As a result, Plaintiffs and proposed class members have been damaged in, *inter alia*, the amount they paid to purchase and replace Apple's un-merchantable MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple Computer, which relies on the MagSafe Adapter for its power and usage.

## SEVENTH CAUSE OF ACTION

### (Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*)

109.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

110.     This cause of action is brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.* Plaintiffs are "buyers," Defendant's MagSafe Adapter is a "consumer good," and Defendant is a "retailer" and "manufacturer" within the meaning of Song-Beverly.

111.     By placing its MagSafe Adapter in the stream of commerce, Apple impliedly warrants that its MagSafe Adapter is reasonably safe for its intended use, *i.e.*, to withstand usual wear as a portable device and to charge the computers without causing fraying, sparking, melting, overheating or premature failure.

112.     Apple's Adapter is not merchantable.  In breach of its implied warranty, Apple's MagSafe Adapter fails to charge properly, falls apart and causes sparking, which is a safety hazard as well as a cause of damage to the computers.

113.     Apple's MagSafe Adapter was not reasonably safe for its intended use when it left Defendant's control and entered the market.

114.     Apple's MagSafe Adapter's defects were not open and/or obvious to consumers.

115.     As a result, Plaintiffs and proposed class members have been damaged and will continue to be damaged in, *inter alia*, the amount they paid to purchase and replace un-merchantable MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple Computer which relies on the MagSafe Adapter for its power and usage.

116.     Pursuant to Cal. Civ. Code § 1794, Plaintiffs and proposed class members are entitled to damages under the Song-Beverly Consumer Warranty Act, including, *inter alia*, reimbursement in the amount they paid for Defendant's MagSafe Adapters, and if no safe replacement exists, in the amount they paid for their related Apple Computer, which relies on the MagSafe Adapter for its power and usage and for their costs, expenses and attorneys' fees.

1
2

<div align="center">

**EIGHTH CAUSE OF ACTION**

**(Negligence)**

</div>

3       117.    Plaintiffs re-allege and incorporate by reference the allegations contained in the
4   paragraphs above as if fully set forth herein.

5       118.    The conduct of Apple in manufacturing, distributing and selling the MagSafe
6   Adapter constituted negligence in failing to reasonably act in accordance with all applicable
7   standards of care. Apple owed Plaintiffs and class members a duty not to disseminate a materially
8   defective product.

9       119.    Apple also breached its duty of care by negligently failing to timely and/or
10  adequately warn Plaintiff and the class of the defective and unreasonably dangerous condition of the
11  MagSafe Adapters, even after Apple was, or should have been, fully aware of the material defects in
12  said MagSafe Adapters.

13      120.    As a direct and proximate result of Apple's negligence, Plaintiffs and members of
14  the class suffered economic injury, entitling them to just compensation, as detailed below.

15

<div align="center">

**NINTH CAUSE OF ACTION**

**(Negligent Design and Failure to Warn)**

</div>

17      121.    Plaintiffs re-allege and incorporate by reference the allegations contained in the
18  paragraphs above as if fully set forth herein.

19      122.    Apple knew, or by the exercise of reasonable care should have known, that its
20  MagSafe Adapters would have and had the alleged Design Defects.

21      123.    Apple knew that the Plaintiffs and Class members, who used the MagSafe Adapters
22  for their intended use, were members of a foreseeable class of persons who were at risk of suffering
23  serious inconvenience, expense and potential injury solely because of the Design Defects.

24      124.    At the time Apple manufactured, distributed and/or sold the MagSafe Adapter, it
25  owed a duty to persons like the Plaintiffs and Class members to exercise ordinary and reasonable
26  care to properly design the MagSafe Adapters, and it owes a continuing duty to warn about the
27  problem and to repair and/or recall its defective MagSafe Adapters.

28

<div align="center">

29

CONSOLIDATED CLASS ACTION COMPLAINT

</div>

125. Apple had a pre-sale duty to warn potential purchasers that the MagSafe Adapters carried with them greater risks of injury and property damage that an ordinary consumer would expect when using the MagSafe Adapters in their intended or reasonably foreseeable manner.

126. Any benefits by way of easier release of a power cord are outweighed by the risks inherent in the MagSafe Adapter's design.

127. Apple failed to use appropriate design, engineering and parts in manufacture, and Apple in other respects breached its duties by being reckless, careless, and negligent.

128. As a direct and proximate result of Apple's recklessness, carelessness, and negligence, the Plaintiffs and Class members were caused to suffer damages and losses in an amount to be proven at trial.

### TENTH CAUSE OF ACTION

#### (Money Had and Received)

129. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

130. As more fully set forth above, Apple has in its possession money, which in equity and good conscience belongs to Plaintiffs and Class members and which should be refunded to Plaintiffs and Class members.

### ELEVENTH CAUSE OF ACTION

#### (Unjust Enrichment)

131. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

132. Apple improperly received and continues to improperly receive from Plaintiffs and class members millions of dollars as a result of the conduct alleged above.

133. As a result, Plaintiffs and the class have conferred a benefit on Apple to which Apple is not entitled. Apple has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred on it. Apple will be unjustly

CONSOLIDATED CLASS ACTION COMPLAINT

1    enriched if it is allowed to retain such funds and, therefore, a constructive trust should be imposed on

2    all monies wrongfully obtained by Apple and the money should be disgorged from Defendant, and

3    returned to Plaintiffs and the class.

4                                **TWELFTH CAUSE OF ACTION**

5               **(Untrue and Misleading Advertising in Violation of**
                   **Cal. Bus. & Prof. Code § 1750 *et seq.*)**

6

7         134.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

8    paragraphs above as if fully set forth herein.

9         135.     California Business & Professions Code § 17500 prohibits various deceptive

10    practices in connection with the dissemination in any manner of representations which are likely to

11    deceive members of the public to purchase products such as the MagSafe Adapter.

12        136.     Apple caused advertisements for MagSafe Adapters to be placed on its website and

13    within the name of the product itself, among other sources, before the general public and knew or

14    should have known that MagSafe Adapters did not conform to the advertisements' representations

15    regarding the safety of the product.

16        137.     As a result of the foregoing, Plaintiffs, and other Class members, and consumers are

17    entitled to injunctive and equitable relief and damages in an amount to be proven at trial.

18                              **THIRTEENTH CAUSE OF ACTION**

19                              **(Permanent Injunctive Relief)**

20        138.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

21    paragraphs above as if fully set forth herein.

22        139.     As a direct result of Apple's manufacture, distribution and sale of its MagSafe

23    Adapters, Class members are being irreparably harmed.  Among other things, Class members are

24    suffering irreparable damage in the form of the risks of melting and burning resulting from the

25    Design Defects of the MagSafe Adapters.

26        140.     The actions of Apple have affected a substantial public safety interest, thereby

27    underscoring the need for injunctive relief.  Apple has distributed defective and dangerous products.

28    Apple has made no effort to recall and redesign the dangerous MagSafe Adapters.  Such actions

CONSOLIDATED CLASS ACTION COMPLAINT

1  were taken in complete disregard for the interests and the well-being of consumers of Apple's

2  products. Thus, the interest and rights of consumers can only be protected through permanent

3  injunctive relief.

4     141.   Unless and until enjoined and restrained by order of this Court, Apple will continue

5  to manufacture, distribute and sell MagSafe Adapters. The continued distribution of the MagSafe

6  Adapters will cause consumers great and irreparable harm. There is no adequate remedy at law for

7  the injuries suffered as a result of Apple's manufacture, distribution and sale of the MagSafe

8  Adapters.

9     142.   Therefore, Plaintiffs request an injunction ordering Apple to take the following

10 actions:

11         (a)   immediately recall and redesign all MagSafe Adapters to remedy the defects

12 alleged herein;

13         (b)   refrain from terminating the existing extended warranty until such time as a

14 safe replacement adapter is available;

15         (c)   cease continuing to falsely market and advertise, concealing material

16 information, and conducting business via the unlawful and unfair business acts and practices

17 complained of herein;

18         (d)   engage in a corrective notice campaign; and

19         (e)   refund to Plaintiffs and all Class members the funds paid to Apple for the

20 defective MagSafe Adapters, including, if no reasonably safe replacement product exists, the full

21 price paid for the Subject Computers.

22                    **FOURTEENTH CAUSE OF ACTION**

23                         **(Declaratory Relief)**

24     143.   Plaintiffs re-allege and incorporate by reference the allegations contained in the

25 paragraphs above as if fully set forth herein.

26     144.   A true and present controversy exists between Plaintiffs and Apple concerning the

27 terms and limitations under the express and implied warranties as set forth above. Specifically,

28 Plaintiffs contend that Apple has breached its express and implied warranties in connection with the

                                  32

1   manufacture, sale and distribution of the MagSafe Adapters and has failed to enforce its warranty as

2   extended by Apple's policy as stated on its website.  Plaintiffs also contend that Apple's original

3   express warranty is unconscionable in its limitations.  Plaintiffs additionally contend that Apple's

4   refusal to replace the MagSafe Adapters is a breach of the express warranty as modified.  Plaintiffs

5   further contend that Apple intentionally deceived the public as to the existence and enforcement of

6   its warranty extension by hiding the extension in the troubleshooting page of its website and failing

7   to inform its own employees of the existence of the warranty extension.

8        145.    Plaintiffs are informed and believed and based thereon allege that Apple contends

9   otherwise.

10        146.    A judicial declaration is necessary and appropriate at this time under the

11   circumstances in order that Plaintiffs and Apple may ascertain their respective rights and duties

12   under the express and implied warranties.

13

14   **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiffs pray this Court enter a judgment against Defendant that:

16        A.    This action be certified and maintained as a class action under Rule 23 of the

17   Federal Rules of Civil Procedure and certify the proposed class as defined, appointing Plaintiffs as

18   representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as

19   counsel for the Class;

20        B.    Awards compensatory, statutory and/or punitive damages as to all Causes of Action

21   where such relief is permitted;

22        C.    Awards Plaintiffs and proposed class members the costs of this action, including

23   reasonable attorneys' fees and expenses;

24        D.    Orders Apple to immediately cease its wrongful conduct as set forth above; enjoins

25   Apple from continuing to falsely market and advertise, conceal material information, and conduct

26   business via the unlawful and unfair business acts and practices complained of herein; orders Apple

27   to engage in a corrective notice campaign, and requires Apple to refund to Plaintiffs and all of the

28

1  class members the funds paid to Apple for these defective products, including, if no reasonably safe

2  replacement product exists, the full price paid for the subject computers;

3         E.       Enjoin Apple from terminating the existing extended warranty program for the

4  defective MagSafe Adapters until such time as a safe replacement adapter is available;

5         F.       Awards equitable monetary relief, including restitution and disgorgement of all ill-

6  gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of

7  Defendant's ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective

8  remedy;

9         G.       Awards pre-judgment and post-judgment interest at the legal rate;

10        H.       Orders appropriate declaratory relief; and

11        I.       Such further legal and equitable relief as this Court may deem just and proper.

12                                    **JURY DEMAND**

13        Plaintiffs demand a trial by jury on all issues so triable.

14

15  DATED:  Dec. 4, 2009                     ZELDES & HAEGGQUIST, LLP
                                            HELEN I. ZELDES
16                                          ALREEN HAEGGQUIST

17

18                                          By: *s/ Helen I. Zeldes*
                                                 HELEN I. ZELDES
19
                                            Attorneys for Plaintiffs
20                                          NAOTAKA KITAGAWA, JR., TIMOTHY J.
                                            BROAD, and JESSE REISMAN, Individually
21                                          and On Behalf of All Others Similarly Situated

22                                          Helen I. Zeldes
                                            Alreen Haeggquist
23                                          ZELDES & HAEGGQUIST LLP
                                            625 Broadway, Suite 906
24                                          San Diego, California 92101
                                            Telephone: (619) 342-8000
25                                          Facsimile: (619) 342-7272

26                                          Steven A. Skalet, Esq. (pro hac vice)
                                            Craig L. Briskin, Esq. (pro hac vice)
27                                          MEHRI & SKALET, PLLC
                                            1250 Connecticut Ave.. NW, Suite 300
28                                          Washington, D.C. 20036

                                         34

                       CONSOLIDATED CLASS ACTION COMPLAINT

1
2

Telephone: (202) 822-5100
Facsimile: (202) 822-4997

3

Attorneys for the Kitagawa Plaintiffs

4

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP

5
6
7

By:_____/s/Angela C. Agrusa
Angela C. Agrusa

8

Attorneys for Plaintiffs
TRACEY HACKWITH, MARX SCHOLTEN

9

AND MICHAEL MARTIN, Individually and On
Behalf of All Others Similarly Situated

10

Angela C. Agrusa, Esq.
Camilla Y. Chan, Esq.

11

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP

12

1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503

13

Telephone: (310) 500-3500
Facsimile: (310) 500-3501

14
15

Patrick McNicholas, Esq.
Catherine Burke Schmidt, Esq.

16

MCNICHOLAS & MCNICHOLAS, LLP
10866 Wilshire Boulevard, Suite 1400

17

Los Angeles, California 90024-4338

18
19

Attorneys for the *Hackwith* Plaintiffs

20
21
22
23
24
25
26
27
28

35

CONSOLIDATED CLASS ACTION COMPLAINT