STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
TARYN WILGUS NULL (CA SBN 254445)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

HELEN I. ZELDES (CA SBN 220051)
AARON M. OLSEN (CA SBN 259923)
ZELDES HAEGGQUIST & ECK, LLP
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
aarono@zhlaw.com

Attorneys for Plaintiffs

[Additional Counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.:  5:09-CV-01911-EJD<br><br>**PLAINTIFFS' RENEWED MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEES AND COSTS**<br><br>Date:  November 6, 2014<br>Time: 9:00 a.m.<br>Judge:  Honorable Edward J. Davila<br>Courtroom:  4, 5th Floor |

MEHRI & SKALET, PLLC

**Table of Contents**

I. INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL HISTORY ............................................................................................... 3

    A. Settlement and Preliminary Approval ......................................................................... 4

    B. Motion for Attorneys' Fees and Costs ......................................................................... 6

    C. Objections ...................................................................................................................... 6

    D. Final Approval .............................................................................................................. 7

    E. Bond Motion .................................................................................................................. 8

    F. The Ninth Circuit's Decision ........................................................................................ 9

III. RENEWED MOTION FOR FINAL APPROVAL OF SETTLEMENT ........................... 10

    A. Settlement Benefits ..................................................................................................... 10

        1. Cash Payments to Settlement Class Members ............................................... 10

        2. A Robust Adapter Replacement Program ...................................................... 10

        3. A Robust Notice Program ............................................................................... 11

        4. Total Value of the Settlement ......................................................................... 12

    B. Payment of Notice Costs, Costs of Administration, and Attorneys' Fees ................. 12

    C. Applicable Legal Standard for Final Approval .......................................................... 13

    D. The Proposed Class Settlement Warrants Final Approval. ........................................ 14

        1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation. ............................................. 14

        2. The Risk of Maintaining Class Action Status Throughout the Trial ............. 15

        3. Amount Offered in Settlement ....................................................................... 16

        4. Extent of Discovery and Stage of the Proceedings ....................................... 16

        5. The Experience and Views of Counsel ......................................................... 16

        6. The Reaction of the Class Members .............................................................. 16

        7. The Settlement is the Product of Arm's Length Negotiations ....................... 17

IV. CERTIFICATION OF A SETTLEMENT CLASS IS PROPER ...................................... 19

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A. Definition of the Proposed Settlement Class ................................................ 20

B. The Settlement Class Satisfies the Requirements for Certification of a Rule 23 Settlement Class. ...................................................................................... 20

   1. The Settlement Class Satisfies Rule 23(a). .................................................. 20

   2. The Settlement Class Satisfies Rule 23(b)(3). ............................................. 21

V. THE IMPLEMENTED NOTICE PROGRAM PROVIDED ADEQUATE NOTICE TO THE SETTLEMENT CLASS ................................................................... 22

VI. PLAINTIFFS' RENEWED FEE PETITION SHOULD BE APPROVED BY THE COURT ................................................................................................... 25

A. The Process for Determining the Attorneys' Fees Was Designed to Protect the Class and Ensure Fairness. .................................................................... 25

B. The Agreed Upon Fee Is Reasonable Under California and Federal Law. ............... 27

C. Under the Lodestar Method, Plaintiffs' Counsel's Fee Request Is Reasonable. .................................................................................................. 28

   1. Plaintiffs' Counsel's Hourly Rates Are Reasonable. .................................... 29

   2. The Number of Hours that Plaintiffs' Counsel Worked Is Reasonable. ........ 30

   3. Plaintiffs' Counsel's Fees Are Reasonable Pursuant to the *Kerr* Factors Subsumed in the Lodestar Analysis. ......................................... 32

      a. Plaintiff's Counsel Invested a Substantial Amount of Time and Resources into This Complex Case. ............................................ 32

      b. Skill and Experience of Counsel ....................................................... 32

      c. Results Obtained ............................................................................... 33

   4. Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Plaintiffs' Counsel's Ongoing Work. ................. 34

D. Plaintiffs' Counsel's Fee Request Is At The Benchmark Set By the Ninth Circuit. ........................................................................................................ 36

VII. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS ............................................................................. 37

VIII. SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ................................. 38

IX. CONCLUSION ............................................................................................... 39

CERTIFICATE OF SERVICE ................................................................................ 41

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Cases**

*Ackerman v. W. Elec. Co.*, 643 F. Supp. 836 (N.D. Cal. 1986) ................................31

*Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ......................................36

*Am. Investors*, 263 F.R.D. 3d .......................................................................................39

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ...............................22, 36

*Apple Inc. Secs. Litig.*, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ...................17

*Apple Iphone/Ipod Warranty Litig.*, Case No. 10-1610 (RS), 2014 U.S. Dist. LEXIS 52050 (N.D. Cal. Apr. 14, 2014)....................................................................................2

*Armstrong v. Brown*, No. C94-2307, 2011 WL 3443922 (N.D. Cal. Aug. 8, 2011) ...............30

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .........................................................................................33

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993)............................................17

*B-K Lighting, Inc. v. Vision3 Lighting*, No. CV 06-02825 MMM (PLAx), 2009 WL 3838264 (C.D. Cal. Nov. 16, 2009) ...........................................................................29

*Bluetooth Headset Prod Liab. Litig.,* 654 F.3d 935 (2011) ........................7, 8, 9, 17, 18, 19, 28

*Blum v. Stenson*, 465 U.S. 886 (1984) ..............................................................29, 32

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)................................................37

*Cazares v. Saenz*, 208 Cal. App. 3d 279 (1989) ..27*Chamberlan v. Ford*, 223 F.R.D. 524 (N.D. Cal. 2004)...............................................................................................21

*Charles Schwab Corp. Secs. Litig.,* No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011) ...............................................................................31

*Charles Schwab Corp. Secs. Litig.*, No. C 08-1510 WHA, 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011) .................................................................................18

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)........................................................13, 14, 17, 20

*Cicero v. DirecTV, Inc.*, No. 07-1182, 2010 U.S. Dist. LEXIS 86920 ......................39

*Clark v. Los Angeles*, 803 F.2d 987 (9th Cir. 1986) ..............................................29

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)............................19

*Consol. Pinnacle W. Secs. Litig.*, 51 F.3d 194 (9th Cir. 1995) .................................13

MEHRI & SKALET, PLLC

*Consumer Privacy Cases,* 175 Cal. App. 4th (2009) ....................................................18, 27, 28

*Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) .........................................................26

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)....................................................................17

*Craft v. San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008).............................................36

*Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ...................................33

*Faigman v. AT&T Mobility LLC*, No. C06-04622, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011)
............................................................................................................................................30

*Fears v. Wilhelmina Model Agency, Inc.*, 2005 U.S. Dist. LEXIS 7961 (S.D.N.Y. 2005) .......39

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) ..............................................28

*First Capital Holdings Corp. Fin. Products Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L.
        Rep. (CCH) ¶ 96,937, 93,969 (C.D. Cal. June 10, 1992), *appeal dismissed*, 33 F.3d 29
        (9th Cir. 1994)..........................................................................................................26

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997 (9th Cir. 2002) ...............34, 35

*Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6,
        2008) ....................................................................................................................18, 28

*Florin v. Nationsbank, N.A.*, 34 F.3d 560 (7th Cir. 1994) .........................................................34

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........13, 14, 18, 20, 21, 22, 25, 27, 28

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ....................................................................37

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................................25, 33

*Heritage Bond, 2005 WL 1594403* .......................................................................................33

*Hiken v. DOD,* Case No. 06-2812, 2012 U.S. Dist. LEXIS 125423 (N.D. Cal. Aug. 21, 2012)
............................................................................................................................................31

*Hofstetter v. Chase Home Fin., LLC,* No. C 10-1313 WHA, 2011 U.S. Dist. LEXIS 131193
        (N.D. Cal. Nov. 14, 2011)....................................................................................18, 31

*Hughes v. Microsoft Corp.*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26,
        2001) ........................................................................................................................16

*Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................17

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ..............................................13

*Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2007 WL 1652303 (D.N.J. June 5, 2007)..........39

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)..............................................................................17

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ......................................27

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).............................................28, 32

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988)..........................................................16

*Lane v. Facebook, Inc.,* 696 F.3d 811 (9th Cir. 2012) ................................................................2

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (2000) ......................................................26

*Lerwill v. Inflight Motion Pictures Inc.,* 582 F.2d 507 (9th Cir. 1978) ....................................21

*Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998) ......................................................13

*Local Jt. Exec. Bd. v. Las Vegas Sands, Inc.,* 244 F.3d 1152 (9th Cir. 2001) ..........................21

*M.D.C. Holdings Sec. Litig.*, No. 89-0090, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ...................................................................................................................................25

*MagSafe Apple Power Adapter Litig.,* Case No. 12-15757, 2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 24, 2014) .................................................................................3, 9, 14, 18, 28

*Mangold v. Cal. Pub. Utilities Comm.,* 67 F.3d 1470 (9th Cir. 1995)...............................18, 27

*Martino v. Denevi,* 182 Cal. App. 3d 553 (1986) ......................................................................29

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007)................................37

*Mathis v. Spears*, 857 F.2d 749 (9th Cir. 1988)........................................................................29

*McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844 (N.D. Cal. 2005) ..........................39

*McPhail v. First Command Fin. Planning, Inc.*, No. 05 CV 179, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)........................................................................................................................36

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)...........................................13, 34, 39

*Melendres v. L.A.*, 45 Cal. App. 3d 267 (1975) .........................................................................27

*Moore v. IMCO Recycling of Cal., Inc.*, 2005 U.S. Dist. LEXIS 45778 (C.D. Cal. 2005) .......38

*Murillo v. Pac. Gas & Elec. Co.,* No. CIV. 2:08-1974 WBS GGH, 2010 U.S. Dist. LEXIS 73427 (E.D. Cal. July 21, 2010)................................................................................31

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...............13

*Pande v. Chevron Texaco Corp.*, No. C-04-05107, 2008 WL 906507 (N.D. Cal. 2008)..........38

*Parra v. Bashas', Inc.,* 536 F.3d 975 (9th Cir. 2008) ................................................................21

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .................................36

*People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir. 1996).............................29

*Perdue v. Kenny A. ex rel. Winn.*, 130 S. Ct. 1662 (2010)........................................................35

MEHRI & SKALET, PLLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*PLCM Group v. Drexler,* 22 Cal. 4th 1084 (2000) ....................................................................29

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)...........................................17, 38

*S. Ohio Correctional Fac.,* 175 F.R.D. 270 (S.D. Ohio 1997) ...................................................13

*Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995) ...............................29

*Silva v. Patenaude & Felix, P.C.*, No. C08-03019, 2010 WL 2000523 (N.D. Cal. May 12, 2010) ........................................................................................................................................30

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).............36, 37

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)...........................................................25, 37

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ......................................................17

*Suzuki v. Hitachi*, No. C06-7289, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010)......................30

*Torrisi v. Tucson Elec. Power*, 8 F.3d 1370 (9th Cir. 1993)......................................................36

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .................29

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)......................13, 38

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................31, 34, 36

*Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004) ........................................22

*Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ("*WPPSS*")....27, 33, 34, 35

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ...................................37

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ...............................................26

*White v. Experian Info. Solutions, Inc.,* No. SACV 05-1070 DOC, 2011 U.S. Dist. LEXIS 79044 (C.D. Cal. July 15, 2011) ...........................................................................................31

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)..................................37

*Wren v. RGIS Inventory Specialists,* No. C-06-05778, 2011 WL 1230826 (N.D. Cal., April 1, 2011) ........................................................................................................................................36

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302 (S.D.N.Y. 1999) ..30

*Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54 (S.D.N.Y. 2000) ................................30

**Statutes**

15 U.S.C. §2310(d)(1)..................................................................................................................4

28 U.S.C. §1715(a) ..........................................................................................24

Cal. Bus. & Prof. Code §17200, *et seq.* ...........................................................4

Cal. Bus. & Prof. Code §17500, *et seq.* ...........................................................4

Cal. Civ. Code §1750, *et seq.* ..........................................................................4

Cal. Civ. Code §1791, *et seq.* ..........................................................................4

California Code of Civil Procedure § 1021...................................................27, 28

**Other Authorities**

Alba Conte & Herbert Newberg, *4 Newberg on Class Actions, Class Member Obligations for Litigation Fees and Expenses* (4th ed. 2002), §14:2 ....................................37

*Businessland Sec. Litig.*, No. 90-20476, 1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June 14, 1991) ...............................................................................................37

*Hopson v. Hanesbrands, Inc.*, No. CV-08-0844, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)..39

*Incentive Awards to Class Action Plaintiffs*: *An Empirical Study*, 53 UCLA L. Rev. 1303 (2006) ...............................................................................................38

*Manual for Complex Litigation* (Fourth) §21.71 (2004)...........................................33

Richard Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986) ...............................34

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, 69 (Federal Judicial Center 1996) .......................................................36

**Rules**

Fed. R. Civ. P. 23(a)...............................................................................20, 21, 22

Fed. R. Civ. P. 23(b)(3).............................................................................20, 21

Fed. R. Civ. P. 23(e)(2) ..................................................................................13

Fed. R. Civ. P. 23(h) ......................................................................................33

FRCP Rule 23(h)............................................................................................25

MEHRI & SKALET, PLLC

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 6, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila in Courtroom 4, 5th Floor at 280 South 1st Street, San Jose, California, 95113, Plaintiffs Naotaka Kitagawa, Jr., Timothy J. Broad, Jessie Reisman, Tracey Hackwith and Michael Martin (collectively "Plaintiffs"), through their attorneys, will and hereby do respectfully move, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), for an Order granting final approval of the proposed settlement of this putative class action set forth in the Stipulation of Settlement dated July 1, 2011 (the "Stipulation" or "Settlement Agreement") and for approval of fees and costs. This motion is based on this Notice of Motion, the below Memorandum of Points and Authorities, the Declarations of Craig L. Briskin, Helen Zeldes, the Honorable Fern M. Smith, the declarations submitted in support of Defendant's Memorandum in Support of Final Settlement Approval, the files and records in this action, and such additional evidence or argument as the Court may consider in deciding this motion.  Defendant Apple, Inc. ("Apple") does not oppose this Motion.

For the reasons set forth herein, Plaintiffs respectfully request that the Court issue an order of final approval of the proposed settlement, award Class Counsel $3.1 million in attorneys' fees and expenses, and award each Class representative a $5,000 service award to compensate them for their time and effort in this successful action.

## I.   INTRODUCTION

Plaintiffs, on behalf of a proposed class of nearly 10 million consumers, brought a nationwide product defect class action against Apple, Inc. alleging the power adapter for their MacBook and MacBook Pro laptop computers was defective.  Plaintiffs alleged that the adapter frayed, sparked and prematurely failed.  The parties reached an outstanding settlement that was as good as or better than a trial win.  Plaintiffs obtained not only ***full cash refunds*** for consumers whose adapters failed within the warranty period, but also substantial cash refunds for those who used their adapters for up to three years – well beyond the expiration of the

MEHRI & SKALET, PLLC

warranty that came with their adapters – valuable relief class members probably would not have obtained at trial.  Apple was also required to disseminate court-ordered notice to the entire class notifying them directly not only of the cash refunds available but also about a ***replacement program*** for all frayed and non-working adapters, legally binding Apple to provide the entire class with at least three years of replacement coverage, though many class members received years more than that.

According to Apple's records, over 16,000 class members submitted claims for cash refunds totaling just under $800,000.  From November 2011 to July 2013, the class obtained 92,332 redesigned adapters under the replacement program, with a total retail value of $7,294,228.[1] The total value of cash claims, replacement adapters, notice and compensation to counsel and representative plaintiffs is at least around $12 million, not including the value of the prospective relief providing extended "warranties" to every member of the class.  By any measure, this is a substantial settlement.

Plaintiffs, who have litigated this matter for more than five years on a contingency fee basis, move for an award $3 million in attorney fees, $100,000 in costs, and incentive awards of $5,000 to each representative plaintiff.  These amounts are reasonable under the lodestar analysis, yielding a minimal multiplier, even excluding time spent on appeal and motions to post appellate bonds.  Moreover, the settlement value is fairly quantified in excess of $12 million, such that were the Court to decide to compare the proposed fee and expense award to

---

[1] *See Lane v. Facebook, Inc.,* 696 F.3d 811, 826 (9th Cir. 2012) (rejecting objectors' argument that challenged practice had already ceased; "absent a judicially-enforceable agreement, Facebook would be free to revive the program whenever it wanted.  It is thus false to say that Facebook's promise never to do so was illusory."); *In re Apple Iphone/Ipod Warranty Litig.,* Case No. 10-1610 (RS), 2014 U.S. Dist. LEXIS 52050, 2-3 (N.D. Cal. Apr. 14, 2014) ("While Apple apparently was already modifying its practices before this action commenced, and even though the settlement was reached without substantial motion practice or other litigation going to the merits, the results here are markedly favorable to the class. While settlements are, by definition, the product of compromise, in this instance most class members will receive the full replacement cost of the device they owned, or more. Under these circumstances, and as explained more fully below, it is appropriate for class counsel to receive a substantial percentage of the settlement fund, even though the resulting award is large. Fees and costs will therefore be awarded according to the Ninth Circuit "benchmark" of 25%, to be applied in this case to the net settlement fund after deduction of administrative expenses.").

MEHRI & SKALET, PLLC

1  the settlement recovery, it would come in at the 25% benchmark viewed as presumptively

2  reasonable in the Ninth Circuit.

3  In its opinion and order vacating the District Court's final approval order, *In re*

4  *MagSafe Apple Power Adapter Litig*., Case No. 12-15757, 2014 U.S. App. LEXIS 7708 (9th

5  Cir. Apr. 24, 2014), the Ninth Circuit was clear that it was not criticizing the settlement or

6  requested fees and expenses, only that the Court should evaluate them on remand using the

7  standards set out in the Ninth Circuit. While the record reflects that the District Court did

8  carefully review the value of the settlement reached in this matter, scrutinized the relief and

9  notice program, ordered the parties to modify the notice and claim process before notice went

10  out, and considered objections to the fairness of the settlement, the Court did not set forth its

11  reasoning in its order. As Plaintiffs explained in their original final approval briefing, and as

12  this Court rightfully found after full briefing and argument, the settlement satisfies the Ninth

13  Circuit standards for final approval, and the requested fees are reasonable by any measure.

14  **II. PROCEDURAL HISTORY**

15  On May 1, 2009, Plaintiffs Naotaka Kitagawa, Timothy Broad, and Jesse Reisman

16  filed a class action on behalf of themselves and over 9.6 million consumers who purchased

17  Apple MacBook and MacBook Pro computers that shipped with an alleged defective "MPM-1

18  Magsafe adapter" ("Adapter") and/or purchased a standalone Adapter. On or about May 15,

19  2009, Plaintiffs Hackwith and Martin filed a similar complaint in the United States District

20  Court for the Central District of California. The *Hackwith* Action was transferred and

21  consolidated with the *Kitagawa* Action on November 16, 2009. The Kitagawa and Hackwith

22  plaintiffs (collectively "plaintiffs") filed a consolidated complaint on December 4, 2009, and

23  an amended consolidated complaint on January 19, 2010 ("Complaint").

24  Plaintiffs alleged that the Adapters spark, fray, overheat, catch on fire or otherwise

25  prematurely fail (the "Defect"). Plaintiffs further alleged that Apple was aware of this Defect,

26  but failed to disclose it or warn Plaintiffs and the class of the Defect. The complaint sought

27  damages, restitution, disgorgement and declaratory and injunctive relief as well as attorneys'

28

MEHRI & SKALET, PLLC

fees, costs, and expenses.[2]   Apple answered the complaint on February 5, 2010, denying Plaintiffs' allegations and vigorously contesting their legal claims.

Plaintiffs served Apple with document requests, interrogatories, requests for admission, and deposition notices in November 2009. Apple responded, and produced over 80,000 pages of documents concerning the design of the Adapter, its testing, sales data, failure rates, and consumer complaints – which Plaintiffs' counsel thoroughly reviewed.  Declaration of Craig L. Briskin ("Briskin Decl.") ¶ 15.  Plaintiffs retained two engineering experts, each of whom independently developed similar theories regarding the failings of the "strain relief" mechanism in the Adapters.

### A.   Settlement and Preliminary Approval

After the exchange of extensive discovery, expert reports, and many formal and informal meetings of counsel concerning discovery and the engineering and technical disputes at issue, the parties attempted to settle this matter through mediation.  The parties first met on August 31, 2010 with the Honorable Fern Smith, a retired judge of the Northern District of California, and a mediator with JAMS.  Plaintiffs and Apple both submitted substantial briefing and expert reports. After a full day of contentious settlement negotiations, the parties reached agreement on the basic framework and terms for a settlement.  Thereafter, the parties engaged the mediator concerning fees and costs. After a second full-day of mediation, the parties hit an impasse.  Judge Smith assisted the parties in bridging the gap by making a mediator's proposal regarding the reimbursement of Plaintiffs' fees and expenses, which the parties ultimately adopted.

The parties finalized the settlement details, and submitted a motion for preliminary approval (Dkt. No. 70).  Judge Ware then entered an order requesting clarification of certain

---

[2] Plaintiffs lodged claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*; the California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.*; the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*; the federal Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(1); the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1791, *et seq.*, as well as common law claims for breach of warranty, negligence and unjust enrichment.

MEHRI & SKALET, PLLC

1    deadlines.  Briskin Decl., Ex. 4 (Dkt. No. 72).  The parties complied by submitting a revised

2    proposed order. Judge Ware then held a preliminary approval hearing, wherein he inquired at

3    length about the notice program.  Judge Ware ordered certain revisions to the notice and claim

4    form, particularly concerning the proof of purchase requirement to obtain settlement relief.

5    Apple maintained that "actual proof of purchase is essential both to prevent fraudulent claims

6    and to accurately determine the amount to which each claimant is entitled."  Briskin Decl.,

7    Exs. 6, 7 (Dkt. Nos. 77, 78).  Plaintiffs asserted that additional mechanisms should be added to

8    give class members the opportunity to obtain duplicate receipts from Apple.  Briskin Decl.,

9    Ex. 8 (Dkt. No. 79).  Judge Ware ordered Apple to provide a copy of a receipt to any class

10   member who requested one, available through an online lookup tool.  Briskin Decl., Ex. 9

11   (Dkt. Nos. 80), Dkt. No. 81).  After amending the notice program, Judge Ware preliminarily

12   approved the class settlement on September 27, 2011.  Briskin Decl., Ex. 10 (Dkt. No. 82).

13   The claims administrator sent notice to approximately 7,441,930 settlement class members.

14   Notice also included publication in *USA Today*, *Macworld*, and *Wired* magazine. In addition,

15   the claims administrator established a website (www.adaptersettlement.com) where the class

16   notice and the claims form was available for download.[3]

17        On February 24, 2012, the parties caused supplemental notice to be sent to 230,298

18   settlement class members who purchased a subject Adapter in 2010, informing them that the

19   end date of the extended warranty program had been extended to July 31, 2013.  The purpose

20   of extending the warranty program to July 31, 2013 (versus the previous end date of December

21   31, 2012) was to ensure that all class members, including those who purchased subject

22   Adapters in 2010, received a minimum of three years in which to replace their Adapter if it

23   failed.

---

[3] One could also call a toll-free telephone number to receive the class notice and claims package, at Apple's expense.

MEHRI & SKALET, PLLC

### B.      Motion for Attorneys' Fees and Costs

At the preliminary approval hearing, Plaintiffs made clear that the relief was in the form of a claims-made settlement, not a common fund, and that they would petition for attorney fees, costs and incentive awards separately from the benefits to the class.  Briskin Decl., Ex. 3 (Sept. 12, 2011 Tran. at 19:14-16).   The District Court found, for purposes of determining the proper amount, "there is no *cy pres*" and "there is no separated fund that's set up for this"; "Apple will pay as many claims as are made"; "there is no cap." *Id*.   On December 19, 2011, Plaintiffs filed a motion for attorneys' fees under a lodestar approach, reimbursement of expenses and incentive awards.

### C.      Objections

Out of a class of 9.6 million, only 11 individuals filed objections before the deadline (six of which were filed by or at the behest of serial and/or professional objectors) – just 0.0001% of the potential class.  Newhouse's objection to the Settlement stated that "minor amendments" to the settlement would solve the problems she identified, mostly based on her mistaken complaint that all class members were not entitled to at least three years of relief, which, in fact, they were: "[Newhouse] fails to comprehend that Apple stopped selling the Adapter, and the class members he is concerned about do not exist."  Dkt. No. 97, at 7.

Newhouse admitted that the settlement was "potentially fair, as long as the class attorneys are compensated on the basis of the benefits they bring to the class."  Dkt No. 85 at 1:20-22 (Newhouse Objection).   She asserted that regardless of lodestar, "Under no circumstances should the fee be more than 25% of what the class receives in cash benefits" (*id.* at 1:13-14), disregarding the value of the substantial warranty extension, notice program, and free redesigned replacement products that Plaintiffs obtained for the class. Newhouse also argued that the claims process was unduly burdensome, because there was no provision for online claims submission, and the claims deadline should not be set after the final approval hearing.

Gaudet filed his objection to the settlement in January 2012. Gaudet claims he purchased a replacement adapter in 2011, four years after his initial purchase (July 2007), and a second replacement adapter soon after that. Apple stopped selling the Subject Adapters in June 2010. Based on the evidence in the record, neither of Gaudet's claimed Adapters is eligible for replacement, because they are the redesigned "L" Adapters that are not at issue in this case.

Gaudet objected to having to provide proof of purchase of a subject replacement Adapter (which he did not even purchase), ignoring the fact that settlement class members could simply request a duplicate receipt from Apple.  Gaudet also complained about the limitation of cash relief to three years after purchase, ignoring the fact that the warranty that came with his adapter was only for one year (and 90 days for replacements) and that Apple denies the adapters were defective.

**D.    Final Approval**

On February 27, 2012, the District Court held a hearing on Plaintiffs' motion for final approval of the class settlement and Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and incentive awards.  (Dkt. No. 104.)  The value to the class of the cash refunds, notice and extended warranty and replacement program is significant.  The "warranty" alone has a retail value of $39 to each of the 9.6 million class members. From the date notice of the settlement was issued in November 2011 to July 2013, 92,332 class members took advantage of the program, obtaining adapters with a retail value of $7,294,228.  Notably, the settlement did not release personal injury and property damage claims other than damage to the adapter itself, including the cords that came with the adapter. At the hearing, the District Court inquired extensively about the value of the settlement and class counsel provided this testimony. Plaintiffs addressed all aspects of the Ninth Circuit's ruling in *In re Bluetooth Headset Prod Liab. Litig.,* 654 F.3d 935 (2011), including the so-called "clear sailing" and "kicker" factors.  Briskin Decl., Ex. 11.  Counsel for Newhouse admitted that there was no evidence of collusion.  *Id.*

MEHRI & SKALET, PLLC

1    Plaintiffs presented a declaration from the mediator in this matter (a well-respected
2    retired Judge from this District), declarations setting forth each attorney's hours and lodestar in
3    the matter and costs expended. Judge Ware considered Plaintiffs' arguments, Apple's
4    arguments and Newhouse's arguments, including the arguments of her counsel at the final
5    approval hearing, and overruled her objections, as well as those of the other objectors who did
6    not appear.

7    On March 8, 2012, "having considered all matters submitted to it at the hearing and
8    otherwise," Judge Ware issued an order approving the class settlement and awarding Plaintiffs
9    attorneys' fees, reimbursement of expenses, and incentive awards. (Dkt. No. 107) ("Final
10   Order"). On April 2, 2012, Judge Ware entered a separate Judgment pursuant to Federal Rule
11   of Civil Procedure 58.  (Dkt. No. 110) ("Judgment").  The Final Order did not mention the
12   *Bluetooth* factors briefed and argued by the parties and considered by Judge Ware.  On April 3
13   and April 6, 2012, objectors Gaudet and Newhouse filed notices of appeal from the District
14   Court's Final Order.  Dkt. No. 112 (Gaudet Notice of Appeal); Dkt. No. 119 (Newhouse
15   Notice of Appeal).

**E.    Bond Motion**

17   To secure Plaintiffs' costs on appeal, Judge Ware entered an order requiring Newhouse
18   and Gaudet to post FRAP 7 bonds of $15,000 each. (Dkt. No. 161) (the "May 29 Order").
19   Judge Ware further ordered the objectors to appear for depositions to establish their
20   membership in the class, and to establish whether they were capable of posting a bond up to
21   the amount of $25,000. *Id.*

22   Gaudet failed to appear for deposition, which was noticed for June 14, 2012 in El Paso,
23   Texas – the city and state Gaudet alleges is his "permanent residence." Dkt. No. 179.  He also
24   failed to post a bond of any amount.  He moved the Ninth Circuit (not the District Court) to
25   stay the May 29 Order, which the 9th Circuit denied. Dkt. No. 172.  Judge Ware gave Gaudet
26   another chance to post a FRAP 7 bond and warned him that failure to post a bond or dismiss
27   his appeal could lead to a finding of contempt.  Dkt. No. 195 (the "July 6 Order").  Again,

28

MEHRI & SKALET, PLLC

1   Gaudet refused to post a bond in *any* amount.  Accordingly, on August 23, 2012, Judge Ware

2   held Gaudet in contempt of court for failing to comply with the May 29 Order, and sanctioned

3   Gaudet by striking his objection, stating that his objection "has no force or effect on the Final

4   Settlement." Dkt. No. 202.

5       **F.      The Ninth Circuit's Decision**

6           In an unpublished Memorandum Opinion dated April 24, 2014, the Court of Appeals

7   for the Ninth Circuit reversed the judgment of this Court, vacating its orders regarding the

8   settlement agreement and attorney fee award, and remanded the case for further proceedings.[4]

9   It ruled that the District Court had "abused its discretion in approving both the settlement

10  agreement and attorneys' fee award because it failed to follow the process set out in

11  *Bluetooth.*"  *Id.* at *11.  The Court of Appeals also stated that the District Court's order did not

12  explain why Class Counsel's lodestar was reasonable, "using reasonable hourly rates and

13  sound billing practices," why a multiplier was appropriate, and consider whether to evaluate

14  the fee award based on the percentage of the recovery method.  In issuing these instructions,

15  the Court of Appeals made clear, "We do not intend to direct the district court toward a

16  particular result."  *Id.* at *15.  The Court of Appeals also ruled that the District Court had

17  abused its discretion in the amount it required objectors to post for appeal bonds, and that the

18  Objectors had standing.[5]

19

20

21

22

23

[4] *In re MagSafe Apple Power Adapter Litig.*, Case No. 12-15757, 2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 24, 2014).

24

25

26

27

[5] "On remand, the district court may impose an appeal bond that more accurately reflects the amount that a prevailing appellee would be entitled to recover from a losing appellant under Fed. R. App. P. 39. B."  While the Ninth Circuit also vacated the district court's "order striking Gaudet's objection to the settlement agreement and attorneys' fee award" it also found "The district court did not abuse its discretion in deciding to hold Gaudet in contempt for failing to comply with the appeal bond order. Rather, the district court erred by imposing a sanction that precluded Gaudet from appealing its judgment. On remand, the district court may exercise its discretion to impose any appropriate sanction for violations of its orders." *Id.* at *9.

28

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

### III.   RENEWED MOTION FOR FINAL APPROVAL OF SETTLEMENT

There is ample evidence in the record, summarized below, to conclude that the settlement is fair, reasonable and adequate.

#### A.   Settlement Benefits

##### 1.   Cash Payments to Settlement Class Members

The proposed settlement provides Settlement Class Members whose Adapter showed signs of Strain Relief Damage cash refunds of $79 for those who provide proof of purchase of a Replacement Adapter during the first year following purchase of the Subject Computer or Adapter, $50 for those who provide proof of purchase of a Replacement Adapter during the second year, and $35 for those who provide proof of purchase of a Replacement Adapter during the third year.[6] The Settlement Class Members may claim refunds for up to three Replacement Adapters per Subject Computer upon showing proof of purchase for a cash value of up to $237 per class member.  Agreement § II(D).  The claims administrator has confirmed that the class filed **16,006 valid claims**, for a total cash reimbursement of **$797,757**.[7]

##### 2.   A Robust Adapter Replacement Program

Under the Replacement Program, Apple provided in-warranty and out-of-warranty replacements for Adapters that manifested the Defect ("the Adapter Replacement Program"). Pursuant to the terms of the Agreement, Apple honored replacement requests under the Adapter Replacement Program for at least three years after purchase.  *See* Agreement § (F)(1)-(2); (Dkt. No. 98-13) (Declaration of Allan Coulson in Support of Final Settlement Approval, ¶5) ("Apple will continue the Adapter Replacement Program until three years after the last sale of a MPM-1 MagSafe adapter . . .").  In addition, Apple provided a comprehensive and robust notice program to ensure consumers were notified of the Adapter Replacement Program. *Id.* As a result of the notice program Apple provided **92,332 replacement adapters** during the

---

[6] Pursuant to the Stipulation, "Replacement Adapter" means a 60W or 85W MagSafe Power Adapter that was purchased to replace an Adapter that showed signs of Strain Relief Damage.

[7] *See* Declaration of Jonathan D. Carameros (submitted with Apple memorandum).

existence of the program from November 2011 to July 2013, for a total value of **$7,294,228** (92,332 adapters multiplied by their retail value, $79).[8]

### 3.    A Robust Notice Program

Apple has maintained that it had a program of providing replacement Adapters. However, class members would be unlikely to know about this program, which they could only learn about if they knew to search for a particular page on Apple's expansive website. The proposed settlement cured this problem, by notifying customers of their right to a Replacement Adapter, a settlement administrator to answer any questions and relay complaints, and class counsel to represent their interests. The success of the notice program is readily apparent from looking at the number of replacement adapters provided before and after notice went out.  While the number of claims was dwindling before notice, claims shot up after notice, and remained above pre-notice levels for the entirety of the notice program:



MEHRI & SKALET, PLLC

---

[8] *See* Declaration of Alan Coulson (submitted with Apple memorandum).  It is important to note that Apple redesigned the MagSafe power adapter after the institution of this lawsuit. *See* Zeldes Decl., ¶ 44.  Thus, consumers who received a replacement under the Adapter Replacement Program did not receive the same product that failed, but a redesigned product.

### 4.      Total Value of the Settlement

Adding all the relief to the class together – the cash value, the replacement value, the notice value, the replacement "warranty", the costs and fees paid for by Apple – the settlement provides substantial direct monetary and injunctive relief to the class.  The original Adapter that came with the Subject Computers was only covered by a one-year warranty.  *See* Briskin Decl. ¶ 72. Any replacement Adapter was only covered by a 90-day warranty.  *Id.*  Notably, all 9.6 million Class members were given a replacement warranty period three to nine times longer than Apple originally gave them (*i.e.*, for at least three years).   At the time of settlement, Apple sold "AppleCare" two-year extended warranties for products in this price range (up to $80) for $39.  Briskin Decl. ¶ 73.   Even valuing this part of the settlement (the extended replacement warranty) at only two years (though everyone got at least three years, and some got many more than that) shows this part of the settlement is worth many times the cash value of the settlement. Even putting aside the substantial value of the extended warranty, the requested $3.1 million in fees and expenses is still almost exactly at the 25% benchmark approved by the Ninth Circuit (and objector Newhouse) for common fund cases, and well below percentages awarded in many other cases.  $7,294,228 (value of replacement adapters) + $797,757 (all-cash claims) + $3.1 million (fees, expenses and incentive awards) + $792,464, (cost of notice) = $11,991,985.  $3.1 million / $11,984,449 = 25.87% of the "fund."

### B.      Payment of Notice Costs, Costs of Administration, and Attorneys' Fees

Apple agreed to pay all of the costs of notice and all costs associated with administering the settlement.  Because these costs are being paid directly by Apple, they do not reduce or affect the Class recovery. Apple also agreed not to oppose an award to Class Counsel of attorneys' fees in the amount of $3 million;[9] a service award of $5,000 to each Class Representative, subject to Court approval;[10] and verified costs and expenses incurred in

---

[9] Class counsel separately filed a motion for an award of attorneys' fees, reimbursement of expenses and incentive awards on December 19, 2011. *See* Dkt. No. 83.

[10] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."

MEHRI & SKALET, PLLC

the prosecution of litigation up to $100,000, all of which is to be paid by Apple, not class members. These amounts are separate from and do not in any way diminish the Class recovery. Briskin Decl. ¶ 31.

### C. Applicable Legal Standard for Final Approval

The Court may approve a settlement to the extent that it binds class members "after a hearing and on finding that it is fair, reasonable, and adequate."[11] Settlements of complex class actions are strongly favored prior to trial.[12] Class action settlements are entitled to a presumption of fairness, where experienced class counsel are involved, and the parties reach settlement through arm's-length negotiations after conducting relevant discovery.[13] That is certainly the case here, as set forth in the attached Declarations and herein. Separate and apart from this presumption of fairness, this settlement is "fair, reasonable and adequate" under the standard applied in the Ninth Circuit. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."[14]

As the Ninth Circuit asked this Court to consider, and as Plaintiffs presented to Judge Ware on final approval, Courts in this Circuit generally consider the eight "Churchill" factors in making this determination: (1) the strength of the plaintiff's case, (2) the risk, expense, complexity and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery and

_Ingram v. The Coca-Cola Co._, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting _In re S. Ohio Correctional Fac._, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); _see also Van Vranken v. Atlantic Richfield Co._, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

[11] Fed. R. Civ. P. 23(e)(2); _see also In re Mego Fin. Corp. Sec. Litig._, 213 F.3d 454, 458 (9th Cir. 2000) (requiring a district court, when considering whether to give final approval to a proposed class action settlement, to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable").

[12] _See Churchill Village, LLC v. General Elec._, 361 F.3d 566, 576 (9th Cir. 2004).

[13] _See In re Consol. Pinnacle W. Secs. Litig._, 51 F.3d 194, 197 n.6 (9th Cir. 1995); _Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc._, 221 F.R.D. 523, 528 (C.D. Cal. 2004); _Linney v. Cellular Alaska P'ship_, No. C-96-3008, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), _aff'd_, 151 F.3d 1234 (9th Cir. 1998).

[14] _Hanlon v. Chrysler Corp._, 150 F.3d 1011, 1026 (9th Cir. 1998).

MEHRI & SKALET, PLLC

1    the stage of the proceedings, (6) the experience and views of counsel, (7) the reaction of the

2    class members to the proposed settlement, and (8) that settlement is not the product of

3    collusion among the negotiating parties.[15] The Ninth Circuit consistently has applied this non-

4    exclusive list of eight factors to assess whether, taken as a whole, a settlement is fair.[16]

### D.    The Proposed Class Settlement Warrants Final Approval.

#### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.

Plaintiffs alleged that the Adapters contained a unitary design defect, which caused the

Adapters to prematurely fray, spark, and fail to function. Complaint ¶ 3. Indeed, Plaintiffs

detailed both their own experiences, and those of other class members who lodged complaints

with Apple and in other online fora, with adapters that were melted, discolored, charred,

overheating, and emitting a noxious odor after minimal and non-rigorous use. *Id.* ¶¶ 10-14, 32-

36. These experiences directly contradicted the representations Apple made in its marketing of

the Adapters, specifically that they were designed to handle the rigors of portable computing.

*See id.* ¶¶ 2, 20-22. Plaintiffs were prepared to prove that not only were the Adapters not

"[d]esigned to withstand the rigors of life on the go," but that they were not properly designed

for any normal computing use. *Id.* at ¶ 21.

Plaintiffs would have argued that the Adapters were defective and non-merchantable

for their intended use.  Plaintiffs would have sought to prove that Apple's representations of a

warranty program were belied by the experience of Plaintiffs and class members who

attempted to obtain Replacement Adapters and were turned away by Apple. *See, e.g., id.* ¶ 32.

In addition, the misrepresentations at issue are not that the Adapters are "great" or the "best,"

but specifically that they were designed to withstand being jerked out of place when subject to

sudden strain: "the cord simply breaks cleanly away, without damage to either the cord or the

---

[15] *In re MagSafe Apple Power Adapter Litig.,* 2014 U.S. App. LEXIS at *15 (instructing on remand for the district court to consider the *Churchill* factors); *Churchill Village,* 361 F.3d at 575-76. *See also Hanlon,* 150 F.3d at 1026.

[16] *Churchill Village,* 361 F.3d at 575-76.

MEHRI & SKALET, PLLC

1   system. As an added nicety, this means less wear on the connectors." *Id.* ¶ 20.  Plaintiffs and

2   Class Counsel believe that their claims are meritorious and that they would ultimately prevail

3   on a class-wide basis.  However, Apple has raised, and would continue to raise, significant

4   challenges to the legal and factual basis for these claims. Apple vigorously denies that the

5   Adapters are defective or that Apple made any misrepresentations. The proposed settlement

6   eliminates the risks of continued litigation, which could take years, and could ultimately result

7   in no recovery from Apple.

8         The Settlement Agreement proposed by the parties immediately provides the certainty

9   of valuable benefits to the Class Members. Most importantly, the proposed settlement provides

10  cash payments to Settlement Class Members who had to purchase a Replacement Adapter

11  within three years of the initial purchase of a Subject Computer or Adapter. Plaintiffs could

12  likely achieve no greater benefit for the Settlement Class at trial and in fact got additional

13  significant injunctive relief (an extended replacement warranty program) they would not have

14  been entitled to at trial and trial could possibly result in no benefit at all. With this in mind, the

15  advantages to the Settlement Class Members of approving the proposed settlement and quickly

16  distributing to them the consideration provided therein, clearly exceeded what is likely to

17  occur should this case proceed on a litigation track. For this reason, the strength of Plaintiffs'

18  case and the risk, expense, complexity, and likely duration of further litigation suggest that the

19  proposed Settlement Agreement is fair, adequate, and reasonable.

20         **2.      The Risk of Maintaining Class Action Status Throughout the Trial**

21         Plaintiffs believe that the unitary design defect in this case would make it readily

22  amenable to class certification. Plaintiffs also are aware of the arguments Apple would likely

23  make in opposition to a motion for class certification, including that there was not 100% injury

24  among class members. And even though Apple sold the Adapters with the specific

25  representation that they were designed to be pulled out of the computer, Apple would still

26  argue that the Adapters frayed due to user abuse, creating individual issues. Even if Plaintiffs

27

28

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1  succeeded in obtaining class certification, subsequent developments, unknown to the parties at

2  this time, could result in the Court decertifying the class.

### 3.      Amount Offered in Settlement

4          As set forth above, the Settlement offers substantial cash and injunctive relief to Class

5  members, and a robust replacement program that was available to everyone in the class

6  numbering almost 10 million. *See supra* Section III(A). By any measure, this represents an

7  outstanding result for the Class.

### 4.      Extent of Discovery and Stage of the Proceedings

9          Plaintiffs were able to obtain fulsome discovery allowing them to evaluate the case,

10  and sufficient for two experts to evaluate the design of the Adapters. *See* Briskin Decl. ¶¶ 13-

11  17, 19-21. This allowed Plaintiffs to evaluate the strengths of their case, and the

12  reasonableness and adequacy of the settlement and settle the matter early on in the

13  proceedings.

### 5.      The Experience and Views of Counsel

15          Class Counsel supports the approval of the settlement – a fact that confers a

16  presumption of fairness on the proposed settlement.[17] After weighing the risks and benefits

17  associated with trying this case or settling it according to the terms of the proposed settlement,

18  Class Counsel has reached the opinion that settlement is in the best interest of the Class. *See*

19  Briskin Decl. ¶¶ 25, 43-51. The Court should afford that determination considerable weight.

### 6.      The Reaction of the Class Members

21          Class notice was emailed or mailed to approximately 7.1 million potential Settlement

22  Class Members, and published in *USA Today, Macworld,* and *Wired*. *See* Carameros

23  Declaration ¶¶ 6, 10.   A website (https://www.adaptersettlement.com/) and a toll-free

---

[17] *See Hughes v. Microsoft Corp.*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("In determining whether to approve a settlement, the Court keeps in mind the unique ability of class counsel to assess potential risks and rewards of litigation."). *See also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (when the counsel recommending approval of the settlement are competent and experienced, significant weight may be given to their opinion).

1  telephone number (1-888-332-0277) were created to answer questions. *Id.* ¶¶ 7, 8. Only 11

2  class members filed objections, and a number of those are "professional objectors."  Only 61

3  individuals opted out by the deadline. *Id.* ¶ 17.  Such a low level of dissatisfaction is indicative

4  of the strength of the settlement, and should not stand in the way of final approval.[18]

5      **7.    The Settlement is the Product of Arm's Length Negotiations**

6       As set forth above, the parties were able to reach agreement on the terms of the

7  proposed settlement, and only then, on relief to Plaintiffs and their attorneys. They did this in

8  formal mediation sessions presided over by Judge Smith, indicating that the settlement was not

9  collusive, and is entitled to a finding that the settlement is the result of arm's length

10  negotiation by parties negotiating in good faith.[19]

11       While Judge Ware received ample briefing and heard arguments from Plaintiffs and

12  objectors about the so-called "indicia" of self-dealing or implicit collusion addressed in

13  *Bluetooth*, Judge Ware's reasoning for finding no such collusion here was not stated in his

14  final order approving the settlement.  The Ninth Circuit on remand thus asked this court to

15  state "with specificity whether class counsel received a disproportionate share of the

16

17

18  [18]    *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. Cal. 2009) (finding a
favorable reaction by class members where of the 376,301 putative class members who
19  received notice, and 54 submitted objections); *Churchill Village, LLC*, 361 F.3d at 577
(finding a favorable reaction by class members where of the 90,000 putative class members
20  who received notice, 45 submitted objections and 500 submitted opt-outs); *Isby v. Bayh*, 75
F.3d 1191, 1200 (7th Cir. 1996) (holding that settlement should not be rejected even when
21  thirteen percent of the class submitted written objections in response to the notice of
settlement); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) (noting that "[l]ess
22  than 30 of approximately 1.1 million" class members objected to a proposed settlement and
characterizing those thirty objections as an "infinitesimal" fraction of the class); *Stoetzner v.*
23  *U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (concluding that objections by "only" ten
percent of the class "strongly favors settlement"); *see also Cotton v. Hinton*, 559 F.2d 1326,
24  1333 (5th Cir. 1977) (affirming settlement approval despite objections by one-half the current
employee class)

25  [19] *See In re Apple Inc. Secs. Litig.*, 2011 U.S. Dist. LEXIS 52685, *10 (N.D. Cal. May 17,
2011) ("Because the settlement is the product of a formal mediation session and several
26  months of negotiations conducted at arm's length, the Court is satisfied that the settlement is
not the product of collusion."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174
27  (S.D. Cal. 2007) (same).

28

MEHRI & SKALET, PLLC

settlement" and "demonstrate that it was "particularly vigilant" in monitoring for self-dealing and implicit collusion" as discussed in *Bluetooth*.[20]

The *Bluetooth* warnings signs include: (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund (aka a "kicker"). *Id.* at 947. The *Bluetooth* litigation and settlement bear no resemblance to this action. Plaintiffs have clearly set forth their lodestar figure and the degree of success in the litigation (particularly considering Apple's formidable defense and the risk of Apple prevailing at trial), amply justifying the fairness of the requested fee. Plaintiffs' Counsel are not seeking to receive a "disproportionate distribution" of the settlement, and unlike the proposed class in *Bluetooth*, where the only monetary recovery was a *cy pres* distribution, the Class here is receiving both cash refunds and free, redesigned replacement adapters.

In the absence of a common fund, and where the defendant agreed to pay attorneys' fees separate and apart from the Class' relief, the lodestar/multiplier method is appropriate.[21] Plaintiffs are seeking a modest and justifiable 1.2 multiplier, based on lodestar that excludes all appeal time and time counsel spent on motions to post appellate bonds in this Court. In actions such as this, the Ninth Circuit turns to state law to calculate the proper amount of fees, which provides that this multiplier is reasonable.[22]

Considering the other *Bluetooth* factors, the "clear sailing" arrangement and "kicker" provision did not and do not have the potential of enabling Apple to pay Plaintiffs' Counsel

MEHRI & SKALET, PLLC

---

[20] *In re MagSafe,* 2014 U.S. App. LEXIS at *14-15.

[21] *See Hanlon,* 150 F.3d at 1029; *Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556-57.

[22] *See Mangold v. Cal. Pub. Utilities Comm.,* 67 F.3d 1470, 1478 (9th Cir. 1995); *Hofstetter v. Chase Home Fin., LLC,* No. C 10-1313 WHA, 2011 U.S. Dist. LEXIS 131193, at *4 (N.D. Cal. Nov. 14, 2011) (awarding multiplier of 2); *In re Charles Schwab Corp. Secs. Litig.*, No. C 08-1510 WHA, 2011 U.S. Dist. LEXIS 44547, at *28-29 (N.D. Cal. April 19, 2011) (awarding multiplier of 2.68).

1   excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of

2   the class. Unlike the parties in *Bluetooth*,[23] Plaintiffs submitted substantial evidence, including

3   their own sworn declarations and the sworn declaration of the Honorable (Ret.) Judge Fern

4   Smith, to corroborate Plaintiffs' assertion that the settlement was negotiated at arm's length and

5   without collusion. Judge Smith attests that the "negotiations which ultimately resulted in this

6   agreement were intensive, undertaken by sophisticated and experienced attorneys on both sides

7   in good faith, and conducted completely at arm's length."  Briskin Decl., Ex. 2 (Smith Decl.),

8   ¶¶ 8, 12.  The amount in fees, costs, and incentive awards that Plaintiffs have requested are

9   ***exactly the same amounts*** Judge Smith put forward in her mediators' proposal, and the parties

10  accepted only after the parties were unable to come to a mutual agreement after a lengthy

11  battle.  Final Approval Br. Ex.  (Dkt. No. 88, ¶¶ 10, 11).[24]

12      Even under a constructive common fund analysis, Plaintiffs' fee and costs

13  reimbursement request would be more than fair and reasonable and below a 25% benchmark.

14  First, valuation of the replacement program includes two parts:  (1) the valuation of the

15  extended replacement warranty; and (2) the valuation of the replacements that are

16  **IV.   CERTIFICATION OF A SETTLEMENT CLASS IS PROPER**

17      Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of*

18  *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). In its Preliminary Approval Order, the Court

19  provisionally certified the Settlement Class and determined it to be "fair, reasonable, and

20  adequate such that notice thereof should be given to members of the Settlement Class."

21  Briskin Decl., Ex. 10 (Dkt. No. 82), at 1.  The Court further found that the forms and methods

22  of dissemination of the notice "constitute the best notice practicable under the circumstances

23  and constitute valid, due, and sufficient notice to all members of the Settlement Class,

24  complying fully with the requirements of Rule 23(c)(2)(B) and the United States

25

26  [23]  654 F.3d at 948 (finding that "the district court should have pressed the parties to substantiate their bald [oral] assertions with corroborating evidence.").

27  [24]  Indeed on appeal Newhouse herself stated, "Objector Newhouse does not argue that the parties colluded to limit class members' recovery." Newhouse Br. at 19.

28

MEHRI & SKALET, PLLC

Constitution." *Id.* at 3. The Court also found that Plaintiffs may serve as Class Representatives and appointed Co-Lead Counsel to serve as Class Counsel pursuant to Rule 23(g)(1). *Id.* at 1-2.

As explained herein, Plaintiffs respectfully submit that the Court finally certify this action for class treatment for purposes of settlement only and confirm its appointments of Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel.

**A.      Definition of the Proposed Settlement Class**

Plaintiffs request that the Court, pursuant to Fed. R. Civ. P. 23(b)(3), finally certify the Settlement Class, defined as follows:

> All United States residents who (1) are the original owners of an Apple MacBook or MacBook Pro computer that shipped with a 60W or 85W MagSafe "MPM-1" Power Adapter ("Subject Computers") and/or (2) purchased a standalone 60W or 85W MagSafe "MPM-1" Power Adapter. The Settlement Class includes original owners who received their Subject Computer(s) as a gift. The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; and all persons who validly request exclusion from the Settlement Class.

**B.      The Settlement Class Satisfies the Requirements for Certification of a Rule 23 Settlement Class.**

The Ninth Circuit strongly encourages the approval of class action settlements and certifying a settlement class is part of that process. *Churchill Village, LLC*, 361 F.3d at 572. As explained below, the Court should finally certify the Settlement Class.

**1.      The Settlement Class Satisfies Rule 23(a).**

Fed. R. Civ. P. 23(a) is made up of four subparts, all of which are satisfied here. First, the size of the Settlement Class – approximately ten million Subject Computers and Adapters were sold – renders joinder impracticable, and the numerosity requirement is satisfied. *See Hanlon*, 150 F.3d at 1019.

Second, Rule 23(a)(2)'s requirement of commonality is satisfied here because the Plaintiffs' allegations stem from a claim of common defects in the Adapter included with or

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1  sold for the Subject Computers and allegations of common misrepresentations regarding the

2  Adapter. Complaint, ¶¶ 51-55. *See Chamberlan v. Ford,* 223 F.R.D. 524, 526 (N.D. Cal.

3  2004); *see also Parra v. Bashas', Inc.,* 536 F.3d 975, 978 (9th Cir. 2008) (commonality is a

4  "permissive[]" and "flexible" standard).

5          Third, the typicality requirement is met in this case. The Class Representatives have

6  claims similar to and typical of the rest of the Settlement Class because they all claim – and all

7  have the same interest in redressing – injuries similar to other members of the Class.

8  Complaint, ¶¶ 51-55.

9          Fourth, the adequacy requirement under Rule 23(a)(4), which requires that the named

10  Plaintiffs and proposed Class Counsel be able to "fairly and adequately protect the interests of

11  the class," is satisfied. In this case, the parties are not aware of any conflicts of interest

12  between the named Plaintiffs and the absent Class Members from the standpoint of assessing

13  the fairness of the proposed Settlement. *See Lerwill v. Inflight Motion Pictures Inc.,* 582 F.2d

14  507, 512 (9th Cir. 1978).  The record shows that Plaintiffs and Class Counsel have vigorously

15  prosecuted this action on behalf of the Class. *See also Hanlon,* 150 F.3d at 1020.

16                  **2.       The Settlement Class Satisfies Rule 23(b)(3).**

17          In addition to meeting the requirements of Fed. R. Civ. P. 23(a), the Settlement Class

18  satisfies the requirements of Rule 23(b)(3): predominance (common questions predominate

19  over individual ones) and superiority (class resolution is superior to other methods of

20  adjudication). As discussed above in section IV(B)(1), there are common class-wide issues as

21  to the alleged defects and misrepresentations. In determining superiority, the Rule provides

22  four non-exclusive factors: (1) the interest of individual members of the class in individually

23  controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by

24  class members; (3) the desirability of concentrating claims in a given forum; and (4) the

25  management difficulties likely to be encountered in pursuing the class action.

26          The superiority requirement is satisfied where there are "multiple claims for relatively

27  small individual sums." *Local Jt. Exec. Bd. v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th

28

MEHRI & SKALET, PLLC

Cir. 2001). Here, because the financial loss to any individual Class Member is relatively small, very few would have an interest or ability to pursue their own individual case. Also, it is unlikely that individual Class Members would have the resources to pursue successful litigation on their own. In *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997), the Supreme Court recognized that while a proposed settlement class must meet all the requirements of Fed. R. Civ. P. 23, the court need not assess whether the manageability requirement of Rule 23(b)(3) is met because the parties do not propose to litigate the case. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no 'trial'"). The distinction between a certification of a settlement class and one for litigation becomes important when considering whether variations in state law would make certification inappropriate. Under well-established law, settlement of a nationwide class action is ***not*** defeated by the presence of variations in state law, regardless of whether variations in state law may preclude certification of a class action in the context of ***litigation***. *See In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 529-30 (3d Cir. 2004); *Hanlon*, 150 F.3d at 1019, 1022-23.

Accordingly, recognizing that the parties here propose a nationwide Settlement Class – not a nationwide litigation class – this Court need only inquire whether the proposed Settlement Class is sufficiently cohesive with respect to the relevant factual and legal issues as to make a classwide settlement process fair. *See Amchem*, 521 U.S. at 623; *In re Warfarin*, 391 F.3d at 528. The standards for certification of a nationwide Settlement Class in the context of granting preliminary settlement approval are satisfied here.

## V.   THE IMPLEMENTED NOTICE PROGRAM PROVIDED ADEQUATE NOTICE TO THE SETTLEMENT CLASS

On September 27, 2011, the Court approved an extensive direct and publication notice plan (the "Notice."). *See* Briskin Decl., Ex. 10 (Dkt. No. 82). The parties designed the Notice plan to inform the greatest number of Settlement Class members practicable, thereby

maximizing the opportunity for Settlement Class members to review and understand the Settlement and to respond appropriately if they so choose. The Notice plan involved: (1) emailing the Summary Notice of Settlement to 5,523,878 Class Members, which is every Class Member for whom Apple has a non-duplicate email address in its warranty database; (2) for 2,336,476 Class Members for whom Apple did not have an email address, KCC identified 1,918,052 unique and valid mailing addresses, to whom they sent Settlement Postcards; (3) for 664,998 Settlement Class Members that returned an undeliverable email notification, KCC identified 650,675 unique and valid mailing addresses, to whom they also sent Settlement Postcards. The postcard informed them of the fact of the settlement and that the Class Notice and Claim Form are available on the Settlement Website, or by calling the Toll-Free Number; (4) publishing Notice in *USA Today*, the magazine *Wired*, and *Macworld* (the primary magazine devoted to Apple related products and Apple purchasers); (5) creating a Settlement Website at https://www.adaptersettlement.com/; (6) establishing an automated toll-free telephone line (1-888-332-0277) ("Toll-Free Number") and live help support system; and (6) providing the Full Notice and detailed eligibility information to Class Members via the Settlement Website and Toll-Free Number. *See* Carameros Decl. ¶¶ 6-16; Twiggs Decl. ¶¶ 2, 3.

Both the Summary Notice and the Settlement Postcard provided recipients with the website address of the Settlement Website, the Toll-Free Number that could be used to request copies of the Class Notice and Claim Form, and the address of the Class Counsel to whom class members could write for information concerning the Settlement. The Class Notice and Claim Form were made available on the Settlement Website. As of the date Plaintiffs filed their initial motion for final approval, there were 248,363 unique visitors to the Settlement Website, 13,002 calls received at the toll-free number, and 4,582 requests for a notice packet, of those callers. All of those requests have been fulfilled. Carameros Decl. I ¶ 16, 18. The Settlement Website provided consumers with information about the settlement's terms, and how they could create and download copies of the claim form and notice. *Id.* ¶ 8.

MEHRI & SKALET, PLLC

The Full Notice described the nature, history, and status of the Litigation, set forth the Settlement Class definition, the class claims and issues, disclosed the right of people who fell within the Settlement Class definition to exclude themselves from it, as well as the deadline and procedure for doing so, and warned of the binding effect of the settlement approval proceedings on people who stay in the Settlement Class. In addition, the Notice described the Settlement, set forth the benefits Plaintiffs are proposing to distribute among the Settlement Class, set out the amount of attorneys' fees and expenses that Plaintiffs' Counsel intended to seek in connection with final settlement approval, provided contact information for Counsel, and summarized the reasons the Parties are proposing the settlement. The Notice disclosed the date, time, and place of the formal fairness hearing as well as the procedures for commenting on the settlement and appearing at the hearing. The contents of the Notice therefore satisfied all applicable requirements.

Apple has confirmed that it also provided notice of this Settlement to state and federal officials in accordance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(a). Apple mailed the CAFA notice package to state and federal officials on September 9, 2011. *See* Prevolos Decl. ¶ 6; Briskin Decl. ¶ 33. Summary notice was also published in November editions of *USA Today*, *Wired*, and *Macworld*, as required by the Notice Plan. Twiggs Decl. ¶¶ 2, 3.

Based on the statistics provided by Jonathan D. Carameros, Senior Consultant at Kurtzman Carson Consultants LLC ("KCC"), the court-appointed settlement administrator diligently sent notice to everyone for whom it had or could obtain an email or mail address. It appears that KCC was able to send email or mail notice to 7,127,599 class members, or approximately 74% of potential Settlement Class Members, assuming a class size of approximately 9.6 million. *See* Carameros Decl. 5-6, 9-15; Laxson-Highton Decl. ¶ 4. Given the size of the Settlement Class, the Notice Program approved and implemented here was outstanding and clearly appropriate.

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

## VI.    PLAINTIFFS' RENEWED FEE PETITION SHOULD BE APPROVED BY THE COURT

### A.    The Process for Determining the Attorneys' Fees Was Designed to Protect the Class and Ensure Fairness.

"In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement."  FRCP Rule 23(h). Here, the parties' agreement on fees in this action is what the United States Supreme Court has described as the "ideal" resolution of the issue, which courts should accord deference.[25]  In *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), the Ninth Circuit made clear that the court's first concern in reviewing a proposed fee is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class."  *Id.* at 972.  In *Staton*, the Ninth Circuit observed:

> [T]he parties have flexibility in negotiating class action settlement agreements, including the attorneys' fee provisions ....  Any variants, to be reasonable, would have to provide equivalent assurance that the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees are being adequately policed by the court.

*Id.*  Thus, in *Staton*, the Ninth Circuit approved a process whereby "fees were negotiated only after the merits agreement was concluded and a mediator present at the negotiations provided assurances to the Court 'that the fee was not the result of collusion or sacrifice of the interest of the Class.'"[26]

Here, Class counsel not only waited until they had secured benefits for the Class before negotiating fees with Apple, but they also used the same mediated negotiation process with

---

[25] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."); *In re M.D.C. Holdings Sec. Litig.*, No. 89-0090, 1990 U.S. Dist. LEXIS 15488, at *11-12 (S.D. Cal. Aug. 30, 1990) ("The Supreme Court has stated that consensual resolution of attorneys' fee issues is the ideal toward which litigants should strive.").

[26] *Id.* at 970 n.20 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)).

MEHRI & SKALET, PLLC

Judge Smith for settlement of attorneys' fees that led to the agreement on the substantive terms of the Agreement. *See* Briskin Decl. ¶ 25. The mediation process before Judge Smith ensured that the attorneys' fee considerations could not and did not affect the substantive terms of the Agreement in any way. *Id.* The fee was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the Class, and the magnitude of the fee the Court might award if the matter were litigated. Briskin Decl., Ex. 2 (Smith Decl.), ¶¶ 8, 12. Thus, the negotiated fee is entitled to a presumption of reasonableness. "Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation."[27]

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market set price. Opposing counsel bargained at arm's-length before arriving at a mutually acceptable fee. As recognized in *Lealao*, defendants are good indicators of the value of plaintiffs' counsel's services.[28]

Indeed, fee agreements between plaintiffs and defendants in class actions are to be encouraged particularly where, as here, the attorneys' fees to be requested are negotiated separately after the settlement terms of the class claims have been agreed to by the parties and are to be paid separate from the class consideration.[29] California courts likewise defer to fee

---

[27] *In re First Capital Holdings Corp. Fin. Products Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,937, 93,969 (C.D. Cal. June 10, 1992), *appeal dismissed*, 33 F.3d 29 (9th Cir. 1994); *see also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 245 (2001); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 47 (2000).

[28] *Lealao*, 82 Cal. App. 4th at 37 ("[T]he defendant usually has a fairly good idea of the range of fees that will be sought and the approximate amount likely to be awarded."); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (endorsing a market-based approach to evaluating fee requests, Judge Posner found that "[t]he object in awarding a reasonable attorney's fee ... is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible.").

[29] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

---

MEHRI & SKALET, PLLC`

agreements between the parties if the agreement is otherwise valid.[30]  California Code of Civil Procedure § 1021 essentially codifies the principle that courts should generally respect attorneys' fee agreements made by and between the parties.  "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties ...."  *Id.*

Given the manner in which the attorneys' fees were determined, Plaintiffs submit that the agreement of the parties requesting fees for Class Counsel, determined through arm's-length negotiations during the mediation process with Judge Smith, should be given significant deference.

**B.      The Agreed Upon Fee Is Reasonable Under California and Federal Law.**

In diversity actions, the Ninth Circuit looks to state law to determine the right to fees and the method for calculating fees.[31]  The Ninth Circuit and California courts approve "two separate methods for determining attorneys' fees, depending on the case," the percentage and lodestar methods.[32]  In a common fund case, a district court has discretion as to which method to use.[33]  In the absence of a common fund, the district court should employ the lodestar approach, and has the discretion to cross-check the proposed fee award against the percentage-of-the-recovery method, if such a calculation is feasible.[34]  Here, the Ninth Circuit "encouraged" a cross-check by reference to the percentage-of-the-recovery, or the value of the

---

[30] *See*, *e.g.*, *Cazares v. Saenz*, 208 Cal. App. 3d 279, 287 (1989); *Melendres v. L.A.*, 45 Cal. App. 3d 267, 282-83 (1975).

[31] *See Mangold v. Cal. Pub. Utilities Comm.,* 67 F.3d 1470, 1478 (9th Cir. 1995) (finding that California law permits contingency-fee multipliers that may otherwise be unavailable under federal fee-shifting statutes).

[32] *See Hanlon*, 150 F.3d at 1029; *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556-58 (2009).

[33] *See In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("*WPPSS*").

[34] *See Hanlon*, 150 F.3d at 1029; *Fleury v. Richemont N. Am. Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556-57.

1   settlement, to provide a sufficient basis for concluding that the award is reasonable.[35]   The

2   Court of Appeals stated that the District Court may want to elicit information concerning the

3   value of the monetary and injunctive relief in the case, which Plaintiffs and Apple have

4   provided in their briefing on this Motion.   In the end, however, the Court of Appeals made

5   clear that the discretion concerning evaluation of the settlement rests with this Court.   *See id.* at

6   *14.

7

8   **C.   Under the Lodestar Method, Plaintiffs' Counsel's Fee Request Is Reasonable.**

9        Under the lodestar method, reasonable attorneys' fees are determined by multiplying

10  the number of hours reasonably expended by a reasonable hourly rate.[36]   The district court may

11  adjust the lodestar upwards or downwards on the basis of those factors outlined in *Kerr v.*

12  *Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), that are not already subsumed in the

13  initial lodestar calculation.   The *Kerr* factors are as follows: (1) time and labor; (2) novelty and

14  difficulty of questions; (3) competent representation; (4) preclusion of other employment due

15  to case; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed

16  by client or circumstances; (8) amount at controversy and results; (9) experience, reputation

17  and ability of attorneys; (10) undesirability of the case; (11) nature and length of relationship

18  with the client; and (12) awards in similar cases.[37]   Factors subsumed within the initial lodestar

19  calculation include "'novelty and complexity of the issues, the special skill and experience of

20  counsel, the quality of representation, and the results obtained.'"[38]   Here, applying the lodestar

21  method, the full amount of fees and expenses sought by Plaintiffs is entirely fair and

22  reasonable.

23

24  ────────────────

    [35] 2014 U.S. App. LEXIS 7708, at *13. (quoting *Bluetooth*, 654 F.3d at 943).

25  [36] *See Hensley*, 461 U.S. at 433; *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556-57.

26  [37] *Id.* at 70.   *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 557.

27  [38] *Clark v. Los Angeles*, 803 F.2d 987, 990-91 & n.3 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)).

28

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Plaintiffs' Counsel's Hourly Rates Are Reasonable.

Under the lodestar method, reasonable hourly rates are determined by "prevailing market rates in the relevant community" which are the rates a lawyer of comparable skill, experience and reputation could command in the relevant community.[39]   The relevant community is that in which the court sits.[40]   The Northern District of California is thus the relevant community for this action.

An attorney's actual billing rate for similar work is presumptively appropriate.[41] "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."[42]   "Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees."[43]

Plaintiffs have submitted sworn declarations by their counsel, attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this case.  *See* Exs. B-F.  The hourly rates submitted by Plaintiffs' counsel reflect their ***actual*** billing rates; thus, they are presumptively appropriate. Plaintiffs' counsel are highly respected members of their respective bars with extensive experience in prosecuting high-stakes complex litigation, including consumer class actions.  *Id*.  Given the formidable opposition by a large corporate defendant, Apple, represented by a well-respected international law firm, Morrison Foerster, a high level of experience was required for success.  Plaintiffs'

---

[39] *Blum*, 465 U.S. at 895.

[40] *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096-97 (2000) (using prevailing hourly rate in community for comparable legal services).

[41] *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996).

[42] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986) (finding testimony of attorney as to total hours work sufficient without time records).

[43] *B-K Lighting, Inc. v. Vision3 Lighting*, No. CV 06-02825 MMM (PLAx), 2009 WL 3838264, at *5 (C.D. Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (9th Cir. 1988)).

counsel's rates are appropriate for complex, nationwide litigation, with a range of $262 to $410 for associates and $525 - $850 for partners.

Plaintiffs' counsel's hourly rates are comparable to those approved in this District.[44] Each year, the *National Law Journal* issues a survey of prevailing hourly rates. Courts rely on this annual survey as evidence of prevailing hourly rates.[45]  Plaintiffs' counsel's rates are comparable to the rates of California law firms in the *National Law Journal*.

### 2.      The Number of Hours that Plaintiffs' Counsel Worked Is Reasonable.

Plaintiffs' counsel has expended substantial time and effort pursuing this litigation on behalf of the Class as documented by the supporting declarations submitted by each prosecuting firm, summarizing contemporaneous time records.  *See* Exs. B-F.  This task-oriented analysis is precisely what courts in the Ninth Circuit require in order to assess whether the time devoted by Class counsel is reasonable.[46]  Of course, should the Court require additional details, Plaintiffs can provide their itemized billing records for *in camera* review.

---

[44] *See Faigman v. AT&T Mobility LLC*, No. C06-04622, 2011 WL 672648, *5 (N.D. Cal. Feb. 16, 2011) (approving hourly rates ranging up to $735.74 for partner services, $448.86 for associate attorney services, and $175 for paralegal services); *Wren,* 2011 WL 1230826, at *20 (approving hourly rates ranging up to $725 for partner services); *Suzuki v. Hitachi*, No. C06-7289, 2010 WL 956896, *3 (N.D. Cal. Mar. 12, 2010) (finding reasonable attorneys' fees based on rates of $650 for partner services, $500 for associate attorney services, and $150 for paralegal services; *Armstrong v. Brown*, No. C94-2307, 2011 WL 3443922, *2-3 (N.D. Cal. Aug. 8, 2011) (approving partner-level rates ranging from $560 to $800, associate-level rates ranging from $285 to $510, and litigation support staff and paralegal clerks ranging from $150 to $240 in the "Bay Area"); *Silva v. Patenaude & Felix, P.C.*, No. C08-03019, 2010 WL 2000523, *2 (N.D. Cal. May 12, 2010) (approving lead counsel rates of $465 and $325).

[45] *See, e.g., Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302, 305 (S.D.N.Y. 1999).

[46] *See Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986) ("the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all of the factors necessary to determine a reasonable attorney's fee award."); *Hiken v. DOD*, Case No. 06-2812, 2012 U.S. Dist. LEXIS 125423, *21 (N.D. Cal. Aug. 21, 2012) (quoting same).

MEHRI & SKALET, PLLC

As of the filing of this Motion, Plaintiffs' Counsel in this proceeding collectively expended 4,632 hours, equaling $2,484,176_in lodestar and well over the requested $100,000 in expenses, to obtain this highly favorable result for the Class, knowing that if their efforts were ultimately unsuccessful, they would receive no compensation or reimbursement for their costs.  *See* Exs. B-F.  The requested attorneys' fees translates to a multiplier, net of expenses, of only 1.2.[47]  This total lodestar does not include any of the substantial amount of time Class Counsel spent defending the settlement on appeal, and it does not account for the additional time and expenses that may be incurred through the final approval process, the continued monitoring of the settlement administration, class communications, the prior appeals and any future appeals.

Plaintiffs' Counsel endeavored throughout the litigation to delegate and coordinate efforts of counsel so as to maximize the impact of their collective resources, while minimizing duplication of efforts and streamlining the prosecution of the case.  *See* Briskin Decl. ¶¶ 11, 18.  Interim Co-Lead Class Counsel carefully supervised and managed the efforts of the other Plaintiffs' counsel, consulted with all counsel concerning litigation strategies and positions, assigned discrete tasks to various counsel and kept Plaintiffs and counsel abreast of all developments in the litigation and settlement negotiations.  *Id.*  The hours that Plaintiffs' counsel devoted to this case were reasonable and necessary.  Their hard work has paid off, as it allowed Class counsel to adequately prepare and represent the interests of the Class in the hard-fought settlement negotiations with Apple.

---

[47] *See Vizcaino*, 290 F.3d at 1051 (identifying federal survey of multipliers that show multipliers used by courts range between 1 and 4, and most range between 1.5 and 3); *see also Hofstetter v. Chase Home Fin., LLC,* No. C 10-01313 WHA, 2011 U.S. Dist. LEXIS 131193, at *4 (N.D. Cal. Nov. 14, 2011) (awarding attorneys' fees in the amount of two times the lodestar)*; White v. Experian Info. Solutions, Inc.,* No. SACV 05-1070 DOC, 2011 U.S. Dist. LEXIS 79044, at *15-17 (C.D. Cal. July 15, 2011) (approving the use of a 1.9 multiplier to increase the amount of attorney's fees)*; In re Charles Schwab Corp. Secs. Litig.,* No. C 08-01510 WHA, 2011 U.S. Dist. LEXIS 44547, at *28-29 (N.D. Cal. April 19, 2011) (finding the requested fees were fair and reasonable where the fees included a multiplier of 2.68); *Murillo v. Pac. Gas & Elec. Co.,* No. CIV. 2:08-1974 WBS GGH, 2010 U.S. Dist. LEXIS 73427, at *32-33 (E.D. Cal. July 21, 2010) (approving a multiplier of 1.5 to the lodestar amount).

MEHRI & SKALET, PLLC

**3.      Plaintiffs' Counsel's Fees Are Reasonable Pursuant to the *Kerr*
Factors Subsumed in the Lodestar Analysis.**

In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases.[48]   All of the factors weigh heavily in favor of a $3.1 million fee award in this action.

**a.      Plaintiff's Counsel Invested a Substantial Amount of Time
and Resources into This Complex Case.**

As discussed herein, Plaintiffs' counsel and their support staff have expended substantial time and expense prosecuting this litigation for the benefit of the Class.   This case involved highly technical factual issues relating to the alleged Defect and preparation for a battle of experts.   Plaintiffs' counsel reviewed and analyzed over 80,000 documents, many of which were technically complex, such as design schematics and internal engineering reports, from one of the world's largest, most sophisticated technology companies.   Had the settlement not been achieved, the parties would have continued to devote considerable resources to litigating these expert issues for many more months to come.   *See* Briskin Decl. ¶49.   In short, the successful conclusion of this litigation required Plaintiffs' counsel to commit a significant amount of time, personnel and expenses to this litigation on a contingency basis with absolutely no guarantee of being compensated in the end.   *Id.*, ¶ 53.

**b.      Skill and Experience of Counsel**

It took a great deal of skill and experience to achieve the settlement for the benefit of the Class.   Plaintiffs' counsel are well-respected leaders in the fields of consumer class action litigation.   *See* Exs. B-F (class counsel declarations).   Counsels' skills in developing evidence, technical expertise, working with experts, and understanding the strengths and weaknesses of their respective cases were critical to the results achieved for the settlement Class.

---

[48] *Blum*, 465 U.S. at 898-900; *Kerr*, 526 F.2d at 70.

MEHRI & SKALET, PLLC

The quality of opposing counsel is also considered.[49]   Here, counsel for Apple, Morrison Foerster, is internationally recognized as a leading firm in the defense of consumer class actions.  Plaintiffs' counsel has vigorously litigated, and defense counsel has vigorously defended against, the claims asserted by Plaintiffs on behalf of the Class.

### c.   Results Obtained

The extraordinary benefits of the settlement support an appropriate lodestar multiplier under *Kerr*, particularly where Class counsel achieved "exceptional success" for the Class members.[50]   Indeed, "[t]he fundamental focus is the result actually achieved for class members."[51]  Courts consistently recognize this guiding principle.[52]

In light of the risks and uncertain outcome, the results obtained for the Class are outstanding.  As discussed, over 9.6 million Class members were eligible to obtain a ***cash refund*** for replacement adapters they purchased as a result of their Adapter failing.  Further, Apple committed itself to a three-year Adapter Replacement Program from the date of purchase, making relief available until July 31, 2013, and Apple agreed to provide a comprehensive notice program notifying Class members of the available relief.  The result achieved in this litigation therefore fully supports the modest multiplier requested by Plaintiffs' counsel, and the fee approved by Judge Smith during the mediation proceedings.

Moreover, the immediacy and certainty of recovery in this case is a benefit in itself to Class members, which is another factor for the Court to consider.[53]  If settlement efforts in this

---

[49] *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).

[50] *WPPSS*, 19 F.3d at 1304; *Heritage Bond*, 2005 WL 1594403, at *19 ("[t]he result achieved is a significant factor to be considered in making a fee award.").

[51] *Manual for Complex Litigation* (Fourth) §21.71 at 336 (2004) (quoting FRCP Rule 23(h) advisory committee note).

[52] *Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

[53] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (considering the expense and possible duration of the litigation in evaluating the reasonableness of a settlement).

MEHRI & SKALET, PLLC

1  case had not been successful, the parties would have continued to litigate the case through

2  trial. Taking into account the likelihood of appeal, absent the settlement, this action likely

3  would have continued for years.

4

### 4. Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Plaintiffs' Counsel's Ongoing Work.

5

6  Perhaps the second most important factor bearing on any adjustment to the benchmark

7  percentage is the level of risk of non-payment faced by Class counsel at the inception of the

8  litigation.[54] The contingent nature of Class counsel's fee recovery, coupled with the

9  uncertainty that any recovery would be obtained, are critical factors. *WPPSS*, 19 F.3d at 1300.

10  As the Ninth Circuit recognized in *WPPSS*:

11

12      It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a

13      premium over their normal hourly rates for winning contingency cases ... "If this 'bonus' methodology did not exist, very few

14      lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in

15      light of the risks of recovering nothing."[55]

16  Indeed, the Ninth Circuit has held that it is an abuse of discretion to fail to apply a risk

17  multiplier "when: (1) attorneys take a case with the expectation that they will receive a risk

18  enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is

19  evidence that the case was a risk."[56] This is an exceptional circumstance in accord with the

20  recent United States Supreme Court decision in *Perdue v. Kenny A. ex rel. Winn.*, 130 S. Ct.

21  1662 (2010), where the Court emphasized that while the lodestar method yields a fee that is

22

23  ------------------------

  [54] *See, e.g., Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299-1301; *see also Fischel v.*

24  *Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002) (risk is established at the outset of the litigation); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994)

25  (same).

26  [55] 19 F.3d at 1299, 1301 (citing Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986).

27  [56] *Fischel*, 307 F.3d at 1008 (citing *WPPSS*, 19 F.3d at 1301-02 ("the district court abused its discretion in denying a risk multiplier.")).

28

MEHRI & SKALET, PLLC

presumptively sufficient to achieve the objectives underlying federal fee-shifting statues, multipliers are warranted in certain exceptional circumstances.[57]

From the outset, Plaintiffs' counsel litigated this matter on a contingent basis and placed at risk their own resources to do so with the expectation that they would receive a fee award enhanced for risk in the event they prevailed.  *See* Briskin Decl. ¶ 53.  Because the fee in this matter was entirely contingent, the only certainty was that Plaintiffs' counsel would not get paid unless they obtained a successful result, and that such result would only be realized after significant amounts of time and expense had been invested.  *Id.* Moreover, Class counsel committed its time and resources to this case with no assurance of payment whatsoever.  *Id.* Indeed, there was no guarantee that Plaintiffs would succeed on class certification, summary judgment, trial or appeal.  At no time has Apple conceded liability, the appropriateness of class certification, or the existence of causation or damages.  *Id.* ¶¶ 44, 55.  Despite this uncertainty, Plaintiffs' counsel obtained an excellent result on behalf of the Class.

Plaintiffs' fee request is also reasonable in light of all future work and expenses by Plaintiffs' counsel necessary under the settlement and not included in counsel's current lodestar.  *See* Exs. B-F.   This includes all post-approval work such as claims administration, class member communications, any claims disputes, appeals, and any other issues that may arise under the Agreement.  *Id.*  This future work is substantial and could last for months or even years.

Moreover, the reality is that appropriate awards of attorneys' fees are absolutely necessary in order to ensure that consumer rights are protected and vindicated.[58]  Individual

---

[57] *Id.* at 1673-75 (finding an enhancement may be appropriate where: the method used to determine the hourly rate does not adequately measure the attorney's true market value; attorneys' performance includes an extraordinary outlay of expenses; the litigation is protracted, and/or; an attorneys' performance involves exceptional delay in the payment of fees).

[58] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action resolves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

MEHRI & SKALET, PLLC

consumers would not have undertaken the years of investigation and litigation necessary to prosecute individual claims against Apple.  A class action was essential to vindicate the rights of the consumers.

### D.    Plaintiffs' Counsel's Fee Request Is At The Benchmark Set By the Ninth Circuit.

Plaintiffs in this Circuit are normally entitled to a "benchmark" percentage of 25% of the common fund, but courts have found fee awards of up to 40% to be reasonable.[59]  In determining the amount of benefit conferred upon the Class, the appropriate measure is the total recovery *available* for the class, not the amount actually claimed by class members after-the-fact.[60]  This is because the entire settlement is created through the efforts of class counsel for the benefit of the entire class.[61]

Here, as discussed above, Plaintiffs' counsel have diligently litigated this matter for over two years on an entirely contingent basis to achieve this comprehensive settlement, which will provide substantial economic benefits to all Class members.  Given the highly complex

---

[59] *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (28%); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (25%); *McPhail v. First Command Fin. Planning, Inc.*, No. 05 CV 179, 2009 WL 839841, at *7 (S.D. Cal. Mar. 30, 2009) (30% for first $10 million and 25% for additional $2 million settlement); *Craft v. San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (25%); *accord* Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, 69 (Federal Judicial Center 1996) available at http://www.fjc.gov/public/pdf.nsf/ lookup/rule23.pdf/$file/rule23.pdf ("[m]edian rate[] range[] from 27% to 30%"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (finding that in most cases, benchmark is 30%); *Wren v. RGIS Inventory Specialists*, No. C-06-05778, 2011 WL 1230826, at *29 (N.D. Cal., April 1, 2011) (approving attorneys' fee award amounting to just under 42% of the settlement amount).

[60] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding district court abused its discretion in basing fees on class members' claims against fund rather than on percentage of entire fund); *Six Mexican Workers*, 904 F.2d at 1311 (benchmark is 25% of *entire* fund).

[61] *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at 1027); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (finding that fees should be based on entire settlement because class counsel's negotiation of $40 million settlement was beneficial to entire class regardless of fact that a reduced number of claims were made).

MEHRI & SKALET, PLLC

1    nature of the litigation and the positive result achieved by the Agreement, Plaintiffs' request

2    for $3.1 million in fees and expenses is entirely fair and reasonable.

3

4    **VII.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS**

5

6         Plaintiffs' Counsel also request payment of unreimbursed expenses in the amount of

7    $100,000 incurred by them in connection with the prosecution of this action.   The Ninth

8    Circuit allows recovery of pre-settlement litigation costs in the context of class action

9    settlement.[62]   All expenses that are typically billed by attorneys to paying clients in the

10   marketplace are compensable.[63]

11        As set forth in the declarations of Plaintiffs' counsel, over the past two-plus years of

12   litigation against a well-financed defendant represented by outstanding defense counsel,

13   Plaintiffs' counsel have incurred substantial costs.   *See* Exs. B-F.   A significant component of

14   Plaintiffs' counsel's expenses were the cost of experts and consultants, which were necessary

15   given the difficult and complex mechanical and electronic engineering issues presented in this

16   action.   *Id.*   Plaintiffs' counsel also incurred the costs of computerized research, such as using

17   LEXIS and Westlaw.   *Id.*   It is standard practice for attorneys to use these services to assist

18   them in researching legal and factual issues.[64]   Counsel were also required to travel in

19   connection with this litigation and thus incurred the related costs of airfare, meals, lodging and

20   transportation.   *See* Exs. B-F.   Finally, counsel incurred the typically billed costs of

21   photocopies, postage, filing fees, and telephone charges.   *Id.*

22   _____

[62] *See Staton*, 327 F.3d at 974; *see also* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions, Class Member Obligations for Litigation Fees and Expenses* (4th ed. 2002), §14:2 at 510-11; *see also In re Businessland Sec. Litig.*, No. 90-20476, 1991 U.S. Dist. LEXIS 8962, at *6-*7 (N.D. Cal. June 14, 1991).

[63] *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

[64] *See Moore v. IMCO Recycling of Cal., Inc.*, 2005 U.S. Dist. LEXIS 45778, *9 (C.D. Cal. 2005) (finding "computerized research is not only 'reasonably necessary,' it is essential, to effective representation."); *Pande v. Chevron Texaco Corp.*, No. C-04-05107, 2008 WL 906507, *9 (N.D. Cal. 2008) ("The Court finds the reasoning of *Moore* to be persuasive and, therefore, allows the costs sought by Plaintiff for legal research.").

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1    Each of these costs were necessarily and reasonably incurred to bring this case to a

2  successful conclusion, and they reflect market rates for various categories of expenses

3  incurred.  *See id.*

4  **VIII.   SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

5    Plaintiffs respectfully request that the Court approve a service award of $5,000 to each

6  of the Plaintiffs. "Incentive awards are fairly typical in class action cases."[65]   In the Ninth

7  Circuit, incentive awards "compensate class representatives for work done on behalf of the

8  class, to make up for financial or reputational risk undertaken in bringing the action, and,

9  sometimes, to recognize their willingness to act as a private attorney general."[66]   A court has

10  discretion to approve incentive awards based on, *inter alia*, the amount of time and effort

11  spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the

12  litigation.[67]

13    Here, the requested amounts are based on time that Plaintiffs expended dealing with

14  Apple on these issues, gathering documents, assisting counsel in gathering facts, discovery,

15  consulting for mediation, providing declarations and considering the settlement to ensure it

16  was reasonable, and devoting their time to this action for the benefit of the settlement Class.

17  *See* Exs. B-F.

18    The amount requested here is comparable to the amount awarded in other cases, and

19  presumptively reasonable in the Northern District.[68]   These cases are based on the fundamental

20  ─────────────

21  [65] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006) (30% of class actions include incentive awards to class representatives).

22  [66] *Rodriguez*, 563 F.3d at 958-59.

23  [67] *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

24  [68] *See Hopson v. Hanesbrands, Inc.*, No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009); *Am. Investors*, 263 F.R.D. 3d at 245 (approving incentive awards of $10,500);

25  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 463 (approving incentive award of $5,000); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2007 WL 1652303, at *11 (D.N.J. June 5,

26  2007) (approving incentive award of $10,000); *Cicero v. DirecTV, Inc.*, No. 07-1182, 2010 U.S. Dist. LEXIS 86920, at *19-20 (C.D. Cal. July 27, 2010) (approving $7,500 and $5,000

27  time and expense awards "for their efforts on behalf of the class"); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 awards for

28

premise that named plaintiffs undertake obligations, provide input, and take risks not shared equally by absent Class members, thus justifying different treatment.

Finally, Apple has voluntarily agreed to pay this service award, separate and apart from the relief provided to the Class, and the payments will not reduce or otherwise impact any monetary or other benefit provided to the Class. *See* Agreement § V(A). Conversely, if the awards are not approved, it would not increase the relief to the Class, but would simply revert to Apple.

The Class representatives' efforts and time should not go unrecognized. Thus, Plaintiffs' respectfully request that the Court approve a service award of $5,000 to each of the Class representatives.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the proposed settlement and award Class counsel $3.1 million in attorneys' fees and expenses. Additionally, the Court should award each Class representative a $5,000 service award to reward them for their time and effort in this successful action. These requests are reasonable and appropriate, and will in no way reduce the benefits provided to the settlement Class.

Dated: September 10, 2014                 Respectfully submitted,

                                          By:  s/ Craig L. Briskin

                                          STEVEN A. SKALET (admitted *pro hac vice*)
                                          CRAIG L. BRISKIN (admitted *pro hac vice*)
                                          TARYN WILGUS NULL (Bar No. 254445)
                                          MEHRI & SKALET, PLLC
                                          1250 Connecticut Avenue., NW, Suite 300
                                          Washington, DC 20036
                                          Telephone: (202) 822-5100
                                          Facsimile: (202) 822-4997

two named plaintiffs "for their roles in prosecuting the Action on behalf of the Settlement Class"); *see also Fears v. Wilhelmina Model Agency, Inc.*, 2005 U.S. Dist. LEXIS 7961, *9-10 (S.D.N.Y. 2005) (approving time and expense reimbursements of $25,000 and $15,000; noting cases approving awards as low as $336 and as high as $303,000 with most awards being in the $10,00 to $50,000 range).

MEHRI & SKALET, PLLC

sskalet@findjustice.com
cbriskin@findjustice.com

ZELDES HAEGGQUIST & ECK, LLP
HELEN I. ZELDES (220051)
AARON M. OLSEN (259923)
625 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP
ANGELA C. AGRUSA (131337)
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
aagrusa@linerlaw.com

MCNICHOLAS & MCNICHOLAS LLP
PATRICK MCNICHOLAS (125868)
10866 Wilshire Boulevard Suite 1400
Los Angeles, CA 90024-4338
Telephone: (310) 474-1582
Facsimile: (310) 475-7871
pmc@mcnicholaslaw.com

Attorneys for Plaintiffs and Interim Class
Counsel

MEHRI & SKALET, PLLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEHRI & SKALET, PLLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  I further hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List (listed below).

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 10, 2014.

s/Craig L. Briskin

Robert Gaudet, Esq. (*Pro se*)
800 Fifth Avenue, Suite 4100
Seattle, WA  98104