# Exhibit 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| | Case No. C 09-01911 JW |
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | **STIPULATION OF SETTLEMENT** |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made by and between: (1) Apple Inc., a California corporation ("Apple") and (2) Naotaka Kitagawa, Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin ("Plaintiffs" or "Class Representatives"), individually and as representatives of the "Settlement Class" as defined below (collectively the "Parties").

## DEFINITIONS

As used herein, the following terms have the meanings set forth below:

A.    "Subject Computer" means an Apple MacBook or MacBook Pro computer that shipped with a MagSafe "MPM-1" 60W Power Adapter or 85W Power Adapter, respectively.

B.    "Adapter" or "Adapters" means a MagSafe "MPM-1" 60W or 85W Power

1 | Adapter shipped with or sold for use with a Subject Computer.

2 |     C.    "Class Representatives" or "Plaintiffs" means Naotaka Kitagawa, Timothy J.

3 | Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin.

4 |     D.    "Replacement Adapter" means a 60W or 85W MagSafe Power Adapter that was

5 | purchased to replace an Adapter that showed signs of Strain Relief Damage.

6 |     E.    "Strain Relief Damage" means fraying, melting, straining, sparking, weakening,

7 | discoloration, bubbling, overheating and/or separation of the Adapter's strain reliefs.

8 |     E.    "Published Notice" means publication of the notice of the proposed class action

9 | settlement as set forth in Section IV.D., below.

10 |     F.    "Notice Date" means the last date of Published Notice.

11 |     G.    "Settlement" means the settlement described herein.

12 |     H.    "Releasing Persons" means Plaintiffs, each Settlement Class Member, and their

13 | respective heirs, executors, administrators, representatives, agents, partners, successors, and

14 | assigns.

15 |     I.    "Released Persons" means Apple and each of its past or present directors, officers,

16 | employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives,

17 | partners, affiliates, parents, subsidiaries, joint venturers, independent contractors, wholesalers,

18 | resellers, distributors, retailers, related companies, and divisions, and each of their predecessors,

19 | successors, heirs, and assigns.

20 |     J.    "Class Counsel" means Helen I. Zeldes of Zeldes & Haeggquist, LLP, 625

21 | Broadway, Suite 906, San Diego, CA 92101, 619-342-8000 and Steve Skalet of Mehri & Skalet,

22 | PLLC, 1250 Connecticut Avenue NW, Suite 300, Washington, DC 20036, 202-822-5100.

23 | <div align="center">RECITALS</div>

24 |     This Agreement is made for the following purposes and with reference to the following

25 | facts:

26 |     A.    On or about May 1, 2009, Plaintiffs Kitagawa, Broad, and Reisman filed a class

27 | action complaint against Apple in the United States District Court for the Northern District of

28 | California, San Jose Division, titled *Kitagawa et al. v. Apple Computer, Inc.*, Case No. 09-01911

1   ("Kitagawa Action").  On or about May 15, 2009, Plaintiffs Hackwith and Martin filed a class

2   action complaint against Apple in the United States District Court for the Central District of

3   California , titled *Hackwith et al. v. Apple Computer, Inc.,* Case No. 09-3482 ("Hackwith

4   Action").  The Hackwith Action was transferred to the Northern District of California and was

5   consolidated with the Kitagawa Action on November 16, 2009 (collectively"the Actions").  A

6   consolidated complaint was filed in the Actions on December 4, 2009 (the "Complaint").  The

7   Complaint alleged that the Adapter is defective in that it "dangerously frays, sparks, prematurely

8   fails to work, and catches fire, overheats, and melts" (Complaint, ¶3), and that Apple engaged in

9   misrepresentations regarding the Adapter.  The Complaint alleged violations of the California

10  Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; the California False

11  Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; the California Consumers Legal

12  Remedies Act, Cal. Civ. Code § 1750 *et seq.*; the federal Magnuson-Moss Warranty Act, 15

13  U.S.C. § 2310(d)(1); the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*, as

14  well as claims for Breach of Express Warranty; Breach of Implied Warranty of Fitness for a

15  Particular Purpose; Breach of Implied Warranty of Merchantability; Negligence; Negligent

16  Design and Failure to Warn; Money Had and Received; and Unjust Enrichment.  The Complaint

17  sought damages, restitution and declaratory and injunctive relief.

18          B.      Apple answered the Complaint by denying the allegations therein, and alleging

19  various affirmative defenses.

20          C.      Apple disputes the claims alleged in the Actions and does not by this Agreement

21  admit any liability or wrongdoing whatsoever.  Apple has agreed to enter into this Agreement to

22  avoid the further expense, inconvenience, and distraction of burdensome and protracted

23  litigation.

24          D.      Class Counsel and the Class Representatives believe that the claims asserted in

25  the Actions possess merit and have examined and considered the benefits to be obtained under

26  the proposed settlement set forth in this Agreement, the risks associated with the continued

27  prosecution of this complex and potentially time-consuming litigation, and the likelihood of

28  ultimate success on the merits of the Action.  Class Counsel have conducted discovery of Apple,

1    have diligently investigated the facts and law relevant to the merits of their claims, and have

2    concluded that the proposed settlement set forth in this Agreement is fair, adequate, reasonable,

3    and in the best interests of the Settlement Class.

4           E.      The Parties desire to settle the Actions as to the Adapters in their entirety with

5    respect to all potential claims arising out of the facts that were or could have been alleged in the

6    complaints filed in the Kitagawa Action, the Hackwith Action and/or the Consolidated

7    Complaint.  The Parties intend this Agreement to bind Apple, Plaintiffs (both as Class

8    Representatives and individually), and all members of the Settlement Class as defined below

9    who do not specifically request exclusion.

10          NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the

11   Parties, and each of them, hereby warrant, represent, acknowledge, covenant, and agree, subject

12   to approval by the Court, as follows:

13   I.     CERTIFICATION OF THE SETTLEMENT CLASS

14          A.      Definition of the Settlement Class

15   The "Settlement Class" shall be defined as follows:

16                  All United States residents who (1) are the original owners of an
                    Apple MacBook or MacBook Pro computer that shipped with a
17                  60W or 85W MagSafe "MPM-1" Power Adapter ("Subject
                    Computers") and/or (2) purchased a standalone 60W or 85W
18                  MagSafe "MPM-1" Power Adapter.  The Settlement Class includes
                    original owners who received their Subject Computer(s) as a gift.
19                  The Settlement Class excludes Apple; any entity in which Apple
                    has a controlling interest; Apple's directors, officers, and
20                  employees; Apple's legal representatives, successors, and assigns;
                    and all persons who validly request exclusion from the Settlement
21                  Class.

22          B.      Stipulation Respecting Conditional Certification

23          The Parties stipulate and agree that, subject to Court approval, the Settlement Class

24   described in Section I.A. above should be conditionally certified solely for purposes of the

25   settlement embodied in this Agreement.  If, for any reason, this Agreement is not approved by the

26   Court, the stipulation for certification and all of the agreements contained herein shall be

27   considered null and void and may not be referred to or used as evidence or for any other purpose

28

1 whatsoever in the Actions or any other action or proceeding.

2       C.     **Definition of "Class Member" and "Settlement Class Member"**

3       "Class Member" shall mean each member of the Settlement Class. "Settlement Class

4 Member" shall mean and include every Class Member who does not validly and timely request

5 exclusion from the Settlement Class.

6 II.     CONSIDERATION FOR SETTLEMENT; CLAIMS PROCESS

7       A.     **Refunds for Replacements During the First Year Following Purchase of the
Subject Computer or Adapter**

8

9       Settlement Class Members whose Adapter showed signs of Strain Relief Damage and who

10 provide proof of purchase of a Replacement Adapter during the first year following purchase of

11 the Subject Computer or Adapter shall be entitled to a refund of $79.00. Such Settlement Class

12 Members must also follow the procedures and requirements set forth in Section I.E. below,

13 including filing a valid Claim Form.

14       B.     **Refund for Replacement Adapters Purchased During the Second Year
Following Purchase of the Subject Computer or Adapter**

15

16       Settlement Class Members whose Adapter showed signs of Strain Relief Damage and who

17 provide proof of purchase of a Replacement Adapter during the second year following purchase

18 of the Subject Computer or Adapter shall be entitled to a refund of $50.00. Such Settlement Class

19 Members must also follow the procedures and requirements set forth in Section I.E. below,

20 including filing a valid Claim Form.

21       C.     **Refund for Replacement Adapters Purchased During the Third Year
Following Purchase of the Subject Computer or Adapter**

22

23       Settlement Class Members whose Adapter showed signs of Strain Relief Damage and who

24 provide proof of purchase of a Replacement Adapter during the third year following purchase of

25 the Subject Computer or Adapter shall be entitled to a refund of $35.00. Such Settlement Class

26 Members must also follow the procedures and requirements set forth in Section I.E. below,

27 including filing a valid Claim Form.

28

D.    **Limit of Three Refunds**

Each Settlement Class Member may claim refunds for no more than three Replacement Adapters per Subject Computer.

E.    **Claims Process**

1.    **Claim Form**

Settlement Class Members who wish to claim a refund pursuant to Sections II.A. –II.C. above will be required to submit a Claim Form (together with any required supporting documentation), executed under penalty of perjury, setting forth, among other things, the Settlement Class Member's name and address; the serial number of the Subject Computer; the approximate month and year of purchase of the Subject Computer; and the approximate month and year the Replacement Adapter was purchased.

2.    **Claims Period**

To be valid, Claim Forms together with any required supporting documentation must be submitted within one hundred and twenty (120) days from the Notice Date for Replacement Adapters purchased prior to the Notice Date ("Claims Period"). For Adapters that show signs of Strain Relief Damage after the Notice Date, Settlement Class Members may obtain a replacement under the Adapter Replacement Program described in Section II.F. below.

3.    **Proof of Purchase**

"Proof of Purchase" means an invoice, receipt or credit card statement evidencing the purchase of a Replacement Adapter, including the price paid, date of purchase, and the name and address of the entity from whom the Replacement Adapter was purchased. If the Proof of Purchase does not specifically identify the purchase of a Replacement Adapter or the price paid, Settlement Class Members may submit a receipt, bank or credit card statement , or Apple email receipt, showing a purchase from any Apple store (online or in-person) in the amount of $79 or greater, and must declare in the Claim Form that the product purchased was a Replacement Adapter, state the price paid (if not shown in the Proof of Purchase), and highlight the item in the Proof of Purchase that includes the Replacement Adapter.

F.    **Notice of Adapter Replacement Program**

1.    **Class Notice of Adapter Replacement Program**

Apple currently maintains a program that includes providing in-warranty and out-of-warranty replacements for Adapters that show signs of Strain Relief Damage, provided there are no obvious signs of user abuse ("Adapter Replacement Program"). The Class Notice, Summary Notice and Published Notice described in Section IV below shall inform Settlement Class Members of the Adapter Replacement Program.

2.    **Time Period for Claims Under The Adapter Replacement Program**

For Adapters shipped with a Subject Computer, Settlement Class Members will have three years from the date of purchase of the Subject Computer or 180 days from the Notice Date, whichever is later, to claim a replacement adapter. For Adapters purchased separately, Settlement Class Members shall have three years from the date of purchase of the Adapter or 180 days from the Notice Date, whichever is later, to claim a replacement. Apple will continue the Adapter Replacement Program until December 31, 2012; notwithstanding any of the foregoing, Apple will have no obligation to honor adapter replacement claims made after December 31, 2012.

G.    **Payment of Notice Costs, Costs of Administration, and Attorneys' Fees**

Except as otherwise provided herein, Apple agrees to pay all of the costs of notice and all of the costs of administering the settlement as set forth in Sections IV and IX below.

III.   **OBTAINING COURT APPROVAL OF THE AGREEMENT**

A.    Upon full execution of this Agreement, the Parties shall take all necessary steps to obtain an Order from the Court substantially in the form of Exhibit E hereto (the "Conditional Approval Order"), granting conditional certification of the Settlement Class, granting preliminary approval of this Agreement, and approving the forms and methods of notice to the Settlement Class set forth herein. The Conditional Approval Order shall further set a date for a hearing ("Final Approval Hearing") at which the Court will determine whether the requirements for certification of the Settlement Class have been met; whether the proposed settlement should be finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class Members; whether the award of fees and expenses to Class Counsel should be approved; whether

1  a service award should be paid to the Class Representatives; and whether a final judgment should

2  be entered dismissing the Actions on the merits and with prejudice against the Class

3  Representatives and the Settlement Class Members.

4        B.     If at any point the Court does not approve this Agreement, the Agreement shall

5  terminate and be of no force or effect, unless the Parties voluntarily agree to modify this

6  Agreement in the manner necessary to obtain Court approval.

7  IV.    NOTICE AND SETTLEMENT ADMINISTRATION

8        The Parties agree to, and will request approval by the Court of, the following forms and

9  methods of notice to the Settlement Class:

10        A.     A copy of the Notice of Pendency and Proposed Settlement of Class Action

11  substantially in the form attached hereto as Exhibit A (the "Class Notice"), together with the

12  Claim Form (including the Instructions, Claim Form and Release) substantially in the form

13  attached hereto as Exhibit D, shall be posted and available for download on a settlement website,

14  www._____.com (the "Settlement Website"), and shall be mailed at no charge to Class

15  Members who call a toll-free number to be established at Apple's expense ("Toll-Free Number").

16  Apple shall use "best efforts" to include the term "adapter" in the domain name of the settlement

17  website. This information shall remain available on the Internet until the last day of the Claims

18  Period. All costs and expenses associated with complying with this provision shall be borne

19  exclusively by Apple.

20        B.     Apple shall e-mail a copy of the Summary Notice of Settlement substantially in the

21  form attached hereto as Exhibit B ("Summary Notice") to each Class Member for whom Apple

22  has an e-mail address in its warranty registration database. The Summary Notice shall inform

23  members of the Settlement Class: (i) of the fact of the settlement and that the Class Notice and

24  Claim Form are available on the Settlement Website or by calling the Toll-Free Number, and (ii)

25  of the Adapter Replacement Program described in Section II.F. above. All costs and expenses

26  associated with complying with this provision shall be borne exclusively by Apple.

27        C.     For Class Members for whom e-mailed notice is returned undeliverable, Apple

28  shall mail a postcard substantially in the form attached hereto as Exhibit C ("Settlement

1    Postcard") informing Class Members of the fact of the settlement and that the Class Notice and

2    Claim Form are available on the Settlement Website or by calling the Toll-Free Number. All

3    costs and expenses associated with complying with this provision shall be borne exclusively by

4    Apple.

5          D.      Apple shall cause a copy of the Summary Notice to be published once in *USA*

6    *Today*, a newspaper of national circulation, once in Wired Magazine, and once on a different date

7    in *Macworld*. The Summary Notice shall not be less than 1/4 of a page in size. The Summary

8    Notice shall include the address of the Settlement Website and the Toll-Free Number.

9          E.      Apple shall be solely responsible for making all arrangements necessary to

10   effectuate the notice set forth above and for payment of the costs and expenses of such notice.

11         F.      The Class Notice shall provide a procedure whereby Class Members may object or

12   exclude themselves from the Settlement Class. If a Settlement Class Member has objected to a

13   class action settlement on more than 3 occasions, the Class Member shall list all cases in which

14   they have filed an objection. Class Members shall have no less than 45 days following the Notice

15   Date to object or exclude themselves, and the actual date shall be established by the Court. (If

16   such period ends on a weekend or holiday, Class Members shall have until the next business day.)

17   Any Class Member who does not timely and validly request exclusion shall be a Settlement Class

18   Member and shall be bound by the terms of this Agreement. The Class Notice shall also provide

19   a procedure for Class Members to object to the proposed settlement; and/or to intervene in the

20   Action; and/or to be represented by counsel of their choice at their own expense. Requests for

21   exclusion shall be postmarked no later than 25 days prior to the Final Hearing. Objections shall

22   be filed with the Court and served on counsel for the Parties (as identified in the Class Notice) no

23   later than 25 days prior to the Final Hearing.

24   V.    PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
           TO CLASS COUNSEL
25

26         A.      Apple agrees not to oppose an award to Class Counsel of attorney's fees in the

27   amount of $3 million; a service award of $5,000 to each Class Representative (total service

28   awards not to exceed $30,000); and verified costs and expenses incurred in the prosecution of

1   litigation up to $100,000, all of which is to be paid by Apple (the "Fees Amount"). These

2   amounts are in addition to and separate from all other consideration and remedies available to the

3   Settlement Class. Apple agrees not to object to the reasonableness of Class Counsel's attorneys'

4   fees and expenses set forth above.

5        **B.**     Apple shall not be liable for any additional fees or expenses of Plaintiffs or any

6   Class Member in connection with the Actions or the Litigation. Class Counsel agree that they

7   will not seek any additional fees or costs from Apple in connection with the Actions or the

8   settlement of the Action. Apple expressly agrees that it will not seek to recover its Court costs,

9   attorneys' fees, or expenses once the Court enters a dismissal of the Action. No later than fifteen

10   (15) banking days following the Effective Date as defined below, Apple shall pay the Fees

11   Amount by wire transfer into a joint escrow account held by Zeldes & Haeggquist, LLP.

12   Plaintiffs and Class Counsel agree to provide Apple all identification information necessary to

13   effectuate the payment of the Fees Amount including, but not limited to, Taxpayer Identification

14   Number(s), completed Internal Revenue Service Form W-9(s), and wire transfer information.

15   **VI.**    **FINAL JUDGMENT APPROVING SETTLEMENT AND DISMISSING CLAIMS
16   OF SETTLEMENT CLASS MEMBERS WITH PREJUDICE; RELEASE OF
     CLAIMS BY SETTLEMENT CLASS MEMBERS**

17        **A.**     **Entry of Final Judgment**

18        Upon the Court's approval of this Agreement and the settlement set forth herein, a

19   judgment substantially in the form attached hereto as Exhibit F ("Judgment") shall be entered

20   dismissing the claims of Plaintiffs and of the Settlement Class Members with prejudice.

21        **B.**     **Release of Claims**

22        1.     As of the Effective Date of this Agreement as defined below, Releasing Persons

23   hereby fully and irrevocably release and forever discharge Released Persons from any and all

24   liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts,

25   agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any

26   kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected,

27   whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown

28   claims, which they have or may claim now or in the future to have, that were or could have been

SETTLEMENT AGREEMENT AND RELEASE      10
Case Nos. C-09-01911JW and C-09-03862JW
sf-2923363

eeeee



ewieo



aaa

efff

alleged or asserted against any of the Released Persons in the Actions, including but not limited to any claims that the Adapters are defective in that they dangerously fray, spark, prematurely fail to work, catch fire, overheat or melt, and any alleged misrepresentations or failures to disclose with respect to the Adapters ("Released Claims"). Personal injury and property damage claims (other than damage to the Adapter itself, including the cords that come with the Adapter) are excluded from the release.

2. Plaintiffs, on behalf of themselves and all Settlement Class Members, hereby waive any and all provisions, rights, and benefits conferred by section 1542 of the California Civil Code or any comparable statutory or common law provision of any other jurisdiction. Section 1542 reads as follows:

> Certain Claims Not Affected By General Release: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Although the releases granted under this Agreement are not general releases, Plaintiffs, on behalf of themselves and of all Settlement Class Members, nonetheless expressly acknowledge that Plaintiffs and the Settlement Class Members are waiving the protections of section 1542 and of any comparable statutory or common law provision of any other jurisdiction.

3. As of the Effective Date, by operation of entry of judgment, the Released Parties shall be deemed to have fully released and forever discharged Plaintiffs, all other Class Members and Class Counsel from any and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Settlement.

4. Notwithstanding the entry of Judgment, this Court shall retain jurisdiction of the Actions until such time as the Court determines that the Settlement is fully consummated according to the terms and conditions of this Agreement.

VII.   PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

A.      Before commencing these Actions and during settlement negotiations, Class Counsel and their consultants conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims and to determine how best to serve the interests of the Class.  Further, Plaintiffs conducted extensive discovery and Apple provided Class Counsel with the information requested to permit the Class Representatives and Class Counsel to assess the merits of their claims and potential claims and negotiate a settlement.  Class Counsel and the Class Representatives believe that the claims asserted in these Actions have merit.

B.      However, Class Counsel, on behalf of the Settlement Class, have agreed to settle the Actions pursuant to the provisions of this Agreement after considering, among other things: (a) the substantial benefits to Plaintiffs and the Settlement Class under the Settlement; (b) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (c) the desirability of consummating this Settlement to provide effective timely relief to Plaintiffs and the Settlement Class.

C.      In consideration of all of these circumstances, Class Counsel and the Class Representatives have concluded that the proposed settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

VIII.  DEFENDANT'S DENIAL OF LIABILITY; AGREEMENT AS DEFENSE IN FUTURE PROCEEDINGS

A.      Apple has indicated its intent vigorously to contest each and every claim in the Action, and continues vigorously to deny all of the material allegations in the Action.  Apple enters into this Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.  Apple nonetheless has concluded that it is in its best interests that the Actions be settled on the terms and conditions set forth herein in light of the expense that would be necessary to defend the Action, the benefits of disposing of protracted and complex litigation, and the desire of Apple to conduct its business unhampered by the distractions of continued litigation.

B.      Neither this Agreement, nor any of its terms or provisions, nor any of the

1    negotiations or proceedings connected with it, shall be construed as an admission or concession

2    by Apple of the truth of any of the allegations in the Actions, or of any liability, fault, or

3    wrongdoing of any kind, nor as an admission or concession by plaintiffs of any lack of merit of

4    their claims against Apple.

5         C.       To the extent permitted by law, neither this Agreement, nor any of its terms or

6    provisions, nor any of the negotiations or proceedings connected with it, shall be offered as

7    evidence or received in evidence in any pending or future civil, criminal, or administrative action

8    or proceeding to establish any liability or admission by Apple.

9         D.       To the extent permitted by law, the Agreement may be pleaded as a full and

10   complete defense to, and may be used as the basis for an injunction against, any action, suit, or

11   other proceeding which may be instituted, prosecuted, or attempted for claims covered by the

12   releases in this Agreement.

13   **IX.    ADMINISTRATIVE AND IMPLEMENTATION MATTERS**

14        **A.       Effective Date of the Agreement**

15        The "Effective Date" of this Agreement shall be the first day after which all of the

16   following events and conditions of this Agreement have been met or have occurred:

17             1.       All of the Parties and their counsel have executed this Agreement;

18             2.       The Court has conditionally certified the Settlement Class, preliminarily

19   approved the settlement embodied in this Agreement, and provided for approved notice to the

20   Settlement Class by entry of an order substantially in the form of Exhibit E hereto;

21             3.       Following the final date for Class Members to exclude themselves from the

22   Settlement Class pursuant to Section IV.F. hereof, and no less than seven (7) days prior to the

23   Final Hearing, Class Counsel has verified in writing that fewer than three thousand (3,000) of the

24   Class Members have elected to exclude themselves from the Settlement Class, except that if this

25   condition is not met, Apple shall have the option to give written notice to Class Counsel waiving

26   this condition and stating that Apple intends to proceed with the settlement set forth in this

27   Agreement;

28             4.       The Court has signed the Judgment; and

SETTLEMENT AGREEMENT AND RELEASE                13
Case Nos. C-09-01911JW and C-09-03862JW
sf-2923363

5.     The Judgment has become final ("Final") in that the time for appeal or writ has expired or, if an appeal and/or petition for review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Judgment is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become "Final."

B.     **Settlement Administration; Invalid or Incomplete Claims**

1.     Apple shall, in good faith, administer the process of receiving, handling, processing, and paying claims through a third-party settlement administrator ("Administrator"). Class Counsel shall have the right to submit names of proposed settlement administrators, but Apple shall have the sole discretion to select the Administrator.  Class Counsel shall have the right to inquire of Apple's counsel regarding any aspect of implementation of the settlement, including but not limited to the settlement administration process and the treatment of individual Settlement Class Member's claims under Section IX of this Agreement.  Class Counsel shall also receive quarterly written reports summarizing claims received and action taken thereon at Class Counsel's request.

2.     The Claims Administrator shall have the right to reject any claims deemed to be fraudulent, insufficient, or incomplete.  However, all Claimants will be given a fair and reasonable opportunity to cure any insufficient or incomplete claim submissions in order to maximize the overall benefit to the Class in accordance with Section IX.C. below.

C.     **Invalid or Incomplete Claims; Cure Period**

The Claims Administrator will mail originals or copies of Claim Forms rejected as invalid or incomplete, or a written notice of additional information required for the Claim Form to be valid ("Cure Notice"), directly to the Settlement Class Member who submitted the Claim Form. Settlement Class Members shall have a 45-day period to cure defective or incomplete claims, which shall run from the date of mailing of the original or copy of the Claim Form or Cure Notice to the Settlement Class Member.  The 45-day cure period may extend after the end of the period for submission of Claim Forms so long as the original Claim Form was timely submitted. Settlement Class Members shall have only one opportunity to cure.

**D.   Disputed Claims**

On a quarterly basis after the commencement of claims fulfillment, the Claims Administrator will provide Class Counsel with a list of rejected Claims (including the Settlement Class Member's name, address, and telephone number and the reason for rejection).  Class Counsel shall have a reasonable opportunity to inspect originals or copies of the Claim Forms. Counsel for the Parties will first attempt to resolve any disputes concerning rejected claims informally between themselves.  If counsel cannot reach an agreement concerning one or more claims, the claims will be submitted to the Court for determination.

**X.   MISCELLANEOUS PROVISIONS**

**A.   Extensions Of Time**

Unless otherwise ordered by the Court herein, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**B.   Integration**

This Agreement, including all exhibits, constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

**C.   Governing Law**

This Agreement shall be construed in accordance with, and be governed by, the laws of the State of California, without regard to the principles thereof regarding choice of law.

**D.   Gender and Plurals**

As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

**E.   Survival of Warranties and Representations**

The warranties and representations of this Agreement are deemed to survive the date of execution hereof.

**F.   Representative Capacity**

Each person executing this Agreement in a representative capacity represents and warrants

1  that he or she is empowered to do so.

2    **G.    Counterparts**

3    This Agreement may be executed in any number of counterparts, each of which shall be

4  deemed an original, but all of which together shall constitute one and the same instrument, even

5  though all Parties do not sign the same counterparts.

6    **H.    Cooperation of Parties**

7    The Parties to this Agreement agree to prepare and execute all documents, to seek Court

8  approvals, to defend Court approvals, and to do all things reasonably necessary to complete the

9  settlement described in this Agreement.

10    **I.    Execution Voluntary**

11    This Agreement is executed voluntarily by each of the Parties without any duress or undue

12  influence on the part, or on behalf, of any of them. The Parties represent and warrant to each

13  other that they have read and fully understand the provisions of this Agreement and have relied

14  on the advice and representation of legal counsel of their own choosing. Each of the Parties has

15  cooperated in the drafting and preparation of this Agreement and has been advised by counsel

16  regarding the terms, effects, and consequences of this Agreement. Accordingly, in any

17  construction to be made of this Agreement, this Agreement shall not be construed as having been

18  drafted solely by any one or more of the Parties.

19    **J.    Notices**

20    1.    All Notices to Class Counsel provided for herein shall be sent by email to

21  helenz@zhlaw.com with a hard copy sent by overnight mail to Helen I. Zeldes, Zeldes &

22  Haeggquist, LLP, 625 Broadway, Suite 906, San Diego, California 92101.

23    2.    All Notices to Apple provided for herein shall be sent by email to

24  Ppreovolos@mofo.com, with a hard copy sent by overnight mail to Penelope A. Preovolos,

25  Morrison & Foerster LLP, 425 Market Street, San Francisco, California 94105-2482.

26    3.    The notice recipients and addresses designated in Sections 1 and 2 above

27  may be changed by written notice pursuant to this Section.

28    4.    Upon the request of any of the Parties, the Parties agree to promptly

1  provide each other with copies of objections, requests for exclusion, or other filings received as a

2  result of the Class Notice.

3          I.     **Modification and Amendment**

4          This Agreement may be amended or modified only by a written instrument signed by the

5  Parties' counsel and approved by the Court.

6  Dated: _____, 2011      APPLE INC.

7                                      By: _____

8                                      Title: _____

9  Dated:  July 1st , 2011             NAOTAKA KITAGAWA

10                                     _____
                                       Naotaka Kitagawa

11

12  Dated: _____, 2011     TIMOTHY J. BROAD

13

14                                     _____
                                       Timothy J. Broad

15

16  Dated: _____, 2011     JESSE REISMAN

17

18                                     _____
                                       Jesse Reisman

19

20  Dated: _____, 2011     TRACEY HACKWITH

21                                     _____
                                       Tracy Hackwith

22

23  Dated: _____, 2011     MICHAEL MARTIN

24

25                                     _____
                                       Michael Martin

26

27

28

1 | result of the Class Notice.

2 |     **L.**    **Modification and Amendment**

3 |     This Agreement may be amended or modified only by a written instrument signed by the

4 | Parties' counsel and approved by the Court.

5 | Dated: _____, 2011     APPLE INC.

6 |      By: _____

7 |      Title: _____

8 | Dated: _____, 2011     **NAOTAKA KITAGAWA**

9 |

10 |       _____
      Naotaka Kitagawa

11 |

12 | Dated: _____, 2011     **TIMOTHY J. BROAD**

13 |       _____

14 |       Timothy J. Broad

15 | Dated: _____, 2011     **JESSE REISMAN**

16 |

17 |       _____
      Jesse Reisman

18 |

19 | Dated: _____, 2011     **TRACEY HACKWITH**

20 |       _____
      Tracy Hackwith

21 |

22 | Dated: _____, 2011     **MICHAEL MARTIN**

23 |

24 |       _____
      Michael Martin

25 |

26 |

27 |

28 |

1    provide each other with copies of objections, requests for exclusion, or other filings received as a

2    result of the Class Notice.

3        L.    Modification and Amendment

4        This Agreement may be amended or modified only by a written instrument signed by the

5    Parties' counsel and approved by the Court.

6    Dated: _____, 2011    APPLE INC.

7                                      By: _____

8                                      Title: _____

9    Dated: _____, 2011    NAOTAKA KITAGAWA

10                                     _____
11                                     Naotaka Kitagawa

12   Dated: __7.1_____, 2011      TIMOTHY J. BROAD
13
14                                     _____
                                       Timothy J. Broad
15

16   Dated: _____, 2011    JESSE REISMAN

17                                     _____
18                                     Jesse Reisman

19
20   Dated: _____, 2011    TRACEY HACKWITH

21                                     _____
                                       Tracy Hackwith
22

23   Dated: _____, 2011    MICHAEL MARTIN

24                                     _____
25                                     Michael Martin

26

27

28

1   provide each other with copies of objections, requests for exclusion, or other filings received as a

2   result of the Class Notice.

3       **L.**    **Modification and Amendment**

4       This Agreement may be amended or modified only by a written instrument signed by the

5   Parties' counsel and approved by the Court.

6   Dated: _____, 2011   APPLE INC.

7                         By: _____

8                         Title: _____

9   Dated: _____, 2011   NAOTAKA KITAGAWA

10

11                         Naotaka Kitagawa

12

13   Dated: _____, 2011   TIMOTHY J. BROAD

14                         Timothy J. Broad

15

16   Dated: *07-05*, 2011   JESSE REISMAN

17

18                         Jesse Reisman

19

20   Dated: _____, 2011   TRACEY HACKWITH

21                         Tracy Hackwith

22

23   Dated: _____, 2011   MICHAEL MARTIN

24

25                         Michael Martin

26

27

28

1 | result of the Class Notice.

2 | **L.    Modification and Amendment**

3 | This Agreement may be amended or modified only by a written instrument signed by the

4 | Parties' counsel and approved by the Court.

5 | Dated: _____, 2011    APPLE INC.

6 | By: _____

7 | Title: _____

8 | Dated: _____, 2011    NAOTAKA KITAGAWA

9 |

10 | Naotaka Kitagawa

11 |

12 | Dated: _____, 2011    TIMOTHY J. BROAD

13 | Timothy J. Broad

14 |

15 | Dated: _____, 2011    JESSE REISMAN

16 |

17 | Jesse Reisman

18 |

19 | Dated: 7/5 _____, 2011    TRACEY HACKWITH

20 | Tracy Hackwith

21 |

22 | Dated: _____, 2011    MICHAEL MARTIN

23 |

24 | Michael Martin

25 |

26 |

27 |

28 |

1   APPROVED AS TO FORM:

2   Dated: _____July 1_____ , 2011

3

4   MORRISON & FOERSTER LLP
    PENELOPE A. PREOVOLOS
    ANDREW D. MUHLBACH

    By: _Penelope Preovolos_____

5       Penelope A. Preovolos
        Attorneys for Defendant

6       APPLE COMPUTER, INC.

7

8   Dated: ___July 28___ , 2011

9   HELEN ZELDES
    ZELDES & HAEGGQUIST

    By: _Helen Zeldes_____

10      Helen Zeldes
        Attorney for Plaintiffs and for the Settlement

11      Class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE                    18
Case Nos. C-09-01911JW and C-09-03862JW
sf-2923363

# EXHIBIT A

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11

12   IN RE MAGSAFE POWER ADAPTER          Case No.  C09-01911 JW
     LITIGATION
13
                                          CLASS ACTION
14

15

16   _____

17

18

19                              **EXHIBIT A**

20              **NOTICE OF PENDENCY AND PROPOSED**
                **SETTLEMENT OF CLASS ACTION**
21

22

23

24

25

26

27

28

sf-2981010

1

2                    UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

3
4   **If you are the original owner of certain MacBook or**
5   **MacBook Pro computers and/or you purchased a**
    **standalone 60W or 85W MagSafe power adapter for**
6   **these computers, you could be entitled to benefits**
7              **under a class action settlement.**

8          *The United States District Court, Northern District of California, authorized this notice.  This is*
9                          *not a solicitation from a lawyer.*

10  •   The settlement will provide a cash payment if you are the original owner of certain Apple
        MacBook or MacBook Pro computers or separately purchased an Apple 60W or 85W
11      MagSafe "T" Power Adapter, the Adapter showed signs of Strain Relief Damage, and you
        purchased a Replacement Adapter (defined below) within the first three years following the
12      initial purchase of the computer or Adapter.  The amount of the cash payment will vary; see
13      the chart on page 6 for payment amounts.  You may also be able to obtain a replacement
        adapter at no charge from Apple if your adapter shows signs of Strain Relief Damage now or
14      in the future.

15  •   You must be a United States resident who (1) is the original owner (by purchase or gift) of an
        Apple MacBook or MacBook Pro computer listed on Exhibit 1 hereto and/or (2) purchased a
16      standalone 60W or 85W MagSafe "T" Power Adapter.  For convenience, these computers are
17      referred to as the "Subject Computers" and the adapters shipped with the Subject Computer
        or purchased standalone are referred to as "Adapters."

18
    •   To be eligible for a cash payment, the Replacement Adapter that you purchased because your
19      Adapter showed signs of Strain Relief Damage (defined below) must be an Apple-branded
        60W or 85W MagSafe Power Adapter (referred to as a "Replacement Adapter").  You must
20      have purchased the Replacement Adapter at your own expense within the first three years
        following the initial purchase of the Subject Computer or Adapter.
21

22  •   If your Adapter shows signs of Strain Relief Damage now or in the future and you have not
        yet purchased a Replacement Adapter, you may obtain a replacement adapter from Apple
23      free of charge.  See section 11 below for details and deadlines.

24

25

26

27

28


                                          1

    sf-2981010

1

2 &bull; The Adapter shipped with your Subject Computer or purchased standalone must look like

3 this to be covered by the settlement:

4

5

6

7

8

9

10 &bull; Your legal rights are affected whether you act or don't act.  Please read this notice carefully.

11

12

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a payment. |
| EXCLUDE YOURSELF | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against Apple about the legal claims in this case. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment.  Give up rights. |

19 &bull; These rights and options—**and the deadlines to exercise them**—are explained in this notice.

20 &bull; The Court in charge of this case still has to decide whether to approve the settlement.

21 Payments will be made if the Court approves the settlement and after appeals are resolved.

Please be patient.

22

23

24

25

26

27

28

sf-2981010

1

2

| WHAT THIS NOTICE CONTAINS |
|---|

3

**BASIC INFORMATION** ........................................................... PAGE 4

   1.   Why did I get this notice package?

   2.   What is this lawsuit about?

   3.   Why is this a class action?

   4.   Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ........................................ PAGE 5

   5.   How do I know if I am part of the settlement?

   6.   Are there exceptions to being included?

   7.   If I purchased a Subject Computer but did not purchase a
       Replacement Adapter as described, am I included in the Class?

   8.   I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ......................... PAGES 5-6

   9.   What does the settlement provide?

   10.  What can I get from the settlement?

**HOW YOU GET A REPLACEMENT ADAPTER** ................................. PAGES 6-7

   11.  What can I get if my Adapter shows signs of Strain Relief Damage in the future?

**HOW YOU GET A CASH PAYMENT—**

**SUBMITTING A CLAIM FORM** ........................................... PAGES 7

   12.  How can I get a cash payment?

   13.  When would I get my cash payment?

   14.  What am I giving up to get a cash payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................... PAGES 8

   15.  How do I get out of the settlement?

   16.  If I don't exclude myself, can I sue Apple for the same thing later?

   17.  If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** .................................... PAGE 8-9

   18.  Do I have a lawyer in this case?

   19.  How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................... PAGES 9

   20.  How do I tell the Court that I don't like the settlement?

   21.  What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................... PAGES 9-10

   22.  When and where will the Court decide whether to approve the settlement?

   23.  Do I have to come to the hearing?

   24.  May I speak at the hearing?

**IF YOU DO NOTHING** ................................................ PAGE 10

   25.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** ...................................... PAGE 10-11

   26.  Are there more details about the settlement?

   27.  How do I get more information?

3

1

2                          **BASIC INFORMATION**

3   **1. Why did I get this notice package?**

4   You may be a United States resident (person or entity) who is the original owner of a Subject
5   Computer or who separately purchased an Adapter.

6   The Court ordered this notice to be sent to you because you have a right to know about a
    proposed settlement of a class action lawsuit, and about your options, before the Court
7   decides whether to approve the settlement. If the Court approves it and after any appeals are
    resolved, an administrator will make the payments that the settlement allows.
8

9   This package explains the lawsuit, the settlement, your legal rights, what benefits are
    available, who is eligible for them, and how to get them.

10
    The Court in charge of the case is the United States District Court for the Northern District of
11  California, and the case is known as *In re Magsafe Apple Power Adapter Litigation*, Case No.
    C09-01911-JW. The people who sued are called Plaintiffs, and the company they sued, Apple
12  Inc., is called the Defendant.

13  **2. What is this lawsuit about?**

14  The lawsuit claimed that the Adapter is defective in that it "dangerously frays, sparks and
15  prematurely fails to work," and that Apple engaged in misrepresentations regarding the
    Adapter. Apple denies all allegations and has asserted many defenses. The settlement is not
16  an admission of wrongdoing.

17  **3. Why is this a class action?**

18
    In a class action, one or more people, called Class Representatives (in this case Naotaka
19  Kitagawa, Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin), sue on
    behalf of people who have alleged similar claims. All these people are a Class or Class
20  Members. One court resolves the issues for all Class Members, except for those who choose
    to exclude themselves from the Class. United States District Court Judge James Ware is in
21  charge of this class action.

22  **4. Why is there a settlement?**

23
    The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a
24  settlement. That way, they avoid the cost of a trial, and settlement benefits go to the Class
    Members. The Class Representatives and the attorneys think the settlement is best for the
25  Class Members.

26

27

28

1

2

## WHO IS IN THE SETTLEMENT

3  To see if you are eligible for benefits, you first have to determine whether you are a Class
4  Member.

5  | **5. How do I know if I am part of the settlement?** |

6  Judge Ware has decided that everyone who fits this description is a Class Member:  All
   United States residents who (1) are the original owners of an Apple MacBook or MacBook
7  Pro computer that shipped with a 60W or 85W MagSafe MPM-1 ("T") Power Adapter
   ("Subject Computers") and/or (2) purchased a standalone 60W or 85W MagSafe MPM-1
8  ("T") Power Adapter.  The Settlement Class includes original owners who received their
9  Subject Computer(s) as a gift.

10  | **6. Are there exceptions to being included?** |

11  The Class does *not* include Apple; any entity in which Apple has a controlling interest;
    Apple's directors, officers, and employees; Apple's legal representatives, successors, and
12  assigns; and all persons who validly request exclusion from the Settlement Class.

13  | **7. If I purchased a Subject Computer or Adapter but did not pay for a Replacement**
14  | **Adapter as described, am I included in the Class?** |

15  Yes, because if your Adapter shows signs of Strain Relief Damage now or in the future, you
    may be eligible for a free replacement from Apple.
16

17  | **8. I'm still not sure if I am included.** |

18  If you are still not sure whether you are included, you can visit the website,
    www._____.com, for more information.
19

20  ## THE SETTLEMENT BENEFITS—WHAT YOU GET

21  | **9. What does the settlement provide?** |

22  Apple has agreed to provide a cash payment to Class Members who purchased a Replacement
    Adapter for a Subject Computer or Adapter covered by the settlement and who send in a valid
23  claim form.  The cash payment covers the purchase of a Replacement Adapter within the first
    three years following the initial purchase of the Subject Computer or Adapter, and before
24  [notice date].  The amount of the cash payment will vary depending on when the Replacement
25  Adapter was purchased.

26  You may also be able to obtain a replacement adapter at no charge from Apple if your adapter
    shows signs of Strain Relief Damage now or in the future.
27

28

5

## 10. What cash payment amount can I get under the settlement?

The settlement provides for different cash payments depending on when you purchased a Replacement Adapter.

| Year of Purchase of Replacement Adapter | Cash Payment Amount | Must Show the Following to Receive Cash Payment |
|---|---|---|
| During the first year following the initial purchase of the Subject Computer or Adapter | Amount paid for the Replacement Adapter (excluding sales tax and shipping/handling fees) not to exceed $79.00. | 1. Proof of purchase of Replacement Adapter; and<br>2. Valid claim form. |
| During the second year following the initial purchase of the Subject Computer or Adapter | $50.00 | 1. Proof of purchase of Replacement Adapter; and<br>2. Valid claim form. |
| During the third year following the initial purchase of the Subject Computer or Adapter | $35.00 | 1. Proof of purchase of Replacement Adapter; and<br>2. Valid claim form. |

**There is a limit of three refunds per Subject Computer.**

### HOW YOU GET A REPLACEMENT ADAPTER

## 11. What can I get if my Adapter shows signs of Strain Relief Damage in the future?

If your Adapter shows signs of Strain Relief Damage now or in the future, you may claim a replacement under Apple's Adapter Replacement Program by taking your Adapter and computer to an Apple Retail Store or Apple Authorized Service Provider or contacting AppleCare.

1

2   Strain Relief Damage means fraying, melting, straining, sparking, weakening, discoloration,
    bubbling, overheating and/or separation of the Adapter's strain reliefs.  For more information
3   regarding Strain Relief Damage or Apple's Adapter Replacement Program, see
4   http://support.apple.com/kb/TS1713.

5   For Adapters shipped with a Subject Computer, you will have three years from the date of
    purchase of the Subject Computer or 180 days from the Notice Date, whichever is later, to
6   claim a replacement adapter.  For Adapters purchased separately, you will have three years
    from the date of purchase of the Adapter or 180 days from the Notice Date, whichever is later,
7   to claim a replacement.  **If you do not claim a replacement adapter within these time
    periods, you will lose your right to obtain a replacement.**  Apple will continue the Adapter
8   Replacement Program until December 31, 2012; Apple will have no obligation to honor
9   adapter replacement claims made after December 31, 2012.

10              **HOW YOU GET A CASH PAYMENT—SUBMITTING A CLAIM FORM**

11   | **12. How can I get a cash payment?** |

12   To qualify for a cash payment, you must send in a claim form.  A claim form, including
13   instructions on how to make a claim, is attached to this Notice.  You can also get a claim form
     on the Internet at www._____.com or by calling 1-***-***-****.
14
     You must read the instructions carefully, fill out the form as directed in the instructions,
15   include all the documents the form asks for, and sign the claim form under penalty of perjury.
     You must mail the claim form postmarked on or before [date 120 days from the Notice Date].
16   **If you fail to return your claim form by the required date, your claim will be rejected,
     and you will be deemed to have waived all rights to receive any cash benefit under this
17   settlement.**

18
     Follow all the instructions on the claim form.
19

20   | **13. When would I get my cash payment?** |

21   The Court will hold a hearing on _____ at ____ a.m./p.m., to decide whether to
     approve the settlement.  If Judge Ware approves the settlement, there may be appeals.  The
22   appeal process can take time, perhaps more than a year.  Please be patient.

23   | **14. What am I giving up to get a cash payment or stay in the Class?** |

24   Unless you choose to exclude yourself, you will remain in the Class.  That means that you are
     eligible for a cash payment but can't sue, continue to sue, or be part of any other lawsuit
25   against Apple about the legal issues in this case.  It also means that all of the Court's orders
26   will apply to you and legally bind you.  If you sign the claim form, you will agree to a
     "Release of Claims," included with the claim form, which describes exactly the legal claims
27   that you are giving up.

28

sf-2981010

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Apple, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

### 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *In re Magsafe Apple Power Adapter Litigation*, Case No. C09-01911-JW. Be sure to include your name, address, telephone number, the serial number of your Subject Computer, and your signature. You must mail your exclusion request postmarked no later than ___________, to:

**[Claims Administrator]**

You can't exclude yourself on the phone or by fax or e-mail. If you ask to be excluded, you will not receive any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Apple in the future about the legal issues in this case.

### 16. If I don't exclude myself, can I sue Apple for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Apple for the claims that this settlement resolves. You must exclude yourself from *this* Class to pursue your own lawsuit. Remember, your exclusion must be postmarked on or before ______________.

### 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you will not lose any right you may have to sue, continue to sue, or be part of a different lawsuit against Apple about the legal issues in this case.

## THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

The Class is represented in this case by Helen I. Zeldes of Zeldes & Haeggquist, LLP in San Diego, California and Steven A. Skalet of Mehri & Skalet, PLLC inWashington, DC. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 19 How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses of up to $3.1 million, and service awards to Plaintiffs in the amount of $5,000 each (total not to exceed $30,000). Apple

1

2    will separately pay the fees, service awards, and expenses that the Court awards. These

3    amounts will not come out of any funds for payments to Class Members. Apple has agreed
not to oppose these fees, service awards, and expenses. Apple will also separately pay the

4    costs to administer the settlement.

5                              **OBJECTING TO THE SETTLEMENT**

6    You can tell the Court that you don't agree with the settlement or some part of it.

7    **20. How do I tell the Court that I don't like the settlement?**

8    If you're a Class Member, you can object to the settlement if you don't like any part of it.

9    You can give reasons why you think the Court should not approve it. The Court will consider
your views. To object, you must send a letter saying that you object to the settlement in *In re*

10   *Magsafe Apple Power Adapter Litigation*, Case No. C09-01911-JW. Be sure to include your
name, address, telephone number, the serial number of your Subject Computer, your

11   signature, and the reasons you object to the settlement. If you have objected to other class

12   action settlements on more than 3 occasions, you must list all cases in which you have filed an
objection. The objection and any supporting papers must be mailed to and actually received

13   by all of the following three addressees no later than _____, 2011:

14

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court United States District Court for the Northern District of California San Jose Division 280 South 1st Street San Jose, CA 95113 | Helen I. Zeldes Zeldes & Haeggquist, LLP 625 Broadway, Suite 906 San Diego, CA 92101 | Penelope A. Preovolos Morrison & Foerster LLP 425 Market Street San Francisco, CA 94105-2482 |

15

16

17

18

19

20   **21. What's the difference between objecting and excluding?**

21   Objecting is simply telling the Court that you don't like something about the settlement. You

22   can object only if you stay in the Class. Excluding yourself is telling the Court that you don't
want to be part of the Class. If you exclude yourself, you have no basis to object, because the

23   case no longer affects you.

24                         **THE COURT'S FAIRNESS HEARING**

25   The Court will hold a hearing to decide whether to approve the settlement. You may attend,
and you may ask to speak, but you don't have to.

26   **22. When and where will the Court decide whether to approve the settlement?**

27

28   The Court will hold a Fairness Hearing at ____ *.m. on _____, 2011, at the United
States District Court for the Northern District of California, San Jose Division, Courtroom 8
(4th Floor) located at 280 South 1st Street, San Jose, California, 95113. At this hearing the

9

sf-2981010

1

2   Court will consider whether the settlement is fair, reasonable, and adequate. If there are
objections, the Court will consider them. Judge Ware will listen to people who have asked to
3   speak at the hearing. The Court may also consider how much to award Class Counsel. After
the hearing, the Court will decide whether to approve the settlement. We do not know how
4   long these decisions will take.

5
### 23. Do I have to come to the hearing?
6

7   No. Class Counsel will answer questions Judge Ware may have. But, you are welcome to
come at your own expense. If you send an objection, you don't have to come to Court to talk
8   about it. As long as your written objection was received on time, the Court will consider it.
You may also pay your own lawyer to attend, but it's not necessary. Finally, you may seek to
9   intervene in the action, but you need not do so.

10  ### 24. May I speak at the hearing?

11  You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must
send a letter saying that you intend to appear and speak at the Fairness Hearing in "*In re*
12  *Magsafe Apple Power Adapter Litigation*, Case No. C09-01911-JW." Be sure to include the
13  case name and number, your name, address, telephone number, and your signature. Your
letter of intent to appear and speak must be received by the Clerk of the Court, Class Counsel,
14  and Defense Counsel, at the three addresses in question 20, no later than _____,
**2011**. You cannot speak at the hearing if you excluded yourself.
15

16                          **IF YOU DO NOTHING**

17  ### 25. What happens if I do nothing at all?

18  If you do nothing, you will be part of the settlement class. You will not receive a cash
payment from the settlement unless you file a valid and timely Claim Form. You won't be
19  able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Apple
about the legal issues in this case.
20

21                     **GETTING MORE INFORMATION**

22  ### 26. Are there more details about the settlement?

23  This notice summarizes the proposed settlement. More details are in a Settlement Agreement.
Copies of the Settlement Agreement and the pleadings and other documents relating to the
24  case are on file at the United States District Court for the Northern District of California, San
Jose Division, and may be examined and copied at any time during regular office hours at the
25  Office of the Clerk, 280 South 1st Street, San Jose, California, 95113.

26
### 27. How do I get more information?
27

28  You can visit the settlement website at www._____.com, where you will find
answers to common questions about the settlement, a claim form, plus other information.
You may also write to Helen I. Zeldes, Zeldes & Haeggquist, LLP, 625 Broadway, Suite 906,

                                    10

1

2   San Diego, CA 92101, 619-342-8000 or Steven A. Skalet, Mehri & Skalet, PLLC, 1250
    Connecticut Ave. Suite 300, Washington DC, 20036, 202-822-5100.  **Questions may not be**
3   **directed to the Court.**

4                                                              Date: _____, 2011.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sf-2981010

**EXHIBIT B**

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12

IN RE MAGSAFE POWER ADAPTER          Case No.  C09-01911 JW
13  LITIGATION

14                                   CLASS ACTION

15

16

17

18                      **EXHIBIT B**

19           **SUMMARY NOTICE OF SETTLEMENT**

20

21

22

23

24

25

26

27

28

sf-2981008

1

<u>LEGAL NOTICE</u>

# If you are the original owner of certain MacBook or MacBook Pro computers and/or you purchased a standalone 60W or 85W MagSafe power adapter for these computers, you could be entitled to benefits under a class action settlement.

The settlement will provide a cash payment if you are the original owner (by purchase or gift) of certain Apple MacBook or MacBook Pro computer models ("Subject Computer") or separately purchased an Apple 60W or 85W MagSafe "T" Power Adapter ("Adapter"), your Adapter showed signs of Strain Relief Damage, and you purchased an Adapter as a replacement ("Replacement Adapter") within three years of purchasing the Subject Computer or Adapter. You may also be able to obtain a replacement adapter at no charge from Apple if your Adapter shows signs of Strain Relief Damage now or in the future. The United States District Court for the Northern District of California authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

WHO'S AFFECTED?

You're a "Class Member" if you are a United States resident who purchased in the United States an Apple MacBook or MacBook Pro computer or an Apple 60W or 85W MagSafe MPM-1 ("T") Power Adapter.

WHAT'S THIS ABOUT?

The lawsuit claimed that the MagSafe "T" Adapter is defective in that it allegedly "dangerously frays, sparks and prematurely fails to work," and that Apple engaged in misrepresentations regarding the Adapter. Apple denies all allegations and has asserted many defenses. Apple is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

WHAT CAN YOU GET FROM THE SETTLEMENT?

Apple has agreed to provide a cash payment to Class Members who purchased a Replacement Adapter for a Subject Computer or Adapter covered by the settlement and who send in a valid claim

form. The settlement provides for different cash payments depending on when you purchased a Replacement Adapter.

| YEAR REPLACEMENT ADAPTER PURCHASED | CASH PAYMENT AMOUNT |
|---|---|
| YEAR 1 | THE ACTUAL AMOUNT PAID FOR THE REPLACEMENT ADAPTER (EXCLUDING TAX & SHIPPING) UP TO $79 |
| YEAR 2 | $50 |
| YEAR 3 | $35 |

There is a limit of three refunds per Subject Computer.

You may also be able to obtain a replacement adapter at no charge from Apple if your Adapter shows signs of Strain Relief Damage now or in the future.

HOW DO YOU GET A PAYMENT?

A detailed notice and claim form package contains everything you need. Just call 1-***-***-**** or go to www._____.com to get one.

HOW DO YOU GET A REPLACEMENT ADAPTER?

If your Adapter shows signs of Strain Relief Damage now or in the future, you may claim a replacement under Apple's Adapter Replacement Program by taking your Adapter and computer to an Apple Retail Store or Apple Authorized Service Provider or contacting AppleCare. Strain Relief Damage means fraying, melting, straining, sparking, weakening, discoloration, bubbling,

sf-2981008

1  overheating and/or separation of the Adapter's
   strain reliefs.

2

   **IMPORTANT DEADLINES**

3

   To claim a cash payment, you must mail the claim

4  form postmarked on or before [date 120 days from
   the Notice Date].  To obtain a Replacement

5  Adapter, you must contact Apple within three years
   from the date you purchased a Subject Computer or

6  standalone Adapter, or [180 days from the Notice
   Date], whichever is later; no claim form is required.

7  **If you do not claim a cash payment or
   Replacement Adapter within these time periods,**

8  **you will lose your right to obtain these benefits.**

9  **WHAT ARE YOUR OPTIONS?**

   If you don't want to make a claim and you don't

10 want to be legally bound by the settlement, you
   must postmark your request to exclude yourself by

11 _____, 2011, or you won't be able to sue, or
   continue to sue, Apple about the legal claims in this

12 case.  If you exclude yourself, you will not be
   eligible to receive a payment from this settlement.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

If you stay in the Class, you may object to the
settlement.  Objections must be received by
_____, 201_.  The detailed notice describes how
to exclude yourself or object.  The Court will hold a
hearing in this case (*In re MagSafe Power Adapter
Litigation,* Case No. C09-0991 JW) on _____,
201_, at _____ *.m. to consider whether to approve
(1) the settlement and (2) attorneys' fees and
expenses of up to $3.1 million and service
payments to Plaintiffs of $5,000 each (not to exceed
$30,000).  You may appear at the hearing, but you
don't have to.  To obtain a full notice and claim
form,  go to www._____.com or call toll free
1-***-***-****  For more details, go to
www._____.com or write to Helen
Zeldes, Esq., **Zeldes & Haeggquist, LLP, 625
Broadway, Suite 906, San Diego, CA 92101, 619-
342-8000.**

2

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE POWER ADAPTER LITIGATION | Case No.  C09-01911 JW<br><br>CLASS ACTION |

## EXHIBIT C

### POSTCARD NOTICE OF SETTLEMENT

1  ## Notice of Apple Adapter Settlement For Certain
   ## MacBook and MacBook Pro Computers and For
2  ## Standalone 60W or 85W MagSafe Power Adapters

3  **Attention:** The settlement will provide a cash payment if you are the original owner of
   certain Apple MacBook or MacBook Pro computer models ("Subject Computer") or
4  separately purchased an Apple 60W or 85W MagSafe "T" Power Adapter ("Adapter"), your
   Adapter showed signs of Strain Relief Damage, and you purchased an Adapter as a
5  replacement ("Replacement Adapter") within three years of purchasing the Subject Computer
   or Adapter. You may also be able to obtain a replacement adapter at no charge from Apple if
6  your Adapter shows signs of Strain Relief Damage in the future. The United States District
   Court for the Northern District of California authorized this notice.

7

   **To learn more about the settlement (including whether your computer is a covered by**
8  **the settlement), make a claim or exclude yourself from the settlement, call 1-***-***-**
   **** or go to www._____.com.**

9

   **The Settlement:** The settlement will provide a cash payment if you are the original owner
10 (by purchase or gift) of certain Apple MacBook or MacBook Pro computers ("Subject
   Computer") or separately purchased an Apple 60W or 85W MagSafe MPM-1 "T") Power
11 Adapter ("Adapter"), the Adapter showed signs of Strain Relief Damage, and you purchased a
   Replacement Adapter at your own expense within the first three years following the initial
12 purchase of the Subject Computer or Adapter. If the court approves the settlement, you may
   be entitled to a cash payment in the following amounts depending on whether you purchased
13 your Replacement Adapter during the first, second or third year following the initial retail
   purchase of the Subject Computer or Adapter: (a) first year, the actual amount you paid
14 (excluding taxes and shipping/handling fees) up to a maximum of $79.00; (b) second year
   $50; (c) third year $35. There is a limit of three refunds per Subject Computer. You may also
15 be able to obtain a Replacement Adapter at no charge from Apple if your Adapter shows signs
   of Strain Relief Damage now or in the future.

16

   **Your Rights:** If you qualify, you may send in a claim form to ask for payment, or you can
17 exclude yourself from the settlement or object to the settlement. To claim a cash payment,
   you must mail the claim form postmarked on or before [date 120 days from the Notice Date].
18 To claim a Replacement Adapter, you must contact Apple within three years from the date
   you purchased a Subject Computer or standalone Adapter, or [180 days from the Notice
19 Date], whichever is later. If you don't want a payment and you don't want to be legally
   bound by the settlement, your opt-out request must be postmarked by _____, 20__. If you
20 stay in the Class, any objection you have to the settlement must be received by _____.
   Call 1-***-***-**** or go to www._____.com to get the information you need to make a
21 claim, exclude yourself or object. The Court will hold a hearing in this case (*In re Magsafe
   Apple Power Adapter Litigation*, Case No. C09-01911-JW) on _____, 20__, at ____ *.m.
22 to consider whether to approve (1) the settlement and (2) attorneys' fees and expenses of up to
   $3.1 million and a service award to each named plaintiff of $5,000. You may appear at the
23 hearing, but you don't have to. To obtain a full notice and claim form, go to
   www._____.com or call toll free 1-***-***-****. For more details, go to
24 www._____.com or write to Helen Zeldes, Esq., Zeldes & Haeggquist, LLP, 625
   Broadway, Suite 906, San Diego, CA 92101, 619-342-8000.

25

26

27

28

---

1

sf-2981013

**EXHIBIT D**

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   IN RE MAGSAFE POWER ADAPTER          Case No.  C09-01911 JW
     LITIGATION
13                                         CLASS ACTION

14

15

16   _____

17

18                              EXHIBIT D

19                            CLAIM FORM

20

21

22

23

24

25

26

27

28

sf-2981009

**Apple MagSafe Adapter Claim Form (MacBook and MacBook Pro "T" Adapters)**

**(Including Instructions, Claim Form, Release and Declaration)**

**INSTRUCTIONS**

**READ THESE INSTRUCTIONS CAREFULLY. IF YOU FAIL TO FOLLOW THESE INSTRUCTIONS, YOU MAY LOSE CERTAIN BENEFITS TO WHICH YOU MIGHT OTHERWISE BE ENTITLED.**

1. **Summary of Key Provisions**

The settlement will provide a cash payment if you are the original owner of an Apple MacBook or MacBook Pro computer (certain models) or separately purchased an Apple 60W or 85W MagSafe "T" Power Adapter, the Adapter showed signs of Strain Relief Damage, and you purchased a Replacement Adapter (defined below) within the first three years following the initial purchase of the computer or Adapter. The amount of the cash payment will vary. You may also be able to obtain a replacement adapter at no charge from Apple if your Adapter shows signs of Strain Relief Damage in the future. Please refer to the full Notice for an explanation and chart of the cash payment amounts.

To receive a cash payment under the settlement, you must fill out and return the attached Claim Form ("Claim Form") postmarked on or before the dates explained in Part 5 below. If you fail to return a valid Claim Form by the deadline, your claim will be rejected and you will lose all rights to these benefits.

Do not use this Claim Form to request a replacement adapter. Please refer to the full Notice for how to request a replacement adapter.

Unless you request exclusion from the class as explained in the Class Notice, you will be bound by the Settlement Agreement and Release and the Final Judgment even if you do not return the Claim Form.

If you have any questions while completing the Claim Form, please go to www._____.

2. **Who Is Eligible to Claim A Cash Refund Under the Settlement**

To qualify, you must be a United States resident who (1) is the original owner of an Apple MacBook or MacBook Pro computer listed on Exhibit 1 hereto and/or (2) purchased a standalone 60W or 85W MagSafe MPM-1 ("T") Power Adapter. For convenience, these computers are referred to as the "Subject Computers" and the adapters shipped with the Subject Computer or purchased standalone are referred to as "Adapters." You must also have purchased an Apple-branded 60W or 85W MagSafe Power Adapter (referred to as a "Replacement Adapter") as a replacement because your Adapter showed signs of Strain Relief Damage. You must have purchased the Replacement Adapter at your own expense within the first three years following the initial purchase of the Subject Computer or Adapter.

3. **One Claim Form Per Subject Computer or Adapter.**

If you purchased more than one Subject Computer or Adapter, experienced an Adapter failure and paid for a Replacement Adapter for more than one Subject Computer or Adapter, and you wish to make claims for multiple Subject Computers or Adapters, you must fill out a separate Claim Form for each Subject Computer. If you purchased more than one Replacement Adapter for the same Subject Computer or Adapter, you must also fill out a separate Claim

1    Form for each Replacement Adapter purchase.  (You may claim refunds for no more than
     three Replacement Adapters per Subject Computer.)  You may print multiple copies of this
2    claim form, or make photocopies, if necessary.

3    **4.   How To Make A Claim for a Cash Refund**

4    To make a claim, complete and submit this Claim Form, along with the required
     documentation, in compliance with the instructions below.  Send the original of the signed
5    Claim Form and a copy of the required documentation to [Claim Administrator Address].
     Please keep copies for your records.

6

7            **Proof of Purchase**

8            You must attach a Proof of Purchase of your Replacement Adapter to your Claim
             Form.  "Proof of Purchase" means an invoice, receipt or other document (such as a
9            credit card statement or cancelled check) evidencing that the product you purchased
             was a Replacement Adapter, the price paid, date of purchase, and the name and
10           address of the entity from whom the Replacement Adapter was purchased.  If the
             Proof of Purchase does not specifically identify the purchase of a Replacement
11           Adapter or the price paid, you may submit a receipt, bank or credit card statement, or
             Apple email receipt, showing a purchase from any Apple store (online or in-person) in
12           the amount of $79 or greater, and must declare in the Claim Form that the product
             purchased was a Replacement Adapter, state the price paid (if not shown in the Proof
13           of Purchase), and highlight the item in the Proof of Purchase that includes the
             Replacement Adapter.

14
     **5.   Claims Deadlines**
15
     You must mail the claim form postmarked on or before [notice date plus 120 days].  **If you**
16   **fail to return your claim form by the required date, your claim will be rejected, and you**
     **will be deemed to have waived all rights to receive a cash payment under this settlement.**
17
                     **Remember:   To be valid, your Claim Form must be**
18                   **completely and accurately filled out, signed and dated, and**
                     **must include all requested information, including Proof of**
19                   **Purchase.  If your Claim Form is incomplete, untimely,**
                     **illegible, or contains false information, it may be rejected by**
20                   **the Claims Administrator.**

21

22

23

24

25

26

27

28

1
<center>**CLAIM FORM**</center>
<center>(Please Print or Type)</center>
2

3     **A.     REQUIRED INFORMATION FOR ALL CLAIMANTS**

4     **You must complete every part of this Section A (except that providing your e-mail**
      **address is optional).  The information you provide will be treated as confidential.  Any**
5     **compensation that Apple provides in response to your claim will be issued to the name**
      **and street address you provide.  Please print clearly in blue or black ink.**
6
      Name (Full name
7     required):              (First)              (Last)
                             _____

8     Address:             _____

9     City:                _____

10    State:               _____

11    Zip Code:            _____

12    E-mail (optional):   _____

13

14    ►Subject Computer Serial Number: ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

15        (Location of the serial number varies by computer model.  Go to [settlement website] to
              determine the location of the serial number on your model.)
16
17    ►Date Of Initial Retail Purchase of Your Subject Computer:  _____, 20__

18    ►Date Replacement Adapter Purchased (if not shown on proof of purchase):
      _____, 20_____
19

20    ►Entity From Whom Replacement Adapter Purchased (if not shown on Proof of Purchase):

21    _____

22
23    ►Amount Paid for Replacement Adapter, excluding tax and shipping/handling fees (if not
      shown on Proof of Purchase):  $_____

24

25

26

27

28

1     **B.**    **DECLARATION UNDER PENALTY OF PERJURY FOR CLAIMANTS WHOSE PROOF OF PURCHASE DOES NOT SPECIFICALLY IDENTIFY PURCHASE OF AN APPLE PORTABLE POWER ADAPTER**

2

3

If your Proof of Purchase does not specifically identify the purchase of an Apple 60W or 85W
4  MagSafe Power Adapter, you **must** check the box below and sign and date under the box:

5     ☐    I declare under penalty of perjury that the product circled or highlighted in the
enclosed invoice, receipt or other document was for a Replacement Adapter for
6           the Subject Computer whose serial number I have filled in above.

7  Signed: _____   Dated: _____

8

9     **C.**    **CERTIFICATION**

10     **Please read, date, and sign the statement below [required for all claims].**

11  By signing and dating this form below, I acknowledge that I have read the Release attached to
this Claim Form, and understand that the Settlement Agreement and Release and the Final
12  Judgment entered in this action will be binding on me, my agents and heirs, and any other
person or entity with authority to act on my behalf.
13

I state under penalty of perjury that the information provided above is true and correct to the
14  best of my knowledge and belief.

15

16

17  _____    _____

18  **SIGNED**               **DATED**

19

20                  **REMINDER**

21  **Remember to attach your Proof of Purchase to the Claim Form.  If you don't return
your claim form postmarked on or before [notice date plus 120 days], your claim for
22  payment will be rejected.**

23

24

25

26

27

28

1

## **RELEASE**

2

If the Court approves the proposed settlement, it will enter a Judgment that will dismiss the
3    Actions on the merits and with prejudice as to all Settlement Class Members.  All Class
Members who do not validly and timely request to be excluded from the proposed settlement
4    will be forever barred from prosecuting their own lawsuits and shall be deemed, on behalf of
themselves and their heirs, assigns, and successors, to have fully released and forever
5    discharged the "Released Persons" (as defined below) from all "Released Claims" (as defined
below).
6
"Released Persons" shall mean Apple, and, whether or not specifically named herein, each of
7    its past or present directors, officers, employees, agents, insurers, shareholders, attorneys,
advisors, consultants, representatives, partners, affiliates, parents, subsidiaries, joint venturers,
8    independent contractors, wholesalers, resellers, distributors, retailers, related companies and
divisions, and each of their predecessors, successors, heirs, and assigns.
9
"Released Claims" shall mean any and all liabilities, claims, cross-claims, causes of action,
10    rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees,
losses, expenses, obligations, or demands, of any kind whatsoever, whether known or
11    unknown, existing or potential, or suspected or unsuspected, whether raised by claim,
counterclaim, setoff, or otherwise, including any known or unknown claims, which they have
12    or may claim now or in the future to have, that were or could have been alleged or asserted
against any of the Released Persons in the *In re Magsafe Apple Power Adapter Litigation*,
13    Case No. C09-01911, including but not limited to any claims that the Adapters are defective
in that they dangerously fray, spark, prematurely fail to work, catch fire, overheat or melt, and
14    any alleged misrepresentations or failures to disclose with respect to the Adapters ("Released
Claims").  Personal injury and property damage claims (other than damage to the Adapter
15    itself, including the cords that come with the Adapter) are excluded from the release.

16    By operation of the Final Judgment, all Settlement Class Members shall be deemed to have
waived any and all provisions, rights, and benefits conferred by § 1542 of the California Civil
17    Code or any comparable statutory or common law provision of any other jurisdiction with
respect to the Released Claims.  Section 1542 reads as follows:
18
Certain Claims Not Affected By General Release:  A general
19                   release does not extend to claims which the creditor does not
know or suspect to exist in his or her favor at the time of
20                   executing the release, which if known by him or her must have
materially affected his settlement with the debtor.
21
Although the releases granted under the Agreement are not general releases, the Settlement
22    Class Members nonetheless acknowledge that they are waiving the protections of § 1542 and
of any comparable statutory or common law provision of any other jurisdiction.
23

24

25

26

27

28

# EXHIBIT E

1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

12 IN RE MAGSAFE POWER ADAPTER      Case No.  C09-01911 JW
LITIGATION

13

14                               CLASS ACTION

15

16

17

18

19                           **EXHIBIT E**

20       **[PROPOSED] ORDER GRANTING CONDITIONAL CERTIFICATION**
**OF A SETTLEMENT CLASS, APPROVAL OF FORMS AND METHODS**

21          **OF NOTICE, AND PRELIMINARY APPROVAL OF**
**SETTLEMENT AGREEMENT AND RELEASE**

22

23

24

25

26

27

28

sf-2981011

1   WHEREAS, this Court has reviewed the Settlement Agreement and Release

2 ("Agreement") entered into by and among defendant Apple Inc. ("Apple"), Naotaka

3 Kitagawa, Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin, as

4 individuals and as "Class Representatives" (collectively the "Parties" in the above-

5 referenced "Action"), together with all exhibits thereto, the record in this case, and the

6 arguments of counsel;

7   WHEREAS, this Court preliminarily finds, for the purposes of settlement only,

8 that the class alleged in the Action meets all the prerequisites of Federal Rules of Civil

9 Procedure Rule 23 for class certification, including numerosity, commonality, typicality,

10 ascertainability, predominance of common issues, superiority, and that the Class

11 Representatives and Class Counsel are adequate representatives of the Settlement Class;

12   IT IS HEREBY ORDERED AS FOLLOWS:

13   1. All terms and definitions used herein have the same meanings as set forth in

14 the Agreement.

15   2. The proposed settlement set forth in the Agreement is hereby preliminarily

16 approved as being fair, reasonable and adequate such that notice thereof should be given

17 to members of the Settlement Class (as defined in the following paragraph).

18   3. The Action is provisionally certified as a class action, for the purposes of

19 settlement only, pursuant to Rule 23(b)(3), which class is defined as follows:

20    All United States residents who (1) are the original owners of an
      Apple MacBook or MacBook Pro computer that shipped with a
21    60W or 85W MagSafe MPM-1 ("T") Power Adapter ("Subject
      Computers") and/or (2) purchased a standalone 60W or 85W
22    MagSafe MPM-1 ("T") Power Adapter.  The Settlement Class
      includes original owners who received their Subject
23    Computer(s) as a gift.  The Settlement Class excludes Apple;
      any entity in which Apple has a controlling interest; Apple's
24    directors, officers, and employees; Apple's legal
      representatives, successors, and assigns; and all persons who
25    validly request exclusion from the Settlement Class.

26   4. Class Counsel and the Class Representatives are hereby found to be and are

27 therefore appointed as adequate representatives of the Settlement Class: Helen I. Zeldes

28 of Zeldes & Haeggquist, LLP, 625 Broadway, Suite 906, San Diego, CA 92101, and

<center>1</center>

sf-2981011

1    Steven A. Skalet of Mehri & Skalet, PLLC, 1250 Connecticut Avenue NW, Suite 300,

2    Washington, DC 20036, are hereby appointed as Class Counsel, and Naotaka Kitagawa,

3    Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin are hereby

4    appointed as Class Representatives.

5        5.    Certification of the Settlement Class shall be solely for settlement purposes

6    and without prejudice to the Parties in the event that the Agreement is not finally

7    approved by this Court or otherwise does not take effect.  Certification of the Settlement

8    Class shall be vacated and shall have no effect in the event that the Agreement is not

9    finally approved by this Court or otherwise does not take effect.

10        6.    The Notice of Pendency and Proposed Settlement of Class Action ("Class

11   Notice"); the Summary Notice of Settlement ("Summary Notice"); the Postcard Notice of

12   Settlement ("Postcard Notice"), and the Claim Form, Instructions, and Release ("Claim

13   Form"); which are attached to the Agreement as Exhibits A-D, respectively, are hereby

14   approved as to form.

15        7.    A copy of the Class Notice, together with the Claim Form, shall be posted

16   and available for download on a settlement website, www._____.com (the

17   "Settlement Website") and shall be mailed at no charge to Settlement Class Members

18   who call a toll-free number to be established at Apple's expense ("Toll-Free Number").

19   Apple shall use best efforts to include the term "adapter" in the domain name of the

20   settlement website.  This information shall remain available on the Internet until the last

21   day of the Claims Period.

22        8.    Apple shall send via email an electronic copy of the Summary Notice to each

23   Settlement Class Member for whom Apple has an email address in its warranty

24   registration database.

25        9.    Apple shall mail the Settlement Postcard to all Class Members for whom e-

26   mailed notice is returned as undeliverable.

27        10.   A copy of the Summary Notice shall be published by Apple once in *USA*

28   *Today*, a newspaper of national circulation, once in *Wired* magazine, and once on a

2

1   different date in *Macworld*. The notice shall not be less than 1/4 of a page in size. The
2   Summary Notice shall include the address of the Settlement Website and the Toll-Free
3   Number.

4       11.   The Court finds that the forms of notice to the Settlement Class regarding
5   the pendency of the Action and of this settlement and Class Counsel's fee and expense
6   application and application for incentive award set forth above, and the methods of
7   dissemination to members of the Settlement Class in accordance with the terms of this
8   Order, constitute the best notice practicable under the circumstances and constitute valid,
9   due, and sufficient notice to all members of the Settlement Class, complying fully with
10  the requirements of Rule 23(c)(2)(B) and the United States Constitution.

11      12.   Any member of the Settlement Class who does not, in connection with the
12  settlement notices, file a valid and timely request for exclusion will be bound by the Final
13  Judgment dismissing the Action on the merits and with prejudice.

14      13.   A hearing (the "Final Hearing") shall be held by the Court on _____,
15  201_, at _____, to consider and determine whether the requirements for certification of
16  the Settlement Class have been met and whether the proposed settlement of the Action on
17  the terms set forth in the Agreement should be approved as fair, reasonable, adequate,
18  and in the best interests of the Settlement Class Members; whether Class Counsel's fee
19  and expense application and application for service award, included as part of the
20  settlement, should be approved; and whether the Final Judgment approving the settlement
21  and dismissing the Action on the merits and with prejudice against the Class
22  Representatives and all Settlement Class Members should be entered.

23      14.   The Final Hearing may, from time to time and without further notice to the
24  Settlement Class (except those who have filed timely and valid objections and requested
25  to speak at the fairness hearing), be continued or adjourned by Order of the Court.

26      15.   Any Settlement Class Member who seeks to be excluded from the
27  Settlement Class must send a request by first class mail, postmarked on or before
28  _____, 201_, to _____.

3

1    16. Objections by any Settlement Class Member to:  (A) the certification of the

2 Settlement Class and the proposed settlement contained in the Agreement and described

3 in the Class Notice and Summary Notice; (B) the payment of fees and expenses to Class

4 Counsel or service awards to Plaintiff; and/or (C) entry of the Final Judgment, shall be

5 heard and any papers submitted in support of said objections shall be considered by the

6 Court at the Final Hearing only if, on or before _____, 201_, such objector files

7 with the Court a notice of his, her or its objections, submits documentary proof that he,

8 she or it is a member of the Settlement Class, states the basis for such objections, and

9 serves copies of the foregoing and all other papers in support of such objections on

10 counsel for the Parties identified in the Class Notice.  In order to be considered for

11 hearing, all objections must be actually received by the counsel identified in the Class

12 Notice on or before _____, 201_.

13    17. No later than _____, 2011, the Parties shall file all papers in

14 support of the application for final approval of the settlement, the application for payment

15 of attorneys' fees and expenses, and/or any papers in response to any valid and timely

16 objections with the Court, and shall serve copies of such papers upon each other and upon

17 any objectors who have complied with the provisions of paragraph 16 of this Order.

18    18. Settlement Class Members who wish to claim a cash payment and whose

19 Adapter showed signs of Strain Relief Damage prior to the Notice Date must mail their

20 Claim Form and supporting documentation postmarked within 120 days from the Notice

21 Date.  Settlement Class Members whose Adapter shows signs of Strain Relief Damage

22 now or in the future may obtain a replacement under the Adapter Replacement Program

23 described in Section II.F. of the Agreement.

24 //

25 //

26 //

27 //

28 //

<center>4</center>

1    19.    Counsel for the Parties are hereby authorized to utilize all reasonable

2  procedures in connection with the administration of the settlement which are not

3  materially inconsistent with either this Order or the terms of the Agreement.

4

5  Dated: _____, 2011          By:  Order of the U.S. District Court
                                                for the Northern District of California

6
                                               _____
7                                              The Honorable James Ware
                                               DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

sf-2981011

# EXHIBIT F

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12   IN RE MAGSAFE POWER ADAPTER          Case No.  C09-01911 JW
     LITIGATION
13                                         CLASS ACTION

14

15

16

17

18

19                          **EXHIBIT F**

20   **[PROPOSED] FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT
     AND DISMISSING CLAIMS OF SETTLEMENT CLASS MEMBERS WITH
21                          PREJUDICE**

22

23

24

25

26

27

28

---

1    This matter came on for hearing on _____, 201_ at _____.  The Court has

2    considered the Settlement Agreement and Release ("Agreement"), oral and/or written

3    objections and comments received regarding the proposed settlement, the record in the

4    Action and the arguments and authorities of counsel.  Good cause appearing,

5        IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

6        1.      The Court, for purposes of this Final Judgment and Order Approving

7    Settlement and Dismissing Claims of Settlement Class Members With Prejudice

8    ("Judgment"), adopts the terms and definitions set forth in the Agreement.

9        2.      The Court has jurisdiction over the subject matter of the Action, the Class

10   Representatives, the Settlement Class Members, and defendant Apple Inc. ("Apple").

11       3.      The Court finds that the notice to the Settlement Class of the pendency of

12   the Action and of this settlement, as provided by the Agreement and by an Order of this

13   Court, constituted the best notice practicable under the circumstances to all persons and

14   entities within the definition of the Settlement Class, and fully complied with the

15   requirements of Federal Rules of Civil Procedure Rule 23 and due process.

16       4.      The Court approves the settlement as set forth in the Agreement and finds

17   that the settlement is in all respects fair, reasonable, adequate and just to the Settlement

18   Class Members.

19       5.      Pursuant to Rule 23(c), the Settlement Class as finally certified shall be

20   defined as follows:

21              All United States residents who (1) are the original owners of an
                Apple MacBook or MacBook Pro computer that shipped with a
22              60W or 85W MagSafe MPM-1 ("T") Power Adapter ("Subject
                Computers") and/or (2) purchased a standalone 60W or 85W
23              MagSafe MPM-1 ("T") Power Adapter.  The Settlement Class
                includes original owners who received their Subject
24              Computer(s) as a gift.  The Settlement Class excludes Apple;
                any entity in which Apple has a controlling interest; Apple's
25              directors, officers, and employees; Apple's legal
                representatives, successors, and assigns; and all persons who
26              validly request exclusion from the Settlement Class.

27       6.      Pursuant to the Agreement, Apple shall do the following:

28

---

1

[PROPOSED] FINAL JUDGMENT AND ORDER

sf-2981012

1              a.      Settlement Administration

2              Apple shall, in good faith, administer the process of receiving, handling,

3    processing and paying claims through an Administrator. Class Counsel shall have the

4    right to submit names of proposed settlement administrators, but Apple shall have the

5    right to select the Administrator. Class Counsel shall have the right to inquire of Apple's

6    counsel regarding any aspect of implementation of the settlement, including but not

7    limited to the settlement administration process and the treatment of individual

8    Settlement Class Member's claims. Class Counsel shall also receive quarterly written

9    reports summarizing claims received and action taken thereon at Class Counsel's request.

10             b.      Payments for Settlement Class Members

11             Apple shall pay to Settlement Class Members who submit a valid and timely

12   Claim Form together with any required supporting documentation payments in the

13   following amounts:

14             (i)     Settlement Class Members whose Adapter showed signs of Strain
                       Relief Damage and who purchased a Replacement Adapter during the
15                     first year following the initial retail purchase of the Subject Computer
                       or Adapter: Amount paid for the Replacement Adapter (excluding
16                     sales tax and shipping/handling fees) not to exceed $79.00;

17             (ii)    Settlement Class Members whose Adapter showed signs of Strain
                       Relief Damage and who purchased a Replacement Adapter during the
18                     second year following the initial retail purchase of the Subject
                       Computer: $50;
19
               (iii)   Settlement Class Members whose Adapter showed signs of Strain
20                     Relief Damage and who purchased a Replacement Adapter during the
                       third year following the initial retail purchase of the Subject Computer:
21                     $35.

22             The Administrator shall have the right to reject claims deemed to be fraudulent,

23   insufficient, or incomplete.

24             c.      Limit of Three Claims Per Subject Computer

25             Each Settlement Class Member may claim refunds for no more than three

26   Replacement Adapters per Subject Computer.

27

28

1          d.      Adapter Replacement Program

2          Apple currently maintains a program that includes providing in-warranty and out-

3   of-warranty replacements for Adapters that show signs of Strain Relief Damage, provided

4   there are no obvious signs of user abuse ("Adapter Replacement Program").  Apple shall

5   continue the Adapter Replacement Program until December 31, 2012.  For Adapters

6   shipped with a Subject Computer, Settlement Class Members will have three years from

7   the date of purchase of the Subject Computer or 180 days from the Notice Date,

8   whichever is later, to claim a replacement adapter.  For Adapters purchased separately,

9   Settlement Class Members shall have three years from the date of purchase of the

10  Adapter or 180 days from the Notice Date, whichever is later, to claim a replacement.

11  Notwithstanding any of the foregoing, Apple will have no obligation to honor adapter

12  replacement claims made after December 31, 2012.

13         e.      Invalid or Disputed Claims; Cure Period

14         The Administrator will mail originals or copies of Claim Forms rejected as invalid

15  or incomplete, or a written notice of additional information required for the Claim Form

16  to be valid ("Cure Notice") directly to the Settlement Class Member who submitted the

17  Claim Form.  Settlement Class Members shall have a 45-day period to cure defective or

18  incomplete claims, which shall run from the date of mailing of the Cure Notice to the

19  Settlement Class Member.  The 45-day cure period may extend after the end of the period

20  for submission of Claim Forms so long as the original Claim Form was timely submitted.

21  Settlement Class Members shall have only one opportunity to cure.

22         f.      Disputed Claims

23         On a quarterly basis after commencement of claims fulfillment, the Claims

24  Administrator will provide Class Counsel with a list of rejected Claims (including the

25  Settlement Class Member's name, address, and telephone number and reason for

26  rejection).  Class Counsel shall have a reasonable opportunity to inspect originals or

27  copies of the Claim Forms.  Counsel for the Parties will first attempt to resolve any

28  dispute concerning rejected claims informally between themselves.  If counsel cannot

1    reach an agreement concerning one or more claims, the claims will be submitted to the

2    Court for determination.

3          7.      The Court adjudges that the payment of attorneys' fees and expenses in

4    the total amount of $_____ to Class Counsel and the payment of a service

5    award to plaintiffs Naotaka Kitagawa, Timothy J. Broad, Jesse Reisman, Tracey

6    Hackwith, and Michael Martin in the amount of $____ each are fair, reasonable and

7    adequate, and that said attorneys' fees and expenses shall be paid to Class Counsel and

8    said service awards shall be paid to plaintiffs Naotaka Kitagawa, Timothy J. Broad, Jesse

9    Reisman, Tracey Hackwith, and Michael Martin pursuant to the terms of the Agreement.

10         8.      As of the Effective Date, the Class Representatives and all Settlement

11   Class Members shall be forever barred from bringing or prosecuting, in any capacity, any

12   action or proceeding that involves or asserts any of the Released Claims against any

13   Released Person and shall conclusively be deemed to have released and forever

14   discharged the Released Persons from all Released Claims.

15         9.      The Class Representatives and all Settlement Class Members shall, as of

16   the Effective Date, conclusively be deemed to have acknowledged that the Released

17   Claims may include claims, rights, demands, causes of action, liabilities, or suits that are

18   not known or suspected to exist as of the Effective Date.  The Class Representatives and

19   all Settlement Class Members nonetheless release all such Released Claims against the

20   Released Persons.  Further, as of the Effective Date, the Class Representatives and all

21   Settlement Class Members shall be deemed to have waived any and all protections, rights

22   and benefits of California Civil Code section 1542 and any comparable statutory or

23   common law provision of any other jurisdiction.

24         10.     The benefits and payments described in Paragraphs 6 and 7 are the only

25   consideration, fees, and expenses Apple or the Released Persons shall be obligated to

26   give to the Class Representatives, Settlement Class Members, and Class Counsel in

27   connection with the Agreement and the payment of attorneys' fees and expenses.

28

1        11.    The Action and all claims asserted in the Action are settled and dismissed

2  on the merits and with prejudice as to the Class Representatives and all Settlement Class

3  Members.  Notwithstanding the foregoing, this Judgment does not dismiss any claims

4  that have been or may be asserted in the future by any persons or entities who have

5  validly and timely requested exclusion from the Settlement Class as provided for in

6  section IV.F. of the Agreement.  A list of persons and entities who validly and timely

7  requested exclusion is on file with this Court.  Notwithstanding the dismissal of the

8  Action, Apple shall not claim and may not be awarded any costs, attorneys' fees, or

9  expenses.

10        12.    Without affecting the finality of this Judgment in any way, the Court

11  reserves exclusive and continuing jurisdiction over the Action, the Class Representatives,

12  the Settlement Class Members, and Apple for the purposes of supervising the

13  implementation, enforcement, construction, and interpretation of the Agreement, the

14  Court's Order dated _____, 2011, and this Judgment.

15        13.    The Agreement and this Judgment are not admissions of liability or fault

16  by Apple or the Released Persons, or a finding of the validity of any claims in the Action

17  or of any wrongdoing or violation of law by Apple or the Released Persons.  The

18  Agreement and settlement are not a concession by the Parties and to the extent permitted

19  by law, neither this Judgment, nor any of its terms or provisions, nor any of the

20  negotiations or proceedings connected with it, shall be offered as evidence or received in

21  evidence in any pending or future civil, criminal, or administrative action or proceeding

22  to establish any liability of, or admission by Apple, the Released Persons, or any of them.

23  Notwithstanding the foregoing, nothing in this Final Judgment shall be interpreted to

24  prohibit the use of this Judgment in a proceeding to consummate or enforce the

25  Agreement or Judgment, or to defend against the assertion of Released Claims in any

26  other proceeding, or as otherwise required by law.

27        All other relief not expressly granted to the Settlement Class Members is denied.

28

Dated: _____, 201_

By:  Order of the United States
District Court for the Northern District
of California

_____
The Honorable James Ware
DISTRICT JUDGE

6

Exhibit 2

1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11   IN RE MAGSAFE APPLE POWER          Case No.:   5:09-CV-01911-JW
     ADAPTER LITIGATION
12                                       DECLARATION OF
                                         FERN M. SMITH
13
14
15       Fern M. Smith states as follows:

16       1.      My name is Fern M. Smith.  I am a citizen and resident of San Francisco,

17   California.  I am over the age of eighteen, competent to give this Declaration, and not

18   disqualified by law from doing so.

19       2.      In conjunction with their motion for final approval of a settlement in this

20   matter, Plaintiffs have requested that I submit adeclaration describing the mediation that I

21   conducted with the parties, at their request.

22   **Personal Background and Experience**

23       3.      I am a former Federal District Court Judge of the United States District Court,

24   Northern District of California (1988 to 2005).  I also served as a judge on the Superior Court

25   of the State of California, in the county of San Francisco, from 1986 to 1988, and I currently

26   serve as a mediator with JAMS.  I also served as Director of the Federal Judicial Center - the

27   primary training and educational institute for federal judges.  Through my work as a litigator,

28   judge and with JAMS, I have more than 30 years of judicial and legal experience settling and

1   adjudicating complex cases involving a wide range of issues.  A copy of my biography is
2   attached hereto as Exhibit 1.

3   **The Mediation Process**

4          4.      The parties to the above-captioned action approached me to act as a mediator in
5   this matter in or around June 2010.

6          5.      I first met with the parties on August 31, 2010, for a full day mediation session.
7   In anticipation of the mediation, the parties sent me briefs setting forth their views and legal
8   arguments about the case, and proposals for settlement.  I thoroughly reviewed all materials
9   provided to me in advance of the mediation session.

10         6.      During the mediation, I was able to explore fully with counsel, *inter alia*, the
11  procedural background and history of the litigation to date, factual and legal merits analysis,
12  and the risks both parties faced moving forward. The parties discussed the terms of a possible
13  settlement, involving cash refunds to consumers, and a program for consumers to obtain
14  replacement MagSafe adapters from Apple.

15         7.      At the end of the day, the parties came to an agreement in principle on the terms
16  of the settlement to class members, which terms are those reflected in the proposed settlement
17  before the Court:  refunds to class members for replacement adapters they purchased, and
18  provision of replacement adapters to customers.

19         8.      Based on my involvement in this process, I am satisfied that the negotiations
20  which ultimately resulted in this agreement were intensive, undertaken by sophisticated and
21  experienced attorneys on both sides in good faith, and conducted completely at arm's length.

22  **Negotiations for Attorneys' Fees and Reimbursement of Expenses**

23         9.      To the best of my knowledge, there were no discussions regarding attorneys'
24  fees or expenses until after the parties had reached an agreement in principle on the settlement
25  terms.

26         10.     At the request of the parties, I agreed to assist with a second mediation session
27  on November 11, 2010, in an effort to help the parties come to an agreement concerning an

28
                                           2                   Case No. 5:09-CV-01911-JW

1   award of attorney fees.  The parties did not reach agreement on a fee amount, but they did

2   make progress in their negotiations, and agreed to a mediator's proposal.  Based on my

3   thorough review of the case, I sent the parties my proposal and they accepted it.

4        11.        Pursuant to my proposal, Apple agreed not to oppose an award to Class counsel

5   of attorneys' fees in the amount of $3 million; a service award of $5,000 to each Class

6   Representative; and verified costs and expenses incurred in the prosecution of litigation up to

7   $100,000, all of which is to be paid by Apple. These amounts were to be paid in addition to

8   and separate from all other consideration and remedies available to the settlement Class.

9        12.        To my knowledge, the fee negotiation was conducted in good faith and at arm's

10  length.

11       13.        I kept in touch with counsel on their efforts to effectuate their agreement, but

12  provided no further assistance.

13       I certify under penalty of perjury under the laws of the United States of America that

14  the foregoing is true and correct.  Executed on January $\lfloor \rfloor$, 2012.

15

16                                                                  Fern M. Smith

17

18

19

20

21

22

23

24

25

26

27

28
                                          3                    Case No.  5:09-CV-01911-JW





**T:** 415-982-5267
**F:** 415-982-5287

*"After 19 years on the bench, I am convinced that 95% of litigation is best resolved through ADR. My approach is to use my judgment and experience to facilitate a resolution that works best for the parties involved."*

*Recognized as a Top California Neutral, Daily Journal, 2010*

**Case Manager**

Arbitrations & Court References:
Sarah Nevins
415-774-2657 Phone
Email:
snevins@jamsadr.com

Mediations:
Sandra Chan
415-774-2611 Phone
Email:
schan@jamsadr.com

JAMS
Two Embarcadero
Center
Suite 1500
San Francisco, CA
94111
415-982-5287 Fax

**Hon. Fern M. Smith (Ret.)**

**Hon. Fern M. Smith (Ret.)** has served as a Federal District Court Judge, settling and adjudicating complex cases involving a wide range of issues. Judge Smith also served as Director of the Federal Judicial Center – the primary training and educational institute for federal judges – where she was one of the primary editors of the MCL 4th (Manual of Complex Litigation). She combines 30 years of distinguished judicial and legal experience with her unique ability to bring about the successful resolution of complex, multi-party matters.

**ADR Experience and Qualifications**

Judge Smith served as a trainer and facilitator on judicial administration and reform with judges in India, Egypt, Bolivia, Mexico, Tunisia, Israel, Jordan, Greece, Italy, Russia, Morocco, Thailand, China, Turkey, the Netherlands, Slovenia, and Bahrain emphasizing commercial dispute resolution and case management procedures. In her 17 years on the Federal Bench, Judge Smith presided over every case type within federal jurisdiction. Representative cases are listed below.

**Representative Matters**

Judge Smith mediated or arbitrated the following representative matters at JAMS.

- Arbitrated and chaired numerous cases involving **Intellectual Property** related breaches of contract, royalty, and licensing disputes.
- Arbitrated to a multi-million dollar award a **pharmaceutical** company breach of contract matter
- Mediated and settled a **consumer product class action** involving fraudulent advertising
- Successfully mediated a **professional liability** case regarding alleged accounting malpractice
- Mediated and resolved a long standing will contest involving multiple real estate holdings
- Successfully resolved a dispute over the **employment termination** of a highly compensated executive
- Mediated and settled a **consumer class action** involving a consumer technology product
- Successfully mediated a **consumer class action** related to alleged false advertising by a financial institution
- Mediated and settled a union matter concerning **collective bargaining** in the transportation industry
- Mediated and resolved an **employment dispute** involving alleged discrimination in the medical industry
- Successfully settled a **copyright infringement** claim by an author's estate against a licensee
- Successfully resolved a **contract dispute** over the sale of a helicopter

Judge Smith presided over and handled the following representative cases while serving in the federal judiciary.

- **Anti-Trust:** Heard *In re: Citric Acid Litigation* involving price fixing allegations against numerous domestic and international companies; Multi-million dollar fines assessed in related criminal cases
- **Environmental/Toxic Tort:** Interpreted CERCLA in *U.S. v. Allied Signal Corp.* finding private parties entitled to judicial review of Navy's remediation plan
- **Insurance:** Adjudicated numerous insurance coverage matters, including first and third party issues. Authored 11th Circuit opinion in *State Farm v. Steinberg*, clarifying rights to sue under "advertising injury"
- **Intellectual Property:** Presided over bench trial of *Galoob v. Nintendo*, involving allegations of copyright infringement, resulting in plaintiff's judgment of $15 million in damages; Presided over *Nintendo v. Atari*, a copyright and patent infringement case involving cross-claims of anti-trust and misuse of patents; Conducted *Markman* hearing in *Genentech v. Amgen*, construing three pioneer biotech patents
- **Labor/Employment:** Decided *Dillingham v. Sonoma* and *Assoc. Builders v. Curry*; Judgment affirmed by the U.S. Sup. Ct.
- **Mass Torts:** Specialized in complex product liability litigation ranging from aviation to medical devices to pharmaceuticals
- **Securities Class Actions:** Decided *In re: Silicon Graphics*, interpreting Private Securities

Reform Litigation Act
- **Torts:** Presided over court trial alleging government negligence for plane crash into Sun Valley Mall

### Honors, Memberships, and Professional Activities

- Recognized as a Top California Neutral, *Daily Journal,* 2010
- Chair, U.S. Judicial Conference Committee on International Judicial Relations, 2003-2005
- Chair, U.S. Judicial Conference Advisory Committee on the Rules of Evidence, 1996-1999
- Member, U.S. Judicial Conference Advisory Committee on the Rules of Evidence, 1993-1996
- Member, Executive Committee of the Ninth Circuit Judicial Conference, 1994-1996
- Member, Ninth Circuit State-Federal Judicial Council, 1990-1993
- Member, California Judicial Council's Advisory Task Force on Gender Bias, 1988-1990
- Member, California Judicial Council, 1987-1988
- Advisory Boards: American Bar Association Central European and Eurasian Law Initiative; American Society of International Law; American Judicature Society-National Jury Center Advisory Committee; Association of Business Trial Lawyers-Board of Governors; The National Academies-Science, Technology, and Law Program; Stanford Law School-Board of Visitors

### Background and Education

- Judge, U.S. District Court, Northern District of California, San Francisco, CA, 1988-2005
- Director, Federal Judicial Center, Washington, D.C., 1999-2003
- Judge, Superior Court of the State of California, in and for the County of San Francisco, San Francisco, CA, 1986- 1988
- Partner, Bronson, Bronson & McKinnon, 1981-1986, (Associate, 1975-1981)
- J.D., Stanford Law School, 1975
- B.A., Stanford University, Graduated with Distinction, Phi Beta Kappa, 1972

Exhibit 3

                                           Volume 1

                                        Pages 1 - 20

                   UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

            BEFORE THE HONORABLE JAMES WARE, CHIEF JUDGE

IN RE MAGSAFE APPLE POWER ADAPTER  )
LITIGATION,_____)
                                    NO. C 09-01911 JW

                                    San Francisco, California
                                    Monday
                                    September 12, 2011
                                    9:13 a.m.


                       TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:        ZELDES & HAEGGQUIST, LLP
                       625 Broadway
                       Suite 906
                       San Diego, California  92101
                  BY:  HELEN I. ZELDES, ESQ.
                       and
                       MEHRI & SKALET, PLLC
                       1250 Connecticut Avenue
                       Suite 300
                       Washington, D.C.  20036
                  BY:  CRAIG L. BRISKIN, ESQ.
                       and
                       LINER GRODE STEIN YANKELEVITZ SUNSHINE
                         REGENSTREIF + TAYLOR, LLP
                       1100 Glendon Avenue
                       14th Floor
                       Los Angeles, California  90024-3503
                  BY:  ANGELA C. AGRUSA, ESQ.


 (Appearances continued, next page)


                  Belle Ball, CSR #8785, RMR, CRR
                 Official Reporter - U.S. District Court
                           (415) 373-2529

**APPEARANCES, CONTINUED:**


**For Defendant:**          **MORRISON & FOERSTER, LLP**
                            **425 Market Street**
                            **San Francisco, California  94105-2482**
                    **BY:  PENELOPE A. PREOVOLOS, ESQ.**




**Reported by:**            **BELLE BALL, CSR #8785, RMR, CRR**
                            **Official Reporter, U.S. District Court**

```
1   MONDAY, SEPTEMBER 12, 2011                        9:13 A.M.

2                     P R O C E E D I N G S

3        THE CLERK:  Calling Case C-09-1911, in re:  MagSafe

4   Apple Power Adapter Litigation.

5            Counsel, please approach and state your name for the

6   Record.

7        MS. ZELDES:  Good morning, Your Honor.  Helen Zeldes

8   on behalf of Plaintiffs.  Along with me today are Craig Briskin

9   and Angela Agrusa, also for Plaintiffs.

10       THE COURT:  Good morning.

11       MS. PREOVOLOS:  Good morning, Your Honor.  Penelope

12   Preovolos, Morrison & Foerster, for Apple, Inc.

13       THE COURT:  Very well.  So, you are before the Court

14   for preliminary approval of a settlement of this case.

15           Do you want to comment further on your request for

16   approval?

17       MS. ZELDES:  Yes, Your Honor.  Thank you.

18           We are here seeking approval of a nationwide class,

19   of approximately 10 million Apple computer users.  I won't

20   belabor the points raised in our briefs, just go over a brief

21   overview of the litigation and the highlights of the proposed

22   settlement.

23           The case was originally brought by two different sets

24   of Plaintiffs.  One before Your Honor's court, and one in the

25   Central District.
```

```
 1              In May of 2009, Plaintiffs in both cases alleged a
 2    defect in the -- what's called the MagSafe power adapter.
 3    That's the power source for April's MacBook and MacBook Pro
 4    computers.  Plaintiffs in both cases allege that the adapter
 5    frays, and prematurely fails, and is otherwise defective.
 6              Both cases were consolidated before your court, and
 7    the litigation began.  The parties engaged in discovery,
 8    pre-mediation discovery.
 9              Settlement was raised early on, but the parties felt
10    that discovery -- substantive discovery would be necessary
11    before any meaningful discussions could be had.
12              Apple and the Plaintiffs met and conferred many
13    times.  And Apple ultimately produced some 80,000 pages of
14    documents, including design, schematics, testing documents,
15    internal correspondence among Apple employees and so forth,
16    that we have provided to two sets of experts, who independently
17    reviewed the documents, tested the adapters, and opined on the
18    theories of what we allege were the defects.
19              We presented those reports to Apple's experts, who
20    also responded, and we engaged in protracted mediation.
21              We enlisted the help of Judge Smith, Mediator Smith,
22    a former retired judge of this court, who facilitated two full
23    days of mediation.  We exchanged expert reports.  Of course,
24    vigorously debated until the wee hours of the morning our
25    matter.
```

1          We did not resolve it after the first mediation in

2   August of 2010.  We attempted to resolve the matter on our own

3   afterwards.  We hit an impasse, and brought Judge Smith in

4   again for another full day of mediation.  And ultimately,

5   through a mediator's proposal, we did resolve the matter.

6          In December of 2010, we came up with a basic terms

7   sheet, the basic parameters for the settlement you have before

8   you today.  And then, hammered out the details of the

9   settlement and the notice program.  And, submitted that to the

10  Court in July.

11         Every aspect of the settlement was hard-fought.

12  Every word of the notice program was vigorously debated.  And,

13  we believe that we have come up with a tremendous result for

14  the class.

15         There are two components to the settlement.  One is a

16  cash refund component, and one is a replacement program.

17         And, this -- the class is comprised of all ten

18  million or more purchasers of this MagSafe adapter.  All

19  computers that came with the MagSafe are included in the class,

20  as well as folks who purchased a stand-alone adapter.

21         And, all ten million or so members are able to take

22  advantage of both aspects of the settlement.  So, the cash

23  component involves a cash refund from $35 to $79, depending on

24  how long a consumer had their adapter.

25         An adapter that showed signs of strain relief

1    damage -- in other words, started showing signs that it was

2    fraying or melting or overheating -- that showed these signs of

3    strain relief damage within the first year of purchase, the

4    consumer would get $79, which is essentially a full refund.

5    That's the cost of a new adapter.

6            If the adapter failed in the second year, they would

7    get $50; in the third year, 35, with the reasoning being that

8    if a person had the adapter three years, they shouldn't get the

9    same as somebody who only had it for a year.

10           **THE COURT:**  Can I ask a technical question?

11           **MS. ZELDES:**  Certainly.

12           **THE COURT:**  Is it possible to tell from the adapter,

13   itself, when the stress is was first introduced?

14           In other words, if you just decide to live with it,

15   and use it less, but it showed up in the first year but you

16   don't report it until the third year, how would one know?

17           **MS. ZELDES:**  That's a very good question.  I don't

18   believe you would be able to tell.  But a consumer -- the date

19   of the refund would be from the date of purchase.

20           And, there's two parts of the settlement.  So, for

21   example, if somebody kept their frayed adapter, they can, under

22   the replacement program, bring it to Apple if it's, again,

23   within three years, and get a new adapter.

24           And, the adapter has been redesigned in the course of

25   this litigation.

1          THE COURT:  Well, that's my second question.

2          MS. ZELDES:  Okay.

3          THE COURT:  So, the adapter that was sold -- I don't

4   know when it was first introduced to the market -- whenever

5   that was -- is not same that is being sold today.

6          MS. PREOVOLOS:  If I may, Your Honor -- Penny

7   Preovolos for Apple.

8          MS. ZELDES:  I brought the sample.

9          MS. PREOVOLOS:  So, the initial adapters were

10  introduced for two different computers, I think in February and

11  May of '06, respectively.  They were phased -- they were

12  eliminated, replaced by an adapter that's not at issue.

13          And then, Plaintiffs have looked at the data to

14  confirm -- you know, shouldn't be an issue -- in June of '09.

15          THE COURT:  Very well.

16          Now, that fuels the question:  If a consumer has the

17  originally-designed adapter, irrespective of whether it shows

18  stress, can they get it replaced?

19          MS. PREOVOLOS:  Well, I think that answer is

20  complicated, and there are two pieces to it.

21          So, the first piece is it shows stress in one way or

22  another if it's failing.  So, either it gets intermittent

23  power, or you can see fraying.

24          But, in terms of when people can get the

25  replacement -- well, there are two pieces.

```
 1              So, under the settlement program, under the first
 2     piece Ms. Zeldes was talking about for reimbursement, the
 3     consumer gets reimbursed for whenever they bought the
 4     replacement adapter.
 5              So, when they decided it was bad enough to replace,
 6     say that's in year two, then they get paid as a year-two
 7     replacement.
 8              In terms of the current program -- in terms of the
 9     ongoing program that Apple has, you send in your adapter, or
10     you can take your adapter to an Apple store, or to a
11     third-party store, you can contact AppleCare, and they will
12     assess whether the adapter has failed, and replace it.
13              If you say you are experiencing failure symptoms -- I
14     don't think they're going to cross-examine you, obviously.
15              But typically, the issue becomes apparent to the user
16     in one of a number of ways.  Usually, the -- the way this
17     failure occurs and what Plaintiffs are -- are -- what is at
18     issue in the lawsuit is what's called "strain relief."
19              So, literally, yeah.  They --
20          MS. ZELDES:  Would you like to see it?
21          THE COURT:  Sure.  Pass them up.
22          MS. ZELDES:  Okay.  So, this (Indicating) is the
23     redesigned adapter.  This has a new metal casing around the
24     strain relief mechanism (Indicating).
25              (Item handed up to the Court)
```

```
 1              MS. ZELDES:  And this (Indicating) is the old

 2    adapter.  I'll hand it up with that.

 3              (Item handed up to the Court)

 4              MS. ZELDES:  You can see the difference in the strain

 5    relief mechanism.

 6              MS. PREOVOLOS:  And so, there's nothing subtle about

 7    it.  You literally start to see it fray and separate.  Or very

 8    unusually, you may see sparking, or something of that nature.

 9              THE COURT:  So, although I'm being shown what appear

10    to be used adapters, neither of these show any signs of what

11    you are calling the fraying.

12              MS. PREOVOLOS:  Correct.  Ms. Zeldes and I both

13    happen to have healthy adapters, so --

14              THE COURT:  Well, that's good.

15              MS. ZELDES:  I borrowed one.

16              THE COURT:  As I understand it, the design is not

17    inherently subject to the problem.  And so, the class only

18    consists of those who actually experienced some kind of

19    failure.

20              MS. PREOVOLOS:  No, the class consists of all

21    purchasers.  Because the claims period -- so, what happens is

22    there's the period to claim refunds, which is -- which is 120

23    days.  But the program to claim new adapters --

24              MS. ZELDES:  I apologize.  No, it is three years for

25    the replacement and the refund.
```

```
 1              THE COURT:  I need a chart, right?  I need a chart to
 2  figure this out?
 3              MS. PREOVOLOS:  The bottom line is it's the whole
 4  class, because the whole class has remedies out to three years
 5  after the sale of the last computer or adapter.  So, Apple's
 6  program is ongoing until December 31st, 2012.
 7              MS. ZELDES:  So if I may, Your Honor, even if a
 8  consumer does not have a present defect showing right now, they
 9  have up until three years after the date of purchase.
10              These adapters typically only come with a one-year
11  warranty.  So it's essentially an extended-warranty type remedy
12  where, either for the refund or the replacement, they get three
13  years from the date of purchase.
14              THE COURT:  I understand you've worked this out.  I'm
15  just trying to catch up.  And, bear with me.
16              MS. PREOVOLOS:  Sure.
17              THE COURT:  When was the last of the old design sold?
18              MS. PREOVOLOS:  June -- well, with the exception for
19  things that trickle around out in a retail channel, June, 2009,
20  was our sort of best guess.
21              THE COURT:  So, that was the last manufacturer's
22  distribution, but they could be in the channel for a while.
23              MS. PREOVOLOS:  Which is why we took the program out
24  to December, 2012, so we would have three years, or at least --
25  for virtually everybody.
```

1          MS. ZELDES:  Three and a half.

2          MS. PREOVOLOS:  Three and a half.  No, but I'm saying

3  even for the --

4          MS. ZELDES:  I'm sorry.  I'll be quiet.

5          THE COURT:  All right, stick with my question.  You

6  guys can talk with each other after.

7          So, after December 21 of 2012 --

8          MS. PREOVOLOS:  December 31.

9          THE COURT:  I'm sorry?

10          MS. PREOVOLOS:  December 31 of 2012.

11          THE COURT:  -- 31 of 2012, if a consumer has an

12  original-style adapter that starts to show signs of failure,

13  what, if anything, happens?

14          MS. PREOVOLOS:  At that point, they can't get a

15  replacement.  But they will have had the adapter three years,

16  which is --

17          THE COURT:  So, nothing happens.

18          MS. PREOVOLOS:  Nothing happens.  Because at that

19  point, I think everybody would concede an adapter is beyond its

20  useful life.

21          THE COURT:  Well, I'm just trying to understand --

22          MS. PREOVOLOS:  Understood.

23          THE COURT:  -- what the -- excuse me.  I'm trying to

24  understand what the class will hear.

25          And so, the class will hear that after December 31st,

1   2012, any failure that occurs after that will not be subject of

2   this class action.

3           You mentioned a process where, outside of the class,

4   consumers can go to an Apple store and have an adapter

5   assessed, and if failed, replaced.

6           Will that process be in place for the original design

7   after December 31st, 2012?

8           **MS. PREOVOLOS:**  No.  Because, again, Apple programs

9   typically cut off after -- for adapters, because they're

10  limited-life products -- typically cut off after three years.

11          **THE COURT:**  All right.

12          **MS. PREOVOLOS:**  Now, again, let me just be clear:

13  That's three years, only for the very -- well, it's not -- it's

14  about three and a half years for the very last adapters sold.

15          Most people will have had substantially longer than

16  that because, again, these sales commenced in early '06.

17          **THE COURT:**  They will have had the longer time.  They

18  won't have any time beyond 12-31-2012.

19          **MS. PREOVOLOS:**  That's right.

20          **THE COURT:**  I understand.  I understand.

21          And, do I also understand, from the nature of this,

22  that anyone who actually purchased a -- well, let me -- I

23  shouldn't assume that.  Let me ask.

24          What if someone had an original design, and actually

25  had problems, and purchased another one that was also the

 1 | original design?

 2 |       What date is effective for those individuals?

 3 | **MS. ZELDES:**  They can make claims for up to three

 4 | replacement adapters.  And again, it's the date from the

 5 | purchase of the standalone adapter.  They have three years from

 6 | that date.

 7 | **THE COURT:**  But, no later than 12-31?

 8 | **MS. ZELDES:**  Right.  Because the last of these

 9 | adapters were on the market in June of '09, when the last ones

10 | were put on the market.

11 | And we don't agree that -- you know, what the life

12 | span of an adapter should be.  Just for purposes of

13 | settlement -- the adapters really only came with a one-year

14 | warranty.  And, we're essentially getting an additional two

15 | years for people to bring a claim to Apple.

16 | **THE COURT:**  And if you had an original design, and

17 | you purchased a new design, what is the relief that is being

18 | granted under the settlement?

19 | **MS. ZELDES:**  That's a good question.  I guess they

20 | would get --

21 | **MS. PREOVOLOS:**  There's no distinction, Your Honor.

22 | If you purchased a replacement adapter -- if you purchased a

23 | replacement adapter, be it new or old, you can get the

24 | remedies, the 79, 50 and $35, depending on when you made that

25 | purchase.

1          **THE COURT:**  All right.  Now, I understand that.

2          So then, the question becomes how -- what is it that

3   a consumer has to provide to determine whether or not they're

4   in the $79, the $50 or the $30 range?

5          **MS. ZELDES:**  Your Honor, we've attempted to

6   streamline the claims process, so that a proof-of-purchase

7   requirement can be satisfied through either a bank statement, a

8   credit card statement, a receipt, or the e-mail that Apple

9   sends consumers.

10          When you buy a computer or an adapter, you get an

11  e-mail receipt.  So, you can search your e-mail to sort of

12  Google search your e-mail, and pull up the receipt from Apple.

13          And, any of those would constitute proof of purchase,

14  as well as the serial number from your laptop computer.

15          **THE COURT:**  So, does Apple keep a record of the

16  e-mail receipts?

17          **MS. PREOVOLOS:**  Not past a certain period of time.

18  So that wouldn't be -- that wouldn't be a way to actually

19  capture your receipts.

20          **THE COURT:**  It could be --

21          **MS. PREOVOLOS:**  It could be --

22          **THE COURT:**  -- if it was within that certain period

23  of time.

24          So, one of the things that the Court is always

25  concerned about with consumers is, often, given their reliance

1    on the manufacturer or the product, they don't keep paper

2    records.  And it always helps if there is a process by which

3    they could prove the purchase, independent of their own

4    diligence in keeping a record.

5            And so, that's why I wonder always whether or not --

6    because here, you do have a receipt kind of process -- whether

7    or not if they asked Apple to supply within the reasonable time

8    that it keeps records, to give it a copy of a receipt, they

9    say, "Oh, I remember I got an e-mail confirmation about this,"

10   that that might be helpful in this process.

11           And, I don't want to put any additional burden on

12   your settlement than what you have assumed, but that sounds

13   minimal.

14           **MS. PREOVOLOS:**  Yeah.  I will find out what the

15   existing process is.  But I -- I believe you can obtain those

16   receipts.

17           Let me add, though, Your Honor, something that I

18   think is important, which is you can also request -- most

19   people buy things by credit card, and you can receive a receipt

20   from your credit card company.

21           And another way we made this more flexible is to say

22   you don't have to have a proof of purchase that says "I bought

23   an MPM-1 adapter," or "I bought an adapter."  You just have to

24   have something showing a purchase from either Apple or an Apple

25   retailer, and you can circle it.

```
 1              You know, supposing you bought -- I don't know, a
 2    printer and an Apple adapter.  You can circle the amount, and
 3    just fill out a line on the claim form saying, "That was for an
 4    adapter."  So, we have tried to make this -- ditto, if someone
 5    has a personal check, to, you know, whatever store.
 6              So this is a pretty -- this is as flexible as you can
 7    get on proof of purchase.  We do need it here because, you
 8    know, some of these computers are six years old.  And so, Apple
 9    was not undertaking to refund people or replace six-year-old
10    adapters.  The only way to date the adapter is with a proof of
11    purchase.
12              THE COURT:  Very well.
13              MS. ZELDES:  And Your Honor, one thing about the --
14    the claim process and the notice program.
15              Apple also has a tremendous database of consumers'
16    e-mails.  In order to register and essentially use their laptop
17    after they buy it, they have to register online, and provide an
18    email.
19              So, I believe -- and Penny can address this -- Apple
20    has nearly 100 percent -- something very high -- of consumer
21    e-mail addresses.
22              MS. PREOVOLOS:  Right.  In terms of the -- in terms
23    of the direct-notice program, Your Honor, at this point I think
24    we're confident about saying 80 percent, just because we
25    haven't -- you know, there's a process with registrations.
```

1 People change their e-mails, and reregister things.  So, we

2 haven't done what we call "de-duping."

3          But, we're very confident that we'll be able to send

4 direct e-mail notice to upwards of 80 percent of the class.

5 And, there are three different methods of published notice, as

6 well as posted notice, and so forth.

7          **THE COURT:**  My eye isn't drawn to it right now, but I

8 did recall, as I studied this, that there was, for those who

9 were wishing to opt out, a requirement that they somehow

10 justify their opting out by writing a letter of some sort.

11          That's not the case?  You're shaking your head.

12          **MS. PREOVOLOS:**  No.

13          **THE COURT:**  All they have to do is check off "Opt

14 out," and they don't have to explain it or anything?

15          **MS. PREOVOLOS:**  They have to mail and sign.

16          **THE COURT:**  Say again?

17          **MS. PREOVOLOS:**  They have to sign it, and mail it.

18 Just -- they can -- they can mail something saying -- I think

19 they have to give their name and serial number, and then mail

20 it in.

21          **MS. ZELDES:**  Yeah.  I just --

22          **MS. PREOVOLOS:**  But they don't have to swear to

23 anything.  They just have to say --

24          **THE COURT:**  Well, my notes are that class members

25 have a period of time to opt out.  They must send a letter with

 1  identifying information to the claims administrator.  Have to

 2  be postmarked within a certain period of time.

 3          They've got to mail their objections --

 4          **MS. PREOVOLOS:**  There are two different --

 5          **THE COURT:**  Oh, that's a different group.  The

 6  opt-outs are treated differently than those who would object to

 7  the settlement, itself.

 8          **MS. PREOVOLOS:**  Correct.

 9          **THE COURT:**  And, the final issue always is fees and

10  costs.  What's the provision for that?

11          **MS. ZELDES:**  Your Honor, fees and costs, and costs of

12  the notice program, verified costs of litigation have been

13  agreed to be paid separately from the settlement.

14          This is not a common-fund case.  Apple will pay those

15  separately, and we will petition for those separately from the

16  benefits to the class.

17          **MS. PREOVOLOS:**  It's -- you know, Apple, Apple has

18  agreed not to oppose fees, not to exceed a certain amount.  Of

19  course, Your Honor determines the amount.

20          **THE COURT:**  And there is no *cy pres*, because if

21  there's no claim, no funds are paid.

22          **MS. PREOVOLOS:**  Correct.

23          **THE COURT:**  And there is no separated fund that's set

24  up for this.

25          **MS. PREOVOLOS:**  Correct.

```
 1              THE COURT:  Apple will pay as many claims as are
 2   made.
 3              MS. PREOVOLOS:  Yes, Your Honor.
 4              MS. ZELDES:  There is no cap.
 5              THE COURT:  The one thing I did notice about this, as
 6   in many computer products, is the newer design is a little more
 7   compact.  It actually doesn't have a long power cord.  It has a
 8   little nice power clip, as I would call it (Indicating).
 9              What if a consumer did not have trouble with this
10   (Indicating), but simply replaced it with a newer model?  They
11   would be in the class?
12              MS. PREOVOLOS:  Theoretically, no, if they had no
13   failure.
14              THE COURT:  How would we ever know?  They --
15              MS. PREOVOLOS:  That's right.  If they make it -- I
16   mean, I suppose, as a theoretical matter, if Apple inspected
17   the adapter -- if they brought in -- well, two things.
18              They're not as different as you think.  We have more
19   cords on that one.  It actually has similar features.
20              THE COURT:  I mean, it's enough of a difference that
21   it might make a difference.  I notice the Clerk of the Court
22   had a lot more difficult handing me this than this
23   (Indicating).
24              MS. ZELDES:  Both of them have -- that's a thicker
25   cord that you can plug into a wall.
```

```
 1              THE COURT:  Yes, I understand.
 2              MS. ZELDES:  And the other one has that, as well.  We
 3   just don't have that attached right now.
 4              THE COURT:  I see.  You can pull this off and --
 5              MS. ZELDES:  Exactly.  Right.
 6              MS. PREOVOLOS:  The difference actually is only the
 7   shape of the adapter head.  We can pull apart --
 8              MS. ZELDES:  The magnetic --
 9              (Simultaneous speakers)
10              (Reporter interruption)
11              MS. ZELDES:  Sorry.
12              THE COURT:  They're very enthusiastic about this
13   product.
14              MS. ZELDES:  Well --
15              (Items handed down)
16              THE COURT:  Very well.  I'm prepared to sign your
17   preliminary approval.  At some time, my staff will be in touch
18   with you about the dates that you select, so that we make it
19   consistent with our calendar.
20              And so, unless there's something further on this,
21   very well.  Thank you very much.
22              MS. ZELDES:  Thank you, Your Honor.
23              MS. PREOVOLOS:  Thank you, Your Honor.
24              MS. AGRUSA:  Thank you, Your Honor.
25              (Conclusion of Proceedings)
```

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 09-01911 JW, In Re Magsafe Apple Power Adapter Litigation, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


_____/s/  Belle Ball_____

Belle Ball, CSR 8785, RMR, CRR

Wednesday, May 16, 2012

Exhibit 4

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                        SAN FRANCISCO DIVISION

10  In re: MagSafe Apple Power Adapter          NO. C 09-01911 JW
    Litigation
11                                              **ORDER REQUESTING REVISED**
                                                **PROPOSED ORDER FOR UNOPPOSED**
12                                              **MOTION FOR PRELIMINARY**
                                                **APPROVAL OF CLASS ACTION**
13                                              **SETTLEMENT**

14  _____/

15          Presently before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of

16  Class Action Settlement.  (hereafter, "Motion," Docket Item No. 70.)  The Motion is currently set

17  for hearing on September 12, 2011.  In the Motion and supporting papers, the parties do not propose

18  a date for the final fairness hearing or a settlement claim administrator.

19          Accordingly, on or before **September 8, 2011**, the parties shall filed a revised Proposed

20  Order for Preliminary Approval of Class Action Settlement which shall include (1) a date for the

21  Final Fairness hearing that is consistent with the Court's calendar and that will allow sufficient time

22  for, *inter alia*, class members to exclude themselves from the settlement class or object to the

23  settlement and any requested attorney fees; and (2) the name of the settlement administrator.

24

25  Dated:  September 6, 2011

26                                              JAMES WARE
                                                United States District Chief Judge

27

28

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alexei Klestoff aklestoff@mofo.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew David Muhlbach amuhlbach@mofo.com
Angela Christine Agrusa aagrusa@linerlaw.com
Anne M. Hunter Ahunter@mofo.com
Craig L. Briskin cbriskin@findjustice.com
Helen I. Zeldes helenz@zhlaw.com
Keri Montrose kmontrose@jrsfllp.com
Michael Jeffrey Saltz msaltz@jrsfllp.com
Patrick McNicholas mel@mcnicholaslaw.com
Penelope Athene Preovolos ppreovolos@mofo.com
Steven A. Skalet sskalet@findjustice.com

**Dated:  September 6, 2011**                     **Richard W. Wieking, Clerk**

                                                  **By:_____/s/ JW Chambers_____**
                                                       **Susan Imbriani**
                                                       **Courtroom Deputy**

*United States District Court*
For the Northern District of California

Exhibit 5

1
2
3
4
5
6

7          IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9              SAN FRANCISCO DIVISION

10 | In re: MagSafe Apple Power Adapter          NO. C 09-01911 JW
   | Litigation
11 |                                              **ORDER REQUESTING REVISED**
   |                                              **PROPOSED ORDER FOR PRELIMINARY**
12 |                                              **APPROVAL OF CLASS SETTLEMENT**

13 | _____/

14          Presently before the Court is Plaintiffs' Proposed Order Granting Conditional Certification of

15 a Settlement Class, Approval of Forms and Methods of Notice, and Preliminary Approval of

16 Settlement Agreement and Release.  (hereafter, "Proposed Order," Docket Item No. 73.)   The

17 Proposed Order relates to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action

18 Settlement, which is currently set for hearing on September 12, 2011.  (Docket Item No. 70.)  In the

19 Proposed Order, the parties do not propose deadlines for the following events:

20          (1)    Dissemination of Class Notice and the final "Notice Date," as defined in the parties'

21                 Stipulation of Settlement (Docket Item No. 70-1);

22          (2)    Mailing requests for exclusion from the settlement class;

23          (3)    Filing and serving objections to the settlement;

24          (4)    Class Counsel's petition for award of attorney fees and reimbursement of expenses

25                 and request for incentive awards to the Class Representatives;

26          (5)    Any Opposition to Class Counsel's petition for award of attorney fees and

27                 reimbursement of expenses and request for incentive awards to the Class

28                 Representatives;

1    (6)    Any Reply in support of Class Counsel's petition for award of attorney fees and

2           reimbursement of expenses and request for incentive awards to the Class

3           Representatives;

4    (7)    Filing all papers in support of the application for final approval of the settlement; and

5    (8)    Class Counsel's response to any objections to the final settlement.

6           Accordingly, on or before **September 9, 2011**, the parties shall filed a revised Proposed

7    Order for Preliminary Approval of Class Action Settlement which shall include proposed deadlines

8    for each of the events listed above based on the Final Fairness hearing date of February 27, 2012.

9

10   Dated:  September 9, 2011                    _____

11                                               JAMES WARE
                                                 United States District Chief Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          2

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alexei Klestoff aklestoff@mofo.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew David Muhlbach amuhlbach@mofo.com
Angela Christine Agrusa aagrusa@linerlaw.com
Anne M. Hunter Ahunter@mofo.com
Craig L. Briskin cbriskin@findjustice.com
Helen I. Zeldes helenz@zhlaw.com
Keri Montrose kmontrose@jrsfllp.com
Michael Jeffrey Saltz msaltz@jrsfllp.com
Patrick McNicholas mel@mcnicholaslaw.com
Penelope Athene Preovolos ppreovolos@mofo.com
Steven A. Skalet sskalet@findjustice.com

**Dated:  September 9, 2011**                    **Richard W. Wieking, Clerk**


                                                 **By:   /s/ JW Chambers**
                                                      **Susan Imbriani**
                                                      **Courtroom Deputy**

United States District Court
For the Northern District of California

Exhibit 6

1
2
3
4
5
6
7                        IN THE UNITED STATES DISTRICT COURT

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                              SAN FRANCISCO DIVISION

10   In re: MagSafe Apple Power Adapter          NO. C 09-01911 JW
     Litigation
11                                               ORDER REQUESTING REVISED
                                                 PROPOSED ORDER FOR PRELIMINARY
12                                               APPROVAL OF CLASS SETTLEMENT;
                                                 REVISED NOTICE OF PENDENCY AND
13                                               PROPOSED SETTLEMENT OF CLASS
                                                 ACTION; AND REVISED CLAIM FORM
14   _____/

15         Presently before the Court is Plaintiffs' Proposed Order Granting Conditional Certification of

16   a Settlement Class, Approval of Forms and Methods of Notice, and Preliminary Approval of

17   Settlement Agreement and Release.  (hereafter, "Proposed Order," Docket Item No. 75.)   The

18   Proposed Order relates to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action

19   Settlement.  (hereafter, "Motion," Docket Item No. 70.)  The Court conducted a hearing on

20   September 12, 2011.  Upon review, the Court finds that several revisions to the Proposed Order,

21   Notice of Pendency and Proposed Settlement of Class Action and Claim Form are required.

22         First, in the Proposed Claim Form, the parties state that a class claimant must submit the

23   completed Claim Form and Proof of Purchase for the claimant's Replacement Adapter.  (hereafter

24   "Claim Form," Docket Item No. 70-5 at 2.)  The Claim Form also defines the types of "Proof of

25   Purchase" that will be accepted.  (Id.)  Based on the concerns raised by the Court at the hearing, the

26   parties' Proposed Claim Form shall be revised with respect to the requirement of proof of purchase

27   to add the language bolded below:

28         You must attach a Proof of Purchase of your Replacement Adapter to your Claim

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Form.  "Proof of Purchase" means an invoice, receipt or other document (such as a
     credit card statement or cancelled check) evidencing that the product you purchased
2    was a Replacement Adapter, the price paid, date of purchase, and the name and address
     of the entity from whom the Replacement Adapter  was purchased.  If the Proof of
3    Purchase does not specifically identify the purchase of a Replacement Adapter or the
     price paid, you may submit a receipt, bank or credit card statement, or Apple email
4    receipt, showing a purchase from any Apple store (online or in-person) in the amount
     of $79 or greater, and must declare in the Claim Form that the product purchased was
5    a Replacement Adapter, state the price paid (if not shown in the Proof of Purchase),
     and highlight the item in the Proof of Purchase that includes the Replacement Adapter.
6    **If you cannot locate any of the documents above, you may submit the unique**
     **product identification number found on your Replacement Adapter, the**
7    **approximate date on which your Replacement Adapter was purchased, and the**
     **price paid for your Replacement Adapter, and must declare in the Claim Form**
8    **that you purchased the product as a Replacement Adapter.**

9    (See Claim Form at 2.)

10        Second, the Proposed Notice of Pendency And Proposed Settlement of Class Action states:

11   To exclude yourself from the settlement, you must send a letter by mail saying that you
     want to be excluded from *In re Magsafe Apple Power Adapter Litigation*, Case No.
12   C09-01911-JW.  Be sure to include your name, address, telephone number, the serial
     number of your Subject Computer, and your signature.  You must mail your exclusion
13   request postmarked no later than _____, to: [**Claims Administrator**].[1]

14   (Docket Item No. 70-2 at 8.)  The parties' proposed Notice of Pendency And Proposed Settlement of

15   Class Action and Claim Form shall be revised to allow class members to opt-out of the class by

16   mailing the Claim Form—completed with the claimant's name, address, telephone number, the

17   serial number of the Subject Computer and the claimant's signature—to the Claims Administrator.

18        Accordingly, on or before **September 16, 2011**, the parties shall file a revised Proposed

19   Order for Preliminary Approval of Class Action Settlement, revised Notice of Pendency And

20   Proposed Settlement of Class Action and revised Claim Form which shall include the changes

21   identified above for the Court's approval.

22

23   Dated:  September 14, 2011                          _____

24                                                        JAMES WARE
                                                          United States District Chief Judge
25

26   _____

27        [1]  The most current Proposed Order identifies the Claims Administrator as Kurtzman Carson
     Consultants.  (Proposed Order at 3.)

28                                            2

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alexei Klestoff aklestoff@mofo.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew David Muhlbach amuhlbach@mofo.com
Angela Christine Agrusa aagrusa@linerlaw.com
Anne M. Hunter Ahunter@mofo.com
Craig L. Briskin cbriskin@findjustice.com
Helen I. Zeldes helenz@zhlaw.com
Keri Montrose kmontrose@jrsfllp.com
Michael Jeffrey Saltz msaltz@jrsfllp.com
Patrick McNicholas mel@mcnicholaslaw.com
Penelope Athene Preovolos ppreovolos@mofo.com
Steven A. Skalet sskalet@findjustice.com

**Dated:  September 14, 2011**                 **Richard W. Wieking, Clerk**


                                               **By:____/s/ JW Chambers_____**
                                                    **Susan Imbriani**
                                                    **Courtroom Deputy**

United States District Court
For the Northern District of California

Exhibit 7

1   PENELOPE A. PREOVOLOS (CA SBN 87607)
    (PPreovolos@mofo.com)
2   ANDREW D. MUHLBACH (CA SBN 175694)
    (AMuhlbach@mofo.com)
3   ALEXEI KLESTOFF (CA SBN 224016)
    (AKlestoff@mofo.com)
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   *Attorneys for Defendant APPLE INC.*

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

12                                          Case No. C 09-01911 JW

13   IN RE MAGSAFE APPLE POWER ADAPTER        **DEFENDANT APPLE INC.'S**
     LITIGATION                               **REQUEST FOR**
14                                            **RECONSIDERATION OF ORDER**
                                              **REQUESTING REVISED**
15                                            **PROPOSED ORDER FOR**
                                              **PRELIMINARY APPROVAL OF**
16                                            **CLASS SETTLEMENT; REVISED**
                                              **NOTICE OF PENDENCY AND**
17                                            **PROPOSED SETTLEMENT OF**
                                              **CLASS ACTION; AND REVISED**
18                                            **CLAIM FORM**

19                                            **HEARING REQUESTED**

20                                           Judge:  Hon. James Ware

21

22

23

24

25

26

27

28

Defendant Apple Inc. ("Apple") respectfully requests that the Court reconsider the portion of the Order Requesting Revised Proposed Order for Preliminary Approval of Class Settlement; Revised Notice of Pendency and Proposed Settlement of Class Action; and Revised Claim Form, dated September 14, 2011 (the "Order") to the extent that the Order directs the parties to modify the proof of purchase requirement.  The proof of purchase requirement for replacement adapters is a material term of the settlement.  Under the structure of the proposed settlement, actual proof of purchase is essential both to prevent fraudulent claims and to accurately determine the amount to which each claimant is entitled.  Settlement Class Members can readily obtain duplicate receipts from Apple and other sources if they have not retained their proof of purchase. Moreover, Apple will create a special mechanism for Settlement Class Members to obtain duplicate receipts from Apple.

## I.       BACKGROUND

Under the terms of the proposed settlement, Settlement Class Members who provide proof of purchase of a Replacement Adapter during the first year following purchase of either the original computer with which the adapter was shipped ("Subject Computer") or a stand alone adapter ("Adapter") are entitled to a cash refund of $79.  Settlement Class Members who provide proof of purchase of a Replacement Adapter during the second year following purchase of the Subject Computer or Adapter are entitled to a cash refund of $50, and Settlement Class Members who provide proof of purchase of a Replacement Adapter during the third year following purchase of the Subject Computer or Adapter are entitled to a cash refund of $35.  Settlement Class Members may claim up to three Replacement Adapters for each Subject Computer if they experienced multiple adapter failures.

Independent of the settlement, Apple also provided, and continues to provide, Replacement Adapters free of charge.  Apple provided Replacement Adapters under warranty from the time it began shipping the Subject Computers in 2006, and beginning in 2008, it provided Replacement Adapters for failed adapters outside the warranty period.

Obtaining proof of purchase is relatively easy, even for Settlement Class Members who have not retained their receipts or credit card statements.  As the Court noted during the hearing,

individuals who purchased from Apple can readily obtain a duplicate receipt; they may do so on Apple's website or by contacting Apple and requesting one.  Apple has confirmed that duplicate receipts are available from the beginning of the relevant time period.  Moreover, Apple will create a special mechanism for Settlement Class Members to obtain duplicate receipts from Apple.  Apple is prepared to inform Settlement Class Members about how to obtain duplicate receipts.  The proof of purchase requirement in this case is flexible.  It permits submission of multiple types of proofs of purchase, i.e., receipts, credit card statements, checks.  It also permits the Settlement Class Member to supply in the claim form information that is not included in the proof of purchase, i.e., the entity from whom the adapter was purchased, the amount paid.  Credit card companies and many third party retailers who sell Apple products also provide duplicate statements or receipts on request, and typically this information from credit card companies is available throughout the duration of the account.  The settlement also permits Settlement Class Members to provide e-mailed receipts for purchases from Apple, so they can search their e-mail for copies.

## II.    ARGUMENT

Proof of purchase is essential under the circumstances of this case.  The fact that a Settlement Class Member can provide an adapter serial number is *not* evidence that he or she purchased a Replacement Adapter.  Unlike in other cases, the serial number does not provide evidence of purchase.  Every Subject Computer shipped with an adapter.  Thus, a Settlement Class Members could simply provide the serial number of that adapter, even if he or she never purchased a Replacement Adapter.

A Settlement Class Member could also provide the serial number of an adapter he or she received free of charge under Apple's one-year express warranty or under Apple's extended Adapter Replacement Program.  Under the Adapter Replacement Program, which allows customers to receive a replacement adapter beyond the warranty, owners of Subject Computers could obtain free replacement adapters from Apple retail stores, Apple authorized service providers, or direct from Apple Care.  Settlement Class Members may have multiple adapters — and multiple serial numbers —that they can provide on the claim form even if they never paid for

1   a single adapter, and thus a serial number does not establish a purchase of a Replacement

2   Adapter.

3        Here, then, the fraud risk extends to approximately 10 million settlement class members,

4   each of whom can make three claims.  Only an actual proof of purchase avoids that fraud risk.

5   The settlement that Apple agreed to did not expose it to that fraud risk.

6        Moreover, proof of purchase is also required to determine the amount of the payment each

7   settlement class member is entitled to.  The date of purchase of the Replacement Adapter,

8   typically reflected on the proof of purchase, determines whether a Settlement Class Member is

9   entitled to $79, $50, or $35.  Permitting claims to be made without proof of purchase allows

10  claimants who purchased a Replacement adapter during the third year ($35) to claim that they

11  purchased during the first year ($79).  Indeed, a Settlement Class Member who has a proof of

12  purchase showing a date in the third year could choose to claim not to have retained proof of

13  purchase in order to claim an earlier purchase date and a higher amount.

14       Moreover, even without any intent to defraud, permitting claims to be made without proof

15  of purchase creates a significant risk of overpayment.  It is unlikely that a Settlement Class

16  Member will recall the precise date the Replacement Adapter was purchased, and a difference of

17  even a few days may mean the difference between a first year and a second year replacement ($79

18  vs. $50) or a second or third year replacement ($50 vs. $35).  Moreover, it is human nature to give

19  oneself the benefit of the doubt ("I am almost sure I purchased during the first year, so I will give

20  an approximate date within that time period").  There is also a substantial risk that Settlement

21  Class Members will simply choose not to search their records or seek to obtain a duplicate

22  receipt.  Thus, the problem of guessing the date of purchase incorrectly (and giving oneself the

23  benefit of the doubt) is likely to result in overpayment for a significant number of claims.

24       Actual proof of purchase is essential in this case.  Without it, Apple is subject to massive

25  fraud as well significant risk of overpayment due to unintentional errors about purchase date.  The

26  proof of purchase requirement is a material and essential term of the settlement, and Apple

27  respectfully requests that the Court reconsider this issue and approve the settlement as agreed to

28  by the parties.  Apple is prepared to revise the claim form to inform Settlement Class Members of

the availability of duplicate receipts from Apple, and the procedures being created by Apple to

make duplicate receipts available to them.

Apple further requests that it be heard on this issue on an expedited basis (if necessary by

a telephonic hearing) on a date convenient to the Court.

Dated:  September 16, 2011        PENELOPE A. PREOVOLOS
ANDREW D. MUHLBACH
ALEXEI KLESTOFF
MORRISON & FOERSTER LLP


By:   /s/ Penelope A. Preovolos
      Penelope A. Preovolos

*Attorneys for Defendant*
APPLE INC.

# Exhibit 8

1  HELEN I. ZELDES (SBN: 220051)
   ALREEN HAEGGQUIST (SBN: 221858)
2  ZELDES & HAEGGQUIST, LLP
   625 Broadway, Suite 906
3  San Diego, CA 92101
   Telephone: (619) 342-8000
4  Fax: (619) 342-7272
   helenz@zhlaw.com
5  alreenh@zhlaw.com

6  STEVEN A. SKALET (admitted pro hac vice)
   CRAIG L. BRISKIN (admitted pro hac vice)
7  MEHRI & SKALET, PLLC
   1250 Connecticut Avenue., NW, Suite 300
8  Washington, DC 20036
   Telephone: (202) 822-5100
9  Fax: (202) 822-4997
   sskalet@findjustice.com
10 cbriskin@findjustice.com

11 Attorneys for the *Kitagawa* Plaintiffs
   [Additional counsel appear on the next page and the
12 signature page]

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16 In re MagSafe Apple Power Adapter Litigation   )   Case No. C 09-01911 JW
                                                  )
17                                                )   [Assigned for all purposes to the
                                                  )   Honorable James W. Ware, Courtroom 5 -
18                                                )   17th Floor]
                                                  )
19                                                )   **PLAINTIFFS' RESPONSE TO APPLE'S
                                                  )   REQUEST FOR RECONSIDERATION
20                                                )   OF ORDER REQUESTING REVISED
                                                  )   PROPOSED ORDER FOR
21                                                )   PRELIMINARY APPROVAL OF CLASS
                                                  )   SETTLEMENT; REVISED NOTICE OF
22                                                )   PENDENCY AND PROPOSED
                                                  )   SETTLEMENT OF CLASS ACTION;
23                                                )   AND REVISED CLAIM FORM**
                                                  )
24

25

26

27

28

1    Plaintiffs have reviewed Apple's Request for Reconsideration filed Friday, September 16,

2  2011, in response to the Court's Order Requesting Revised Proposed Order for Preliminary

3  Approval [Docket No. 77] (hereinafter, "Order"). The Order specifically provided for an additional

4  mechanism to give Settlement Class Members who no longer have their original computers a way

5  to participate in the settlement by allowing them to submit the unique product identification

6  number found on their Replacement Adaptors to satisfy the "proof of purchase" requirement. The

7  settlement period covers several years and it is understandable that at least some class members

8  have not retained the necessary documentation needed for the "proof of purchase" requirement.

9  Plaintiffs agree that if there is another way to prove "proof of purchase" for those Class Members,

10  then amendment to the Claim Form would be beneficial.

11    However, Plaintiffs have heard Apple's concerns about the potential risks of fraud

12  associated with providing product identification numbers. Plaintiffs have an interest in ensuring

13  that the benefits from this settlement are conferred on the Settlement Class Members. As such,

14  Plaintiffs are receptive to Apple's offer to provide additional procedures to allow Settlement Class

15  Members to satisfy the "proof of purchase" requirement. Specifically, Apple states that it "is

16  prepared to revise the claim form to inform Settlement Class Members of the availability of

17  duplicate receipts from Apple, and the procedures being created by Apple to make duplicate

18  receipts available to them." [Docket No. 78 at pp. 3-4.] Should the Court grant Apple's request for

19  reconsideration, Plaintiffs request that the revised Proposed Order and revised Claim Form reflect,

20  as Apple represents, a procedure for Settlement Class Members to obtain duplicate receipts from

21  Apple.

22  //

23  //

24

25

26

27

28

PLAINTIFFS' RESPONSE TO APPLE'S REQUEST FOR RECONSIDERATION OF ORDER REQUEST
REVISED PROPOSED ORDER
0038799/001/ 506355v02

1     Respectfully submitted,

2

3   Dated: September 19, 2011                    ZELDES & HAEGGQUIST, LLP
                                                 HELEN I. ZELDES (220051)
4                                                ALREEN HAEGGQUIST (221858)
                                                 AMBER ECK (177882)
5                                                AARON M. OLSEN (259923)

6

7                                                By:      /s/  Helen I. Zeldes
                                                          HELEN I. ZELDES
8
                                                 625 Broadway, Suite 906
9                                                San Diego, CA  92101
                                                 Telephone: (619) 342-8000
10                                               Facsimile: (619) 342-7878
                                                 helenz@zhlaw.com
11                                               alreenh@zhlaw.com

12                                               STEVEN A. SKALET (admitted *pro hac vice*)
                                                 CRAIG L. BRISKIN (admitted *pro hac vice*)
13                                               MEHRI & SKALET, PLLC
                                                 1250 Connecticut Avenue., NW, Suite 300
14                                               Washington, DC 20036
                                                 Telephone: (202) 822-5100
15                                               Facsimile: (202) 822-4997
                                                 sskalet@findjustice.com
16                                               cbriskin@findjustice.com

17                                               LINER GRODE STEIN YANKELEVITZ
                                                 SUNSHINE REGENSTREIF & TAYLOR LLP
18                                               ANGELA C. AGRUSA (131337)
                                                 NICK S. MOVAGHAR (232777)
19                                               1100 Glendon Avenue, 14th Floor
                                                 Los Angeles, CA 90024-3503
20                                               Telephone:  (310) 500-3500
                                                 Facsimile:  (310) 500-3501
21                                               aagrusa@linerlaw.com
                                                 nmovaghar@linerlaw.com
22
                                                 MCNICHOLAS & MCNICHOLAS LLP
23                                               PATRICK MCNICHOLAS (125868)
                                                 CATHRINE B. SCHMIDT (212827)
24                                               10866 Wilshire Boulevard Suite 1400
                                                 Los Angeles, CA 90024-4338
25                                               Telephone: (310) 474-1582
                                                 Facsimile:  (310) 475-7871
26                                               pmc@mcnicholaslaw.com
                                                 cbs@mcnicholaslaw.com
27
                                                 Attorneys for Plaintiffs
28

PLAINTIFFS' RESPONSE TO APPLE'S REQUEST FOR RECONSIDERATION OF ORDER REQUEST
REVISED PROPOSED ORDER
0038799/001/ 506355v02

Exhibit 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re: MagSafe Apple Power Adapter
Litigation

NO. C 09-01911 JW

**ORDER GRANTING DEFENDANT'S
REQUEST FOR RECONSIDERATION;
REQUESTING REVISED PROPOSED
ORDER AND CLAIM FORM**

_____/

15    Presently before the Court is Defendant Apple Inc.'s Request for Reconsideration of Order

16  Requesting Revised Proposed Order for Preliminary Approval of Class Settlement.  (hereafter,

17  "Request," Docket Item No. 78.)  Defendant requests that the Court reconsider its Order Requesting

18  Revised Proposed Order for Preliminary Approval of Class Settlement; Revised Notice of Pendency

19  and Proposed Settlement of Class Action; and Revised Claim Form, filed on September 14, 2011.

20  (hereafter, "September 14 Order," Docket Item No. 77.)  Plaintiff does not object to Defendant's

21  request for modification.  (See Docket Item No. 79.)

22    Specifically, Defendant requests that the Court reconsider the portion of its September 14

23  Order that directed the parties to modify the proof of purchase requirement in the parties' Claim

24  Form so as to allow claimants who cannot locate a receipt for their Replacement Adapter to submit,

25  in lieu of a receipt or other proof of purchase, the serial number of their Replacement Adapter, the

26  date on which it was purchased and the price paid.  (Request at 1.)  Defendant contends that

27  requiring an actual proof of purchase to make a claim—rather than merely supplying a serial

28  number—is "essential under the circumstances of this case" because, under the Court's proposed

1   approach, settlement class members could simply provide the serial number of an adapter that was

2   not purchased as a Replacement Adapter and thereby improperly claim benefits under the settlement.

3   (Id. at 2-4.)  As an alternative to the Court's proposal, Defendant proposes that "Apple will create a

4   special mechanism for Settlement Class Members to obtain duplicate receipts from Apple" and will

5   revise the claim form "to inform Settlement Class Members of the availability of duplicate receipts

6   from Apple, and the procedures being created by Apple to make duplicate receipts available to

7   them." (Request 1, 3-4.)

8          Upon review, the Court finds good cause to modify the September 14 Order.  Accordingly,

9   the Court GRANTS Defendant's Request and MODIFIES its September 14 Order, as follows:

10         The Court's previous modification of the Claim Form is no longer in effect.[1]  Rather, the

11  parties shall revise the Claim Form to inform class members of the availability of duplicate receipts

12  and the procedure by which claimants may obtain a duplicate receipt from Apple, in a form that is

13  substantially similar to the following bolded language:

14         You must attach a Proof of Purchase of your Replacement Adapter to your Claim
        Form.  "Proof of Purchase" means an invoice, receipt or other document (such as a
15      credit card statement or cancelled check) evidencing that the product you purchased
        was a Replacement Adapter, the price paid, date of purchase, and the name and address
16      of the entity from whom the Replacement Adapter  was purchased.  If the Proof of
        Purchase does not specifically identify the purchase of a Replacement Adapter or the
17      price paid, you may submit a receipt, bank or credit card statement, or Apple email
        receipt, showing a purchase from any Apple store (online or in-person) in the amount
18      of $79 or greater, and must declare in the Claim Form that the product purchased was
        a Replacement Adapter, state the price paid (if not shown in the Proof of Purchase),
19      and highlight the item in the Proof of Purchase that includes the Replacement Adapter.
        **If you cannot locate any of the documents above, you may obtain a duplicate**
20      **receipt from Apple with regard to your purchase of a Replacement Adapter.  To**
        **obtain a duplicate receipt from Apple, you must [describe the procedure by which**
21      **claimants may obtain a duplicate receipt].**

22   (See Claim Form at 2.)

23   _____

24         [1]   (Claim Form, Docket Item No. 70-5.)  Specifically, the parties need not comply with the
     portion of the Court's September 14 Order instructing the parties to include the following statement
25   in the definition of "Proof of Purchase" on the proposed Claim Form: "If you cannot locate any of
     the documents above, you may submit the unique product identification number found on your
26   Replacement Adapter, the approximate date on which your Replacement Adapter was purchased,
     and the price paid for your Replacement Adapter, and must declare in the Claim Form that you
27   purchased the product as a Replacement Adapter." (See September 14 Order at 1-2.)

28

2

**United States District Court**
For the Northern District of California

In all other respects, the September 14 Order shall remain in effect and binding on the parties.[2]

On or before **September 22, 2011**, the parties shall file a revised Proposed Order for Preliminary Approval of Class Action Settlement, revised Notice of Pendency And Proposed Settlement of Class Action and revised Claim Form which shall include the changes identified above for the Court's approval.[3]

Dated:  September 20, 2011

JAMES WARE
United States District Chief Judge

United States District Court
For the Northern District of California

---

[2]   In particular, consistent with the September 14 Order, the parties shall revise the Notice of Pendency And Proposed Settlement of Class Action and Claim Form to allow class members to opt-out of the class by mailing the Claim Form—completed with the claimant's name, address, telephone number, the serial number of the Subject Computer and the claimant's signature—to the Claims Administrator.  (See September 14 Order at 2.)

[3]   To the extent that these modifications have delayed the issuance of class notice and hence all other relevant deadlines, the parties may propose a new Final Fairness Hearing date that is consistent with the Court's calendar.

3

**United States District Court**
For the Northern District of California

1     **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2     Alexei Klestoff aklestoff@mofo.com
        Alreen Haeggquist alreenh@zhlaw.com

3     Andrew David Muhlbach amuhlbach@mofo.com
        Angela Christine Agrusa aagrusa@linerlaw.com

4     Anne M. Hunter Ahunter@mofo.com
        Craig L. Briskin cbriskin@findjustice.com

5     Helen I. Zeldes helenz@zhlaw.com
        Keri Montrose kmontrose@jrsfllp.com

6     Michael Jeffrey Saltz msaltz@jrsfllp.com
        Patrick McNicholas mel@mcnicholaslaw.com

7     Penelope Athene Preovolos ppreovolos@mofo.com
        Steven A. Skalet sskalet@findjustice.com

8

9     **Dated:  September 20, 2011**                 **Richard W. Wieking, Clerk**

10

11                                       **By:  /s/ JW Chambers**
                                          **Susan Imbriani**

12                                           **Courtroom Deputy**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 10

IT IS SO ORDERED

*James Ware*

Judge James Ware

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE POWER ADAPTER LITIGATION | Case No.  C09-01911 JW |
| | CLASS ACTION |

**ORDER GRANTING CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS, APPROVAL OF FORMS AND METHODS OF NOTICE, AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE**

1

2      WHEREAS, this Court has reviewed the Settlement Agreement and Release

3  ("Agreement") entered into by and among defendant Apple Inc. ("Apple"), Naotaka Kitagawa,

4  Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin, as individuals and as

5  "Class Representatives" (collectively the "Parties" in the above-referenced "Action"), together

6  with all exhibits thereto, the record in this case, and the arguments of counsel;

7      WHEREAS, this Court preliminarily finds, for the purposes of settlement only, that the

8  class alleged in the Action meets all the prerequisites of Federal Rules of Civil Procedure Rule 23

9  for class certification, including numerosity, commonality, typicality, ascertainability,

10  predominance of common issues, superiority, and that the Class Representatives and Class

11  Counsel are adequate representatives of the Settlement Class;

12      IT IS HEREBY ORDERED AS FOLLOWS:

13      1.  All terms and definitions used herein have the same meanings as set forth in the

14  Agreement.

15      2.  The proposed settlement set forth in the Agreement is hereby preliminarily approved

16  as being fair, reasonable and adequate such that notice thereof should be given to members of the

17  Settlement Class (as defined in the following paragraph).

18      3.  The Action is provisionally certified as a class action, for the purposes of settlement

19  only, pursuant to Rule 23(b)(3), which class is defined as follows:

20        All United States residents who (1) are the original owners of an Apple MacBook
or MacBook Pro computer that shipped with a 60W or 85W MagSafe MPM-1
21        ("T") Power Adapter ("Subject Computers") and/or (2) purchased a standalone
60W or 85W MagSafe MPM-1 ("T") Power Adapter.  The Settlement Class
22        includes original owners who received their Subject Computer(s) as a gift.  The
Settlement Class excludes Apple; any entity in which Apple has a controlling
23        interest; Apple's directors, officers, and employees; Apple's legal representatives,
successors, and assigns; and all persons who validly request exclusion from the
24        Settlement Class.

25      4.  Class Counsel and the Class Representatives are hereby found to be and are therefore

26  appointed as adequate representatives of the Settlement Class:  Helen I. Zeldes of Zeldes &

27  Haeggquist, LLP, 625 Broadway, Suite 906, San Diego, CA 92101, and Steven A. Skalet of

28  Mehri & Skalet, PLLC, 1250 Connecticut Avenue NW, Suite 300, Washington, DC 20036, are

sf-3045926

1

2    hereby appointed as Class Counsel, and Naotaka Kitagawa, Timothy J. Broad, Jesse Reisman,

3    Tracey Hackwith, and Michael Martin are hereby appointed as Class Representatives.

4        5.    Certification of the Settlement Class shall be solely for settlement purposes and

5    without prejudice to the Parties in the event that the Agreement is not finally approved by this

6    Court or otherwise does not take effect.  Certification of the Settlement Class shall be vacated and

7    shall have no effect in the event that the Agreement is not finally approved by this Court or

8    otherwise does not take effect.

9        6.    The Notice of Pendency and Proposed Settlement of Class Action ("Class Notice");

10   the Summary Notice of Settlement ("Summary Notice"); the Postcard Notice of Settlement

11   ("Postcard Notice"), and the Claim Form, Instructions, and Release ("Claim Form"); which are

12   attached to the Agreement as Exhibits A-D, respectively, are hereby approved as to form.  The

13   Claim Form shall inform class members of the availability of duplicate receipts and the procedure

14   by which Settlement Class Members may obtain a duplicate receipt from Apple.

15       7.    A copy of the Class Notice, together with the Claim Form, shall be posted and

16   available for download on a settlement website, www._____.com (the "Settlement Website")

17   and shall be mailed at no charge to Settlement Class Members who call a toll-free number to be

18   established at Apple's expense ("Toll-Free Number").  Apple shall use best efforts to include the

19   term "adapter" in the domain name of the settlement website.  This information shall remain

20   available on the Internet until the last day of the Claims Period.

21       8.    Apple shall send via email an electronic copy of the Summary Notice to each

22   Settlement Class Member for whom Apple has an email address in its warranty registration

23   database.

24       9.    Apple shall mail the Settlement Postcard to all Class Members for whom e-mailed

25   notice is returned as undeliverable.

26       10.    A copy of the Summary Notice shall be published by Apple once in *USA Today*, a

27   newspaper of national circulation, once in *Wired* magazine, and once on a different date in

28   *Macworld*.  The notice shall not be less than 1/4 of a page in size.  The Summary Notice shall

     include the address of the Settlement Website and the Toll-Free Number.

sf-3045926

1

2      11.   Dissemination of notice by the means set forth in paragraphs 6-10 above shall

3 commence on or before November 8, 2011 and shall be completed on or before November 22,

4 2011. The "Notice Date" as defined in the Stipulation of Settlement shall be November 22, 2011.

5      12.   Apple shall, in good faith, administer the process of receiving, handling, processing,

6 and paying claims through Kurtzman Carson Consultants.  Class Counsel shall have the right to

7 inquire of Apple's counsel regarding any aspect of implementation of the settlement, including

8 but not limited to the settlement administration process and the treatment of individual Settlement

9 Class Member's claims.  Class Counsel shall also receive quarterly written reports summarizing

10 claims received and action taken thereon at Class Counsel's request.

11      13.   The Court finds that the forms of notice to the Settlement Class regarding the

12 pendency of the Action and of this settlement and Class Counsel's fee and expense application

13 and application for incentive award set forth above, and the methods of dissemination to members

14 of the Settlement Class in accordance with the terms of this Order, constitute the best notice

15 practicable under the circumstances and constitute valid, due, and sufficient notice to all members

16 of the Settlement Class, complying fully with the requirements of Rule 23(c)(2)(B) and the United

17 States Constitution.

18      14.   Any Settlement Class Member who seeks to be excluded from the Settlement Class

19 must so indicate on the Claim Form and mail it, postmarked on or before January 6, 2012 (45

20 days from the final "Notice Date"), to the claims administrator (Kurtzman Carson Consultants).

21 Any member of the Settlement Class who does not, in connection with the settlement notices, file

22 a valid and timely request for exclusion on or before January 6, 2012 will be bound by the Final

23 Judgment dismissing the Action on the merits and with prejudice.

24      15.   All papers in support of Class Counsel's petition for award of attorney fees and

25 reimbursement of expenses and request for incentive awards to the Class Representatives shall be

26 filed on or before December 19, 2011.

27      16.   Any objections to the final settlement or class counsel's petition for award of

28 attorney fees and reimbursement of expenses and request for incentive awards to the Class

Representatives shall be filed and served on or before January 6, 2012 (45 days from the "Final

3

1

2   Notice" date).   Such objections shall be heard and any papers submitted in support of said

3   objections shall be considered by the Court at the Final Hearing only if, on or before January 6,

4   2012, such objector files with the Court a notice of his, her or its objections, submits documentary

5   proof that he, she or it is a member of the Settlement Class, states the basis for such objections,

6   and serves copies of the foregoing and all other papers in support of such objections on counsel

7   for the Parties identified in the Class Notice.   In order to be considered for hearing, all objections

8   must be actually received by counsel identified in the Class Notice on or before January 6, 2012.

9         17.   Any Opposition to Class Counsel's petition for award of attorney fees and

10   reimbursement of expenses and request for incentive awards to the Class Representatives shall

11   also be filed on January 6, 2012.

12         18.   All papers in support of the application for final approval of the settlement shall be

13   filed on or before January 18, 2012.

14         19.   Any Reply in Support of Class Counsel's petition for award of attorney fees and

15   reimbursement of expenses and request for incentive awards to the Class Representatives shall be

16   filed on January 27, 2012.

17         20.   Class Counsel's response to any objections to the Final Settlement shall also be filed

18   on January 27, 2012.

19         21.   A hearing (the "Final Hearing") shall be held by the Court on February 27, 2012, at

20   9:00 a.m., to consider and determine whether the requirements for certification of the Settlement

21   Class have been met and whether the proposed settlement of the Action on the terms set forth in

22   the Agreement should be approved as fair, reasonable, adequate, and in the best interests of the

23   Settlement Class Members; whether Class Counsel's fee and expense application and application

24   for service award, included as part of the settlement, should be approved; and whether the Final

25   Judgment approving the settlement and dismissing the Action on the merits and with prejudice

26   against the Class Representatives and all Settlement Class Members should be entered.   The Final

27   Hearing may, from time to time and without further notice to the Settlement Class (except those

28   who have filed timely and valid objections and requested to speak at the fairness hearing), be

continued or adjourned by Order of the Court.

4

1

2       22.   Settlement Class Members who wish to claim a cash payment and whose Adapter

3   showed signs of Strain Relief Damage prior to the Notice Date must mail their Claim Form and

4   supporting documentation postmarked within 120 days from the Notice Date.  Settlement Class

5   Members whose Adapter shows signs of Strain Relief Damage now or in the future may obtain a

6   replacement under the Adapter Replacement Program described in Section II.F. of the Agreement.

7       23.   Counsel for the Parties are hereby authorized to utilize all reasonable procedures in

8   connection with the administration of the settlement which are not materially inconsistent with

9   either this Order or the terms of the Agreement.

10

11   Dated: September 27, 2011          By:  Order of the U.S. District Court for the
                                                   Northern District of California

12

13                                         JAMES WARE
                                       United States District Chief Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   IN RE MAGSAFE POWER ADAPTER          Case No.  C09-01911 JW
     LITIGATION
13                                         CLASS ACTION

14

15

16

17

18

19                          EXHIBIT A

20              NOTICE OF PENDENCY AND PROPOSED
                  SETTLEMENT OF CLASS ACTION
21

22

23

24

25

26

27

28

1   UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

2
3   # If you are the original owner of certain MacBook or MacBook Pro computers and/or you purchased a standalone 60W or 85W MagSafe power adapter for these computers, you could be entitled to benefits under a class action settlement.
4
5
6
7   *The United States District Court, Northern District of California, authorized this notice.  This is not a solicitation from a lawyer.*
8

9   • The settlement will provide a cash payment if you are the original owner of certain Apple MacBook or MacBook Pro computers or separately purchased an Apple 60W or 85W MagSafe "T" Power Adapter, the Adapter showed signs of Strain Relief Damage, and you purchased a Replacement Adapter (defined below) within the first three years following the initial purchase of the computer or Adapter.  The amount of the cash payment will vary; see the chart on page 6 for payment amounts.  You may also be able to obtain a replacement adapter at no charge from Apple if your adapter shows signs of Strain Relief Damage now or in the future.

14  • You must be a United States resident who (1) is the original owner (by purchase or gift) of an Apple MacBook or MacBook Pro computer listed on Exhibit 1 hereto and/or (2) purchased a standalone 60W or 85W MagSafe "T" Power Adapter.  For convenience, these computers are referred to as the "Subject Computers" and the adapters shipped with the Subject Computer or purchased standalone are referred to as "Adapters."

18  • To be eligible for a cash payment, the Replacement Adapter that you purchased because your Adapter showed signs of Strain Relief Damage (defined below) must be an Apple-branded 60W or 85W MagSafe Power Adapter (referred to as a "Replacement Adapter").  You must have purchased the Replacement Adapter at your own expense within the first three years following the initial purchase of the Subject Computer or Adapter.

21  • If your Adapter shows signs of Strain Relief Damage now or in the future and you have not yet purchased a Replacement Adapter, you may obtain a replacement adapter from Apple free of charge.  See section 11 below for details and deadlines.

1   •  The Adapter shipped with your Subject Computer or purchased standalone must look like
2      this to be covered by the settlement:



9   •  Your legal rights are affected whether you act or don't act.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a payment. |
| EXCLUDE YOURSELF | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against Apple about the legal claims in this case. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment.  Give up rights. |

18   •  These rights and options—and the deadlines to exercise them—are explained in this notice.

19   •  The Court in charge of this case still has to decide whether to approve the settlement.
20      Payments will be made if the Court approves the settlement and after appeals are resolved.
     Please be patient.

| | |
|---|---|
| 1 | |

**WHAT THIS NOTICE CONTAINS**

**BASIC INFORMATION** .................................................. **PAGE 4**
1.   Why did I get this notice package?
2.   What is this lawsuit about?
3.   Why is this a class action?
4.   Why is there a settlement?

**WHO IS IN THE SETTLEMENT**................................... **PAGE 5**
5.   How do I know if I am part of the settlement?
6.   Are there exceptions to being included?
7.   If I purchased a Subject Computer but did not purchase a
     Replacement Adapter as described, am I included in the Class?
8.   I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET**.......................... **PAGES 5-6**
9.   What does the settlement provide?
10.  What can I get from the settlement?

**HOW YOU GET A REPLACEMENT ADAPTER**.................................. **PAGES 6-7**
11.  What can I get if my Adapter shows signs of Strain Relief Damage in the future?

**HOW YOU GET A CASH PAYMENT—**
**SUBMITTING A CLAIM FORM**................................................... **PAGES 7**
12.  How can I get a cash payment?
13.  When would I get my cash payment?
14.  What am I giving up to get a cash payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................... **PAGES 8**
15.  How do I get out of the settlement?
16.  If I don't exclude myself, can I sue Apple for the same thing later?
17.  If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ...................................... **PAGE 8-9**
18.  Do I have a lawyer in this case?
19.  How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ............................................ **PAGES 9**
20.  How do I tell the Court that I don't like the settlement?
21.  What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** .....................................**PAGES 9-10**
22.  When and where will the Court decide whether to approve the settlement?
23.  Do I have to come to the hearing?
24.  May I speak at the hearing?

**IF YOU DO NOTHING** .................................................................. **PAGE 10**
25.  What happens if I do nothing at all?

**GETTING MORE INFORMATION**.........................................**PAGE 10-11**
26.  Are there more details about the settlement?
27.  How do I get more information?

1                                  **BASIC INFORMATION**

2   **1. Why did I get this notice package?**

3   You may be a United States resident (person or entity) who is the original owner of a Subject
4   Computer or who separately purchased an Adapter.

5   The Court ordered this notice to be sent to you because you have a right to know about a
      proposed settlement of a class action lawsuit, and about your options, before the Court
6   decides whether to approve the settlement. If the Court approves it and after any appeals are
7   resolved, an administrator will make the payments that the settlement allows.

8   This package explains the lawsuit, the settlement, your legal rights, what benefits are
      available, who is eligible for them, and how to get them.

9
      The Court in charge of the case is the United States District Court for the Northern District of
10  California, and the case is known as *In re Magsafe Apple Power Adapter Litigation*, Case No.
      C09-01911-JW. The people who sued are called Plaintiffs, and the company they sued, Apple
11  Inc., is called the Defendant.

12  **2. What is this lawsuit about?**

13
      The lawsuit claimed that the Adapter is defective in that it "dangerously frays, sparks and
14  prematurely fails to work," and that Apple engaged in misrepresentations regarding the
      Adapter. Apple denies all allegations and has asserted many defenses. The settlement is not
15  an admission of wrongdoing.

16  **3. Why is this a class action?**

17
      In a class action, one or more people, called Class Representatives (in this case Naotaka
18  Kitagawa, Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin), sue on
      behalf of people who have alleged similar claims. All these people are a Class or Class
19  Members. One court resolves the issues for all Class Members, except for those who choose
20  to exclude themselves from the Class. United States District Court Judge James Ware is in
      charge of this class action.

21  **4. Why is there a settlement?**

22
      The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a
23  settlement. That way, they avoid the cost of a trial, and settlement benefits go to the Class
24  Members. The Class Representatives and the attorneys think the settlement is best for the
      Class Members.

25

26

27

28

1

## WHO IS IN THE SETTLEMENT

2
3 To see if you are eligible for benefits, you first have to determine whether you are a Class Member.

4 **5. How do I know if I am part of the settlement?**

5
6
7
8 Judge Ware has decided that everyone who fits this description is a Class Member: All United States residents who (1) are the original owners of an Apple MacBook or MacBook Pro computer that shipped with a 60W or 85W MagSafe MPM-1 ("T") Power Adapter ("Subject Computers") and/or (2) purchased a standalone 60W or 85W MagSafe MPM-1 ("T") Power Adapter.  The Settlement Class includes original owners who received their Subject Computer(s) as a gift.

9 **6. Are there exceptions to being included?**

10
11 The Class does *not* include Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; and all persons who validly request exclusion from the Settlement Class.

12
13 **7. If I purchased a Subject Computer or Adapter but did not pay for a Replacement Adapter as described, am I included in the Class?**

14
15 Yes, because if your Adapter shows signs of Strain Relief Damage now or in the future, you may be eligible for a free replacement from Apple.

16 **8. I'm still not sure if I am included.**

17
18 If you are still not sure whether you are included, you can visit the website, www._____.com, for more information.

19

## THE SETTLEMENT BENEFITS—WHAT YOU GET

20 **9. What does the settlement provide?**

21
22
23
24 Apple has agreed to provide a cash payment to Class Members who purchased a Replacement Adapter for a Subject Computer or Adapter covered by the settlement and who send in a valid claim form.  The cash payment covers the purchase of a Replacement Adapter within the first three years following the initial purchase of the Subject Computer or Adapter, and before [notice date]. The amount of the cash payment will vary depending on when the Replacement Adapter was purchased.

25
26 You may also be able to obtain a replacement adapter at no charge from Apple if your adapter shows signs of Strain Relief Damage now or in the future.

27

28

1  **10. What cash payment amount can I get under the settlement?**

2  The settlement provides for different cash payments depending on when you purchased a
3  Replacement Adapter.

4

| Year of Purchase of Replacement Adapter | Cash Payment Amount | Must Show the Following to Receive Cash Payment |
|---|---|---|
| During the first year following the initial purchase of the Subject Computer or Adapter | Amount paid for the Replacement Adapter (excluding sales tax and shipping/handling fees) not to exceed $79.00. | 1. Proof of purchase of Replacement Adapter; and 2. Valid claim form. |
| During the second year following the initial purchase of the Subject Computer or Adapter | $50.00 | 1. Proof of purchase of Replacement Adapter; and 2. Valid claim form. |
| During the third year following the initial purchase of the Subject Computer or Adapter | $35.00 | 1. Proof of purchase of Replacement Adapter; and 2. Valid claim form. |

21  **There is a limit of three refunds per Subject Computer.**

22
23                    **HOW YOU GET A REPLACEMENT ADAPTER**

24  **11. What can I get if my Adapter shows signs of Strain Relief Damage in the future?**

25  If your Adapter shows signs of Strain Relief Damage now or in the future, you may claim a
    replacement under Apple's Adapter Replacement Program by taking your Adapter and
26  computer to an Apple Retail Store or Apple Authorized Service Provider or contacting
    AppleCare.
27

28

Strain Relief Damage means fraying, melting, straining, sparking, weakening, discoloration, bubbling, overheating and/or separation of the Adapter's strain reliefs.  For more information regarding Strain Relief Damage or Apple's Adapter Replacement Program, see http://support.apple.com/kb/TS1713.

For Adapters shipped with a Subject Computer, you will have three years from the date of purchase of the Subject Computer or 180 days from the Notice Date, whichever is later, to claim a replacement adapter.  For Adapters purchased separately, you will have three years from the date of purchase of the Adapter or 180 days from the Notice Date, whichever is later, to claim a replacement.  **If you do not claim a replacement adapter within these time periods, you will lose your right to obtain a replacement.**  Apple will continue the Adapter Replacement Program until December 31, 2012; Apple will have no obligation to honor adapter replacement claims made after December 31, 2012.

### HOW YOU GET A CASH PAYMENT—SUBMITTING A CLAIM FORM

**12. How can I get a cash payment?**

To qualify for a cash payment, you must send in a claim form.  A claim form, including instructions on how to make a claim, is attached to this Notice.  You can also get a claim form on the Internet at www._____.com or by calling 1-***-***-****.

You must read the instructions carefully, fill out the form as directed in the instructions, include all the documents the form asks for, and sign the claim form under penalty of perjury. You must mail the claim form postmarked on or before [date 120 days from the Notice Date]. **If you fail to return your claim form by the required date, your claim will be rejected, and you will be deemed to have waived all rights to receive any cash benefit under this settlement.**

Follow all the instructions on the claim form.

**13. When would I get my cash payment?**

The Court will hold a hearing on February 27, 2012 at ___ a.m./p.m., to decide whether to approve the settlement.  If Judge Ware approves the settlement, there may be appeals.  The appeal process can take time, perhaps more than a year.  Please be patient.

**14. What am I giving up to get a cash payment or stay in the Class?**

Unless you choose to exclude yourself, you will remain in the Class.  That means that you are eligible for a cash payment but can't sue, continue to sue, or be part of any other lawsuit against Apple about the legal issues in this case.  It also means that all of the Court's orders will apply to you and legally bind you.  If you sign the claim form, you will agree to a "Release of Claims," included with the claim form, which describes exactly the legal claims that you are giving up.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Apple, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

### 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must fill out and mail the section of the Claim Form saying that you want to be excluded from *In re Magsafe Apple Power Adapter Litigation*, Case No. C09-01911-JW. Be sure to include your name, address, telephone number, the serial number of your Subject Computer, and your signature. You must mail your exclusion request postmarked no later than **January 6, 2012**, to:

**Claims Administrator**
**[address]**

You can't exclude yourself on the phone or by fax or e-mail. If you ask to be excluded, you will not receive any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Apple in the future about the legal issues in this case.

### 16. If I don't exclude myself, can I sue Apple for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Apple for the claims that this settlement resolves. You must exclude yourself from *this* Class to pursue your own lawsuit. Remember, your exclusion must be postmarked on or before January 6, 2012.

### 17. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you will not lose any right you may have to sue, continue to sue, or be part of a different lawsuit against Apple about the legal issues in this case.

## THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

The Class is represented in this case by Helen I. Zeldes of Zeldes & Haeggquist, LLP in San Diego, California and Steven A. Skalet of Mehri & Skalet, PLLC in Washington, DC. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

1   **19. How will the lawyers be paid?**

2   Class Counsel will ask the Court for attorneys' fees and expenses of up to $3.1 million, and

3   service awards to Plaintiffs in the amount of $5,000 each (total not to exceed $30,000).  Apple
    will separately pay the fees, service awards, and expenses that the Court awards.  These

4   amounts will not come out of any funds for payments to Class Members.  Apple has agreed
    not to oppose these fees, service awards, and expenses.  Apple will also separately pay the

5   costs to administer the settlement.

6                           **OBJECTING TO THE SETTLEMENT**

7   You can tell the Court that you don't agree with the settlement or some part of it.

8   **20. How do I tell the Court that I don't like the settlement?**

9
    If you're a Class Member, you can object to the settlement if you don't like any part of it.
10  You can give reasons why you think the Court should not approve it.  The Court will consider
    your views.  To object, you must send a letter saying that you object to the settlement in *In re*
11  *Magsafe Apple Power Adapter Litigation*, Case No. C09-01911-JW.  Be sure to include your

12  name, address, telephone number, the serial number of your Subject Computer, your
    signature, and the reasons you object to the settlement.  If you have objected to other class

13  action settlements on more than 3 occasions, you must list all cases in which you have filed an
    objection.  The objection and any supporting papers must be mailed to and actually received

14  by all of the following three addressees no later than **January 6, 2011:**

15

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
16| Clerk of the Court | Helen I. Zeldes | Penelope A. Preovolos |
  | United States District Court | Zeldes & Haeggquist, LLP | Morrison & Foerster LLP |
17| for the Northern District of | 625 Broadway, Suite 906 | 425 Market Street |
  | California | San Diego, CA  92101 | San Francisco, CA 94105- |
18| San Jose Division |  | 2482 |
  | 280 South 1st Street |  |  |
19| San Jose, CA 95113 |  |  |

20

21  **21. What's the difference between objecting and excluding?**

22  Objecting is simply telling the Court that you don't like something about the settlement.  You
    can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't
23  want to be part of the Class.  If you exclude yourself, you have no basis to object, because the
    case no longer affects you.
24

25                          **THE COURT'S FAIRNESS HEARING**

26  The Court will hold a hearing to decide whether to approve the settlement.  You may attend,
    and you may ask to speak, but you don't have to.
27

28

1  **22. When and where will the Court decide whether to approve the settlement?**

2  The Court will hold a Fairness Hearing at _____ a.m./p.m. on February 27, 2011, at the United
3  States District Court for the Northern District of California, San Jose Division, Courtroom 8
   (4th Floor) located at 280 South 1st Street, San Jose, California, 95113. At this hearing the
4  Court will consider whether the settlement is fair, reasonable, and adequate. If there are
   objections, the Court will consider them. Judge Ware will listen to people who have asked to
5  speak at the hearing. The Court may also consider how much to award Class Counsel. After
   the hearing, the Court will decide whether to approve the settlement. We do not know how
6  long these decisions will take.

7  **23. Do I have to come to the hearing?**

8
   No. Class Counsel will answer questions Judge Ware may have. But, you are welcome to
9  come at your own expense. If you send an objection, you don't have to come to Court to talk
   about it. As long as your written objection was received on time, the Court will consider it.
10 You may also pay your own lawyer to attend, but it's not necessary. Finally, you may seek to
11 intervene in the action, but you need not do so.

12 **24. May I speak at the hearing?**

13 You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must
14 send a letter saying that you intend to appear and speak at the Fairness Hearing in "*In re
   Magsafe Apple Power Adapter Litigation*, Case No. C09-01911-JW." Be sure to include the
15 case name and number, your name, address, telephone number, and your signature. Your
   letter of intent to appear and speak must be received by the Clerk of the Court, Class Counsel,
16 and Defense Counsel, at the three addresses in question 20, no later than _____,
17 2011. You cannot speak at the hearing if you excluded yourself.

18                           **IF YOU DO NOTHING**

19 **25. What happens if I do nothing at all?**

20 If you do nothing, you will be part of the settlement class. You will not receive a cash
   payment from the settlement unless you file a valid and timely Claim Form. You won't be
21 able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Apple
   about the legal issues in this case.
22

23                      **GETTING MORE INFORMATION**

24 **26. Are there more details about the settlement?**

25 This notice summarizes the proposed settlement. More details are in a Settlement Agreement.
   Copies of the Settlement Agreement and the pleadings and other documents relating to the
26 case are on file at the United States District Court for the Northern District of California, San
   Jose Division, and may be examined and copied at any time during regular office hours at the
27 Office of the Clerk, 280 South 1st Street, San Jose, California, 95113.

28

1 | **27. How do I get more information?**

2 | You can visit the settlement website at www._____.com, where you will find
3 | answers to common questions about the settlement, a claim form, plus other information.
   | You may also write to Helen I. Zeldes, Zeldes & Haeggquist, LLP, 625 Broadway, Suite 906,
4 | San Diego, CA 92101, 619-342-8000 or Steven A. Skalet, Mehri & Skalet, PLLC, 1250
   | Connecticut Ave. Suite 300, Washington DC, 20036, 202-822-5100. **Questions may not be**
5 | **directed to the Court.**

6 |                                                                      Date: _____, 2011.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10                         SAN JOSE DIVISION
11
12   IN RE MAGSAFE POWER ADAPTER          Case No.  C09-01911 JW
13   LITIGATION
                                          CLASS ACTION
14
15
16
17
18                            EXHIBIT D
19                           CLAIM FORM
20
21
22
23
24
25
26
27
28

sf-3045904

1  **Apple MagSafe Adapter Claim Form (MacBook and MacBook Pro "T" Adapters)**

2  **(Including Instructions, Claim Form, Release and Declaration)**

3  **INSTRUCTIONS**

4  **READ THESE INSTRUCTIONS CAREFULLY. IF YOU FAIL TO FOLLOW THESE**
   **INSTRUCTIONS, YOU MAY LOSE CERTAIN BENEFITS TO WHICH YOU**
5  **MIGHT OTHERWISE BE ENTITLED.**

6  1. **Summary of Key Provisions**

7  The settlement will provide a cash payment if you are the original owner of an Apple
   MacBook or MacBook Pro computer (certain models) or separately purchased an Apple 60W
8  or 85W MagSafe "T" Power Adapter, the Adapter showed signs of Strain Relief Damage, and
   you purchased a Replacement Adapter (defined below) within the first three years following
9  the initial purchase of the computer or Adapter. The amount of the cash payment will vary.
   You may also be able to obtain a replacement adapter at no charge from Apple if your
10 Adapter shows signs of Strain Relief Damage in the future. Please refer to the full Notice for
   an explanation and chart of the cash payment amounts.
11
   To receive a cash payment under the settlement, you must fill out and return the attached
12 Claim Form ("Claim Form") postmarked on or before the dates explained in Part 5 below. If
   you fail to return a valid Claim Form by the deadline, your claim will be rejected and you will
13 lose all rights to these benefits.

14 Do not use this Claim Form to request a replacement adapter. Please refer to the full Notice
   for how to request a replacement adapter.
15
   Unless you request exclusion from the class as explained in the Class Notice, you will be
16 bound by the Settlement Agreement and Release and the Final Judgment even if you do not
   return the Claim Form.
17
   If you have any questions while completing the Claim Form, please go to
18 www._____.

19 2. **Who Is Eligible to Claim A Cash Refund Under the Settlement**

20 To qualify, you must be a United States resident who (1) is the original owner of an Apple
   MacBook or MacBook Pro computer listed on Exhibit 1 hereto and/or (2) purchased a
21 standalone 60W or 85W MagSafe MPM-1 ("T") Power Adapter. For convenience, these
   computers are referred to as the "Subject Computers" and the adapters shipped with the
22 Subject Computer or purchased standalone are referred to as "Adapters." You must also have
   purchased an Apple-branded 60W or 85W MagSafe Power Adapter (referred to as a
23 "Replacement Adapter") as a replacement because your Adapter showed signs of Strain
   Relief Damage. You must have purchased the Replacement Adapter at your own expense
24 within the first three years following the initial purchase of the Subject Computer or Adapter.

25 3. **One Claim Form Per Subject Computer or Adapter.**

26 If you purchased more than one Subject Computer or Adapter, experienced an Adapter failure
   and paid for a Replacement Adapter for more than one Subject Computer or Adapter, and you
27 wish to make claims for multiple Subject Computers or Adapters, you must fill out a separate
   Claim Form for each Subject Computer. If you purchased more than one Replacement
28 Adapter for the same Subject Computer or Adapter, you must also fill out a separate Claim

1   Form for each Replacement Adapter purchase. (You may claim refunds for no more than
    three Replacement Adapters per Subject Computer.) You may print multiple copies of this
2   claim form, or make photocopies, if necessary.

3   4.   **How To Make A Claim for a Cash Refund**

4   To make a claim, complete and submit this Claim Form, along with the required
    documentation, in compliance with the instructions below. Send the original of the signed
5   Claim Form and a copy of the required documentation to [Claim Administrator Address].
    Please keep copies for your records.

6

7           Proof of Purchase

8           You must attach a Proof of Purchase of your Replacement Adapter to your Claim
            Form. "Proof of Purchase" means an invoice, receipt or other document (such as a
9           credit card statement or cancelled check) evidencing that the product you purchased
            was a Replacement Adapter, the price paid, date of purchase, and the name and
10          address of the entity from whom the Replacement Adapter was purchased. If the
            Proof of Purchase does not specifically identify the purchase of a Replacement
11          Adapter or the price paid, you may submit a receipt, bank or credit card statement, or
            Apple email receipt, showing a purchase from any Apple store (online or in-person) in
12          the amount of $79 or greater, and must declare in the Claim Form that the product
            purchased was a Replacement Adapter, state the price paid (if not shown in the Proof
13          of Purchase), and highlight the item in the Proof of Purchase that includes the
            Replacement Adapter. If you cannot locate any of the documents above, you may
14          obtain a duplicate receipt from Apple with regard to your purchase of a Replacement
            Adapter. To obtain a duplicate receipt, please go to [the Claims Administrator's
15          website] and follow the instructions on how to get your duplicate receipt.

16  5.   **Claims Deadlines**

17  You must mail the claim form postmarked on or before [notice date plus 120 days]. **If you
    fail to return your claim form by the required date, your claim will be rejected, and you**
18  **will be deemed to have waived all rights to receive a cash payment under this settlement.**

19          **Remember:   To be valid, your Claim Form must be**
            **completely and accurately filled out, signed and dated, and**
20          **must include all requested information, including Proof of**
            **Purchase. If your Claim Form is incomplete, untimely,**
21          **illegible, or contains false information, it may be rejected by**
            **the Claims Administrator.**

22
    6.   **Excluding Yourself From the Settlement**
23
    If you wish to exclude yourself from the settlement, fill out Section D of the Claim Form and
24  mail it, postmarked on or before January 6, 2012, to the claims administrator (Kurtzman
    Carson Consultants). If you do not file a valid and timely request for exclusion on or before
25  January 6, 2012, you will be bound by the Final Judgment dismissing the Action on the merits
    and with prejudice.

26

27

28

**CLAIM FORM**
(Please Print or Type)

**A.    REQUIRED INFORMATION FOR ALL CLAIMANTS**

You must complete every part of this Section A (except that providing your e-mail address is optional). The information you provide will be treated as confidential. Any compensation that Apple provides in response to your claim will be issued to the name and street address you provide. Please print clearly in blue or black ink.

Name (Full name required):            (First)_____ (Last)_____

Address:            _____

City:            _____

State:            _____

Zip Code:            _____

E-mail (optional):            _____

▶ Subject Computer Serial Number: ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

(Location of the serial number varies by computer model. Go to [settlement website] to determine the location of the serial number on your model.)

▶ Date Of Initial Retail Purchase of Your Subject Computer: _____, 20___

▶ Date Replacement Adapter Purchased (if not shown on proof of purchase):
_____, 20_____

▶ Entity From Whom Replacement Adapter Purchased (if not shown on Proof of Purchase):
_____

▶ Amount Paid for Replacement Adapter, excluding tax and shipping/handling fees (if not shown on Proof of Purchase): $_____

1       **B.**    **DECLARATION UNDER PENALTY OF PERJURY FOR CLAIMANTS WHOSE PROOF OF PURCHASE DOES NOT SPECIFICALLY**
2       **IDENTIFY PURCHASE OF AN APPLE PORTABLE POWER ADAPTER**
3

If your Proof of Purchase does not specifically identify the purchase of an Apple 60W or 85W
4   MagSafe Power Adapter, you <u>must</u> check the box below, and sign and date under the box:

5       ☐    I declare under penalty of perjury that the product circled or highlighted in the enclosed invoice, receipt or other document was for a Replacement Adapter for
6       the Subject Computer whose serial number I have filled in above.

7   Signed: _____   Dated: _____

8       **C.**    **CERTIFICATION**

9       **Please read, date, and sign the statement below [required for all claims].**

10  By signing and dating this form below, I acknowledge that I have read the Release attached to
11  this Claim Form, and understand that the Settlement Agreement and Release and the Final Judgment entered in this action will be binding on me, my agents and heirs, and any other person or entity with authority to act on my behalf.
12

13  I state under penalty of perjury that the information provided above is true and correct to the best of my knowledge and belief.

14

15

16  _____   _____

    **SIGNED**        **DATED**
17

                  **REMINDER**
18

19  **Remember to attach your Proof of Purchase to the Claim Form.  If you don't return your claim form postmarked on or before [notice date plus 120 days], your claim for payment will be rejected.**
20

21      **D.**    **REQUEST FOR EXCLUSION**

22  I wish to be excluded from *In re MagSafe Apple Power Adapter Litigation*, Case No. C09-
23  01911-JW.

24  Name (Full name
25  required):    (First)    (Last)

26  Address:

27  City:

28  State:

1

Zip Code: _____

2

Telephone Number: _____

3

4

▶ Subject Computer Serial Number: ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

5

6    (Location of the serial number varies by computer model.  Go to [settlement website] to
     determine the location of the serial number on your model.)

7

8    Signed: _____   Dated: _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## RELEASE

If the Court approves the proposed settlement, it will enter a Judgment that will dismiss the Actions on the merits and with prejudice as to all Settlement Class Members. All Class Members who do not validly and timely request to be excluded from the proposed settlement will be forever barred from prosecuting their own lawsuits and shall be deemed, on behalf of themselves and their heirs, assigns, and successors, to have fully released and forever discharged the "Released Persons" (as defined below) from all "Released Claims" (as defined below).

"Released Persons" shall mean Apple, and, whether or not specifically named herein, each of its past or present directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, affiliates, parents, subsidiaries, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, related companies and divisions, and each of their predecessors, successors, heirs, and assigns.

"Released Claims" shall mean any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, that were or could have been alleged or asserted against any of the Released Persons in the *In re Magsafe Apple Power Adapter Litigation*, Case No. C09-01911, including but not limited to any claims that the Adapters are defective in that they dangerously fray, spark, prematurely fail to work, catch fire, overheat or melt, and any alleged misrepresentations or failures to disclose with respect to the Adapters ("Released Claims"). Personal injury and property damage claims (other than damage to the Adapter itself, including the cords that come with the Adapter) are excluded from the release.

By operation of the Final Judgment, all Settlement Class Members shall be deemed to have waived any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code or any comparable statutory or common law provision of any other jurisdiction with respect to the Released Claims. Section 1542 reads as follows:

> Certain Claims Not Affected By General Release: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor.

Although the releases granted under the Agreement are not general releases, the Settlement Class Members nonetheless acknowledge that they are waiving the protections of § 1542 and of any comparable statutory or common law provision of any other jurisdiction.

Exhibit 11

PAGES 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES WARE, JUDGE

IN RE MAGSAFE APPLE POWER      )
ADAPTER LITIGATION,            )
                               )
_____)      NO. C 09-1911 JW


                    SAN FRANCISCO, CALIFORNIA
                    MONDAY, FEBRUARY 27, 2012


                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

FOR PLAINTIFF:          ZELDES & HAEGGQUIST, LLP
                        625 BROADWAY
                        SUITE 906
                        SAN DIEGO, CA  92101
                BY:     **HELEN I. ZELDES**
                        **AARON MICHAEL OLSEN**
                        ATTORNEYS AT LAW

                        LINER YANKELEVITZ SUNSHINE &
                        REGENSTREIFF LLP
                        1100 GLENDON AVE., 14TH FLOOR
                        LOS ANGELES, CA  90024
                BY:     **ANGELA CHRISTINE AGRUSA**
                        **ATTORNEY AT LAW**



          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



REPORTED BY:            JAMES YEOMANS, CSR #4039, RPR
                        OFFICIAL REPORTER


          COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1    <u>APPEARANCES</u>:   (CONTINUED)

2    FOR PLAINTIFF:              MEHRI & SKALET, PLLC
                                 1250 CONNECTICUT AVE., NW
3                                SUITE 300
                                 WASHINGTON, C  20036
4                       BY:  **CRAIG L. BRISKIN**
                             **STEVEN A. SKALET**
5                                ATTORNEYS AT LAW

6    FOR DEFENDANT:             MORRISON & FOERSTER LLP
                                425 MARKET STREET
7                               SAN FRANCISCO, CA  94105
                        BY:  **PENELOPE ATHENE PREOVOLOS**
8                            **ANDREW DAVID MUHLBACH**
                             **ALEXEI KLESTOFF**
9                               ATTORNEYS AT LAW

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1  │ MONDAY, FEBRUARY 27, 2012                    9:00 A.M.
2  │         (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)
3  │         THE CLERK:  CASE C 09-1911, IN RE MAGSAFE APPLE POWER
4  │ ADAPTER LITIGATION.
5  │         COUNSEL, PLEASE APPROACH AND STATE YOUR NAME FOR THE
6  │ RECORD.
7  │         MS. ZELDES:  GOOD MORNING, YOUR HONOR.
8  │         HELEN ZELDES ON BEHALF OF PLAINTIFF.
9  │         MS. PREOVOLOS:  GOOD MORNING, YOUR HONOR.
10 │         PENELOPE PREOVOLOS FROM MORRISON & FOERSTER FOR APPLE,
11 │ INC.
12 │         MR. GREENBERG:  GOOD MORNING, YOUR HONOR.
13 │         DANIEL GREENBERG FOR OBJECTOR MARIE GRIFFIN.
14 │         THE COURT:  ALTHOUGH, YOU'RE NOT WITH THE PARTIES,
15 │ FEEL FREE TO SIT IN THE WELL OF THE COURT AND GRAB A CHAIR.
16 │         VERY WELL.  THIS IS BEFORE THE COURT FOR A REQUEST FOR
17 │ FINAL APPROVAL OF A SETTLEMENT IN THIS CASE.
18 │         SO, MS. ZELDES, YOU WANT TO SPEAK FURTHER TO THE
19 │ REQUEST?
20 │         MS. ZELDES:  THANK YOU, YOUR HONOR.
21 │         WE ARE HERE SEEKING FINAL APPROVAL OF A NATION-WILD
22 │ SETTLEMENT OF A CLASS OF ABOUT 10 MILLION PEOPLE.  THEY'RE
23 │ APPLE MAC BOOK AND MAC BOOK PRO COMPUTER CUSTOMERS.  AND WE'RE
24 │ HERE TODAY TO EXPLAIN WHY WE BELIEVE THE SETTLEMENT IS FAIR,
25 │ REASONABLE AND ADEQUATE.
```

1          WE BELIEVE ACTUALLY THE SETTLEMENT PROVIDES FOR WHAT

2     CONSUMERS WOULD HAVE GOTTEN AFTER TRIAL OR CLOSE TO THAT.

3     CONSUMERS HERE BROUGHT CLAIMS ALLEGING THAT THE POWER ADAPTER

4     FOR THEIR MAC BOOK COMPUTERS WAS DEFECTIVE, IT PREMATURELY

5     FAILED.

6          WE SOUGHT TO HAVE THE -- EITHER REFUNDS FOR OUR CLASS

7     MEMBERS FOR A NON-DEFECTIVE, REDESIGNED ADAPTER FAN, WE

8     ACHIEVED ESSENTIALLY THAT, YOUR HONOR, THROUGH THE SETTLEMENT.

9          AFTER GOING THROUGH SOME 80,000 DOCUMENTS THAT APPLE

10    PRODUCED, GOING THROUGH EXTENSIVE EXPERT DISCOVERY IN THE

11    MATTER, HAVING INDEPENDENT EXPERTS REVIEW THIS AND GOING BACK

12    AND FORTH WITH APPLE ON THE TECHNICAL ASPECT OF THE CASE, OUR

13    EXPERTS FOUND THAT THERE WAS A PROBLEM WITH THE STRAIN RELIEF

14    MECHANISM OF THE ADAPTER THAT CAME WITH COMPUTER X.

15         I WANT TO GO AHEAD AND HAND THIS UP TO THE COURT.  YOU

16    CAN TAKE A LOOK AT IT WHILE WE CHAT.

17         YOU HEAR A LOT ABOUT STRAIN RELIEF MECHANISM IN THE

18    SETTLEMENT OR STRAIN RELIEF DAMAGE IN THE SETTLEMENT NOTICE OF

19    THIS CASE, JUST WANT TO POINT OUT WHEN WE'RE TALKING ABOUT

20    STRAIN RELIEF WE'RE TALKING ABOUT THE PART OF THE ADAPTER THAT

21    HELPS PROTECT IT.

22         IT'S BEING USED WHEN IT'S BEING WRAPPED AND UNWRAPPED,

23    IT'S PART OF THE ADAPTER THAT -- THE ONE YOU HAVE IS THE

24    ORIGINAL ADAPTER AT ISSUE IN THE CASE.

25         NOW, APPLE, OBVIOUSLY, VIGOROUSLY DISPUTED OUR

1    ALLEGATION WITH STRAIN RELIEF THERE WAS ANY DEFECT, BUT THEY

2    HAVE SINCE REDESIGNED THE ADAPTER.

3            AND, AGAIN, THE SETTLEMENT THAT WE HAVE GOTTEN FOR THE

4    CLASS PROVIDES FOR THIS REDESIGNED ADAPTER REPLACEMENT FOR

5    CONSUMERS AND A CASH REFUND FOR CONSUMERS WHO HAVE EXPERIENCED

6    WHAT WE CALL STRAIN RELIEF PROBLEMS WITH THE ADAPTER.

7            THE SETTLEMENT ALSO BENEFITS CONSUMERS WHOSE WARRANTEE

8    HAS LONG EXPIRED.  CONSUMERS HERE GET REAL BENEFITS FROM THE

9    SETTLEMENT, NOT COUPONS OR MERE OBJECTIVE RELIEF.

10           I WANT TO TAKE A MINUTE TO GO THROUGH THE TWO ASPECTS

11   OF THE SETTLEMENT, THE CASH COMPONENT, THEN THE REPLACEMENT

12   PROGRAM.

13           SO THE CONSUMERS WHO ARE IN THE CLASS PURCHASED THE

14   MAC BOOK OR MAC BOOK PRO THAT CAME WITH THE ADAPTER.  YOU HAVE

15   THERE THE MPM1 ADAPTER, THAT THE CASH COMPONENTS WOULD PROVIDE

16   ANYBODY WHO EXPERIENCED STRAIN RELIEF DAMAGES WITH -- DEFINED

17   IN THE CLASS NOTICE AS FRAMING, SPARKING, WEAKENING,

18   DISCOLORATION, BUBBLING OR OVERHEATING OF THE STRAIN RELIEF

19   MECHANISM WOULD GET A REFUND OF $79.

20           IF THEIR ADAPTER FAILED WITHIN THE FIRST YEAR OF

21   PURCHASE OF THE SUBJECT COMPUTER OR WITHIN THE FIRST YEAR

22   BUYING REPLACEMENT ADAPTER THAT'S ESSENTIALLY A FULL REFUND.

23           WITHIN THE SECOND YEAR CONSUMER WOULD GET $50 CASH

24   REFUND AND THE THIRD YEAR OF USE THEY WOULD GET $35.

25           AND THE CONSUMER COULD MAKE UP TO THREE CLAIMS UNDER

1    THE SETTLEMENT, THERE'S NO LIMIT ON THE NUMBER OF CONSUMERS WHO

2    CAN PARTICIPATE IN THE SETTLEMENT.  THE ENTIRE CLASS, ANYONE

3    WHO HAD STRAIN RELIEF DAMAGES CAN GO AHEAD AND SUBMIT A CLAIM.

4    AND THEY CAN SUBMIT A CLAIM UP THROUGH MARCH 21ST OF THIS YEAR.

5         THE SECOND PART OF THE SETTLEMENT ALSO PROVIDES REAL

6    BENEFITS TO CONSUMERS.  PROVIDES COMPREHENSIVE NOTICE PROGRAM

7    THAT WENT OUT TO DIRECTLY TO ABOUT 8 MILLION CONSUMERS, MEMBERS

8    OF THE CLASS, AS WELL AS THEIR PUBLICATION NOTICE, BUT THE

9    NOTICE PROGRAM IS VERY SIGNIFICANT BECAUSE IT LET'S ONLY

10   CONSUMERS KNOW THEY HAVE -- ACTUALLY HAVE WAS TANTAMOUNT TO

11   EXTENDED WARRANTEE.

12        THEY WOULD GET UP TO THREE YEARS FROM DATE OF PURCHASE

13   OF THEIR SUBJECT COMPUTER, 180 DAYS FROM THE DATE OF NOTICE IN

14   THIS CLASS, WHICHEVER IS LATER, TO SEEK REPLACEMENT UNDER THE

15   SETTLEMENT.

16        SO IF THEY HAVE EXPERIENCED THESE STRAIN RELIEF

17   PROBLEMS WITH THEIR ADAPTER THEY CAN GO IN AND GET A

18   REPLACEMENT FROM AN APPLE STORE.  THEY WOULD NOT HAVE KNOWN

19   ABOUT THIS OPTION WERE IT NOT FOR THE SETTLEMENT IN THIS CASE.

20        SIGNIFICANTLY THESE ADAPTER THAT CONSUMERS GOT ONLY

21   CAME WITH EITHER A 90 DAY OR ONE YEAR WARRANTEE, SO THE

22   EXTENDED WARRANTEE OR REPLACEMENT WARRANTEE THAT WE'VE OBTAINED

23   IS VERY SIGNIFICANT.

24        IF YOU BOUGHT A LAPTOP WITH ONE OF THESE ADAPTORS IT

25   CAME WITH A ONE YEAR WARRANTEE, IF YOU BOUGHT A REPLACEMENT

```
1    ADAPTER ONLY HAD A 90 DAY WARRANTEE.

2           SO CONSUMERS, FOR EXAMPLE, WHO BOUGHT A COMPUTER IN

3    MAYBE 2006 AND BOUGHT REPLACEMENT ADAPTER IN 2007 ARE ACTUALLY

4    GETTING MORE THAN THREE YEARS TO BRING IT IN IF THEY'VE HAD

5    THIS KIND OF PROBLEM WITH THEIR ADAPTER.

6           AND ALSO SIGNIFICANT ABOUT THE REPLACEMENT PROGRAM IS

7    THAT PREVIOUSLY, ALTHOUGH, APPLE HAD A BIT OF A REPLACEMENT

8    PROGRAM IN PLACE, THERE WAS NO NOTICE TO THE CONSUMERS, THERE

9    WAS NO WAY FOR CONSUMERS TO REALLY FIND OUT ABOUT THIS PROGRAM.

10          IT WAS JUST LISTED ON PART OF APPLE'S WEBSITE.  YOU

11   ONLY FIND IF YOU KNEW TO LOOK FOR SPECIFIC WORDS LIKE

12   REPLACEMENT PROGRAM.  IT'S NOT SOMETHING YOU NATURALLY FIND BY

13   GOING TO APPLE DOT COM, FOR EXAMPLE.

14          ADDITIONALLY, THROUGH THE SETTLEMENT THE APPLE STORE'S

15   EMPLOYEES WHO HANDLE CONSUMERS WHO COME IN AND COMPLAIN OF A

16   PROBLEM WITH THEIR ADAPTER AND SEEK REPLACEMENT, HAVE ALL

17   RECEIVED THE NOTICE OF THE SETTLEMENT AND HOW TO IMPLEMENT IT.

18          NOTICE ALSO WENT OUT NOT ONLY BY E-MAIL OR DIRECT MAIL

19   TO 8 MILLION OF THE CLASS MEMBERS THROUGH -- ALSO THROUGH

20   PUBLICATION NOTICE IN NATION-WIDE PUBLICATION SUCH A MAC WORLD,

21   WIRE, USA TODAY, AND MEDIA COVERED THE SETTLEMENT EXTENSIVELY.

22          THE PROOF OF HOW STRONG THIS NOTICE PROGRAM IS ALREADY

23   IN THE PUDDING.  THERE'S ALREADY BEEN VERY SUCCESSFUL RESPONSE

24   TO THE NOTICE THE FIRST EIGHT WEEKS AFTER NOTICE WENT OUT ABOUT

25   THE SETTLEMENT.  OVER 230,000 PEOPLE HAVE ALREADY GONE IN AND
```

```
 1    GOTTEN AN EXCHANGE REPLACEMENT OF A NEW REDESIGNED ADAPTER FROM

 2    APPLE STORES.

 3              THE REPLACEMENT PROGRAM WILL CONTINUE NOW THROUGH JULY

 4    OF 2013.  SO IT'S BEING EXTENDED BEYOND WHAT WE'VE EVEN

 5    ORIGINALLY REPORTED TO THE COURT AND I'LL LET APPLE ADDRESS

 6    THAT ISSUE.  BUT ESSENTIALLY WE WILL BE PROVIDING A LENGTHY

 7    REPLACEMENT PROGRAM FOR CONSUMERS.

 8              THE COURT:  WHAT HAPPENS IF SOMEONE GOES IN ON -- IN

 9    JULY OF 2013 WITH ONE OF THESE ADAPTERS, WHAT HAPPENS AT THIS

10    POINT?

11              MS. ZELDES:  AFTER THE PROGRAM HAS BEEN COMPLETE?

12              THE COURT:  WELL, I'M TRYING TO GET TO THE LAST PART

13    OF THE PROGRAM, WHAT HAPPENS, LET'S SAY, JUNE OF 2013?

14              MS. ZELDES:  THEY WILL GET A NEW REPLACEMENT ADAPTER.

15    IF I MAY HAND THIS UP TO THE COURT.

16              THE COURT:  I'M FAMILIAR WITH IT.

17              MS. ZELDES:  THE NEW REPLACEMENT ADAPTER HAS BEEN

18    REDESIGNED.  THIS IS NOW A TOOTHBRUSH ADAPTER, GOT A METAL

19    CASING OVER THE STRAIN RELIEF MECHANISM AND IT'S ARGUABLY BEEN

20    REINFORCED, SO CONSUMERS WILL GET ONE OF THESE ADAPTORS.

21              NOW, AS A MATTER OF FACT, APPLE STOPPED SENDING OUT

22    COMPUTERS WITH THE OLD ADAPTER IN MID-2009 OR SO.

23              THE COURT:  AND SIMPLY IT WILL BE EXCHANGED FOR FREE?

24              MS. ZELDES:  $79 VALUE.  IF YOU GO TO THE APPLE STORE

25    HAVE TO BUY ONE OF THESE $79 VALUE THEY GET ONE FOR FREE.  THE
```

```
 1   APPLE STORE WILL LOOK AT THE PERSON'S ADAPTER, THEY HAVE TO

 2   BRING THEIR DAMAGED ADAPTER IN, THEY'RE NOT GOING TO JUST

 3   EXCHANGE IT WITHOUT LOOKING AT IT.

 4            YOU CAN'T, FOR EXAMPLE, CALL IN AND SAY SEND ME ONE,

 5   YOU DO HAVE TO HAVE ADAPTER THAT SHOWS SIGNS OF STRAIN RELIEF

 6   DAMAGE.

 7            THE COURT:  JULY WAS PICKED BECAUSE HAS A RELATIONSHIP

 8   TO WHEN DEFECTS SHOWED UP?

 9            MS. ZELDES:  NO, IT HAS RELATIONSHIP TO WHEN THE LAST

10   OF THE OLD ADAPTERS WERE PUT ON THE MARKET.  IT LET'S THEM

11   ADDRESS THEIR ISSUE.  I BELIEVE, THE LAST OF THE OLD ADAPTORS

12   PUT OUT BY APPLE IN THE BEGINNING OF 2010?

13            MS. PREOVOLOS:  YEAH.

14            MS. ZELDES:  THERE WERE STILL SOME SALES UNTIL JUNE OF

15   2010.

16            MS. PREOVOLOS:  IT IF BE WOULD BE HELPFUL I CAN ANSWER

17   THAT IN ABOUT A MINUTE.

18            WHAT HAPPENED WAS WE STARTED SHIPPING THE SO-CALLED

19   TOOTHBRUSH OR MPM4 ADAPTERS IN MID-2009 WITH NEW COMPUTERS.  IT

20   WAS -- THERE WERE A FEW SALES IN 2010 THAT WE ONLY RECENTLY

21   FOUND OUT ABOUT AND WE'VE DONE SUPPLEMENTAL NOTICE AND THUS

22   EXTENDED THE PROGRAM TO JULY 2013.

23            SO WE INITIALLY THOUGHT THAT ALL SALES OF THE MPM1

24   ADAPTERS ENDED IN '09, AND SO THE INITIAL END DATE FOR THE

25   PROGRAM WAS DECEMBER 2012, THE IDEA BEING TO GIVE EVERYONE
```

1    THREE YEARS.

2          WE FOUND OUT -- AND I CAN GET INTO MORE DETAIL ABOUT

3    THIS WHEN I SPEAK, BUT WE FOUND OUT SHORTLY BEFORE FINAL

4    APPROVAL BY -- BEFORE OUR FINAL APPROVAL PAPERS BY BEATING A

5    LOT OF BUSHES THAT I CAN GET INTO IN A BIT, THAT A FEW ADAPTERS

6    AND COMPUTERS WERE SOLD IN 2010.

7          THE LAST ADAPTER SALE WE BELIEVE WAS IN APRIL 2010,

8    THE LAST COMPUTER SALE WAS IN JUNE 2010.  AGAIN, WE'RE TALKING

9    ABOUT A VERY SMALL TAIL.

10         AND THE CONFUSION OCCURRED BECAUSE A FEW MODEL

11   COMPUTERS WERE SHIPPED WITH BOTH TYPES OF ADAPTERS.  IN OTHER

12   WORDS, THE NEW ADAPTER WAS SWAPPED INTO A MODEL THAT WHAT BEING

13   MANUFACTURED.  THE BOTTOM LINE EVERYONE WAS GIVEN THREE YEARS

14   FROM THE LAST DATE OF SALE.

15         NOT EVERYBODY, EVERYONE ISN'T GIVEN THREE YEARS FROM

16   THE DATE OF PURCHASE, WHICH MEANS THE PROGRAM EXTENDS THREE

17   YEARS BEFORE THE -- BEYOND THE LAST DATE OF SALE.

18         **THE COURT:**  LET'S SAY, THE FIRST ONE, EVERYONE GIVEN

19   THREE YEARS FROM THEIR DATE OF PURCHASE, BUT SOMEONE WHO HAS --

20   WHO DOESN'T MAKE THE EXCHANGE WITHIN THREE YEARS OF THEIR DATE

21   OF PURCHASE WILL STILL HAVE THREE YEARS FROM THE LAST DATE OF

22   SALE?

23         **MS. PREOVOLOS:**  NO, THAT'S NOT THE IDEA, NO, WELL, NOT

24   INTENTIONALLY, THAT WILL LIKELY HAPPEN.  THE INTENT IS TO GIVE

25   EVERYONE THREE YEARS.  WE WENT OUT TO JULY 2013 JUST TO MAKE

1  SURE THAT EVERYONE IS COVERED BY THE THREE YEAR PERIOD.

2      **THE COURT:**  RIGHT.  BUT GOING OUT TO THAT DATE, IF

3  SOMEONE COMES IN BEFORE THAT MAGIC DATE WHO PURCHASED DURING

4  THE CLASS PERIOD, BUT WHOSE FAILURE WASN'T EVIDENT UNTIL NOW,

5  WILL THEY BE ABLE TO GET AN EXCHANGE?

6      **MS. PREOVOLOS:**  WELL, THE THEORY OF THE SETTLEMENT IS

7  THAT YOU ARE ONLY COVERED FOR FAILURES WITHIN THREE YEARS OF

8  PURCHASE.

9      **THE COURT:**  I UNDERSTAND THAT, BUT YOU WILL BE ABLE TO

10  DETERMINE WHEN A PERSON COMES IN WITH A FAILED ADAPTER WHEN

11  THEY PURCHASE, AND SO THE QUESTION WILL BE, SORRY, YOU CAN'T

12  HAVE AN EXCHANGE, THE PERSON BEHIND THE PURCHASE WITHIN THREE

13  YEARS CAN?

14      **MS. PREOVOLOS:**  CORRECT.  THAT'S THE THEORY IN

15  PRACTICE.  ARE YOU SAYING WILL PEOPLE WHO PURCHASED MORE THAN

16  THREE YEARS PREVIOUSLY GET A NEW ADAPTER?

17      THEY MIGHT, BUT UNDER THE TERMS OF THE SETTLEMENT

18  THEY'RE ONLY -- THE ENTITLEMENT IS FOR THREE YEARS.

19      **THE COURT:**  OKAY.  SO LET ME GO BACK TO MY ORIGINAL

20  QUESTION.  IS THE THREE YEARS HAS NOT BEEN CHOSEN BECAUSE

21  THAT'S WHEN THE FAILURE SHOULD BE EXHIBITED, IT'S BEEN CHOSEN

22  AS AN ARBITRARY REASONABLE PERIOD TO USE, SO YOU MIGHT HAVE

23  FAILURES BEYOND THE SETTLEMENT DATE, BEYOND JULY OF 2013?

24      **MS. PREOVOLOS:**  YOU MIGHT.  BUT THAT PERSON WOULD HAVE

25  HAD A WORKING UNFAILED ADAPTER FOR A FULL THREE YEARS, WHICH

```
1    GIVEN THE WAY ADAPTORS ARE TREATED, BANGED AROUND, THROWN

2    AROUND, WRAPPED AROUND, I THINK BOTH SIDES FELT WAS AN

3    APPROPRIATE EXTENSION OF A ONE YEAR OR 90 DAYS THEY WOULD

4    OTHERWISE HAVE.

5         THE COURT:  LET ME GO BACK TO THE TECHNICAL SIDE.

6    THESE ARE ADAPTERS WHICH IN THE MANUFACTURING PROCESS SOMETHING

7    OCCURRED THAT MADE THE DEFECT OR IS IT DESIGN DEFECT?

8         IN OTHER WORDS, WHAT IF A PERSON COMES IN WITH A

9    PERFECTLY GOOD OPERATING ADAPTER, BUT WHO KNOWS ABOUT THE

10   SETTLEMENT AND IS FEARFUL THEY HAVE AN ADAPTER THAT COULD FAIL,

11   WOULD THEY BE SWITCHED OUT?

12        MS. PREOVOLOS:  WELL, YOUR HONOR, APPLE DOES NOT AGREE

13   IT WAS A DESIGN OR MANUFACTURING DEFECT.  THERE WAS NOT A

14   DEFECT IN THE MANUFACTURING PROCESS.

15        I THINK, MS. ALT SORT OF AGREE THERE'S NO ALLEGATION

16   THERE WAS A BAD LOT, THE ISSUE IS SIMPLY WHETHER THE STRAIN

17   RELIEF ON THE MP11 ADAPTER WAS ADEQUATE.

18        WE ARGUE IT WAS, WE ARGUE THERE HAVE BEEN FEW FIELD

19   FAILURES, FOR EXAMPLES, OF THESE OBJECTORS.

20        THE COURT:  WE'RE BEYOND THE ARGUMENT, I'M JUST

21   TALKING ABOUT THE SETTLEMENT.

22        MS. PREOVOLOS:  BUT THE SETTLEMENT DOES NOT EXTEND

23   BEYOND THREE YEARS.

24        THE COURT:  THAT WASN'T MY QUESTION.

25        MS. PREOVOLOS:  I'M SORRY.
```

1          **THE COURT:**  IF A PERSON STANDS IN LINE WITH THIS

2     DESIGN OF ADAPTER HASN'T FAILED, THEY SAY I'VE LEARNED ABOUT

3     THE PROBLEM JUST ON THE SAFE SIDE I'D LIKE TO SWITCH MINE OUT

4     FOR TOOTHBRUSH ADAPTER, WHAT HAPPENS?

5          **MS. PREOVOLOS:**  THE SETTLEMENT COVERS FAILED ADAPTERS

6     ONLY.  WE CAN GET TO WHY THAT IS WHEN I'M UP.  BUT THE CLAIM IN

7     THE COMPLAINT WAS FAILURES FOR STRAIN RELIEF, TO BE CLEAR.

8          **THE COURT:**  I UNDERSTAND.  I'M USING FAILED JUST AS A

9     SHORT WAY OF TALKING ABOUT STRAIN RELIEF.  AND THE SAME

10    QUESTION I HAD BECAUSE I DIDN'T SEE THE LANGUAGE HAD TO DO WITH

11    THOSE WHO MADE A SWITCH PREVIOUSLY AND HAVE PROOF OF PURCHASE.

12          THEIR PROOF OF PURCHASE IS SUFFICIENT TO ENTITLE THEM

13    TO THE MONEY DAMAGES WITHOUT FURTHER PROOF THAT THERE WAS SOME

14    KIND OF A STRAIN RELIEF FAILURE.

15          IN OTHER WORDS, IF THEY WENT IN AND PURCHASED THE NEW

16    ADAPTER OUT OF FEAR OR CONCERN FOR STRAIN RELIEF FAILURE THEY

17    WOULD QUALIFY?

18          **MS. PREOVOLOS:**  I THINK, MY RECOLLECTION A DECLARATION

19    REQUIRED THEM TO -- THEY HAVE A STRAIN RELIEF FAILURE AND

20    REPLACE ADAPTER WITH A PARTICULAR YEAR.

21          **THE COURT:**  I DIDN'T SEE THAT, THAT'S IMPORTANT TO THE

22    COURT.  I WOULD THINK THAT IT MIGHT BE BEYOND THE CONSUMER'S

23    ABILITY TO PROVE AT THIS POINT THAT THEY'VE HAD A STRAIN RELIEF

24    FAILURE THAT PROMPTED THEIR PURCHASE.

25          IT WOULD BE EASIER FOR THEM TO SHOW, INDEED, THEY MADE

1    A PURCHASE.  SOMETIMES THE DOCUMENTATION MIGHT EXIST BECAUSE OF

2    THE PURCHASE.

3         **MS. PREOVOLOS:**  WE DID NOT ASK FOR PROOF OF FAILURE

4    DUE TO STRAIN RELIEF, WE SIMPLY ASKED THEM TO INDICATE THE YEAR

5    IN WHICH THEY FAILED, THEY BELIEVED THEY HAD EXPERIENCED A

6    FAILURE.

7         **THE COURT:**  I LOOKED FOR THAT IN THE FORM AND THE FORM

8    THAT'S THE LANGUAGE THAT YOU HAVE TO POINT OUT TO ME.  AND I

9    DON'T RECALL, I SHOULD HAVE TAGGED IT WHEN I LOOKED AT THE FORM

10   ITSELF.

11        **MS. PREOVOLOS:**  YOU'RE RIGHT, I THINK YOU'RE RIGHT, WE

12   DID NOT IN THE BACKWARD LOOKING CLAIM FORM, YOU'RE CORRECT.

13   THE NOTION IT WAS A REPLACEMENT FOR STRAIN RELIEF, BUT IN THE

14   BACKWARD LOOKING DECLARATION WE SIMPLY ASKED FOR PROOF OF

15   PURCHASE OF A REPLACEMENT ADAPTER.  YOUR CORRECT, IT'S BACKWARD

16   LOOKING, THEY DON'T HAVE THE ADAPTER TO HAND SOMEBODY.

17        **THE COURT:**  BUT FORWARD-LOOKING WHAT IS IT THAT WOULD

18   REQUIRE THAT THEY PROVE THAT THERE'S A STRAIN RELIEF?

19        **MS. PREOVOLOS:**  FORWARD-LOOKING THEY HAVE TO BRING IN

20   THE ADAPTER THAT'S BEING REPLACED.  SO THE GENIUS IN THE APPLE

21   STORE WILL LOOK AT THE ADAPTER AND IS GIVEN GUIDELINES FOR WHAT

22   IT SHOULD LOOK LIKE IF IT'S EITHER FAILING OR IN THE PROCESS OF

23   FAIL DUE TO STRAIN RELIEF.

24        **THE COURT:**  I UNDERSTAND THAT'S THE REPRESENTATION,

25   WHAT IS IT IN THE SETTLEMENT THAT DIRECTS THAT?

1        IN OTHER WORDS, WHY WOULDN'T THE GENIUS SIMPLY MADE

2   THE REPLACEMENT GUIDED BY THE SETTLEMENT.  I WAS TRYING TO LOOK

3   AT THE LANGUAGE THAT WOULD SAY, BECAUSE THIS PROTECTS BOTH

4   APPLE AS WELL AS THE CONSUMERS IF THE SETTLEMENT SAYS THAT YOU

5   GOT TO SHOW PROOF OF FAILURE AND APPLE CONCLUDES THAT THERE IS

6   NO PROOF OF FAILURE THEN THE PERSON DOESN'T HAVE RECOURSE.

7        **MS. PREOVOLOS:**  YOUR HONOR --

8        **THE COURT:**  THE SETTLEMENT DOESN'T SPEAK TO THAT AND

9   APPLE INSISTS THAT YOU GOT TO SHOW FAILURE THEN THERE MIGHT BE

10  FOLLOW ON CONCERNS THAT WOULD BE AVOIDED IF THAT'S CLEAR AT THE

11  BEGINNING.

12       **MS. PREOVOLOS:**  I UNDERSTAND THE QUESTION NOW, YOUR

13  HONOR.  THE ANSWER IS THAT THE NOTICE DIRECTS PEOPLE TO THE

14  EXISTING APPLE ADAPTER PROGRAM AND TO THE WEBSITE EXPLAINING

15  THE EXISTING ADAPTER PROGRAM AND THAT TALKS ABOUT STRAIN

16  RELIEF.  SO THE DISCUSSION OF STRAIN RELIEF.

17       **MR. MUHLBACH:**  YOUR HONOR, IN THE SETTLEMENT AGREEMENT

18  AT PAGE SEVEN PARAGRAPH ROMAN TWO SUB F -- SORRY, ANDREW

19  MUHLBACH FOR APPLE -- PARAGRAPH 1 SPECIFIES APPLE CURRENTLY

20  MAINTAINS PROGRAM THAT INCLUDES PROGRAMMING WARRANTEE

21  REPLACEMENT FOR ADAPTERS THAT SHOW SIGNS OF STRAIN RELIEF

22  DAMAGE, PROVIDED THERE'S NO OBVIOUS SIGNS OF USE OR ABUSE.

23       THAT'S THE DEFINITION OF THE ADAPTER REPLACEMENT

24  PROGRAM.  THE REST OF THE SETTLEMENT GOES ONTO DESCRIBE

25  PEOPLE'S ENTITLEMENT TO MAKE A CLAIM FOR REPLACEMENT ADAPTER

1    UNDER THAT PROGRAM.

2          IN THE DEFINED TERM WHAT THE PROGRAM COVERS IS THE

3    NOTION OF ADAPTER SHOWING SIGNS OF STRAIN RELIEF.

4          **THE COURT:**  I DON'T HAVE A SETTLEMENT AGREEMENT IN

5    FRONT OF ME, BUT I'LL LOOK TO THAT.  LET ME ASK A QUESTION THAT

6    HAS TO DO WITH THE NUMBERS.  THANK YOU.

7          WHY ARE THERE SO FEW GIVEN THE LARGE NUMBER, IS THAT

8    BECAUSE OF APPLE'S POSITION THAT YOU WOULDN'T EXPECT TO HAVE

9    LOTS OF GIVEN THE NATURE OF THE PROBLEM, IS THAT WHY THERE'S SO

10   FEW PEOPLE UP TO THIS POINT WHO HAVE COME FORWARD WITH THE

11   CLAIMS?

12         **MS. ZELDES:**  CLAIM FORMS -- WELL, YOUR HONOR, THERE

13   ACTUALLY BEEN SOME 340,000 PEOPLE THAT HAVE VISITED THE

14   WEBSITE, 61,000 CLAIM FORMS HAVE BEEN DOWNLOADED, ABOUT 5,000

15   CLAIM FORMS HAVE BEEN MAILED OUT TO CLASS MEMBERS AND 12,000

16   CLAIM FORMS HAVE BEEN SUBMITTED TO DATE.

17         BUT THERE ARE MANY OTHER CONSUMERS WHO OBVIOUSLY

18   DOWNLOAD THE CLAIM FORM AND THERE'S STILL TIME LEFT IN THE

19   CLAIM PERIOD.  THERE ALSO MORE, AS I MENTIONED, 20,000

20   CONSUMERS WHO'VE TAKEN ADVANTAGE OF THE SETTLEMENT BEFORE IT'S

21   EVEN FINALLY APPROVED.

22         APPLE ALREADY ABIDING BY THE SETTLEMENT AND THE NOTICE

23   PROGRAM FOR THE REPLACEMENT PROGRAM IN THE STORES.  20,000

24   CONSUMERS IN THE FIRST EIGHT WEEKS ALONE.  THAT'S THE MOST

25   RECENT DATA WE HAVE.  THE PROGRAM BEEN GOING ON EIGHT WEEKS

1   NOW.

2        **THE COURT:**  THOSE NUMBERS WOULD BE IMPRESSIVE IN A

3   CLASS THAT WOULD BE, SAY, HALF A MILLION OR A MILLION, BUT WITH

4   A CLASS THAT THE COURT UNDERSTOOD TO BE 7 MILLION THOSE NUMBERS

5   ARE STILL MINOR.

6        **MS. ZELDES:**  WELL, THE REPLACEMENT PROGRAM NUMBERS ARE

7   PRETTY VAGUE.  THAT PROGRAM IS GOING TO CONTINUE ON FOR, I

8   THINK, 19 MONTHS TOTAL.

9        SO THE FIRST EIGHT WEEKS ALREADY 20,000 FOLKS BRINGING

10  THEIR ADAPTORS IN.  AT THIS RATE THERE'S GOING TO BE, YOU KNOW,

11  180,000 OR MORE CONSUMERS WHO WILL PARTICIPATE IN THE PROGRAM.

12       **THE COURT:**  WILL THE PUBLIC IT ATTENDED TO THE

13  SETTLEMENT CONTINUE IN ANY WAY, SO THAT ONCE THE SETTLEMENT IS

14  DONE PEOPLE NOW WILL HAVE A FURTHER NOTICE THAT WOULD PROMPT

15  THEIR TAKING FURTHER ACTION DURING THIS PERIOD UP TO JULY 2013?

16       **MS. ZELDES:**  WE BELIEVE SO, YOUR HONOR.  I THINK,

17  THEY'LL BE PUBLICITY ABOUT THE SETTLEMENT IF IT'S FINALLY

18  APPROVED.

19       WE'VE DONE SOME PRESS ON THE SETTLEMENT, WE ALL HAVE

20  NOTICES ON OUR WEBSITES, THERE'S BLOGS COVERING IT AND

21  ADDITIONAL 200,000 OR MORE CONSUMERS JUST SENT NOTICE ON

22  FRIDAY, SO BE ANOTHER WAY FOLKS GOT THE SUPPLEMENTAL NOTICE THE

23  PROGRAM HAS BEEN EXTENDED.

24       SO, YES, PUBLICITY WILL CONTINUE AND IT DOES SEEM TO

25  BE CATCHING ON.  WITHOUT THAT MANY NOTICES BEING DIRECTLY SENT

| | |
|---|---|
| 1 | TO CONSUMERS IT'S DEFINITELY -- WE GET CALLS EVERYDAY, OUR |
| 2 | OFFICE, OUR CO-COUNSEL GETS CALLS EVERYDAY.  WE GOT HUNDREDS OF |
| 3 | CALLS FROM CONSUMERS WITHOUT THE CLAIMS PROCESS AND THE |
| 4 | REPLACEMENT PROGRAM. |
| 5 | **THE COURT:**  IS THERE -- THIS IS ALL FORTUITOUS, |
| 6 | THOUGH, SHOULD THERE BE ANY REQUIREMENT IN MY ORDER FOR |
| 7 | DELIBERATE PUBLICITY, SO AS TO MAXIMIZE THE CLASS? |
| 8 | WE GET TO THAT SEVEN MILLION NUMBER THAT'S THE TRUE |
| 9 | NUMBER THAT REPRESENTS PEOPLE WITH THESE ADAPTERS, THAT PERHAPS |
| 10 | IF THEY PAID CLOSER ATTENTION TO THEM MIGHT CAUSE THEM TO MAKE |
| 11 | THE CLAIM, BUT IF APPLE IS CORRECT AND IT'S NOT A DEFECT THAT |
| 12 | SHOULD BE A MATTER OF CONCERN, I COULD UNDERSTAND THAT. |
| 13 | BUT I WONDER WHETHER OR NOT THERE'S ANY REASON WHY THE |
| 14 | COURT MIGHT IN ITS ORDER REQUIRE SOME MORE ORGANIZED FORM OF |
| 15 | PUBLICITY RATHER THAN SIMPLY LEAVING IT TO THE NOTICE THAT A |
| 16 | SETTLEMENT ITSELF MIGHT GET. |
| 17 | **MS. ZELDES:**  CERTAINLY PLAINTIFFS ARE AMENABLE TO |
| 18 | CONTINUING NOTICE ON THIS ISSUE.  I CAN'T SPEAK FOR APPLE. |
| 19 | **THE COURT:**  THERE'S NO CLAIMS ADMINISTRATOR, IS THERE? |
| 20 | **MS. ZELDES:**  KURTZMAN, KAY KURTZMAN, CARSON |
| 21 | CONSULTANTS. |
| 22 | **THE COURT:**  THEY'RE NOT DOING ANY NOTICE? |
| 23 | **MS. ZELDES:**  OTHER THEN -- WELL, THEY DID THE |
| 24 | PUBLICATION NOTICE AND THEY DID THE SETTLEMENT ADMINISTRATION |
| 25 | AND MAILING OF THE NOTICE AND THE FOLLOW-UP NOTICE, BUT IN |

1    TERMS OF PR WE HAVE GOTTEN MANY QUOTES FROM ADMINISTRATORS ON

2    OUR END.

3          ON THE PLAINTIFF'S SIDE WE DO HAVE SEVERAL PROPOSALS

4    WE HAVE LOOKED AT AND ARE CONSIDERING.

5          **THE COURT:**  VERY WELL.  ANYTHING FURTHER YOU WANT TO

6    SPEAK TO?

7          **MS. ZELDES:**  WELL, YOUR HONOR, JUST AGAIN THE RESPONSE

8    TO THE SETTLEMENT HAS BEEN VERY FAVORABLE FROM THE CALLS, FROM

9    THE NUMBERS OF PEOPLE GOING INTO THE APPLE STORE, FROM THE

10   CLAIM FORMS DOWNLOADED.

11         THERE IS A PRESUMPTION OF FAIRNESS WHERE EXPERIENCE

12   COUNSEL ARE INVOLVED IN THE SETTLEMENT IS REACHED THROUGH

13   ARMS-LENGTH NEGOTIATION AFTER RELEVANT DISCOVERY HAS HAPPENED

14   HERE.

15         THE SETTLEMENT ALSO FAIR AND REASONABLE UNDER THE

16   NINTH CIRCUIT EIGHT FACTORS TEST.  I WON'T GO THROUGH ALL THOSE

17   FACTORS, BUT CERTAINLY THE STRENGTH OF OUR CASE, WE BELIEVE WE

18   HAVE VERY STRONG CLAIMS.

19         AND YOU CAN SEE FROM APPLE'S PRESENTATION TODAY THEY

20   WOULD PUT ON A VERY AGGRESSIVE DEFENSE.  THERE WAS CERTAINLY

21   RISK CONTINUING ON WITH THE LITIGATION.  THERE WAS A RISK WE

22   WOULD NOT HAVE CERTIFIED CLASS OR CLASS BEEN LIMITED TO ONE

23   YEAR WARRANTEE PERIOD.

24         APPLE WOULD HAVE FOUGHT US VERY, VERY HARD ON THE

25   WARRANTEE CLAIMS AND THE LENGTH OF AND DURATION OF OUR CLASS,

1    THERE'S A RISK WE WOULD NOT HAVE BEEN ABLE TO MAINTAIN

2    CERTIFICATION THROUGH TRIAL.

3           WE OBTAINED REAL CASH BENEFITS FOR THE CLASS MEMBERS

4    THAT ARE AVAILABLE NOW, THAT CONSUMERS ARE TAKING ADVANTAGE OF

5    NOW, AND A CASE LIKE THIS WHERE, YOU KNOW, COMPUTER PRODUCTS

6    OUT DATE QUICKLY, IT'S IMPORTANT FOR CONSUMERS TO GET RELIEF

7    NOW WHILE THEY STILL HAVE THEIR COMPUTERS.

8           CONSUMERS ARE GETTING THESE NEW ADAPTERS, WE CONDUCTED

9    EXTENSIVE DISCOVERY, WE SPENT A LOT OF MONEY ON EXPERTS, WE

10   WENT OUT OF POCKET AND TOOK THE RISK OF TAKING THIS ON A

11   CONTINGENCY FEE BASIS, AND RETAINED TWO DIFFERENT EXPERTS TO

12   REVIEW 80,000 PAGES OF HIGHLY TECHNICAL DOCUMENTS FROM APPLE,

13   AND YOU KNOW THE SETTLEMENT WAS CLEARLY A PRODUCT OF

14   ARMS-LENGTH NEGOTIATIONS.

15          WE HAD VERY CONTENTIOUS MEDIATION SESSIONS BEFORE A

16   NEUTRAL THIRD-PARTY, THE HONORABLE JUDGE FERN SMITH RETIRED

17   JUDGE OF THIS DISTRICT WAS OUR MEDIATOR, AND ULTIMATELY HELPED

18   RESOLVE THE MATTER THROUGH MEDIATOR'S PROPOSAL WHEN WE CAME TO

19   AN IMPASSE AND COULD NOT RESOLVE IT OURSELVES.

20          SO IN SHORT WE BELIEVE THE SETTLEMENT DOES PROVIDE

21   SIGNIFICANT RELIEF TO MANY, MANY MILLIONS OF CONSUMERS WHO

22   DESERVE TO GET THIS REMEDY NOW WHILE THEY STILL HAVE THEIR

23   ADAPTER.

24          AND WE ARE AND WILL CONTINUING TO PROMOTE THIS

25   SETTLEMENT THROUGH THE DURATION OF THE SETTLEMENT PERIOD AND WE

1    ASK THE COURT TO PRELIMINARY, FINALLY APPROVE THE SETTLEMENT AS

2    FAIR, ADEQUATE AND REASONABLE.

3          **THE COURT:**  VERY WELL.  DOES THE DEFENDANT WISH TO

4    SPEAK FURTHER?

5          **MS. PREOVOLOS:**  YES, YOUR HONOR.  I WANT TO START BY

6    GIVING A LITTLE BIT MORE COMPLETE ANSWER TO A COUPLE OF

7    QUESTIONS THE COURT ASKED AND THEN I'D LIKE TO MAKE A COUPLE OF

8    ADDITIONAL POINTS.

9          FIRST, WITH RESPECT TO YOUR HONOR'S QUESTION OF NOTICE

10   TO THE CLASS, THE ADAPTER PROGRAM WAS LIMITED TO STRAIN RELIEF,

11   WITH THE COURT'S PERMISSION I'D LIKE TO HAND UP THE FULL NOTICE

12   WHICH WAS FILED WITH THE PRELIMINARY APPROVAL PAPERS.  AND

13   DIRECT YOUR ATTENTION, IF I MIGHT, TO THE BOTTOM OF PAGE SIX.

14         JUST SO THE COURT IS COMFORTABLE THAT WHAT WAS IN THE

15   SETTLEMENT AGREEMENT WAS COMMUNICATED TO THE CLASS MEMBERS, SO

16   THAT'S THE PART OF THE NOTICE THAT TALKS -- THE FULL NOTICE

17   THAT TALKS ABOUT THE ADAPTER REPLACEMENT PROGRAM.

18         IF YOU LOOK AT THE BOTTOM OF PAGE SIX SAYS IT'S

19   LIMITED TO STRAIN RELIEF, AND THEN IF YOU FLIP TO THE FOLLOWING

20   PAGE YOU'LL SEE THAT THE CONSUMERS, SETTLEMENT CLASS MEMBERS IS

21   TAKEN TO THE APPLE WEBSITE THAT EXPLAINS THE PROGRAM IN MORE

22   DETAIL.

23         SO IN SUMMARY NOTICE AS WELL SPECIFICALLY SAID THERE'S

24   AN ADAPTER REPLACEMENT AVAILABLE FOR STRAIN RELIEF.  SO THE

25   ISSUE YOUR HONOR WAS ASKING ABOUT, WAS THE CLASS ON NOTICE OF

1  THE LIMITATION?  THE ANSWER IS VERY MUCH YES.

2            AND THAT'S WHAT I WAS REFERRING TO WHEN I SPOKE

3  BEFORE.  SO THE SETTLEMENT AGREEMENT TERMS WERE EMBODIED IN THE

4  DOCUMENTS THAT WE MAILED OUT TO THE CLASS.

5            THE SECOND ISSUE I WANTED TO ADDRESS WAS YOUR HONOR'S

6  QUESTION OF WHAT YOU REGARDED AS LOW CLAIMS RATES AND WHETHER

7  THERE SHOULD BE ADDITIONAL NOTICE.

8            AND, I THINK, THE ANSWER IS THE ADDITIONAL NOTICE

9  WOULD NOT YIELD SIGNIFICANT CLAIMS AND PROBABLY BE MORE

10  EXPENSIVE TO APPLE AND INTRUSIVE TO THE CLASS MEMBERS THEN IT

11  WOULD BE VALUABLE AND THE REASON I SAY THAT IS THREE FOLD.

12            FIRST, THE NOTICE HERE WAS DIRECT NOTICE TO CLOSE TO

13  80 PERCENT OF THE CLASS, E-MAIL, POSTCARD NOTICE IN THEIR

14  HANDS.  SO A LOT OF PEOPLE WERE AWARE OF BOTH THE CASH REFUND

15  OPTION AND THE ADAPTER REPLACEMENT PROGRAM.

16            AND YOU SAW THE RATES, YOU SAW ALTHOUGH THE PERIOD IS

17  NOT ONLY OVER, I THINK, THERE ARE TWO REASONS FOR WHAT YOU

18  DESCRIBE AS LOW CLAIM RATES.

19            WE SAID THAT VERY STRONGLY IN OUR PAPERS, WE REALLY

20  PREDICTED IT IN A SENSE PRELIMINARY APPROVAL.  THE TWO REASONS

21  ARE THE FAILURE RATES ARE VERY LOW.  THESE ADAPTORS IN THE

22  FIELD DID NOT FAIL AT HIGH RATES, THEY FAILED IN THE LOW SINGLE

23  DIGITS.  AND SO THE CLAIMS RATES ARE PRETTY CONSISTENT WITH THE

24  FAILURE RATES.  I THINK, AS A STRONG POINT.

25            THE OTHER POINT THAT'S VERY IMPORTANT IS THAT THE

1   ADAPTER REPLACEMENT PROGRAM HAS BEEN OUT THERE FOR A LONG TIME.

2   I DON'T DENIGRATE THE PLAINTIFF'S POINT THAT THEY GAVE NOTICE

3   OF THAT PROGRAM, THEY DID, THROUGH THE CLASS NOTICE AND

4   REMINDED PEOPLE OF IT.  BUT IF AT ANY TIME DURING THE PERIOD

5   YOU CAME INTO AN APPLE STORE OR CALLED OR E-MAILED APPLE YOU

6   WOULD HAVE BEEN INFORMED OF THIS PROGRAM.

7         SO, I THINK, WHAT THE NUMBERS INDICATE IS THAT APRIL

8   PEOPLE DID PUT ITS MONEY WHERE ITS MOUTH IS.  THERE'S NO CAP ON

9   THE DOLLAR AMOUNT HERE IN TERMS OF TOTAL BENEFIT OF THE

10  SETTLEMENT.

11        BUT APPLE HAD A PROGRAM THAT ADDRESSED THIS ISSUE, THE

12  FAILURE RATES WERE LOW, AND I DON'T, WITH DUE RESPECT, THINK

13  THERE'S A JUSTIFICATION HERE FOR SUPPLEMENTAL NOTICE, NOR DO I

14  THINK IT WOULD YIELD VERY MUCH.

15        I THINK, IT'S TELLING THERE HAVE BEEN SOME 300,000

16  PLUS VISITS TO THE WEBSITE THAT HAVE YIELDED THE ADAPTER, AND

17  DOLLAR CLAIMS WE'VE SEEN, AND I THINK THE REASON FOR THAT IS

18  QUITE SIMPLY THAT THE FAILURE RATES ARE LOW.

19        THE REPLACEMENT PROGRAM HAS BEEN OUT THERE FOR A LONG

20  TIME.  THE SETTLEMENT APPROPRIATELY PUT OUT AT SAFETY NET FOR

21  PEOPLE WHO DIDN'T GET CAUGHT IN THE PROGRAM AND WHO HAD A

22  FAILURE, BUT I THINK THE NUMBERS ARE EXPLAINABLE IN TERMS I

23  DISCUSSED.

24        **THE COURT:**  LET ME HAVE YOU ADDRESS TWO CONCERNS, AND

25  THANK YOU FOR YOUR OPENING REMARKS.

1          FIRST, I NEEDED TO MAKE CERTAIN THAT MY ORDER CLEARLY

2     ALLOWS THIS EXTRA PERIOD OF TIME AND EVERYTHING THAT I'VE SEEN

3     UP TO NOW IS STILL DECEMBER 31, 2012.

4          **MS. PREOVOLOS:**  I'M SORRY, YOU SHOULD DEFINITELY HAVE

5     A REVISED ONE.

6          **THE COURT:**  AND THERE IS, AT LEAST, ONE CLAIM THAT I'M

7     TOLD ABOUT WHERE THERE ARE CONSEQUENTIAL DAMAGES BEYOND THE

8     ADAPTER ITSELF.  DAMAGE TO THE COMPUTER, AT LEAST, THERE'S SOME

9     CLAIM TO THAT.

10          THEN SINCE THIS IS A SETTLEMENT AND MY UNDERSTANDING

11     IS THOSE INDIVIDUALS WILL BE BOUND BY THE SETTLEMENT, SO THEY

12     WILL NOT BE ABLE TO MAKE THE CONSEQUENTIAL DAMAGE CLAIM IF THEY

13     DON'T OPT-OUT OF THE SETTLEMENT, EVEN IF THEY DON'T ALSO MAKE A

14     CLAIM FOR A NEW ADAPTER.

15          IF THEY LATER SUFFER CONSEQUENTIAL DAMAGES AT THE END

16     OF ANY RIGHT THAT THEY WOULD HAVE TO SUE FOR DAMAGE TO THE

17     COMPUTER OR SOME OTHER DAMAGE THAT MIGHT COME FROM THE ADAPTER;

18     IS THAT CORRECT?

19          **MS. PREOVOLOS:**  THAT'S CORRECT, YOUR HONOR.  BUT, I

20     THINK, THE IMPORTANT POINT IS OTHER THAN THE SINGLE OBJECTOR

21     YOU HAVE RECEIVED, WE HAVE NEVER HAD ANY INDICATION THAT THIS

22     ADAPTER CAN CAUSE CONSEQUENTIAL DAMAGES TO THE COMPUTER.  WE

23     DON'T BELIEVE IT'S TRUE.

24          I DON'T SUGGEST THAT THE INDIVIDUAL OBJECTOR MIGHT NOT

25     BELIEVE IT, SHE'S NOT A COMPUTER SCIENTIST, BUT WE'VE NEVER HAD

1    ANY CLAIMS FROM A PLAINTIFF HERE.

2         **THE COURT:**  THIS IS ELECTRICAL PROBLEM, DOESN'T

3    REQUIRE COMPUTER SCIENCE TO UNDERSTAND.

4         **MS. PREOVOLOS:**  THE ADAPTER CAN'T DAMAGE THE COMPUTER,

5    THERE'S NO ALLEGATION IT DOES.

6         **THE COURT:**  DOESN'T SHORT?

7         **MS. PREOVOLOS:**  THE ADAPTER SIMPLY FAILS TO FUNCTION

8    AS AN ADAPTER.  WELL, MS. ALT JUST POINTS OUT I DON'T THINK

9    THAT WOULD DO DAMAGE TO THE COMPUTER, THOUGH.

10        **THE COURT:**  AT LEAST, THERE WAS ONE CLAIM TO THAT

11   EFFECT, I'M NOT INTERESTED TO ADJUDICATING THAT CLAIM.

12        **MS. PREOVOLOS:**  WELL, YOUR HONOR, I THINK MS. ALT

13   CORRECTLY POINTS OUT, THE PLAINTIFFS DID A GOOD JOB OF

14   PROTECTING THEIR CLASS BECAUSE THE RELEASE ACTUALLY SAYS

15   PERSONAL INJURY AND PROPERTY DAMAGE CLAIMS OTHER THAN DAMAGE TO

16   THE ADAPTER ITSELF, INCLUDING THE CORDS THAT COME WITH THE

17   ADAPTER ARE EXCLUDED FROM THE RELEASE.

18        SO, I THINK, THE ANSWER IS THE DAMAGE THE COMPUTER

19   WOULD NOT BE COVERED BY THE RELEASE.

20        **THE COURT:**  THAT'S DIFFERENT THAN I UNDERSTOOD.  LET

21   ME GET THAT.  SO THAT IF A PERSON IS A MEMBER OF THE CLASS

22   ENTITLED TO SWITCH OUT THEIR ADAPTER BUT DO NOT, AND LATER ON

23   THERE IS A SOMEWHAT, I'LL CALL COLLATERAL DAMAGE BEYOND THE

24   ADAPTER STOPPING TO WORK, ACTUALLY SOME DAMAGE TO THE COMPUTER,

25   THAT INDIVIDUAL WOULD NOT BE EFFECTED BY THE RELEASE THAT THE

1    CLASS GIVES AS APART OF THIS SETTLEMENT AND COULD BRING AN

2    INDIVIDUAL ACTION FOR THAT WITHIN THE NORMAL STATUTE OF

3    LIMITATION WHATEVER?

4              MS. PREOVOLOS:  THAT'S HOW I WOULD READ THE RELEASE.

5    AGAIN, I DO WANT TO REPEAT THAT APPLE BELIEVES THERE IS NO

6    POSSIBILITY THAT A FAILURE TO THE ADAPTER COULD HARM THE

7    COMPUTER.  WE DON'T THINK IT'S POSSIBLE.

8              I WANT THE RECORD TO BE VERY CLEAR THAT THAT IS NOT

9    POSSIBLE IN OUR VIEW.  NONETHELESS THE RELEASE AS NEGOTIATED BY

10   THE PARTIES IS LIMITED TO THE ADAPTER AND THE ADAPTER CORDS.

11             THE COURT:  YES.  I UNDERSTAND THERE MUST BE SOMETHING

12   IN THE COMPUTER ITSELF THAT RECEIVES THE POWER, THE POWER

13   SUPPLY.  THE ADAPTER IS REALLY A STEPPED DOWN TRANSFORMER THAT

14   TRANSFORMS THE POWER.

15             SO THAT IT IS ESSENTIALLY EQUIVALENT OF A BATTERY

16   POWERED -- POWERED DEVICE AS SEEN BY THE COMPUTER.  GOT TO BE

17   SOMETHING INSIDE THE COMPUTER THAT RECEIVES THAT SIGNAL.

18             IF THAT IS DAMAGED IN SOME WAY BY A DEFECTIVE

19   TRANSFORMER THERE MIGHT BE SOME QUESTION AS TO WHETHER OR NOT

20   THAT CONSTITUTES DAMAGE TO THE COMPUTER, EVEN THOUGH THE DATA

21   IS NOT INJURED, THE SCREEN IS NOT INJURED, NOTHING IS INJURED

22   EXCEPT THE POWER SUPPLY THAT IS ON INSIDE INTERNAL TO THE

23   LAPTOP ITSELF.

24             MS. PREOVOLOS:  YOUR HONOR, LET ME RESPOND TO THAT IN

25   TWO WAYS.  I MAY INVITE MR. MUHLBACH WHOSE AN ENGINEER BY

1    TRAINING TO JOIN ME.

2            **THE COURT:**  EXCELLENT.  I SAW HIM SHIFTING IN HIS

3    CHAIR.

4            **MS. PREOVOLOS:**  AS MR. MUHLBACH MAKES HIS WAY UP LET

5    ME SAY, THERE HAS NEVER BEEN AN ALLEGATION THE POWER COMPONENT

6    OF THE COMPUTER ARE AFFECTED WHEN THIS ADAPTER FAILS.

7            THE ADAPTER PUTS OFF TOO MUCH POWER OR DOES ANYTHING

8    OF THAT NATURE IT SIMPLY FAILS, BUT I WILL LET A MORE

9    COMPETENT, SCIENTIFIC OR ENGINEERING EXPLANATION.

10           **THE COURT:**  NOT THE QUESTION, WE'RE BOTH OUT OF OUR

11   AREA.

12           **MR. MUHLBACH:**  YOUR HONOR IS CORRECT, THE ADAPTER

13   ITSELF IS EFFECTIVELY A STEP DOWN TRANSFORMER, CONVERTS WALL AC

14   POWER INTO LOCAL DC POWER.  THOSE COMPONENTS FROM -- ALL HOUSED

15   WITHIN THE WHITE BRICKS ADAPTER YOU HAVE YOURSELF THERE.

16           **THE COURT:**  LET ME GIVE THIS BACK BEFORE I END UP WITH

17   IT.  GO AHEAD.

18           **MR. MUHLBACH:**  WHICH ITSELF HAS SHORTFALL PROTECTION.

19   IT IS OVER CURRENT PROTECTION, HAS OVER VOLTAGE PROTECTION,

20   IT'S OVER TEMPERATURE PROTECTION, IT MEETS ALL UL AND EUROPEAN

21   SAFETY STANDARDS, IT'S BEEN TESTED.

22           THERE'S NO QUESTION, THERE'S NO ALLEGATION IN THIS

23   CASE CONCERNING THE QUALITY OF THE AMOUNT OF POWER DELIVERED.

24   THE ISSUE WITH THIS STRAIN RELIEF IF THAT FAILS THE WIRES

25   LITERALLY CARRYING THE DC CURRENT TO COMPUTER BREAK AND THUS

1    CAN NO LONG LONGER CARRY THAT POWER.

2            THERE'S NO ALLEGATION YOU GET SOME OVER CURRENT OR

3    OVER VOLTAGE CONDITION IN THAT CASE THAT WOULD HAVE ANY

4    POTENTIAL TO EFFECT THE COMPUTER ITSELF.  ALL THE POWER

5    CIRCUITRY, THE TRANSFORMING CIRCUITRY ALL IN THE ADAPTER ITSELF

6    NOT IN THE COMPUTER.

7            **THE COURT:**  ALL RIGHT.  BUT I SEEN THE MOVIE SCREAM OR

8    ONE OF THE ONES WHERE ALL KINDS OF THINGS HAPPEN THAT AREN'T

9    SUPPOSED TO HAPPEN AND THINGS HAPPEN.

10           SO MY CONCERN IS FOR THOSE CONSUMERS WHO DO EXPERIENCE

11   SOME COLLATERAL DAMAGE, EVEN THOUGH THE FAIL-SAFE ARE THERE,

12   THEY SHOULD WORK, THEY DON'T WORK, THAT CONSUMER IS NOT COVERED

13   BY THE RELEASE IS WHAT I WAS BEING TOLD, AND SO I'M SATISFIED

14   WITH THAT LANGUAGE.

15           **MS. ZELDES:**  JUST FOR YOUR REFERENCE DOCKET NUMBER 82

16   YOUR ORDER CONDITIONALLY GRANTING CERTIFICATION OF THE

17   SETTLEMENT CLASS.  IT'S THE LAST PAGE THE RELEASE IS ON THERE

18   FOR EASE OF REFERENCE.

19           **THE COURT:**  THANK YOU.  VERY WELL.  I'M SATISFIED AT

20   THIS POINT.  I WANTED TO HEAR FROM THE OBJECTOR, UNLESS YOU HAD

21   SOME POINT.

22           **MS. PREOVOLOS:**  THE ONLY THING I WANT TO DO IS JUST

23   BRIEFLY EXPLAIN TO YOUR HONOR A FILING THAT WAS MADE THIS

24   MORNING, SO IT'S NOT MYSTERIOUS TO YOU, WHICH HAS TO DO WITH

25   THE CHANGE OF DATE, THE EXTENSION OF THE ADAPTER PROGRAM.  I'LL

1    QUICKLY PUT THAT IN THE RECORD SO IT'S CLEAR WHAT HAPPENED.

2         WE HAD ALWAYS UNDERSTOOD THIS ADAPTER CEASED BEING

3    SHIPPED EITHER STAND-ALONE OR WITH COMPUTERS IN APPROXIMATELY

4    NOVEMBER 2009.  WHEN WE WERE PUTTING OUR FINAL APPROVAL PAPERS

5    AND ASKING FOR DECLARATION FROM OUR CLIENT I WANTED AN EXACT

6    DATE.

7         IT TURNED OUT APPLE DIDN'T HAVE AN EXACT DATE, AND WE

8    ACTUALLY ENDED UP HAVING TO GO BACK TO THE CONTRACT

9    MANUFACTURER TO SEE WHEN THEY HAD LAST MADE AND SHIPPED THE

10   ADAPTER TO APPLE.

11        WHY IS THAT?  BECAUSE THIS MP11 ADAPTER, THE

12   TOOTHBRUSH ADAPTER SUBSTITUTED FOR THE ADAPTER SORT OF

13   MID-MODEL, THERE WASN'T A NEW COMPUTER IT WAS SHIPPED WITH.

14        SO FOR SOME CONFIGURATION CODES YOU COULDN'T TELL FROM

15   APPLE'S RECORDS WHICH ADAPTER IT HAD.  SO IN ABUNDANCE OF

16   CAUTION WE ACTUALLY WENT BACK TO THE CONTRACT MANUFACTURER AND

17   TRACKED WHICH BATCHES MIGHT HAVE HAD, NOT DID HAVE, BUT MIGHT

18   HAVE HAD THE LAST OF THESE ADAPTERS.

19        AND SO, AND THAT'S WHY WE FOUND A FEW STAND ALONES

20   INTO APRIL OF 2010, A FEW COMPUTERS INTO JUNE OF 2010.  IN

21   RESPONSE WE EXTENDED THE PROGRAM TO JULY 2013 TO MAKE SURE

22   PEOPLE WOULD HAVE THEIR THREE YEARS AND WE GAVE SUPPLEMENTAL

23   NOTICE.

24        AND THE FILING THIS MORNING IS FROM A SENIOR

25   CONSULTANT AT THE CLAIMS ADMINISTRATOR JONATHAN CARAMEROS OF

1    KCC WHO DOCUMENTS AND ATTACHES A COPY OF THAT SUPPLEMENTAL

2    NOTICE WHICH WENT OUT BY E-MAIL TO APPROXIMATELY 175,000 CLASS

3    MEMBERS FOR WHOM WE HAD E-MAIL ADDRESSES AND TO ANOTHER 55.4

4    THOUSAND SETTLEMENT CLASS MEMBERS FOR WHOM WE HAD ONLY MAIL

5    ADDRESS, THOSE PEOPLE GOT IT BY POSTCARD MAIL OR BY REGULAR

6    MAIL, I SHOULD SAY.

7              **THE COURT:**  VERY WELL.  I TAKE IT THAT APPLE IS --

8    THIS IS A PROPRIETARY PRODUCT NOT SOLD BY ANY OTHER MERCHANT?

9              **MS. PREOVOLOS:**  CORRECT.

10             **THE COURT:**  AND THIS ONLY COVERS RESIDENTS OF THE

11   UNITED STATES?

12             **MS. PREOVOLOS:**  CORRECT.

13             **THE COURT:**  WAS THE SAME ADAPTER SOLD IN OTHER

14   JURISDICTIONS?

15             **MS. PREOVOLOS:**  I BELIEVE IT WAS, BUT IT'S OUTSIDE THE

16   SCOPE OF THE CASE, SO I DON'T WANT TO INCOMPETENTLY TESTIFY TO

17   THAT.

18             **THE COURT:**  VERY WELL.  THANK YOU.

19             **MS. PREOVOLOS:**  THANK YOU, YOUR HONOR.

20             **THE COURT:**  LET'S SEE, SO I HAVE AT LEAST COUPLE OF

21   OBJECTIONS, BUT, COUNSEL, YOU WANT TO -- MR. GREENBURG, WHO DO

22   YOU REPRESENT?

23             **MR. GREENBERG:**  MY NAME IS DAN GREENBURG, MAY IT

24   PLEASE THE COURT, YOUR HONOR, I REPRESENT OBJECTOR MARIE

25   GRIFFITH.

1          **THE COURT:** VERY WELL. I'LL GIVE YOU A BRIEF MOMENT

2     TO SPEAK.

3          **MR. GREENBERG:** THANK YOU, YOUR HONOR.  AND THANK YOU

4     FOR GRANTING ME PRO HAC VICE STATUS IN YOUR COURT.

5          I WAS RATHER STARTLED BY THE LANGUAGE THAT SETTLING

6     PARTIES HAVE USED IN THEIR RESPONSES WHERE THEY SAY MY CLIENT

7     AND HER LAWYER HAVE AN UNRELATED AGENDA TO THIS ACTION.  HER

8     AGENDA AND OUR AGENDA IS TO SPEAK FOR THE FAIRNESS OF THE WAY

9     THE CLASS IS TREATED.

10         AND IF I MAY I'D LIKE TO TALK A LITTLE BIT ABOUT

11    BLUETOOTH AND THE RELEVANCE OF BLUETOOTH TO THIS SETTLEMENT.

12    BECAUSE WE DISCUSSED EXTENSIVELY IN OUR OBJECTION AND THE

13    SETTLING PARTIES HAVE RESPOND TO IT PRETTY EXTENSIVELY.

14         I'D LIKE TO MAKE IT CLEAR WHAT WE'RE NOT SUGGESTING,

15    BECAUSE THEY RESPONDED TO A STRAWMAN, WE NEVER PUT FORWARD WHEN

16    WE TALKED ABOUT COLLUSION IN OUR OBJECTION TO COLLUSION AS

17    DISCUSSED IN BLUETOOTH DOESN'T JUST MEAN EXPRESS COLLUSION.

18         BLUETOOTH TALKS ABOUT WARNING SIGNS OF WHAT IT CALLS

19    IMPLICIT COLLUSION.  SO IT'S NOT NECESSARY FOR COLLUSION TO

20    TAKE PLACE FOR THE TWO PARTIES TO GET TOGETHER AND CONSPIRE,

21    ALL THAT NEEDS TO HAPPEN FOR IMPLICIT COLLUSION FOR THE

22    INTEREST OF THE PARTIES, EXCUSE ME, INTEREST OF THE CLASS TO BE

23    NEGLECTED OR ABANDONED.

24         BLUETOOTH SUGGESTS THREE WARNING SIGNS OF UNFAIRNESS

25    AND THE SETTLEMENT CONTAINS ALL THREE OF THOSE WARNING SIGNS.

1    HIGH OR DISPROPORTIONATE FEES, A CLEAR SAILING CLAUSE AND A

2    KICKER TO THE DEFENDANT.

3         AND THE SETTLING PARTIES TRY TO DISTINGUISH BLUETOOTH

4    FROM THE SETTLEMENT, THEY NOTE THIS SETTLEMENT DOESN'T HAVE

5    ZERO COMPENSATION, THAT'S THE KIND OF SETTLEMENT BLUETOOTH

6    DEALT WITH.  OF COURSE, BLUETOOTH IS NOT CONFINED TO ZERO

7    COMPENSATION TO THE CLASS.

8         LET ME SAY SOMETHING ABOUT YOUR REMARK IN THE CLASS IS

9    KIND OF SMALL, IN FACT, THE CLASS IS SMALLER THAN IT LOOKS.

10   BECAUSE WE'RE ESPECIALLY CONCERNED ABOUT THE HIGH FEES WHEN IT

11   APPEARS THAT SETTLEMENT AGREEMENT TAKING CREDIT FOR THINGS THAT

12   WOULD HAVE HAPPENED ANYWAY.

13        AND I'M TALKING PARTICULARLY ABOUT THE 20,000

14   REPLACEMENTS TO CONSUMERS, AND THE WAY I READ THIS IT LOOKS AS

15   IF THAT SORT OF REPLACEMENT PROGRAM WOULD HAVE OR SOMETHING

16   LIKE THAT REPLACEMENT PROGRAM WOULD HAVE HAPPENED ANYWAY.

17        AND I INVITE THE COURT TO TALK TO APPLE AND ASK APPLE

18   IF IT BELIEVES THAT THESE 20,000 REPLACEMENTS WERE THE PRODUCT

19   OF THIS SETTLEMENT OR WHETHER THEY WOULD HAVE HAPPENED IN ANY

20   CASE.  BECAUSE IF THEY WOULD HAVE HAPPENED IN ANY CASE THAT'S

21   ILLUSORY BENEFIT CLASS COUNSEL CANNOT TAKE CREDIT FOR.

22        SEEMS OBVIOUSLY TO ME THE COURT OUGHT TO ASK PARTIES

23   HOW MANY REPLACEMENTS SIMILAR TO THOSE REPLACEMENTS WOULD HAVE

24   HAPPENED ANYWAY OR WOULD HAVE HAPPENED IN A SIMILAR TIME PERIOD

25   WITHOUT THE SETTLEMENT, AND SO WHAT THAT SUGGESTS THE CLASS

1      COUNSEL TAKING CREDIT FOR WHAT IT DIDN'T DO.  AND, IF ANYTHING,

2      IS SIGN OF DISPROPORTIONATE FEES, THAT'S IT.

3                I'D ALSO LIKE TO SAY, THE PRESENCE OF THE MEDIATOR

4      THAT CLASS COUNSEL TRUMPETS DOESN'T REALLY SOLVE THE PROBLEM

5      WHAT BLUETOOTH TALKS ABOUT AS COLLUSION, BECAUSE WHEN YOU HAVE

6      A MEDIATOR WHAT A MEDIATOR DOES IS MEDIATOR MAKES SURE ALL THE

7      PARTIES IN THE ROOM AGREE.

8                THE MEDIATOR DOESN'T MAKE SURE THAT THE PARTIES

9      CARRIED OUT THEIR DUTIES TO THE PEOPLE SUPPOSED TO BE

10     REPRESENTING THE CLASS.

11               AND, OF COURSE, EVERYBODY KNOWS THAT WHEN THE MEDIATOR

12     CONDUCTS TWO SETTLEMENTS, ONE FOR THE SUBSTANTIVE AGREEMENT AND

13     THE SECOND FOR ATTORNEYS' FEES, EVERYBODY KNOWS THE ATTORNEY

14     FEES NEGOTIATION IS GOING TO TAKE PLACE AFTERWARD.

15               JUST LIKE YOU IF EAT, FIRST EAT YOUR MAIN COURSE THEN

16     YOU HAVE YOUR DESERT, EVERYBODY KNOWS YOU'RE GOING TO SAVE ROOM

17     FOR DESERT.  I DON'T KNOW BIFURCATED SETTLEMENT PROCEDURE

18     REALLY SOLVES THE PROBLEM OF COLLUSION THAT BLUETOOTH IS

19     TALKING ABOUT.

20               I'M NOT HERE SOLELY TO CRITICIZE THE SETTLEMENT, I

21     THINK, IT'S BEEN IMPROVED IN ONE IMPORTANT RESPECT.  I

22     APPRECIATE WHAT THE PARTIES DID IN THE OLSEN DECLARATION, WE'VE

23     HAD IN FOOTNOTE 12 THAT SUGGESTS THAT THE SETTLEMENT DEFICIENT.

24               SOME AREAS THAT OLSEN DECLARATION EXTENDS THE PROGRAM

25     SIGNIFICANTLY TO COMPLIMENT THE SETTLING PARTIES ON THAT, BUT I

1   DO THINK THAT THERE A LITTLE BIT MORE CRITICAL OF OUR REASONING

2   THEN THEY SHOULD BE WHEN THEY SAY THAT IT WOULD HAVE BEEN

3   PERFECTLY APPROPRIATE TO HAVE CLAIMS PROCESS THAT WOULD HAVE

4   BEEN DONE OVER THE INTERNET AND NOT JUST BY POSTAGE, THEY SAY

5   THAT'S A NONSEQUENTIAL, A NONSENSICAL THING TO SAY COULD HAVE

6   BEEN DONE BY A INTERNET.

7          OF COURSE, MAKES LOT OF SENSE IN MY VIEW, THESE ARE

8   CLASSIC COMPUTER USERS, CAN EXPECT TO BE MORE CONVERSANT WITH

9   THE INTERNET THEN THE AVERAGE CLASS.  I DO THINK THE MOST

10  IMPORTANT POINT, THIS QUESTION OF THIS 20,000 REPLACEMENT

11  ADAPTERS TO CONSUMERS.

12         THAT REALLY UNDERSCORES THE FACT THAT NOT ONLY MIGHT

13  THIS BE SOMEWHAT SMALL CLASS, BUT MIGHT BE EVEN SMALLER THAN

14  HAS BEEN PRESENTED TO THIS COURT BECAUSE IT'S NOT A PRODUCT OF

15  A SETTLEMENT.

16         AND SO I HOPE THE COURT WILL EXPLORE WHAT APPLE'S

17  POSITION IS, WHETHER THESE 20,000 CONSUMERS WERE PRODUCT OF THE

18  SETTLEMENT.  AND IN GENERAL AT THIS POINT WE JUST THINK IT'S

19  REALLY HARD TO SAY HOW MUCH THE CLASS HAS BEEN BENEFITED, AND

20  SO IT'S HARD TO COME UP WITH ATTORNEYS' FEES WE DON'T KNOW HOW

21  MUCH CLASS HAS BEEN BENEFITED.

22         YOUR HONOR, I'D LIKE TO CLOSE BY SAYING SOMETHING

23  ABOUT THE RATHER STRIKING LANGUAGE OF THE SETTLING PARTIES, THE

24  WAY THEY CRITICIZE MY BUSINESS PARTNER AND MY CLIENT.

25         THE LANGUAGE OF THE BRIEFS IS THAT THEY SAID MY

1    PARTNER HAS -- HE'S OPPOSED TO CLASS ACTIONS IN GENERAL, THIS

2    IS AFTER HE'S IMPROVED MULTIPLE SETTLEMENTS FOR THE PURPOSE OF

3    CLASS.

4            THAT LANGUAGE IS ABSOLUTELY FALSE, IF IT WERE TRUE IT

5    WOULD BE COMPLETELY IRRELEVANT.  THEY CLAIM MY CLIENT WORKS FOR

6    AN ORGANIZATION THAT'S OPPOSED TO MULTISTATE CLASS ACTIONS,

7    THAT'S ABSOLUTELY FALSE.  IF IT WERE TRUE IT WOULD BE

8    IRRELEVANT.

9            YOU KNOW THERE'S A LONG STRAIN OF CASES THAT SAYS

10   YOU'RE NOT SUPPOSED TO BRING IN POLITICAL VIEWS OF THE

11   LITIGATOR AND THE CLIENT HAVING TO DO WITH LITIGATION AND ACLU

12   AND NAACP.  NOT BRING POLITICAL VIEWS OF MY CLIENTS, WHETHER

13   THEY'RE VEGETARIANS, MEMBERS OF THE AMERICAN COMMUNIST PARTY

14   IRRELEVANT AND IMPROPER, AND I REALLY THINK THAT'S REGRETTABLE

15   CONDUCT BEFORE THIS COURT.

16           THANK YOU VERY MUCH FOR YOUR TIME.  HAPPY TO TAKE ANY

17   QUESTIONS.

18           **THE COURT:**  I DON'T HAVE ANY QUESTIONS AND I REALLY

19   APPRECIATE YOUR TAKING THE TIME TO MAKE YOUR COMMENTS, BOTH IN

20   WRITING AND HERE TODAY, MR. GREENBURG.

21           I DO TAKE TO HEART YOUR COMMENT ABOUT THE NATURE OF

22   THE MEDIATION PROCESS, BUT AND THAT'S WHY THE COURT SERVED ITS

23   ROLE.  I DON'T EXPECT TO HAVE A MEDIATOR PERFORM THE FUNCTION

24   THAT A COURT DOES IN CLASS ACTION AND MAKING SURE IT'S FAIR AND

25   REASONABLE, IT IS A SETTLEMENT.

1          HOWEVER, IT IS A SETTLEMENT OF A LITIGATION WHICH,

2     PERHAPS, IF HAD GONE ON WOULD BE MAYBE A DIFFERENT OUTCOME THAN

3     WE HAVE IN THE SETTLEMENT, BUT THAT'S NOT TO UNDO THE BENEFIT

4     OF A SETTLEMENT.

5          AND IT IS THE COURT'S INTENT TO MAKE SOME FINAL

6     ADJUSTMENTS BASED ON SOME OF THE COMMENTS I MADE HERE, BUT TO

7     LARGELY APPROVE THE SETTLEMENT AND TO APPROVE THE ATTORNEYS'

8     FEES THAT HAVE BEEN REQUESTED OF THE COURT THAT WILL ALL BE

9     SUBJECT TO THE FINAL ORDER I WILL ISSUE SHORTLY.

10          THANK YOU ALL VERY MUCH.

11

12               (PROCEEDINGS ADJOURNED.)

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 17TH DAY OF APRIL, 2012.


/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR

Exhibit 12

# MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

September 5, 2014

Writer's Direct Contact
+1 (415) 268.6848
TCheung@mofo.com

Via Email and U.S. Mail

Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036

**Re:**  ***In re MagSafe Apple Power Adapter Litigation*, Case No. 09-CV-01911-EJD (N.D. Cal.)**

Dear Ted:

Pursuant to your letter dated April 29, 2014 and my letter dated August 15, 2014, Apple is providing the following information.

**Request No. 1:  The number of valid claims made for (a) $35 payments; (b) $50 payments; and (c) $79 payments.**

The claims administrator has informed us that it validated 3,839 claims at the $35 level; 10,269 claims at the $50 level; and 1,898 claims at the $79 level.

**Request No. 2:  The number of claims made that were deemed invalid.**

The claims administrator has informed us that seventy-seven claims were deemed invalid.

**Request No. 3:  For each month between August 2008 and July 2013, the number of replacement power adapters Apple provided to customers under its replacement program.**

Adapters Provided by Month:

| Month | No. of Adapters Provided |
|---|---|
| **August 2008** | 728 |
| **September 2008** | 865 |
| **October 2008** | 1,050 |

sf-3452787

MORRISON | FOERSTER

Theodore H. Frank
September 5, 2014
Page Two

| Month | No. of Adapters Provided |
|---|---|
| **November 2008** | 734 |
| **December 2008** | 631 |
| **January 2009** | 848 |
| **February 2009** | 601 |
| **March 2009** | 707 |
| **April 2009** | 948 |
| **May 2009** | 939 |
| **June 2009** | 898 |
| **July 2009** | 1,241 |
| **August 2009** | 1,072 |
| **September 2009** | 1,059 |
| **October 2009** | 1,322 |
| **November 2009** | 1,011 |
| **December 2009** | 1,228 |
| **January 2010** | 1,423 |
| **February 2010** | 1,202 |
| **March 2010** | 1,193 |
| **April 2010** | 1,440 |
| **May 2010** | 1,111 |
| **June 2010** | 1,376 |
| **July 2010** | 2,064 |
| **August 2010** | 2,083 |
| **September 2010** | 2,091 |
| **October 2010** | 2,286 |
| **November 2010** | 1,962 |
| **December 2010** | 1,803 |
| **January 2011** | 2,496 |
| **February 2011** | 1,755 |
| **March 2011** | 1,461 |
| **April 2011** | 1,719 |
| **May 2011** | 1,250 |
| **June 2011** | 1,251 |
| **July 2011** | 1,513 |
| **August 2011** | 1,311 |
| **September 2011** | 1,091 |
| **October 2011** | 1,129 |
| **November 2011** | 4,278 |
| **December 2011** | 10,136 |

MORRISON | FOERSTER

Theodore H. Frank
September 5, 2014
Page Three

| Month | No. of Adapters Provided |
|-------|--------------------------|
| January 2012 | 9,572 |
| February 2012 | 6,288 |
| March 2012 | 5,712 |
| April 2012 | 5,785 |
| May 2012 | 4,770 |
| June 2012 | 3,807 |
| July 2012 | 4,687 |
| August 2012 | 3,893 |
| September 2012 | 3,729 |
| October 2012 | 4,088 |
| November 2012 | 3,328 |
| December 2012 | 3,220 |
| January 2013 | 4,322 |
| February 2013 | 2,908 |
| March 2013 | 2,064 |
| April 2013 | 2,838 |
| May 2013 | 2,076 |
| June 2013 | 2,198 |
| July 2013 | 2,633 |

**Request No. 4:  The number of receipts requested from the online lookup tool established for settlement administration.**

Apple received 9,189 receipt requests through the online lookup tool established for settlement administration.

Sincerely,

Tiffany Cheung

Exhibit 13

English

Apple One (1) Year Limited Warranty
For Apple Branded Products Only

CONSUMER RIGHTS AND RESTRICTIONS.  FOR CONSUMERS, WHO ARE
COVERED BY CONSUMER PROTECTION LAWS OR REGULATIONS IN THEIR
COUNTRY OF PURCHASE OR, IF DIFFERENT, THEIR COUNTRY OF RESIDENCE,
THE BENEFITS CONFERRED BY THIS WARRANTY ARE IN ADDITION TO ALL
RIGHTS AND REMEDIES CONVEYED BY SUCH CONSUMER PROTECTION LAWS
AND REGULATIONS. THIS WARRANTY DOES NOT EXCLUDE, LIMIT OR
SUSPEND ANY RIGHTS OF CONSUMERS ARISING OUT OF NON-CONFORMITY
WITH A SALES CONTRACT. HOWEVER, AS DESCRIBED BELOW, APPLE
DISCLAIMS STATUTORY AND IMPLIED WARRANTIES TO THE EXTENT
PERMITTED BY LAW, AND IN SO FAR AS SUCH WARRANTIES CANNOT BE
DISCLAIMED, ALL SUCH WARRANTIES SHALL TO THE EXTENT PERMITTED BY
LAW BE LIMITED IN DURATION TO THE DURATION OF THE EXPRESS
WARRANTY DESCRIBED BELOW AND TO THE REPAIR OR REPLACEMENT
SERVICE AS DETERMINED BY APPLE IN ITS SOLE DISCRETION. SOME STATES
(COUNTRIES AND PROVINCES) DO NOT ALLOW LIMITATIONS ON HOW LONG
AN IMPLIED WARRANTY OR CONDITION MAY LAST, SO THE LIMITATIONS
DESCRIBED ABOVE MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU
SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS THAT
VARY FROMSTATE TO STATE (OR BY COUNTRY OR PROVINCE). THIS LIMITED
WARRANTY IS GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE
COUNTRY IN WHICH THE PRODUCT PURCHASE TOOK PLACE. APPLE, THE
WARRANTOR UNDER THIS LIMITED WARRANTY, IS IDENTIFIED AT THE END
OF THIS DOCUMENT ACCORDING TO THE COUNTRY OR REGION IN WHICH
THE PRODUCT PURCHASE TOOK PLACE.

WARRANTY.  Apple's warranty obligations for this hardware product are limited to the terms
set forth herein. Apple, as defined in the table below, warrants this Apple-branded hardware
product against defects in materials and workmanship under normal use for a period of ONE (1)
YEAR from the date of retail purchase by the original end-user purchaser ("Warranty Period"). If
a hardware defect arises and a valid claim is received within the Warranty Period, at its option
and to the extent permitted by law, Apple will either (1) repair the hardware defect at no charge,
using new or refurbished parts that are equivalent to new in performance and reliability, (2)
exchange the product with a product that is new or refurbished that is equivalent to new in
performance and reliability and is at least functionally equivalent to the original product, or (3)
refund the purchase price of the product. Apple may request that you replace defective parts with
user-installable new or refurbished parts that Apple provides in fulfillment of its warranty
obligation. A replacement product or part, including a user-installable part that has been installed
in accordance with instructions provided by Apple, assumes the remaining warranty of the
original product or ninety (90) days from the date of replacement or repair, whichever provides
longer coverage for you. When a product or part is exchanged, any replacement item becomes
your property and the replaced item becomes Apple's property. Parts provided by Apple in
fulfillment of its warranty obligation must be used in products for which warranty service is
claimed. When a refund is given, the product for which the refund is provided must be returned to
Apple and becomes Apple's property.

EXCLUSIONS AND LIMITATIONS. TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY AND THE REMEDIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, REMEDIES AND CONDITIONS, WHETHER ORAL, WRITTEN, STATUTORY, EXPRESS OR IMPLIED. AS PERMITTED BY APPLICABLE LAW, APPLE SPECIFICALLY DISCLAIMS ANY AND ALL STATUTORY OR IMPLIED WARRANTIES, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS. **IF APPLE CANNOT LAWFULLY DISCLAIM STATUTORY OR IMPLIED WARRANTIES THEN TO THE EXTENT PERMITTED BY LAW, ALL SUCH WARRANTIES SHALL BE LIMITED IN DURATION TO THE DURATION OF THE EXPRESS WARRANTY AND TO THE REPAIR OR REPLACEMENT SERVICE AS DETERMINED BY APPLE IN ITS SOLE DISCRETION. SOME STATES (COUNTRIES AND PROVINCES) DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY OR CONDITION MAY LAST, SO THE LIMITATIONS DESCRIBED ABOVE MAY NOT APPLY TO YOU.** No Apple reseller, agent, or employee is authorized to make any modification, extension, or addition to this warranty. If any term is held to be illegal or unenforceable, the legality or enforceability of the remaining terms shall not be affected or impaired.

This Limited Warranty applies only to hardware products manufactured by or for Apple that can be identified by the "Apple" trademark, trade name, or logo affixed to them. The Limited Warranty does not apply to any non-Apple hardware products or any software, even if packaged or sold with Apple hardware. Manufacturers, suppliers, or publishers, other than Apple, may provide their own warranties to the end user purchaser, but Apple, in so far as permitted by law, provides their products "as is". Software distributed by Apple with or without the Apple brand name (including, but not limited to system software) is not covered under this Limited Warranty. Refer to the licensing agreement accompanying the software for details of your rights with respect to its use.
Apple does not warrant that the operation of the product will be uninterrupted or error-free. Apple is not responsible for damage arising from failure to follow instructions relating to the product's use.

**This warranty does not apply: (a) to consumable parts, such as batteries, unless damage has occurred due to a defect in materials or workmanship; (b) to cosmetic damage, including but not limited to scratches, dents and broken plastic on ports; (c) to damage caused by use with non-Apple products; (d) to damage caused by accident, abuse, misuse, liquid contact, fire, earthquake or other external causes; (e) to damage caused by operating the product outside the permitted or intended uses described by Apple; (f) to damage caused by service (including upgrades and expansions) performed by anyone who is not a representative of Apple or an Apple Authorized Service Provider ("AASP"); (g) to a product or part that has been modified to alter functionality or capability without the written permission of Apple; (h) to defects caused by normal wear and tear or otherwise due to the normal aging of the product or (i) if any Apple serial number has been removed or defaced.**

EXCEPT AS PROVIDED IN THIS WARRANTY AND TO THE EXTENT PERMITTED BY LAW, APPLE IS NOT RESPONSIBLE FOR DIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM ANY BREACH OF WARRANTY OR CONDITION, OR UNDER ANY OTHER LEGAL THEORY, INCLUDING BUT NOT LIMITED TO LOSS OF USE; LOSS OF REVENUE; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS OF PROFITS ON CONTRACTS); LOSS OF THE USE OF MONEY; LOSS OF ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF

OPPORTUNITY; LOSS OF GOODWILL; LOSS OF REPUTATION; LOSS OF, DAMAGE TO, COMPROMISE OR CORRUPTION OF DATA; OR ANY INDIRECT OR CONSEQUENTIAL LOSS OR DAMAGE HOWSOEVER CAUSED INCLUDING THE REPLACEMENT OF EQUIPMENT AND PROPERTY, ANY COSTS OF RECOVERING, PROGRAMMING, OR REPRODUCING ANY PROGRAM OR DATA STORED OR USED WITH APPLE PRODUCTS AND ANY FAILURE TO MAINTAIN THE CONFIDENTIALITY OF DATA STORED ON THE PRODUCT. THE FOREGOING LIMITATION SHALL NOT APPLY TO DEATH OR PERSONAL INJURY CLAIMS, OR ANY STATUTORY LIABILITY FOR INTENTIONAL AND GROSS NEGLIGENT ACTS AND/OR OMISSIONS. APPLE DISCLAIMS ANY REPRESENTATION THAT IT WILL BE ABLE TO REPAIR ANY PRODUCT UNDER THIS WARRANTY OR MAKE A PRODUCT EXCHANGE WITHOUT RISK TO OR LOSS OF THE PROGRAMS OR DATA.  SOME STATES (COUNTRIES AND PROVINCES) DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

OBTAINING WARRANTY SERVICE. Please access and review the online help resources described below before requesting warranty service. If the product is still not functioning properly after making use of these resources, please contact the Apple representatives or, if applicable, an Apple owned retail store ("Apple Retail") or AASP using the information provided below. When contacting Apple via telephone, other charges may apply depending on your location. When calling, an Apple representative or AASP will help determine whether your product requires service and, if it does, will inform you how Apple will provide it. You must assist in diagnosing issues with your product and follow Apple's warranty processes.
Apple will provide warranty service either (i) at an Apple Retail or AASP location, where service is performed at the location, or the Apple Retail or AASP may send the product to an Apple repair service location for service, (ii) by sending you prepaid way bills (and if you no longer have the original packaging, Apple may send you packaging material) to enable you to ship the product to Apple's repair service location for service, or (iii) by sending you customer installable new or refurbished replacement product or parts to enable you to service or exchange your own product ("DIY Service"). Upon receipt of the replacement product or part, the original product or part becomes the property of Apple and you agree to follow instructions, including, if required, arranging the return of original product or part to Apple in a timely manner. When providing DIY Service requiring the return of the original product or part, Apple may require a credit card authorization as security for the retail price of the replacement product or part and applicable shipping costs. If you follow instructions, Apple will cancel the credit card authorization, so you will not be charged for the product or part and shipping costs. If you fail to return the replaced product or part as instructed or the replaced product or part is not eligible for warranty service, Apple will charge the credit card for the authorized amount.
Service options, parts availability and response times may vary according to the country in which service is requested. Service options are subject to change at any time. You may be responsible for shipping and handling charges if the product cannot be serviced in the country in which service is requested. If you seek service in a country that is not the country of purchase, you will comply with all applicable import and export laws and regulations and be responsible for all custom duties, V.A.T. and other associated taxes and charges. For international service, Apple may repair or exchange defective products and parts with comparable products and parts that comply with local standards. In accordance with applicable law, Apple may require that you furnish proof of purchase details and/or comply with registration requirements before receiving warranty service. Online information with more details on obtaining warranty service is provided below.

PRIVACY.  Apple will maintain and use customer information in accordance with the Apple Customer Privacy Policy available at www.apple.com/legal/warranty/privacy.

DATA BACKUP.  If your product is capable of storing software programs, data and other information, you should make periodic backup copies of the information contained on the product's hard drive or other storage media to protect the contents and as a precaution against possible operational failures. Before you deliver your product for warranty service it is your responsibility to keep a separate backup copy of the contents, remove all personal information and that you want to protect and disable any security passwords. IT IS POSSIBLE THAT THE CONTENTS OF YOUR HARD DRIVE WILL BE LOST OR REFORMATTED IN THE COURSE OF WARRANTY SERVICE, AND APPLE AND ITS AGENTS ARE NOT RESPONSIBLE FOR ANY DAMAGE TO OR LOSS OF PROGRAMS, DATA OR OTHER INFORMATION CONTAINED ON THE MEDIA OR ANY PART OF THE PRODUCT SERVICED. Your product or a replacement product will be returned to you configured as your product was when originally purchased, subject to applicable updates. You will be responsible for reinstalling all other software programs, data and passwords. Recovery and reinstallation of software programs and user data are not covered under this Limited Warranty.

ONLINE INFORMATION. More information of the following is available online:

| International Support Information | www.apple.com/support/country |
|---|---|
| | |
| Apple Authorized Service Providers | http://support.apple.com/kb/HT1434 |
| Apple Retail Store | http://www.apple.com/retail/storelist/ |
| Apple Support and Service | http://www.apple.com/support/contact/phone_contacts.html |
| Apple Complimentary Support | http://www.apple.com/support/country/index.html?dest=complimentary |

Exhibit 14

# Apple Parts – Ninety (90) Days Limited Warranty

## WARRANTY COVERAGE

Apple's warranty obligations are limited to the terms set forth below:

Apple, as defined below, warrants this Apple-branded hardware part against defects in materials and workmanship under normal use for a period of NINETY (90) DAYS from the date of retail purchase by the original end-user purchaser ("Warranty Period"). If a hardware defect arises and a valid claim is received within the Warranty Period, at its option, Apple will either (1) exchange the part with a new, used or refurbished part that is at least functionally equivalent to the original part, or (2) refund the purchase price of the part. A replacement part assumes the remaining warranty of the original part or ninety (90) days from the date of replacement, whichever provides longer coverage for you. When a part is exchanged, any replacement item becomes your property and the replaced item becomes Apple's property. When a refund is given, the part for which the refund is provided becomes Apple's property.

## EXCLUSIONS AND LIMITATIONS

This Limited Warranty applies only to hardware parts manufactured by or for Apple that may be identified by the "Apple" trademark, trade name, or logo affixed to them. The Limited Warranty does not apply to any non-Apple hardware part or any software, even if packaged or sold with Apple hardware. Manufacturers, suppliers, or publishers, other than Apple, may provide their own warranties, but Apple, in so far as it is permitted by law, provides its parts "as is". Software distributed by Apple with or without the Apple brand name (including, but not limited to system software) is not covered under this Limited Warranty. Refer to the licensing agreement accompanying the software for details of your rights

with respect to its use.

Apple does not warrant that the operation of the part will be uninterrupted or error-free. Apple is not responsible for damage arising from failure to follow instructions relating to the part's use.

This warranty does not apply: (a) to damage caused by non-Apple products; (b) to damage caused by accident, abuse, misuse, flood, fire, earthquake or other external causes; (c) to damage caused by operating the part outside the permitted uses described by Apple; (d) to damage caused by service (including upgrades and expansions) performed by anyone who is not a representative of Apple or an Apple Authorized Service Provider authorized to perform service; (e) to a part that has been modified to significantly alter functionality or capability without the written permission of Apple; (f) to consumable parts, such as batteries, unless damage has occurred due to a defect in materials or workmanship; or (g) if any serial number has been removed or defaced.

TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY AND REMEDIES SET FORTH ABOVE ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, REMEDIES AND CONDITIONS, WHETHER ORAL OR WRITTEN, STATUTORY, EXPRESS OR IMPLIED. AS PERMITTED BY APPLICABLE LAW, APPLE SPECIFICALLY DISCLAIMS ANY AND ALL STATUTORY OR IMPLIED WARRANTIES, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS. IF APPLE CANNOT LAWFULLY DISCLAIM STATUTORY OR IMPLIED WARRANTIES THEN TO THE EXTENT PERMITTED BY LAW, ALL SUCH WARRANTIES SHALL BE LIMITED IN DURATION TO THE DURATION OF THIS EXPRESS WARRANTY AND TO REPAIR OR REPLACEMENT SERVICE AS DETERMINED BY APPLE IN ITS SOLE DISCRETION. No Apple reseller, agent, or employee is authorized to make any modification, extension, or addition to this warranty.

TO THE EXTENT PERMITTED BY LAW APPLE IS NOT RESPONSIBLE FOR DIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM ANY BREACH OF WARRANTY OR CONDITION, OR UNDER ANY

OTHER LEGAL THEORY, INCLUDING BUT NOT LIMITED TO LOSS OF
REVENUE; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS
OF PROFITS ON CONTRACTS); LOSS OF THE USE OF MONEY; LOSS OF
ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF OPPORTUNITY; LOSS
OF GOODWILL; LOSS OF REPUTATION; LOSS OF, DAMAGE TO OR
CORRUPTION OF DATA; OR ANY INDIRECT OR CONSEQUENTIAL LOSS OR
DAMAGE HOWSOEVER CAUSED INCLUDING THE REPLACEMENT OF
EQUIPMENT AND PROPERTY, ANY COSTS OF RECOVERING,
PROGRAMMING, OR REDUCING ANY PROGRAM OR DATA STORED OR USED
WITH APPLE PARTS AND ANY FAILURE TO MAINTAIN THE
CONFIDENTIALITY OF DATA STORED ON THE PART. THE FOREGOING
LIMITATION SHALL NOT APPLY TO DEATH OR PERSONAL INJURY CLAIMS.
APPLE SPECIFICALLY DOES NOT REPRESENT THAT IT WILL BE ABLE TO
REPAIR ANY PART UNDER THIS WARRANTY OR MAKE A PART EXCHANGE
WITHOUT RISK TO OR LOSS OF THE PROGRAMS OR DATA.

## CONSUMER PROTECTION LAWS

FOR CONSUMERS WHO HAVE THE BENEFIT OF CONSUMER PROTECTION
LAWS OR REGULATIONS IN THEIR COUNTRY OF PURCHASE OR, IF
DIFFERENT, THEIR COUNTRY OF RESIDENCE, THE BENEFITS CONFERRED BY
THIS WARRANTY ARE IN ADDITION TO ALL RIGHTS AND REMEDIES
CONVEYED BY SUCH CONSUMER PROTECTION LAWS AND REGULATIONS.
Some countries, states and provinces do not allow the exclusion or
limitation of incidental or consequential damages or exclusions or
limitations on the duration of implied warranties or conditions, so the
above limitations or exclusions may not apply to you. This warranty gives
you specific legal rights, and you may also have other rights that vary by
country, state or province.

This Limited Warranty is governed by and construed under the laws of the
country or state in which the part purchase took place. Apple, the
warrantor under this Limited Warranty, is identified at the end of this
document according to the country or region in which the purchase took
place.

## OBTAINING WARRANTY SERVICE

Please review the online help resources referred to in the documentation posted at "http://www.apple.com/support" before seeking warranty service. If the part is still not functioning properly after making use of these resources, please return the part to the place where the original retail purchase took place. An Apple authorized service technician will help determine whether the part is defective, and if so, will assist in providing warranty service. Warranty service applies to parts that are tendered or presented for service during the Warranty Period, as permitted by law. Subject to applicable law, you will be required to furnish proof of purchase details before receiving warranty service. Warranty service may be restricted to the country where purchased. Service options, parts availability and response times will vary according to country, and you may be responsible for shipping and handling charges if the part cannot be serviced in the country it is in. In accordance with applicable law, certain countries may require that you furnish proof of purchase details and/or comply with registration requirements before receiving warranty service.

If your part is capable of storing data or software programs, you should make periodic backup copies of the data and programs contained thereon as a precaution to possible operational failures. Before you deliver your part for warranty service it is your responsibility to keep a separate backup copy of the system software, application software and data, and disable any security passwords. You will be responsible for reinstalling all such software, data and passwords. Apple and its agents are not liable for any damage to or loss of any programs, data, or other information stored on any media, or any non-Apple product or part not covered by this warranty. Recovery and reinstallation of system and application software and user data are not covered under this Limited Warranty.

**Warranty Obligor for Region or Country of Purchase**

| Region/Country of Purchase | Apple | Address |
|---|---|---|
|  |  |  |
| Americas |  |  |

| Brazil | Apple Computer Brasil Ltda | Av. Cidade Jardim 400, 2 Andar, Sao Paulo, SP Brasil 01454-901 |
|---|---|---|
| Canada | Apple Canada Inc. | 7495 Birchmount Rd.; Markham, Ontario, Canada; L3R 5G2 Canada |
| Mexico | Apple Operations Mexico, S.A. de C.V. | Av. Paseo de la Reforma 505, Piso 33, Colonia Cuauhtemoc, Mexico DF 06500 |
| United States and Other Americas Countries | Apple Inc. | 1 Infinite Loop; Cupertino, CA 95014, U.S.A. |
| | | |
| Europe, Middle East and Africa | | |
| | | |
| All Countries | Apple Sales International | Hollyhill Industrial Estate Hollyhill, Cork, Republic of Ireland |
| | | |
| Asia Pacific | | |
| | | |
| Australia; New Zealand; Fiji, Papua New Guinea; Vanuatu | Apple Pty. Limited. | PO Box A2629, South Sydney, NSW 1235, Australia |
| Hong Kong | Apple Asia Limited | 2401 Tower One, Times Square, Causeway; Hong Kong |
| India | Apple India Private Ltd.. | 19th Floor, Concorde Tower C, UB City No 24, Vittal Mallya Road, Bangalore 560-001, India |
| Japan | Apple Japan Inc. | 3-20-2 Nishishinjuku, Shinjuku-ku, Tokyo, Japan |
| Korea | Apple Computer Korea Ltd.. | 3201, ASEM Tower; 159, Samsung-dong, Kangnam-gu; Seoul 135-090, Korea |
| Afghanistan, Bangladesh, Bhutan, Brunei, Cambodia, Guam, Indonesia, Laos, Singapore, Malaysia, Nepal, Pakistan, Philippines, Sri Lanka,, Vietnam | Apple South Asia Pte. Ltd. | 7 Ang Mo Kio Street 64  Singapore 569086 |
| People's Republic of China | Apple Computer Trading (Shanghai) Co. Ltd. | B Area, 2/F, No. 6 Warehouse Building, No. 500 Bing Ke Road, Wai Gao Qiao Free Trade Zone, Shanghai, P.R.C. |
| Thailand | Apple South Asia (Thailand) Limited | 25th Floor, Suite B2, Siam Tower,989 Rama 1 Road, Pataumwan, Bangkok, 10330 |
| Taiwan | Apple Asia LLC | 16A, No. 333 Tun Hwa S. Road. Sec. 2, Taipei, Taiwan 106 |

| Other Asian Pacific Countries | Apple Inc. | 1 Infinite Loop; Cupertino, CA 95014, U.S.A. |
|---|---|---|