STEVEN A.  SKALET (admitted *pro hac vice*)
CRAIG L.  BRISKIN (admitted *pro hac vice*)
TARYN WILGUS NULL (CA SBN 254445)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com
tnull@findjustice.com

Attorneys for Plaintiffs and Interim Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.:   5:09-CV-01911-JW<br><br>DECLARATION OF CRAIG L. BRISKIN IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEES AND COSTS<br><br>Date:          November 6, 2014<br>Time:          9:00 A.M.<br><br>Courtroom: 4 - 5th Floor<br>Judge:         Hon.  Edward J. Davila |

MEHRI & SKALET, PLLC

I, Craig L. Briskin, declare as follows:

1.      I am an attorney duly licensed to practice before all courts of the States of New York, Massachusetts and the District of Columbia, and I am admitted to this Court *pro hac vice*. I am a partner with the law firm of Mehri & Skalet, PLLC, one of Plaintiffs' counsel in the above-captioned matter (the "Litigation") and Interim Lead Counsel for the Class.

2.      I have personal knowledge of the matters set forth in this declaration, and those specified to be on information or belief I believe to be true based upon my role in this case, and if called as a witness, I could and would testify competently thereto. I submit this declaration in support of Plaintiffs' Renewed Motion for Final Approval of Class Action Settlement and Attorneys' Fees and Costs.

3.      The tasks undertaken by my firm in this Litigation can be summarized as follows:

(a)      Investigation of potential claims;

(b)      Research on potential theories of liability, class certification and damages;

(c)      Review and filing of complaint;

(d)      Discovery strategy and case management;

(e)      Drafting of discovery requests;

(f)      Consultation with and retention of experts;

(g)      Review of defendant's document production and discovery responses;

(h)      Coordination of efforts among co-counsel;

(i)      Communications with class members;

(j)      Mediation, including the drafting of mediation briefs;

(k)      Drafting and review of fee petition and reply brief;

(l)      Drafting and review of final approval motion;

(m)      Drafting and review of response to objectors.

(n)      Briefing and strategy on appeal (not included in this fee request).

(o)      Drafting and review of renewed final approval motion.

1

Case No.  5:09-CV-01911-EJD

1        (p)      Drafting and review of motions for bond, and related sanctions.

4.      The information in this declaration regarding the firm's time and expenses is taken from time and expense printouts prepared and maintained by the firm in the ordinary course of business in a software program called Sage Timeslips 2014. A copy of these records is available at the request of the Court.

5.      I am the partner who oversaw and/or conducted the day-to-day activities in the Litigation and reviewed the Timeslips printouts (and backup documentation where necessary or appropriate). The purpose of this review was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses my firm committed to the Litigation. As a result of this review, reductions were made to both time and expenses either in the exercise of "billing judgment" or to conform to the firm's practices regarding certain expenses such as charges for hotels, meals, and transportation. In particular, I excluded entirely from the firm's substantial lodestar spent on the appeals (Nos. 12-15757 and 12-15782) related to this Litigation. As a result of these reviews and adjustments, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the Litigation. In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

6.      After the reductions referred to above, the number of hours spent on this Litigation by my firm is 1,127.65. For the Court's easy reference, my firm separately itemized the lodestar relating to the Federal Rule of Appellate Procedure 7 ("FRAP 7") Bond Motions from the lodestar time relating to work done for the remainder of the Litigation, with the exception of lodestar spent on the appeals, which is not included. The schedules attached hereto as Exhibits 1 and 2, respectively, itemize this breakdown as follows:

a)      Exhibit 1: October 1, 2008 (inception of the Litigation) to present, excluding lodestar for time spent on the appeals and FRAP 7 Bond Motions. The total lodestar

MEHRI & SKALET, PLLC

1    amount for attorney/paraprofessional time based on the firm's current rates as set forth

2    in Exhibit 1 is $614,133.75.

3         b)     Exhibit 2: Lodestar for time spent on FRAP 7 Bond Motions.   The total

4    lodestar amount for attorney/paraprofessional time based on the firm's current rates as

5    set forth in Exhibit 2 is $66,201.25.

6         7.     The total lodestar amount for attorney/paraprofessional time based on the firm's

7    current rates is $680,335.  The hourly rates shown in Exhibits 1-2 are the current usual and

8    customary rates set by my firm for each individual. The current rates billed are well within the

9    range of rates billed by comparable attorneys in this market.  My firm's lodestar figures do not

10   include charges for expense items.

11        8.     I estimate that my firm will spend at least an additional 40 hours of attorney

12   time, which have not been included in Exhibit 4, preparing for and attending the final approval

13   hearing, and consulting with the claims administrator and defense counsel to facilitate

14   settlement administration.

15        9.     Expense items are billed separately, and such charges are not duplicated in my

16   firm's billing rates. Similar to the lodestar as set forth above, we have excluded expenses

17   relating to the appeals in this matter.  As detailed in Exhibit 3, the expenses my firm incurred

18   in connection with the prosecution of the Litigation, which excludes expenses relating to the

19   appeals, totals $48,425.67.  The expenses pertaining to this Litigation are reflected in the

20   books and records of this firm.  These books and records are prepared from receipts, expense

21   vouchers, check records and other documents and are an accurate record of the expenses.

22        10.     With respect to the standing of counsel in this case, attached hereto as Exhibit 4

23   is a brief biography of my firm and attorneys in my firm who were principally involved in this

24   litigation.

MEHRI & SKALET, PLLC

1   I declare under penalty of perjury under the laws of the United States that the above is

2   true and correct.

3   Executed this 10th day of September, 2014, Washington, DC.

4

5                                                   /s/ Craig L. Briskin
                                            _____
6                                            CRAIG L. BRISKIN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEHRI & SKALET, PLLC

# Exhibit 1

# Exhibit 1

**APPLE ADAPTER**
**TIME REPORT**
**Firm Name: Mehri & Skalet, PLLC**
**Reporting Period: Inception - April 2, 2012 & April 25, 2014 - September 8, 2014**

(1) Investigations & Factual Research
(2) Discovery
(3) Pleadings, Briefs & Legal Research
(4) Court Appearances & Preparation
(5) Settlement
(6) Class Certification
(7) Travel
(8) Case Management & Litigation Strategy

| Name | Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Current Hourly Rate | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Steven Skalet | P | 44.15 | 6.75 | 33.80 | 26.25 | 51.50 | 0.00 | 23.00 | 37.85 | $750.00 | 223.30 | $167,475.00 |
| Cyrus Mehri | P | 0.00 | 0.00 | 0.00 | 0.00 | 1.00 | 0.00 | 0.00 | 0.80 | $750.00 | 1.80 | $1,350.00 |
| Janell Byrd | P | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.25 | $750.00 | 0.25 | $187.50 |
| Craig Briskin | P | 53.25 | 90.55 | 275.95 | 32.25 | 3.50 | 0.00 | 73.00 | 118.20 | $625.00 | 646.70 | $404,187.50 |
| Ellen Eardley | P | 0.00 | 0.00 | 0.00 | 0.00 | 0.25 | 0.00 | 0.00 | 0.00 | $575.00 | 0.25 | $143.75 |
| Karla Gilbride | A | 0.00 | 0.00 | 1.00 | 0.00 | 1.75 | 0.00 | 0.00 | 0.00 | $450.00 | 2.75 | $1,237.50 |
| Taryn Wilgus-Null | A | 2.50 | 0.00 | 32.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.75 | $450.00 | 35.50 | $15,975.00 |
| Danielle Davis | A | 0.75 | 26.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $300.00 | 26.75 | $8,025.00 |
| Devi Chandrasekaran | PL | 0.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.75 | $195.00 | 3.00 | $585.00 |
| Katherine Afzal | PL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.75 | $195.00 | 0.75 | $146.25 |
| Ian Hawkins | PL | 0.00 | 11.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | $195.00 | 19.00 | $3,705.00 |
| Lee-Ann Foster | PL | 0.00 | 0.00 | 0.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $195.00 | 0.25 | $48.75 |
| Rachel Heidmann | PL | 12.50 | 0.00 | 25.50 | 0.00 | 0.75 | 0.00 | 0.00 | 17.50 | $195.00 | 56.25 | $10,968.75 |
| Tatiana Reyes | PL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.25 | $195.00 | 0.25 | $48.75 |
| Fabian McNally | LC | 0.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $200.00 | 0.25 | $50.00 |
| TOTALS | | 113.65 | 134.30 | 368.75 | 58.50 | 58.75 | 0.00 | 96.00 | 187.10 | | 1017.05 | $614,133.75 |

Partner (P)
Of Counsel (OC)
Associate (A)
Paralegal (PL)

# Exhibit 2

**Exhibit 2**

**APPLE ADAPTER**
**TIME REPORT for Motion for Bond**
**Firm Name: Mehri & Skalet, PLLC**
**Reporting Period: March 2012 - September 2012**

(1) Investigations & Factual Research      (5) Settlement
(2) Discovery      (6) Class Certification
(3) Pleadings, Briefs & Legal Research      (7) Trial & Preparation
(4) Court Appearances & Preparation      (8) Case Management & Litigation Strategy

| Name | Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | Current Hourly Rate | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Steven Skalet | P | 1.85 | 2.00 | 11.05 | 1.00 | 0.00 | 0.00 | 0.00 | 7.50 | $750.00 | 23.40 | $17,550.00 |
| Craig Briskin | P | 3.20 | 1.50 | 49.70 | 0.00 | 0.00 | 0.00 | 0.00 | 19.00 | $625.00 | 73.40 | $45,875.00 |
| Taryn Wilgus-Null | A | 0.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $450.00 | 0.25 | $112.50 |
| Rachel Heidmann | PL | 1.00 | 0.00 | 5.50 | 0.00 | 0.00 | 0.00 | 0.00 | 2.75 | $195.00 | 9.25 | $1,803.75 |
| David Matulewicz | LC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4.30 | $200.00 | 4.30 | $860.00 |
| **TOTALS** | | **6.30** | **3.50** | **66.25** | **1.00** | **0.00** | **0.00** | **0.00** | **33.55** | | **110.60** | **$66,201.25** |

Partner (P)

Of Counsel (OC)

Associate (A)

Paralegal (PL)

Law Clerk (LC)

Exhibit 3

**Exhibit 3**

**APPLE ADAPTER**
**EXPENSE REPORT**
**Firm Name: Mehri & Skalet, PLLC**
**Reporting Period: Inception - April 2, 2012 & April 25, 2014 - September 8, 2014**

| Disbursement | Cumulative Amount |
|---|---|
| Electronic Research | $1,031.86 |
| Filing / Misc. Fees | $288.75 |
| Litigation Fund Contribution | $27,960.00 |
| Overnight Delivery/Messengers | $208.96 |
| Photocopying | $3,232.85 |
| Postage | $102.29 |
| Reference Materials | $1,677.91 |
| Telephone / Fax | $1.50 |
| Transportation / Meals / Lodging | $11,380.88 |
| Expert Fees | $2,540.67 |
| | |
| **TOTAL** | **$48,425.67** |

Exhibit 4



# Firm Resume

**Mehri & Skalet, PLLC**
**1250 Connecticut Ave., NW, Suite 300**
**Washington, DC 20036**
**Tel: (202) 822-5100**
**Fax: (202) 822-4997**
**www.findjustice.com**

## OUR BACKGROUND AND COMMITMENT

*Mehri & Skalet PLLC* (M&S) believes that powerful institutions and corporations are not above the law. This belief inspires our work and informs our practice. Whether the target is deceptive sales practices or unfair employment practices, M&S uses the legal system to correct the imbalance of power that often favors big business over private citizens.

In cases ranging in focus from consumer protection to civil rights to corporate fraud, we are tenacious, creative and public-spirited in our approach to legal work. We do high impact cases with high integrity, and have a track record for getting far-reaching results. We prove every day that the law can be used to achieve fairness and justice.

M&S is a law firm with seasoned attorneys who fight complex cases on behalf of employees, consumers, investors, citizen groups and small businesses.  M&S attorneys bring together decades of front-line experience in litigation and issue advocacy and build upon strong ties with public interest, consumer, labor, whistleblower and civil rights organizations. M&S combines superior legal work and advocacy to serve our clients.

Our search for justice for our clients takes us to federal and state courts across the country, where we primarily litigate civil and consumer rights class actions; cases involving corporate abuse in real estate, financing and other areas; whistleblower suits alleging fraud on behalf of the government; as well as individual cases with a public interest impact.



**PRACTICE AREAS**

<u>Civil Rights</u>

Mehri & Skalet, PLLC, has represented employees in discrimination cases filed across the United States. Currently the firm is actively investigating, litigating or participating in settlement talks in numerous matters involving employment discrimination. Mehri & Skalet also prosecutes cases regarding racial bias against consumers in the market place.

Using federal and state anti-discrimination laws, Mehri & Skalet represents individuals fighting unlawful discrimination that adversely impacts their employment, business, or financial circumstances. While M&S maintains a broad-based practice, many of our cases fit into these general categories of discrimination:

   * "glass ceiling" and discrimination in promotions and advancement

   * discrimination in pay, and distribution of business opportunities

   * discrimination in employer testing and other selection procedures

   * discrimination in contract formation and financial endeavors

<u>Partnerships with the Non-Profit Community</u>

M&S has forged creative partnerships with key civil rights organizations to address inequities in the work place:

   <u>*The Madison Avenue Project*</u>

The Madison Avenue Project was formed by the NAACP and M&S to reverse the widespread, entrenched discrimination against African American professionals employed in the advertising industry. For more than forty years, the advertising industry has been investigated and charged by government agencies for discriminatory employment practices which resulted in a deficiency of African American new hires and promotions. The industry has fallen far short in adequately addressing these disparities. The Madison Avenue Project seeks to redress the historical discrimination against African American advertising professionals and to

create systematic changes in the culture, policies, and practices of the advertising agencies to promote diversity and equality.

### *The Women on Wall Street Project*

On April 6, 2004, the National Council of Women's Organizations asked M&S to coordinate an investigation of eight financial services companies that would be called the Women on Wall Street Project. The NCWO asked our firm to investigate because it had heard from women in many of these companies. Their stories indicate that many of America's top financial services companies are rife with gender discrimination, ranging from pay inequity and glass ceiling issues to sexual harassment. Since 2004, we have been receiving intake calls from employees at several financial sector companies, and we, in collaboration with experienced co-counsel, are investigating allegations of gender discrimination.

## Key Civil Rights Cases

A sample of current and past civil rights cases prosecuted by M&S lawyers includes:

### * Wal-Mart Pregnancy Discrimination

M&S represents a putative class of female Wal-Mart employees who allege that the company's policies discriminate against pregnant workers and that the company systemically fails to provide pregnant workers the same types of workplace accommodations available to others. The matter is currently before the U.S. Equal Employment Opportunity Commission.

### * Roberts v. Texaco

Six plaintiffs filed Roberts v. Texaco as a class action in 1994, alleging that the company discriminated against African-American employees by failing to promote and adequately compensate them in relation to Caucasian employees. Each of the six plaintiffs hit a glass ceiling when they tried to advance to management. In addition, in an industry that was known to be behind in diversity, Texaco's minority representation was significantly lower than others in the oil industry. Discovery revealed that African Americans were significantly under-represented in higher levels



of management.  The investigation also revealed that Texaco maintained a secret list of "high potential" employees and no African Americans were on that list.  The case was settled in 1996 for what was the largest sum ever allowed in a race discrimination case, $176.1 million.  In addition to damages, the settlement called for pay raises for about 1,400 black employees as well as systemic programmatic relief.

* **Ingram v. The Coca-Cola Company**

Four named plaintiffs represented a class of 2,200 current and former salaried, African-American employees of Coca-Cola in this class action filed April 1999 in the Northern District of Georgia. The case involved race discrimination in promotions, compensation and evaluations. The plaintiffs alleged a substantial difference in pay between African-American and white employees; a "glass ceiling" that kept African-Americans from advancing past entry-level management positions; "glass walls" that channeled African-Americans to management in areas like human resources and away from power centers such as marketing and finance; and senior management knowledge of these problems since 1995 and a failure to remedy them.

On June 7, 2001, the Court approved a final Settlement Agreement, valued at $192.5 million and designed to ensure dramatic reform of Coca-Cola's employment practices.  A court-appointed task force chaired by Alexis Herman, former Secretary of Labor, issued several annual task force reports highlighting the progress Coca-Cola made in complying with the Settlement Agreement.

* **Robinson v. Ford Motor Company**

M&S and the Equal Employment Opportunity Commission ("EEOC") each filed a lawsuit on December 27, 2004, challenging Ford's procedures for selecting apprentices nationwide. These suits alleged that, since 1997, Ford had discriminated against African-Americans on the basis of race in selecting apprentices. The two cases were consolidated in the Southern District of Ohio.

A Settlement Agreement was approved by Judge S. Arthur Spiegel on June 15, 2005.  Judge Spiegel said "The settlement provides substantial monetary and non-monetary benefits to the class… as well as extensive systemic relief. The new testing



procedures benefitted not only the class members, but potentially also all employees and future employees of Ford." The EEOC held a Commissioners' meeting that focused on this settlement and removing bias in testing procedures on May 16, 2007. A companion case, <u>Love v. Automotive Components Holdings, LLC et al.</u> received final approval on December 20, 2007.

* **Augst-Johnson v. Morgan Stanley & Co., Inc.**

On June 22, 2006, M&S filed a lawsuit against Morgan Stanley on behalf of female financial advisors. The complaint alleged that Morgan Stanley engaged in systematic gender discrimination against women financial advisors with respect to compensation, account assignments, partnership participation, promotions, training and mentoring and other terms and conditions of employment, all in violation of Title VII of the Civil Rights Act of 1964, as amended. On October 26, 2007, the U.S. District Court of the District of Columbia approved a class action settlement with Morgan Stanley and the class of approximately 2,700 women Financial Advisors and Registered Financial Advisor Trainees employed at Morgan Stanley.

The five-year settlement included a lump sum payment by Morgan Stanley of $46 million and significant programmatic relief. The parties estimate that, in addition to the Settlement Fund, the changes called for in the programmatic relief will increase the earnings of women financial advisors by at least $16 million over five years and the diversity efforts by the Company over five years will cost an additional $7.5 million. The parties jointly selected an independent diversity monitor to oversee the settlement and two outside experts to develop non-discriminatory human resource policies and procedures.

* **Amochaev v. Smith Barney**

On March 31, 2005, plaintiffs in Northern California filed a nationwide class-action lawsuit on behalf of female Financial Advisors who alleged that Smith Barney discriminated against them in account distribution, business leads, referral business, partnership opportunities, and sales support. On August 13, 2008, U.S. District Judge Phyllis Hamilton granted final approval to a settlement of this gender discrimination case against Smith Barney. The settlement provides significant programmatic relief,

Mehri & SKALET PLLC

including an independent diversity monitor, as well as over $33 million to the class.

### * <u>Maxey v. ALCOA</u>

On February 14, 2002, five named plaintiffs representing a class of hourly African-American and Hispanic Cleveland Works employees of ALCOA, Inc., filed a class action lawsuit in the Northern District of Ohio. The case involved allegations that ALCOA's system of selecting apprentices at ALCOA'S Cleveland Works Facility discriminated on the basis of race and national origin. In 2003 the parties reached an innovative settlement, which the Court approved.  The settlement called for the creation of a new testing procedure created by a jointly selected independent expert, the selection of new apprentices from the class, and a $500,000 Educational Foundation to benefit the Black and Hispanic communities in Cleveland.  The Settlement also provides monetary relief of $10,000 in compensatory damages to each class member who took the apprenticeship selection test since February 14, 1996, and did not enter an apprenticeship program.

### * <u>Carter v. Wells Fargo Advisors</u>

In 2009, as part of our Women on Wall Street Project, M&S along with co-counsel filed a class action lawsuit against Wachovia Securities, LLC, alleging that the company engaged in systemic gender discrimination against its female financial advisors.  In December 2010, the parties reached a proposed class settlement that includes a $32 million fund from which awards, fees and costs will be paid.  The settlement also requires the company to make significant changes to its internal policies that affect the distribution of business opportunities, including the appointment of an independent monitor and a jointly selected expert.  In June 2011, the Court approved the settlement.

### * <u>Norflet v. John Hancock Life Insurance Company</u>

On July 7, 2004, M&S, along with co-counsel, initiated a ground-breaking class action lawsuit against John Hancock Life Insurance for its company-wide policy prohibiting the sale of life insurance to African-Americans in the early to mid-20th



century.  The lawsuit also confronted John Hancock's practice of offering African-Americans substandard and seriously inferior life insurance products when it did sell insurance to African-Americans.  The named Plaintiff is an African-American woman whose mother had purchased life insurance policies from John Hancock in 1940s and 1950s.  The Court granted the Plaintiff's motion for class certification in September of 2007.

The parties reached a settlement in 2009, which created a $24 million fund to pay claims to the class plus fees and costs.  There is also a large *cy pres* component of approximately $15 million, which is being distributed to organizations that benefit African-American communities by a court-appointed committee.

**<u>Workers' Rights</u>**

Wage and hour laws exist to protect employees, who are often dependent upon their employers for financial security, from being exploited in the workplace.  Similar to victims of discrimination, employees who have been denied wages or benefits are often unaware of how to enforce their rights.  At M&S, we use our understanding of the law to ensure that workers receive the wages and benefits they have earned.  The federal Fair Labor Standards Act (FLSA) requires that employers pay overtime to all non-exempt workers after forty hours a week.  Many salaried or commissioned workers may be considered non-exempt under federal law.  In addition, numerous states provide greater worker protections than federal law, such as reimbursement of most expenses, paid meal and rest periods, and higher minimum wage.

Misclassification of employees as non-exempt is one of the most common violations of the FLSA.  Drawing on our experience in the financial services industry, M&S closely monitors the impact of developments wage and hour law on this industry.  For example, in 2008, M&S, along with co-counsel, filed suit on behalf of a putative class of Bank of America mortgage loan officers who were improperly denied reimbursement of expenses, in violation of California law.  In September 2010, the Court approved the class action settlement, which provided for payment of more than $8 million to class members.



**Real Estate/ Housing/Lending**

Guided by the expertise of M&S principal Steve Skalet, who has over 35 years of litigation and transactional experience in real estate and financial fraud, M&S represents clients in cases involving real estate, lending and debt collection practices, and defective construction materials.

In the class action context, the firm handles cases under the Equal Credit Opportunity Act, Truth in Lending Act, Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act and other federal and state consumer protection statutes.

**\*Plunkett v. Castro (Reverse Mortgages)**

Representing three elderly homeowners, M&S and AARP Foundation Litigation filed suit against the U.S. Department of Housing and Urban Development (HUD) on March 8, 2011. Plaintiffs alleged that hundreds, and possibly thousands, of seniors whose spouses obtained HUD-insured reverse mortgages on their homes were facing foreclosure due to improper changes in HUD's rules governing reverse mortgages.  The Home Equity Conversion Mortgage (HECM) program, created by federal statute, provides insurance and establishes ground rules for borrowers and lenders creating reverse mortgages. Reverse mortgages allow property owners who have significant equity in their homes the option of receiving a loan or monthly payment for the remainder of their life.  A reverse mortgage is secured by the property and is payable only upon the homeowner's death or if they no longer occupy the property.

The HECM statute clearly states, and HUD had always assured the public, that HECM mortgages are "non-recourse loans," meaning that even if the property value diminished after the loan was issued, the borrower would never owe more than the current market value of the property. But, in 2008, just as home values across the country were plummeting, HUD changed course -- stating that spouses and heirs now had to pay the full mortgage balance if they wanted to retain the property, even



if this amount was greater than the value of the property. HUD enforced this change retroactively, even for in-force mortgage agreements that reflected HUD's previous interpretation of HECM mortgages as non-recourse loans.

Shortly after the case was filed, M&S and the AARP Foundation Litigation achieved a widely acclaimed and significant victory for Plaintiffs on three of the four claims in the case when HUD withdrew the challenged policy adopted in 2008, and allowed families to purchase their homes for market value, as the law has always stated.  On September 30, 2013, Plaintiffs obtained another significant victory:  the court granted summary judgment to Plaintiffs, ruling that HUD's regulations stating that the mortgage is due and payable even though a surviving spouse remains in the property violated the federal statute protecting them from displacement.  Soon after this, HUD declared that new reverse mortgages would protect non-borrowing spouses.   The parties are currently litigating the sufficiency of HUD's proposed remedy for the injury it has caused.

### *Amerisave Mortgage Corporation

In 2011, M&S, along with co-counsel, filed a class action lawsuit in the California Superior Court for San Francisco County against Amerisave Mortgage Corporation for violating the Truth in Lending Act through their deceptive advertising practices in the selling of residential mortgages. The suit alleges that Amerisave promises customers they can quickly request a "lock-in" of low advertised online rates, requires the consumer to pay for a property appraisal prior to the rate being locked-in, and then allows the lock in period to expire, locking the customer into the agreement at a higher rate.  In 2013, the case was settled for $3.1 million, which was distributed to class members to compensate them for a portion of the improper fees they paid.

### Safeway Product Recalls

M&S represents consumers in a proposed class action against Safeway, alleging that its failure to give electronic notice of product recalls to customers for



whom it has contact information constitutes negligence. In 2014, Plaintiffs prevailed in a first-of-its-kind ruling that a failure to provide post-sale notice of a product recall could constitute negligence under California law.

### * Twin Towers Tenant Association v. Capitol Park Associates

M&S also advocates for tenants' rights. We have been lead counsel in a series of cases in the District of Columbia fighting to protect and preserve tenants' rights of first refusal whenever a residential apartment building is sold. We assist tenant associations in purchasing their buildings establishing condominium or cooperatives. Where appropriate, we seek innovative ways to preserve affordable housing. Determined to keep the project as long-term affordable housing, we worked with community representatives, real estate financers, and federal regulators to help the Tenants' Association implement a unique long-term solution. Not only did M&S help save the homes of more than 800 people, it secured their futures by empowering them with eventual ownership of the properties.

### * Metropolitan Money Store

*Mehri & Skalet* represented numerous homeowners who had been stripped of hundreds of thousands of dollars of home equity through a mortgage rescue scam that lured individuals facing potential foreclosure to "temporarily" sign away the deeds to their homes with a promise of redemption after their credit improved through credit counseling. This practice allowed scam artists to gain access to home equity which was then stolen from the homeowner. The *Washington Lawyers' Committee on Civil Rights and Urban Affairs* referred the clients to *Mehri & Skalet*, which provided *pro bono* representation to these victims of fraud. In 2009, we successfully resolved the cases to protect the homeowners.

M&S also handles both individual and class action product liability cases, with an emphasis on defective construction materials, such as defective water pipes (polybutylene pipe), defective exterior siding products (artificial stucco, siding or roofing), and fire retardant plywood (FRT Plywood). Each of these products were

MEHRI & SKALET PLLC

foisted on an unsuspecting public by manufacturers who refused to voluntarily take responsibility for their defective products, which caused enormous economic and health problems.

## Consumer Protection

The strength and integrity of our practice benefits from our attorneys' strong ties to premier consumer advocate organizations, such as the Center for Auto Safety, the Center for Science in the Public Interest and Public Citizen.

Mehri & Skalet remains true to its roots in the U.S. consumer movement. In each class action we investigate or file, we never lose sight of the ultimate beneficiaries of our work – the consuming public.

M&S attorneys investigate and litigate all types of consumer and small business protection issues, including:

* Automotive and other consumer product defects and recalls

* Antitrust, unfair pricing and deceptive billing practices

* Predatory lending, credit and insurance schemes

* Consumer and small business on-line and support services

* Fraud or unfair practices in real estate, banking and finance

* Medical, pharmaceutical and healthcare-related fraud

M&S is litigating or has settled a number of consumer class actions. These include:

### * Schaffer v. Hewlett Packard Company

This lawsuit alleged that certain models of the HP Pavilion desktop computer contained a defective motherboard that caused the computers to suffer performance problems such as "hanging, freezing and locking."  HP denied these allegations and admitted no wrongdoing.  M&S negotiated a settlement with HP that provided class members with a direct monetary payment, reimbursement of out-of-pocket expenses, and/or a discount certificate. A federal judge in Michigan approved the settlement in



2006.

### * <u>Niewinski, et al. v. Resurrection Health Care Corporation</u>

On September 16, 2004, M&S filed a lawsuit in Illinois state court on behalf of uninsured patients against Resurrection Health Care Corporation (Resurrection), a not-for-profit health care system that includes nine hospitals in the Chicago metropolitan area. The suit alleged that Resurrection charged uninsured patients substantially more than patients covered by insurance, and failed to provide poor patients with an adequate opportunity to apply for financial assistance to pay their bills. Plaintiffs further alleged that in addition to price-gouging the uninsured and reducing its charitable expenditures, Resurrection employed unjust methods of collecting overdue bills, harassing even the poorest patients with collection lawsuits and garnishing their wages. In January 2009, the court approved a settlement in which Resurrection agreed to recalculate patients' bills and give refunds to class members totaling as much as $3 million, as well as giving a 25 percent discount to uninsured patients.

### * <u>Lazo v. Mercury Marine</u>

In the fall of 2004, M&S successfully settled this class action lawsuit against Mercury Marine for excessive problems with their 2000-2004 2.5L and 3.0L OptiMax Engines. The problem was generated from the powerhead and/or direct fuel injection system, which at times caused engines to cut off or freeze. Pursuant to the settlement, all members of the class were given an extended warranty and/or a rebate on Mercury or QuickSilver Products.

### * <u>Car Dealership Overcharges</u>

Some new car dealers overcharge their customers for legitimate fees or add bogus charges when they lease a car. M&S has been named class counsel in several class actions in New Jersey charging car dealers with consumer fraud for such overcharges. Many of these cases have recently settled, tens of thousands of Class Members each receiving certificates redeemable for both cash and credit.

### * <u>Telephone Service Overcharges</u>



M&S brought several cases concerning overcharges and deceptive practices against local, long distance, and cell phone service providers. M&S settled a class action against Verizon New Jersey, Inc. for failing to implement a small business discount.  Verizon overcharged Class Members by $1.01 per month for between one to four auxiliary phone lines. Under the terms of the settlement, Class Members will receive a payment or credit of $1.65 for each such overcharge.  M&S also brought a successful class action against Verizon-New Jersey for charging customers for inoperable services. The case also resulted in a substantial settlement.

### * <u>Ford Focus Brake Defects</u>

In 2002, M&S filed a class action against Ford Motor Company alleging defects in the front braking system of the 2000 and 2001 Ford Focus. M&S represented plaintiffs who alleged that the braking system contains a systemic defect that caused the front brake pads and rotors to wear out prematurely, forcing unsuspecting owners to spend hundreds of dollars in repairs and maintenance on a recurring basis. In December 2005, M&S, together with co-counsel, filed a motion to certify a class of all persons who purchased or leased one of these vehicles in the State of California. The motion contained multiple reports from experts, hundreds of pages of documents and depositions, and statements from clients. The Los Angeles County Superior Court certified a proposed class in 2006.   In July 2008, the court granted final approval of a settlement that provided full cash reimbursement for qualifying parts and labor for all California owners and lessees who experienced premature front brake wear, including reimbursement for brake pads and rotors.

### * <u>Mitsubishi Galant Brake Defects</u>

M&S settled a class action in 2004 against Mitsubishi for a defect in the brake system of the 1999 Mitsubishi Galant. The defect caused extremely premature wear on the rotors and brake pads grossly in excess of normal use. Plaintiffs raised claims of breach of warranty and consumer fraud. Mitsubishi denied all claims. The parties reached a settlement where Class Members received either an inspection and repair of the brake problem, a reimbursement of all out-of-pocket expenses of brake and/or rotor repairs, or a service voucher.

- 14 -



### * <u>Apple Computer</u>

M&S filed and settled a class action against Apple Computer, Inc. that obtained relief for a nationwide class of buyers who unwittingly purchased an Apple wireless networking product that was incompatible with America Online ("AOL"). The settlement secures out-of-pocket damages of $45 for each class member and changes to Apple's notice and packaging practices related to this product. The settlement was approved in 2002.

### * <u>Bridgestone-Firestone, Inc.</u>

In August 2000, M&S filed suit against Bridgestone-Firestone, Inc. in the first weeks of the company's massive tire recall effort. Farkas v. Bridgestone-Firestone sought to enjoin Firestone from discontinuing its policy of reimbursing customers for the cost of non-Firestone replacement tires. The restraining order obtained in Farkas was enforceable against Firestone on a nationwide basis and immediately produced a dramatic reversal in company policy. As a result, hundreds of thousands of Firestone customers retained the ability to replace their defective tires with tires from another manufacturer, and then seek reimbursement from Firestone -- thus speeding the efficient removal of millions of unsafe tires from our nation's roads.

## <u>Antitrust and Commodities Manipulation</u>

Vigorous enforcement of antitrust laws is essential to a free and fair marketplace. The Supreme Court has made clear that private antitrust lawsuits are an important part of antitrust enforcement, in *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972).

Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress.   Congress encourages private attorney general enforcement of antitrust laws.    It is in the spirit of a "private attorney general" that M&S prosecutes antitrust class action litigation: to combat and deter anticompetitive practices, and to give wronged consumers and businesses a remedy for illegal behavior in the marketplace.

M&S also has experience in class actions under the Commodity Exchange Act,



7 U.S.C. § 1.  This statute provides a private right of action to futures traders who were harmed by manipulative activity.

* **ATM Access Fees**

M&S represents direct purchasers in a proposed class action against Visa, MasterCard and several major banks, alleging that they have conspired to fix the access fees that customers pay when they withdraw cash from an ATM other than their own bank.  Plaintiffs allege that Visa and MasterCard, who maintain the biggest ATM networks in the country, forbid participating ATMs from offering a lower access fee for transactions processed over their competitors' ATM networks, even though Visa and MasterCard charge ATMs the highest network fees of any network.  The effect is that ATMs must raise prices across the board, injuring consumers.  The case is in its early stages.

**Investor Protection**

Corporate fraud at some of the nation's leading corporations has harmed countless institutional and individual investors. Scores of hardworking Americans have suffered losses in their pension funds, retirement accounts, college and general savings accounts as a result of fraudulent conduct. We believe that investors deserve zealous representation in their fight for a return of those assets.  M&S represents institutional investors concerned about securities fraud and corporate governance, as well as 401(k) beneficiaries enforcing ERISA.

Founding partner Cyrus Mehri has represented shareholders in securities class actions for many years.  His experience includes recovering assets for those involved in the elaborate scandals involving junk bonds committed by Ivan Boesky and Michael Milken in the 1980's, as well as savings and loan institutions. In addition, Mr. Mehri served as class counsel in *Florin v. NationsBank* in 1993, which restored $16 million to a pension plan that was bilked by company insiders at Simmons Mattress Company. And in 1991, *In re Bolar Pharmaceutical Co.* he helped to return over $25 million to defrauded shareholders. Mr. Mehri was also the principal attorney in *Roosevelt v. E. I. Dupont de Nemours and Co.*, which established the right for shareholders to go to federal court to require corporations to include proxy

MEHRI & SKALET PLLC

resolutions. M&S helped prosecute a securities fraud case against AOL Time Warner – one of the largest such cases in U.S. history, it settled for $2.4 billion.  M&S's ERISA cases involve Visteon, Avaya and National City.

Mr. Mehri also co-authored a series of articles on securities enforcement and corporate governance including *Labor & Corporate Governance* articles entitled "Stock Option Equity: Building Democracy While Building Wealth" (November 2002), and "The Latest Retreat by the SEC" (February 2003). Mr. Mehri also co-authored an article in *The Journal of Investment Compliance* (Winter 2002/2003) entitled "Slipping Back to Business as Usual, Six Months After the Passage of Sarbanes-Oxley". Mr. Mehri co-authored a letter to the SEC regarding diversity in Board appointments.



## ATTORNEY BIOGRAPHIES

### Cyrus Mehri

Cyrus Mehri is a founding partner of the law firm Mehri & Skalet, PLLC.

The business press has long followed Mr. Mehri's work.  The New York Times stated, "Mr. Mehri's vision for corporate America involves sweeping change, not the piece meal kind."  Fast Company says "He is something of a one-man army in the battle against business as usual . . . [H]is impact - both in terms of penalties and remedies - is undeniable."  In 2001, he was named by Regardie's Power magazine as one of "Washington's Ten Most Feared Lawyers" and in 2003, by Workforce magazine as "Corporate America's Scariest Opponent."

Mr. Mehri served as Class Counsel in the two largest race discrimination class actions in history: *Roberts v. Texaco Inc.* which settled in 1997 for $176 million and *Ingram v. The Coca-Cola Company*, which settled in 2001 for $192.5 million.  Both settlements include historic programmatic relief, featuring independent Task Forces with sweeping powers to reform key human resources practices such as pay, promotions and evaluations.

Trial Lawyers for Public Justice named Mr. Mehri a finalist for "Trial Lawyer of the Year" in 1997 and 2001 for his work on the Texaco and Coca-Cola matters respectively.

In September of 2008, Mr. Mehri testified before the Senate Judiciary Committee alongside Supreme Court litigant Lilly Ledbetter.  Mr. Mehri's testimony called for diversifying the pool of potential judicial nominations not just in terms of race and gender but also in terms of life and work experience.

In October of 2008, Mr. Mehri co-authored a paper called "21st Century Tools for Advancing Equal Opportunity: Recommendations for the Next Administration."  This paper was released by the American Constitution Society along with papers by several other authors including Senator Ted Kennedy and Former Attorney General Janet Reno.

On April 6, 2004, Mr. Mehri, along with Martha Burk and the National Council of Women's Organizations announced a project called "Women on Wall Street."  The project focuses on gender discrimination in financial institutions.



In 2007, Mehri & Skalet announced a $46 million settlement with Morgan Stanley on behalf of female financial consultants.   In 2008, the firm announced a comparable $33 million settlement with Smith Barney.  Both are settlements that have sweeping reforms that will fundamentally change the allocation of business opportunities at these brokerage houses.

Mr. Mehri serves as lead counsel in *Robinson v. Ford Motor Company*.  The settlement created a record 279 highly-coveted apprenticeship positions for African American employees as well as payment of $10 million.   In a May 2007 EEOC Commissioners meeting, Mr. Mehri and others testified about this settlement's significance on testing procedures in the workplace.

On September 30, 2002, Mr. Mehri and Johnnie L. Cochran, Jr. released the report, *Black Coaches in the National Football League: Superior Performance, Inferior Opportunities*.  The report became the catalyst for the NFL's creation of a Workplace Diversity Committee and the adoption of a comprehensive diversity program.  The NFL now has a record number of African American head coaches.  Mr. Mehri serves as counsel for the Fritz Pollard Alliance, an affinity group for minority coaches, front office and scouting personnel in the NFL.

Mr. Mehri represents institutional investors concerned about securities fraud and corporate governance.  Mr. Mehri has a long history of representing defrauded investors, pensioners and consumers, as well as small businesses subjected to price-fixing, in other class actions.  For example, in 1993 *Florin v. Nations Bank* restored $16 million to a pension plan that was bilked by company insiders at Simmons Mattress Company.  In 1991, *In re Bolar Pharmaceutical Co.* returned over $25 million to defrauded shareholders.  Mr. Mehri serves as co-lead counsel in numerous consumer class actions.  Mr. Mehri helped to prosecute one of the largest securities cases in history, a $2.5 billion settlement with AOL Time Warner.

Mr. Mehri co-authorities a series of articles on securities enforcement and corporate governance including Labor & Corporate Governance articles entitled "Stock Option Equity: Building Democracy While Building Wealth" (November 2002) and "The Latest Retreat by the SEC" (February 2003).  Mr. Mehri also co-authored an article in The Journal of Investment Compliance (Winter 2002/2003) entitled "Slipping



Back to Business As Usual, Six Months After the Passage of Sarbanes-Oxley."

He is also the co-author of the article: "One Nation, Indivisible: The Use of Diversity Report Cards to Promote Transparency, Accountability, and Workplace Fairness"; Fordham Journal of Corporate and Financial Law, 9, 99-152 (with Andrea Giampetro-Meyer & Michael B. Runnels).

For the 2008 National Employment Law Association Convention, Mr. Mehri co-authored a paper, "A 'Toolbox' for Innovative Title VII Settlement Agreements."

Mr. Mehri graduated from Cornell Law School in 1988, where he served as Articles Editor for the Cornell International law Journal.  After law school, he clerked for the Honorable John T. Nixon, U.S. District Judge for the Middle District of Tennessee.  Mr. Mehri has received the Outstanding Youth Alumnus Award from Hartwick College and the Alumni Award from Wooster School in Danbury, Connecticut "for becoming a beacon of good, positively affecting the lives of many." Most recently, Mr. Mehri was asked to give the 2009 Commencement Speech at Hartwick College and the Founder's Day Speech at Wooster School.

The Pigskin Club of Washington, DC granted Mr. Mehri, the prestigious "Award of Excellence."

In March 2003, the Detroit City Council passed a testimonial resolution honoring Mr. Mehri and wishing him "continued success in changing the fabric of America."

In 2007, Mr. Mehri was given the "Distinguished Visitor" Award by the Miami-Dade County Office of the Mayor and Board of County Commissioners at the Fritz Pollard Alliance's Second Annual Salute to Excellence Program.

Mr. Mehri is a frequent guest on radio and TV and is guest columnist for Diversity, Inc.


**Steven A. Skalet**

Steven A. Skalet is a principal and managing partner in the firm of Mehri & Skalet, PLLC. Mr. Skalet is involved in all aspects of the firm's litigation practice--especially in the areas of consumer and financial fraud--and continues his real estate



and finance practice.  Mr. Skalet has over 35 years of litigation and transactional experience in real estate, consumer fraud, bank fraud and class action litigation.

Mr. Skalet began his career with the Washington, D.C. firm of Melrod, Redman & Gartlan, where he worked on a number of American Civil Liberties Union cases, including a case granting women the right to employment with the U.S. Park Service as park police.

Mr. Skalet has had a varied litigation practice before state and federal courts throughout his career.  From 1995 until the formation of M&S, Mr. Skalet practiced with Kass & Skalet, PLLC, a well-known real estate, litigation, complex business and consumer protection firm.  Prior to that, he and another lawyer formed a practice that focused on real estate and litigation, including consumer class actions under the Truth-in-Lending and Equal Credit Opportunity acts.    That firm grew to approximately 23 lawyers in 3 jurisdictions and, when it split up in 1995, was known as Kass, Skalet, Segan, Spevack & Van Grack, PLLC.

In 2001, Mr. Skalet and Cyrus Mehri started the firm of Mehri & Skalet, PLLC, concentrating in complex litigation and class actions.  The firm has developed a varied and successful litigation practice in state and federal courts.  Since its inception Mr. Skalet has been lead counsel or co-lead counsel in successful class action cases against Dell, Inc., Mercury Marine, Hewlett Packard, Sony, Ford, Verizon, Mitsubishi, Morgan Stanley, and many other companies.

Mr. Skalet has been an advisor to the Federal Reserve Board on credit and banking matters. He has served on the Montgomery County Advisory Committee reviewing the wholesale simplification of the Montgomery County Code.  He also served on the District of Columbia Bar Committee responsible for drafting form commercial leases and the Montgomery County Board of Realtors committee responsible for drafting residential real estate contracts.

Mr. Skalet has actively participated in Community Associations Institute activities and was Chair of the District of Columbia Legislative Action Committee for many years.  In 1999, and again in 2001, he was awarded the Public Advocate Award for his work on District of Columbia legislation. He is a frequent speaker and has

authored numerous articles pertaining to real estate and community associations.

Mr. Skalet graduated from the University of Pennsylvania School of Law in 1971 and the University of Rochester in 1968. He lives in Bethesda, Maryland with his wife, Linda, and has two grown sons.

**Jay Angoff**

Jay Angoff, who returned to Mehri & Skalet in December 2012 after three years with the U.S. Department of Health and Human Services, has devoted his career to protecting the rights of consumers and holding insurance companies accountable. The only person to have served as the lead federal health insurance regulator, the Director of an HHS Region, and a state Insurance Commissioner, he is one of the nation's leading insurance experts.

In March 2010, Mr. Angoff was appointed by HHS Secretary Kathleen Sebelius as the first Director of the HHS Office of Consumer Information and Insurance Oversight—the office responsible for implementing the insurance reform provisions of President Obama's signature legislation, the Affordable Care Act. In that capacity, Mr. Angoff was responsible for the Patient's Bill of Rights, which enables young adults to stay on their parents' policies until age 26; prevents insurance companies from rescinding coverage or cutting off coverage at a numerical lifetime limit; and prohibits insurers from imposing deductibles or co-payments for common preventive services. He was also responsible for implementing the new provision that requires insurers to refund money to policyholders if they spend more than 20% of premiums collected on administrative expenses and profit. This regulation, known as the Medical Loss Ratio or MLR rule, has forced insurers to return more than $1.1 billion to their policyholders in 2011 alone.

Mr. Angoff also oversaw the HHS unit implementing the Exchanges–websites coming on line in 2014 at which people will be able to obtain rate quotes and buy from multiple insurance companies selling four different levels of coverage.

In addition, Mr. Angoff served at HHS as the Senior Advisor to the Secretary

- 22 -



and as Regional Director of HHS Region VII, headquartered in Kansas City.

Before serving at HHS Mr. Angoff was in private practice, first in Jefferson City, MO and most recently in Washington, DC with Mehri & Skalet, PLLC where he focused on obtaining refunds for individuals who were overcharged by insurance companies. Class actions in which Mr. Angoff served as counsel include Landers v. Inter-insurance Exchange of the Automobile Club (Los Angeles County, Cal., $24 million settlement), Clutts v. Allstate (Madison County, Ill., $6 million settlement), and Foundation for Taxpayer and Consumer Rights v. GEICO (Los Angeles County, Cal., settlement valued at up to $12 million).   He has also represented individuals before state insurance departments, and has consulted for and advised governmental entities, consumer groups, the plaintiff's bar, and other interest groups.

Mr. Angoff is also an expert on non-profit to for-profit conversions.   As Missouri Insurance Commissioner he won a five-year legal battle with Blue Cross of Missouri, after which Blue Cross agreed to fund a new healthcare foundation, now one of the nation's largest.   In private practice, Mr. Angoff has been retained by various state Insurance Departments faced with proposed Blue Cross transactions and has analyzed and opined on the reasonableness of the Blues' executive compensation.   He has also been an expert on charitable trusts, fiduciary duties, antitrust implications and other issues relevant to conversions and other insurance transactions.

Mr. Angoff has advocated for managed competition and successfully implemented systemic reforms.   As Missouri Insurance Commissioner and a Director of the Missouri state health plan, Mr. Angoff required insurers to submit competitive bids for a single standardized benefit package.   As a result, rates fell by up to 45%.

Prior to serving in Missouri, Mr. Angoff was Deputy Insurance Commissioner of New Jersey and Special Assistant for Health Insurance Policy to New Jersey Governor Jim Florio.   In those positions, he played a major role in drafting and implementing New Jersey's individual and small group community rating law.

In 1988 Mr. Angoff helped draft and served as a consultant to the campaign supporting California's Proposition 103, a ballot initiative which rolled back auto

MEHRI
&
SKALET
PLLC

insurance rates. The following year he chaired the New Jersey Citizens Auto Revolt campaign to put an initiative on the ballot cutting auto insurance costs. That proposal is still the only initiative to qualify for the ballot in all 21 New Jersey counties.

Mr. Angoff began his career as an antitrust lawyer with the Federal Trade Commission. He also served as a staff attorney for Congress Watch, a public interest lobbying organization, and as counsel to the National Insurance Consumer Organization. He has written for The New York Times, The Washington Post, and The Wall Street Journal, among other publications. He is a member of the District of Columbia, Missouri, New Jersey, and U.S. Supreme Court bars, and is a graduate of Oberlin College and Vanderbilt Law School.

**Craig L. Briskin**

Craig Briskin joined the Washington, D.C. office of Mehri & Skalet, PLLC as an associate in May 2007, and focuses his practice primarily on antitrust and consumer law.

Prior to joining the firm, Mr. Briskin prosecuted antitrust and commodities class actions at Labaton Sucharow LLP in New York. Among other matters, Mr. Briskin represented a class of natural gas futures traders who claimed damages resulting from defendant natural gas traders' manipulation of prices through false reporting to industry publications. Settlements with defendants, the last of which were approved in June 2007, were in excess of $100 million. Mr. Briskin also represented consumers and third-party payers in several successful antitrust actions alleging that brand-name drugmakers blocked generic competition and charged supracompetitive prices for their products, through abuse of the patent system and sham litigation.

From 1999-2001, Mr. Briskin was an Equal Justice Works fellow at New York Legal Assistance Group. He represented indigent and primarily immigrant clients in welfare, disability and immigration matters, in administrative hearings, and in state and federal court.



Mr. Briskin graduated from Harvard College in 1994, and from Harvard Law School in 1998.  Mr. Briskin served as a law clerk for Justice Alexander O. Bryner of the Alaska Supreme Court from 1998 to 1999.   In law school, he was a student attorney and board member of the Harvard Legal Aid Bureau, and a senior editor of the Harvard Civil Rights-Civil Liberties Law Review.  He co-authored an article for that publication titled "The Waging of Welfare: All Work and No Pay?"  33 *Harvard Civil Rights-Civil Liberties Law Review* 559 (1998).  During law school, Mr. Briskin interned for Public Citizen Litigation Group and the American Civil Liberties Union Lesbian and Gay Rights Project.

Mr. Briskin He is a member of the state bars of the District of Columbia, New York and Massachusetts, and is admitted to practice in the Southern and Eastern Districts of New York, the District of Columbia, and the Court of Appeals for the Ninth and District of Columbia Circuits.  He is a chair for the District of Columbia chapter of the National Association of Consumer Advocates, and served on the host committee for the 2013 National Consumer Law Center conference in Washington, D.C.

## Heidi Burakiewicz

Heidi Burakiewicz joined the Washington, D.C. office of Mehri & Skalet, PLLC in 2010. She focuses her practice primarily on cases brought pursuant to the Fair Labor Standards Act ("FLSA") and state wage and hour laws on behalf of employees who are required to perform work off-the-clock without compensation or who have been incorrectly told by their employers that they are exempt and are not entitled to time and one-half overtime compensation for working in excess of forty hours in a week. She is currently handling several cases brought pursuant to the Fair Labor Standards Act ("FLSA") on behalf of employees seeking unpaid wages and overtime compensation.

Since graduating from American University, Washington College of Law in 2000, Ms. Burakiewicz has represented employees and unions in collective/class

- 25 -



action and multi-plaintiff suits before various federal courts as well as in arbitration. Of particular significance, she has collected over $20 million dollars in backpay and liquidated damages from the United States government on behalf of employees who were required to perform work off-the-clock during their uncompensated meal breaks or who were required to perform work before and/or after their scheduled shifts such as picking-up equipment and walking to their job sites. Ms. Burakiewicz has also successfully handled cases against employers for violating free speech and association rights protected by the U.S. Constitution, including a case in which she successfully argued an appeal before the U.S. Court of Appeals for the Eighth Circuit, and for subjecting employees to sexual harassment and discrimination on the bases of race, sex, and disability.

### Ellen L. Eardley

Ellen L. Eardley joined the firm in the fall of 2007 and is active in the civil rights, wage and hour, and consumer protection aspects of the firm's practice. Ms. Eardley litigates a variety of complex civil rights matters, including race and gender discrimination, and negotiates and drafts settlement agreements to provide both individual and programmatic relief. Ms. Eardley recently co-authored an issue brief, "21st Century Tools for Advancing Equal Opportunity: Recommendations for the Next Administration," which encourages the federal government to strengthen civil rights enforcement. This paper was released by the American Constitution Society along with papers making recommendations for President Obama's Administration by several other authors, including Senator Ted Kennedy and Former Attorney General Janet Reno.  Ms. Eardley also represents employees who have been wrongfully denied wages or overtime.

Prior to joining the firm, Ms. Eardley litigated employment discrimination and wage and hour cases on behalf of public sector employees and unions at Woodley & McGillivary in Washington, D.C.  Among other matters, Ms. Eardley represented four female firefighters in a sexual harassment lawsuit against their employer, resulting in a jury verdict of over $750,000.   Ms. Eardley also regularly represented federal

- 26 -



employees in claims brought under the Fair Labor Standards Act (FLSA) for the employer's failure to pay overtime and off-the-clock work.  She successfully argued an appeal involving FLSA overtime before the U.S. Court of Appeal for the Eighth Circuit.

From 2003-2005, Ms Eardley was the Simpson Thatcher and Bartlett Equal Justice Works Fellow at the National Women's Law Center.  She focused on impact litigation and advocacy regarding women's rights in education.  She served on the team of attorneys who represented female victims of sexual assault at the University of Colorado.  She also advocated for heightened enforcement of sex discrimination laws in career and technical (formerly vocational) education, and co-authored the report "Tools of the Trade: Using the Law to Address Sex Segregation in High School Career and Technical Education."

Graduating first in her law school class at the University of Cincinnati, Ms. Eardley earned a joint J.D./M.A. in Women's Studies.  She was a member of the University of Cincinnati Law Review and Book Review Editor for the Human Rights Quarterly.  During law school, she participated in the U.S. Department of Justice Summer Honors Program, interning for the Civil Rights Division, Employment Litigation Section.  She also clerked for Laufman & Gerhardstein, a civil rights firm representing victims of racial profiling and employment discrimination.

## N. Jeremi Duru

N. Jeremi Duru, a Professor of Law at American University's Washington College of Law, serves as "of counsel" to Mehri & Skalet. Before entering academia, Professor Duru was an associate at Mehri & Skalet, where he represented plaintiffs' interests in employment discrimination and other civil rights matters.

Much of Professor Duru's work involved challenges to discriminatory employment practices in professional athletics. In recognition of this work, the National Bar Association honored Professor Duru with its 2005 Entertainment and Sports Lawyer of the Year award. Professor Duru has lectured and written extensively on sports law and employment law topics and, among other publications,



is co-author of Sports Law and Regulation: Cases, Materials, and Problems (3d ed.) (Wolters Kluwer) and author of Advancing the Ball: Race, Reformation, and the Quest for Equal Coaching Opportunity in the NFL (Oxford University Press).

After receiving his undergraduate education at Brown University, Professor Duru completed a joint-degree program at Harvard University, receiving a Master's degree in Public Policy from the John F. Kennedy School of Government and a Juris Doctorate from Harvard Law School. He then served as a law clerk to the Honorable Damon J. Keith of the United States Court of Appeals for the Sixth Circuit.

**<u>Michael Lieder</u>**

For the previous 21 years, Mr. Lieder was "of counsel," a partner, and a member of Sprenger + Lang, PLLC. At that firm, he generally served as lead counsel or in another leading role in employment discrimination, ERISA, wage and hour, and consumer class action litigation, including the following prominent cases:

- In re TV Writers Cases, No. 268836 et al. (Cal. Sup. Ct. (Los Angeles Cty.) 2011) (age discrimination class action);
- Whitaker v. 3M Co., (Minn. Sup. Ct. (Ramsey Cty.) 2011) (age discrimination class action);
- Seraphin v. SBC Internet Servs., Inc., No. CV 09-131-S-REB (D. Idaho 2011) (consumer class action);
- Jarvaise v. RAND Corp., No. 1:96-CV-2680 (D.D.C. 2007) (gender discrimination class action);
- Carlson v. C.H. Robinson Worldwide, Inc., No. CV-02-3780 (D. Minn. 2006) (gender discrimination class action);
- Lucich v. New York Life Ins. Co., No. 01-1747 (S.D.N.Y. 2004) (ERISA pension benefits class action);
- Franklin v. First Union Corp., Nos. 3:99cv344 and 610 (E.D. Va. 2001) (ERISA breach of fiduciary duty class action);
- Thornton v. National Railroad Passenger Corp., No. 98-890 (D.D.C. 2000) (race discrimination class action);



- McLaurin v. National Railroad Passenger Corp., No. 98-2019 (D.D.C. 1999) (race discrimination class action);

- Hyman v. First Union Corporation, No. 94-1043 (D.D.C. 1997) (age discrimination collective action);

- Burns v. Control Data Corporation, No. M.D. 4-96-41 (D. Minn. 1997) (age discrimination collective action);

- In Re: Maytag Corporation/Dixie Narco Plant Closing Litigation, No. 92-C-417 (Jefferson County, West Virginia Circuit Court 1995) (breach of contract and fraud class action); and

- In re Pepco Employment Litigation, No. 86-0603 (D.D.C. 1993) (race discrimination class action).

The settlements in many of the cases required comprehensive injunctive relief in addition to substantial payments to the class members. In the majority of these cases, Mr. Lieder worked closely with co-counsel from other firms.

During his time at Sprenger + Lang, Mr. Lieder became well known in the class action employment bar. In the last seven years alone, he has written papers and spoken at seminars and webinars concerning certification of employment discrimination class actions, the impact of Dukes on certification of employment discrimination class actions, statistical evidence in employment discrimination cases, mediation of employment discrimination cases, the Age Discrimination in Employment Act, Rule 23(f) review of class action certification decisions, ERISA litigation, and wage-and-hour litigation. He also has authored several amicus briefs to the Supreme Court and Courts of Appeal. In 2007, he was named one of "500 Leading Plaintiffs' Lawyers in America" by Lawdragon magazine, and in 2013, he was selected as a "Super Lawyer."

Mr. Lieder brought with him to Mehri & Skalet several cases initiated while he was at Sprenger & Lang, including a breach-of-contract, ERISA and age discrimination case against Allstate Insurance Company on behalf of over 6,200 insurance agents (if the class is certified) and two cases raising cutting edge consumer law issues. In addition, Mehri & Skalet quickly is integrating Mr. Lieder into its



employment class action litigation practice.

Before beginning work at Sprenger + Lang in 1991, Mr. Lieder graduated magna cum laude from Georgetown University Law Center, where he was a Notes and Comments editor on the Georgetown Law Journal, worked for six years as an associate at the Madison, Wisconsin office of Foley & Lardner LLP, and served as a visiting assistant professor for a year at the University of Toledo College of Law.

Mr. Lieder is also an accomplished author with wide-ranging interests. He co-authored a book, Wild Justice: The People of Geronimo vs. the United States, published by Random House in 1997, which was favorably reviewed by the New York Times and the Washington Post, among other leading publications.

In April 2013, Mr. Lieder co-authored an article about successfully pursuing employment justice in the wake of Wal-Mart v. Dukes , which significantly heightened requirements for class actions. The article, "Onward and Upward after Wal-Mart v. Dukes," was co-authored with M&S's Cyrus Mehri.

Mr. Leider also wrote or co-authored five pieces published in various law journals:

- Class Actions Under ERISA, 10 Employee Rights & Employment Policy J. 665 (2006);
- Navajo Dispute Resolution and Promissory Obligations:  Continuity & Change in the Largest Native American Nation, 18 Amer. Ind. L. Rev. 1 (1992);
- Constructing a New Action for Negligent Infliction of Economic Loss:  Building on Cardozo & Coase, 66 Wash. L. Rev. 937 (1991);
- Religious Pluralism and Education in Historical Perspective:  A Critique of the Supreme Court's Establishment Clause Jurisprudence, 22 Wake Forest L. Rev. 813 (1987); and
- Adjudication of Indian Water Rights Under the McCarran Amendment:  Two Courts Are Better Than One, 71 Geo. L.J. 1023 (1983).

Mr. Lieder has a wonderful wife and son who help to keep him enthusiastic and energetic about his life and legal career.  He is looking forward to new challenges at Mehri & Skalet.



**Taryn Wilgus Null**

Taryn Wilgus Null joined M&S in October 2011. Her work focuses on civil rights, wage and hour, and consumer protection aspects of the firm's practice. Before joining M&S, Taryn clerked for the Honorable Noël Anketell Kramer of the District of Columbia Court of Appeals. She also completed fellowships with the National Women's Law Center and Americans United for Separation of Church and State. Taryn graduated from the University of Michigan Law School, cum laude, in 2007.

**Stephanie J. Bryant**

Stephanie J. Bryant joined Mehri & Skalet in November 2013 as an Associate Attorney. Her work focuses in civil rights litigation and Fair Labor Standards Act violations.

Prior to joining Mehri & Skalet, Ms. Bryant was an attorney with Clifford & Garde, LLP in Washington, DC. She handled employment cases under Title VII, the Family and Medical Leave Act, Americans with Disabilities Act, DC Human Rights Act, and whistleblower retaliation statutes in state and federal courts, and before federal agencies. She also handled general civil litigation, temporary restraining orders, and SEC civil litigation.

Ms. Bryant is a 2007 graduate of Case Western Reserve University School of Law. Prior to law school, Ms. Bryant worked as a Conditional Release Specialist for the Department of Corrections in Milwaukee, WI. She graduated from Marquette University with Bachelor's degrees in Criminology and Political Science.

Ms. Bryant is licensed to practice in the District of Columbia and Pennsylvania, as well as in the US District Court for the District of Columbia. She is a member of the National Employment Lawyers Association, Metropolitan Washington  Employment Lawyers Association, DC Bar Association, and is an Employment Law Mentor for the DC Bar Advice & Referral Clinic.

**Pia Winston**

Pia Winston joined Mehri & Skalet as a Find Justice Fellow in February 2013. Her work focuses on the civil rights, wage and hour, and consumer protection aspects



of the firm's practice.

Before joining Mehri & Skalet as the Find Justice Fellow, Ms. Winston served as a law clerk for the National Consumer Law Center (NCLC). She also completed a fellowship with the National Whistleblower Center where she advocated for the rights of whistleblowers and litigated cases involving employee retaliation within the federal government.

Ms. Winston graduated from William & Mary Law School in 2012. While in law school she served on the William & Mary Journal of Women and the Law and served as National Parliamentarian for the National Black Law Students Association. Ms. Winston also competed in national competitions in criminal and employment law as a member of the W&M National Trial Team and Alternative Dispute Resolution Team.

Prior to attending law school, Ms. Winston graduated with honors from the University of California, Berkeley with a B.A. in African American Studies and Anthropology. She is licensed to practice in Maryland and Washington, D.C.

**Teresa Yeh**

Teresa Yeh joined Mehri & Skalet in April 2013 as a 2013–2015 Find Justice Fellow. Her work focuses on the civil rights, wage and hour, and consumer protection aspects of the firm's practice.  Prior to joining Mehri & Skalet, Ms. Yeh worked for the Honorable Alexander Williams, Jr. on the U.S. District Court for the District of Maryland.

Ms. Yeh graduated from Cornell Law School in 2011. At Cornell, she served on the Journal of Law and Public Policy, represented disabled individuals through the Cornell Legal Aid Clinic, and contributed to the AVON Global Center for Women & Justice.

During law school, Ms. Yeh also completed a full-term externship with the U.S. Department of Justice Civil Appellate Staff, where she drafted briefs submitted to the federal courts of appeals and the Supreme Court. In addition, she served as a law clerk for both Legal Aid DC's Appellate Advocacy Unit and the Asian Pacific American Legal Resource Center.



Prior to law school, Ms. Yeh spent several years working at women's advocacy organizations in Washington DC, including Legal Momentum, Break the Cycle, and the Institute for Women's Policy Research. She graduated with high honors from the University of Maryland, College Park, receiving a B.A. in English and a B.A. in Government & Politics.

