1   PENELOPE A. PREOVOLOS (CA SBN 87607)
    PPreovolos@mofo.com
2   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
3   JUSTIN D. HOOGS (CA SBN 267699)
    JHoogs@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone:  (415) 268-7000
6   Facsimile:  (415) 268-7522

7   *Attorneys for Defendant*
    APPLE INC.

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13                                        Case No. 09-CV-01911-EJD

14  IN RE MAGSAFE APPLE POWER ADAPTER      **DEFENDANT'S RESPONSE TO**
    LITIGATION                            **OBJECTOR'S OPPOSITION TO**
15                                        **THE RENEWED MOTION FOR**
                                          **FINAL SETTLEMENT APPROVAL**
16
                                          Judge:  Hon. Edward J. Davila
17                                        Courtroom:  4, 5th Floor
                                          Date:  November 6, 2014
18                                        Time:  1:30 p.m.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .......................................................................................... 1

II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE............................ 2

     A.     The Settlement Provided Direct and Substantial Benefits to Settlement
         Class Members. ....................................................................................... 2

         1.     Newhouse misconstrues the substance of the Settlement. .......................... 2

         2.     Newhouse misconstrues the value of the Settlement. ................................ 7

     B.     The Claims Process for Cash Awards Was Simple, Efficient, and Fair. .............. 10

III.   *BLUETOOTH* AND ITS PROGENY DO NOT REQUIRE A DIFFERENT
      RESULT................................................................................................. 12

IV.    CONCLUSION ........................................................................................ 15

1

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

*Amunrud v. Sprint Commc'ns Co. L.P.*,
No. CV 10-57-BLG-CSO, 2012 WL 443751 (D. Mont. Feb. 10, 2012) ................................. 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)............................................................................................... 2, 13

*Ching v. Siemens Indus., Inc.*,
No. C 11-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ...................................... 11

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ............................................................................................... 1, 5

*Eisen v. Porsche Cars N. Am., Inc.*,
No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ......................... 5

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014).................................................................................................... 14

*Fulford v. Logitech, Inc.*,
No. 08-CV-02041 MMC, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ................ 13

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 1998)..................................................................................... 4, 6, 7, 13

*Jaffe v. Morgan Stanley & Co.*,
No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008)........................ 11

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)................................................................................................ 4, 5, 7

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010) .................................................................................... 11

*In re MagSafe Apple Power Adapter Litig.*,
571 F. App'x 560 (9th Cir. 2014) ............................................................................................. 14

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)...................................................................................................... 4

*In re NVIDIA GPU Litig.*,
539 F. App'x 822 (9th Cir. 2013) ............................................................................................... 4

*Nwabueze v. AT&T Inc.*,
No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ........................................... 3

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999)..................................................................................................... 6

28

Defendant's Response to Objector's Opp. to the Renewed Mot. for Final Settlement Approval
Case No. 5:09-cv-01911-EJD
sf-3460294

ii

*Redman v. Radioshack Corp.*,
    No. 14-1470, 2014 WL 4654477 (7th Cir. Sept. 19, 2014) ........................................................ 14

*Thio v. Genji, LLC*,
    No. 12-cv-05756 NC, 2014 WL 3884289 (N.D. Cal. Aug. 7, 2014)...................................... 11

*Torchia v. W.W. Grainger, Inc.*,
    No. 1:13-cv-01427-LJO-JLT, 2014 WL 3966292 (E.D. Cal. Aug. 13, 2014)........................ 11

## I.    INTRODUCTION

The Settlement is fair, reasonable, and adequate, and provides substantial benefits to Settlement Class Members.  Objector Marie Newhouse misconstrues the Settlement's terms and misrepresents its value.  The Court should reject Newhouse's renewed objection ("RO") and approve the Settlement.

As Apple has contended throughout this litigation, the Adapter is a reliable product with very low failure rates.  Newhouse's own experience confirms this:  she used her Adapter without incident for four years—three years beyond the expiration of her Adapter's one-year warranty.[1] Yet Newhouse attacks the Settlement because it allegedly "discriminated" against her and a supposed "subclass" who enjoyed the incident-free use of their Adapters for three years or more.  That objection is meritless.  It ignores the critical fact that, had this case been litigated, her claims (and those of her "subclass") would have been barred under applicable law.  *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006).

Newhouse also seeks to assert a new argument attacking a component of the Settlement that made the Settlement *more* favorable to Settlement Class Members.  Newhouse's argument is waived because she failed to raise it in her original, timely filed objection (or in any of her subsequent filings in this Court or the Ninth Circuit).  Moreover, her argument is baseless. Because the Settlement for the first time provided direct and published notice of the Adapter Replacement Program, it allowed a 180-day grace period for Settlement Class Members who had not previously obtained replacement adapters to do so.[2]  Newhouse complains that the grace period did not apply to her specific circumstances.  But the fact that a particular settlement component does not benefit every individual class member, particularly one whose Adapter

---

[1] Newhouse purchased a Subject Computer sold with an Adapter on August 17, 2006, and did not replace the Adapter until August 8, 2010, which was nine days short of four years.  (*See* ECF No. 249 ¶¶ 5, 7.)

[2] As explained below, the grace period benefitted Settlement Class Members who were not aware of the replacement program until notice was disseminated in November 2011, and who owned Adapters more than three years old that had experienced strain relief.  Because the Adapter Replacement Program was limited to Adapters that experienced strain relief within three years of purchase, these Settlement Class Members would not otherwise have been able to claim a replacement adapter.

operated perfectly long after her warranty expired, is not a legitimate basis for challenging the Settlement.

Newhouse's contention that the Settlement did not provide sufficient value to Settlement Class Members is equally meritless. She concedes that the settlement paid $797,757 in cash to Settlement Class Members. She also concedes that Apple replaced 92,332 Adapters, each worth $79, under the Adapter Replacement Program between November 2011 (the month that Settlement Class Members received direct and published notice of the Adapter Replacement Program) and July 2013. Newhouse further concedes that at least 59,536 of these 92,332 adapters *would not have been provided to Settlement Class Members absent notice of the Settlement*. (*See* RO at 22.) And a more realistic assessment, discussed below, demonstrates that this calculation significantly *understates* the replacements attributable to the Settlement.

These are direct benefits provided by the Settlement that substantially exceeded the recovery that Settlement Class Members could have obtained had they proceeded with litigation. Newhouse misrepresents the significance of these benefits, and ignores the uncapped structure of both the cash and adapter replacement relief. But both the substance and structure of the relief demonstrate that the Settlement is fair, reasonable, and adequate, and negate any arguable inference of collusion from a comparison of the (substantial) settlement value with the fee agreement, or from the presence of the so-called "clear-sailing" and "reversion" provisions. The concerns articulated in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) and its progeny are not present here. The renewed objection is without merit and the Settlement should be approved.

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A.     The Settlement Provided Direct and Substantial Benefits to Settlement Class Members.

#### 1.     Newhouse misconstrues the substance of the Settlement.

To most effectively compensate Settlement Class Members, the Settlement provided both retrospective and prospective relief. The retrospective relief provided cash refunds to Settlement Class Members who, before notice of the Settlement, had purchased a Replacement Adapter. The

DEFENDANT'S RESPONSE TO OBJECTOR'S OPP. TO THE RENEWED MOT. FOR FINAL SETTLEMENT APPROVAL
CASE NO. 5:09-cv-01911-EJD
sf-3460294

2

1    amount of the cash awards depended on how long the original Adapter had performed before

2    requiring replacement and generally reflected the Adapters' useful life.  Newhouse does not take

3    issue with the dollar value of the respective cash awards.  (*See* RO at 10.)  Rather, she argues that

4    failures in the fourth and fifth years following purchase should also have been compensated.  In

5    essence, without the support of facts or law, she wants compensation for an Adapter that

6    performed for years beyond its warranty.

7         Prospectively, Settlement Class Members were guaranteed at least three full years to claim

8    a free replacement adapter (valued at $79) for any Adapter that experienced strain relief during

9    the first three years of use.  The Settlement also provided a grace period of 180 days following

10   notice for Settlement Class Members who still owned Adapters experiencing strain relief, and

11   whose three-year period to claim a replacement had expired, to claim a replacement adapter.

12
             **a.    Newhouse's attack on the 180-day grace period, which provided
             additional benefit to the Settlement Class, is meritless.**
13

14        Despite the substantial relief provided by the Settlement, Newhouse attempts to attack the

15   Settlement by arguing for the first time in her so-called "renewed objection" that the Settlement

16   "arbitrarily freezes out" a supposed subclass of Settlement Class Members who fall within what

17   she refers to as a "donut hole" of "no recovery or benefit."  (*See* RO at 1, 16.)  Newhouse waived

18   this argument when she failed to raise it in her timely-filed objection as required by the

19   Stipulation of Settlement and class notice (*see* Carameros Notice Decl. Ex. D, ECF No. 235).

20   *See, e.g.*, *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *7 (N.D. Cal. Nov.

21   27, 2013) (overruling objection made after the deadline for objections).  Further, Newhouse's

22   failure to assert the argument in any of her extensive prior filings in this Court or the Ninth

23   Circuit evidences its lack of legitimacy.  Newhouse's challenge to an aspect of the Settlement that

24   provides more, not less, benefit to Settlement Class Members is baseless.

25        Because the terms of the Settlement required Apple to provide direct and published notice

26   of the Adapter Replacement Program, which had not been widely publicized previously, the

27   Settlement provided a 180-day grace period following class notice.  The purpose of the grace

28   period was to permit Settlement Class Members whose three-year period to make a claim had

1   expired, but who were not previously aware of the Adapter Replacement Program, to claim a

2   replacement adapter.  Newhouse, however, seeks to use this added benefit of the Settlement to

3   attack it.  She asserts that Settlement Class Members whose three-year period had expired but

4   who still owned an Adapter showing strain relief (whether or not that strain relief had manifested

5   within three years of purchase), or whose Adapters fortuitously experienced strain relief during

6   the 180-day grace period, could claim a replacement.  (*See* RO at 16–17.)  She argues that, in

7   contrast, Settlement Class Members like herself, who purchased Replacement Adapters because

8   their original Adapters experienced strain relief damage after more than three years of incident-

9   free use, did not benefit from the grace period.  (*See id.*)

10          Of course, if Newhouse had not discarded her Adapter, she could have claimed a

11  replacement adapter during the grace period.  Further, Newhouse's argument ignores the

12  fundamental reality that Settlement Class Members whose Adapters, like hers, functioned without

13  incident for more than three years had no claim under applicable law and no reasonable

14  expectation of relief under the Settlement.  Instead, Newhouse asks the Court to disapprove the

15  Settlement based on a feature that indisputably improved the Settlement merely because it did not

16  provide a benefit to her.  That the Settlement may not account for every nuance to achieve

17  absolute parity between every Settlement Class Member under every possible scenario, however,

18  is not a reason for the Court to disapprove the Settlement.  Indeed, while the result for Newhouse

19  may not be what she would prefer, it does not mean the Settlement is not "fundamentally fair."

20  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *see also Hanlon v. Chrysler*

21  *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Finally, Newhouse, and any other similarly situated

22  Settlement Class Member who shared her views, were free to opt out and pursue their individual

23  claims (although, for the reasons set forth below, those claims were legally meritless).  *See*

24  *Hanlon*, 150 F.3d at 1027 (if objectors thought their "personal claim was being sacrificed for the

25  greater good," they "had the right to opt-out of the class"); *In re Mego Fin. Corp. Sec. Litig.*, 213

26  F.3d 454, 463 (9th Cir. 2000) (same); *In re NVIDIA GPU Litig.*, 539 F. App'x 822, 824 (9th Cir.

27  2013) (same).

28

**b.    Newhouse's argument that the Settlement should be rejected because it did not compensate Settlement Class Members whose Adapters performed without incident for years beyond the warranty period is meritless.**

More generically, Newhouse argues that the Settlement should be disapproved because it limited claims for cash refunds and replacements to owners of Adapters that experienced strain relief within three years of purchase. Newhouse asserts that she thus is a member of a "subclass" that was treated differently and that the Settlement should be disapproved as a result. As Apple explained in its opening memorandum, the three-year limitation on cash refunds and adapter replacements was fully supported both by applicable law and practical reality. *Daugherty* precludes plaintiffs from end-running warranty limitations like the one-year warranty Apple provided for the Adapters. 144 Cal. App. 4th at 838. As part of the Settlement, Apple nonetheless agreed to provide relief for a full two years beyond the express warranty. The Settlement thus covered Adapters that experienced strain relief during their first three years of use, or their estimated useful life. That period was more than reasonable, particularly given that adapters are far more subject to hard usage than most other computer components or peripherals. Adapters get bent, twisted, stepped on, tied in knots, yanked from walls, thrown into suitcases, and run over by wheeled office chairs. Newhouse's argument that the Settlement should be disapproved because she would like a longer claim period is not the law. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *7 (C.D. Cal. Jan. 30, 2014) (discussing necessity of reasonably negotiated eligibility limitations).

Indeed, her argument seeks in settlement far more than she (or any representative of her purported "subclass") could have achieved at trial. (RO at 19.) Under *Daugherty*, plaintiffs had no real chance of recovering for Adapter failures beyond the one-year warranty. "Fundamental fairness" does not require giving class members more than they could have achieved at trial. *See Lane*, 696 F.3d at 821. The Settlement's coverage for failures in years two and three was fair and reasonable and provided the Settlement Class with substantial benefits beyond what they could have recovered under applicable law. *See id.* ("[S]ettlement agreements will necessarily reflect the interests of both parties to the settlement, including those of the defendant."); *see also*

1    *Hanlon*, 150 F.3d at 1027 (recognizing that "[s]ettlement is the offspring of compromise").  Judge

2    Ware recognized this and found that, absent the Settlement, there was a significant risk that the

3    Settlement Class would have recovered less or nothing.  (ECF No. 107 at 6.)

4         Newhouse's suggestion that the resulting Settlement discriminated against a purported

5    "subclass" of Settlement Class Members whose adapters performed without any issue until years

6    after the warranty, and after any tenable legal claim for relief had expired, is patently without

7    merit.   The argument that "a conflict of interest requiring subdivision is created when some class

8    members receive more than other class members in a settlement" is "untenable," as "almost every

9    settlement will involve different awards for various class members."[3]  *Petrovic v. Amoco Oil Co.*,

10   200 F.3d 1140, 1146 (8th Cir. 1999) (rejecting objectors' argument that district court should have

11   created separately represented subclasses for groups of property owners who experienced varying

12   degrees of damage as a result of underground oil seepage).  This is particularly the case where, as

13   here, the vast majority of Settlement Class Members, including Newhouse, owned Adapters that

14   did not experience strain relief at all, or until years after the warranty period.  Settlement Class

15   Members who did experience strain relief did so at different times.  The different types of relief

16   provided by the Settlement and the allocation of benefits to Settlement Class Members were

17   rationally based on legitimate considerations, including how long Adapters performed without

18   experiencing strain relief, and what Settlement Class Members would be entitled to under

19   applicable law.  That Newhouse desires a Settlement more favorable to her individual

20   circumstances is not a basis for disapproving the Settlement.

21

22

23   [3] Newhouse's argument would require five separately represented subclasses of Settlement Class
     Members (one for each year in which Adapters experienced strain relief) and would further
24   mandate that all Settlement Class Members, even those whose Adapters performed flawlessly
     until the Subject Computer ceased to be used, be compensated.  Under Newhouse's argument,
25   even where the actual failure rate was in the low single digits, no settlement could be approved
     unless every class member received compensation.  That is not the law.  To the contrary, in
26   settlement as in litigation, only those class members whose products actually manifest a defect
     typically recover.  The settlement class is defined to include everyone because the particular
27   individuals who experienced the alleged defect is unknown, and everyone in the class who in fact
     experiences the defect within an appropriate time period is entitled to compensation.
28

## 2. Newhouse misconstrues the value of the Settlement.

The Settlement will pay substantial cash awards, totaling $797,757, to Settlement Class Members who purchased Replacement Adapters.  Newhouse does not dispute the value of these cash awards.  In addition, the Settlement provided for direct and published notice of the Adapter Replacement Program, and contractually obligated Apple to maintain the Adapter Replacement Program until July 2013.  Newhouse argues that "[t]he correct valuation of the injunctive relief is zero" because Apple implemented the Adapter Replacement Program before the litigation began and "[t]here is no evidence that Apple would have ended the Replacement Program without the settlement."  (RO at 21, 22.)  That is wrong.  Most obviously, the Settlement required direct and published notice of the Adapter Replacement Program, which Apple had not previously given and was not otherwise required to provide.  Further, whether or not Apple would have continued the Adapter Replacement Program through July 2013, it was not required to do so.  The Settlement mandated notice and guaranteed that the Adapter Replacement Program would continue until July 31, 2013 through a "judicially-enforceable agreement."  *See Lane*, 696 F.3d at 826 (acknowledging value of "judicially-enforceable agreement" that mandated permanent termination of program that defendant discontinued before settlement); *see also Hanlon*, 150 F. 3d at 1027 (acknowledging benefit of "monitoring by class counsel" and "extended notification" of pre-existing replacement car part program resulting from settlement).

Newhouse cannot and does not deny that the Adapter Replacement Program benefits mandated by the Settlement made a real difference for Settlement Class Members.  (*See* RO at 20.)  Newhouse concedes that at least 59,536 of the 92,332 adapters replaced between November 2011 and July 2013 were attributable to the Settlement.  (*See id.* at 22.)   And that number is understated.  Newhouse asserts that Apple was "replacing 18,741 adapters a year, and the twelve-month moving average was generally increasing over time as more adapters failed and word of mouth of the program increased."[4]  (*Id.*)  The 59,536 figure attempts to discount the 92,332 figure

---

[4] It is unclear what Newhouse refers to as the "twelve-month moving average."  The twelve-month totals from the five months before November 2011 were in fact trending downward:  in the twelve months from July 2010 to June 2011, Apple replaced *22,221* adapters; from August 2010 to July 2011, Apple replaced *21,670* adapters; from September 2010 to August 2011, Apple

based on this purported increase and rate.  (*See id.*)  Prior to the November 2011 notice, however, replacements under the Adapter Replacement Program were actually trending *down* on a monthly basis, from a high of 2,496 in January 2011 to approximately 1,100 adapters per month in September and October 2011.  (*See* Coulson Decl. ¶ 5 and Ex. 1, ECF No. 236.)  Even assuming that the replacements would not have continued to trend downward absent the notice provided by the Settlement (which of course they would have), and that Apple would have continued to replace approximately 1,100 adapters per month through July 2013, that would mean that, at the absolute minimum, 69,232 of the 92,332 adapters replaced between November 2011 and July 2013 (worth $5,469,328, based on the $79 per adapter price)[5] were attributable to the Settlement. This scenario is illustrated in the chart below:



As shown above, because replacements under the Adapter Replacement Program were actually

replaced *20,898* adapters; from October 2010 to September 2011, Apple replaced *19,898* adapters; and from September 2010 to October 2011, Apple replaced *18,741* adapters.  (*See* Coulson Decl. Ex. 1, ECF No. 236.)

[5] Newhouse asserts that "[i]t is unlikely that a class member values a replacement adapter at the $79 retail value" because "other power adapters in competitive markets for other laptops . . . sell in the $10 range (though the MagSafe adapter is admittedly a nicer adapter than typical)."  (RO at 23.)  But "other" (PC) power adapters did not work with the Settlement Class Members' computers; absent the Settlement, Settlement Class Members who needed a replacement adapter would have paid $79 for replacement adapters.  Further, if Apple had not provided Settlement Class Members with free replacement adapters under the Settlement, it would have sold them to Settlement Class Members for a price of $79 per adapter.

1    trending down in the months leading up to November 2011—and would have continued to do so

2    if direct and published notice of the Settlement were not provided—a number closer to the full

3    92,332 adapters replaced between November 2011 and July 2013 is likely attributable to the

4    Settlement.  In any event, as the chart above unquestionably demonstrates, the notice required by

5    the Settlement provided huge value to Settlement Class Members.

6         Newhouse's attempt to suggest that the Settlement "may have made the Replacement

7    Program temporarily worse" and less "consumer-friendly" by limiting the Adapter Replacement

8    Program to three years is flat wrong.  (*See* RO at 1, 21.)  From the time Apple commenced the

9    Adapter Replacement Program, it was Apple's policy to limit the program to replacements for

10   Adapters that exhibited strain relief issues within three years of purchase.  (*See* Declaration of

11   Allan Coulson Regarding Adapter Replacement Program, filed concurrently herewith ("Coulson

12   Decl. Regarding Adapter Replacement Program") ¶ 4.)  It is not true, as Newhouse contends, that

13   "[w]hen Apple started the program in 2008, it applied to all adapters no matter how old."  (RO at

14   7.)  Apple did not initially specify a time period in the description of the program on its website

15   because, at the time the program was launched, no Adapter was as yet three years old.  (Coulson

16   Decl. Regarding Adapter Replacement Program ¶ 4.)

17        Newhouse's assertion that "at least as early as December 6, 2012, and continuing at least

18   as late as July 15, 2014, Apple did not have the three-year limitation in its description of the

19   Replacement Program" is simply wrong.  (RO at 7.)  Newhouse makes this misrepresentation to

20   the Court based on a comparison of an *incomplete*, unexpanded version of the December 6, 2012

21   "Apple Portables:  Troubleshooting MagSafe adapters" webpage that her counsel attaches as

22   Exhibit 5 to his declaration with a complete, expanded version of the September 4, 2014 "Apple

23   Portables:  Troubleshooting MagSafe adapters" webpage.  (*Compare* Frank Decl. Ex. 5 *with id.*

24   Ex. 13, ECF No. 250.)  In fact, like the September 4, 2014 webpage, the December 6, 2012

25   webpage stated:  "This program will cover strain relief for a period of three years after the

26   purchase of an adapter with computer or standalone adapter, or until May 21, 2012, whichever

27   date is later."  (*See* Supplemental Declaration of Penelope A. Preovolos in Support of Renewed

28   Motion for Final Settlement Approval, Ex. A; *see also* Frank Decl. Ex. 13, ECF No. 250.)

Newhouse's careless misrepresentation and irresponsible attempt to suggest that Apple would "modif[y] its website . . . solely for litigation purposes to create a false impression with the court about the value of the injunctive relief" should be rejected.  (RO at 12; *see also id.* at 6 n.3, 7.)  As discussed above, the injunctive relief provided direct and substantial benefits to Settlement Class Members and its value makes clear that the Settlement was fair, adequate, and reasonable.

### B.    The Claims Process for Cash Awards Was Simple, Efficient, and Fair.

Newhouse's assertions that the allegedly "cumbersome" claims process "artificially throttle[d] the number of claims made" and "evidences self-dealing" are baseless.  (RO at 28–29.)  The claims process was simple, efficient, and fair.  It was not "arbitrary" as Newhouse asserts (*see* RO at 3), but—as Judge Ware agreed after close scrutiny—essential to protect against fraud.

The claim form itself was a simple, one-page form that required Settlement Class Members to do very little. They had to supply the dates when they purchased their Subject Computer and Replacement Adapter, and sign a certification. (*See* Carameros Notice Decl. Ex. D, ECF No. 235.)  Nothing more was required unless the accompanying proof of purchase did not specifically show the purchase of a Replacement Adapter; in that circumstance, the claimant was required to declare that the proof of purchase submitted was in fact for a Replacement Adapter. (*See id.*)

The claims process, and specifically the proof of purchase requirement, was carefully scrutinized by Judge Ware before preliminary approval of the Settlement.  Indeed, Judge Ware initially rejected a proof of purchase requirement.  (*See* ECF No. 77.)  But, as Apple explained in a motion for reconsideration, a claims process including proof of purchase was essential to avoid an unacceptably high fraud risk[6] and to accurately determine the appropriate claim amounts.[7]

---

[6] Providing an Adapter's serial number, for example, was not evidence that a Settlement Class Member purchased a Replacement Adapter.  Every Subject Computer shipped with an Adapter; a class member could simply provide the serial number of that Adapter, even if he or she never purchased a Replacement Adapter.  Or a Settlement Class Member could provide the serial number of an Adapter he or she received free of charge under warranty or the Adapter Replacement Program.  Only actual proof of purchase avoided that fraud risk.

[7] The proof of purchase also showed when an Adapter was replaced, allowing accurate determination of whether the replacement occurred in the first, second, or third year after purchase and of the proper cash refund amount.

(*See* ECF No. 78.)  On reconsideration, Judge Ware agreed, and approved the claims process, including the proof of purchase requirement.[8]  (*See* ECF No. 80.)

Newhouse incorrectly asserts that Apple forced class members to "jump through [] hoops" by submitting a paper claim form and proof of purchase "even though Apple had internal records of who purchased replacement adapters"[9] to deter Settlement Class Members from making claims.  (RO at 28.)  She is wrong.  Her argument misstates the information that Apple possesses about its consumers and their reasons for purchase,[10] ignores Judge Ware's express and careful determination that proof of purchase was necessary under the facts of this case, and overlooks the special mechanism created for Settlement Class Members to obtain duplicate receipts.

Finally, contrary to Newhouse's suggestions, there is nothing inherently objectionable about the use of paper claim forms, particularly given the proof of purchase requirement.  Newhouse essentially insists that fundamental fairness required an online claims submission process.  But there is no rule or authority requiring such a process now or when the Settlement was originally negotiated.[11]

---

[8] The final proof of purchase requirement was extremely lenient.  Settlement Class Members could submit a receipt, check, or bank or credit card statement; if it did not show the purchase of an Adapter, the price paid, or other required information, Settlement Class Members could simply supply that information on the claim form as discussed above.

[9] Newhouse asserts that Apple has not disclosed how many standalone Adapters it sold.  (RO at 29.)  That is false. Apple disclosed that its records show that it sold approximately 1.3 million standalone Adapters.  (ECF No. 234 at 5 (citing Laxson-Highton Decl. ¶ 4).)

[10] Apple does not have records of consumers who purchased replacement adapters.  Consumers purchased Adapters for many reasons:  some chose to buy a spare Adapter, some replaced a lost Adapter, and some replaced an Adapter that failed because they abused it or for reasons unrelated to strain relief.  These consumers could not have recovered even if the case had gone to trial, because the plaintiffs alleged claims and sought a remedy only for Adapters that failed due to strain relief.  A direct payment to anyone who ever purchased an Adapter, which Newhouse argues for, thus would compensate consumers whose Adapter never failed or who had no legal claim.  That the Settlement did not compensate such consumers does not render it unfair.

[11] *See, e.g., Torchia v. W.W. Grainger, Inc.*, No. 1:13-cv-01427-LJO-JLT, 2014 WL 3966292, at *12 (E.D. Cal. Aug. 13, 2014) (granting preliminary approval of settlement requiring mail-in claims forms); *Thio v. Genji, LLC*, No. 12-cv-05756 NC, 2014 WL 3884289, at *5 (N.D. Cal. Aug. 7, 2014) (same); *Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *3 (N.D. Cal. Nov. 27, 2013) (same); *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208, at *101 (N.D. Cal. Feb. 7, 2008) (same); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (rejecting objector's argument that claims process was not adequate because it did not include an online claim form).

1    Newhouse speculates that "[t]he only reason [Apple] would agree to incur this additional

2    settlement administration expense was if [it] expected the additional costs to be more than offset

3    by the number of class members deterred from seeking to make claims by the inconvenience of

4    the hoop-jumping." (RO at 28.) That is simply false. Here, an online claim form likely would

5    have been more difficult for Settlement Class Members, and would have unnecessarily

6    complicated the settlement administration process. Because proof of purchase was required,

7    Settlement Class Members would have had to use a digital scanner to create a PDF of their proof

8    of purchase, upload it to the settlement website, and associate it with the online claim form they

9    filled in on the website. At the time the Settlement was preliminarily approved and notice was

10   given, many class members would have lacked ready access to that technology, and those who

11   did have it might have experienced difficulties resulting in failed claims, deficiency notices, and

12   additional work for the settlement administrator. In short, the process for associating an

13   electronic proof of purchase with claimants' online submissions likely was at least as complicated

14   and costly as processing paper claims forms. At a minimum, use of a paper claim form was a

15   reasonable choice under the circumstances and is not a basis for disapproving the Settlement.

16        In any event, the final claims rate does not indicate self-dealing or that the Settlement is

17   anything other than fair, reasonable, and adequate. The low claims rate is consistent with Apple's

18   contention throughout the litigation that the Adapter was reliable and performed without incident.

19   This contention is borne out by Newhouse's own experience with the Adapter, which performed

20   without any issue for nearly four years. Moreover, focusing solely on the cash awards understates

21   the claims rate attributable to the Settlement. As discussed above, under the Adapter

22   Replacement Program, Apple provided tens of thousands of free replacement adapters to

23   Settlement Class members apart from the cash awards process.

24   **III.    *BLUETOOTH* AND ITS PROGENY DO NOT REQUIRE A DIFFERENT RESULT.**

25        Newhouse ignores the reasons why none of the *Bluetooth* "warning signs" support an

26   inference of collusion in this case and instead makes the conclusory assertion that the Settlement

27

28

1    should be disapproved unless the "kicker" (or "reversion") is eliminated.[12]  (*See* RO at 25–27.)

2    As Apple explained in its opening memorandum, Newhouse is wrong.

3        First, while Apple leaves to plaintiffs the task of addressing the objections to the

4    attorneys' fees award, the Court should reject Newhouse's contention that the Court should give

5    little or no weight to the role of the Honorable Fern Smith, a sophisticated retired federal judge

6    from this District, in mediating the settlement.  (RO at 14.)  Judge Smith's role here, particularly

7    in connection with ensuring that the parties sequenced the mediations and first negotiated the

8    material terms of the Settlement and the relief that would be provided to Settlement Class

9    Members before negotiating any terms related to attorneys' fees, should not be discounted.  *See*

10   *Bluetooth*, 654 F.3d at 948 (involvement of a neutral mediator weighs "in favor of a finding of

11   non-collusiveness"); *see also Hanlon*, 150 F.3d at 1029 (same); *Amunrud v. Sprint Commc'ns Co.*

12   *L.P.*, No. CV 10-57-BLG-CSO, 2012 WL 443751, at *3 (D. Mont. Feb. 10, 2012) (same).

13       Second, given the direct and substantial benefits the Settlement provided to Settlement

14   Class Members, Newhouse's assertion that the "clear-sailing" and "reversion" provisions require

15   disapproval of the Settlement should also be rejected.  There is a strong judicial policy in favor of

16   the settlement of class actions.  *See Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S.

17   Dist. LEXIS 29042, at *5 (N.D. Cal. Mar. 5, 2010) ("[T]he interests of the class as a whole are

18   better served if the litigation is resolved by the settlement rather than pursued.") (quotations and

19   citation omitted).  The Settlement here provided Settlement Class Members with benefits well

20   beyond the recovery to which they would have been entitled had they proceeded with the

21   litigation.

22       As a practical matter, many class actions would not settle if the parties were not able to

23   negotiate some type of arrangement regarding attorneys' fees.  Here, both the cash awards and the

24   adapter replacements were uncapped; the parties also strenuously disagreed about how many

25

26   _____

     [12] Newhouse appears to argue that the Court should find that the "kicker" is *per se* unreasonable.

27   (*See* RO at 27 ("The kicker must be eliminated before the settlement can be approved."); *see also*
     *id.* at 2, 25.)  That is not the law and such a rule makes no sense where, as here, the fact that

28   unawarded attorneys' fees are not paid to Settlement Class Members does not "prejudice[] the
     class" or "depriv[e] the class" of any relief as discussed below.  (*See id.* at 2, 26.)

1   Settlement Class Members experienced strain relief and thus how many would be entitled to

2   claim benefits under the Settlement.  As a result, the parties had no way to know how many cash

3   awards would be made, nor how many replacement adapters would be provided.[13]  In these

4   circumstances, the "clear-sailing" provision could not be "self-serving," nor could it be "traded

5   off" for reduced benefits to the class—because the amount of those benefits had no cap and could

6   not be known.  With Judge Smith's assistance, the attorneys' fees amount was thus necessarily

7   based on a lodestar amount instead of a percentage of actual recovery, with the understanding that

8   the Court could and would reduce the fee amount if appropriate.

9        For similar reasons, Newhouse also ignores the appropriateness of the "reversion"

10  provision here.  If the plaintiffs were wrong and Apple was correct about the number of Adapters

11  experiencing strain relief and, hence, the volume of cash and replacement claims, and if the Court

12  reduces fees as a result, that would mean, quite simply, that Apple paid more in fees than the

13  claims, and plaintiffs' case, were worth.  It follows that any overpayment would belong to Apple,

14  not the Settlement Class.

15       Similarly, in the circumstances of this case, "reversion" is a misnomer; it assumes an

16  actual or constructive common fund (or otherwise inadequate benefits available to the settlement

17  class).[14]  Here, there was no actual common fund.  Nor was there a "constructive common fund";

18

---

19  [13] The Ninth Circuit noted that this Court may find that a *Bluetooth* analysis may not be
    appropriate in the context of a claims-made settlement like this where the amount of

20  compensation to the class is not capped.  *See In re MagSafe Apple Power Adapter Litig.*, 571 F.
    App'x 560, 564–65 (9th Cir. 2014).

21  [14] The cases cited by Newhouse are inapposite.  In *Eubank v. Pella Corporation*, 753 F.3d 718,

22  723, 729 (7th Cir. 2014), the Seventh Circuit noted, but otherwise did not consider, the district
    court's approval of a "kicker" provision in reversing the approval of a settlement because of fatal

23  conflicts of interest due to the family relationship between lead plaintiff and his lawyer (who was
    facing a lawsuit for misappropriation brought by his former law firm and had been recently

24  suspended from practicing law for thirty months because of repeated misconduct) and the "one-
    sidedness" of the settlement's terms, which failed to provide class members with direct or

25  substantial benefits, for example, by arbitrarily capping specific types of relief.  In *Redman v.

26  RadioShack Corporation*, No. 14-1470, 2014 WL 4654477, at *7 (7th Cir. Sept. 19, 2014), the
    Seventh Circuit simply noted that in a case where the attorneys' fees were disproportionate to the

27  $10 coupons awarded to class members, "[o]ne possible solution . . . is to increase the share of the
    settlement received by the class."  The present case does not involve any alleged conflict, nor is it

28  a coupon settlement.

1   because cash and adapter claims were uncapped, the total class benefits were neither fixed nor

2   knowable when the Settlement was negotiated.  Newhouse complains that unawarded attorneys'

3   fees should be used to compensate Settlement Class Members like herself.  (*See* RO at 26–27.)

4   But Newhouse does not argue that the cash amounts of $79, $50, and $30 were insufficient.  And

5   her argument ignores the fact that there was no legal basis for compensating Settlement Class

6   Members (like Newhouse) whose Adapters performed without incident for years and who had no

7   legal claim.  Because the uncapped Settlement already fully compensated the Settlement Class

8   Members, a "reversion" of unawarded fees to the Settlement Class Members would have been a

9   windfall to them and an unjustified overpayment by Apple.

10  **IV.     CONCLUSION**

11          For the foregoing reasons and the reasons stated in its opening memorandum, Apple

12  respectfully requests that the Court reject Newhouse's renewed objection and approve the

13  Settlement as being fair, reasonable, and adequate, and enter final judgment approving the

14  Settlement.

15                                              PENELOPE A. PREOVOLOS
    Dated:  October 6, 2014                     TIFFANY CHEUNG
16                                              JUSTIN D. HOOGS
                                                MORRISON & FOERSTER LLP
17

18

19                                      By:    */s/ Penelope A. Preovolos*
                                                PENELOPE A. PREOVOLOS
20
                                                *Attorneys for Defendant*
21                                              APPLE INC.

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE BY U.S. MAIL
### (Fed. R. Civ. P. 5(b))

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California  94105-2482.  I am not a party to the within cause, and I am over the age of eighteen years.  I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the U.S. Postal Service and know that in the ordinary course of Morrison & Foerster LLP's business practice the document described below will be deposited with the U.S. Postal Service on the same date that it is placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

I further declare that on the date hereof I served a copy of:

**DEFENDANT'S RESPONSE TO OBJECTOR'S OPPOSITION TO THE RENEWEDMOTION FOR FINAL SETTLEMENT APPROVAL**

**SUPPLEMENTAL DECLARATION OF PENELOPE A. PREOVOLOS IN SUPPORT OF RENEWED MOTION FOR FINAL SETTLEMENT APPROVAL**

**DECLARATION OF ALLAN COULSON REGARDING ADAPTER REPLACEMENT PROGRAM**

on the following by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco, California 94105-2482, in accordance with Morrison & Foerster LLP's ordinary business practices:

**Dale Funk**                                            *Pro se*
7303 Delmar Blvd.
University City, MO 63130

**Robert Gaudet**                                       *Pro se*
800 Fifth Avenue, Suite 4100
Seattle, WA 98104

**Daniel Greenberg**                    Counsel for Plaintiff
Greenberg Legal Services              Marie Gryphon
55 Fontenay Circle
Little Rock, AR 72223

Other participants in the case will be served via the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California, this 6th day of October, 2014.


| Lilly Yan | /s/  *Lilly Yan* |
|:---:|:---:|
| (typed) | (signature) |