STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
TARYN WILGUS NULL (CA SBN 254445)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com
twilgusnull@findjustice.com

HELEN I. ZELDES (CA SBN 220051)
AARON M. OLSEN (CA SBN 259923)
ZELDES HAEGGQUIST & ECK, LLP
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
aarono@zhlaw.com

Attorneys for Plaintiffs

[Additional Counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE MAGSAFE APPLE POWER ADAPTER LITIGATION | Case No.:  5:09-CV-01911-EJD |
| | **PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR RENEWED MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEES AND COSTS** |
| | Date:  November 6, 2014<br>Time: 9:00 a.m.<br>Judge:  Honorable Edward J. Davila<br>Courtroom:  4, 5th Floor |

MEHRI & SKALET, PLLC

**Table of Contents**

I.      THE SETTLEMENT SATISFIES RULE 23(a)................................................................3

II.     PLAINTIFFS' FEE PETITION SHOULD BE APPROVED BY THE COURT.............5

        A.     Newhouse Errs In Her Valuation of the Settlement. ..................................................6

        B.     Newhouse's Allegation of a "Throttled" Claim Process Is Meritless. ...................12

        C.     Plaintiffs' Lodestar Accrued Since December 2011 Is Reasonable. ......................14

III.    THE COURT MAY DISREGARD THE SELF-SERVING STATEMENTS OF THE

        CENTER FOR CLASS ACTION FAIRNESS ..............................................................15

IV.     CONCLUSION..............................................................................................................15

MEHRI & SKALET, PLLC

1

**Table of Authorities**

2

**Cases**

3 *Blanchard v. Bergeron*, 489 U.S. 87 (1989) ...................................................................9

*Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014 (9th Cir. 2000) ...........................2

4 *Ching v. Siemens Indus.,* 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014)................11

5 *Consumer Privacy Cases,* 175 Cal. App. 4th.................................................................5

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000) ...........................6

6 *Dennis v. Kellogg* Co., 697 F.3d 858 (9th Cir. 2012) ...................................................5

7 *Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014)................4, 12

*Evans v. Linden Research, Inc.,* 2014 U.S. Dist. LEXIS 59432, (N.D. Cal. April 29, 2014)....10

8 *Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6,

9 2008)...............................................................................................................................5

*Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010)...................5

10 *Guschausky v. Am. Family Life Assur. Co.*, 851 F. Supp. 2d 1252 (D. Mont. 2012) ...............13

11 *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797 ...................................13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................14

12 *Hohenberg v. Drey (In re Ferrero Litig.),* 2014 U.S. App. LEXIS 13780 (9th Cir. July 16,

13 2014).................................................................................................................................7

14 *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 165225 (S.D. Cal.

Nov. 19, 2013)..............................................................................................................12

15 *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009).............................4

*In re MagSafe Apple Power Adapter Litig.*, 2014 U.S. App. LEXIS 7708, (9th Cir. Cal. 2014).

16 ........................................................................................................................................6

17 *In re Mego Corp. Sec. Litig*, 213 F.3d 454 (9th Cir. 2000) .........................................4

*In re Netflix Privacy Litig.*, Case No. 5:11-CV-379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D.

18 Cal. Mar. 18, 2013) ........................................................................................................8

19 *In re Nvidia GPU Litigation,* 539 Fed. Appx. 822 (9th Cir. 2013).............................4

*In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267 (S.D.N.Y.

20 May 1, 2008) ...................................................................................................................4

21 *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...........10

*In re WorldCom, Inc.*, 347 B.R. 123 (Bankr. S.D.N.Y. 2006).....................................5

22 *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal.

23 Feb. 7, 2008) .................................................................................................................13

*Jo v. Natura Pet Prods.*, Case No. 09-2619 SBA, 2012 U.S. Dist. LEXIS 128615 (N.D. Cal.

24 Sept. 10, 2012)..............................................................................................................10

25 *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir.

2011).........................................................................................................................2, 6

26 *Lemus v. H&R Block Enters*. LLC, 2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012)

27 ......................................................................................................................................13

*Linney v. Cellular Alaska P'ship*, 151 F.3d, 1234 (9th Cir. 1998) .............................1

28

MEHRI & SKALET, PLLC

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................13

*Lundell v. Dell*, Case No. 05-3970 JW/RS, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006)...........................................................................................................................................4

*Morales v. Stevco*, Inc., 2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) ...................13

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)...................................................................11

*Officers for Justice v. Civil Service Comm.*, 688 F.2d 615 (9th Cir. 1982) ..................................1

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) ............................................13

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)........................................................................10

*Redman v. RadioShack Corp.*, 2014 U.S. App. LEXIS 18181 (7th Cir. Sep. 19, 2014) ...........10

*Roberts v. Electrolux Home Prods.,* 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) .......................................................................................................................................................7

*Shames v. Hertz*, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012)...................5, 12, 13

*Trew v. Volvo Cars of N. Am., LLC*, 2007 WL 2239210 (E.D. Cal. July 31, 2007)....................4

*Turner v. Gen. Elec. Co.*, 2006 WL 2620275 (M.D. Fla. Sept. 13, 2006)...................................4

*Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738 (E.D. Tex. 2007)..................................4

*Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011)...................10

**Statutes**

28 U.S.C. § 1712(a) ........................................................................................................................9

MEHRI & SKALET, PLLC

Objector Marie Newhouse concedes that the settlement is fair, reasonable and adequate under the Ninth Circuit's standard for approval, set forth in *Churchill Village*.[1]  Faced with the final claims data showing that class members started lining up to make claims for millions of dollars in reimbursement and replacement adapters immediately after notice was disseminated, Newhouse is left with only two meritless arguments about why this settlement should not be approved.

First, Newhouse argues that she and other class members whose adapters worked for over three years – Newhouse's lasted four – should be able to participate in the replacement program even if they did not retain their original adapter, and the fact that they cannot renders the settlement unfair and uncertifiable under Rule 23(a).  Newhouse did not raise this concern in her original objection,[2] and the court did not re-open the objection period.  To the contrary, Newhouse conceded that the settlement was "potentially fair, as long as that class attorneys are compensated on the basis of the benefits they bring to the class." *Id*. at 1.  She also stated that the settlement would be fair if "all class members' adapters are guaranteed for three years," which, she failed to understand, they are. *Id*.  Notably, Newhouse disclaimed the unworkable precept "that the settlement was required to fully compensate class members no matter how long they have owned their adapter."[3]

In any event, proof of a frayed or non-working adapter is a reasonable requirement that the parties negotiated to avoid invalid claims:  adapters may fail for many reasons, or may simply be misplaced.  Moreover, all settlements are the product of compromise:  it is not a valid criticism simply to insist that the settlement could have been different or better.[4]

---

[1] *See* Newhouse Obj. II at 16 (Dkt. No. 248).

[2] *See* Newhouse Obj. I (Dkt. No. 85) (attached hereto as Exhibit A).

[3] *Id*. at 15.  Indeed, Newhouse did not even state in her original objection that her adapter frayed, or that she believed she was entitled to any relief.  She only stated that she purchased a MacBook computer in August 2006, and an adapter in August 2010.  *See* Ex. A (Dkt. No. 85-1).

[4] *Linney v. Cellular Alaska P'ship*, 151 F.3d, 1234, 1242 (9th Cir. 1998) (internal quotations omitted) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."); *Officers for Justice v. Civil Service Comm.*, 688 F.2d 615, 625 (9th Cir. 1982) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

MEHRI & SKALET, PLLC

1    Second, Newhouse insists that Class Counsel's lodestar-based fee request should be

2    reduced based on her flawed valuation of the settlement.  If there is a case where the fee award

3    should be reduced *below lodestar* based on the results obtained, this is not that case.[5]   The

4    settlement conferred substantial cash and replacement benefits on the class.  It is undisputed that

5    the settlement and notice were the cause of a dramatic rise in replacement adapter claims, which

6    were headed towards *zero* before notice went out, in addition to the substantial claims for cash

7    reimbursement.  Newhouse's only criticism of class counsel's lodestar is that the lodestar has

8    gone up since December 2011, when Plaintiffs first petitioned for fees.  But this is because the

9    original lodestar does not include the time Plaintiffs spent moving for final approval in 2012,

10   including their response to the varied arguments of Newhouse and other objectors, and on their

11   renewed motion for final approval in 2014.

12   Last, the Ninth Circuit's holding in *Bluetooth* does not support a denial of final approval

13   of the settlement or reduction of the fee award.  First, the requested fee is far from

14   disproportionate to the value conferred on the class.  Second, the fact that this fee petition is

15   uncontested (what *Bluetooth* calls a "clear sailing" agreement) is hardly unusual, because

16   settling parties often agree that class counsel are entitled to reasonable attorney fees.  *Bluetooth*

17   only instructs that the Court should examine the record for any evidence of collusion.  Newhouse

18   has failed to propound any such evidence, because there is none.  It is questionable whether the

19   third and last *Bluetooth* factor, the "reverter," is a pertinent inquiry in a non-common fund case

20   with uncapped claims.[6]   Newhouse does not explain how these unawarded fees, which are

21   coming from Apple, not a fund, should be allocated among a class of 9.6 million people.

22   While the record reflects that the District Court did not "rubber stamp" the settlement,

23   but rather carefully reviewed the substance and value of the settlement reached in this matter,

24

25   [5] *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1029 & n.11 (9th Cir. 2000) (citing *Quesada v. Thomason,* 850 F.2d 537, 540 (9th Cir. 1988)) (it is an abuse of discretion to reduce a fee award below lodestar on the basis that the damages are small).

26   [6] *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),* 654 F.3d 935, 947 (9th Cir. 2011) ("when the parties arrange for fees not awarded to revert to defendants rather than be added to the ***class fund***").

27

28

MEHRI & SKALET, PLLC

1   scrutinized the relief and notice program, ordered the parties to modify the notice and claim

2   process before notice went out, and considered objections to and heard arguments about the

3   fairness of the settlement, the Court did not set forth its reasoning in its original final approval

4   order.  As Plaintiffs explained in their original final approval briefing, and as this Court correctly

5   found after full briefing and argument, the settlement satisfies the Ninth Circuit standards for

6   final approval, and the requested fees are reasonable by any measure.  Nothing in Newhouse's

7   objection supports denial of Plaintiffs' motion.  Law and policy encourage the reasonable

8   settlement of class claims, and that is what the parties have achieved here.  The settlement

9   provides tremendous relief for the class, and should be approved in its entirety.

10  **I.      THE SETTLEMENT SATISFIES RULE 23(a).**

11  Newhouse has conceded that the settlement is fair, reasonable and adequate under the

12  *Churchill Village* factors.[7]  Yet she contends that the "structure" of the settlement, which

13  requires class members to present proof that they had a frayed adapter, creates a "donut hole"

14  that renders the class uncertifiable under the typicality and commonality requirements of Rule

15  23(a), or requires subclassing of individuals who enjoyed four years of use and did not retain

16  their adapters.  This argument strains credulity.  Newhouse did not raise this complaint in her

17  original objection.  She only objected on the mistaken perception that the settlement did not

18  provide (at least) three years of relief for all purchases, which it does.  *See* Ex. A.

19  One generous component of this settlement is that all subject adapters, even those

20  purchased at the beginning of the product run in 2006, were eligible for a replacement within

21  180 days of notice of the settlement in November 2011, ensuring that all class members could

22  get at least three years of use out of their products.[8]  Newhouse's adapter did not fail within the

23  time period for reimbursement, and it appears from the declaration she submitted after final

---

[7] *See* Newhouse Obj. II at 16 ("Newhouse is not asking for a reweighing of the *Churchill Village* factors, which go to the merits of the underlying litigation and the total size of the settlement benefit.").

[8] A tremendous benefit to consumers whose adapters came with only a one year warranty (for the adapter that came bundled with their laptop) or 90-day warranty (for any stand-alone replacement adapter purchased).

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

1    approval that she discarded her original adapter.  The reasonable requirement that one must

2    produce a frayed adapter to obtain a replacement does not render a settlement unfair or create

3    an "intra-class conflict."[9]  The parties have repeatedly explained that adapters fail for all sorts

4    of reasons, and some adapters may not fail at all.  It is without merit to fix on a generous claims

5    provision and assert that class members who cannot meet it belong in a special subclass requiring

6    separate representation.  Courts reject the unworkable precept that sub-classing or separate

7    representation is necessary in such circumstances, and routinely affirm class action settlements

8    offering repair or warranty extensions notwithstanding that some class members might not

9    benefit from them.[10]

10   The Ninth Circuit recently dismissed similar objections in *In re Nvidia GPU Litigation*,

11   539 Fed. Appx. 822 (9th Cir. 2013), a product defect case where a significant part of the

12   settlement was an extended warranty.  Objectors complained that class members who discarded

13   their computers or bought replacements could not obtain relief.  The Ninth Circuit dismissed

14   this objection, stating that their remedy was to opt out to preserve their claims.  The Court of

---

[9] See *Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014): "It is appropriate for the settling parties to evaluate and balance settlement terms based on their reasonable view of the issues in the case and 'there is no rule that settlements [must] benefit all class members equally.'"  *Id.* at *6 (alteration in original).  "Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms."  *Id.* at *7.

[10] *See generally In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009) (affirming district court's refusal to create subclasses or require separate representation:  "simply because the relief varied among the different groups of class members did not demonstrate that they were conflicting or antagonistic interests within the class"); *Lundell v. Dell*, Case No. 05-3970 JW/RS, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006) (approving settlement where extended warranty remedy was not available to those who no longer owned computer); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *3-4 (S.D.N.Y. May 1, 2008) (extended warranty on TV component parts, reimbursement of repair costs); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 743 (E.D. Tex. 2007) (extended warranty on cars, reimbursement of repair costs); *Trew v. Volvo Cars of N. Am., LLC*, 2007 WL 2239210, at *1 (E.D. Cal. July 31, 2007) (extended warranty on car component parts, reimbursement of repair costs); *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *5-6 (M.D. Fla. Sept. 13, 2006) (extended warranty extension on refrigerators, reimbursement of repair costs); *In re Mego Corp. Sec. Litig*, 213 F.3d 454, 463 (9th Cir. 2000) (settlement was fair, adequate and reasonable even if some class members were unable to participate).

1   Appeals further concluded that a documentation requirement was a reasonable provision to

2   prevent against fraud.[11]

3        It is well settled that Courts do not renegotiate the terms of settlement agreements.[12] The

4   three-year time frame and the documentation requirement need not be the very best settlement

5   terms imaginable for the settlement to be fair, reasonable and adequate.  As one court in this

6   Circuit has stated, Newhouse "does not propose an alternative non-arbitrary cut-off or a better

7   method the parties should have used to calculate the cut-off, and the Court finds nothing

8   unreasonable or unfair about this term."[13]

9   **II.    PLAINTIFFS' FEE PETITION SHOULD BE APPROVED BY THE COURT**

10       Newhouse argues that the Court should reduce the proposed fee so that it is no more than

11   25 percent of her (mistaken) valuation of the settlement.  That is not a correct recitation of the

12   law, and it reflects a flawed valuation of the settlement.  The parties and Newhouse all agree

13   that there is no common fund here.  *See* Ex. A at 15.  Where the defendant has agreed to pay

14   attorneys' fees separate and apart from class relief, the lodestar/multiplier method is

15   appropriate.[14]  Even if the Court did employ a common fund approach to value the settlement,

16   it would fully support the fee request.  The Ninth Circuit stated that this Court, in its discretion,

17   could examine the relief obtained as a cross-check on the reasonableness of the requested fee.

18

19

---

20   [11] *Id.* at 824.  The requirement that class members present their adapters to get a replacement is
21   "a reasonable barrier to entry that minimizes the incentive and opportunity for fraudulent
     claims." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *18 (N.D. Cal. Mar. 5,
     2010). *See also In re WorldCom, Inc.*, 347 B.R. 123, 153 (Bankr. S.D.N.Y. 2006) ("As class
22   members would be forced to offer this proof at trial, it is not unreasonable to require it of them
     in a settlement[.]").

23   [12] *Dennis v. Kellogg* Co., 697 F.3d 858, 868 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026)
24   ("'It is the settlement taken as a whole, rather than the individual component parts, that must be
     examined for overall fairness,' and we cannot 'delete, modify or substitute certain provisions.
25   The settlement must stand or fall in its entirety.'").

     [13] *Shames v. Hertz*, 2012 U.S. Dist. LEXIS 158577, at *32 (S.D. Cal. Nov. 5, 2012).

26   [14] *See Hanlon,* 150 F.3d at 1029; *Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008
27   WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008); *In re Consumer Privacy Cases,* 175 Cal. App. 4th
     at 556-57.

28

---

MEHRI & SKALET, PLLC

*In re MagSafe Apple Power Adapter Litig.*, 2014 U.S. App. LEXIS 7708, at \*13 (9th Cir. Cal. 2014).

The parties have described the relief provided by the settlement in their opening briefs. The requested fee at most would fall almost exactly at the 25% benchmark, and it is well under that if one considers the relief made *available* to the class. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-2069, 2011 WL 31266, at \*5 n.5 (N.D. Cal. Jan. 5, 2011). This case has little if any resemblance to the proposed *Bluetooth* settlement, where most of the putative fund went towards attorney fees, notice costs and *cy pres* relief. The touchstone of this analysis is whether the requested fee is reasonable in light of the results obtained, and here it clearly is. Contrary to Newhouse's representations, *Bluetooth* is not a game of "gotcha" where the presence of a warning sign means that a penalty should be assessed. Rather, when confronted with these warning signs, the court's duty is to "inquire further," and "examine the fee provision in light of the rest of the agreement." 654 F.3d at 947. Consideration of the *Bluetooth* factors only confirms that the settlement and the requested fees are reasonable.

## A. Newhouse Errs In Her Valuation of the Settlement.

The *Bluetooth* court was concerned about settlements where the class received little or nothing and class counsel were amply compensated.[15] That is hardly the case here. *Bluetooth* counsels that parties and the court should consider the overall fairness of the settlement and the fee, not insist on mathematical precision or nothing at all. Indeed, that is exactly what the Ninth Circuit stated in its most recent pronouncement on the subject, in a case where the injunctive relief was less conducive to monetization:

> Objectors argue that the district court shouldn't have awarded attorneys' fees based on the injunctive relief obtained in the settlement. They contend that the value of the injunctive relief is too speculative to be ascertainable and, in any event, benefits "society at large" rather than the class members themselves. Objectors'

---

[15] *See Bluetooth*, 654 F.3d at 947 (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) (class representative got $3,000, class members got nothing, and class counsel would presumably receive fees relative to lodestar); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000) ("Crawford and his attorney were paid handsomely to go away; the other class members received nothing")).

argument relies on the incorrect premise that the district court was, or should have been, using a "percentage of the fund" calculation method, in which fees are typically limited to 25% of the overall value of a settlement fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). However, the district court here had discretion to instead award attorneys' fees using the lodestar method. *Id.* at 972. Under the lodestar method, a court need not determine the "value" of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent representation or quality of work. Contrary to objectors' contentions, the injunctive relief in this case is meaningful and consistent with the relief requested in plaintiffs' complaint: As a result of the settlement, Ferrero must include extra nutritional information on Nutella's packaging and follow new protocols in its Nutella advertising. The district court did not abuse its discretion in approving a settlement that compensated counsel under the lodestar method for procuring such relief.[16]

Newhouse's valuation of the injunctive relief, on the basis of which she insists that the Court should reduce class counsel's requested fee, is not even internally consistent. She first insists that because Apple had a page on its website (which customers would only find if they specifically went looking for it) stating that Apple would replace adapters that showed signs of fraying, Plaintiffs cannot take credit for the claims made after notice was disseminated: "A rooster cannot take credit for the sun rising. And class counsel cannot take credit for a program their settlement neither established nor improved, even by adding a gratuitous injunction." Newhouse Obj. II at 21. The graph of replacement claims that the parties submitted with their opening briefs shows how wrong that statement is. In short, the rooster in this scenario deserves a lot of credit:

---

[16] *Hohenberg v. Drey (In re Ferrero Litig.)*, 2014 U.S. App. LEXIS 13780, at *3-5 (9th Cir. July 16, 2014). *See also Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) (approving fees under the lodestar method pursuant to *Bluetooth* with 1.23 multiplier in settlement combining monetary and in-kind relief).



MEHRI & SKALET, PLLC

Moreover, Newhouse simply ignores Ninth Circuit authority Plaintiffs submitted with their opening brief, for the proposition that an injunction is not "gratuitous" where there is a judicially enforceable agreement that locks a defendant into providing relief to the class.[17]

Newhouse then concedes that her "rooster" argument is untenable: "one can reasonably infer from the increase in the number of replacements that [] notice increased awareness of the Replacement Program and led at least some class members to make claims that they would not have made." *Id.* at 22. Thus, Newhouse can only argue about the number of adapter claims that can be attributed to the settlement: she concedes that a large majority of adapter claims, 59,536, *are* attributable to the settlement. That concession aside, her calculations and logic plainly misrepresent the facts. Apple's claims data show that adapter claims were dwindling towards *zero* before court-ordered notice went out in November 2011. But for this settlement, there would have been very few adapter claims at all, and there were far more claims after notice than there ever were before. It is illogical to compare the number of claims in the before period to the after period, when the trend line indicates that very few adapter claims would have been made, but that is all Newhouse has to go on here.

---

[17] *See In re Netflix Privacy Litig.*, Case No. 5:11-CV-379 EJD, 2013 U.S. Dist. LEXIS 37286, *38-39 (N.D. Cal. Mar. 18, 2013) (citing *Lane v. Facebook,* 696 F.3d 811, 825 (9th Cir. 2012)) (rejecting objectors' argument that injunctive relief is not properly credited to the settlement: "these Objections do not sufficiently show that the injunctive relief is inherently unfair so as to disapprove of the Settlement Agreement.")

MEHRI & SKALET, PLLC

Newhouse's assertion that Apple endeavored to "steer the settlement away from cash refunds for class members like Ms. Newhouse and towards in-kind replacements" is also meritless.  It is evident that the parties started from the principle of ensuring that all class members obtained three years of use out of their adapters, a principle that Newhouse endorsed in her original objection to this Court, unaware that the parties had achieved exactly that.  And of course the parties had no idea how many claims would be made under either component of the settlement, so the insinuation that Apple was self-serving in this regard has no support.

Newhouse next questions whether $79 is the correct value to place on a replacement product that Apple sells for $79.  She cites a coupon case, *In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001), for the proposition that "compensation in kind is worth less than cash of the same nominal value." *Id*. at 748.  But that case supports Plaintiffs here: the Seventh Circuit reasoned that one would not attribute the full face value of the coupons provided in valuing settlement, but only the coupons that were actually *claimed*.  *See id.* at 748.  Indeed, that is what the Class Action Fairness Act instructs:  "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are *redeemed*." 28 U.S.C. § 1712(a) (emphasis added).  CAFA does not require or even permit an inquiry into the cost of a coupon to the defendant, as Newhouse demands, and it is clear from her analysis what an unworkable standard that would be.  Similarly, the Seventh Circuit did not ask what the $6 coupon cost the defendant, only its value to the class member.  Indeed, Plaintiffs have provided a completely free replacement product, not just a discount off a future purchase.  If retail value is a reasonable value of coupons, which may well generate additional cash purchases and thus benefit the defendant, it is surely a reasonable valuation of free replacement products for the class.[18]  And it is the proper remedy for a warranty claim.

---

[18] See *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning in an individual case against an "undesirable emphasis" on "the importance of the recovery of damages in civil rights litigation" that might "shortchange efforts to seek effective injunctive or declaratory relief").

1    Newhouse next faults Plaintiffs for including the reasonable cost of settlement notice in

2    the class benefit as "double-counting," even though that is precisely what the Ninth Circuit has

3    stated is reasonable in *Staton v. Boeing,* 327 F.3d 938 (9th Cir. 2003).  Newhouse dismisses

4    *Staton* as "dicta," and instead insists that this court adopt the Seventh Circuit's position in

5    *Redman v. RadioShack Corp.*, 2014 U.S. App. LEXIS 18181 (7th Cir. Sep. 19, 2014).  But

6    *Redman* expressly acknowledged that *Staton* stood as authority to the contrary, and that it was

7    taking a different view.  *See id.* at *15-16.  *Staton* squarely analyzed this issue, in a section titled

8    the "Treatment of Costs of Litigation," and concluded that the district court can reasonably

9    include the cost of notice in calculating the value of the putative fund:

> The post-settlement cost of providing notice to the class can
> reasonably be considered a benefit to the class. Also, where, as
> here, it is the defendant who pays for the notice, we may assume
> that the inherent incentives to minimize the cost involved are
> sufficient. Additionally, the court's supervision of the form of
> notice and the method of communication assures that the costs
> expended are contained. We conclude that where the defendant
> pays the justifiable cost of notice to the class -- but not, as here,
> an excessive cost -- it is reasonable (although certainly not
> required) to include that cost in a putative common fund
> benefiting the plaintiffs for all purposes, including the calculation
> of attorneys' fees.[19]

---

[19] *Staton v. Boeing Co.*, 327 F.3d 938, 974-975 (9th Cir. 2003); *Powers v. Eichen,* 229 F.3d 1249, 1258 (9th Cir. 2000) (rejecting same argument by professional objector; "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable"); *see also Jo v. Natura Pet Prods.*, Case No. 09-2619 SBA, 2012 U.S. Dist. LEXIS 128615, at *23 (N.D. Cal. Sept. 10, 2012); *Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *107-108 (C.D. Cal. Nov. 23, 2011) ("Plaintiffs successfully negotiated a provision that required defendants to bear the cost of notice and settlement administration.  In doing so, they prevented these costs from being paid in a manner that reduced the Settlement Fund, and thus ensured that more money would be available to pay claimants. This conferred a concrete benefit on the class. The court thus concludes that it is proper to include them in the value of the class action settlement."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (rejecting same argument, citing *Powers*).  "To calculate appropriate attorneys' fees under the constructive common fund method, the court looks to the maximum settlement amount that could be claimed." *Evans v. Linden Research, Inc.,* 2014 U.S. Dist. LEXIS 59432, at *20-21 (N.D. Cal. April 29, 2014).  "This includes *all* funds available to the eligible claimants, whether claimed or not." *Id.* at *21 (emphasis in original).  It also includes attorneys' fees and class administration costs." *Id.* (awarding 25% of the *entire* settlement value received by the class).

MEHRI & SKALET, PLLC

MEHRI & SKALET, PLLC

There is no basis to doubt that notice in this case was a distinct benefit to the class; even Newhouse concedes that it coincided with a dramatic spike in replacement adapter claims, and that at least 59,535 adapters are creditable to the settlement.   Newhouse Obj. II at 22.    In addition, the *Redman* court reviewed a settlement in which administrative and notice costs of $2.2 million constituted over *half* of the "putative fund," which may have spurred its concern about whether those notice costs really benefited the class.  *See id.* at *14.  That is very different from this case, where the notice costs ($792,464) were under 6.6% percent of the putative fund, and led to millions of dollars of replacement and cash reimbursement claims, which account for over 67% of the putative fund.

Newhouse appears to argue that a class settlement can only be fair if no *Bluetooth* warning sign is present, but that is not its holding.  It is the same argument that Newhouse urged on the Ninth Circuit in this case, and which it ignored in its opinion, and merely reiterated that *Bluetooth* required an inquiry into reasonableness.  First, Newhouse insists that the "kicker" must be eliminated.[20]  Neither *Bluetooth* nor any other case instructs or requires that.  *Bluetooth* addressed the question of the "kicker" warning sign in a common fund case where class counsel are claiming funds that could also go to the class.  In this case, the settlement was an *uncapped* claims-made settlement, which provided 100 percent cash compensation to in-warranty failure claims, substantial amounts to claims within three years of purchase, and free replacement products.[21]  Neither *Bluetooth* nor any other case stands for such an unrealistic requirement.  Indeed, the ALI Principles, which Newhouse insists that this Court follow, advise against this even in common fund cases where "the amounts involved are too small to make individual

---

[20] Newhouse cites *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) for this proposition.  That was not its holding.  The settlement in that case suffered from multiple substantive and ethical infirmities.  There was no indication that the kicker, in and of itself, would have merited reversal of settlement approval.  As *Bluetooth* instructs, one should examine the kicker in the context of the overall settlement.

[21] *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, at *20-21 (N.D. Cal. June 27, 2014) (approving fees that slightly exceeded 30% of fund) ("the Court finds that even with the reversion of unpaid fees to Defendant, the Agreement is fair and reasonable.").

distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair."[22]

"Clear sailing" agreements may prompt a court to more carefully examine the settlement, but they are also reasonable and even desirable aspects of a settlement. The parties were following the rulings of the Supreme Court in *Hensley v. Eckerhart*, and the Ninth Circuit in *Staton v. Boeing*, which favor negotiation in connection with a reasonable, lodestar-based fee award. Indeed, Rule 23(h) explicitly states that the court "may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement." In *Staton*, the Ninth Circuit approved a process whereby "fees were negotiated only after the merits agreement was concluded and a mediator present at the negotiations provided assurances to the Court 'that the fee was not the result of collusion or sacrifice of the interest of the Class.'"[23] That is exactly what the parties did here. Courts examining this factor routinely examine the record and conclude that the existence of a clear sailing agreement does not negatively reflect on the reasonableness of the fee or the settlement. A clear sailing "provision is appropriate when, as here, it does not impact the substantive benefits offered to the class."[24] The idea that every fee petition must be contested, where the parties may well agree that reasonable compensation is appropriate, is neither desirable nor an efficient use of the courts.

**B.    Newhouse's Allegation of a "Throttled" Claim Process Is Meritless.**

Newhouse contends that the settlement procedure was not adequate because it did not include an online claims process. Newhouse's counsel, the Center for Class Action Fairness, made this same objection in *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio

---

[22] ALI Principles § 3.07(b) (2010), *quoted in In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 165225, at *65-66 (S.D. Cal. Nov. 19, 2013).

[23] *Id.* at 970 n.20 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)); *accord Eisen*, 2014 WL 439006, at *10 ("fee discussions took place after several months of negotiations over class settlement benefits, in a separate mediation session before a qualified and highly experienced mediator")

[24] *Eisen*, 2014 WL 439006, at *10 (citing *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, at *34 (S.D. Cal. Nov. 5, 2012)) ("clear sailing" provision was not collusive because attorneys' fees were separately negotiated and did not impact the benefits made available to the class).

2010).  The Court rejected his argument outright, responding: "Clearly, a mandate that claims be only submitted online would be subject to objection from those not sufficiently computer savvy to participate easily in the process.  Choosing one claims processing mechanism that involves simple use of the mails is not unreasonable. The settlement must be reasonable and adequate, not perfect." *Id.* at 785.

Nonetheless, Newhouse accuses the parties of *colluding* to require a paper claims process, a claims process that this Court reviewed, modified, and approved before notice went out, in order to "throttle" claims.  Baseless, undignified aspersions aside, this is a boilerplate argument that serial objectors often make and courts routinely reject, as did the court in *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, at *31-32 (S.D. Cal. Nov. 5, 2012):

> Objector Michael J. Schulz lodges several objections. First, he believes the "claims process is too cumbersome" because the Rental Car Defendants know who is in the class and could "send the cash option to everyone in the class who does not make a claim requesting the non-cash option." [Doc. No. 339.] However, there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements. *See, e.g., Guschausky v. Am. Family Life Assur. Co.*, 851 F. Supp. 2d 1252, 1259 (D. Mont. 2012); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash. 2009) (approving claims-made process where class members were required to "answer two reasonable claim forms and submit a total of 10 photographs of the mold spotting."); *Lemus v. H&R Block Enters.* LLC, 2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Morales v. Stevco*, Inc., 2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) (recommending final approval of claims-made settlement); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797 (granting final approval of claims-made settlement) (N.D. Cal. Feb. 6, 2012).

Indeed, mail-in claims forms are the norm.[25]  The authority Newhouse cites for the proposition that an online claims process would increase the claims rate undermines her argument:  "In situations when the defendant can provide or match certain class member data to online claims, or when there is no documentation required of the class member, online claims-

---

[25] *See, e.g., Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208, at *101 (N.D. Cal. Feb. 7, 2008).

MEHRI & SKALET, PLLC

filing tends to increase the overall claims rate[.]"[26]  Apple has made clear that it *cannot* provide all of the necessary identifying information, and class members need to provide some documentation.  Newhouse insists that even though the District Court approved this claims process and form prior to dissemination of notice, it should now reverse course, require a new claims process, and require Apple to re-notice the class.  Like Newhouse's other arguments, this one is unworkable and has no merit.

### C.   Plaintiffs' Lodestar Accrued Since December 2011 Is Reasonable.

Regarding the calculation of the lodestar, Newhouse does not contend that a multiplier of 1.2 or even 1.5 is inappropriate under the *Kerr* factors.  The only issue Newhouse has raised is the increase in the lodestar since December 2011, when Plaintiffs filed their initial fee petition.  What she fails to apprehend is that this petition did not include any of the time spent in 2012 on the motion for final approval, the response to objectors, and the final approval hearing, as well as post-appeal work in 2014.  Class Counsel set out their time in connection with appellate bonds and appeals separately, which time they reasonably expended in affirming the reasonableness of the settlement, but they did not include appeal time in the lodestar.  By any measure, the calculation of the lodestar yields a minimal multiplier that is more than justified under governing criteria.

The time Plaintiffs expended was also "reasonable in relation to the success achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  This was not a case, like that discussed in *Hensley*, where plaintiffs prevailed on only one of their six claims and "a fee award based on the claimed hours clearly would have been excessive."  *Id.*  All the hours were necessarily expended in relation to Plaintiffs' claims, which all centered around the allegedly defective product.

---

[26]  http://www.rustconsulting.com/Portals/0/pdf/Monograph_ClaimsFilingRates.pdf  (cited  in Newhouse Br. I at 37 n.14).

MEHRI & SKALET, PLLC

**III.    THE COURT MAY DISREGARD THE SELF-SERVING STATEMENTS OF THE CENTER FOR CLASS ACTION FAIRNESS**

The Center for Class Action Fairness, Newhouse's counsel, argues at length about its pure pro-consumer motives, and even the liberal childhood leanings of its lead counsel.  In their previous response to Newhouse's objections, Plaintiffs supplied ample evidence (Dkt. No. 97) casting doubt on those assertions:   CCAF receives its funding from "Donors Trust," an organization that funnels anonymous tax-deductible donations to right-wing causes, and Plaintiffs cited case law criticizing CCAF for briefs that were "long on ideology and short on law."[27]  However, this debate appears irrelevant to what the Ninth Circuit instructed the Court to consider on remand.  Indeed, the Ninth Circuit did not credit any of the objectors' arguments concerning the fairness of the settlement, or their insistence on an expansion of the *Bluetooth* holding, and simply instructed this Court to use the existing standards for assessing reasonableness, and to reflect its analysis in a written opinion and order.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order finally approving the proposed settlement and request for $3.1 million in attorneys' fees and expenses.  In addition, the Court should award each Class representative a $5,000 service award to reward them for their time and effort in this successful action.  These requests are reasonable and appropriate, and will in no way reduce the benefits provided to the settlement Class.

Dated: October 6, 2014                    Respectfully submitted,

By: s/ *Craig L. Briskin*
_____

STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
TARYN WILGUS NULL (Bar No. 254445)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com
cbriskin@findjustice.com
twilgusnull@findjustice.com

---

[27] *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010).

MEHRI & SKALET, PLLC

ZELDES HAEGGQUIST & ECK, LLP
HELEN I. ZELDES (220051)
AARON M. OLSEN (259923)
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

LINER LLP
ANGELA C. AGRUSA (131337)
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503
Telephone:  (310) 500-3500
Facsimile:  (310) 500-3501
aagrusa@linerlaw.com

MCNICHOLAS & MCNICHOLAS LLP
PATRICK MCNICHOLAS (125868)
10866 Wilshire Boulevard Suite 1400
Los Angeles, CA 90024-4338
Telephone: (310) 474-1582
Facsimile:  (310) 475-7871
pmc@mcnicholaslaw.com

Attorneys for Plaintiffs and Interim Class
Counsel

CERTIFICATE OF SERVICE

   I hereby certify that on October 6, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  I further hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List (listed below).

   I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 6, 2014.

                                          s/*Craig L. Briskin*

Robert Gaudet, Esq. (*Pro se*)
800 Fifth Avenue, Suite 4100
Seattle, WA  98104

MEHRI & SKALET, PLLC