UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE MAGSAFE APPLE POWER
ADAPTER LITIGATION

Case No. 5:09-CV-01911-EJD

**ORDER GRANTING PLAINTIFFS'
MOTION TO AMEND; GRANTING
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT;
GRANTING IN PART AND DENYING
IN PART MOTION FOR ATTORNEYS'
FEES AND COSTS**

**[Re: Dkt. Nos. 238, 247]**

The instant case is a consumer class action suit brought by Naotaka Kitagawa, Timothy J. Broad, Jesse Reisman, Tracey Hackwith, and Michael Martin (collectively, "Plaintiffs") against Defendant Apple, Inc. ("Apple"). Presently before the court are Plaintiffs' Motion to Amend Renewed Motions for Final Approval of Class Action Settlement and Fees and Costs, Motion for Final Approval of Class Action Settlement, and Motion for Attorneys' Fees and Costs. See Dkt. Nos. 238, 247. For the reasons set forth below, the Motion to Amend is GRANTED, the Motion for Final Approval of Class Action Settlement is GRANTED, and the Motion for Attorneys' Fees and Costs is GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Background

In February 2006, Apple began designing, manufacturing, and selling MagSafe Adapters ("Adapters") to consumers throughout the United States for use with its new MacBook series

laptop computers. Dkt. No. 50, Am. Compl. at ¶ 18. The MacBook was the first generation of this new series and the MacBook Pro was the second generation (collectively, the "Subject Computers"). Id. The Adapters were sold as original equipment with its Subject Computers, as separate accessories for them, and as replacements. Id. Apple represented its 85W and 60W MagSafe Adapters as a magnetic connection cord that "simply breaks cleanly away, without damage to either the cord or the system." Id. at ¶ 20. The cord was "[d]esigned to be the perfect traveling companion" and "to withstand the rigors of life on the go." Id. at ¶¶ 20-21. With the purchase of a MacBook or MacBook Pro, Apple provided Plaintiffs and each purchaser an express one-year warranty. Id. at ¶ 24. The warranty ensured that if a hardware defect arose and a valid claim was received, Apple would repair the defect, exchange the product with a new product, or refund the purchase price. Id.

Plaintiffs allege that the Adapters had problems of fraying, sparking, melting and overheating. Id. at ¶ 25. The Adapters frayed at the end of the cable going in to the magnetic connector, which connects to the computer. Id. at ¶ 30. These exposed wires turned the Adapters into a fire and electrical shock hazard for Apple's customers. Id. Apple allegedly never sent a notice, warning, or recall to its users alerting them of these problems. Id. at ¶ 25. Apple offered an extended warranty program, but this information was allegedly buried on its website and did not guarantee a replacement in all instances of "sparking." Id. Moreover, Apple allegedly replaced the defective Adapters with an identical product containing the same design defects. Id.

**B.      Procedural History**

On May 1, 2009, Plaintiffs Kitagawa, Broad, and Reisman commenced this action (the "Kitagawa action") on behalf of over 9.6 million consumers who purchased Apple MacBook and MacBook Pro computers that shipped with an alleged defective Adapter and/or purchased a standalone Adapter. See Dkt. No. 1. On May 15, 2009, Plaintiffs Hackwith and Martin filed a similar complaint in the United States District Court for the Central District of California (the "Hackwith action"). See Dkt. No. 247, Mot. at 3. In November 2009, the Hackwith action was

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

transferred to the Northern District of California and consolidated with the <u>Kitagawa</u> action.  <u>See</u>

Dkt. No. 43.  Collectively, Plaintiffs filed a consolidated complaint on December 4, 2009, and an

amended consolidated complaint on January 19, 2010.  <u>See</u> Dkt. Nos. 44, 50.  The January 19

complaint is the operative complaint ("Complaint").  Plaintiffs, on behalf of the class, assert the

following claims against Apple: (1) violation of California Business and Professions Code §

17200; (2) violation of the Consumer Legal Remedies Act, California Civil Code § 1750 <u>et seq.</u>;

(3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1); (4) breach of express

warranty; (5) breach of implied warranty of fitness for a particular purpose; (6) breach of implied

warranty of merchantability; (7) violation of the Song-Beverly Consumer Warranty Act,

California Civil Code § 1791 <u>et seq.</u>; (8) negligence; (9) negligent design and failure to warn; (10)

money had and received; (11) unjust enrichment; (12) untrue and misleading advertisement in

violation of California Business and Professions Code § 1750 <u>et seq.</u>; (13) permanent injunctive

relief; and (14) declaratory relief.  Dkt. No. 50, Compl. at ¶¶ 55-145.

     1.     <u>Settlement and Preliminary Approval</u>

     After the exchange of discovery, expert reports, and formal and informal meetings of

counsel, the parties attempted to settle this matter through mediation.  Dkt. No. 247, Mot. at 4.  In

August 2010, the parties met with retired judge Fern Smith.  <u>Id</u>.  After two full days of mediation,

the parties reached a settlement agreement and adopted the mediator's proposal regarding

attorneys' fees and expenses.  <u>Id</u>.

     In August 2011, the parties submitted a motion for preliminary approval of class action

settlement.  <u>See</u> Dkt. No. 70.  Judge James Ware held a preliminary approval hearing and, in

September 2011, preliminarily approved the class settlement.  <u>See</u> Dkt. Nos. 76, 82.  Notice was

sent to class members.  Mot. at 5.  Out of a class of 9.6 million, 11 individuals filed objections

before the deadline.  <u>Id</u>. at 6.  In December 2011, Plaintiffs filed a motion for attorneys' fees.  <u>See</u>

Dkt. No. 83.

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

2.    Final Approval

In February 2012, Judge Ware held a hearing on Plaintiffs' motion for final approval of the class settlement and Plaintiffs' motion for attorneys' fees. See Dkt. No. 104. On March 8, 2012, Judge Ware issued an order ("Final Approval Order") approving the class settlement and awarding Plaintiffs' attorneys' fees, reimbursement of expenses, and incentive awards. See Dkt. No. 107. Final judgment was entered on April 2, 2012. See Dkt. No. 110. Two objectors filed notices of appeal—Robert Gaudet, Jr. and Marie Gryphon (now "Marie Newhouse"). See Dkt. Nos. 112, 119.

3.    Bond Motion

To secure Plaintiffs' costs on appeal, Judge Ware issued an order requiring the objectors to post bonds of $15,000 each under Federal Rule of Appellate Procedure 7. See Dkt. No. 161. Judge Ware also ordered the objectors to appear for depositions to establish their membership in the class, and to establish whether they were capable of posting a bond of up to $25,000. See id. Objector Gaudet, Jr., refused to post a bond in any amount, thus Judge Ware held him in contempt of court and sanctioned him by striking his objection. See Dkt. No. 202.

4.    The Ninth Circuit's Decision

On April 24, 2014, the Ninth Circuit reversed the judgment, vacated the Final Approval Order, and remanded the case for further proceedings. See In re Magsafe Apple Power Adapter Litig., 571 Fed. Appx. 560, 565-66 (9th Cir. 2014). The Ninth Circuit held: "The district court abused its discretion in approving both the settlement agreement and attorneys' fee award because it failed to follow the process set out in Bluetooth." Id. at 564 (referring to In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935 (9th Cir. 2011)).

Upon remand, this action was reassigned to the undersigned judge. See Dkt. No. 214. Plaintiffs filed the instant renewed motions for final approval of class action settlement, and attorneys' fees and costs.

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

## II.    LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Id. When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). "[J]udges have the responsibility of ensuring fairness to all members of the class presented for certification." Id.

The law favors the compromise and settlement of class action suits. See, e.g., Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

First, the district court must assess whether a class exists under Federal Rule of Civil Procedure 23(a) and (b). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997). Second, the district court must carefully consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable" pursuant to Federal Rule of Civil Procedure 23(e), recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citations omitted).

An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement. United States v. State of Oregon, 913 F.2d 576, 581 (9th Cir. 1990). The court iterates that the proper standard for approval of the proposed settlement is whether it is fair, reasonable, adequate, and free from

5

collusion—not whether the class members could have received a better deal in exchange for the release of their claims. See Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

## III. THE PROPOSED SETTLEMENT AGREEMENT

After mediation overseen by Judge Smith, the parties reached a proposed settlement agreement executed on July 1, 2011 ("Settlement Agreement"). See Dkt. No. 240, Decl. of Craig L. Briskin, Exh. 1 at 2 ("Settlement Agreement"). The key terms are as follows:

**Class Definition.** The class is defined as:

> All United States residents who (1) are the original owners of an Apple MacBook or MacBook Pro computer that shipped with a 60W or 85W MagSafe "MPM-1" Power Adapter ("Subject Computers") and/or (2) purchased a standalone 60W or 85W MagSafe "MPM-1" Power Adapter. The Settlement Class includes original owners who received their Subject Computer(s) as a gift. The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; and all persons who validly request exclusion from the Settlement Class.

Settlement Agreement § I(A). The size of the purported class is nearly ten million consumers. Mot. at 1.

**Cash Refund for Replacement Adapters.** Class members whose adapter showed signs of strain and who purchased a replacement adapter would receive a cash refund for the purchase of the replacement adapter. Settlement Agreement § II(A)-(C). A class member would receive $79 if the replacement adapter was purchased during the first year following purchase of a subject computer or standalone adapter, $50 if purchased during the second year, and $35 if purchased during the third year. Id. A class member could claim refunds for up to three replacement adapters per subject computer. Id. at § II(D).

In order to obtain a cash refund, a class member had to comply with three requirements. First, the class member had to submit a claim form setting forth the class member's name and

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

address, the serial number of the subject computer, the approximate month and year of purchase of the subject computer, and the approximate month and year of purchase of the replacement adapter. Id. at § II(E)(1).  Second, the class member had to provide a proof of purchase for the replacement adapter, which could include an invoice, receipt, or credit card statement.  Id. at § II(E)(3).  Third, the claim form and proof of purchase had to be submitted during the claims period—120 days from the notice date.  Id. at § II(E)(2).  The notice date is November 22, 2011; thus, the claims period was from November 22, 2011 to March 21, 2012.  See Dkt. No. 235-5, Decl. of Penelope A. Preovolos ("Preovolos Decl."), Exh. D at 8.

**Adapter Replacement Program.**  Class members whose adapter showed signs of strain could obtain a free replacement adapter.  Id. at § II(F)(1).  A replacement adapter could be claimed within three years from the date of purchase of a subject computer or standalone adapter, or could be claimed within 180 days from the notice date (until May 21, 2012), whichever is later.  Id. at § II(F)(2); see Preovolos Decl., Exh. D at 8.  While Apple agreed in the Settlement Agreement to continue the Adapter Replacement Program until December 31, 2012, it was extended until July 2013.  Id. at § II(F)(2); see Dkt. No. 236, Decl. of Allan Coulson ("Coulson Decl.") at ¶ 13.

**Settlement Administration Expenses.**  Apple would be solely responsible for making all arrangements necessary to effectuate the class notice, and for payment of the costs and expenses of the notice.  Id. at § IV(E).

**Attorneys' Fees and Costs.**  Apple agreed not to oppose a $3 million award to class counsel for attorneys' fees, and not to oppose reimbursement of up to $100,000 in verified costs and expenses.  Id. at § V(A).

**Service Award to Class Representatives.**  Apple agreed not to oppose a service award of $5,000 to each of the five class representatives.  Id.

**Release of Claims.**  All claims that the adapters are defective in that they dangerously fray, spark, prematurely fail to work, catch fire, overheat or melt, and any alleged misrepresentations or failures to disclose with respect to the adapters are released.  Id. at § VI(B).

United States District Court
Northern District of California

**IV.    RESPONSE TO CLASS NOTICE**

The class filed 16,006 valid claims for a cash refund, amounting to a total cash reimbursement of $797,757.  Mot. at 10; <u>see</u> Dkt. No. 237, Decl. of Jonathan D. Carameros ("Carameros Decl.") at ¶¶ 3-4.  Additionally, between November 2011 and July 2013, Apple provided 92,332 replacement adapters, amounting to a total value of $7,294,228 (92,332 adapters multiplied by the retail value of $79).  <u>Id.</u> at 11; <u>see</u> Coulson Decl. at ¶ 9.

Plaintiffs value the proposed settlement at $11,984,449.  <u>Id.</u> at 12.  This includes the following:

- $797,757 = Total cash refund provided to class members
- $7,294,228 = Value of replacement adapters
- $3,100,000 = Attorneys' fees, expenses, and service awards
- $792,464 = Cost of notice

**V.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT[1]**

**A.    Class Certification**

The court will first assess whether a class exists under Federal Rule of Civil Procedure 23(a) and (b).  Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Here, Plaintiffs argue that: (1) the numerosity requirement is satisfied because the approximately ten million subject computers and adapters sold renders joinder impracticable; (2) the commonality requirement is satisfied because the allegations stem from a claim of common defects in the adapters and of common misrepresentation regarding the adapter; (3) the typicality requirement is satisfied because the class representatives have similar and typical claims to the rest of the settlement class; and (4) the adequacy of representation requirement is

---

[1] On September 10, 2014, Plaintiffs filed their Renewed Motions for Final Approval of Class Action Settlement and Fees and Costs.  <u>See</u> Dkt. No. 238.  On the same day, Plaintiffs filed a Motion to Amend and submitted a corrected version of the Renewed Motions for Final Approval of Class Action Settlement and Fees and Costs.  <u>See</u> Dkt. No. 247.  Plaintiffs' Motion to Amend is GRANTED.  Plaintiffs' corrected version will be the operative motion for this order.

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

satisfied because class counsel has vigorously prosecuted this action on behalf of the class, and the parties are not aware of any conflicts of interest between class representatives and the absent class members. Mot. at 20-21. The court accepts these representations and finds them sufficient under Rule 23(a).

Under Rule 23(b)(3), a class action must meet two additional requirements: (1) common questions must "predominate over any questions affecting only individual members;" and (2) class resolution must be "superior to other available methods of fair and efficient adjudication of the controversy." Here, Plaintiffs argue that: (1) there are common class-wide issues as to the alleged defects and misrepresentations; and (2) class resolution is a superior method because the financial loss to an individual class member is relatively small, thus few would have an interest or the ability to pursue an individual case. Mot. at 21-22.

Objector Marie Newhouse objects to class certification. See Dkt. No. 248, Renewed Objection of Marie Newhouse ("Newhouse Obj.") at 17. Ms. Newhouse argues that Rules 23(a)(3) and 23(b)(3) are not met because a "donut hole" was created where certain class members, like herself, were not provided with a remedy. Id. She contends that she is precluded from receiving a cash refund because she purchased a replacement adapter beyond the three-year period, and she is precluded from obtaining a replacement adapter because she discarded her original adapter. Id. As such, Ms. Newhouse argues that the typicality requirement is not met because she has an individualized defense that does not apply to the class representatives, and there are questions of law or fact that do not predominate over questions affecting individual members. Id. at 16-17.

Ms. Newhouse's arguments, however, are not persuasive. Her particular circumstances are not sufficient to prevent class certification where the facts and issues common to the class are substantially similar. Denying certification of the present class could result in no recovery for anyone. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (the settlement "at least allows damages for some members of the class where damages might otherwise be

9

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

unobtainable for any member of the class"). If Ms. Newhouse believed that her particular circumstances significantly differed from the rest of the class, then her remedy would have been to opt out of the instant class action and pursue her own claim against Apple. See Hanlon, 150 F.3d at 1027 (if any objector thought "his or her personal claim was being sacrificed for the greater good . . . they had the right to opt-out of the class").

In sum, the requirements of Rule 23 have been satisfied. Accordingly, a class exists and is certified for settlement purposes.

**B.      Reasonableness of the Proposed Settlement Agreement**

The court will now assess whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Fed. R. Civ. P. 23(e). The factors to consider are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

In re Bluetooth, 654 F.3d at 946 (citing Churchill Vill., 361 F.3d at 575; Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). Additionally, where a settlement agreement is negotiated prior to formal class certification, the court must scrutinize for evidence of collusion between the parties or other conflicts of interest. In re Bluetooth, 654 F.3d at 946-47.

1.      Reasonableness Factors

i.      *Strength of Plaintiffs' Case*

In determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice, 688 F.2d at 625 (internal quotations omitted). There is no "particular formula by which that outcome must be tested." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009). The court may "presume that through negotiation, the [p]arties, counsel, and mediator arrived at a reasonable

10

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

range of settlement by considering Plaintiff's likelihood of recovery." Garner v. State Farm Mut. Auto. Ins. Co., 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (Wilken, J.) (citing Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Plaintiffs contend that at trial, they would have argued the adapters were defective and non-merchantable for their intended use, Apple misrepresented the product when it said that the adapters were designed to withstand being jerked out of place when subjected to sudden strain, and Apple's representations of a warranty program were belied by the experience of plaintiffs who were turned away when they tried to obtain a replacement adapter. Mot. at 14-15. Apple contends that it would have showed the adapters were highly reliable, had low failure rates, and performed without issue for the majority of users, and it would have argued that it made no misrepresentations. Dkt. No. 234 at 15. Apple further contends that Plaintiffs would have faced severe legal obstacles because Apple had already provided replacement adapters beyond the one-year warranty period, there were no actionable representations regarding the adapter, and Plaintiffs' negligence claims would have been barred by the economic loss rule that precludes claims if the product at issue did not cause personal injury or property damage. Id. at 15-16.

Given the legal challenges Plaintiffs would have faced against Apple, settlement appears to provide a better result for class members than continuing with litigation. Accordingly, this factor weighs in favor of settlement.

ii.     *Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Proceeding in this litigation in the absence of settlement poses various risks such as dismissal upon a dispositive motion, potentially potent defenses, increased costs and fees, and expiration of a substantial amount of time. Such considerations have been found to weigh heavily in favor of settlement. See Rodriguez, 563 F.3d at 966; Curtis-Bauer v. Morgan Stanley & Co., Inc., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) (Henderson, J.) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

11

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

1    Here, Plaintiffs argue that the proposed settlement eliminates the risks associated with

2  continued litigation and provides the certainty of benefits to class members through cash payments

3  or free replacement adapters.  Mot. at 15.  Given the risk of litigating for years and ultimately

4  resulting in no recovery, this factor weighs in favor of settlement.

5            iii.    *Risk of Maintaining Class Action Status Throughout Trial*

6    The notion that a district court could decertify a class at any time is one that weighs in

7  favor of settlement.  Rodriguez, 563 F.3d at 966.  Here, Plaintiffs argue that the adapters' unitary

8  design defect would make it readily amenable to class certification.  Mot. at 15.  Apple argues that

9  Plaintiffs would have faced an obstacle to class certification given that the majority of class

10 members did not suffer an injury.  Dkt. No. 234 at 17.  Given the real possibility that class

11 certification would have been denied if contested, and considering the court could decertify the

12 class even if one was certified, this factor weighs in favor of settlement.

13            iv.    *Amount Offered in Settlement*

14    Plaintiffs argue that the results obtained in this settlement are outstanding because of the

15 substantial cash relief and the robust replacement program available to all class members.  Mot. at

16 16.  Given that relief was available to most, if not all, class members, this factor weighs in favor of

17 settlement.

18            v.    *Extent of Discovery Completed and Stage of the Proceedings*

19    Plaintiffs argue that they obtained sufficient discovery to assess the case and retain two

20 experts to evaluate the design of the adapters.  Mot. at 16.  This allowed Plaintiffs to determine the

21 strength of their case, and the reasonableness and adequacy of the proposed settlement.  Id.  Given

22 that there was sufficient discovery to make an informed decision, this factor weighs in favor of

23 settlement.

24            vi.    *Experience and Views of Counsel*

25    In evaluating this factor, the court notes that "[p]arties represented by competent counsel

26 are better positioned than courts to produce a settlement that fairly reflects each party's expected

27                                    12
   Case No. 5:09-CV-01911-EJD

28 ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
   FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
   DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

outcome in litigation." Rodriguez, 563 F.3d at 967 (citing In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)). Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Techns., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

Here, Counsel for Plaintiffs and Apple are experienced litigators. Lead counsel for each party are partners of their respective firms, and have decades of experience litigating consumer class actions. Given their experience and continued support for the Settlement Agreement, this factor weighs in favor of settlement.

vii.    *Reaction of Class Members of Proposed Settlement*

Plaintiffs contend that class notice was published, it was emailed or mailed to approximately 7.1 million class members, and a website and toll-free telephone number were created to answer questions. Mot. at 16-17. Eleven class members filed objections, and 61 individuals opted out by the deadline. Id. at 17. Plaintiffs argue that this low level of dissatisfaction indicates a strong settlement. Id. The court notes, however, that the participation rate was low. Of the purported millions of class members who should have received some type of notice, only 16,006 valid claims for a cash refund were filed and 92,332 replacement adapters were provided in a period of over one and a half years. The low participation rate can be attributed to either a lack of adequate notice to the class, or general satisfaction with the adapters at issue. For this reason, this factor is neutral.

viii.    *Risk of Collusion Among the Negotiating Parties*

The Ninth Circuit has warned that agreements formed prior to formal class certification present a potential for a breach of fiduciary duty towards the class, thus "such agreements must withstand an even higher level of scrutiny for evidence of collusion." In re Bluetooth, 654 F.3d at 946. Collusion may not be evident on its face, thus the Ninth Circuit has provided examples of subtle signs of collusion including: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement providing for the

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

payment of attorneys' fees separate and apart from class funds;" and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." Id. at 947. All three warning signs are present here.

First, Plaintiffs contend that class counsel is not receiving a "disproportionate distribution" of the settlement because the class is receiving both cash refunds and free replacement adapters. Mot. at 18. Moreover, Plaintiffs argue that they have set forth their lodestar figure and degree of success in litigation, which justifies the fairness of their requested fee. Id. Here, the proposed settlement did not provide a cap on the number of cash refunds or replacement adapters that would be provided, thus class counsel's fee was independent of the class response to the proposed settlement. As such, there is no sign of collusion due to a disproportionate distribution.

Second, the Settlement Agreement provides both a clear sailing arrangement and "kicker" or reversion provision. The clear sailing arrangement provides that Apple will not oppose Plaintiffs' request of an award of $3 million in attorneys' fees, and $100,000 in costs. Settlement Agreement § V(A). The kicker provision provides that any fees not awarded to class counsel will revert back to Apple. Id. Plaintiffs argue that negotiations were conducted at arm's length under the purview of Judge Smith, and that the amount in fees and costs are the same amounts that Judge Smith proposed after the parties were unable to reach a mutual agreement. Mot. at 19. The objector, Ms. Newhouse, argues that the clear sailing clause deprives the court of the advantages of the adversary process, and that the class is worse off when any reduction in a fee award reverts to defendants instead of the class. Newhouse Obj. at 25-26.

The court notes the importance of Judge Smith's role in these negotiations. However, while the presence of a neutral mediator weighs in favor of non-collusiveness, it is not dispositive on its own. In re Bluetooth, 654 F.3d at 948. Here, the court recognizes that the amount of compensation for class members was not capped, thus the parties did not know how many cash awards would be made or how many replacement adapters would be provided at the time the Settlement Agreement was reached. In evaluating the clear sailing arrangement, it does not appear

United States District Court
Northern District of California

there was collusion because the Settlement Agreement itself does not provide an agreement on the precise amount of attorneys' fees, but rather provides a maximum amount Apple would not oppose. Likewise, in evaluating the kicker provision, it does not appear there was collusion because the unawarded fees that will revert back to Apple does not in any way impact the benefit to the class—class members had the ability to obtain a cash refund or replacement adapter regardless of the amount reverted back to Apple. Ms. Newhouse's arguments, thus, are unpersuasive. Accordingly, this factor weighs in favor of settlement.

> 2. <u>Objections to the Reasonableness of the Proposed Settlement Agreement</u>

> > i. *Replacement Adapters*

Ms. Newhouse presents two additional objections to the Settlement Agreement. The first objection pertains to the number of replacement adapters attributed to the notice program and the $79 retail value assigned to each replacement adapter. She argues that class counsel should not take credit for all 92,332 replacement adapters provided to class members because Apple had been replacing defective adapters even prior to this lawsuit. Newhouse Obj. at 21. She contends that, at most, only 59,536 adapters can be attributed to the settlement notice. <u>Id.</u> at 22. Moreover, Ms. Newhouse argues that the value assigned to each replacement adapter should be less than the $79 retail value because the retail price includes Apple's profit margin, which should not be considered when making the class whole. <u>Id.</u> at 23. In response, Plaintiffs argue that the value lies in the judicially-enforced contract—the Settlement Agreement—which requires Apple to offer replacement adapters until July 2013, allowing class members to seek relief years after their warranty expired. Dkt. No. 251 at 7.

The court agrees with Plaintiff. There is great value in achieving a judicially-enforced contract that provides injunctive relief, mandating Apple to provide a cash refund or replacement adapters years after the warranty has expired. While some replacement adapters could be attributed to sources other than the settlement notice, the proposed settlement still had the ability to provide relief to millions of individuals. Moreover, the $79 retail value assigned to each

United States District Court
Northern District of California

1  replacement adapter is appropriate because that is the value to the class member—the class

2  member would have paid the $79 if the Adapter Replacement Program did not exist. Accordingly,

3  Ms. Newhouse's objection is rejected.

ii.  *The Claim Process*

4

5  Ms. Newhouse's second objection to the Settlement Agreement pertains to the claims

6  process. She argues that the claims process evidences self-dealing because the Notice and Claim

7  Form were available online, but could not be submitted online. Newhouse Obj. at 28. She

8  contends that the paper claims and manual processing incurs an additional administration expense,

9  and the only reason Apple would incur such an expense is if it expected this additional cost to be

10  more than offset by the number of class members deterred from seeking to make claims. Id. Ms.

11  Newhouse contends that considering the 9.6 million-member class, 340,000 class members visited

12  the settlement website, 66,000 claims were downloaded or mailed to class members, and only

13  16,006 claims were submitted. Id. at 29. If an average claim was for $50, this suggests that Apple

14  saved over $2 million, which pays for class counsel's fee request. Id.

15  In response, Plaintiffs argue that the claim form was one-page long and a mechanism was

16  created for class members to obtain duplicate receipts. Dkt. No. 251 at 10-11. If there were an

17  online claim form, it likely would have been more difficult given that a proof of purchase was

18  required—class members would then have had to use a digital scanner to create a PDF of their

19  proof of purchase, upload it to the settlement website, and associate it with the online claim form

20  they filed on the website. Id. at 12. The court agrees with Plaintiffs that the claims process is

21  acceptable given the ease that a class member could have submitted a paper claim and have

22  attached a proof of purchase. Accordingly, Ms. Newhouse's objection is rejected.

23  3.  Conclusion

24  The Settlement Agreement appears to provide a better result for class members than

25  continuing with litigation, it provides the certainty of benefits to class members, it reduces the risk

26  of decertifying the class, the results obtained provide relief to most class members, sufficient

27

28  ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

discovery was conducted to make an informed decision about settlement, experienced counsel support the Settlement Agreement, and there is no evidence of collusion among the parties. Accordingly, the Settlement Agreement is fair, adequate, and reasonable.

**C.      Class Notice**

Under FRCP 23(c), the parties need only provide notice "reasonably certain to inform the absent class members of the plaintiff class[.]" Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (internal quotations omitted). The notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., 361 F.3d at 575 (internal quotations omitted). See Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1351 (9th Cir. 1980) ("Notice in a class suit may consist of a very general description of the proposed settlement.").

Here, the Notice: (1) described the nature, history, and status of the litigation; (2) provided the settlement class definition, claims, and issues; (3) explained the benefits to the class; (4) provided the amount of proposed attorneys' fees and expenses; (5) explained the procedure for opting out of the class; (6) explained the binding effect on those who remained in the class; (7) provided class counsels' contact information; and (8) provided information on the formal fairness hearing. Dkt. No. 247 at 24.

The Notice Plan included: (1) emailing the Summary Notice to 5,523,878 class members; (2) mailing Settlement Postcards to 1,918,052 class members whose email addresses were unavailable; (3) mailing Settlement Postcards to 650,675 class members whose email notification was returned as undeliverable; (4) publishing the Notice in USA Today, and the magazines Wired and Macworld; (5) creating a settlement website; (6) establishing an automated toll-free telephone line and live help support system; and (7) providing the full Notice and detailed eligibility information to class members via the settlement website and toll-free number. Id. at 23; see Settlement Agreement § IV. Both the Summary Notice and the Settlement Postcard provided the website address of the settlement website, the toll-free number that could be used to request copies

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

of the Class Notice and Claim Form, and the address of class counsel.  Id.

Ultimately, the court-appointed settlement administrator sent an email or mail notice to 7,127,599 class members, or approximately 74 percent of potential settlement class members (assuming a class size of approximately 9.6 million).  Id.  Additionally, Summary Notice was published in the November 2011 editions of USA Today, Wired, and Macworld.  Id.; see Coulson Decl. at ¶ 4.  Apple confirmed that it provided notice of this settlement to state and federal officials pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a), on September 9, 2011.  Id.

Class notice was proper.  In sum, Plaintiffs' Motion for Final Approval of the Class Action Settlement is GRANTED.

## VI.    MOTION FOR ATTORNEYS' FEES AND COSTS

The attorneys' award must be reasonable, even if the parties have already agreed to an amount.  In re Bluetooth, 654 F.3d at 941.  Courts have discretion to award attorneys' fees to a prevailing plaintiff if: "(1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended a substantial benefit to a class."  Id.

There are two different methods for calculating a reasonable attorneys' fee.  Id.  First is the lodestar method, which is used when "the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized."  Id.  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  Id.  The court can "adjust [the figure] upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  Id. at 941-42 (internal quotations omitted).  "Foremost among these considerations, however, is the benefit obtained for the class."  Id. at 942.

18

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

The second method is the percentage-of-recovery method when a "settlement produces a common fund for the benefit of the entire class." Id. Courts can award attorneys a percentage of the common fund in lieu of calculating the lodestar if the benefit to the class is easily quantified in common-fund settlements. Id. "[C]ourts typically calculate 25 [percent] of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. Whichever calculation method is used, it must achieve a reasonable result. Id.

Here, according to the Settlement Agreement, Apple agrees not to oppose an award of $3 million in attorneys' fees. Settlement Agreement § V(A). Five firms represented Plaintiffs. As of the filing of the instant motion, class counsel collectively spent 4,632 hours of work, rendering a lodestar figure of $2,484,176. Mot. at 31. Class counsel use a multiplier of 1.2, amounting to a total of $2,981,011. Id. According to class counsel, the total lodestar does not include any of the substantial amount of time class counsel spent defending the settlement on appeal, and it does not account for the additional time and expenses that may be incurred through the final approval process, the continued monitoring of the settlement administration, class communications, the prior appeals and any future appeals. Id. The proposed billing rates and hours are as follows (see Dkt. Nos. 241-46):

| Law Firm | Hourly Rate | Hours Spent | Total Lodestar Amount |
|---|---|---|---|
| Zeldes Haeggquist & Eck, LLP | • Partners: $620-690 <br> • Attorneys: $410 <br> • Professional Support Staff: $250 | 1,555.50 | $860,842.50 |
| Liner LLP | • Partners: $525-675 <br> • Attorneys:$290-$475 <br> • Professional Support Staff: $150-195 | 1,048 | $472,726.50 |

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

| Mehri & Skalet, PLLC | • Partners: $575-$750<br>• Associates: $300-$450<br>• Paralegals: $195<br>• Law Clerk: $200 | 1,017.05 | $614,133.75 |
|---|---|---|---|
| Jacobson, Russell, Saltz, Nassim & de la Torre, LLP | • Partners: $525<br>• Associates: $275-330<br>• Legal Assistant: $150 | 726.70 | $320,202.50 |
| McNicholas & McNicholas, LLP | • Partner: $850<br>• Attorneys: $262-525<br>• Professional Support Staff: $150 | 268 | $205,684.25 |
| **TOTAL:** | | **4,615.25** | **$2,473,589.50** |
| **TOTAL WITH 1.2 MULTIPLIER:** | | | **$2,968,307.40** |

The total amount requested in attorneys' fees is $2,968,307.40.[2]

At oral argument, the court noted that the aggregate hours and billings submitted by class counsel were insufficient to determine the reasonableness of the fees, thus the court requested an itemized breakdown of the requested attorneys' fees. See Dkt. No. 263, Transcript ("Tr.") at 27-28; Dkt. No. 260, Order for Additional Briefing. Class counsel subsequently submitted an itemized breakdown of the billings for each of the five firms. See Dkt. No. 262-1 ("Itemized Billing"). In their Itemized Billing brief, class counsel stated that, collectively, they invested 5,752 hours in this matter, equaling a total lodestar of $2,980,097 that does not include a multiplier. Dkt. No. 262 at 2-3, n.3. Given these updated amounts, class counsel presents the court with an additional 1,136.75 hours and $506,507.50 of work than what was presented in its original motion.[3]

---

[2] The court is unclear how class counsel calculated the numbers it cites on its motion: 4,632 hours equaling $2,484,176. Nonetheless, the court has conducted its own calculations based on the declarations provided and has determined that it is close enough to class counsel's calculations that the court's numbers will be used.
[3] This is the difference between 5,752 and 4,615.25 hours, and the difference between $2,980,097 and $2,473,589.50. In a footnote, class counsel stated that their updated lodestar equals the amount they are requesting without a multiplier.

20

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

**A.  Calculation of a Reasonable Lodestar Amount**

In determining the reasonableness of the attorneys' fees, courts should consider the factors set forth in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975).  <u>Carter v. Caleb Brett LLC</u>, 757 F.3d 866, 868-69 (9th Cir. 2014).  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 869.

1.    <u>Billing Rates</u>

The reasonable hourly rate for computing the lodestar amount is based on the "prevailing market rates in the relevant community." <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895) (1984)).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  <u>Id.</u> (internal quotations and citations omitted).  The "experience, skill, and reputation of the attorney" should be considered within this geographic community.  <u>Id.</u>

The relevant community for this action is the Northern District of California.  In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.  <u>See</u> <u>Armstrong v. Brown</u>, 805 F. Supp. 2d 918, 920-21 (N.D. Cal. 2011) (found that a range of $560-$800 was a reasonable rate for partners, $285-$510 for associates, $200-$240 for paralegals, and $150-185 for litigation support staff); <u>Faigman v. AT&T Mobility LLC</u>, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011) (Patel, J.) (found that up to $735 was a reasonable rate for partners, up to $448 for associates, and up to $175 for paralegals); <u>Wren v. RGIS Inventory Specialists</u>, 2011 WL

21

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

1230826, at *18, 21 (N.D. Cal. May 13, 2011) (Spero, J.) (found that up to $725 was a reasonable rate for an attorney, and up to $200 for a paralegal/legal assistant); Suzuki v. Hitachi Global Storage Techs., Inc., 2010 WL 956896, at *4 (N.D. Cal. Mar. 12, 2010) (Patel, J.) (found that up to $650 was a reasonable rate for a partner, up to $500 for an associate, and up to $150 for a paralegal).

Evaluating the billing rates provided by class counsel, rates for all firms are consistent with the range except for McNicholas & McNicholas, LLP's partner and associate billing rates, which are higher than is generally approved in this district.

              i.      *McNicholas & McNicholas, LLP's Partner and Associate Billing Rates*

The partner billing rate at McNicholas & McNicholas, LLP for the instant action is $850 per hour for Patrick McNicholas. See Dkt. No. 244, McNicholas Decl., Exh. 1. According to his attorney profile, Mr. McNicholas is a trial lawyer who graduated from McGeorge School of Law in 1986, and was admitted to the bar in the same year. See id., Exh. 3 at 4-5. He was named a Super Lawyer by Los Angeles Magazine and was named "Top 100" lawyer by Superlawyers. Id. at 4. Based on the list of cases provided in his attorney profile, it appears that Mr. McNicholas handles cases pertaining to personal injury and employment discrimination, and he has won several multi-million dollar jury verdicts. Id. at 5. While the court does not doubt that Mr. McNicholas is a very good lawyer, there is no indication of why his billing rate is higher than what is generally approved in this district. Also of note is the fact that Mr. McNicholas' website does not indicate that he is an experienced consumer class action litigator. As such, the $850 billing rate is unreasonable. Accordingly, the rate will be reduced to $750 per hour—the next highest partner billing rate in this action.

Furthermore, two associate attorney billing rates for the instant action are also beyond the range for the Bay Area: Catherine Burke Schmidt and Ben Valerio each bill at $525 per hour. See McNicholas Decl., Exh. 1. No attorney profiles are provided for them and they do not appear on the firm's website. In the absence of information to assess these attorneys' skill and expertise,

22

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

there is no indication of why their billing rates are higher than what is generally approved in this district. As such, the $525 billing rate is unreasonable. Accordingly, the rate will be reduced to $320 per hour—the next highest billing rate for an attorney at this firm.

ii. *Conclusion as to Billing Rates*

To calculate the lodestar, the court will take the average billing rate for each firm, which includes the hourly rates of the partners, associates, paralegals, law clerks, legal assistants, and professional support staff. Accordingly, the average billing rate for Zeldes Haeggquist & Eck, LLP it is $524, for Jacobson, Russell, Saltz, Nassim & de la Torre, LLP it is $320, for McNicholas & McNicholas, LLP it is $370 (including the adjusted billing rates discussed above), for Mehri & Skalet, PLLC is $442, and for Liner LLP it is $345.

2. <u>Hours Spent</u>

The Ninth Circuit has provided that "a reasonable number of hours equals the number of hours which could reasonably have been billed to a private client." <u>Gonzalez</u>, 729 F.3d at 1202 (internal quotations omitted). The district court can exclude billing entries "for hours that are excessive, redundant, or otherwise unnecessary." <u>Id.</u> at 1203 (internal quotations omitted). "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application." <u>Id.</u> (quoting <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1399 (9th Cir. 1992)). When making the across-the-board percentage cut, the district court must provide a concise and clear explanation of its reasons for choosing a given percentage reduction. <u>Id</u>. An exception to this rule, however, is that the district court can impose a small reduction—no greater than 10 percent—based on its exercise of discretion and without a more specific explanation. <u>Id</u>.

Here, the court will consider only the total number of hours for each firm provided by class counsel in its original motion. <u>See</u> Dkt. Nos. 241-46. The reasons are that, first, class counsel do not explain the increased number of hours in its Itemized Billing brief, and second, the 268-page

23

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

Itemized Billing does not include a *total* number of hours for each timekeeper and/or law firm.

As to the manner in which time is spent by class counsel, the court carefully examined the Itemized Billing. See Dkt. No. 262-1. The billings showed that the partners, in particular, spent an unreasonable amount of time conferring with co-counsel, performing tasks that are typically performed by associates or paralegals, emailing and corresponding with others in their firms and co-counsel, and performing duplicative work by editing co-counsels' briefs. See Terry v. City of San Diego, 583 Fed. Appx. 786 (9th Cir. 2014) (the Ninth Circuit has permitted reductions for the following: time counsel spent conferring among themselves; attorney hours devoted to clerical work; co-counsel editing each other's briefs can constitute unreasonable duplicative time; all the time the lawyer spends preparing for and attending district court hearings when the lawyer does not participate at such hearings); see also Itemized Billing for Mehri & Skalet, PLLC at 2-35 (emailing co-counsel; receiving bounced emails; examining MacBook purchase and arranging delivery; arranging travel; reviewing docket and communicating with the court clerk; scheduling; editing responses to class member inquiries); Itemized Billing for Liner Law at 42-100 (emailing colleagues and co-counsel; receiving and reviewing Notices of Appearance; receiving updates of litigation status; editing co-counsels' briefs; receiving news articles; receiving and reviewing materials from co-counsel; forwarding materials to colleagues; strategizing and reviewing case strategy); Itemized Billing for Zeldes Haeggquist & Eck, LLP at 100-85 (emailing co-counsel; reviewing emails or correspondence from others; conferencing with class members and potential class members; reviewing online complaints about Apple adapters; circulating briefs to co-counsel and receiving comments; delegating work to others; scheduling conference calls and mediation; requesting comments from co-counsel; purchasing adapters and collecting old adapters for experts; circulating photos and movies of adapters melting; circulating old Mac advertisements; coordinating hotel for mediation; obtaining client signatures; updating settlement website; reviewing calls and listening to class member messages; forwarding calls and emails from class members; reviewing other firms' time; receiving co-counsel's updated time and costs;

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

communicating with the court clerk); Itemized Billing for McNicholas & McNicholas, LLP[4] at

188-206 (reviewing and responding to emails; reviewing co-counsels' work product; traveling for

meeting with co-counsel; reviewing appellate proceedings); Itemized Billing for Jacobson,

Russell, Saltz, Nassim & De La Torre, LLP at 215-269 (receiving, reviewing, and responding to

emails; receiving and reviewing co-counsels' work product; reviewing documents).

Moreover, there was an unreasonable amount of time spent by partners in traveling to

mediations and court hearings. For example, four partners from different law firms traveled to

San Francisco for a mediation taking place on August 31, 2010 (see Itemized Billing at 8, 26, 57,

155); six partners from different law firms traveled to San Francisco for another mediation taking

place on November 11, 2010 (see id. at 9, 28, 59, 158, 200, 232); and three partners from different

law firms traveled to San Jose for the most recent court hearing on November 6, 2014 (see id. at

22, 185, 206). See Hernandez v. Taqueria El Grullense, 2014 WL 1724356, at *11 (N.D. Cal.

Apr. 30, 2014) (Orrick, J.) (found that fees for two attorneys' preparation for and participation in

mediation was excessive); Delson v. CYCT Mgmt. Grp., Inc., 2013 WL 1819265, at *7 (N.D. Cal.

Apr. 30, 2013) (James, J.) (found that attendance of two attorneys in mediation was unnecessary).

The court recognizes that the results obtained were significant. However, due to the

amount of unreasonable number of hours by the partners devoted to tasks that do not warrant a

payment of $525 to $750 per hour, the court will exercise its discretion to reduce the number of

hours across the board by 10 percent. Accordingly, the total hours spent by Zeldes Haeggquist &

Eck, LLP it is 1,399.95, for Liner LLP it is 943.2, for Mehri & Skalet, PLLC is 915.35, for

Jacobson, Russell, Saltz, Nassim & de la Torre, LLP it is 654.03, and for McNicholas &

McNicholas, LLP it is 241.2.

---

[4] The billing dates begin in the year 2005. The court presumes this is an error because an entry
dated 08/29/2006 is listed as "Travel to San Francisco for 08/31/10 mediation." See Dkt. No. 262-
1 at 199.

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

3.      Multiplier

Class counsel requested a 1.2 multiplier in its original motion.  See Mot. at 18.  At oral argument, the court offered class counsel the opportunity to present their best argument as to why a 1.2 multiplier was justified in this matter.  Counsel responded that the multiplier is modest compared to cases of this type, the results obtained were extensive given that people who owned the adapters for many years obtained relief, this case was filed in 2009 without any compensation, engineers were hired to find the cause of the adapters' problem, and the parties almost went through summary judgment before settling this case.  See Dkt. No. 263, Transcript ("Tr.") at 27-28, 42-44.  However, in its subsequent filing of the Itemized Billing, class counsel indicates that it is requesting the full amount of fees without a multiplier.  See Dkt. No. 262, Itemized Billing Brief at 3 n.3.

It is unclear whether class counsel has withdrawn its multiplier request.  In any event, class counsel has not provided a persuasive argument as to why a multiplier should be awarded.  Class counsel's time, labor, and skill, as well as the settlement amount involved and the results obtained have been considered in the lodestar calculation.  As the court stated in oral argument, however, the risks and challenges encountered by class counsel in this matter are not unique to this particular matter.  Cases take many years for resolution, research is conducted as to the issues at hand, counsel develop theories of the issues involved, assemble resources, file cases, communicate with clients and opposing counsel, and form co-counsel agreements.  See Tr. at 27-28.  As the court noted, class counsel do this in all of their cases; thus, there is no indication that this particular case was unique and novel in its facts, resolution, or efforts.  See id. at 28.  Accordingly, the court will decline to apply a multiplier.

4.      Conclusion

In sum, the hourly rate for McNicholas & McNicholas, LLP has been reduced.  The number of hours of each firm has also been reduced by 10 percent.  The attorneys' fees approved

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

are as follows:

| Law Firm | Average Billing Rate | Hours Spent (including 10% deduction) | Total Lodestar |
|---|---|---|---|
| Zeldes Haeggquist & Eck, LLP | $524 | 1,399.95 | $733,573.80 |
| Liner LLP | $345 | 943.2 | $325,404 |
| Mehri & Skalet, PLLC | $442 | 915.35 | $404,584.70 |
| Jacobson, Russell, Saltz, Nassim & de la Torre, LLP | $320 | 654.03 | $209,289.60 |
| McNicholas & McNicholas, LLP | $370 | 241.2 | $89,244 |
| **TOTAL:** | -- | **4,153.73** | **$1,762,096.10** |

The sum amounts to an overall 29 percent reduction of class counsel's original lodestar request of $2,473,589.50.[5] Accordingly, the court GRANTS $1,762,096.10 in attorneys' fees.

**B.      Percentage Method**

Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the fund or the lodestar method. <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002). Here, class counsel values the proposed settlement at $11,984,449. This amount includes: $797,757 in cash refund provided to class members; $7,294,228 worth in replacement adapters; $3,100,000 in requested attorneys' fees, expenses, and service awards; and $792,464 in the cost of notice. Mot. at 12. As such, 25 percent amounts to $2,996,112.25.

---

[5] This amount does not include the 1.2 multiplier originally requested by class counsel.

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

The court, however, values the proposed settlement at $8,091,985, accounting for the $797,757 in cash refunds and $7,294,228 in replacement adapters. The requested attorneys' fees, expenses, and service awards are not included because that is determined separately, and the cost of notice is also not included because that was Apple's expense in order to comply with the notice requirement. As such, 25 percent amounts to $2,022,996.25. There is a difference of $260,900.15 between the lodestar figure and the percentage method. This difference is not significant enough to alter the lodestar figure. See In re HP Inkjet Printer Litig., 716 F.3d 1173, 1190 (9th Cir. 2013) (it is not necessary for the fee award to be equally justifiable under both the lodestar and the percentage methods, or for the percentage method to be precise when used as a cross-check). Accordingly, the lodestar figure will remain.

**C.    Attorneys' Costs**

Class counsel requests payment of unreimbursed expenses in the amount of $100,000 incurred in connection with the prosecution of this action. Mot. at 37. It argues that all expenses typically billed by attorneys to paying clients are compensable, including: cost of experts and consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges. Id.

The expenses provided by each firm are as follows:

| Law Firm | Expenses |
| --- | --- |
| Mehri & Skalet, PLLC | $48,425.67 |
| Liner LLP | $43,641.56 |
| Zeldes Haeggquist & Eck, LLP | $25,673.16 |
| McNicholas & McNicholas, LLP | $17,532 |

28

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND
DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

| | |
|---|---|
| Jacobson, Russell, Saltz, Nassim & de la Torre, LLP | $3,554.47 |
| **TOTAL AMOUNT:** | **$138,826.86** |

In examining the breakdown of these expenses, the court finds class counsels' request to be reasonable. Accordingly, the court GRANTS class counsel's request of $100,000 in attorneys' expenses.

### D.     Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). In judging the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. (internal quotations omitted).

Class counsel request a service award of $5,000 to each of the five named Plaintiffs. Mot. at 38. The amount is based on time that Plaintiffs expended dealing with Apple on these issues, gathering documents, assisting counsel in gathering facts, discovery, consulting for mediation, providing declarations and considering the settlement to ensure it was reasonable, and devoting their time to this action. Id.

The court finds that a total service award of $25,000, or $5,000 for each named Plaintiff, is reasonable. Accordingly, the court GRANTS this request.

### VIII.  CONCLUSION

Based on the foregoing, the court rules as follows:

1.     Plaintiffs' Motion to Amend its Renewed Motions for Final Approval of Class Action Settlement and Fees and Costs is GRANTED;

29

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS

2. Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED; and

3. Plaintiffs' Motion for Attorneys' Fees and Costs is GRANTED IN PART AND DENIED IN PART. The court awards $1,762,096.10 in attorneys' fees, $100,000 in costs, and $25,000 in service awards. The sum amounts to $1,887,096.10.

**IT IS SO ORDERED**.

Dated: January 30, 2015

EDWARD J. DAVILA
United States District Judge

Case No. 5:09-CV-01911-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO AMEND; GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS